# EXHIBIT 1



http://www.bnb.bg/PressOffice/POPressReleases/POPRDate/PR_20140617_BG

## ПРЕССЪОБЩЕНИЕ

**17 юни 2014 г.**

По повод на публикации и предположения в медиите относно Корпоративна търговска банка Българската народна банка заявява, че внимателно и отблизо следи развитието на целия банков сектор, включително и на споменатата банка. БНБ разполага с подробни актуални данни за цялата банкова система. На базата на тази информация БНБ категорично потвърждава, че банковата система, включително и КТБ, е с висока ликвидност и капиталова адекватност и функционира нормално.

Както е известно, централната банка се ръководи единствено от обществения интерес и винаги е стояла над всякакви злободневни партийни или икономически противоборства. Ето защо БНБ подчертава, че запазването на стабилността на банковата система и безпроблемното ѝ функциониране е в интерес на страната и на всеки български гражданин и призовава всички обществено-политически и медийни фактори към отговорно публично говорене и въздържане от непремерени внушения.

# EXHIBIT 2

http://www.bnb.bg/PressOffice/POPressReleases/POPRDate/PR_20140622_EN

## BULGARIAN NATIONAL BANK
## PRESS RELEASE

**22 June 2014**

The BNB Governing Council, after having analysed in-depth the situation caused by the insufficient liquidity of Corporate Commercial Bank and its subsidiary – the former Credit Agricole Bulgaria EAD (the CCB bank group), states:

- We confirm CCB's placement under conservatorship as well as apply the same measure to CCB's subsidiary.

- The liquidity shortage in the CCB group is an isolated case and is not connected with the rest of the banking system.

- On the grounds of these findings the BNB Governing Council:

1. Placed Credit Agricole Bulgaria EAD under special supervision for three months;

2. Appointed Stanislav Georgiev Lyutov and Elena Zdravkova Kostadinchev as conservators;

3. Dismissed the members of Credit Agricole Bulgaria EAD's Management and Supervisory boards;

4. Revoked the voting rights of the shareholders holding more than 10 percent.

To preserve the financial stability in Bulgaria, the Bulgarian National Bank, with the Government's full support, will undertake the following actions:

- have the conservators hire an independent external auditor to thoroughly analyse and evaluate the CCB group's assets and liabilities in the next 10 days;

- actions will be taken for writing off of shareholders' equity in full compliance with the procedures prescribed by the law;

- aiming to preserve the activities of the CCB bank group in its recovery, the BNB, within its legal powers, will take joint actions with the Government to increase the group's capital using funds through the state-owned Bulgarian Bank for Development and the Deposit Guarantee Fund.

The Government and the BNB will secure the needed liquidity support for the Corporate Commercial Bank group to fully cover its obligations to its customers.

All necessary actions will be taken by 20 July this year.

Corporate Commercial Bank and its subsidiary will open for business on 21 July at 9.00 a.m.

# EXHIBIT 3

**PRESS RELEASE**

**11 July 2014**

### Statement by the BNB Governing Council

Ladies and Gentlemen,

After numerous media publications and the odd, in our view, press conference given by the then Corporate Commercial Bank AD management, on 18, 19 and 20 June nearly BGN 1 billion was withdrawn from the bank.

On 20 June, Friday, at 11.40 a.m., the BNB received a letter from Corporate Commercial Bank AD management requesting the bank to be placed under special supervision on the grounds of art. 115, par. 2, items 2 and 3 of the Law on Credit Institutions.

As this is not very well known and there have been some misinterpretations in the media about the initial actions of the Central Bank, we would like to point out that in case and following of such a specific request the Bulgarian National Bank has an obligation by law to place a bank under special supervision. And we did so – first Corporate Commercial Bank AD, and then Crédit Agricole Bulgaria EAD.

You know that conservators were immediately appointed in both banks belonging to the Corporate Commercial Bank group. On 25 June independent auditors started their review of the banks' assets and liabilities of both banks. The review was carried out for ten business days and ended on Wednesday. Yesterday, on Thursday, the Central Bank received the auditors' reports.

In summary, the auditors' review came to the following conclusions:

1. The results of the review of Crédit Agricole Bulgaria EAD are positive. This is a well managed bank with good banking practices. Its loan portfolio quality is very good and sufficiently covered with collateral and adequately provisioned.

2. The results of the audit of Corporate Commercial Bank AD show actions which are inconsistent with the law and the good banking practices, to put it mildly. Significant parts of credit files for a loan portfolio of BGN 3.5 billion, out of the total BGN 5.4 billion loan portfolio, are missing, most probably destroyed during the days before the conservatorship was placed. A considerable part of that credit portfolio suggests a very large connectedness between debtors and the majority shareholder of the bank, Mr. Tsvetan Vassilev.

As a result of the insufficient available information, the auditors expressed the opinion that it is difficult for them to assess the financial position of the debtors and their capabilities to service their loans. It is also difficult to assess the availability and quality of the items of collateral, and therefore it is impossible for the auditors to make a final conclusion about the quality of the loan portfolio of BGN 3.5 billion. Unfortunately, all these actions cannot be identified with the available tools of the off-site supervision and make us think of intentional abuse.

These particular actions of Corporate Commercial Bank AD officers could possibly lead to intentional damages to the bank, running into hundreds of millions of levs. It is obvious that the minority shareholders of Corporate Commercial Bank AD have also fallen victim to these breaches.

For all the above reasons, today we are going to present the auditors' report on the review of Corporate Commercial Bank AD assets and liabilities to the attention of the Prosecutor General of the Republic of Bulgaria.

In addition to all said about Corporate Commercial Bank AD, and on the grounds of the data provided by the conservators' separate review, on 9 July 2014 with entry number 6199, we already submitted to the Prosecutor's Office another signal due to suspicions of criminal actions of persons connected to the bank. More specifically, according to the conservators' data, on 19 June this year, only a day before Corporate Commercial Bank AD was placed under special supervision, a cash amount equivalent to BGN 205 887 223 mostly in euro, was drawn by a third person, and against a receipt delivered to the Corporate Commercial Bank AD majority shareholder. How this should be qualified and what actions will follow is within the competences of the Prosecution to decide. The investigating authorities can answer the question if in this manner the majority shareholder has robbed his own bank. The Prosecution of the Republic of Bulgaria can fully rely on the BNB expertise so as to discover the whole truth behind this criminal case.

Henceforth, we will leave the issues set out above to the Prosecutor's Office to have their say, so as not to obstruct the judicial investigation. **From now on, the Bulgarian National Bank jointly with the Government will focus on the restructuring and recovery of the "good part" of Corporate Commercial Bank AD with the aim to safeguard the interest of all its depositors**.

What actions will be undertaken with regard to Corporate Commercial Bank AD and Crédit Agricole Bulgaria EAD from now on?

Obviously, we cannot fill a "bottomless barrel", as goes the wise Bulgarian saying, nor could we nationalize Corporate Commercial Bank AD in its current position, as was announced on 22 June, before the outcomes of the review become known.

Else, we would jeopardize both the activities and operations of the Bulgarian Development Bank and a large part of the public funds and of the BNB funds.

**But the goal remains unchanged! This goal remains that all citizens and companies to have at their disposal the full amount of their funds. The only exception to this will be the companies of the majority shareholder of Corporate Commercial Bank AD and persons and companies connected to him.**

What is the new practical plan for action, already discussed between the BNB and the Government, and supported by the main political powers represented in Parliament?

**This plan contains a number of technical details but, in short, the measures will include the following steps:**

1. A nationalization of Crédit Agricole Bulgaria EAD.
2. **A transfer of all "good" assets and liabilities of KTB to Crédit Agricole Bulgaria EAD. It is important to note that this involves all deposits of citizens and companies, for whom this will represent just a legal and accounting operation which does not affect in any way the main thing – that every citizen and every company will have at their disposal their accounts, deposits and savings.** The only exception from this, and we underline this, will be the majority shareholder of KTB and the natural persons and companies that are connected to him. Their deposits will not be guaranteed by the State and will remain in KTB.
3. A provision of absolute liquidity support to the state Crédit Agricole Bulgaria EAD (which will be renamed) by its new owner, the State. For that purpose, enough resources will be ensured by the Deposit Insurance Fund, the State budget and the BNB. As many resources as needed. The mechanisms for that have already been designed, as a result of the joint work of the public institutions involved in this process, including the BNB and the Ministry of Finance.
4. The license of KTB will be revoked and insolvency proceedings will be started against it. The State, through the Ministry of Finance, and the Deposit Insurance Fund will be privileged creditors in the insolvency.
5. The above steps will be made possible after the voting of a draft special law, which is already prepared and which will be submitted today to the main political powers in Parliament.

From now on, it is the turn of the politicians!

And finally, Ladies and Gentlemen,

We are very much aware that in this particular case the Bulgarian National Bank is being criticized for the activities of the Banking Supervision. What, however, the general public does not know, which **I would like to make clear today, is that according to the Law on the Bulgarian National Bank, which has been in force since 1997, the legislator has delegated the rights and responsibilities of the Banking Supervision function to the Deputy Governor in charge of the Banking Supervision Department. Neither the Governor, nor any other members of the Central Bank's Governing Council has direct responsibilities or rights with regard to the ongoing banking supervision.** Therefore, we submit to the National Assembly legal amendments whereby we will assume such responsibilities.

In conclusion, I would like to share that over the last few weeks the Bulgarian National Bank has been working in full synchronicity with the President of the Republic of Bulgaria and other state institutions, led by the understanding that the banking stability is a primary public good. We also believe that even if there were doubts, now everyone is convinced that this is an undisputable fact.

**Restructuring and recovering of this credit institution is very important for key sectors of the economy and for sizable Bulgarian municipalities, hospitals, many companies and thousands of citizens alike.** Any other decision would be irresponsible and would entail adverse social, economic and political implications in the long run.

We reiterate, we are working to open on 21 July the recovered state bank.

**Once again we underline, now it's the politicians' turn!**

Thank you for your attention.

# EXHIBIT 4



*Фрея*  *Freya*
*Транслейшънс*          *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

<u>*Translation from Bulgarian*</u>

## ORDER OF RECEIVERSHIP
### No.270 of 15th December 2012
### Town of Targovishte
### In the Name of the People

The Targovishte District Court, Commercial Division, held a closed session on December fifteenth two thousand and twelve. The court session was presided by Judge Angelinka Nikolova in the presence of the Secretary Stanka Zheleva.

The court heard bankruptcy case No.14 in the 2011 list kept at such Court reported by Judge Nikolova.

The Court considered the following:

A motion was filed in this Court by the Trustee in Bankruptcy for Ayr Property Development AD (declared bankrupt) seeking to have an order of receivership issued and concerning properties sold in an auction sale under the procedures of Art.717 CA. Evidence in writing for the auction sale of the property were also submitted in support of the motion.

The Court looked into the evidence collected in the matter regarding the property sale and established as follows:

By virtue of Ruling 248 dated 19th November 2012 the Bankruptcy Court granted permission to the Trustee for Ayr Property Development AD ("APD") to sell assets included in APD's bankruptcy estate under the procedures prescribed in Article 717 of the Commercial Act ("CA") and in accordance with the resolutions adopted by APD's Creditors' Meeting where said sale should have been conducted pursuant to the assets valuation as submitted to the case.

The Creditors' Meeting held on 12th July 2012 resolved to sell the assets in separate portions and also resolved to have them valuated using the asset market value method. On 26th September 2012 the Valuator appointed by the Creditors' Meeting submitted the valuations of the assets subject to sale. According to said Valuation the real properties below formed the real estate portion of the assets:

- *Land Plot in Regulation ("UPI")* having identification number 02508.88.734 and area of 578,716 m$^2$ - as per Title Deed No.51, volume VIII, reg.No.5681 in case No.1173/2009 in the list kept by Notary Public



2

Obretenov (commissioned under No.109 to practice within the jurisdiction of the Balchik Regional Court) – and having area of 579,063 m$^2$ as per plat No.17562 dated 5th November 2012 issued by the Geodesy Cartography and Cadaster Office in the town of Dobrich as well as pursuant to Title Deed No. 90 Volume XIII reg. No.4289 in case file No.1957 kept at the Registry Office at Balchik; durable land use designation: afforested territory and manner of permanent use: forest for another type of wood production where the above land has borders as follows: land properties with Nos.02508.88.373, 02508.88.735, 02508.88.162 and 02508.88.780, respectively;

- *Land Property in Regulation* having No.02508.88.735 and area of 229,999 m$^2$ pas per Title Deed 51 volume VIII, reg.No.5681 case No.1173/2009 in the list kept by Notary Public Obretenov (commissioned under No.109 to practice within the jurisdiction of the Balchik Regional Court) – and having area of 212,239 m$^2$ as per plat No.14754 dated 17th September 2012 issued by the Geodesy Cartography and Cadastre Office in the town of Dobrich as well as pursuant to Title Deed No. 90 Volume XIII reg. No.4289 in case file No.1957 kept at the Registry Office at Balchik; durable land use designation: afforested territory and manner of permanent use: forest for another type of wood production where the above land has borders as follows: land properties with Nos. 02508.88.162, 02508.88.734 and 02508.88.373;

- *Land Property in Regulation* having identification No.02508.88.736 and area of 240,006 m$^2$ as per Title Deed No.51, volume VIII, reg.No.5681 case No.1173/2009 in the list kept by Notary Public Obretenov (commissioned under No.109 to practice within the jurisdiction of the Balchik Regional Court) – and having area of 251,424 m$^2$ as per Title Deed Title Deed No. 90 Volume XIII reg. No.4289 in case file No.1957 kept at the Registry Office at Balchik and plat No.17563 dated 5th November 2012 and issued by the Geodesy Cartography and Cadastre Office in the town of Dobrich; durable land use designation: afforested territory and manner of permanent use: forest for another type of wood production where the above land has borders as follows: land properties with Nos. 02508.88.386, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 and 02508.88.162.

All the above land properties are located in the Silver Beach area near the town of Balchik in the District of Dobrich and constitute the investment lands portfolio of the Silver Beach Project as owned by APD (declared bankrupt). The land properties so described were valuated at having market value of BGN 89,112,200.00 (*eighty-nine million one hundred and twelve thousand and two hundred Bulgarian Levs*).



In furtherance of the Court Ruling for sale of the assets the Trustee prepared the notices of sale as required by law on 20th November 2012 and then scheduled the sale auction for 14th December 2012 under the procedures of Art.717 CA at a starting price of BGN 89,112,200. The evidence in writing produced in this case showed that said notices had been properly given in compliance with Art.7171 A Para 1 CA and posted as required in Art. 717 A Para 2 CA on appropriate notice boards. A statement had been drawn for the announcement made and it showed that a notice of the sale appeared on the Trustee's office door on 21st November 2012, then on 22nd November 2012 a notice of the sale appeared on the door of the Company's office and on the notice board at the houses of the Municipal offices of the town of Targovishte. The sale notice was publicised in the bulletin of the Minister of Economics on 21st November 2012.

As the Statement drawn for the result of the public sale showed one buyer only appeared at the auction and at 9.30 a.m. on 14th December 2012 submitted a sealed bid offer as required in Art.717n Para 3 CA. The bid offer met all legal requirements. It contained a detailed and accurate description of all properties put on sale and the bid amount the buyer offered. It also had a payment order and a statement of account for the Trustee's account showing that on 13th December 2012 the bidding buyer had deposited earnest money in the amount of BGN 8,911,270, which was a 10% of the starting price. Evidence in writing showing the representative power vested in the bidding buyer and the buyer's proxy along with further documents showing the resolution to buy the above properties as passed by the governing body of the buyer company and the price the buyer was willing to pay were also attached to the offer. The bid offer revealed that the buyer's bid was in the amount of BGN 97,500,000. The Statement drawn for the public sale further revealed that the Trustee announced rightly and in full compliance with the current legal requirements that the winning bidder was First Investment Bank AD, Sofia. The Statement of Public Sale was proper on the face and was duly signed by the Trustee and the Buyer's representative.

The written evidence attached to the Motion showed that the Buyer caused the remaining amount of BGN 88,588,780 to be remitted to the Trustee's bank account on the same day. The bank reference sheet issued by First Investment Bank showed that said amount had been credited to the Trustee's bank account and as of the day of the instant Court session the funds available in such account were in the amount of BGN 97,500,050.

The Motion filed by the Trustee was supported by evidence in writing revealing that the right of ownership of the properties subject matter of the sale lay with APD as proved by (1) Title Deed No.51, volume VIII, reg. No.5681, case file No.1173/2009 kept by Notary Public Obretenov (commissioned under No. 109 for practice within the jurisdiction of the Balchik Regional Court) and said Title Deed was duly recorded under No. 13 in volume XIII pursuant to case No.1878 of 2009




4

in the Registry Office at Balchik, and (2) Title Deed No.90, volume XIII, reg. No.4289, case file No.1957 as recorded in the Registry Office at Balchik, as well as (30 up-to-date plats of the properties and (4) valid tax assessments of the properties.

For all the foregoing reasons this Court found that all requirements of the law pertaining to a public sale of properties were properly met and pursuant to Art.717717g Para 1 CA this Court held that an order of receivership should be issued to the winning bidder. Therefore, the Court

## ORDERED that:

An Order of Receivership was to be **ISSUED** to First Investment Bank AD, 37 Dragan Tsankov Boulevard and having EIK: 831094393 as represented by Vasil Hristov Hristovs having EGN: 7506176560 and Svetoslav Stoyanov Moldovanksi having EGN: 7504276847 both acting as Executive Directors of said Bank, where the above Order of Receivership pertained to real estates described below and included in the bankruptcy estate of APD (declared bankrupt) and having EIK: 200958720:

- *Land Plot in Regulation ("UPI")* **having identification number 02508.88.734** and area of 578,716 m$^2$ - as per Title Deed No.51, volume VIII, reg.No.5681 in case No.1173/2009 in the list kept by Notary Public Obretenov (commissioned under No.10 to practice within the jurisdiction of the Balchik Regional Court) – and having area of 579,063 m$^2$ as per plat No.17562 dated 5th November 2012 issued by the Geodesy Cartography and Cadastre Office in the town of Dobrich as well as pursuant to Title Deed No. 90 Volume XIII reg. No.4289 in case file No.1957 kept at the Registry Office at Balchik; durable land use designation: afforested territory and manner of permanent use: forest for another type of wood production where the above land has borders as follows: land properties with Nos.02508.88.373, 02508.88.735, 02508.88.162 and 02508.88.780, respectively; the tax assessment of the property as shown in Certificate No.177 of 6th November 2012 was in the amount of BGN 67,750.37;

- *Land Property in Regulation* **having No.02508.88.735** and area of 229,999 m$^2$ pas per Title Deed 51 volume VIII, reg.No.5681 case No.1173/2009 in the list kept by Notary Public Obretenov (commissioned under No.109 to practice within the jurisdiction of the Balchik Regional Court) – and having area of 212,239 m$^2$ as per plat No.14754 dated 17th September 2012 issued by the Geodesy Cartography and Cadastre Office in the town of Dobrich as well as pursuant to Title Deed No. 90 Volume XIII reg. No.4289 in case file No.1957 kept at the Registry Office at Balchik; durable land use designation: afforested territory and manner of permanent use: forest for another type of wood production where the above land has borders as



follows: land properties with Nos. 02508.88.162, 02508.88.734 and 02508.88.373; the tax assessment of the property as shown in Certificate No.2087 of 18th August 2012 was in the amount of BGN 19,388.03;

- *Land Property in Regulation* having identification No.02508.88.736 and area of 240,006 m$^2$ as per Title Deed No.51, volume VIII, reg.No.5681 case No.1173/2009 in the list kept by Notary Public Obretenov (commissioned under No.109 to practice within the jurisdiction of the Balchik Regional Court) – and having area of 251,424 m$^2$ as per Title Deed Title Deed No. 90 Volume XIII reg. No.4289 in case file No.1957 kept at the Registry Office at Balchik and plat No.17563 dated 5th November 2012 and issued by the Geodesy Cartography and Cadastre Office in the town of Dobrich; durable land use designation: afforested territory and manner of permanent use: forest for another type of wood production where the above land has borders as follows: land properties with Nos. 02508.88.386, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 and 02508.88.162; the tax assessment of the property as shown in Certificate No.176 of 6th November 2012 was in the amount of BGN 29,416.61;

All the above land properties are located in the Silver Beach area near the town of Balchik in the District of Dobrich and constitute the investment lands portfolio of the Silver Beach Project as owned by APD (declared bankrupt). The land properties so described were valuated at BGN 97,500,000 (*ninety-seven million and five hundred thousand Bulgarian Levs*) in total.

A copy of this Order should be issued upon submittal of documents proving payment of BGN 3000-state-fee as determined in the *Tariff for the State Fees Collected by the Courts under Art.50 of the Civil Procedure Code,* where said fee should be paid via bank transfer to the bank account of the Targovishte District Court along with a local municipal tax due to the Municipality of Balchik.

**INSTRUCTIONS** were given to the Buyer that said Order of Receivership should be recorded in the Property Registry at the Registry Agency at the Regional Court of Balchik.

This Order of Receivership is subject to appeal in the Varna Court of Appeals by the participants in the auction sale and the Debtor.

Judge: *Signed illegible*

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Order of Receivership No.270 dated 15th December 2012 of the Targovishte District Court. This translation has 5 pages.*

Translator: _____ *Ilka Simeonova Dyulgerova*

# ПОСТАНОВЛЕНИЕ  ЗА  ВЪЗЛАГАНЕ

## № 270/15.12. 2012 година  Търговище

### В  И М Е Т О  Н А  Н А Р О Д А

**ТЪРГОВИЩКИЯТ ОКРЪЖЕН СЪД**
на петнадесети декември
в закрито заседание в състав:

търговско отделение
две хиляди и дванадесета година

### ПРЕДСЕДАТЕЛ: АНГЕЛИНКА НИКОЛОВА

Секретар Станка Желева
като разгледа докладваното
д.н. № 14
за да се произнесе, взе предвид следното:

от съдия Николова
по описа за 2011година

По делото е постъпила молба от синдика за издаване на постановление за възлагане на недвижим имот продаден на търг по реда на чл. 717  ТЗ. Към молбата са приложени и писмени доказателства за проведения търг.

Съдът, след като разгледа молбата и приложените документи във връзка с извършената продажба на имущество констатира следното :

С определение № 248 от 19.11.2012г. съдът по несъстоятелността е разрешил на синдика на „Еър пропърти девелопмънт"АД да извърши продажба на активи от масата на несъстоятелността по реда на чл. 717 ТЗ,съобразно решението на общото събрание на кредиторите и по изготвената и представена по делото оценка на активите.

Общото събрание на кредиторите, проведено на 12.07.2012г, е взело решение за продажба на активите на обособени части и извършване на оценката им по метода на пазарната стойност на активите.   На  26.09.2012г. по делото е постъпила оценката на избрания от общото събрание на кредиторите оценител на активите. Съгласно нея обособената част от активите представляваща  недвижими имоти:

УПИ с ид. № 02508.88.734 ,,с площ  от 578 716 кв.м по нотариален акт № 51 том VIII рег. №5681 дело № 1173/2009г. на нотариус Обретенов № 109 ,с район на действие РС Балчик. и площ от 579 063 кв.м. по скица № 17562 от 5.11.2012г. на Служба по геодезия,картография и кадастър Добрич и нотариален акт № 90 том XIII рег 4289 дело 1957 на СВ Балчик, трайно предназначение на територията: горска ,начин на трайно ползване: друг вид дървопроизводствена гора, при граници : 02508.88.373, 02508.88.735, 02508.88.162 , 02508.88.780

УПИ с идентификатор 02508.88.735 с площ от 229 999 кв.м по нотариален акт Нотариален акт №51, том VIII, рег. №5681, дело №1173/2009 г. на нотариус Обретенов № 109 ,с район на действие РС Балчик  и с площ от 212 239 кв.м. по нотариален акт № 90 том XIII рег 4289 дело 1957 на СВ Балчик, и скица № 14754 от 17.09.2012г. на Службата по геодезия, картография и кадастър гр. Добрич, трайно предназначение на територията: горска ,начин на трайно ползване: друг вид дървопроизводствена гора при граници: 02508.88.162, 02508.88.734 и 02508.88.373

и УПИ с идентификатор 02508.88.736 с площ от240 006 кв. м по нотариален акт Нотариален акт №51, том VIII, рег. №5681, дело №1173/2009 г. на нотариус Обретенов № 109 ,с район на действие РС Балчик. и с площ от 251 424 кв.м. по нотариален акт № 90 том XIII рег 4289 дело 1957 на СВ Балчик, и скица № 17563 от 5.11.2012г. на

Службата по геодезия, картография и кадастър гр. Добрич, трайно предназначение на територията: горска ,начин на трайно ползване : друг вид дървопроизводствена гора при граници: 02508.88.386 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343, 02508.88.162

находящи се в м-ст „Сребристия бряг", гр. Балчик, обл. Добрич, представляващи инвестиционни терени от проекта „Силвър Бийч", собственост на „Еър Пропърти Девелопмънт" АД – в несъстоятелност. Гореописаните имоти съгласно оценката имат пазарна стойност 89 112 200,00лв. / осемдесет и девет милиона сто дванадесет хиляди и двеста лева. /

В изпълнение на определението на съда за продан на активите синдикът е изготвил нужните обявления от 20.11.2012г. и е насрочил търга по реда на чл. 717 ТЗ за 14.12.2012г. ,при начална тръжна цена от 89 112 200лв. Видно от писмените доказателства по делото обявлението отговаря на изискванията на чл. 717а ал. 1 ТЗ и е поставено на определените в чл. 717 А ал. 2 ТЗ места. Съставен е протокол за разгласа,видно от който продата е обявена на 21.11.2012г. на вратата на офиса на синдика, на 22.11.2012г. на вратата на офиса на фирмата в гр. Търговище и на 22.11.2012г. в сградата на община Търговище. Обявлението е публикувано и в бюлетина на Министерството на икономиката на 21.11.2012г.

Видно от протокола за резултатите от публичната продан на търга се е явил един купувач , който в 9,30 на 14.12.2012г. е подал оферта в запечатан плик ,съгласно изискванията на чл. 717в ал. 3 ТЗ. Офертата отговаря на изискванията на закона. Тя описва точно имотите предмет на офертата и сумата ,която купувачът дава Към офертата е приложено и платежно нареждане и извлечение от сметката на синдика ,от което е видно ,че на 13.12.2012г. кандидат- купувачът е внесъл задатък от 8 911 270лв., който представлява 10% от началната тръжна цена. Към офертата са приложени писмени доказателства удостоверяващи представителната власт на купувача и неговия пълномощник ,както и писмени доказателства удостоверяващи взетото решение за покупка на имотите и цената, от управителните органи на дружеството на купувача.. Видно от наддавателното предложение купувачът е дал цена от 97 500 000лв. Видно от представения протокол от продата правилно синдикът съобразявайки изискванията на закона е обявил за купувач на имотите „Първа инвестиционна банка"АД София Протоколът е редовен от външна страна и е подписан от синдика и пълномощника на купувача.

Видно от представените към молбата писмени доказателства още същия ден купувачът е внесъл по сметката на синдика останалата част от сумата ,в размер на 88 588 780лв. От банковата референция на „Уни Кредит Булбанк" АД е видно ,че сумата е постъпила по сметката на синдика и към момента в нея има набрана сумата от 97 500 050лв.

Към молбата на синдика са приложени и писмени доказателства удостоверяващи правото на собственост на „Еър пропърти девелопмънт"АД върху имотите предмет на публичната продан а именно Нотариален акт №51, том VIII, рег. №5681, дело №1173/2009 г. на нотариус Обретенов № 109 ,с район на действие РС Балчик ,вписан под № 13 том XIII д. 1878 от 2009г. на СВ Балчик и нотариален акт № 90 том XIII рег 4289 дело 1957 на СВ Балчик ,както и актуални скици на имотите и валидни данъчни оценки на същите.

С оглед на горното съдът намира ,че са спазени всички изисквания на закона за провеждане на публична продан ,поради което и на основание чл. 717 з, ал.1 от ТЗ, съдът намира ,че следва да бъде издадено постановление за възлагане в полза на спечелилия търга ,поради което :

## ПОСТАНОВИ:

**ВЪЗЛАГА** на Първа инвестиционна банка"АД София, бул. „Драган Цанков" № 37 , ЕИК 831094393 ,     представлявано от Васил Христов Христов ЕГН 7506176560 и Светослав Стоянов Молдовански ЕГН 7504276847 като изпълнителни директори следното имущество от масата на несъстоятелността на „Еър пропърти девелопмънт"АД, в несъстоятелност,  ЕИК 200958720:

**УПИ с ид. № 02508.88.734** „с площ от 578 716 кв.м по нотариален акт № 51 том VIII рег. №5681 дело № 1173/2009г. на нотариус Обретенов № 109 ,с район на действие РС Балчик. и площ от 579 063 кв.м. по скица № 17562 от 5.11.2012г. на Служба по геодезия,картография и кадастър Добрич и нотариален акт № 90 том XIII рег 4289 дело 1957 на СВ Балчик, трайно предназначение на територията: горска ,начин на трайно ползване: друг вид дървопроизводствена гора, при граници : 02508.88.373, 02508.88.735,  02508.88.162 ,  02508.88.780 ,  данъчната  оценка  на  имота  по удостоверение № 177 от 6.11.2012г. е в размер на 67 750,37лв

**УПИ с идентификатор 02508.88.735** с площ от 229 999 кв.м по нотариален акт Нотариален акт №51, том VIII, рег. №5681, дело №1173/2009 г. на нотариус Обретенов № 109 ,с район на действие РС Балчик и с площ от 212 239 кв.м. по нотариален акт № 90 том XIII рег 4289 дело 1957 на СВ Балчик, и скица № 14754 от 17.09.2012г. на Служба по геодезия, картография и кадастър гр. Добрич, трайно предназначение на територията: горска ,начин на трайно ползване: друг вид дървопроизводствена гора при граници: 02508.88.162, 02508.88.734 и 02508.88.373,  данъчната оценка на имота по удостоверение за данъчна оценка № 2087 от 18.08.2012г. е в размер на 19 388,03лв

и **УПИ с идентификатор 02508.88.736** с площ от240 006 кв. м по нотариален акт Нотариален акт №51, том VIII, рег. №5681, дело №1173/2009 г. на нотариус Обретенов № 109 ,с район на действие РС Балчик. и с площ от 251 424 кв.м. по нотариален акт № 90 том XIII рег 4289 дело 1957 на СВ Балчик, и скица № 17563 от 5.11.2012г. на Служба по геодезия, картография и кадастър гр. Добрич, трайно предназначение на територията:  горска ,начин на трайно ползване : друг вид дървопроизводствена гора при граници: 02508.88.386 02508.88.629,  02508.88.737,  02508.88.313, 02508.88.343, 02508.88.162 , данъчната оценка на имота по удостоверение № 176 от 6.11.2012г. е в размер на 29416,61лв ,

находящи се в м-ст „Сребристия бряг", гр. Балчик, обл. Добрич, представляващи инвестиционни терени от проекта „Силвър Бийч", собственост на „Еър Пропърти Девелопмънт" АД – в несъстоятелност . **На обща стойност от 97 500 000лв. / деветдесет и седем милиона и петстотин хиляди лева./**

Препис от постановлението да се издаде след представяне на документи за платена д.т. в размер на 3000лв. съгласно Тарифата за държавните такси,които се събират от съдилищата по ГПК, чл. 50,  по сметка на ТОС и местен данък към Община Балчик

Указва на купувача ,че постановлението подлежи на вписване в Агенция по вписванията- Имотен Регистър, при Районен съд Балчик .

Настоящото постановление подлежи на обжалване пред Апелативен съд – гр. Варна от участвалнте в търга и от длъжника

**СЪДИЯ:**

# EXHIBIT 5

1



# AYR LOGISTICS LIMITED. INC.
### 459 CHIPPENDALE DRIVE
### ROCKWALL, TEXAS 75032  USA
### Phone (972) 722-8268 • Fax (972) 722-3540
### E-mail: ayrlog@yahoo.com

20 December 2010

**To**:    The Board of Directors

TB Investbank AD

Sofia,  Republic of Bulgaria

**To** :     The Deputy Governor; and

The Head of Banking Supervision (Central Bank Regulatory Division)

Central / National  Bank of the Republic of Bulgaria

**Regarding** :  **TB Investbank AD of Republic of Bulgaria**  – Breach of contractual obligations, Breach of Society for Worldwide Interbank Financial Telecommunication (SWIFT) undertakings, by-laws, corporate rules and contractual terms, Breach of United States of America Federal  Laws, Wrongful and Unlawful Conduct, Breach of International Banking Laws and Practices.

Dear Sirs / Mesdames,

1. I, Julian Richard Napier Bartlett, attorney, notary and conveyancer of thirty years experience, do hereby confirm that I am the attorney and  legal adviser to the Ayr  Group of Companies worldwide,  including Ayr Logistics Logistics Limited, Inc. and all of its associated and subsidiary companies.



2

2. This letter is directed at the Board of Directors of TB Investbank AD of Bulgaria, and the Deputy Governor and Head of Banking Supervision of the Central Bank of the Republic of Bulgaria, to be delivered and / or transmitted by Ayr's trusted Bulgarian Attorney Mr. Zachari Tomov.

3. This letter constitutes a final notification to the Board of Directors of Investbank of Ayr's serious intention to immediately take the necessary actions and steps against Investbank, in the event of Investbank continuing to disregard the Laws of Bulgaria, the Laws of the United States of America, the International Banking Laws, the provisions of the written contract namely the Special Purpose Deposit Account Agreement between Ayr and Investbank dated 27 September 2010, and the SWIFT contractual provisions.

4. I have been provided with copies of various correspondence which has passed between attorney Zachari Tomov and Investbank, and I have seen the various opinions on the meaning and effect of SWIFT MT 799. The opinions, with respect, accord with my understanding of what is a SWIFT MT 799.

5. From the evidence made available to me and substantiated by the various documentation, I accept that Investbank is intentionally, wrongfully and unlawfully in breach of Investbank's obligations in terms of the Special Deposit Account Agreement with Ayr dated 27 September 2010, in that , inter alia, Investbank has :-

5.1    failed to successfully deliver to Ayr Logistics Limited, Inc.,or Ayr Development Group Limited and / or to such other entities as Ayr might instruct Investbank to send an MT 799, more particularly, to send an MT 799 to the New York Bankers of Oriana Capital Partners of the USA;

5.2    threatened to suspend the deposit account which was agreed upon and constitutes the underlying funds, the existence of which is to be confirmed by the MT 799, of which confirmation of Investbank's intention to transmit the MT 799 was sent by Investbank to Oriana Capital Partners of the USA;



3

5.3   interfering and obstructing the funding mechanism for which the deposit was established and the Special Deposit Account Agreement was entered into on 27 September 2010;

5.4   causing our client Ayr, Ayr Property Development AD and Silver Beach Projects and other companies involved in the transactions, to suffer damages and serious delays;

5.5   disregarding and intentionally breaching international banking laws and practices;

5.6   interfering and blocking foreign contractual relationships between Bulgarian companies and the Ayr Group of companies both in the United States of America and elsewhere, as well as interfering with contractual relations between Ayr and other American companies;

5.7   obstructing and preventing foreign investment, infrastructural development,  job creation and other benefits to the Republic of Bulgaria;

5.8   breaching the SWIFT undertakings, by-laws, corporate rules, contractual terms and general terms and conditions, thereby rendering Investbank liable to expulsion as a member of SWIFT, and thereby bringing into disrepute the certainty and confidence of the operations of the SWIFT system of interbank communications;

5.9   bringing The Republic of Bulgaria into disrepute and thereby jeopardizing and prejudicing the prospects of Bulgaria succeeding to gain entry to the European Union;

5.10   breaching the Laws of the Republic of Bulgaria.



4

6.     The abovementioned list of wrongful and unlawful acts and omissions on the part of Investbank is not an exhaustive or complete list, and Ayr reserves the right to extend the grounds to take action and claim damages against Investbank.

7.     I am instructed to advise you,  Investbank of Bulgaria, that your actions and omissions are completely unacceptable to Ayr, to Ayr's subsidiary companies in Bulgaria, to Silver Beach Projects and its associated companies and to the various American companies with which Ayr deals in the USA  in respect of this transaction and the planned projects  in Bulgaria.  Ayr will not permit this unacceptable and incomprehensible  behaviour  on the part of Investbank to be tolerated or be allowed to happen. Ayr shall insist on  the necessary sanctions being brought against Investbank  in terms of, amongst other things,  the Laws of the USA, the Laws of Bulgaria, International Law (via the International courts of justice at the Hague), and the European Union and United Nations Organisation.

8.     **I am instructed to advise that Investbank has 3 (three) days** from date of receipt of this letter, but in any event on or  before 23 December 2010, to fully comply with its contractual obligations in terms of the Special Deposit Account Agreement with Ayr dated 27 September 2010, to the full satisfaction of Ayr and / or Oriana Capital Partners (or  any other entity Ayr advise you of), failing which Ayr will immediately take the aforementioned actions against Investbank to obtain an Order  of Court against Investbank directing that it  perform in terms of its contractual obligations aforementioned, and for damages suffered by the various Claimants.

9.     Ayr will not take action alone, and reserves the right to have as joint Claimants all of the companies with which Ayr is linked in this particular transaction.

10.    Legal proceedings will be instituted against Investbank in the USA, in Bulgaria and through the international courts.

11.    In addition to the legal actions  to claim performance and damages, Ayr shall also report the full facts of this matter to:-



5

11.1   The Society for Worldwide Interbank Financial Telecommunications (SWIFT) with a request that Interbank be expelled as a member, and noted as a defaulting bank with all of its 9000 (nine thousand) member banks, corporates and security houses in 209 countries around the world;

11.2   The European Union, to advise of the facts of this matter , and of the fact that Bulgaria is not a country with which foreign companies can do business with their banking system, as they cannot be trusted and have no regard for International Banking Laws and Practices, and stating that this incident should count against Bulgaria in its efforts to gain entry to the EU as a member state;

11.3   The United Nations, to advise that Investbank should be noted as an untrustworthy bank not to be dealt with. ( In this regard it is hoped that the internal Bulgarian banking regulations can and shall immediately control their own member banks, more especially when there is clear evidence of this type of unacceptable and unlawful behaviour);

11.4   The International Banking Ombudsman;

11.5   All of Investbank's US correspondent banks;

11.6   The Government of the Republic of Bulgaria (to the extent that my client's dealings with the Bulgarian Central Bank do not have this disgraceful situation brought to the attention of the Minister of Finance and other responsible Ministeries).

12.    I am instructed to make it abundantly clear to Investbank that this is regarded by Ayr as a very serious matter with international consequences. Reputable companies doing international business rely on the honesty and integrity of the banking system and the individual banks. From what has transpired, it appears that Investbank cannot be trusted and clearly has little or no integrity. My instructions are to make sure, in the interests of other banks and companies around the world , that Investbank must not be used, and is both unreliable,



6

dishonest, and behaves in an intentionally unlawful and obstructive manner. This message can be distributed around the world very rapidly and purely in the interests of protecting innocent businesses from being entrapped in the same unlawful manner.

13. Be pleased to take notice further that this is **the final notification** which Ayr will issue to Investbank before proceeding with the actions as set out herein.

14. It is my clients desire that this matter can be resolved in an acceptable manner immediately and that the funding mechanism and the project relying thereon can proceed in the interests of the Republic of Bulgaria.

Your faithfully

**Ayr Logistics Limited, Inc**

Per: J.R.N. Bartlett

Ayr International Legal Affairs

# EXHIBIT 6

# *Фрея* *Freya*
# *Транслейшънс* *Translations*

### Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

**CORPORATE COMMERCIAL BANK**

13/11/2014 11:52:36  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 01 8 |
| IBAN: | BG21 KORP 9220 2029 0120 01 |
| Currency: | BGN |
| Balance at the beginning of the period: | 0.00 |

**BANK ACCOUNT STATEMENT**

**Parameters:**

| | |
|---|---|
| Period: from – to: | 14th January 2013 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | All |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 14/01/2013 | 14/01/2013 | 229751 | Received transfer via RINGS BG59 UNCR 7000 1520 1153 99 Ordered by ExR PROPxRTI DEVELOPMxNT AD Pursuant to court order 8th January 2013 of the Targovishte District Court (TDC) payment under Deposit Agreement | Credit | 97,500,000.00 | 97,500,000.00 | Posted |
| 14/02/2013 | 14/02/2013 | 944469 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/02/2013 | 14/02/2013 | 944470 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/03/2013 | 14/03/2013 | 368421 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/03/2013 | 14/03/2013 | 368422 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 15/04/2013 | 14/04/2013 | 512044 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 15/04/2013 | 14/04/2013 | 512045 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/05/2013 | 14/05/2013 | 666844 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/05/2013 | 14/05/2013 | 666845 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/06/2013 | 14/06/2013 | 366994 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/06/2013 | 14/06/2013 | 366995 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 15/07/2013 | 14/07/2013 | 660689 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 15/07/2013 | 14/07/2013 | 660690 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/08/2013 | 14/08/2013 | 444566 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |





| | | | | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 14/08/2013 | 14/08/2013 | 444567 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 16/09/2013 | 14/09/2013 | 218933 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 16/09/2013 | 14/09/2013 | 218934 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/10/2013 | 14/10/2013 | 546256 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/10/2013 | 14/10/2013 | 546257 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/11/2013 | 14/11/2013 | 954039 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/11/2013 | 14/11/2013 | 954040 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/12/2013 | 14/12/2013 | 223747 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/12/2013 | 14/12/2013 | 223748 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/01/2014 | 14/01/2014 | 118201 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/01/2014 | 14/01/2014 | 118202 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/02/2014 | 14/02/2014 | 622586 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |

VCSBank                                                                                           Page 1 of 2

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 01 8 |
| IBAN: | BG21 KORP 9220 2029 0120 01 |
| Currency: | BGN |
| Balance at the beginning of the period: | 97,975,312.50 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 14/02/2014 | 14/02/2014 | 622587 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/03/2014 | 14/03/2014 | 23382 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/03/2014 | 14/03/2014 | 23383 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/04/2014 | 14/04/2014 | 215498 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/04/2014 | 14/04/2014 | 215499 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |





| 14/05/2014 | 14/05/2014 | 276070 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
|---|---|---|---|---|---|---|---|
| 14/05/2014 | 14/05/2014 | 276071 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 16/06/2014 | 14/06/2014 | 339003 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 16/06/2014 | 14/06/2014 | 339004 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/07/2014 | 14/07/2014 | 381189 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 333,422.92 | 97,833,422.92 | Posted |
| 14/07/2014 | 14/07/2014 | 381190 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date Transaction No.29428 | Debit | 333,422.92 | 97,500,000.00 | Posted |
| 14/08/2014 | 14/08/2014 | 806645 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 97,647,875.00 | Posted |
| 14/08/2014 | 14/08/2014 | 806646 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date Transaction No.29428 | Debit | 147,875.00 | 97,500,000.00 | Posted |
| 15/09/2014 | 14/09/2014 | 898139 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 97,647,875.00 | Posted |
| 15/09/2014 | 14/09/2014 | 898140 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date Transaction No.29428 | Debit | 147,875.00 | 97,500,000.00 | Posted |
| 14/10/2014 | 14/10/2014 | 466517 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 97,647,875.00 | Posted |
| 14/10/2014 | 14/10/2014 | 466518 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date Transaction No.29428 | Debit | 147,875.00 | 97,500,000.00 | Posted |





**CORPORATE COMMERCIAL BANK**

13/11/2014 11:54:32  (Accounting date 06/11/2014)

|  |  |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 02 5 |
| IBAN: | BG91 KORP 9220 2029 0120 02 |
| Currency: | BGN |
| Balance at the beginning of the period: | 0.00 |

**BANK ACCOUNT**

**STATEMENT**

**Parameters:**

| | |
|---|---|
| Period: from – to: | 17th January 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | All |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 17/01/2014 | 17/01/2014 | 111825 | Payment Transaction BG74 KORP 9220 1029 0120 51 Ordered by AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) Details: Crediting a Deposit | Credit | 2,000,000.00 | 2,000,000.00 | Posted |
| 17/02/2014 | 17/02/2014 | 947785 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,750.00 | 2,009,750.00 | Posted |
| 17/03/2014 | 17/03/2014 | 367519 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,797.53 | 2,019,547.53 | Posted |
| 17/04/2014 | 17/04/2014 | 335575 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,845.29 | 2,029,392.82 | Posted |
| 19/05/2014 | 17/05/2014 | 335763 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,893.29 | 2,039,286.11 | Posted |
| 17/06/2014 | 17/06/2014 | 724155 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,941.52 | 2,049,227.63 | Posted |
| 17/07/2014 | 17/07/2014 | 218080 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 6,319.59 | 2,055,547.22 | Posted |
| 18/08/2014 | 17/08/2014 | 373095 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 3,117.58 | 2,058,664.80 | Posted |
| 17/09/2014 | 17/09/2014 | 464309 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 3,122.31 | 2,061,787.11 | Posted |
| 17/10/2014 | 17/10/2014 | 316437 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 3,127.04 | 2,064,914.15 | Posted |
| 20/10/2014 | 20/10/2014 | 599568 | Termination of deposit Interest accrued on Deposit transaction No. 39033. Interest accrued BGN 17.21 Voided Bank Order pursuant to Memo B-5774/18th September 2014 explaining the lack of a signed deposit contract | Credit | 17.21 | 2,064,914.15 | Voided |
| 20/10/2014 | 17/10/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit | Credit | -3,127.04 | 2,061,787.11 | Posted |



| | | | contract | | | | |
|---|---|---|---|---|---|---|---|
| 20/10/2014 | 17/09/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -3,122.31 | 2,058,664.80 | Posted |
| 20/10/2014 | 17/08/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -3,117.58 | 2,055,547.22 | Posted |

**VCSBank**                                                                 Page 1 of 2

---

| | | |
|---|---|---|
| **Holder:** | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | |
| **Account:** | Short-term deposits in BGN of business entities | |
| **Analytic No.:** | 1613 290120 02 5 | |
| **IBAN:** | BG91 KORP 9220 2029 0120 02 | |
| **Currency:** | BGN | |
| Balance at the beginning of the period: | 2,055,547.22 | **BANK ACCOUNT** |

**STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 20/10/2014 | 17/07/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -6,319.59 | 2,049,227.63 | Posted |
| 20/10/2014 | 17/06/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -9,941.52 | 2,039,286.11 | Posted |
| 20/10/2014 | 17/05/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -9,893.29 | 2,029,392.82 | Posted |
| 20/10/2014 | 17/04/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; | Credit | -9,845.29 | 2,019,547.53 | Posted |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | | | | |
| 20/10/2014 | 17/03/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -9,797.53 | 2,009,750.00 | Posted |
| 20/10/2014 | 17/02/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -9,750.00 | 2,000,000.00 | Posted |

VCSBank                                                                                                                                    Page 2 of 2

---

## CORPORATE COMMERCIAL BANK

13/11/2014 11:56:34  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 03 2 |
| IBAN: | BG64 KORP 9220 2029 0120 03 |
| Currency: | BGN |
| Balance at the beginning of the period: | 0.00 |

**BANK ACCOUNT**

**STATEMENT**

| | |
|---|---|
| **Parameters:** | |
| Period: from – to: | 10th April 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | All |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 10/04/2014 | 10/04/2014 | 546852 | Payment Transaction BG74 KORP 9220 1029 0120 51 Ordered by AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) Details: Crediting a Deposit | Credit | 1,000,000.00 | 1,000,000.00 | Posted |
| 10/05/2014 | 10/05/2014 | 252244 | Deposit Maturity Date Interest accrued on Deposit Transaction No.40116 | Credit | 4,875.00 | 1,004,875.00 | Posted |
| 10/06/2014 | 10/06/2014 | 976981 | Deposit Maturity Date Interest accrued on Deposit Transaction No.40116 | Credit | 4,898.77 | 1,009,773.77 | Posted |
| 10/07/2014 | 10/07/2014 | 827520 | Deposit Maturity Date Interest accrued on Deposit Transaction No.40116 | Credit | 3,905.30 | 1,013,679.07 | Posted |
| 11/08/2014 | 10/08/2014 | 958769 | Deposit Maturity Date | Credit | 1,537.41 | 1,015,216.48 | Posted |




| | | | Interest accrued on Deposit Transaction No.40116 | | | | |
|---|---|---|---|---|---|---|---|
| 10/09/2014 | 10/09/2014 | 50458 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.40116 | Credit | 1,539.74 | 1,016,756.22 | Posted |
| 10/10/2014 | 10/10/2014 | 901274 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.40116 | Credit | 1,542.08 | 1,018,298.30 | Posted |
| 20/10/2014 | 20/10/2014 | 599481 | Termination of deposit<br>Interest accrued on Deposit transaction No. 40116. Interest accrued BGN 28.29 Voided Bank Order pursuant to Memo B-5774/18th September 2014 explaining the lack of a signed deposit contract | Credit | 28.29 | 1,018,298.30 | Posted |
| 20/10/2014 | 10/10/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -1,542.08 | 1,016,756.22 | Posted |
| 20/10/2014 | 10/09/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -1,539.74 | 1,015,216.48 | Posted |
| 20/10/2014 | 10/08/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -1,537.41 | 1,013,679.07 | Posted |
| 20/10/2014 | 10/07/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -3,905.30 | 1,009,773.77 | Posted |
| 20/10/2014 | 10/06/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -4,898.77 | 1,004,875.00 | Posted |

**VCSBank**





| | | Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | | | | |
| | | Account: | Short-term deposits in BGN of business entities | | | | |
| | | Analytic No.: | 1613 290120 03 2 | | | | |
| | | IBAN: | BG64 KORP 9220 2029 0120 03 | | | | |
| | | Currency: | BGN | | | | |
| Balance at the beginning of the period: | | | 1,004,875.00 | | | **BANK ACCOUNT STATEMENT** | |
| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 20/10/2014 | 10/05/2014 | 599547 | Multi-line Payment Order Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -4,875.00 | 1,000,000.00 | Posted |

VCSBank                                                                                               Page 2 of 2





CORPORATE COMMERCIAL BANK

13/11/2014 11:53:54  (Accounting date 06/11/2014)

| | | |
|---|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | |
| Account: | Special deposits in BGN of business entities | |
| Analytic No.: | 1731 290120 01 7 | |
| IBAN: | BG74 KORP 9220 1029 0120 51 | |
| Currency: | BGN | |
| Balance at the beginning of the period: | 0.00 | **BANK ACCOUNT STATEMENT** |

| | |
|---|---|
| **Parameters:** | |
| Period: from – to: | 12th February 2013 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | All |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 12/02/2013 | 12/02/2013 | 445382 | Payment Transaction<br>BG66 KORP 9220 1029 0120 01<br>Ordered by AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)<br>Details: Closing of account and transfering of remaining balance | Credit | 1.04 | 1.04 | Posted |
| 12/02/2013 | 12/02/2013 | 446038 | Foreign Currency Transaction<br>Details: PURCHASE of foreign currency<br>PURCHASED: USD 1.69<br>SOLD: BGN 2.43<br>Rate of Exchange: USD 1/BGN 1.439200<br>Client: AYR PROPERTY DEVELOPMENT AD<br>HAVING EIK: 200958720 | Credit | 2.43 | 3.47 | Posted |
| 12/02/2013 | 12/02/2013 | 446219 | Foreign Currency Transaction<br>Details: PURCHASE of foreign currency<br>PURCHASED: EUR 1.37<br>SOLD: BGN 2.67<br>Rate of Exchange: EUR 1/BGN 1.950000<br>Client: AYR PROPERTY DEVELOPMENT AD<br>HAVING EIK: 200958720 | Credit | 2.67 | 6.14 | Posted |
| 14/02/2013 | 14/02/2013 | 944470 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 475,318.64 | Posted |
| 15/02/2013 | 15/02/2013 | 228935 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of National Revenue Agency (NRA) - Targovishte office<br>Details: Income Tax on Supplementary Remuneration of Trustee<br>Taxable entity AYR PROPERTY DEVELOPMENT AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>HAVING EIK: 200958720 | Debit | 40,000.00 | 435,318.64 | Posted |
| 15/02/2013 | 15/02/2013 | 228935 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 1.30 | 435,317.34 | Posted |
| 15/02/2013 | 15/02/2013 | 219874 | Payment Transaction<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Partial Payment pursuant to order 34/12th Feb.2013 in Case 14/2011 in the docket of TDC | Debit | 360,000.00 | 75,317.34 | Posted |
| 15/02/2013 | 15/02/2013 | 229030 | Foreign Currency Transfer – internal<br>Foreign Currency Transfer Ref.26/01/00003495<br>Amount EUR 30,957.85<br>Value Date 15th February 2013<br>Ordered by AYR PROPERTY DEVELOPMENT AD (in bankruptcy)<br>Rate of Exchange 1.957500<br>Beneficiary: Zahari Jeliazkov Tomov – attorney at law<br>Details: Reimbursement of expenses | Debit | 60,599.99 | 14,717.35 | Posted |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 25/02/2013 | 25/02/2013 | 64957 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 14,709.85 | Posted |
| 14/03/2013 | 14/03/2013 | 368422 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 490,022.35 | Posted |

**VCSBank**                                                                                        Page 1 of 13

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 490,022.35 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 18/03/2013 | 18/03/2013 | 5294 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee Varna TD of NRA - Targovishte office<br>Details: Income Tax on Supplementary Remuneration of Trustee<br>Taxable entity AYR PROPERTY DEVELOPMENT AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>HAVING EIK: 200958720 | Debit | 45,000.00 | 445,022.35 | Posted |
| 18/03/2013 | 18/03/2013 | 5294 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 1.30 | 445,021.05 | Posted |
| 18/03/2013 | 18/03/2013 | 5518 | Payment Transaction<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Partial Payment pursuant to order 34/12th Feb.2013 in Case 14/2011 in the docket of TDC | Debit | 405,000.00 | 40,021.05 | Posted |
| 25/03/2013 | 25/03/2013 | 672215 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 40,013.55 | Posted |
| 15/04/2013 | 14/04/2013 | 512045 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 515,326.05 | Posted |
| 17/04/2013 | 17/04/2013 | 162317 | Payment Transaction<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Partial Payment pursuant to order 34/12th Feb.2013 in Case 14/2011 in the docket of TDC | Debit | 450,000.00 | 65,326.05 | Posted |
| 17/04/2013 | 17/04/2013 | 162373 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Income Tax on Supplementary Remuneration of Trustee<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 50,000.00 | 15,326.05 | Posted |
| 17/04/2013 | 17/04/2013 | 162373 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 1.30 | 15,324.75 | Posted |




| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 23/04/2013 | 23/04/2013 | 385542 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for April 2013<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 15,174.75 | Posted |
| 23/04/2013 | 23/04/2013 | 385542 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 15,173.85 | Posted |
| 23/04/2013 | 23/04/2013 | 385607 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for April 2013 | Debit | 1,350.00 | 13,823.85 | Posted |
| 25/04/2013 | 25/04/2013 | 170513 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 13,816.35 | Posted |
| 08/05/2013 | 08/05/2013 | 516294 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.373/8th May 2013 – accounting and administrative services | Debit | 1,230.00 | 12,586.35 | Posted |
| 08/05/2013 | 08/05/2013 | 516294 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 12,585.45 | Posted |
| 14/05/2013 | 14/05/2013 | 666845 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 487,897.95 | Posted |

VCSBank                                                                                           Page 2 of 13

| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 487,897.95 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 21/05/2013 | 21/05/2013 | 501377 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for May 2013<br>Taxable entity AYR PROPERTY DEVELOPMENT AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>HAVING EIK: 200958720 | Debit | 150.00 | 487,747.95 | Posted |
| 21/05/2013 | 21/05/2013 | 501377 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 487,747.05 | Posted |
| 21/05/2013 | 21/05/2013 | 501548 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for May | Debit | 1,350.00 | 486,397.05 | Posted |

| | | | 2013 | | | | |
|---|---|---|---|---|---|---|---|
| 21/05/2013 | 21/05/2013 | 501572 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for May 2013 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 45,000.00 | 441,397.05 | Posted |
| 21/05/2013 | 21/05/2013 | 501572 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 441,396.15 | Posted |
| 21/05/2013 | 21/05/2013 | 501712 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Partial Payment pursuant to order 34/12th February 2013 of TDC | Debit | 405,000.00 | 36,396.15 | Posted |
| 27/05/2013 | 27/05/2013 | 703165 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 36,388.65 | Posted |
| 03/06/2013 | 03/06/2013 | 866745 | Direct Transfer BG82 FINV 9150 10BG NOA3 5J Payee: VIA AND CO EOOD Details: Inv.390/3rd June 2013 – accounting and administrative services | Debit | 1,230.00 | 35,158.65 | Posted |
| 03/06/2013 | 03/06/2013 | 866745 | Direct Transfer Bank Commission Fee | Debit | 0.90 | 35,157.75 | Posted |
| 14/06/2013 | 14/06/2013 | 366995 | Deposit Maturity Date Interest accrued on deposit's maturity date | Credit | 475,312.50 | 510,470.25 | Posted |
| 19/06/2013 | 19/06/2013 | 303016 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for June 2013 Taxable entity Ayr Property Development AD (in bankruptcy) having EIK: 200958720 Type of doc. 09 No. Period- | Debit | 50,150.00 | 460,320.25 | Posted |
| 19/06/2013 | 19/06/2013 | 303016 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 460,319.35 | Posted |
| 19/06/2013 | 19/06/2013 | 303037 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for June 2013 | Debit | 451,350.00 | 8,969.35 | Posted |
| 20/06/2013 | 20/06/2013 | 606922 | Payment Transaction to State Budget BG36 CREX 9260 3114 5494 01 Code payee 111111 Code payer 000000 Payee: REGISTRY AGENCY Details: Annual Financial Statement declared Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 25.00 | 8,944.35 | Posted |
| 20/06/2013 | 20/06/2013 | 606922 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 8,943.45 | Posted |

VCSBank

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Holder:** | | | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | | | | |
| **Account:** | | | Special deposits in BGN of business entities | | | | |
| **Analytic No.:** | | | 1731 290120 01 7 | | | | |
| **IBAN:** | | | BG74 KORP 9220 1029 0120 51 | | | | |
| **Currency:** | | | BGN | | | | |
| **Balance at the beginning of the period:** | | | 8,943.45 | | | | |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 25/06/2013 | 25/06/2013 | 710315 | Interest accrued | Credit | 35.19 | 8,978.64 | Posted |
| 25/06/2013 | 25/06/2013 | 721377 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 8,971.14 | Posted |
| 05/07/2013 | 05/07/2013 | 807534 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.409/4th July 2013 – accounting<br>and administrative services | Debit | 1,230.00 | 7,741.14 | Posted |
| 05/07/2013 | 05/07/2013 | 807534 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 7,740.24 | Posted |
| 15/07/2013 | 15/07/2013 | 660690 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 483,052.74 | Posted |
| 17/07/2013 | 17/07/2013 | 341766 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for July 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 44,500.00 | 438,552.74 | Posted |
| 17/07/2013 | 17/07/2013 | 341766 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 1.30 | 438,551.44 | Posted |
| 17/07/2013 | 17/07/2013 | 343367 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for July<br>2013 | Debit | 400,500.00 | 38,051.44 | Posted |
| 18/07/2013 | 18/07/2013 | 655720 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for July 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 37,901.44 | Posted |
| 18/07/2013 | 18/07/2013 | 655720 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 37,900.54 | Posted |
| 18/07/2013 | 18/07/2013 | 655724 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for July<br>2013 | Debit | 1,350.00 | 36,550.54 | Posted |
| 25/07/2013 | 25/07/2013 | 473848 | Interest accrued | Credit | 5.28 | 36,555.82 | Posted |
| 25/07/2013 | 25/07/2013 | 484758 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 36,548.32 | Posted |
| 01/08/2013 | 01/08/2013 | 788858 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.424/1st August 2013 –<br>accounting and administrative services | Debit | 1,230.00 | 35,318.32 | Posted |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 01/08/2013 | 01/08/2013 | 788858 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 35,317.42 | Posted |
| 09/08/2013 | 09/08/2013 | 536960 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 25.00 | 35,292.42 | Posted |
| 09/08/2013 | 09/08/2013 | 536960 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 35,291.52 | Posted |
| 14/08/2013 | 14/08/2013 | 444567 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 510,604.02 | Posted |
| 26/08/2013 | 26/08/2013 | 245257 | Interest accrued | Credit | 18.90 | 510,622.92 | Posted |

VCSBank                                                                                    Page 4 of 13

---

| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 510,622.92 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 26/08/2013 | 26/08/2013 | 255881 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 510,615.42 | Posted |
| 28/08/2013 | 28/08/2013 | 684892 | Direct Transfer<br>BG89 KORP 9220 1050 5063 02<br>Payee: Maria Gavrilova Nakova<br>Details: partial payment of attorney's fee in<br>Case 14/2011 kept in the docket of TDC | Debit | 20,000.00 | 490,615.42 | Posted |
| 03/09/2013 | 03/09/2013 | 803636 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.440/2nd September 2013 –<br>accounting and administrative services | Debit | 1,230.00 | 489,385.42 | Posted |
| 03/09/2013 | 03/09/2013 | 803636 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 489,384.52 | Posted |
| 04/09/2013 | 04/09/2013 | 81250 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for August 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 489,234.52 | Posted |
| 04/09/2013 | 04/09/2013 | 81250 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 489,233.62 | Posted |
| 04/09/2013 | 04/09/2013 | 81260 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for August 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No. | Debit | 45,000.00 | 444,233.62 | Posted |

| | | | Period-<br>having EIK: 200958720 | | | | |
|---|---|---|---|---|---|---|---|
| 04/09/2013 | 04/09/2013 | 81260 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 444,232.72 | Posted |
| 04/09/2013 | 04/09/2013 | 81268 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for August<br>2013 | Debit | 1,350.00 | 442,882.72 | Posted |
| 04/09/2013 | 04/09/2013 | 81518 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for August<br>2013 | Debit | 405,000.00 | 37,882.72 | Posted |
| 16/09/2013 | 14/09/2013 | 218934 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 513,195.22 | Posted |
| 25/09/2013 | 25/09/2013 | 725488 | Interest accrued | Credit | 27.74 | 513,222.96 | Posted |
| 25/09/2013 | 25/09/2013 | 737504 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 513,215.46 | Posted |
| 01/10/2013 | 01/10/2013 | 785446 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.453/1st October 2013 –<br>accounting and administrative services | Debit | 1,230.00 | 511,985.46 | Posted |
| 01/10/2013 | 01/10/2013 | 785446 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 511,984.56 | Posted |
| 09/10/2013 | 09/10/2013 | 611568 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for Sept. 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 511,834.56 | Posted |
| 09/10/2013 | 09/10/2013 | 611568 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 511,833.66 | Posted |

---

| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the<br>period: | 511,833.66 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank<br>order No. | Details of payment | Debit/<br>Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 09/10/2013 | 09/10/2013 | 611574 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for Sept. 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.          Period-<br>having EIK: 200958720 | Debit | 5,400.00 | 506,433.66 | Posted |
| 09/10/2013 | 09/10/2013 | 611574 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 506,432.76 | Posted |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 09/10/2013 | 09/10/2013 | 611583 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for Sept. 2013 | Debit | 1,350.00 | 505,082.76 | Posted |
| 09/10/2013 | 09/10/2013 | 611615 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for Sept. 2013 | Debit | 48,600.00 | 456,482.76 | Posted |
| 14/10/2013 | 14/10/2013 | 546257 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 931,795.26 | Posted |
| 14/10/2013 | 14/10/2013 | 581054 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development AD<br>(in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 25.00 | 931,770.26 | Posted |
| 14/10/2013 | 14/10/2013 | 581054 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 931,769.36 | Posted |
| 22/10/2013 | 22/10/2013 | 618379 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under art.71, para 2 of the<br>Civil Procedure Code<br>in case 133/2013 in the docket of TDC<br>Taxable entity Ayr Property Development AD<br>(in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 1,166.00 | 930,603.36 | Posted |
| 22/10/2013 | 22/10/2013 | 618379 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 930,602.46 | Posted |
| 22/10/2013 | 22/10/2013 | 618395 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under art.124, para 4 of the<br>Civil Procedure Code<br>in case 133/2013 in the docket of TDC<br>Taxable entity Ayr Property Development AD<br>(in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 80.00 | 930,522.46 | Posted |
| 22/10/2013 | 22/10/2013 | 618395 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 930,521.56 | Posted |
| 25/10/2013 | 25/10/2013 | 689410 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under art.124, para 4 of the<br>Civil Procedure Code, art.69, para 1<br>in case 135/2013 in the docket of TDC<br>Taxable entity Ayr Property Development AD<br>(in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 1,165.55 | 929,356.01 | Posted |
| 25/10/2013 | 25/10/2013 | 689410 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 929,355.11 | Posted |



| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 929,355.11 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 25/10/2013 | 25/10/2013 | 689425 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under art.124, para 4 of the Civil Procedure Code in case 135/2013 in the docket of TDC Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 80.00 | 929,275.11 | Posted |
| 25/10/2013 | 25/10/2013 | 689425 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 929,274.21 | Posted |
| 25/10/2013 | 25/10/2013 | 689445 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under art.124, para 4 of the Civil Procedure Code, art.69, para 1 in case 134/2013 in the docket of TDC Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 1,165.55 | 928,108.66 | Posted |
| 25/10/2013 | 25/10/2013 | 689445 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 928,107.76 | Posted |
| 25/10/2013 | 25/10/2013 | 689453 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under art.124, para 4 of the Civil Procedure Code in case 134/2013 in the docket of TDC Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 80.00 | 928,027.76 | Posted |
| 25/10/2013 | 25/10/2013 | 689453 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 928,026.86 | Posted |
| 25/10/2013 | 25/10/2013 | 794268 | Interest accrued | Credit | 54.73 | 928,081.59 | Posted |
| 25/10/2013 | 25/10/2013 | 805222 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 928,074.09 | Posted |
| 28/10/2013 | 28/10/2013 | 993404 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for Oct. 2013 | Debit | 1,350.00 | 926,724.09 | Posted |



| | | | | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 28/10/2013 | 28/10/2013 | 993425 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for Oct. 2013 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 926,574.09 | Posted |
| 28/10/2013 | 28/10/2013 | 993425 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 926,573.19 | Posted |
| 06/11/2013 | 06/11/2013 | 45649 | Direct Transfer BG82 FINV 9150 10BG NOA3 5J Payee: VIA AND CO EOOD Details: Inv.465/6th November 2013 – accounting and administrative services | Debit | 1,230.00 | 925,343.19 | Posted |
| 06/11/2013 | 06/11/2013 | 45649 | Direct Transfer Bank Commission Fee | Debit | 0.90 | 925,342.29 | Posted |
| 14/11/2013 | 14/11/2013 | 954040 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,400,654.79 | Posted |

---

**VCSBank**                                                                                        **Page 7 of 13**

|  |  |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 1,400,654.79 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 18/11/2013 | 18/11/2013 | 623165 | Payment Transaction to State Budget BG81 TTBB 9400 3115 0686 65 Code payee 000000 Code payer 000000 Payee: COURT OF APPEAL - VARNA Details: State Fees due for private complaint filed under case 133/2013 in the docket of TDC Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 15.00 | 1,400,639.79 | Posted |
| 18/11/2013 | 18/11/2013 | 623165 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,400,638.89 | Posted |
| 18/11/2013 | 18/11/2013 | 623169 | Payment Transaction to State Budget BG81 TTBB 9400 3115 0686 65 Code payee 000000 Code payer 000000 Payee: COURT OF APPEAL - VARNA Details: State Fees due for private complaint filed under case 134/2013 in the docket of TDC Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 15.00 | 1,400,623.89 | Posted |
| 18/11/2013 | 18/11/2013 | 623169 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,400,622.99 | Posted |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18/11/2013 | 18/11/2013 | 639054 | Payment Transaction to State Budget BG36 CREX 9260 3114 5494 01 Code payee 000000 Code payer 000000 Payee: REGISTRY AGENCY Details: ACTS DECLARED Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 25.00 | 1,400,597.99 | Posted |
| 18/11/2013 | 18/11/2013 | 639054 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,400,597.09 | Posted |
| 25/11/2013 | 25/11/2013 | 567033 | Interest accrued | Credit | 91.68 | 1,400,688.77 | Posted |
| 25/11/2013 | 25/11/2013 | 578315 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 1,400,681.27 | Posted |
| 26/11/2013 | 26/11/2013 | 764934 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for Nov. 2013 | Debit | 1,350.00 | 1,399,331.27 | Posted |
| 26/11/2013 | 26/11/2013 | 764951 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for Nov. 2013 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 1,399,181.27 | Posted |
| 26/11/2013 | 26/11/2013 | 764951 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,399,180.37 | Posted |
| 02/12/2013 | 02/12/2013 | 975592 | Direct Transfer BG55 KORP 9220 1052 6963 01 Payee: VIA AND CO EOOD Details: Inv.479/2nd Dec. 2013 – accounting and administrative services | Debit | 1,230.00 | 1,397,950.37 | Posted |
| 06/12/2013 | 06/12/2013 | 235890 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under case 135/2013 in the docket of TDC ruling 269 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 3,496.65 | 1,394,453.72 | Posted |
| 06/12/2013 | 06/12/2013 | 235890 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,394,452.82 | Posted |

| **VCSBank** | | | | | | | **Page 8 of 13** |
|---|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| | Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| | Account: | Special deposits in BGN of business entities |
| | Analytic No.: | 1731 290120 01 7 |
| | IBAN: | BG74 KORP 9220 1029 0120 51 |
| | Currency: | BGN |
| Balance at the beginning of the period: | | 1,394,452.82 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 14/12/2013 | 14/12/2013 | 223748 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,869,765.32 | Posted |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27/12/2013 | 27/12/2013 | 997161 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for Dec. 2013<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 1,869,615.32 | Posted |
| 27/12/2013 | 27/12/2013 | 997161 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,869,614.42 | Posted |
| 27/12/2013 | 27/12/2013 | 997163 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for Dec. 2013 | Debit | 1,350.00 | 1,868,264.42 | Posted |
| 27/12/2013 | 27/12/2013 | 117837 | Interest accrued | Credit | 141.25 | 1,868,405.67 | Posted |
| 27/12/2013 | 27/12/2013 | 128639 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 1,868,398.17 | Posted |
| 02/01/2014 | 02/01/2014 | 746831 | Direct Transfer<br>BG55 KORP 9220 1052 6963 01<br>Payee: VIA AND CO EOOD<br>Details: Inv.491/2nd Jan. 2014 – accounting and administrative services | Debit | 1,230.00 | 1,867,168.17 | Posted |
| 08/01/2014 | 08/01/2014 | 927560 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under case 135/2013 in the docket of TDC Title Deed 131/08<br>Order 305/13<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 4,662.20 | 1,862,505.97 | Posted |
| 08/01/2014 | 08/01/2014 | 927560 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,862,505.07 | Posted |
| 08/01/2014 | 08/01/2014 | 927569 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under case 135/2013 in the docket of TDC Title Deed 73/2008<br>Order 305/13<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 4,662.20 | 1,857,842.87 | Posted |
| 08/01/2014 | 08/01/2014 | 927569 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,857,841.97 | Posted |
| 08/01/2014 | 08/01/2014 | 927575 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under case 135/2013 in the docket of TDC Title Deed 156/2009<br>Order 305/13<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.        Period-<br>having EIK: 200958720 | Debit | 4,662.20 | 1,853,179.77 | Posted |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 08/01/2014 | 08/01/2014 | 927575 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,853,178.87 | Posted |
| 14/01/2014 | 14/01/2014 | 118202 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 2,328,491.37 | Posted |
| 17/01/2014 | 17/01/2014 | 101372 | Payment Transaction to State Budget BG36 CREX 9260 3114 5494 01 Code payee 000000 Code payer 000000 Payee: REGISTRY AGENCY Details: ACTS DECLARED Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 25.00 | 2,328,466.37 | Posted |

VCSBank                                                                                             Page 9 of 13

| | | |
|---|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | |
| Account: | Special deposits in BGN of business entities | |
| Analytic No.: | 1731 290120 01 7 | |
| IBAN: | BG74 KORP 9220 1029 0120 51 | |
| Currency: | BGN | |
| Balance at the beginning of the period: | 2,328,466.37 | |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 17/01/2014 | 17/01/2014 | 101372 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 2,328,465.47 | Posted |
| 17/01/2014 | 17/01/2014 | 111825 | Payment Transaction BG91 KORP 9220 2029 0120 02 Payee: Ayr Property Development AD (in bankruptcy) Details: Crediting a Deposit | Debit | 2,000,000.00 | 328,465.47 | Posted |
| 24/01/2014 | 24/01/2014 | 841228 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA  - Targovishte office Details: Trustee Income Tax for Jan. 2014 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 328,315.47 | Posted |
| 24/01/2014 | 24/01/2014 | 841228 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 328,314.57 | Posted |
| 24/01/2014 | 24/01/2014 | 841231 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for Jan. 2014 | Debit | 1,350.00 | 326,964.57 | Posted |
| 27/01/2014 | 27/01/2014 | 361965 | Interest accrued | Credit | 116.47 | 327,081.04 | Posted |
| 27/01/2014 | 27/01/2014 | 373285 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 327,073.54 | Posted |
| 03/02/2014 | 03/02/2014 | 765507 | Direct Transfer BG55 KORP 9220 1052 6963 01 Payee: VIA AND CO EOOD Details: Inv.504/3rd Feb. 2014 – accounting and administrative services | Debit | 1,230.00 | 325,843.54 | Posted |
| 11/02/2014 | 11/02/2014 | 670236 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Reimbursed Travel Expenses to Trustee | Debit | 1,287.37 | 324,556.17 | Posted |
| 14/02/2014 | 14/02/2014 | 622587 | Deposit Maturity Date | Credit | 475,312.50 | 799,868.67 | Posted |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| | | | Interest accrued on Deposit Transaction No.29428 | | | | |
| 24/02/2014 | 24/02/2014 | 730818 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for Feb. 2014 | Debit | 1,350.00 | 798,518.67 | Posted |
| 24/02/2014 | 24/02/2014 | 731365 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA  - Targovishte office<br>Details: Trustee Income Tax for Feb. 2014<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 798,368.67 | Posted |
| 24/02/2014 | 24/02/2014 | 731365 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 798,367.77 | Posted |
| 25/02/2014 | 25/02/2014 | 88894 | Payment Transaction to State Budget<br>BG78 BNBG 9661 3100 1781 01<br>Code payee 000000 Code payer 000000<br>Payee: High Court of Cassation and Justice (HCCJ)<br>Details: State Tax under case 846/2013<br>Varna Court of Appeal<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 15.00 | 798,352.77 | Posted |
| 25/02/2014 | 25/02/2014 | 88894 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 798,351.87 | Posted |

**VCSBank**                                                                 Page 10 of 13

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 798,351.87 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 25/02/2014 | 25/02/2014 | 88897 | Payment Transaction to State Budget<br>BG78 BNBG 9661 3100 1781 01<br>Code payee 000000 Code payer 000000<br>Payee: HCCJ<br>Details: State Tax under case 819/2013<br>HCA<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 15.00 | 798,336.87 | Posted |
| 25/02/2014 | 25/02/2014 | 88897 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 798,335.97 | Posted |
| 25/02/2014 | 25/02/2014 | 209294 | Interest accrued | Credit | 39.83 | 798,375.80 | Posted |
| 25/02/2014 | 25/02/2014 | 222154 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 798,368.30 | Posted |
| 04/03/2014 | 04/03/2014 | 382390 | Direct Transfer<br>BG55 KORP 9220 1052 6963 01<br>Payee: VIA AND CO EOOD<br>Details: Inv.516/4th March 2014 –<br>accounting and administrative services | Debit | 1,230.00 | 797,138.30 | Posted |

| 10/03/2014 | 10/03/2014 | 687679 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Reimbursed Travel Expenses to Trustee | Debit | 1,014.26 | 796,124.04 | Posted |
|---|---|---|---|---|---|---|---|
| 14/03/2014 | 14/03/2014 | 23383 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,271,436.54 | Posted |
| 24/03/2014 | 24/03/2014 | 220801 | Payment Transaction to State Budget<br>BG70 RZBB 9155 8120 0172 22<br>Code payee 110000 Code payer 000000<br>Payee: Varna TD of NRA  - Targovishte office<br>Details: Trustee Income Tax for March 2014<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 1,271,286.54 | Posted |
| 24/03/2014 | 24/03/2014 | 220801 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,271,285.64 | Posted |
| 24/03/2014 | 24/03/2014 | 220877 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for March 2014 | Debit | 1,350.00 | 1,269,935.64 | Posted |
| 25/03/2014 | 25/03/2014 | 710210 | Interest accrued<br>Interest accrued | Credit | 80.94 | 1,270,016.58 | Posted |
| 25/03/2014 | 25/03/2014 | 721964 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 1,270,009.08 | Posted |
| 02/04/2014 | 02/04/2014 | 547346 | Direct Transfer<br>BG55 KORP 9220 1052 6963 01<br>Payee: VIA AND CO EOOD<br>Details: Inv.533/1st April 2014 –<br>accounting and administrative services | Debit | 1,230.00 | 1,268,779.08 | Posted |
| 09/04/2014 | 09/04/2014 | 199648 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 20.00 | 1,268,759.08 | Posted |
| 09/04/2014 | 09/04/2014 | 199648 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,268,758.18 | Posted |

---

| VCSBank | | | | | | Page 11 of 13 | |
|---|---|---|---|---|---|---|---|

| | Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|---|
| | Account: | Special deposits in BGN of business entities |
| | Analytic No.: | 1731 290120 01 7 |
| | IBAN: | BG74 KORP 9220 1029 0120 51 |
| | Currency: | BGN |
| Balance at the beginning of the period: | | 1,268,758.18 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 09/04/2014 | 09/04/2014 | 214608 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED | Debit | 20.00 | 1,268,738.18 | Posted |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | | | | |
| 09/04/2014 | 09/04/2014 | 214608 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,268,737.28 | Posted |
| 10/04/2014 | 10/04/2014 | 546852 | Payment Transaction<br>BG64 KORP 9220 2029 0120 03<br>Payee: Ayr Property Development AD (in bankruptcy)<br>Details: Crediting a Deposit | Debit | 1,000,000.00 | 268,737.28 | Posted |
| 14/04/2014 | 14/04/2014 | 215499 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 744,049.78 | Posted |
| 25/04/2014 | 25/04/2014 | 926576 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Det.: Trustee Remuneration for April 2014 | Debit | 1,350.00 | 742,669.78 | Posted |
| 25/04/2014 | 25/04/2014 | 926593 | Payment Transaction to State Budget<br>BG70 RZBB 9155 8120 0172 22<br>Code payee 110000 Code payer 000000<br>Payee: Varna TD of NRA  - Targovishte office<br>Details: Trustee Income Tax for April 2014<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 742,549.78 | Posted |
| 25/04/2014 | 25/04/2014 | 926593 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 742,548.88 | Posted |
| 25/04/2014 | 25/04/2014 | 29512 | Interest accrued | Credit | 78.61 | 742,627.49 | Posted |
| 25/04/2014 | 25/04/2014 | 41428 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 742,619.99 | Posted |
| 28/04/2014 | 28/04/2014 | 278041 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 20.00 | 742,599.99 | Posted |
| 28/04/2014 | 28/04/2014 | 278041 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 742,599.09 | Posted |
| 09/05/2014 | 09/05/2014 | 940804 | Direct Transfer<br>BG55 KORP 9220 1052 6963 01<br>Payee: VIA AND CO EOOD<br>Details: Inv.549/9th May 2014 – accounting and administrative services | Debit | 1,230.00 | 741,369.09 | Posted |
| 14/05/2014 | 14/05/2014 | 276071 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,216,681.59 | Posted |
| 21/05/2014 | 21/05/2014 | 94728 | Payment Transaction to State Budget<br>BG70 RZBB 9155 8120 0172 22<br>Code payee 110000 Code payer 000000<br>Payee: Varna TD of NRA  - Targovishte office<br>Details: Trustee Income Tax for May 2014<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 340.00 | 1,216,341.59 | Posted |
| 21/05/2014 | 21/05/2014 | 94728 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,216,340.69 | Posted |
| 21/05/2014 | 21/05/2014 | 94739 | Direct Transfer | Debit | 3,060.00 | 1,213,280.69 | Posted |

BG31 KORP 9220 4000 1139 01
Payee: Ganka Yaneva Kolyovska
Details: Trustee Remuneration for May
2014

| VCSBank | | | | | | | Page 12 of 13 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Holder: | | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | | | | | |
| Account: | | Special deposits in BGN of business entities | | | | | |
| Analytic No.: | | 1731 290120 01 7 | | | | | |
| IBAN: | | BG74 KORP 9220 1029 0120 51 | | | | | |
| Currency: | | BGN | | | | | |
| Balance at the beginning of the period: | | 1,213,280.69 | | | | **BANK ACCOUNT STATEMENT** | |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 21/05/2014 | 21/05/2014 | 94815 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Reimbursed Travel Expenses and Fees to Trustee | Debit | 794.17 | 1,212,486.52 | Posted |
| 26/05/2014 | 26/05/2014 | 313072 | Interest accrued<br>Interest accrued | Credit | 79.67 | 1,212,566.19 | Posted |
| 26/05/2014 | 26/05/2014 | 324850 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 1,212,558.69 | Posted |
| 02/06/2014 | 02/06/2014 | 50959 | Direct Transfer<br>BG55 KORP 9220 1052 6963 01<br>Payee: VIA AND CO EOOD<br>Details: Inv.562/2nd June 2014 – accounting and administrative services | Debit | 1,230.00 | 1,211,328.69 | Posted |
| 04/06/2014 | 04/06/2014 | 693247 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 20.00 | 1,211,308.69 | Posted |
| 04/06/2014 | 04/06/2014 | 693247 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,211,307.79 | Posted |
| 16/06/2014 | 14/06/2014 | 339004 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,686,620.29 | Posted |
| 19/06/2014 | 19/06/2014 | 451032 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: REGISTRATION OF AFS<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 20.00 | 1,686,600.29 | Posted |
| 19/06/2014 | 19/06/2014 | 451032 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,686,599.39 | Posted |
| 25/06/2014 | 25/06/2014 | 900160 | Interest accrued<br>Interest accrued | Credit | 112.12 | 1,686,711.51 | Posted |
| 25/06/2014 | 25/06/2014 | 911953 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 1,686,704.01 | Posted |
| 14/07/2014 | 14/07/2014 | 381190 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 333,422.92 | 2,020,126.93 | Posted |
| 25/07/2014 | 25/07/2014 | 975876 | Interest accrued<br>Interest accrued | Credit | 150.75 | 2,020,277.68 | Posted |
| 25/07/2014 | 25/07/2014 | 986258 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 2,020,270.18 | Posted |



| 14/08/2014 | 14/08/2014 | 806646 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 2,168,145.18 | Posted |
| 25/08/2014 | 25/08/2014 | 846849 | Interest accrued<br>Interest accrued | Credit | 172.87 | 2,168,318.05 | Posted |
| 25/08/2014 | 25/08/2014 | 856790 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 2,168,310.55 | Posted |
| 15/09/2014 | 14/09/2014 | 898140 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 2,316,185.55 | Posted |
| 25/09/2014 | 25/09/2014 | 943831 | Interest accrued<br>Interest accrued | Credit | 185.21 | 2,316,370.76 | Posted |
| 25/09/2014 | 25/09/2014 | 953446 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 2,316,363.26 | Posted |
| 14/10/2014 | 14/10/2014 | 466518 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 2,464,238.26 | Posted |
| 27/10/2014 | 27/10/2014 | 75480 | Interest accrued<br>Interest accrued | Credit | 211.24 | 2,464,449.50 | Posted |
| 27/10/2014 | 27/10/2014 | 84768 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 2,464,442.00 | Posted |

| VCSBank | Page 13 of 13 |

The undersigned, Ilka Simeonova Dyulgerova, hereby certify that this is a true and accurate translation from Bulgarian into English of the attached document – Bank Account Statements issued 13th November 2014 from Corporate Commercial Bank AD. This translation has 26 (twenty-six) pages.

Translator: _____ Ilka Simeonova Dyulgerova

 **КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД**

13.11.2014 11:52:36 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 01 8 |
| IBAN | BG21 KORP 9220 2029 0120 01 |
| Валута | BGN |
| Салдо в началото на периода | 0.00 BGN |

**Извлечение**

| | |
|---|---|
| **Параметри** | |
| Период от - до | 14.01.2013 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Всички |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 14.01.2013 | 14.01.2013 | 229751 | Получен превод по RINGS BG59 UNCR 7000 1520 1153 99 нар-л ЕъР PROPъRTI DEVELOPMъNT AD осн. RAZPORъд 08.01.2013 NA TOS дол-е DOG ZA DEPOZIT | Кт | 97 500 000.00 | 97 500 000.00 | Осчетоводена |
| 14.02.2013 | 14.02.2013 | 944469 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.02.2013 | 14.02.2013 | 944470 | Падеж по депозит Опихвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.03.2013 | 14.03.2013 | 368421 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.03.2013 | 14.03.2013 | 368422 | Падеж по депозит Опихвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 15.04.2013 | 14.04.2013 | 512044 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 15.04.2013 | 14.04.2013 | 512045 | Падеж по депозит Опихвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.05.2013 | 14.05.2013 | 666844 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.05.2013 | 14.05.2013 | 666845 | Падеж по депозит Опихвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.06.2013 | 14.06.2013 | 366994 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.06.2013 | 14.06.2013 | 366995 | Падеж по депозит Опихвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 15.07.2013 | 14.07.2013 | 660689 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 15.07.2013 | 14.07.2013 | 660690 | Падеж по депозит Опихвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.08.2013 | 14.08.2013 | 444566 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.08.2013 | 14.08.2013 | 444567 | Падеж по депозит Опихвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 16.09.2013 | 14.09.2013 | 218933 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 16.09.2013 | 14.09.2013 | 218934 | Падеж по депозит Опихвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 546256 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 546257 | Падеж по депозит Опихвяване на депозит на падеж. Сделка номер 29428 | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.11.2013 | 14.11.2013 | 954039 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.11.2013 | 14.11.2013 | 954040 | Падеж по депозит Опихвяване на депозит на падеж. Сделка номер 29428 | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.12.2013 | 14.12.2013 | 223747 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.12.2013 | 14.12.2013 | 223748 | Падеж по депозит Опихвяване на депозит на падеж. Сделка номер 29428 | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.01.2014 | 14.01.2014 | 118201 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.01.2014 | 14.01.2014 | 118202 | Падеж по депозит Опихвяване на депозит на падеж. Сделка номер 29428 | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.02.2014 | 14.02.2014 | 622586 | Падеж по депозит Опихвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |

| | Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|---|
| | Сметка | Приети срочни депозити от търговски предприятия в лев |
| | Аналитичен номер | 1613 290120 01 8 |
| | IBAN | BG21 KORP 9220 2029 0120 01 |
| | Валута | BGN |
| | Салдо в началото на периода | 97 975 312.50 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 14.02.2014 | 14.02.2014 | 622587 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.03.2014 | 14.03.2014 | 23382 | Падеж по депозит | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.03.2014 | 14.03.2014 | 23383 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.04.2014 | 14.04.2014 | 215498 | Падеж по депозит | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.04.2014 | 14.04.2014 | 215499 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.05.2014 | 14.05.2014 | 276070 | Падеж по депозит | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.05.2014 | 14.05.2014 | 276071 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 16.06.2014 | 14.06.2014 | 339003 | Падеж по депозит | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 16.06.2014 | 14.06.2014 | 339004 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.07.2014 | 14.07.2014 | 381189 | Падеж по депозит | Кт | 333 422.92 | 97 833 422.92 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.07.2014 | 14.07.2014 | 381190 | Падеж по депозит | Дт | 333 422.92 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.08.2014 | 14.08.2014 | 806645 | Падеж по депозит | Кт | 147 875.00 | 97 647 875.00 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.08.2014 | 14.08.2014 | 806646 | Падеж по депозит | Дт | 147 875.00 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 15.09.2014 | 14.09.2014 | 698139 | Падеж по депозит | Кт | 147 875.00 | 97 647 875.00 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 15.09.2014 | 14.09.2014 | 898140 | Падеж по депозит | Дт | 147 875.00 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.10.2014 | 14.10.2014 | 466517 | Падеж по депозит | Кт | 147 875.00 | 97 647 875.00 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.10.2014 | 14.10.2014 | 466518 | Падеж по депозит | Дт | 147 875.00 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |

 **КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД**

13.11.2014 11:54:32 (Сч. Дата: 05.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 02 5 |
| IBAN | BG91 KORP 9220 2029 0120 02 |
| Валута | BGN |
| Салдо в началото на периода | 0.00 BGN |

## Извлечение

| | |
|---|---|
| Параметри | |
| Период от - до | 17.01.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Всички |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 17.01.2014 | 17.01.2014 | 111825 | Издаден превод - сделка BG74 KORP 9220 1029 0120 51 нар-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС осн. ЗАХРАНВАНЕ НА ДЕПОЗИТ | Кт | 2 000 000.00 | 2 000 000.00 | Осчетоводена |
| 17.02.2014 | 17.02.2014 | 947785 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 750.00 | 2 009 750.00 | Осчетоводена |
| 17.03.2014 | 17.03.2014 | 367519 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 797.53 | 2 019 547.53 | Осчетоводена |
| 17.04.2014 | 17.04.2014 | 335575 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 845.29 | 2 029 392.82 | Осчетоводена |
| 19.05.2014 | 17.05.2014 | 335763 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 893.29 | 2 039 286.11 | Осчетоводена |
| 17.06.2014 | 17.06.2014 | 724155 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 941.52 | 2 049 227.63 | Осчетоводена |
| 17.07.2014 | 17.07.2014 | 218080 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 6 319.59 | 2 055 547.22 | Осчетоводена |
| 18.08.2014 | 17.08.2014 | 373095 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 3 117.58 | 2 058 664.80 | Осчетоводена |
| 17.09.2014 | 17.09.2014 | 464309 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 3 122.31 | 2 061 787.11 | Осчетоводена |
| 17.10.2014 | 17.10.2014 | 316437 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 3 127.04 | 2 064 914.15 | Осчетоводена |
| 20.10.2014 | 20.10.2014 | 599568 | Прекратяване на депозит Олихвяване на 'Депозитна сделка' номер 39033. Начислена лихва в размер на 17.21 BGN. АНУЛИРАНО БОРДЕРО, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА B-5774/18.09.2014 , ВЪВ ВРЪЗКА С  ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ | Кт | 17.21 | 2 064 914.15 | Анулирана |
| 20.10.2014 | 17.10.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА Б5316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА B-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА   ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -3 127.04 | 2 061 787.11 | Осчетоводена |
| 20.10.2014 | 17.09.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА Б5316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА B-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА   ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -3 122.31 | 2 058 664.80 | Осчетоводена |
| 20.10.2014 | 17.08.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА Б5316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА B-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА   ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -3 117.58 | 2 055 547.22 | Осчетоводена |

| | Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|---|
| | Сметка | Приети срочни депозити от търговски предприятия в лев |
| | Аналитичен номер | 1613 290120 02 5 |
| | IBAN | BG91 KORP 9220 2029 0120 02 |
| | Валута | BGN |
| | Салдо в началото на периода | 2 055 547.22 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 20.10.2014 | 17.07.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -6 319.59 | 2 049 227.63 | Осчетоводена |
| 20.10.2014 | 17.06.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 941.52 | 2 039 286.11 | Осчетоводена |
| 20.10.2014 | 17.05.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 893.29 | 2 029 392.82 | Осчетоводена |
| 20.10.2014 | 17.04.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 845.29 | 2 019 547.53 | Осчетоводена |
| 20.10.2014 | 17.03.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 797.53 | 2 009 750.00 | Осчетоводена |
| 20.10.2014 | 17.02.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 750.00 | 2 000 000.00 | Осчетоводена |


**КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД**

13.11.2014 11:58:34 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | **ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ** |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 03 2 |
| IBAN | BG64 KORP 9220 2029 0120 03 |
| Валута | BGN |
| Салдо в началото на периода | 0.00 BGN |

## Извлечение

| | |
|---|---|
| **Параметри** | |
| Период от - до | 10.04.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Всички |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 10.04.2014 | 10.04.2014 | 548852 | Издаден превод - сделка<br>BG74 KORP 9220 1029 0120 51<br>нар.н ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС<br>осн. ЗАХРАНВАНЕ НА ДЕПОЗИТ | Кт | 1 000 000.00 | 1 000 000.00 | Осчетоводена |
| 10.05.2014 | 10.05.2014 | 252244 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 4 875.00 | 1 004 875.00 | Осчетоводена |
| 10.06.2014 | 10.06.2014 | 976981 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 4 898.77 | 1 009 773.77 | Осчетоводена |
| 10.07.2014 | 10.07.2014 | 827520 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 3 905.30 | 1 013 679.07 | Осчетоводена |
| 11.08.2014 | 10.08.2014 | 958769 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 1 537.41 | 1 015 216.48 | Осчетоводена |
| 10.09.2014 | 10.09.2014 | 50458 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 1 539.74 | 1 016 756.22 | Осчетоводена |
| 10.10.2014 | 10.10.2014 | 901274 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 1 542.08 | 1 018 298.30 | Осчетоводена |
| 20.10.2014 | 20.10.2014 | 599481 | Прекратяване на депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. Начислена лихва в<br>размер на 28.29 BGN.<br>АНУЛИРАНО БОРДЕРО, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>ВЪВ ВРЪЗКА С ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ | Кт | 28.29 | 1 018 298.30 | Анулирана |
| 20.10.2014 | 10.10.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -1 542.08 | 1 016 756.22 | Осчетоводена |
| 20.10.2014 | 10.09.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -1 539.74 | 1 015 216.48 | Осчетоводена |
| 20.10.2014 | 10.08.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -1 537.41 | 1 013 679.07 | Осчетоводена |
| 20.10.2014 | 10.07.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -3 905.30 | 1 009 773.77 | Осчетоводена |
| 20.10.2014 | 10.06.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -4 898.77 | 1 004 875.00 | Осчетоводена |

| | Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|---|
| | Сметка | Приети срочни депозити от търговски предприятия в лев |
| | Аналитичен номер | 1613 290120 03 2 |
| | IBAN | BG64 KORP 9220 2029 0120 03 |
| | Валута | BGN |
| | Салдо в началото на периода | 1 004 875.00 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 20.10.2014 | 10.05.2014 | 599547 | Многоредово бордеро СТОРНИРАНЕ НА ББ901274/10.10.14; 50458/10.09.14; 958769/11.08.14;827520/10.07.14; 976981/10.06.14 И 252244/10.05.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -4 875.00 | 1 000 000.00 | Осчетоводена |

 КОРПОРАТИВНА
ТЪРГОВСКА БАНКА АД

13.11.2014 11:53:54 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 0.00 BGN |

# Извлечение

| | |
|---|---|
| **Параметри** | |
| Период от - до | 12.02.2013 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Всички |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 12.02.2013 | 12.02.2013 | 445382 | Издаден превод - сделка
BG66 KORP 9220 1029 0120 01
нар-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС
осн. ЗАКРИВАНЕ НА СМЕТКА И ПРЕХВЪРЛЯНЕ
доп-е НА ОСТАТЪКА | Кт | 1.04 | 1.04 | Осчетоводена |
| 12.02.2013 | 12.02.2013 | 446038 | Валутна сделка
Относно: ПОКУПКА на валута.
КУПЕНИ: USD 1.69
ПРОДАДЕНИ: BGN        2.43
Курс: USD 1 / BGN 1.439200
Клиент: ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД
ЕГН/ЕИК/БУЛСТАТ/БАЕ: 200958720 | Кт | 2.43 | 3.47 | Осчетоводена |
| 12.02.2013 | 12.02.2013 | 446219 | Валутна сделка
Относно: ПОКУПКА на валута.
КУПЕНИ: EUR 1.37
ПРОДАДЕНИ: BGN        2.67
Курс: EUR 1 / BGN 1.950000
Клиент: ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД
ЕГН/ЕИК/БУЛСТАТ/БАЕ: 200958720 | Кт | 2.67 | 6.14 | Осчетоводена |
| 14.02.2013 | 14.02.2013 | 944470 | Падеж по депозит
Олихвяване на депозит на падеж | Кт | 475 312.50 | 475 318.64 | Осчетоводена |
| 15.02.2013 | 15.02.2013 | 228835 | Издадено бюдж.плащане
BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000
пол-л ТД НА НАП ВАРНА - ОФИС ТЪРГОВИЩЕ
осн. ДОД ДОПЪЛ.ВЪЗНАГР. СИНДИК
доп-е
зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В
вид док. 09 No.
период -
БУЛСТАТ 200958720 | Дт | 40 000.00 | 435 318.64 | Осчетоводена |
| 15.02.2013 | 15.02.2013 | 228835 | Издадено бюдж.плащане
комисионна по тарифа на банката | Дт | 1.30 | 435 317.34 | Осчетоводена |
| 15.02.2013 | 15.02.2013 | 219874 | Издаден превод - сделка
BG31 KORP 9220 4000 1139 01
пол-л ГАНКА ЯНЕВА КОЛЬОВСКА
осн. ЧАСТИЧНО ПЛАЩАНЕ ПО ОПР.Н.34/12
доп-е 02.2013 ПО Т.Д.14/2011 НА ТОС | Дт | 360 000.00 | 75 317.34 | Осчетоводена |
| 15.02.2013 | 15.02.2013 | 229030 | Валутен превод - вътрешнобанков
Валутен превод  Реф.ZB/01/00003495
сума 30957.85  EUR
вальор 15.02.2013
Наредител: ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД в НЕСЪС  курс
1.957500
Бенефициент: ЗАХАРИ ЖЕЛЯЗКОВ ТОМОВ - АДВОКАТ
Основание: ВЪЗСТАНОВЯВАНЕ НА ПРЕДПЛАТЕНИ РАЗНО СКИ | Дт | 60 599.99 | 14 717.35 | Осчетоводена |
| 25.02.2013 | 25.02.2013 | 64957 | Масирано събирана такса
комисионна по тарифа на банката | Дт | 7.50 | 14 709.85 | Осчетоводена |
| 14.03.2013 | 14.03.2013 | 368422 | Падеж по депозит
Олихвяване на депозит на падеж | Кт | 475 312.50 | 490 022.35 | Осчетоводена |



| | | | | | | |
|---|---|---|---|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | | | | | |
| Сметка | Особени сметки на търговски предприятия в левове | | | | | |
| Аналитичен номер | 1731 290120 01 7 | | | | | |
| IBAN | BG74 KORP 9220 1029 0120 51 | | | | | |
| Валута | BGN | | | | | |
| Салдо в началото на периода | 490 022.35 BGN | | | | | |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 18.03.2013 | 18.03.2013 | 5294 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП ВАРНА - ОФИС ТЪРГОВИЩЕ<br>осн. ДОД ДОПЪЛН.ВЪЗНАГР.СИНДИК<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 45 000.00 | 445 022.35 | Осчетоводена |
| 18.03.2013 | 18.03.2013 | 5294 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 1.30 | 445 021.05 | Осчетоводена |
| 18.03.2013 | 18.03.2013 | 5518 | Издаден превод - сделка<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. ЧАСТИЧНО ПЛАЩАНЕ ПО ОПР.Н.34/12<br>доп-е 02.2013 ПО Т.Д.14/2011 НА ТОС | Дт | 405 000.00 | 40 021.05 | Осчетоводена |
| 25.03.2013 | 25.03.2013 | 672215 | Маскирано събрана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 40 013.55 | Осчетоводена |
| 15.04.2013 | 14.04.2013 | 512045 | Падеж по депозит<br>Оликвяване на депозит на падеж | Кт | 475 312.50 | 515 326.05 | Осчетоводена |
| 17.04.2013 | 17.04.2013 | 162317 | Издаден превод - сделка<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. ЧАСТИЧНО ПЛАЩАНЕ ПО ОПР.Н.34/12<br>доп-е 02.2013 ПО Т.Д.14/2011 НА ТОС | Дт | 450 000.00 | 65 326.05 | Осчетоводена |
| 17.04.2013 | 17.04.2013 | 162373 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП ВАРНА-ОФИС ТЪРГОВИЩЕ<br>осн. ДОД ДОПЪЛН.ВЪЗНАГР.СИНДИК<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 50 000.00 | 15 326.05 | Осчетоводена |
| 17.04.2013 | 17.04.2013 | 162373 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 1.30 | 15 324.75 | Осчетоводена |
| 23.04.2013 | 23.04.2013 | 385542 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. дод синдик за м.04.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 15 174.75 | Осчетоводена |
| 23.04.2013 | 23.04.2013 | 385542 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 15 173.85 | Осчетоводена |
| 23.04.2013 | 23.04.2013 | 383607 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.04.2013 | Дт | 1 350.00 | 13 823.85 | Осчетоводена |
| 25.04.2013 | 25.04.2013 | 170513 | Маскирано събрана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 13 816.35 | Осчетоводена |
| 08.05.2013 | 08.05.2013 | 516294 | Издаден директен превод<br>BG82 FINV 9150 1089G NOA3 5J<br>пол-л ВИА И КО ЕООД<br>осн. ф.373/08.05.2013 - оч. и адм. обслу | Дт | 1 230.00 | 12 586.35 | Осчетоводена |
| 08.05.2013 | 08.05.2013 | 516294 | Издаден директен превод<br>комисионна по тарифа на банката | Дт | 0.90 | 12 585.45 | Осчетоводена |
| 14.05.2013 | 14.05.2013 | 666845 | Падеж по депозит<br>Оликвяване на депозит на падеж | Кт | 475 312.50 | 487 897.95 | Осчетоводена |

|  | Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|---|
|  | Сметка | Особени сметки на търговски предприятия в левове |
|  | Аналитичен номер | 1731 290120 01 7 |
|  | IBAN | BG74 KORP 9220 1029 0120 51 |
|  | Валута | BGN |
|  | Салдо в началото на периода | 487 897.95 BGN |

# Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 21.05.2013 | 21.05.2013 | 501377 | Издадено бюд.плащане<br>BG55 RZBB 9155 6120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.05.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.дрх. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 487 747.95 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501377 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 487 747.05 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501548 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. взанаг. на синдик за м.05.2013 | Дт | 1 350.00 | 486 397.05 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501572 | Издадено бюд.плащане<br>BG55 RZBB 9155 6120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.05.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.дрх. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 45 000.00 | 441 397.05 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501572 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 441 396.15 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501712 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. Частично плащане по опр.34/12.02.13<br>дол-е на ТОС | Дт | 405 000.00 | 36 396.15 | Осчетоводена |
| 27.05.2013 | 27.05.2013 | 703165 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 36 388.65 | Осчетоводена |
| 03.06.2013 | 03.06.2013 | 866745 | Издаден директен превод<br>BG82 FINV 9150 109G N0A3 5J<br>пол-л ВИА И КО ЕООД<br>осн. ф.390/03.06.2013 - сч. и адм. обслу | Дт | 1 230.00 | 35 158.65 | Осчетоводена |
| 03.06.2013 | 03.06.2013 | 866745 | Издаден директен превод<br>комисионна по тарифа на банката | Дт | 0.90 | 35 157.75 | Осчетоводена |
| 14.06.2013 | 14.06.2013 | 366995 | Падеж по депозит<br>Опихаване на депозит на падеж | Кт | 475 312.50 | 510 470.25 | Осчетоводена |
| 19.06.2013 | 19.06.2013 | 303016 | Издадено бюд.плащане<br>BG55 RZBB 9155 6120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.06.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.дрх. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 50 150.00 | 460 320.25 | Осчетоводена |
| 19.06.2013 | 19.06.2013 | 303016 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 460 319.35 | Осчетоводена |
| 19.06.2013 | 19.06.2013 | 303037 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. взанаг. на синдик за м.06.2013 | Дт | 451 350.00 | 8 969.35 | Осчетоводена |
| 20.06.2013 | 20.06.2013 | 606922 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л Агенция по вписванията<br>осн. ОБЯВЯВАНЕ НА ГФО<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.дрх. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 25.00 | 8 944.35 | Осчетоводена |
| 20.06.2013 | 20.06.2013 | 606922 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 8 943.45 | Осчетоводена |

| | | | |
|---|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | | |
| Сметка | Особени сметки на търговски предприятия в левове | | |
| Аналитичен номер | 1731 290120 01 7 | | |
| IBAN | BG74 KORP 9220 1029 0120 51 | | |
| Валута | BGN | | |
| Салдо в началото на периода | 8 943.45 BGN | | **Извлечение** |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 25.06.2013 | 25.06.2013 | 710315 | Олихвяване | Кт | 35.19 | 8 978.64 | Осчетоводена |
| | | | Олихвяване | | | | |
| 25.06.2013 | 25.06.2013 | 721377 | Масирано събирана такса | Дт | 7.50 | 8 971.14 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 05.07.2013 | 05.07.2013 | 807534 | Издаден директен превод | Дт | 1 230.00 | 7 741.14 | Осчетоводена |
| | | | BG82 FINV 9150 10BG N0A3 5J | | | | |
| | | | пол-л ВИА И КО ЕООД | | | | |
| | | | осн. ф.409/04.07.2013 - сч. и адм. обслу | | | | |
| 05.07.2013 | 05.07.2013 | 807534 | Издаден директен превод | Дт | 0.90 | 7 740.24 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 15.07.2013 | 14.07.2013 | 660690 | Падеж по депозит | Кт | 475 312.50 | 483 052.74 | Осчетоводена |
| | | | Олихвяване на депозит на падеж | | | | |
| 17.07.2013 | 17.07.2013 | 341766 | Издадено бюд.плащане | Дт | 44 500.00 | 438 552.74 | Осчетоводена |
| | | | BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 | | | | |
| | | | пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ | | | | |
| | | | осн. ДОД СИНДИК ЗА М.07.2013 | | | | |
| | | | доп-е | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 17.07.2013 | 17.07.2013 | 341766 | Издадено бюд.плащане | Дт | 1.30 | 438 551.44 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 17.07.2013 | 17.07.2013 | 343367 | Издаден превод - сделка | Дт | 400 500.00 | 38 051.44 | Осчетоводена |
| | | | BG31 KORP 9220 4000 1139 01 | | | | |
| | | | пол-л ГАНКА ЯНЕВА КОЛЬОВСКА | | | | |
| | | | осн. ВЪЗНАГРАЖДЕНИЕ НА СИНДИК ЗА М.07 | | | | |
| | | | доп-е 2013 | | | | |
| 18.07.2013 | 18.07.2013 | 655720 | Издадено бюд.плащане | Дт | 150.00 | 37 901.44 | Осчетоводена |
| | | | BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 | | | | |
| | | | пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ | | | | |
| | | | осн. ДОД Синдик за м.07.2013 | | | | |
| | | | доп-е | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 18.07.2013 | 18.07.2013 | 655720 | Издадено бюд.плащане | Дт | 0.90 | 37 900.54 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 18.07.2013 | 18.07.2013 | 655724 | Издаден директен превод | Дт | 1 350.00 | 36 550.54 | Осчетоводена |
| | | | BG31 KORP 9220 4000 1139 01 | | | | |
| | | | пол-л ГАНКА ЯНЕВА КОЛЬОВСКА | | | | |
| | | | осн. възнаг. на синдик за м.07.2013 | | | | |
| 25.07.2013 | 25.07.2013 | 473848 | Олихвяване | Кт | 5.28 | 36 555.82 | Осчетоводена |
| | | | Олихвяване | | | | |
| 25.07.2013 | 25.07.2013 | 484758 | Масирано събирана такса | Дт | 7.50 | 36 548.32 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 01.08.2013 | 01.08.2013 | 788858 | Издаден директен превод | Дт | 1 230.00 | 35 318.32 | Осчетоводена |
| | | | BG82 FINV 9150 10BG N0A3 5J | | | | |
| | | | пол-л ВИА И КО ЕООД | | | | |
| | | | осн. ф.424/01.08.2013 - сч. и адм. обслу | | | | |
| 01.08.2013 | 01.08.2013 | 788858 | Издаден директен превод | Дт | 0.90 | 35 317.42 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 09.08.2013 | 09.08.2013 | 536950 | Издадено бюд.плащане | Дт | 25.00 | 35 292.42 | Осчетоводена |
| | | | BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000 | | | | |
| | | | пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА | | | | |
| | | | осн. ОБЯВЯВАНЕ НА АКТОВЕ | | | | |
| | | | доп-е | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 09.08.2013 | 09.08.2013 | 536950 | Издадено бюд.плащане | Дт | 0.90 | 35 291.52 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 14.08.2013 | 14.08.2013 | 444567 | Падеж по депозит | Кт | 475 312.50 | 510 604.02 | Осчетоводена |
| | | | Олихвяване на депозит на падеж | | | | |
| 26.08.2013 | 26.08.2013 | 245257 | Олихвяване | Кт | 18.90 | 510 622.92 | Осчетоводена |
| | | | Олихвяване | | | | |

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 510 622.92 BGN |

# Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 26.08.2013 | 26.08.2013 | 255881 | Масрярно събрана такса комисионна по тарифа на банката | Дт | 7.50 | 510 615.42 | Осчетоводена |
| 28.08.2013 | 28.08.2013 | 684892 | Издаден директен превод BG89 KORP 9220 1050 5063 02 пол-л Мария Гаврилова Накова осн. част. плащане по адв.защита по доп-е т.д. 14/2011 на ТОС | Дт | 20 000.00 | 490 615.42 | Осчетоводена |
| 03.09.2013 | 03.09.2013 | 803636 | Издаден директен превод BG82 FINV 9150 108G NOA3 5J пол-л ВИА И КО ЕООД осн. ф.440/02.09.2013 - сч. и адм. обслу | Дт | 1 230.00 | 489 385.42 | Осчетоводена |
| 03.09.2013 | 03.09.2013 | 803636 | Издаден директен превод комисионна по тарифа на банката | Дт | 0.90 | 489 384.52 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81250 | Издадено бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. ДОД Синдик за м.08.2013 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200956720 | Дт | 150.00 | 489 234.52 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81250 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 489 233.62 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81260 | Издадено бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. ДОД Синдик за м.08.2013 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200956720 | Дт | 45 000.00 | 444 233.62 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81260 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 444 232.72 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81268 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възнаг. на синдик за м.08.2013 | Дт | 1 350.00 | 442 882.72 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81518 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възнаг. на синдик за м.08.2013 | Дт | 405 000.00 | 37 882.72 | Осчетоводена |
| 16.09.2013 | 14.09.2013 | 218934 | Падеж по депозит Опискаване на депозит на падеж | Кт | 475 312.50 | 513 195.22 | Осчетоводена |
| 25.09.2013 | 25.09.2013 | 723488 | Опискаване Опискаване | Кт | 27.74 | 513 222.96 | Осчетоводена |
| 25.09.2013 | 25.09.2013 | 737504 | Масрярно събрана такса комисионна по тарифа на банката | Дт | 7.50 | 513 215.46 | Осчетоводена |
| 01.10.2013 | 01.10.2013 | 785446 | Издаден директен превод BG82 FINV 9150 108G NOA3 5J пол-л ВИА И КО ЕООД осн. ф.453/01.10.2013 - сч. и адм. обслу | Дт | 1 230.00 | 511 985.46 | Осчетоводена |
| 01.10.2013 | 01.10.2013 | 785446 | Издаден директен превод комисионна по тарифа на банката | Дт | 0.90 | 511 984.56 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611568 | Издадено бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. ДОД Синдик за м.09.2013 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200958720 | Дт | 150.00 | 511 834.56 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611568 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 511 833.66 | Осчетоводена |

| | Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|---|
| | Сметка | Особени сметки на търговски предприятия в левове |
| | Аналитичен номер | 1731 290120 01 7 |
| | IBAN | BG74 KORP 9220 1029 0120 51 |
| | Валута | BGN |
| | Салдо в началото на периода | 511 833.66 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 09.10.2013 | 09.10.2013 | 611574 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.09.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 5 400.00 | 506 433.66 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611574 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 506 432.76 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611583 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.09.2013 | Дт | 1 350.00 | 505 082.76 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611615 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.09.2013 | Дт | 48 600.00 | 456 482.76 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 546257 | Падеж по депозит<br>Опихзване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 931 795.26 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 581054 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 25.00 | 931 770.26 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 581054 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 931 769.36 | Осчетоводена |
| 22.10.2013 | 22.10.2013 | 618379 | Издадено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.нар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ по чл.71,ал.2 от ГПК<br>доп-е по т.д.133/2013 ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 1 166.00 | 930 603.36 | Осчетоводена |
| 22.10.2013 | 22.10.2013 | 618379 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 930 602.46 | Осчетоводена |
| 22.10.2013 | 22.10.2013 | 618395 | Издадено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.нар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ по иск с осн. чл.124,ал.4 от ГПК<br>доп-е по т.д.133/2013 ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 80.00 | 930 522.46 | Осчетоводена |
| 22.10.2013 | 22.10.2013 | 618395 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 930 521.56 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689410 | Издадено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.нар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ по чл.124,ал.1 от ГПК,чл.69,ал.1<br>доп-е по т.д.135/2013 ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 1 165.55 | 929 356.01 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689410 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 929 355.11 | Осчетоводена |

| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Особени сметки на търговски предприятия в левове | |
| Аналитичен номер | 1731 290120 01 7 | |
| IBAN | BG74 KORP 9220 1029 0120 51 | |
| Валута | BGN | |
| Салдо в началото на периода | 929 355.11 BGN | |

## Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 25.10.2013 | 25.10.2013 | 689425 | Издадено бюд.плащане BG75 UBBS 8002 3106 0351 02 код пл.пол.000000 код пл.нар. 000000 пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ осн. ДТ по чл.124,ал.4 от ГПК доп-е по т.д.135/2013 ТОС зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 80.00 | 929 275.11 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689425 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 929 274.21 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689445 | Издадено бюд.плащане BG75 UBBS 8002 3106 0351 02 код пл.пол.000000 код пл.нар. 000000 пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ осн. ДТ по чл.124,ал.1 от ГПК,чл.69,ал.1 доп-е по т.д.134/2013 ТОС зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 1 165.55 | 928 108.66 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689445 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 928 107.76 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 669453 | Издадено бюд.плащане BG75 UBBS 8002 3106 0351 02 код пл.пол.000000 код пл.нар. 000000 пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ осн. ДТ по чл.124,ал.4 от ГПК доп-е по т.д.134/2013 ТОС зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 80.00 | 928 027.76 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689453 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 928 026.86 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 794266 | Олихвяване Олихвяване | Кт | 54.73 | 928 081.59 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 805222 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 928 074.09 | Осчетоводена |
| 28.10.2013 | 28.10.2013 | 993404 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възнаг. на синдик за м.10.2013 | Дт | 1 350.00 | 926 724.09 | Осчетоводена |
| 28.10.2013 | 28.10.2013 | 993425 | Издаден бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. ДОД Синдик за м.10.2013 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 150.00 | 926 574.09 | Осчетоводена |
| 28.10.2013 | 28.10.2013 | 993425 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 926 573.19 | Осчетоводена |
| 06.11.2013 | 06.11.2013 | 45649 | Издаден директен превод BG82 FINV 9150 10BG N0A3 5J пол-л ВИА И КО ЕООД осн. ф.465/06.11.2013 - сч. и адм. обслу | Дт | 1 230.00 | 925 343.19 | Осчетоводена |
| 06.11.2013 | 06.11.2013 | 45649 | Издаден директен превод комисионна по тарифа на банката | Дт | 0.90 | 925 342.29 | Осчетоводена |
| 14.11.2013 | 14.11.2013 | 954040 | Падеж по депозит Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 1 400 654.79 | Осчетоводена |

|                          |                                                  |
|--------------------------|--------------------------------------------------|
| Титуляр                  | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ     |
| Сметка                   | Особени сметки на търговски предприятия в левове |
| Аналитичен номер         | 1731 290120 01 7                                 |
| IBAN                     | BG74 KORP 9220 1029 0120 51                      |
| Валута                   | BGN                                              |
| Салдо в началото на периода | 1 400 654,79 BGN                              |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 18.11.2013 | 18.11.2013 | 623165 | Издадено бюд.плащане<br>BG81 TTBB 9400 3115 0685 65 код пл.пол.000000 код пл.нар. 000000<br>пол-л АПЕЛАТИВЕН СЪД - ВАРНА<br>оск. ДТ за частна жалба по т.д.133/2013<br>доп-е на ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 15.00 | 1 400 639.79 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 623165 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 400 638.89 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 623169 | Издадено бюд.плащане<br>BG81 TTBB 9400 3115 0685 65 код пл.пол.000000 код пл.нар. 000000<br>пол-л АПЕЛАТИВЕН СЪД - ВАРНА<br>оск. ДТ за частна жалба по т.д.134/2013<br>доп-е на ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 15.00 | 1 400 623.89 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 623169 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 400 622.99 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 639054 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>оск. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 25.00 | 1 400 597.99 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 639054 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 400 597.09 | Осчетоводена |
| 25.11.2013 | 25.11.2013 | 567033 | Олихвяване<br>Олихвяване | Кт | 91.68 | 1 400 688.77 | Осчетоводена |
| 25.11.2013 | 25.11.2013 | 578315 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 1 400 681.27 | Осчетоводена |
| 26.11.2013 | 26.11.2013 | 764934 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.11.2013 | Дт | 1 350.00 | 1 399 331.27 | Осчетоводена |
| 26.11.2013 | 26.11.2013 | 764951 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.11.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 1 399 181.27 | Осчетоводена |
| 26.11.2013 | 26.11.2013 | 764951 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 399 180.37 | Осчетоводена |
| 02.12.2013 | 02.12.2013 | 975592 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.479/02.12.2013 - сч. и адм. обслу | Дт | 1 230.00 | 1 397 950.37 | Осчетоводена |
| 06.12.2013 | 06.12.2013 | 235890 | Издадено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.нар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>оск. ДТ по т.д.135/2013 на ТОС по<br>доп-е опр.269 на ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 3 496.65 | 1 394 453.72 | Осчетоводена |
| 06.12.2013 | 06.12.2013 | 235890 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 394 452.82 | Осчетоводена |

| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Особени сметки на търговски предприятия в левове | |
| Аналитичен номер | 1731 290120 01 7 | |
| IBAN | BG74 KORP 9220 1029 0120 51 | |
| Валута | BGN | |
| Салдо в началото на периода | 1 394 452.82 BGN | |

# Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 14.12.2013 | 14.12.2013 | 223746 | Падеж по депозит<br>Опихсяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 1 869 765.32 | Осчетоводена |
| 27.12.2013 | 27.12.2013 | 997151 | Изадаено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.кар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. дод сниких за м.12.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 1 869 615.32 | Осчетоводена |
| 27.12.2013 | 27.12.2013 | 997161 | Изадаено бюд.плащане<br>комисиона по тарифа на банката | Дт | 0.90 | 1 869 614.42 | Осчетоводена |
| 27.12.2013 | 27.12.2013 | 997163 | Издаден директен превод<br>BG31 KORP 9220 4000 1136 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на сниких за м.12.2013 | Дт | 1 350.00 | 1 868 264.42 | Осчетоводена |
| 27.12.2013 | 27.12.2013 | 117837 | Олихвяване | Кт | 141.25 | 1 868 405.67 | Осчетоводена |
| 27.12.2013 | 27.12.2013 | 128639 | Мвсрано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 1 868 398.17 | Осчетоводена |
| 02.01.2014 | 02.01.2014 | 746831 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.491/02.01.2014 - сч. и адм. обслу | Дт | 1 230.00 | 1 867 168.17 | Осчетоводена |
| 08.01.2014 | 08.01.2014 | 927560 | Изадаено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.кар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ по т.д.135/2013 на ТОС-НА 131/08<br>доп-е Разпореждане 305/13<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 4 662.20 | 1 862 505.97 | Осчетоводена |
| 08.01.2014 | 08.01.2014 | 927550 | Изадаено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 862 505.07 | Осчетоводена |
| 08.01.2014 | 08.01.2014 | 927589 | Изадаено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.кар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ-т.д.135/2013 на ТОС-НА 73/2008<br>доп-е Разпореждане 305/13<br>зад.л.ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 4 662.20 | 1 857 842.87 | Осчетоводена |
| 08.01.2014 | 08.01.2014 | 927569 | Изадаено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 857 841.97 | Осчетоводена |
| 08.01.2014 | 08.01.2014 | 927575 | Изадаено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.кар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ-т.д.135/2013 на ТОС-НА 155/2009<br>доп-е Разпореждане 305/13<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 4 662.20 | 1 853 179.77 | Осчетоводена |
| 08.01.2014 | 08.01.2014 | 927575 | Изадаено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 853 178.87 | Осчетоводена |
| 14.01.2014 | 14.01.2014 | 118202 | Падеж по депозит<br>Опихсяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 2 328 491.37 | Осчетоводена |
| 17.01.2014 | 17.01.2014 | 101372 | Изадаено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.кар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 25.00 | 2 328 466.37 | Осчетоводена |

| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Особени сметки на търговски предприятия в левове | |
| Аналитичен номер | 1731 290120 01 7 | |
| IBAN | BG74 KORP 9220 1029 0120 51 | |
| Валута | BGN | |
| Салдо в началото на периода | 2 328 466.37 BGN | **Извлечение** |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 17.01.2014 | 17.01.2014 | 101372 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 2 328 465.47 | Осчетоводена |
| 17.01.2014 | 17.01.2014 | 111825 | Издаден превод - сделка BG91 KORP 9220 2029 0120 02 пол-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС осн. ЗАХРАНВАНЕ НА ДЕПОЗИТ | Дт | 2 000 000.00 | 328 465.47 | Осчетоводена |
| 24.01.2014 | 24.01.2014 | 841228 | Издадено бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. ДОД Синдик за м.01.2014 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200958720 | Дт | 150.00 | 328 315.47 | Осчетоводена |
| 24.01.2014 | 24.01.2014 | 841226 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 328 314.57 | Осчетоводена |
| 24.01.2014 | 24.01.2014 | 841231 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възнаг. на синдик за м.01.2014 | Дт | 1 350.00 | 326 964.57 | Осчетоводена |
| 27.01.2014 | 27.01.2014 | 361965 | Оликвяване Оликвяване - | Кт | 116.47 | 327 081.04 | Осчетоводена |
| 27.01.2014 | 27.01.2014 | 373285 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 327 073.54 | Осчетоводена |
| 03.02.2014 | 03.02.2014 | 766507 | Издаден директен превод BG55 KORP 9220 1052 6963 01 пол-л ВИА И КО ЕООД осн. ф.504/03.02.2014 - сч. и адм. обслу | Дт | 1 230.00 | 325 843.54 | Осчетоводена |
| 11.02.2014 | 11.02.2014 | 670236 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възстановени суми на синдик доп-е за командировки | Дт | 1 287.37 | 324 556.17 | Осчетоводена |
| 14.02.2014 | 14.02.2014 | 622587 | Падеж на депозит Оликвяване на депозит на падеж. Сделка номер 29426 | Кт | 475 312.50 | 799 868.67 | Осчетоводена |
| 24.02.2014 | 24.02.2014 | 730818 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възнаг. на синдик за м.02.2014 | Дт | 1 350.00 | 798 518.67 | Осчетоводена |
| 24.02.2014 | 24.02.2014 | 731365 | Издадено бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. дод синдик за м.02.2014 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200958720 | Дт | 150.00 | 798 368.67 | Осчетоводена |
| 24.02.2014 | 24.02.2014 | 731365 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 798 367.77 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 88894 | Издадено бюд.плащане BG78 BNBG 9661 3100 1781 01 код пл.пол.000000 код пл.нар. 000000 пол-л ВКС осн. ДТ по т.д.846/2013 ВАпС доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200958720 | Дт | 15.00 | 798 352.77 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 88894 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 798 351.87 | Осчетоводена |

| | | | |
|---|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | | |
| Сметка | Особени сметки на търговски предприятия в левове | | |
| Аналитичен номер | 1731 290120 01 7 | | |
| IBAN | BG74 KORP 9220 1029 0120 51 | | |
| Валута | BGN | | |
| Салдо в началото на периода | 798 351.87 BGN | | |

# Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 25.02.2014 | 25.02.2014 | 88897 | Издадено бюд плащане<br>BG78 BNBG 9661 3100 1781 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л ВКС<br>осн. ДТ по т.д.819/2013 ВАпС<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 15.00 | 798 336.87 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 88897 | Издадено бюд плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 798 335.97 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 209294 | Оликвяване<br>Оликвяване - | Кт | 39.83 | 798 375.80 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 222154 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 798 368.30 | Осчетоводена |
| 04.03.2014 | 04.03.2014 | 382390 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.516/04.03.2014 - сч. и адм. обслу | Дт | 1 230.00 | 797 138.30 | Осчетоводена |
| 10.03.2014 | 10.03.2014 | 687679 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възстановени разходи на синдик<br>доп-е за командировки | Дт | 1 014.26 | 796 124.04 | Осчетоводена |
| 14.03.2014 | 14.03.2014 | 23383 | Падеж по депозит<br>Оликвяване на депозит на падеж. Сделка номер 29426 | Кт | 475 312.50 | 1 271 436.54 | Осчетоводена |
| 24.03.2014 | 24.03.2014 | 220801 | Издадено бюд плащане<br>BG70 RZBB 9155 8120 0172 22 код пл.пол.110000 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.03.2014<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 1 271 286.54 | Осчетоводена |
| 24.03.2014 | 24.03.2014 | 220801 | Издадено бюд плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 271 285.64 | Осчетоводена |
| 24.03.2014 | 24.03.2014 | 220877 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнагр. на синдик за м.03.2014 | Дт | 1 350.00 | 1 269 935.64 | Осчетоводена |
| 25.03.2014 | 25.03.2014 | 710210 | Оликвяване<br>Оликвяване - | Кт | 80.94 | 1 270 016.58 | Осчетоводена |
| 25.03.2014 | 25.03.2014 | 721954 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 1 270 009.08 | Осчетоводена |
| 02.04.2014 | 02.04.2014 | 547346 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.533/01.04.2014 - сч. и адм. обслу | Дт | 1 230.00 | 1 268 779.08 | Осчетоводена |
| 09.04.2014 | 09.04.2014 | 199648 | Издадено бюд плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 20.00 | 1 268 759.08 | Осчетоводена |
| 09.04.2014 | 09.04.2014 | 199648 | Издадено бюд плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 268 758.18 | Осчетоводена |

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 1 268 758.18 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 09.04.2014 | 09.04.2014 | 214506 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 20.00 | 1 268 738.18 | Осчетоводена |
| 09.04.2014 | 09.04.2014 | 214508 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 268 737.28 | Осчетоводена |
| 10.04.2014 | 10.04.2014 | 545852 | Издаден превод - сделка<br>BG64 KORP 9220 2029 0120 03<br>пол-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС<br>осн. ЗАХРАНВАНЕ НА ДЕПОЗИТ | Дт | 1 000 000.00 | 268 737.28 | Осчетоводена |
| 14.04.2014 | 14.04.2014 | 215499 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 744 049.78 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 926576 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.04.2014 | Дт | 1 350.00 | 742 699.78 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 926593 | Издадено бюд.плащане<br>BG70 RZBB 9155 8120 0172 22 код пл.пол.110000 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.04.2014<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 742 549.78 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 926593 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 742 548.88 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 29512 | Олихвяване<br>Олихвяване - | Кт | 78.61 | 742 627.49 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 41428 | Масирани събрана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 742 619.99 | Осчетоводена |
| 28.04.2014 | 28.04.2014 | 278041 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 20.00 | 742 599.99 | Осчетоводена |
| 28.04.2014 | 28.04.2014 | 278041 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 742 599.09 | Осчетоводена |
| 09.05.2014 | 09.05.2014 | 940804 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.549/09.05.2014 - сч. и адм. обслу | Дт | 1 230.00 | 741 369.09 | Осчетоводена |
| 14.05.2014 | 14.05.2014 | 278071 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 1 216 681.59 | Осчетоводена |
| 21.05.2014 | 21.05.2014 | 94728 | Издадено бюд.плащане<br>BG70 RZBB 9155 8120 0172 22 код пл.пол.110000 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.05.2014<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 340.00 | 1 216 341.59 | Осчетоводена |
| 21.05.2014 | 21.05.2014 | 94728 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 216 340.69 | Осчетоводена |
| 21.05.2014 | 21.05.2014 | 94739 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.05.2013 | Дт | 3 060.00 | 1 213 280.69 | Осчетоводена |

| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Особени сметки на търговски предприятия в левове | |
| Аналитичен номер | 1731 290120 01 7 | |
| IBAN | BG74 KORP 9220 1029 0120 51 | |
| Валута | BGN | |
| Салдо в началото на периода | 1 213 280.69 BGN | |

## Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 21.05.2014 | 21.05.2014 | 94815 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. разходи за команд. и такси платени<br>дол-е от синдика | Дт | 794.17 | 1 212 486.52 | Осчетоводена |
| 26.05.2014 | 26.05.2014 | 313072 | Олихвяване<br>Олихвяване - | Кт | 79.67 | 1 212 566.19 | Осчетоводена |
| 26.05.2014 | 26.05.2014 | 324850 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 1 212 558.69 | Осчетоводена |
| 02.06.2014 | 02.06.2014 | 50959 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.562/02.06.2014 - сч. и адм. обслу | Дт | 1 230.00 | 1 211 328.69 | Осчетоводена |
| 04.06.2014 | 04.06.2014 | 693247 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>дол-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 20.00 | 1 211 308.69 | Осчетоводена |
| 04.06.2014 | 04.06.2014 | 693247 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 211 307.79 | Осчетоводена |
| 16.06.2014 | 14.06.2014 | 339004 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 1 686 620.29 | Осчетоводена |
| 19.06.2014 | 19.06.2014 | 451032 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА ГЕО<br>дол-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 20.00 | 1 686 600.29 | Осчетоводена |
| 19.06.2014 | 19.06.2014 | 451032 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 686 599.39 | Осчетоводена |
| 25.06.2014 | 25.06.2014 | 900160 | Олихвяване<br>Олихвяване - | Кт | 112.12 | 1 686 711.51 | Осчетоводена |
| 25.06.2014 | 25.06.2014 | 911953 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 1 686 704.01 | Осчетоводена |
| 14.07.2014 | 14.07.2014 | 381190 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 333 422.92 | 2 020 126.93 | Осчетоводена |
| 25.07.2014 | 25.07.2014 | 975876 | Олихвяване<br>Олихвяване - | Кт | 150.75 | 2 020 277.68 | Осчетоводена |
| 25.07.2014 | 25.07.2014 | 986258 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 2 020 270.18 | Осчетоводена |
| 14.08.2014 | 14.08.2014 | 806646 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 147 875.00 | 2 168 145.18 | Осчетоводена |
| 25.08.2014 | 25.08.2014 | 846849 | Олихвяване<br>Олихвяване - | Кт | 172.87 | 2 168 318.05 | Осчетоводена |
| 25.08.2014 | 25.08.2014 | 856790 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 2 168 310.55 | Осчетоводена |
| 15.09.2014 | 14.09.2014 | 898140 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 147 875.00 | 2 316 185.55 | Осчетоводена |
| 25.09.2014 | 25.09.2014 | 943831 | Олихвяване<br>Олихвяване - | Кт | 185.21 | 2 316 370.76 | Осчетоводена |
| 25.09.2014 | 25.09.2014 | 953445 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 2 316 363.26 | Осчетоводена |
| 14.10.2014 | 14.10.2014 | 466516 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 147 875.00 | 2 464 238.26 | Осчетоводена |
| 27.10.2014 | 27.10.2014 | 75480 | Олихвяване<br>Олихвяване - | Кт | 211.24 | 2 464 449.50 | Осчетоводена |
| 27.10.2014 | 27.10.2014 | 84768 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 2 464 442.00 | Осчетоводена |

# EXHIBIT 7



### Фрея Freya
### Транслейшънс Translations

**Преводи от и на чужди езици**
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

# AYR PROPERTY DEVELOPMENT AD
### Declared bankrupt, EIK: 200958720

**TRUSTEE IN BANKRUPTCY**
Ganka Kolyovska (Mrs)
Sofia, Musagenitsa Residential Area
1a Kl. Ohridski Boulevard, Office 2
Tel: 02 870 05 02, 0888391174
E-mail: syndic@abv.bg

|  |  |
|---|---|
| **To:** | **THE DISTRICT COURT OF SHUMEN** |
| In re: | **Case 730/2013 in the docket of the court** |
| **Cc:** | **Zahari Tomov, attorney at law** |
|  | **Dimitar Yanakiev, attorney at law** |

### REPORT

By Ganka Kolyovska, Trustee in bankruptcy for
Ayr Property Development AD (declared bankrupt)

*Re:  Questions raised under Art.658, Para 3 of the Commerce Act on 26th April 2016*

DEAR PRESIDING JUDGE,
DEAR COUNSEL TOMOV,
DEAR COUNSEL YANAKIEV,

This Report is kindly submitted in compliance with the provision of Art.659, Para 3 of the Commercial Act (CA) to provide IMMEDIATE answers to questions raised by creditors under. Here they are:

***Question 1***: How much money was available in APD's bankruptcy estate as at 10th October 2014?

***Answer:*** As at 10th October 2014 the money available in the bankruptcy estate of Ayr Property Development AD ("APD") amounted to BGN 102,966,946.59 (one hundred and two million nine hundred sixty six thousand and nine hundred forty six point fifty nine Bulgarian levs).

***Question 2***: Have any actions been taken to obtain possession of such money available in APD's bankruptcy estate after 10th October 2014 and if yes on what grounds were such actions taken and in whose favour?

2

Answer:    On 6th November 2014 the money available in the bankruptcy estate of Ayr were disposed of by way of "A transfer of accounts receivable of Ref. No.9764 of 24th October 2014 by and between Ayr Property Development AD (declared bankrupt), acting as a cedent and First Investment Bank AD, acting as the cessionary pursuant to approved Resolution No.461 of the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014"

No primary accounting documents of the above transaction have been produced to me.

On 27th April 2015 the money available in the bankruptcy estate was BGN 175.71 (one hundred seventy five point seventy one Bulgarian levs). The amount of BGN 22,520.00 available in the Special Bank Account of APD with UniCredit Bulbank AD are designated to be used for prepayment of the costs in case 730/2013 before the Shumen District Court.

Please find attached:   **Four Statements of bank accounts of Ayr Property Development AD (declared bankrupt).**

I'm sending this Report by e-mail and hard copies of it by courier to the parties concerned.

Sofia, 27th April 2016

Respectfully submitted:

*Signed,*
Ganka Kolyovska,
Trustee in Bankruptcy

*Rectangular seal of the Trustee reading:*  "Ganka Kolyovska, Trustee in Bankruptcy
Case 730/2013 in the ShDC"

---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Trustee Ganka Kolyavska's Report of 27th April 2016 to the Shumen District Court in case 730/2013. This translation has 2 (two) pages.*

Translator: _____
        *Boryana Ilieva Stefanova*

# "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД

в несъстоятелност, т.д. № 730 по описа за 2013 година на ШОС

**СИНДИК**
Ганка КОЛЬОВСКА
София, кв."Мусагеница"
Бул. „Кл. Охридски" 1а, оф.2
Тел. 02 870 05 02, 0888391174;
e-mail: syndic@abv.bg

До:
ШУМЕНСКИ ОКРЪЖЕН СЪД
**по т.д. 730/2013 на ШОС**

**ДО АДВ. ЗАХАРИ ТОМОВ;**
**ДО АДВ. ДИМИТЪР ЯНАКИЕВ**

# ОТЧЕТ
на Ганка Янева Кольовска – синдик на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност

**ОТНОСНО: ПОСТАВЕН ВЪПРОС по реда на чл. 658, ал.3 от ТЗ от 26.04.2016 г.**

УВАЖАЕМИ ГОСПОДИН ПРЕДСЕДАТЕЛ,
УВАЖАЕМИ ГОСПОДИН ТОМОВ,
УВАЖАЕМИ ГОСПОДИН ЯНАКИЕВ,

В изпълнение на задължението ми съгласно разпоредбата на чл. 659, ал.3 от ТЗ представям **НЕЗАБАВНО** отчет по поставен въпрос от кредитори, а именно:

1. Каква парична наличност притежава масата на несъстоятелността на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност към дата 10.10.2014 г. ?

ОТГОВОР: Към 10.10.2014 година, паричната маса на несъстоятелността на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност е 102 966 946,59 лева /сто и два милиона, деветстотин шестдесет и шест хилядн, деветстотин четиридесет и шест лева и петдесет и девет стотинки/.

2. Има ли извършени разпореждания с паричните средства от масата на несъстоятелността на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност, след 10.10.2014 г. , на какво основание са извършени тези разпореждания и в полза на кого?

ОТГОВОР: На 06.11.2014 година е извършено разпореждане с паричната маса на несъстоятелността с основание: „Прехвърляне на вземане с вх.№ 9764/24.10.2014 г. между цедент „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД /Н/ И ЦЕСИОНЕР ПЪРВА ИНВЕСТИЦИОННА БАНКА АД, СЪГЛАСНО ОДОБРЕНО РЕШЕНИЕ №461 НА КВЕСТОРИТЕ НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД №3-2732/27.10.2014."
Първични счетоводни документи за извършената операция не са ми предадени.
Към 27.04.2016 година паричната маса на несъстоятелността е 175,71 /сто седемдесет и пет лева и седемдесет и една стотинки/. Сумата в размер на 22 520.00 лв. в

ОСОБЕНАТА сметка на "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност в "Уникредит Булбанк"АД представлява предплатени разноски за изпълнение на дейностите по т.д.730/2013 на ШОС.

**Приложение: 4 бр. извлечения от банкови сметки на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД /Н/**

Изпращам отчета по електронна поща и в оригинал на страните с куриер.

гр. София                                           Синдик: 
27.04.2016 г.                                      Ганка КОЛЬОВСКА

# EXHIBIT 8



*Фрея Φρεya*
*Транслейшънс Translations*

**Преводи от и на чужди езици**
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

*Round seal of the Targovishte District Court, Filing Department*

# RULING

**No.38 of 14th February 2013**
**Town of Targovishte**
**In the Name of the People**

The Targovishte District Court, Commercial Division, sat in camera on February fourteenth two thousand and thirteen presided by Judge Angelinka Nikolova in the presence of the Secretary Mariela Koleva.

The court heard bankruptcy case No.14 in the docket for 2011 kept at such Court reported by Judge Nikolova. In order to rule the Court looked into the following:

These proceedings were conducted under Art.659 of the Commercial Act ("CA").

The Trustee for Ayr Property Development AD filed a motion in the bankruptcy proceedings for a leave under Art.658 Para 1 (9) CA. The Trustee's motion showed the reasons for the Trustee's activities carried out in furtherance of the Trustee's duties and obligations. Having considered the arguments brough forward and pursuant to Art.659 Para 1 (9) CA the Court

### RULED as follows:

The Trustee for Ayr Property Development AD IS GRANTED LEAVE to instruct the use of the money kept in the Debtor's special bank account with Corporate Commercial Bank AD for the following purposes: to handle the property of the estate, take measures of its preservation, cover the costs of the bankruptcy proceedings and place such money on short-term deposit, as well.

The Trustee IS AUTHORIZED to:

Close all existing debtor's bank accounts and the cause the transfer of the money therein to the special bank account, and

To instruct the use of the money in the special account electronically, by online banking and using such Trustee's personal electronic signature.

The Trustee IS DIRECTED pursuant to Art.659 Para 2 CA to report all amounts actually expended in each of such Trustee's monthly report submitted to the court for approval.

This Ruling is final and may not be appealed; it is subject to recording in the Book kept under Art.634c CA.





2

THIS RULING is NOT subject to appeal.

<div style="margin-left:40%">

Presiding Judge:

/Signed ill./

*Round seal of the Targovishte District Court*

</div>

*Handwritten*: "This is a true copy of the original document issued in case 14/2011 in the docket kept at the TDC. Filing Department Officer: /s/"

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Ruling No.38 of the Targovishte District Court dated 14th February 2013. This translation has 2 pages.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*



# ОПРЕДЕЛЕНИЕ

№......38/......14.02.2013 година Търговище

## В ИМЕТО НА НАРОДА

**ТЪРГОВИЩКИЯТ ОКРЪЖЕН СЪД**                  търговско отделение
на четиринадесети февруари                      две хиляди и тринадесета година
в закрито съдебно заседание в състав:

### ПРЕДСЕДАТЕЛ: АНГЕЛИНКА НИКОЛОВА

Секретар Мариела Колева
като разгледа докладваното                         от Съдия Николова
т.д. 14                                                 по описа за 2011 година
и за да се произнесе, взе предвид следното:

Производството е по реда на чл. 659 от ТЗ.

Постъпила е молба от синдика на „Еър пропръти делевопмънт"АД /в производство по несъстоятелност/ с искане за разрешение по чл. 658, ал.1, т.9 от ТЗ. Изложени са съображения, свързани с оперативните действия на синдика, гарантиращи изпълнение на неговите задължения Въз основа на изложените съображения и на осн. чл. 659, ал.1, т.9 от ТЗ, съдът

## ОПРЕДЕЛИ

**РАЗРЕШАВА** на синдика на „Еър пропърти девелопмънт"АД да се разпорежда с паричните суми от ОСОБЕНАТА банкова сметка на длъжника в „Корпоративна търговска банка" АД София , за управление на имуществото, неговото запазване и издръжка на производството по несъстоятелност, включително и да оставя същите на временни депозити.

Да закрие съществуващите банкови сметки на длъжника, като сумите по тях бъдат преведени в особената сметка

**Да се разпорежда с паричните средства от особената сметка на длъжника по електронен път, с електронно банкиране извършено с личния електронен подпис на синдика**

**УКАЗВА** на осн. чл. 659 ал.2 ТЗ на синдика да посочва в месечните отчети действително усвоените суми за одобрение,.

Определението е окончателно и не подлежн на обжалване, да се отрази в книгата по чл. 634в ТЗ.

**ОПРЕДЕЛЕНИЕТО** не подлежи на обжалване.

ПРЕДСЕДАТЕЛ:

*Вярно с оригинала при...*
*по т. дело № 14/2011г. по описа на*
*Окръжен съд - гр. Търговище*

# EXHIBIT 9





### *Фрея* | *Freya*
### *Транслейшънс* | *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com, freyatranslations@abv.bg

*Translation from Bulgarian*

## RULING No.304

### Town of Shumen, 11th July 2014

A panel of the Commercial Division of the Shumen District Court sitting in camera on 11th July 2014 (*the eleventh of July two thousand and fourteen*) and composed of:

Presiding Judge: Konstantin Mollov,

Heard commercial case No.730 in the docket of the above court for 2013 as reported by the reporting judge and in order to rule the instant court looked into the following:

Mrs Ganka Kolyovska, Trustee in Bankruptcy for Ayr Property Development AD (declared bankrupt), based in the town of Targovishte and having EIK (Company number): 200958720A has filed a motion in the instant court asking the court for a leave to open a new special bank account on behalf of the bankrupt debtor with Bulgarian Development Bank (BDB) and cause a transfer of the money currently on deposit in the special account with Corporate Commercial Bank AD (CCB) to such new bank account. The Trustee has underlined that in the light of the latest developments in the CCB situation and in order to protect the creditors' interests a new special account to accommodate the amounts currently on deposit with CCB needed to be opened.

The court has looked into the motion and considered the issues CCB is currently facing and which issues are common knowledge within the meaning of Art.155 of the Civil Procedure Code with reference to Art.621 of the Commerce Act. The could has held that the motion should be granted and a leave should be given to the trustee to open a new special bank account on behalf of the bankrupt debtor with Bulgarian Development Bank (BDB) and cause a transfer of the money currently on deposit in the special account with Corporate Commercial Bank AD (CCB) to such new bank account.

In view of the foregoing the Court RULED as follows:

Mrs Ganka Kolyovska, Trustee in Bankruptcy for Ayr Property Development AD (declared bankrupt), based in the town of Targovishte and having EIK: 200958720, IS GRANTED LEAVE to open a new special bank account on behalf of the bankrupt debtor with Bulgarian Development Bank and cause a transfer of the money currently on deposit in the special account with Corporate Commercial Bank AD to such new bank account.

A copy hereof shall be sent to the Permanent trustee and shall be recorded in the book kept under Art.634c Para 1 CA.

### DISTRICT JUDGE: (*Signed ill.*)

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Ruling No. 304 of the Targovishte District Court dated 11th July 2014. This translation has 1 (one) page.*

*Translator: _____ Ilko Simeonova Dyulgerova*

О П Р Е Д Е Л Е Н И Е   № 304
гр. Шумен 11.07.2014 г.

Шуменски окръжен съд, търговско отделение, в закрито заседание на едина-десети юли две хиляди и четиринадесета година в състав:

Окръжен съдия:  Константин Моллов

като разгледа докладваното от съдията Константин Моллов т. дело № 730 по описа за 2013 г. за да се произнесе, взе предвид:

Постъпила е молба от синдика на "Еър пропърти девелопмънт" АД (в несъстоятелност), ЕИК 200958720, град Търговище, с която на основание чл.658, ал.1, т.9 от ТЗ моли съдът да разреши откриването на нова особена банкова сметка на несъстоятелния длъжник в "Българска банка за развитие" АД, където да прехвърли всички парични суми, намиращи се в особената сметка в "Корпоративна търговска банка" АД. В молбата се посочва, че при създалата се банкова ситуация, с оглед защита интересите на кредиторите следва да бъде открита нова особена сметка, в която да покръстят депозираните в "Корпоративна търговска банка" АД суми.

Съдът след като се запозна с молбата и като взе предвид проблемите свързани с "Корпоративна търговска банка" АД, които са общоизвестни, по смисъла на чл. 155 от ГПК във вр. чл.621 от ТЗ, съдът счита, че молбата следва да бъде уважена и да се разреши на синдика да открие нова особена банкова сметка на несъстоятелния длъжник в "Българска банка за развитие" АД, където да прехвърли всички парични суми, намиращи се в особената сметка в "Корпоративна търговска банка" АД.

Водим от горното, съдът

О П Р Е Д Е Л И :

Разрешава на Гоанка Янева Кольовска синдик на "Еър пропърти девелоп-мънт" АД (в несъстоятелност), ЕИК 200 958720, град Търговище да открие нова особена банкова сметка на несъстоятелния длъжник в "Българска банка за развитие" АД, където да прехвърли всички парични суми, намиращи се в особената сметка в "Корпоративна търговска банка" АД.

Препис от определението да се изпрати на постоянния синдик и да се впише в книгата по чл.634а, ал.1 от ТЗ.

Окръжен съдия:

# EXHIBIT 10



*Фрея* **CF** *Freya*
*Транслейшънс* *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## CORPORATE COMMERCIAL BANK
### 10 Graf Ignatiev St., Sredets District, 1000 Sofia

## ORDER
### No. 3-2785
### Sofia, 7th November 2014, 9:22 am

**To:**   **the Central Headquarters**
         **10 Graf Ignatiev St., Sofia**

The undersigned Elena Zdravkova Kostadinchev and Stanislav Georgiev Lyutov, acting as conservators of Corporate Commercial Bank AD, having EIK (Company No.) 831 184677, having seat and principal place of business at: 10 Graf Ignatiev St., Sredets District, 1000 Sofia and in furtherance of Resolution No.77 of 25th June 2015 adopted by the Governing Council of the Bulgarian National Bank of Ref. No. BNB-77941/20th June 2014,

and with reference to the requirement to submit data to the Bulgarian Deposit Guarantee Fund for payout of the guaranteed bank deposits,

hereby

## ORDER THAT:

As of 6th November 2014 the daily closing of the accounting system should be ceased until further notice and the accounted date in the accounting system shall remain 6th November 2014.

Conservators:

Elena Zdravkova Kostadinchev, signed /illegible/

Stanislav Georgiev Lyutov, signed /illegible/

*Round seal reading:* Corporate Commercial Bank AD, Sofia

Drawn by Georgi Kortenski,
Phone: 727

---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Order No. 3-2785 dated 7th November 2014 of the conservators of Corporate Commercial Bank AD. This translation has 1 (one) page.*

*Translator:* _____ *Boryana Ilieva Stefanova*



# EXHIBIT 11



*Фрея* **Freya**
*Транслейшънс* *Translations*

**Преводи от и на чужди езици**
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

**CORPORATE COMMERCIAL BANK**

01/12/2014 10:16:14  (Accounting date 06/11/2014)

| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 01 8 |
| IBAN: | BG21 KORP 9220 2029 0120 01 |
| Currency: | BGN |
| Balance at the beginning of the period: | 97,500,000.00 |

**BANK ACCOUNT STATEMENT**

| | **Parameters:** |
|---|---|
| Period: from – to: | 6th November 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | Accounted |

| Accounted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 06/11/2014 | 06/11/2014 | 146062 | Termination of deposit Interest accumulated on Deposit transaction No.29428 upon ex-officio termination made on 24th October 2014 pursuant to Notice of Cession No.9764/24th Oct. 2014 BGN 2,708.33 interest accrued | Credit | 2,708.33 | 97,502,708.33 | Accounted |
| 06/11/2014 | 24/10/2014 | 146063 | Multi-line Payment Order ACCOUNTED TRANSFER OF RECEIVABLES OF FILING NO.9764/24.OCT.2014 BETWEEN THE CEDENT – AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) AND THE CESSIONARY – FIRST INVESTMENT BANK AD PURSUANT TO APPROVED DECISION NO.461 OF THE CONSERVATORS OF CORPORATE COMMERCIAL BANK IN FURTHERANCE OF ORDER NO.3-273 OF 27TH OCT. 2014 | Debit | 97,502,708.33 | 0.00 | Accounted |
| 06/11/2014 | 24/10/2014 | 288581 | Interest Interest accrued on deposit transaction No. 29428 | Credit | 108,441.67 | 108,441.67 | Accounted |
| 06/11/2014 | 24/10/2014 | 288582 | Deposit Maturity Date Interest accrued on deposit's maturity date. Transaction No.29428 | Debit | 108,441.67 | 0.00 | Accounted |

*The undersigned, Boryona Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bank Account Statement from Corporate Commercial Bonk AD. This translation has 1 (one) page.*

Translator: _____

*Boryana Ilieva Stefanava*


КОРПОРАТИВНА
ТЪРГОВСКА БАНКА АД

01.12.2014 10:16:14 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 01 8 |
| IBAN | BG21 KORP 9220 2029 0120 01 |
| Валута | BGN |
| Салдо в началото на периода | 97 500 000.00 BGN |

## Извлечение

| | |
|---|---|
| Параметри | |
| Период от - до | 06.11.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Осчетоводена |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 06.11.2014 | 06.11.2014 | 148062 | Прекратяване на депозит | Кт | 2 708.33 | 97 502 708.33 | Осчетоводено |
| | | | Олихвяване на "Депозитна сделка" номер 29428, при служебно прекратяване към 24.10.2014 съгласно уведомление за прием 9784/24.10.2014 Начислена лихва в размер на 2708.33 BGN. | | | | |
| 06.11.2014 | 24.10.2014 | 148063 | Многоредово бордеро | Дт | 97 502 708.33 | 0.00 | Осчетоводено |
| | | | ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ С ВХ.N.9784/24.10.2014 МЕЖДУ ЦЕДЕНТ ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД И ЦЕСИОНЕР ПЪРВА ИНВЕСТИЦИОННА БАНКА АД, СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.481 НА КВЕСТОРИТЕ НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014 | | | | |
| 06.11.2014 | 06.11.2014 | 288581 | Олихвяване | Кт | 108 441.67 | 108 441.67 | Осчетоводено |
| | | | Олихвяване на "Депозитна сделка" номер 29428. | | | | |
| 06.11.2014 | 06.11.2014 | 288582 | Падеж по депозит | Дт | 108 441.67 | 0.00 | Осчетоводено |
| | | | Олихвяване на депозил на падеж. Сделка номер 29428 | | | | |

VCBBank

Стр. 1 от 1



# Фрея *Freya*
## Транслейшънс *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## CORPORATE COMMERCIAL BANK

01/12/2014 10:16:01  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 02 5 |
| IBAN: | BG91 KORP 9220 2029 0120 02 |
| Currency: | BGN |
| Balance at the beginning of the period: | 2,000,000.00 |

## BANK ACCOUNT STATEMENT

**Parameters:**

| | |
|---|---|
| Period: from – to: | 6th November 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | Accounted |

| Accounted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 06/11/2014 | 24/10/2014 | 146064 | Multi-line Payment Order ACCOUNTED TRANSFER OF ACCOUNTS RECEIVABLE OF FILING No.9764/24.OCT.2014 BETWEEN THE CEDENT – AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) AND THE CESSIONARY – FIRST INVESTMENT BANK AD PURSUANT TO APPROVED DECISION No.461 OF THE CONSERVATORS OF CORPORATE COMMERCIAL BANK IN FURTHERANCE OF ORDER No.3-273 OF 27TH OCT. 2014 | Debit | 2,000,000.00 | 0.00 | Accounted |
| 06/11/2014 | 06/11/2014 | 295063 | Interest Interest accrued on deposit transaction No. 39033 | Credit | 313.18 | 313.18 | Accounted |

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bank Account Statement from Corporate Commercial Bank AD. This translation has 1 (one) page.*

Translator: _____

*Boryana Ilieva Stefanova*



КОРПОРАТИВНА
ТЪРГОВСКА БАНКА АД

01.12.2014 10:18:01 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 02 5 |
| IBAN | BG91 KORP 9220 2029 0120 02 |
| Валута | BGN |
| Салдо в началото на периода | 2 000 000.00 BGN |

# Извлечение

| | |
|---|---|
| Параметри | |
| Период от - до | 06.11.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Осчетоводена |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 06.11.2014 | 24.10.2014 | 148054 | Многоредово бордеро ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ С ВХ.Н.9784/24.10.2014 МЕЖДУ ЦЕДЕНТ ЕЪР ПРОПЪРТИ ДИВЕЛОПМЪНТ АД/НУ И ЦЕСИОНЕР ПЪРВА ИНВЕСТИЦИОННА БАНКА АД, СЪГЛАСНО ОДОБРЕНО РЕШЕНИЕ N.461 НА КВЕСТОРИТЕ НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014 | Дт | 2 000 000.00 | 0.00 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 295063 | Олихвяване Олихвяване на "Депозитна сметка" номер 290033. | Кт | 313.18 | 313.18 | Осчетоводена |



# Фрея Freya
# Транслейшънс Translations

## Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## CORPORATE COMMERCIAL BANK

01/12/2014 10:15:46 (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 03 2 |
| IBAN: | BG64 KORP 9220 2029 0120 03 |
| Currency: | BGN |
| Balance at the beginning of the period: | 1,000,000.00 |

**BANK ACCOUNT STATEMENT**

**Parameters:**

| | |
|---|---|
| Period: from – to: | 6th November 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | Accounted |

| Accounted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 06/11/2014 | 24/10/2014 | 146068 | Multi-line Payment Order<br>ACCOUNTED TRANSFER OF ACCOUNTS RECEIVABLE OF FILING NO.9764/24.OCT.2014 BETWEEN THE CEDENT – AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) AND THE CESSIONARY – FIRST INVESTMENT BANK AD PURSUANT TO APPROVED DECISION NO.461 OF THE CONSERVATORS OF CORPORATE COMMERCIAL BANK IN FURTHERANCE OF ORDER NO.3-273 OF 27TH OCT. 2014 | Debit | 1,000,000,00 | 0.00 | Accounted |
| 06/11/2014 | 06/11/2014 | 295900 | Interest<br>Interest accrued on deposit transaction No. 40116 | Credit | 514.81 | 514.81 | Accounted |

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bank Account Statement from Corporate Commercial Bank AD. This translation has 1 (one) page.*

Translator: _____
Boryana Ilieva Stefanova



VCSBank





## Фрея Freya
## Транслейшънс Translations

**Преводи от и на чужди езици**
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

### CORPORATE COMMERCIAL BANK

01/12/2014 10:15:31  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special bank accounts of business entities in BGN |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 2,464,442.00 |

**BANK ACCOUNT STATEMENT**

**Parameters:**

| | |
|---|---|
| Period: from – to: | 6th November 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | Accounted |

| Accounted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 06/11/2014 | 24/10/2014 | 146069 | Multi-line Payment Order ACCOUNTED TRANSFER OF ACCOUNTS RECEIVABLE OF FILING No.9764/24.OCT.2014 BETWEEN THE CEDENT – AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) AND THE CESSIONARY – FIRST INVESTMENT BANK AD PURSUANT TO APPROVED DECISION No.461 OF THE CONSERVATORS OF CORPORATE COMMERCIAL BANK IN FURTHERANCE OF ORDER No.3-273 OF 27TH OCT. 2014 | Debit | 2,464,238,26 | 203.74 | Accounted |
| 06/11/2014 | 06/11/2014 | 148935 | Interest Interest accrued – | Credit | -20.53 | 183.21 | Accounted |
| 06/11/2014 | 06/11/2014 | 288582 | Deposit Maturity Date Interest accrued on deposit's maturity date. Transaction No.29428 | Credit | 108,441.67 | 108,624.88 | Accounted |
| 06/11/2014 | 06/11/2014 | 306010 | Aggregate fee collection Commission calculated at the Bank's rates | Debit | 7.50 | 108,617.38 | Accounted |

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bank Account Statement from Corporate Commercial Bank AD. This translation has 1 (one) page.*

Translator: _____
*Boryana Ilieva Stefanova*

 

01.12.2014 10:15:31 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 2 464 442.00 BGN |

## Извлечение

| | |
|---|---|
| Параметри | |
| Период от - до | 06.11.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Осчетоводена |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кр | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 06.11.2014 | 24.10.2014 | 148069 | Многоредно бордеро<br>ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗ-МАНЕ<br>С ВХ.Н.9764/24.10.2014<br>МЕЖДУ ЦЕДЕНТ ЕЪР ПРОПЪРТИ ДИВЕЛОПМЪНТ АД И/<br>И ЦЕСИОНЕР ПЪРВА ИНВЕСТИЦИОННА БАНКА АД,<br>СЪГЛАСНО ОДОБРЕНО РЕШЕНИЕ N.461 НА КВЕСТОРИТЕ<br>НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАГ.ПИШ.Н. 3-3732/27.10.2014 | Дт | 2 464 238.26 | 203.74 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 148035 | Описание<br>Описание - | Кр | -20.53 | 183.21 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 368362 | Падеж по депозит<br>Отшизване на депозит на падеж. Сделка номер 29426 | Кр | 106 441.67 | 106 624.88 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 306010 | Маскирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 106 617.38 | Осчетоводена |

---

# EXHIBIT 12

*Фрея*        *Freya*
*Транслейшънс*        *Translations*

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

Rectangular seal reading:
"Corporate Commercial Bank AD
Head Office
Our ref.9764 dated 24th October 2014"

To:    Elena Zdravkova Kostadinchev
       Stanislav Georgiev Lyutov
       Appointed conservators pursuant to Art.105 of the Law on
       Credit Institutions of Corporate Commercial Bank AD, duly
       recorded in the Commercial Registry kept at the Registry
       Agency under EIK (Company number): 831184677 and having
       registered office address at Sofia, 10 Graf Ignatiev St.

## PAYMENT ORDER

Given by:   Martin Milchev Apostolov,
            Trustee in bankruptcy for
            AYR PROPERTY DEVELOPMENT AD (declared bankrupt) and
            having EIK: 200958720 and registered office address at
            Targovishte 7700, Lilia St., bl.4, Section B, 1st floor, apt.2

            Correspondence address: Sofia, 60 Deyan Belishki St.,
            5th floor, apt. 15

Re:    Payment under Art.717n CA in favour of First Investment Bank
       AD from the accounts held by Ayr Property Development AD
       (declared bankrupt)

Dear Mrs Kostadinchev:
Dear Mr Lyutov:

AYR PROPERTY DEVELOPMENT AD (declared bankrupt) ("APD") having
EIK: 200958720 is a company that has been declared bankrupt under Art.710
of the Commerce Act ("CA") in case 14/2011 in the docket kept at the
Targovishte District Court, which case has been converted to case 730/2013
before the Shumen District Court pursuant to the provisions of Art.23 Para 3
of the Civil Procedure Code ("CPC") and by virtue of a ruling made by the
Varna Court of Appeals.

Pursuant to Ruling No.318 of 18th July 2014 delivered in case 730/2013 by
the Shumen District Court and later affirmed by Ruling No.630 of 25th

September 2014 in case No.528/2014 before the Varna Court of Appeals, now in full force and effect since 18th October 2014, the Bankruptcy court ordered APD's Trustee to meet the obligations arising from Art.717n CA.

Acting as the Trustee for APD I have received a payment notice given by First Investment Bank AD urging me to cause the payment of BGN 102,964,238.26 (*one hundred and two million nine hundred sixty four thousand two hundred and thirty-eight point twenty-six Bulgarian leva*) from the money in the insolvent debtor's deposit and current accounts (in the amounts of BGN 97,500,00; BGN 2,464,238.46; BGN 2,000,000 and BGN 1,000,000, respectively).

This is to advise you that I am causing the payment of BGN 102,964,238.26 (*one hundred and two million nine hundred sixty four thousand two hundred and thirty-eight point twenty-six Bulgarian leva*) to First Investment Bank AD from the money available in the current accounts shown below and held by the Trustee for the insolvent debtor with Corporate Commercial Bank AD, to which accounts the proceeds from the sale of the insolvent debtor's property have been remitted: a deposit account where money in the amount of 97,500,000 BGN is kept, a current account of balance BGN 2,464,238.26, a deposit account  where 2,000,000 BGN are kept on deposit and another deposit account of deposit in the amount of 1,000,000 BGN.

In view of the above please note that First Investment Bank AD is from now on the sole holder of the accounts receivable owed to such bank in the amount of BGN 102,964,238.26 (*one hundred and two million nine hundred sixty four thousand two hundred and thirty-eight point twenty-six Bulgarian leva*) and currently kept in the accounts with CCB shown below and having the insolvent debtor's trustee as their holder; those are the accounts to which the proceeds from the sale of the insolvent debtor's property have been remitted: (i) a deposit account where money in the amount of 97,500,000 BGN is kept, (ii) a current account of balance BGN 2,464,238.26, (iii) a deposit account where 2,000,000 BGN are kept on deposit and (iv) another deposit account of deposit in the amount of 1,000,000 BGN.

Yours truly,

*Signed ill.*
Martin Apostolov

**Trustee in bankruptcy**

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Payment Order of ref.9764 dated 24th October 2014 by Martin Apostolov, trustee in bankruptcy for APD. This translation has 2 (two) pages.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*

Дана.
9375-638

КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД
Централно управление
вх № 9767  24.10.07

До

Елена Здравкова Костадинчев
Станислав Георгиев Лютов,
квестори съгласно чл. 105 от Закона за кредитните
институции на „Корпоративна търговска банка" АД,
вписано в Търговския регистър при Агенция по
вписванията с ЕИК 831184677, със седалище и адрес на
управление: гр. София, ул. „Граф Игнатиев" № 10

# НАРЕЖДАНЕ ЗА ПЛАЩАНЕ

От

Мартин Милчев Апостолов, с адрес за кореспонденция:
гр. София, ул."Деян Белишки" № 60, ет. 5, ап. 15, синдик на
„Еър Пропърти Девелопмънт" АД (в несъстоятелност), ЕИК
200958720, със седалище и адрес на управление:
гр. Търговище 7700, Лилия, бл. 4, тяло Б, ет. 1, ап. 2

ОТНОСНО: плащане по чл. 717 н ТЗ в полза на „Първа
инвестиционна банка" АД от сметки на „Еър Пропърти
Девелопмънт" АД (в несъстоятелност)

Уважаема г – жо Костадинчев,
Уважаеми г – н Лютов,

„Еър Пропърти Девелопмънт" АД, ЕИК 200958720, е дружество, което съгласно
разпоредбата на чл. 710 ТЗ е обявено в несъстоятелност по търг. дело № 14/2011 г. по
описа на Окръжен съд Търговище, което в съответствие на нормата на чл. 23, ал. 3 ГПК и с
определение на Апелативен съд Варна е преобразувано в търг. дело № 730/2013 г. по
описа на Окръжен съд Шумен.

Съгласно Определение № 318 от 18.07.2014 г. по търг. дело № 730/2013г. на
Окръжен съд Шумен, потвърдено с Определение № 630/25.09.2014 г. по ч. в. търг. дело №
528/2014 г. по описа на Апелативен съд Варна, влязло в законна сила на 18.10.2014 г.,
съдът по несъстоятелността е указал на синдика на "Еър Пропърти Девелопмънт"АД да
изпълнили задълженията си, произтичащи от чл. 717 н ТЗ.

1

„Първа инвестиционна банка" АД е отправила към мен покана в качеството ми на синдик на „Ъър Пропърти Девелопмънт" АД, ЕИК 200958720, за плащане на сумата от 102 964 238.26 лв. (сто и два милиона деветстотин шестдесет и четири хиляди двеста тридесет и осем лева и двадесет и шест стотинки) от следните депозитни и разплащателни сметки на несъстоятелния длъжник (в размер на 97 500 000 лв., 2 464 238.26 лв, 2 000 000 лв., и 1 000 000 лв.).

С оглед на изложеното Ви уведомявам, че предавам на „Първа инвестиционна банка" АД сумата от 102 964 238.26 лв. (сто и два милиона деветстотин шестдесет и четири хиляди двеста тридесет и осем лева и двадесет и шест стотинки) от депозитните и разплащателни сметки открити при Корпоративна търговска банка АД, с титуляр синдика на несъстоятелния длъжник, по които е преведена сумата от осребряването на имуществото собственост на несъстоятелния длъжник, а именно депозитна сметка с наличност от 97 500 000 лв., разплащателна сметка с наличност от 2 464 238.26 лв, депозитна сметка с наличност от 2 000 000 лв. и депозитна сметка с наличност от 1 000 000 лв.

Предвид изложеното считайте „Първа инвестиционна банка" АД за единствен титуляр на вземането за плащане на сумата от 102 964 238.26 лв. (сто и два милиона деветстотин шестдесет и четири хиляди двеста тридесет и осем лева и двадесет и шест стотинки) от депозитните и разплащателни сметки открити при Корпоративна търговска банка АД, с титуляр синдика на несъстоятелния длъжник, по които е преведена сумата от осребряването на имуществото собственост на несъстоятелния длъжник, а именно депозитна сметка с наличност от 97 500 000 лв., разплащателна сметка с наличност от 2 464 238.26 лв, депозитна сметка с наличност от 2 000 000 лв. и депозитна сметка с наличност от 1 000 000 лв.

С уважение: .............................

Мартин Апостолов

синдик

2

# EXHIBIT 13



**Фрея** **Freya**
**Транслейшънс** **Translations**

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## AYR PROPERTY DEVELOPMENT AD (APD)

Declared bankrupt, Case No.730 in the docket of the Shumen District Court for 2013

### TRUSTEE IN BANKRUPTY (LIQUIDATOR)

Ganka Kolyovska (Mrs)
Sofia, Musagenitsa Residential Area
1a Kl. Ohridski Boulevard, Office 2
Tel: 02 870 05 02, 0888391174
E-mail: syndic@abv.bg


To:     Zahari TOMOV, Attorney at law
        Special Bulgarian Counsel for the
        Trustee in Bankruptcy for Ayr Logistics Limited Inc (Ayr)


**In re.: *Trustee Jeffrey H. Mims letter requesting payment of 20th July 2016, letter of Ref. No.370 of 27th July 2016 and letter of Ref. No. 373 of 8th August 2016***


**DEAR MR. TOMOV,**

In reply to your above quoted letters including the letter of Trustee Jeffrey H. Mims dated 20th July 2016, which I received from you, acting as his representative on 28th July 2016, please be advised as follows:

The Trustee in bankruptcy may dispose of funds of the bankruptcy estate only by virtue of a written permission delivered by the Bankruptcy Court in advance and upon submission of evidence for the existence of sufficient funds and grounds for payment.

SEEK Foundation LLC, acting as a creditor under Art.717n of the Commercial Act ("CA") was included in the Partial Distribution List No.1, drawn an published by the Trustee, which has not been approved by the court.

As of present funds, comprising and representing a bankruptcy estate, which might be distributable to and in favour of APD's creditors, are **Not-Available**, that is to say the bankruptcy estate has fallen into a de facto inability to execute the payment due to its depletion. Therefore no grounds exist for demanding any payment in favour of a creditor/creditors under Art.658, Para 1(9) CA.

The document you quoted in your letter of Ref. No.373 of 8th August 2016, namely the Payment Order of filing No.9764 of 24th October 2014, which was enclosed in the case file under filing No. 9764 of 24th October 2016, is a letter of the trustee, which definitely could not be considered to be **a payment order**. Pursuant to the Bulgarian law and the Bulgarian payment system, a payment document is a strict formal sample document, which contains mandatory attributes (details) specified by the Ministry of Finance. Such document is of dispositive nature (order) and cannot be replaced by a notice letter. Therefore I cannot comment the document enclosed. All official and legal evidence available with me concerning the bank transactions made under the special bank account(s) of APD (declared bankrupt) are enclosed in the case file.

Each creditor, who believes that he/she is a holder of claims for payment can file such claims wherever and however he/she may deem fit, but all and any further acts of the trustee shall depend entirely on the acts delivered by the Bankruptcy Court.

15th August 2016

<div style="text-align:center">

Yours truly,

*Signed (ill.)*
Ganka Kolyovska, Trustee

</div>

*Rectangular stamped seal of the Trustee reading:*

"Ganka Kolyovska, Bankruptcy Trustee
Case 730/2013 before the
Shumen District Court"

---

*The undersigned Boryana Ilieva Stefanova hereby attest that this is a true and correct translation from Bulgarian into English of the attached document — Letter from Ganka Kolyovska to Attorney Zahari Tomov dated 15th August 2016. This translation has 2(two) pages.*

Translator: _____
Boryana Ilieva Stefanova

# "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД
в несъстоятелност, т.д. № 730 по описа за 2013 година на ШОС

**СИНДИК**
Ганка КОЛЬОВСКА
София, кв."Мусагеница"
Бул. „Кл. Охридски" 1а, оф.2
Тел. 02 870 05 02, 0888391174;
e-mail: syndic@abv.bg

До:
Адв. Захари ТОМОВ
Представител на на синдика на
„ЕЪП ЛОДЖИСТИКС ЛИМИТИД ИНК"

**ОТНОСНО: искане за плащане от синдик Джефри Х. Мимс от 20.07.2016 г. писмо изх. №370 от 27.07.2016 година и писмо изх. №373 от 08.08.2016 година.**

**УВАЖАЕМИ ГОСПОДИН ТОМОВ,**

В отговор на цитираните по-горе писма, вкл. и искането на Синдик Джефри Х.Мимс от 20.07.2016 г., получено чрез Вас като негов представител на 28.07.2016 г., Ви уведомявам за следното:

Разпореждане с парични средства от масата на несъстоятелността, синдикът извършва само по силата на предварително получено писмено разрешение на съда по несъстоятелност, след представяне на доказателства за наличие на достатъчно количество парична маса и основания за плащане.

„СИЙК ФУНДЕЙШЪН ЛЛС", в качеството на кредитор по реда на чл. 717н от ТЗ бе включен от синдика в изготвената и публикувана Частична сметка за разпределение №1, която не бе одобрена от съда.

Към настоящия момент парични средства, представляващи маса на несъстоятелността, която да се разпределя в полза на кредиторите на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност **няма**, т.е. паричната маса на несъстоятелност е фактически е изчерпана. По тази причина не е на лице основание за искане по реда на чл. 658, ал.1, т.9 от ТЗ за плащане в полза на кредитор /кредитори/.

Цитираният от Вас документ „Платежно нареждане, вх. №9764/24.10.2014 година в писмо изх. №373 от 08.08.2016 г., приложен по делото с вх.№9764/24.10.2016 г., представлява писмо на синдика, което категорично не може да се счита за **платежно нареждане**. Съгласно българското законодателство и платежната система на България, документът платежно нареждане е строго формален и съдържа задължителни реквизити определени от Министерство на финансите. Този документ е разпоредителен /диспозитивен/ и същият не може да бъде заместен с уведомително писмо. По тази причина не мога да коментирам приложения документ. Всички официални и законни доказателства, с които разполагам, свързани с извършени банкови операции по особената банкова сметка /и/ на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност са приложени по делото.

Всеки кредитор, който счита, че има претенции за плащане, може да представи същите, където и както намери за добре, но последващите действия на синдика са изцяло зависими от актовете на съда по несъстоятелността.

С уважение,
Синдик Ганка Кольовска

15.08.2016 г.

1

# EXHIBIT 14





## Фрея Freya
## Транслейшънс Translations

### Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:30:22 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

6th November 2014/ 146120

Reference: 0

30th October 2014 / 1

Details of transfer:

---------------------------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10209 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Sibole Services Incorporated Bulgaria EOOD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

---------------------------------------------------------------------------------------------

Sibole Services Incorporated Bulgaria EOOD

First Investment Bank

| | | | |
|---|---|---|---|
| 1711 000543 02 5 | 17,000,000.00 Debit | 17,000,000.00 | 30/10/2014 BGN |
| 1.000000        0 | | | |
| 1713 458162 02 0 | 17,000,000.00 Credit | 17,000,000.00 | 30/10/2014 BGN |
| 1.000000        0 | | | |

*The undersigned Boryana Ilieva Stefonova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10209 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____

*Boryana Ilieva Stefanova*

17.11.2014,17:30:22(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146120
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:
-------------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10209/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД
БЪЛГАРИЯ ЕООД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. З-2732/27.10.2014
-------------------------------------------------
    СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД БЪЛГАРИЯ ЕООД
    ПЪРВА ИНВЕСТИЦИОННА БАНКА

1711 000543 02 5          17 000 000.00 Dt      17 000 000.00  30.10.2014  BGN
1.000000       0
1713 458162 02 0          17 000 000.00 Kt      17 000 000.00  30.10.2014  BGN
1.000000       0



## Фрея Freya
## Транслейшънс Translations

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

/ 146124

Reference: 0

30th October 2014 / 1

Details of transfer:

-------------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10208 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Droslian Bulgaria EOOD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

-------------------------------------------------------------------------------

Droslian Bulgaria EOOD

First Investment Bank

| | | | | |
|---|---|---|---|---|
| 1711 000543 02 5 | | 16,811,896.00 Debit | | 16,811 |
| 896.00 | 30th October 2014 | BGN 1,000,000 | 0 | |
| 1713 467671 02 0 | | 16,811,896.00 Credit | | 16,811 |
| 896.00 | 30th October 2014 | BGN 1,000,000 | 0 | |

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10208 of 30th October 2014. This translation has 1 (one) page.*

Translator:

*Boryana Ilieva Stefanova*

```
                                                          146124
                                          РЕФЕРЕНЦИЯ: 0
                                          30.10.2014 / 1

ОСНОВАНИЕ:
--------------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.N.10208/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ДРОСИЛАН БЪЛГАРИЯ ЕООД
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЕ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N.З-2732/27.10.2014
--------------------------------------------------
     ДРОСИЛАН БЪЛГАРИЯ ЕООД
     ПЪРВА ИНВЕСТИЦИОННА БАНКА


1711 000543 02 5              16 811 896.00 Dt        16 811
896.00  30.10.2014  BGN 1.000000        0
1713 467671 02 0              16 811 896.00 Kt        16 811
896.00  30.10.2014  BGN 1.000000        0
```





**Фрея Translations**
**Транслейшънс Freya**

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:29:05 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

6th November 2014/ 146126

Reference: 0

30th October 2014 / 1

Details of transfer:

---

Recorded transfer of accounts receivable in the books under Ref. No. 10206 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Tabak Market AD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

---

Tabak Market AD

First Investment Bank

| 1711 000543 02 5 | 34,400,000.00 Debit | 34,400,000.00 | 30/10/2014 BGN |
| 1.000000        0 | | | |
| 1713 333467 02 0 | 34,400,000.00 Credit | 34,400,000.00 | 30/10/2014 BGN |
| 1.000000        0 | | | |

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10206 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____
Boryana Ilieva Stefanova

17.11.2014,17:29:05(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146126
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:
---------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10206/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ТАБАК МАРКЕТ АД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014
---------------------------------------------
ТАБАК МАРКЕТ  АД
ПЪРВА ИНВЕСТИЦИОННА БАНКА

| | | | | |
|---|---|---|---|---|
| 1711 000543 02 5 | 34 400 000.00 Dt | 34 400 000.00 | 30.10.2014 | BGN |
| 1.000000      0 | | | | |
| 1713 333467 02 0 | 34 400 000.00 Kt | 34 400 000.00 | 30.10.2014 | BGN |
| 1.000000      0 | | | | |





---

.





Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:26:40 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

6th November 2014/ 146146

Reference: 0

30th October 2014 / 1

Details of transfer:

-------------------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10210 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Promishleno Stroitelstvo Holding EAD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

-------------------------------------------------------------------------------------

Promishleno Stroitelstvo Holding EAD

First Investment Bank

| | | | |
|---|---|---|---|
| 1711 000543 02 5 | 4,578,163.33 Debit | 4,578,163.33 | 30/10/2014 BGN |
| 1.000000       0 | | | |
| 1713 000522 07 8 | 4,578,163.33 Credit | 4,578,163.33 | 30/10/2014 BGN |
| 1.000000       0 | | | |

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10210 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____
Boryana Ilieva Stefanova

Case 1:18-cv-11072-GHW-RWL   Document 216-2   Filed 01/06/20   Page 112 of 433

17.11.2014,17:26:40(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146146
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:
----------------------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10210/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ПРОМИШЛЕНО СТРОИТЕЛСТВО ХОЛДИНГ ЕАД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014
----------------------------------------------------------
       ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД
       ПЪРВА ИНВЕСТИЦИОННА БАНКА

1711 000543 02 5              4 578 163.33  Dt      4 578 163.33  30.10.2014  BGN
1.000000      0
1713 000522 07 8              4 578 163.33  Kt      4 578 163.33  30.10.2014  BGN
1.000000      0



Фрея Транслейшънс Freya Translations
Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:25:57 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia page 1

6th November 2014/ 146147

Reference: 0

30th October 2014 / 1

Details of transfer:

---

Recorded transfer of accounts receivable in the books under Ref. No. 10210 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Promishleno Stroitelstvo Holding EAD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

---

Promishleno Stroitelstvo Holding EAD

First Investment Bank

| | | | |
|---|---|---|---|
| 1711 000543 01 8 | 2,462,325.67 Debit | 2,462,325.67 | 30/10/2014 BGN |
| 1.000000 0 | | | |
| 1713 000522 08 5 | 2,462,325.67 Credit | 2,462,325.67 | 30/10/2014 BGN |
| 1.000000 0 | | | |

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10210 of 30th October 2014. This translation has 1 (one) page.*

*Translator:* ____________
*Boryana Ilieva Stefanova*

FREYA TRANSLATIONS Ltd. VARNA BULGARIA ФРЕЯ ТРАНСЛЕЙШЪНС ООД ВАРНА

17.11.2014,17:25:57(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146147
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:

------------------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10210/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ПРОМИШЛЕНО СТРОИТЕЛСТВО ХОЛДИНГ ЕАД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014
------------------------------------------------------
    ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД
    ПЪРВА ИНВЕСТИЦИОННА БАНКА

1711 000543 01 8          2 462 325.67  Dt      2 462 325.67  30.10.2014  BGN
1.000000      0
1713 000522 08 5          2 462 325.67  Kt      2 462 325.67  30.10.2014  BGN
1.000000      0





# *Фрея* ![F] *Freya*
# *Транслейшънс*   *Translations*

### Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:23:33 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

6th November 2014/ 146151

Reference: 0

30th October 2014 / 1

Details of transfer:

-----------------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10204 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Vili Vist EAD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

-----------------------------------------------------------------------------------

Vili Vist EAD

First Investment Bank

| | | | | |
|---|---|---|---|---|
| 1711 000543 02 5 | 10,407,000.00 Debit | 10,407,000.00 | 30/10/2014 BGN |
| 1.000000        0 | | | |
| 1713 512809 02 8 | 10,407,000.00 Credit | 10,407,000.00 | 30/10/2014 BGN |
| 1.000000        0 | | | |

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10204 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____

*Boryana Ilieva Stefanova*

17.11.2014,17:23:33(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146151
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:
---------------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.H.10204/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ВИЛИ ВИСТ ЕАД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014
---------------------------------------------------
ВИЛИ ВИСТ ЕАД
ПЪРВА ИНВЕСТИЦИОННА БАНКА

| | | | | |
|---|---|---|---|---|
| 1711 000543 02 5 | 10 407 000.00 Dt | 10 407 000.00 | 30.10.2014 | BGN |
| 1.000000 0 | | | | |
| 1713 512809 02 8 | 10 407 000.00 Kt | 10 407 000.00 | 30.10.2014 | BGN |
| 1.000000 0 | | | | |

# EXHIBIT 15

(Excerpts)

Information pursuant to art. 62, par. 12, item 3 of the Credit Institutions Law

Information regarding entities, sole propriatores and legal subjects who made notices for transfer of their account receivable after the date on which the bank was put into special supervision (20 June 2014)

| Name | Transaction value | | Type |
|---|---|---|---|
| | Currency | Amount | |
| First Investment Bank AD | BGN | 7 040 489 | Cession |
| First Investment Bank AD | BGN | 17 000 000 | Cession |
| First Investment Bank AD | BGN | 10 407 000 | Cession |
| First Investment Bank AD | BGN | 34 400 000 | Cession |
| First Investment Bank AD | BGN | 16 811 896 | Cession |

*Notes:*

- *The amounts listed in the above table have been rounded off to the nearest whole digit;*
- *The above table includes notifications about endorsements of accounts receivable (cessions) submitted in the bank after the bank had been put into special supervision;*
- *In cases when an entity has made more than one notification to the bank for endorsements of accounts receivable and/or the notification for endorsement of accounts receivable included more than one transaction, they were included in the table as a separate entry.*

Information pursuant to art. 62, par. 12, item 3 of the Credit Institutions Law

Information regarding entities, sole propriatores and legal subjects who made notices for set-offs after the date on which the bank was put into special supervision (20 June 2014)
(List of CCB's debtors who used monetary amounts from deposit accounts in CCB for deductions of their obligations)

| Name | Transaction value | | Type |
|---|---|---|---|
| | Currency | Amount | |
| Vili Vist Bulgaria EAD | BGN | 10 407 000 | Deduction |
| Droslian Bulgaria EOOD | BGN | 16 811 896 | Deduction |
| Promishleno Stroitelstvo Holding EAD | BGN | 7 040 489 | Deduction |
| Cibole Services Incorporated Bulgaria EOOD | BGN | 17 000 000 | Deduction |
| Tabac Market AD | BGN | 34 400 000 | Deduction |

*Notes:*

- *The amounts listed in the above table have been rounded off to the nearest whole digit;*

- *The above table includes notifications about deductions submitted in the bank after the bank had been put into special supervision;*
- *In cases when an entity has made more than one notification to the bank for deduction and/or the notification deduction included more than one transaction, they were included in the table as a separate entry.*

This translation has been made by Dimitar Blagovestov Yanakiev, Attorney-at-Law, member of the Bar Association in the city of Varna, Republic of Bulgaria:

/Dimitar Yanakiev/

**Информация по чл.62, ал.12, т.3 от Закона за кредитните институции**

Информация за юридически лица, еднолични търговци и неперсонифицирани правни субекти, които са съобщили за прехвърляне на вземането си след поставяне на банката под специален надзор (20.06.2014г.):

| НАИМЕНОВАНИЕ | Стойност на сделката | | Вид на |
|---|---|---|---|
| | Валута | Сума | сделката |
| ЗБЕЙ.БГ АД | EUR | 494 000 | Цесия |
| ATH.PLEXIDAS AND SONS S.A | EUR | 2 900 000 | Цесия |
| B.R.E. S.A | EUR | 1 300 000 | Цесия |
| CLARTEX MOVERS LIMITED/КЛАРТЕКС МУВЪРС ЛИМИТЕД | EUR | 337 035 | Цесия |
| LOUDRIP INVESTMENTS LIMITED | EUR | 186 000 | Цесия |
| | USD | 286 000 | Цесия |
| NORWOOD TRADING LIMITED | EUR | 38 000 | Цесия |
| | USD | 107 000 | Цесия |
| RADIANT TECHNOLOGY INC | USD | 2 967 000 | Цесия |
| | EUR | 137 000 | Цесия |
| А.В.БИЛДИНГС АД | BGN | 164 000 | Цесия |
| АГРО ФИНАНС АДСИЦ | BGN | 3 444 700 | Цесия |
| АГРОМАХ ХОЛИДЕЙ ЕООД | EUR | 2 369 000 | Цесия |
| АГРОМАХ ХОЛИДЕЙ ЕООД | BGN | 185 000 | Цесия |
| АДВОКАТСКО ДРУЖЕСТВО МАКСИМОВА-НИКОЛОВА | BGN | 1 200 | Цесия |
| АДОНИС-45 ООД | EUR | 288 340 | Цесия |
| | BGN | 110 000 | Цесия |
| АЛЕКСАНДЪР ПОПОВ ИНВЕСТ ЕООД | BGN | 108 000 | Цесия |
| АЛФА ТРАКИНГ АД /В НЕСЪСТОЯТЕЛНОСТ/ | BGN | 238 200 | Цесия |
| АМЛОГ ООД | BGN | 290 000 | Цесия |
| | EUR | 141 887 | Цесия |
| АНИМАТО МЮЗИК ЕООД | BGN | 428 700 | Цесия |
| | EUR | 87 094 | Цесия |
| АНИМАТО МЮЗИК ПЪБЛИШИНГ ЕООД | BGN | 163 660 | Цесия |
| АРКОН КОНСУЛТ ООД | USD | 530 511 | Цесия |
| АРКОН КОНСУЛТ ООД | BGN | 284 717 | Цесия |
| АРКУС АСЕТ МЕНИДЖМЪНТ АД | BGN | 265 000 | Цесия |
| АРКУС БЪЛГАРИЯ АД | EUR | 34 694 | Цесия |
| АРМАКО АД | USD | 1 711 566 | Цесия |
| | BGN | 418 175 | Цесия |
| АРМАР КОРПОРЕЙШАН ДЖЕНЕРАЛ ТЕХНИКАЛ КО-ОПЕРЕЙШАН ООД | EUR | 100 000 | Цесия |
| АРМАР КОРПОРЕЙШАН ДЖЕНЕРАЛ ТЕХНИКАЛ КО-ОПЕРЕЙШАН ООД | EUR | 158 658 | Цесия |
| АРСЕНАЛ АД | USD | 503 638 | Цесия |
| | BGN | 189 340 | Цесия |
| | EUR | 5 772 | Цесия |
| АСТ СОФИЯ ООД | BGN | 225 000 | Цесия |
| АСТРА АСЕТ МЕНИДЖМЪНТ АД | BGN | 27 293 | Цесия |
| АТГ АД | BGN | 2 379 846 | Цесия |
| | USD | 34 700 | Цесия |
| | EUR | 6 190 | Цесия |
| БАЛКАН МК ЕООД | EUR | 2 544 000 | Цесия |
| БАЛКАН МК ЕООД | EUR | 622 260 | Цесия |
| БАЛКАН МК ЕООД | EUR | 3 246 254 | Цесия |
| БДЖ ТОВАРНИ ПРЕВОЗИ ЕООД | EUR | 664 743 | Цесия |
| БДЖ ТОВАРНИ ПРЕВОЗИ ЕООД | BGN | 2 590 694 | Цесия |
| БЛЕК СИЙ ЕСТЕЙТ МЕНИДЖМЪНТ ЕООД | BGN | 605 000 | Цесия |
| БРАЙТ ИНЖЕНЕРИНГ ООД | USD | 66 599 | Цесия |
| БРАЙТ ИНЖЕНЕРИНГ ООД | BGN | 328 000 | Цесия |
| БРАЙТ ИНЖЕНЕРИНГ ООД | USD | 63 000 | Цесия |
| БРОМАК ЕООД | EUR | 10 828 750 | Цесия |
| БРОМАК ЕООД | EUR | 17 117 000 | Цесия |
| БРОМАК ЕООД | EUR | 2 200 000 | Цесия |
| БРОМАК ЕООД | EUR | 5 783 556 | Цесия |
| БРОМАК ЕООД | EUR | 5 649 934 | Цесия |
| БС ЮНИВЪРС - ЕООД | EUR | 50 000 | Цесия |
| БСУ ЕАД | BGN | 2 905 533 | Цесия |
| БТК НЕТ ЕООД | BGN | 810 000 | Цесия |
| БУЛГАРГАЗ ЕАД | BGN | 12 385 438 | Цесия |
| БУРГАСКИ СВОБОДЕН УНИВЕРСИТЕТ | BGN | 7 328 673 | Цесия |

| | | | |
|---|---|---|---|
| БЪЛГАРСКА АГЕНЦИЯ ЗА ЕКСПОРТНО ЗАСТРАХОВАНЕ/БАЕЗ/ ЕАД | BGN | 2 800 000 | Цесия |
| БЪЛГАРСКА ИНДУСТРИАЛНА И ТЪРГОВСКА КОРПОРАЦИЯ АД | EUR | 100 000 | Цесия |
| БЪЛГАРСКА ИНДУСТРИАЛНА И ТЪРГОВСКА КОРПОРАЦИЯ АД | EUR | 8 200 000 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 34 786 200 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 39 294 045 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 981 340 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 17 632 661 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 309 480 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 5 580 000 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 5 575 000 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 16 258 640 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 2 994 564 | Цесия |
| БЪЛГАРСКА ТЕЛЕКОМУНИКАЦИОННА КОМПАНИЯ ЕАД | BGN | 5 766 521 | Цесия |
| БЪЛГАРСКА ТЪРГОВСКО-ПРОМИШЛЕНА ПАЛАТА | BGN | 994 634 | Цесия |
| БЪЛГАРСКА ТЪРГОВСКО-ПРОМИШЛЕНА ПАЛАТА | EUR | 205 546 | Цесия |
| БЪЛГАРСКА ФОНДОВА БОРСА-СОФИЯ АД | BGN | 1 752 000 | Цесия |
| БЪЛГАРСКИ ЕНЕРГИЕН ХОЛДИНГ ЕАД | BGN | 21 069 935 | Цесия |
| БЪЛГАРСКИ ЕНЕРГИЕН ХОЛДИНГ ЕАД | EUR | 4 256 245 | Цесия |
| В И В - ИЗОМАТИК ООД | BGN | 500 000 | Цесия |
| В И В - ИЗОМАТИК ООД | EUR | 1 795 182 | Цесия |
| В И В - ИЗОМАТИК ООД | BGN | 4 880 998 | Цесия |
| ВАРНА ЗАПАД ИНДУСТРИАЛНА ЗОНА ЕАД | BGN | 2 730 157 | Цесия |
| ВЕГА МЕДИКАЛ ООД | BGN | 297 255 | Цесия |
| ВЕЛГРАФ АСЕТ МЕНИДЖМЪНТ АД | EUR | 1 330 411 | Цесия |
| ВЕЛГРАФ АСЕТ МЕНИДЖМЪНТ АД | EUR | 9 500 000 | Цесия |
| ВИ АЙ ДЖИ ПРОПЪРТИС БЪЛГАРИЯ  АД | BGN | 542 072 | Цесия |
| ВИКТОРИЯ ЗАД | BGN | 2 780 623 | Цесия |
| ВИКТОРИЯ ЗАД | EUR | 921 019 | Цесия |
| ВИКТОРИЯ ЗАД | USD | 11 017 | Цесия |
| ВИРДЖИНИЯ ПЪБЛИШИНГ ЕООД | BGN | 11 100 | Цесия |
| ВИРДЖИНИЯ РЕКЪРДС ЕООД | BGN | 259 332 | Цесия |
| ВИРДЖИНИЯ РЕКЪРДС ЕООД | EUR | 38 417 | Цесия |
| ВОДЕН ЦИКЪЛ 2011 ДЗЗД | BGN | 4 590 | Цесия |
| ВОДСТРОЙ - ИПС ДЗЗД | BGN | 60 070 | Цесия |
| ВАРНЕНСКИ СВОБОДЕН УНИВЕРСИТЕТ ЧЕРНОРИЗЕЦ ХРАБЪР | USD | 1 965 632 | Цесия |
| ВАРНЕНСКИ СВОБОДЕН УНИВЕРСИТЕТ ЧЕРНОРИЗЕЦ ХРАБЪР | BGN | 50 127 | Цесия |
| | EUR | 771 856 | Цесия |
| Г И М КОНСУЛТ АД | EUR | 550 000 | Цесия |
| Г И М КОНСУЛТ АД | EUR | 1 410 000 | Цесия |
| ГАЛИНИ-Н ЕООД | BGN | 1 800 000 | Цесия |
| ГБС - АУГУСТА ДЗЗД | BGN | 24 280 | Цесия |
| ГБС и ПАРТНЬОРИ ДЗЗД | BGN | 118 470 | Цесия |
| ГЕОКАД 93 ЕООД | BGN | 130 268 | Цесия |
| ГЛОБЪЛ КЕМИКЪЛС СЪЛЮШЪНС ЕООД | EUR | 677 000 | Цесия |
| ДАТЕКС ООД | EUR | 2 369 000 | Цесия |
| ДАТЕКС ООД | EUR | 1 089 261 | Цесия |
| ДАТЕКС ООД | EUR | 442 000 | Цесия |
| ДЕКОТЕКС АД | EUR | 411 151 | Цесия |
| | BGN | 983 306 | Цесия |
| ДЖЕНЕРИС АД | BGN | 240 000 | Цесия |
| ДЖЕНЕРИС АД | BGN | 83 514 | Цесия |
| ДЖЕНЕРИС АД | BGN | 87 034 | Цесия |
| ДЗЗД ИНТЕГРИРАНИ ИНФРАСТРУКТУРИ ГАБРОВО | BGN | 108 260 | Цесия |
| ДЗЗД ПСВ | BGN | 2 880 | Цесия |
| ДЗЗД ЦАРЕВЕЦ 2013 | BGN | 286 802 | Цесия |
| ДИГТЕХ АД | EUR | 148 585 | Цесия |
| ДИЛИНГОВА ФИНАНС.КОМПАНИЯ  АД | EUR | 555 | Цесия |
| | BGN | 1 619 | Цесия |
| ДИЛИНГОВА ФИНАНС.КОМПАНИЯ  АД | BGN | 117 706 | Цесия |
| ДИЛИНГОВА ФИНАНС.КОМПАНИЯ  АД | BGN | 1 690 | Цесия |
| ДИЛИНГОВА ФИНАНС.КОМПАНИЯ  АД | BGN | 1 848 | Цесия |
| ДИЛИНГОВА ФИНАНС.КОМПАНИЯ  АД | BGN | 509 000 | Цесия |
| ДОГОВОРЕН ФОНД  ТИ БИ АЙ ХАРМОНИЯ | EUR | 55 120 | Цесия |
| ДОГОВОРЕН ФОНД АДВАНС КОНСЕРВАТИВЕН ФОНД | BGN | 1 147 000 | Цесия |
| ДОГОВОРЕН ФОНД АЛФА ЛИКВИДНИ СРЕДСТВА | BGN | 130 744 | Цесия |
| ДОГОВОРЕН ФОНД АЛФА ЛИКВИДНИ СРЕДСТВА | BGN | 165 008 | Цесия |

| | | | |
|---|---|---|---|
| ДОГОВОРЕН ФОНД АЛФА ЛИКВИДНИ СРЕДСТВА | BGN | 248 948 | Цесия |
| ДОГОВОРЕН ФОНД АЛФА ЛИКВИДНИ СРЕДСТВА | BGN | 143 325 | Цесия |
| ДОГОВОРЕН ФОНД АРКУС БАЛАНСИРАН | BGN | 100 000 | Цесия |
| ДОГОВОРЕН ФОНД АРКУС ДИНАМИЧЕН | BGN | 200 000 | Цесия |
| ДОГОВОРЕН ФОНД АСТРА КЕШ | EUR | 1 596 500 | Цесия |
| ДОГОВОРЕН ФОНД АСТРА КОМОДИТИ | EUR | 90 977 | Цесия |
| ДОГОВОРЕН ФОНД АСТРА ПЛЮС | EUR | 82 672 | Цесия |
| ДОГОВОРЕН ФОНД ДСК АЛТЕРНАТИВА | BGN | 1 400 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК АЛТЕРНАТИВА | BGN | 100 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК ЕВРО АКТИВ | BGN | 2 200 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК СТАБИЛНОСТ - ЕВРОПЕЙСКИ АКЦИИ | BGN | 1 050 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК СТАБИЛНОСТ - АМЕРИКАНСКИ АКЦИИ | BGN | 100 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК СТАНДАРТ | BGN | 2 334 113 | Цесия |
| ДОГОВОРЕН ФОНД ДСК СТАНДАРТ | BGN | 1 040 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК СТАНДАРТ | BGN | 2 000 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК ФОНД НА ПАРИЧНИЯ ПАЗАР | BGN | 3 350 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК ФОНД НА ПАРИЧНИЯ ПАЗАР | BGN | 2 500 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК ФОНД НА ПАРИЧНИЯ ПАЗАР | BGN | 1 400 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК ФОНД НА ПАРИЧНИЯ ПАЗАР В ЕВРО | BGN | 600 000 | Цесия |
| ДОГОВОРЕН ФОНД ДСК ФОНД НА ПАРИЧНИЯ ПАЗАР В ЕВРО | BGN | 921 935 | Цесия |
| ДОГОВОРЕН ФОНД ЕЛАНА ЕВРОФОНД | BGN | 165 419 | Цесия |
| ДОГОВОРЕН ФОНД ИНВЕСТ КЕПИТЪЛ-ВИСОКОДОХОДЕН | BGN | 80 000 | Цесия |
| ДОГОВОРЕН ФОНД КОМПАС ЕВРОСТАБИЛНОСТ | BGN | 204 163 | Цесия |
| ДОГОВОРЕН ФОНД КОМПАС ПРОГРЕС | BGN | 404 246 | Цесия |
| ДОГОВОРЕН ФОНД КОМПАС СТРАТЕГИЯ | BGN | 223 185 | Цесия |
| ДОГОВОРЕН ФОНД КОНКОРД ФОНД - 6 ПАРИЧЕН | BGN | 2 550 000 | Цесия |
| ДОГОВОРЕН ФОНД СЪГЛАСИЕ ПРЕСТИЖ | BGN | 300 000 | Цесия |
| ДОГОВОРЕН ФОНД СЪГЛАСИЕ ПРОФИТ | BGN | 300 000 | Цесия |
| ДОГОВОРЕН ФОНД ТИ БИ АЙ ДИНАМИК | EUR | 174 711 | Цесия |
| ДОГОВОРЕН ФОНД ТИ БИ АЙ ЕВРОБОНД | EUR | 36 054 | Цесия |
| ДОГОВОРЕН ФОНД ТИ БИ АЙ КОМФОРТ | EUR | 71 750 | Цесия |
| ДОГОВОРЕН ФОНД ТИ БИ АЙ СЪКРОВИЩЕ | EUR | 10 558 | Цесия |
| ДРУЖЕСТВО ПО ЗЗД КАБИЛЕ | BGN | 9 600 | Цесия |
| ДСК УПРАВЛЕНИЕ НА АКТИВИ АД | BGN | 19 575 026 | Цесия |
| ДУНА ЛАЙН ЕООД | EUR | 148 000 | Цесия |
| ДЪРЖАВНА КОНСОЛИДАЦИОННА КОМПАНИЯ ЕАД | BGN | 1 304 000 | Цесия |
| Е.МИРОЛИО ЕАД | EUR | 23 000 000 | Цесия |
| Е.МИРОЛИО ЕАД | EUR | 1 700 000 | Цесия |
| | EUR | 5 000 000 | Цесия |
| | EUR | 2 000 000 | Цесия |
| ЕИРА ДЗЗД | BGN | 43 520 | Цесия |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 7 703 | Цесия |
| | BGN | 115 134 | Цесия |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 10 798 736 | Цесия |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 495 008 | Цесия |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 114 422 | Цесия |
| ЕРАТО ДЗЗД | BGN | 2 550 | Цесия |
| ЕТС ТЕХНОЛОДЖИ ДЗЗД | BGN | 82 770 | Цесия |
| ЕФОРИЯ ДЗЗД | BGN | 4 680 | Цесия |
| ЗАД БУЛСТРАД ВИЕНА ИНШУРЪНС ГРУП АД | BGN | 4 474 949 | Цесия |
| ЗАД БУЛСТРАД ВИЕНА ИНШУРЪНС ГРУП АД | BGN | 2 380 041 | Цесия |
| ЗАСТРАХОВАТЕЛНА КОМПАНИЯ ОЛИМПИК - КЛОН БЪЛГАРИЯ | EUR | 667 815 | Цесия |
| ЗАСТРАХОВАТЕЛНА КОМПАНИЯ ОЛИМПИК - КЛОН БЪЛГАРИЯ | BGN | 1 832 429 | Цесия |
| ЗД БУЛ ИНС АД | BGN | 303 947 | Цесия |
| ЗД БУЛ ИНС АД | EUR | 3 890 487 | Цесия |
| ИНВЕСТ МЕНИДЖМЪНТ ООД | EUR | 4 090 474 | Цесия |
| ИНВЕСТ МЕНИДЖМЪНТ ООД | EUR | 536 860 | Цесия |
| ИНВЕСТ МЕНИДЖМЪНТ ООД | EUR | 1 022 600 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 120 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 160 091 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 494 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 90 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 35 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | USD | 166 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 25 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 55 000 | Цесия |

| | | | |
|---|---|---|---|
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 335 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 4 500 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 120 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 6 792 069 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 364 523 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 172 140 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 185 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 15 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 998 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 219 768 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 118 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 562 121 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 410 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 296 294 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 32 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 64 863 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 132 400 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 368 097 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 411 151 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 983 306 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 241 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 2 369 000 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | EUR | 93 720 | Цесия |
| ИНДУСТРИАЛНИ ИНВЕСТИЦИИ АД | BGN | 1 403 | Цесия |
| ИНТЕРПРЕД-СВЕТОВЕН ТЪРГОВСКИ ЦЕНТЪР СОФИЯ АД | BGN | 500 000 | Цесия |
| ИНФРАБИЛД ДЗЗД | BGN | 133 570 | Цесия |
| ИНФРАСТРОЙ ЕООД | BGN | 372 870 | Цесия |
| ИНФРАСТРОЙ ЕООД | BGN | 113 423 | Цесия |
| К КЕПИТАЛ АД | EUR | 1 350 000 | Цесия |
| К КЕПИТАЛ АД | EUR | 1 370 486 | Цесия |
| КАЛИПСО ДЗЗД | BGN | 72 170 | Цесия |
| КЕПИТЪЛ ИНВЕСТМЪНТ АД | BGN | 20 071 000 | Цесия |
| КЕПИТЪЛ ИНВЕСТМЪНТ АД | BGN | 1 174 137 | Цесия |
| КЕПИТЪЛ ИНВЕСТМЪНТ АД | BGN | 8 770 864 | Цесия |
| КЕПИТЪЛ ИНВЕСТМЪНТ АД | EUR | 3 270 336 | Цесия |
| КЕПИТЪЛ ИНВЕСТМЪНТ АД | EUR | 1 636 068 | Цесия |
| КИА МОТОРС БЪЛГАРИЯ АД | EUR | 224 000 | Цесия |
| КИМТЕХ-БЪЛГАРИЯ ООД | BGN | 2 454 000 | Цесия |
| | USD | 1 540 000 | Цесия |
| КИМТЕХ-БЪЛГАРИЯ ООД | USD | 66 599 | Цесия |
| | BGN | 328 000 | Цесия |
| | USD | 63 000 | Цесия |
| КОМИДОР АД | EUR | 225 000 | Цесия |
| КОМПАС ИНВЕСТ АД | BGN | 184 080 | Цесия |
| СДРУЖЕНИЕ КОНФЕДЕРАЦИЯ НА ТРУДА ПОДКРЕПА | BGN | 476 054 | Цесия |
| КООПЕРАЦИЯ ЦЕНТРАЛЕН КООПЕРАТИВЕН СЪЮЗ | EUR | 8 299 871 | Цесия |
| КООПЕРАЦИЯ ЦЕНТРАЛЕН КООПЕРАТИВЕН СЪЮЗ | EUR | 8 029 850 | Цесия |
| КОСМОС ЕНЕРДЖИ ЕООД | USD | 56 500 | Цесия |
| КОСМОС ЕНЕРДЖИ ЕООД | USD | 69 520 | Цесия |
| КОСМОС ЕНЕРДЖИ ЕООД | USD | 56 500 | Цесия |
| КОСМОС ФИНАНС ЕООД | BGN | 8 500 | Цесия |
| КОСМОС ФИНАНС ЕООД | USD | 16 500 | Цесия |
| КОСМОС ФИНАНС ЕООД | USD | 40 000 | Цесия |
| КОТОНС ИНДУСТРИ БЪЛГАРИЯ АД | EUR | 223 435 | Цесия |
| КРИСТАЛ ОЙЛ ТРЕЙДИНГ ЕООД | BGN | 369 465 | Цесия |
| КСМ СТРОЙ ООД | EUR | 210 000 | Цесия |
| КЪНСТРАКШЪН ЕНД РИПЕЪР ЕООД | BGN | 216 666 | Цесия |
| | USD | 435 743 | Цесия |
| ЛИТЕКС АД | BGN | 1 626 936 | Цесия |
| ЛИТЕКС ГАЗ ЕООД | BGN | 114 428 | Цесия |
| МАКС СЕЛЕКТ ЕООД | BGN | 98 353 | Цесия |
| МАКС СЕЛЕКТ ЕООД | BGN | 595 301 | Цесия |
| МАКС СЕЛЕКТ ЕООД | BGN | 393 | Цесия |
| МЕДИА СЕЙЛС ООД | BGN | 557 210 | Цесия |
| МЕДИА СЕЙЛС ООД | BGN | 196 440 | Цесия |
| МЕДИА СЕЙЛС ООД | BGN | 177 000 | Цесия |

| | | | |
|---|---|---:|---|
| МЕДИА СЕЙЛС ООД | BGN | 183 915 | Цесия |
| МЕДИЯ ИНТЕР ГРУП ЕООД | BGN | 1 800 | Цесия |
| МЕЖДУНАРОДНА ФОНДАЦИЯ СВ.СВ.КИРИЛ И МЕТОДИЙ | EUR | 568 947 | Цесия |
| МЕТАЛ АД | BGN | 450 658 | Цесия |
| МЕТАЛ АД | USD | 518 020 | Цесия |
| МЕТАЛИКА-АБ ЕООД | USD | 2 050 000 | Цесия |
| МЕХАТРОНИКА АД | BGN | 122 232 | Цесия |
| МЕХАТРОНИКА АД | BGN | 750 000 | Цесия |
| МИКРОФИНАНСИРАЩА ИНСТИТУЦИЯ ДЖОБС ЕАД | BGN | 8 400 000 | Цесия |
| МИРАТ ГРУП ООД | BGN | 403 200 | Цесия |
| МОЛЕКЮЛАР СОЛУШЪНС БЪЛГАРИЯ ЕООД | BGN | 758 850 | Цесия |
| МПА ХАНДЕЛС БЪЛГАРИЯ ЕООД | BGN | 121 122 | Цесия |
| НАФТЕКС ПЕТРОЛ ЕООД | EUR | 63 000 | Цесия |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 357 111 | Цесия |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 357 561 | Цесия |
| НАЦИОНАЛНА КОМПАНИЯ ИНДУСТРИАЛНИ ЗОНИ ЕАД | BGN | 2 028 387 | Цесия |
| НАЦИОНАЛЕН ГАРАНЦИОНЕН ФОНД ЕАД | BGN | 13 000 000 | Цесия |
| НЕЗАВИСИМОСТ- 40 АД | BGN | 62 000 | Цесия |
| НИКРИ ЕООД | EUR | 786 416 | Цесия |
| НУРТС ДИДЖИТЪЛ ЕАД | BGN | 7 369 000 | Цесия |
| НЮ ДИЗАЙН АЙДИЪС АД | BGN | 586 644 | Цесия |
| ОДИТ 2007 МС ЕООД | BGN | 8 822 | Цесия |
| ОПЕЛ-НЕШЕВ ООД | BGN | 4 816 000 | Цесия |
| ПАЛАДИУМ ЕООД | EUR | 120 000 | Цесия |
| ПГ ХИДРО ПАРТНЬОРИ ДЗЗД | BGN | 161 400 | Цесия |
| ПИ ЕС АЙ АД | BGN | 486 128 | Цесия |
| ПИРГОС ХИДРО ДЗЗД | BGN | 5 710 | Цесия |
| ПИРГОСПЛОД АД | BGN | 850 000 | Цесия |
| ПМУ АД | BGN | 685 170 | Цесия |
| ПМУ АД | BGN | 1 500 000 | Цесия |
| ПМУ АД | BGN | 1 433 428 | Цесия |
| ПРИМА ДИВЕЛОПМЪНТ АД | BGN | 196 000 | Цесия |
| ПРИМА ДИВЕЛОПМЪНТ АД | BGN | 804 000 | Цесия |
| ПРИМАВОКС ЕООД | BGN | 149 490 | Цесия |
| ПРОАКТА ЕООД | BGN | 25 007 | Цесия |
| ПЪРВА ИНВЕСТИЦИОННА БАНКА АД | BGN | 7 040 489 | Цесия |
| ПЪРВА ИНВЕСТИЦИОННА БАНКА АД | BGN | 17 305 649 | Цесия |
| ПЪРВА ИНВЕСТИЦИОННА БАНКА АД | BGN | 34 400 000 | Цесия |
| ПЪРВА ИНВЕСТИЦИОННА БАНКА АД | BGN | 17 000 000 | Цесия |
| ПЪРВА ИНВЕСТИЦИОННА БАНКА АД | BGN | 16 811 896 | Цесия |
| ПЪРВА ИНВЕСТИЦИОННА БАНКА АД | BGN | 10 407 000 | Цесия |
| ПЪТИЩА ПЛОВДИВ ЕАД | EUR | 2 369 000 | Цесия |
| РЕМОНТСТРОЙ АД | BGN | 4 101 352 | Цесия |
| РТ ИНЖЕНЕРИНГ-Н АД | BGN | 6 760 344 | Цесия |
| САФИН АД | EUR | 1 403 247 | Цесия |
| СДРУЖЕНИЕ ДРУЖЕСТВО ЗА КОЛЕКТИВНО УПРАВЛЕНИЕ В ЧАСТНА ПОЛЗА ПРАВАТА НА ПРОДУЦЕНТИТЕ НА ЗВУКОЗАПИСИ И МУЗИКАЛНИ ВИДЕОЗАПИСИ И НА АРТИСТИТЕ ИЗПЪЛНИТЕЛИ-ПРОФОН | BGN | 4 500 000 | Цесия |
| СЕВЪН МЕДИА СЕЙЛС ЕНД КОНСУЛТИНГ АД-В ЛИКВИДАЦИЯ | BGN | 27 339 | Цесия |
| СЕВЪН МЕДИА СЕЙЛС ЕНД КОНСУЛТИНГ АД-В ЛИКВИДАЦИЯ | BGN | 2 656 | Цесия |
| СЕВЪН МЕДИА СЕЙЛС ЕНД КОНСУЛТИНГ АД-В ЛИКВИДАЦИЯ | BGN | 2 000 | Цесия |
| СЕВЪН МЕДИА СЕЙЛС ЕНД КОНСУЛТИНГ АД-В ЛИКВИДАЦИЯ | BGN | 27 339 | Цесия |
| СИМОВ И СИЕ ООД | BGN | 636 678 | Цесия |
| СИСТЕМИ АВТОМАТИКА ТЕХНОЛОГИИ/САТ/ ЕООД | EUR | 227 064 | Цесия |
| СИСТЕМИ АВТОМАТИКА ТЕХНОЛОГИИ/САТ/ ЕООД | EUR | 948 438 | Цесия |
| СИТИ МЕТАЛ ЕООД | BGN | 108 700 | Цесия |
| СПЕЦИАЛИЗИРАНА БОЛНИЦА ЗА РЕХАБИЛИТАЦИЯ - ЗДРАВЕ ЕАД | BGN | 633 000 | Цесия |
| СТАЛ 2007 ЕООД | EUR | 95 370 | Цесия |
| СТАЛ 2007 ЕООД | EUR | 2 520 000 | Цесия |
| СТОПАНСКИ ТЪРГОВСКИ КОМПЛЕКС ЕООД - В ЛИКВИДАЦИЯ | BGN | 2 067 457 | Цесия |
| СТРОЙМОНТАЖ ЕООД | BGN | 499 000 | Цесия |
| СТРОЙМОНТАЖ ЕООД | BGN | 1 592 000 | Цесия |
| СТРОЙ-ЦЕМ ООД | BGN | 6 500 000 | Цесия |
| СТРОЙ-ЦЕМ ООД | BGN | 4 060 000 | Цесия |
| СТС ХОЛДИНГ ГРУП ООД | BGN | 180 000 | Цесия |
| СЪГЛАСИЕ АСЕТ МЕНИДЖМЪНТ - АД | BGN | 250 000 | Цесия |

| | | | |
|---|---|---|---|
| СЪНЛАЙТ ЕЪР ЕАД | USD | 784 110 | Цесия |
| ТЕЖКО МАШИНОСТРОЕНЕ АД-В ЛИКВИДАЦИЯ | BGN | 2 683 663 | Цесия |
| ТЕМА ООД | BGN | 216 688 | Цесия |
| ТЕРЕС ДЗЗД | BGN | 3 400 | Цесия |
| ТЕХНО РЕЗИДЕНШЪЛ ПАРК ЕАД | BGN | 263 000 | Цесия |
| ТИ БИ АЙ АСЕТ МЕНИДЖМЪНТ ЕАД | BGN | 173 273 | Цесия |
| ТРЕЙДМЕКС АД | USD | 141 493 | Цесия |
| ТРЕЙС-СОФИЯ ЕАД | BGN | 372 870 | Цесия |
| ТРЕЙС ГРУП ХОЛД АД | BGN | 1 800 000 | Цесия |
| ФИНАНС ИНФО АСИСТАНС ЕООД | EUR | 5 500 000 | Цесия |
| ФИНАНСОВО КОНСУЛТИРАНЕ АД | BGN | 50 000 | Цесия |
| ФОНДАЦИЯ ЛИБЕРТАРИАНСТВО | EUR | 711 884 | Цесия |
| ХЕЛИТРАНС АД | BGN | 1 238 708 | Цесия |
| ЦЕНТРАЛЕН ДЕПОЗИТАР АД | BGN | 155 000 | Цесия |
| ЦЕНТРАЛЕН ДЕПОЗИТАР АД | BGN | 1 000 000 | Цесия |
| ЦЕНТРАЛНА АВТОГАРА АД | BGN | 204 507 | Цесия |
| ЦЕНТРАЛНА КООПЕРАТИВНА БАНКА АД | EUR | 9 500 000 | Цесия |
| ЦЕНТРАЛНА КООПЕРАТИВНА БАНКА АД | EUR | 5 500 000 | Цесия |
| ЦЕНТРАЛНА КООПЕРАТИВНА БАНКА АД | EUR | 500 778 | Цесия |
| ЧЕРНОМОРИЕ 2011 ООД | EUR | 2 000 000 | Цесия |
| ЮНИОН ТРАНС СЪРВИЗ БЪЛГАРИЯ 2000 ЕООД | EUR | 980 000 | Цесия |

Забележки:

- посочените в таблицата суми са закръглени до най-близкото цяло число

- в таблицата по-горе са включени *постъпилите* в банката в периода след поставянето й под специален надзор съобщения за прехвърляне на вземания /цесия/

- в случаите, в които едно лице е отправило към банката повече от едно съобщение за прехвърляне на вземания и/или ако в отправено към банката съобщение за прехвърляне на вземания са налични няколко сделки, същите са отразени в таблицата на отделен ред

**Информация по чл.62, ал.12, т.3 от Закона за кредитните институции**
Информация за физически лица, които са направили волеизявление за прихващане след поставяне на банката под специален надзор (20.06.2014 г.):

| Име | Стойност на сделката | | Вид на |
|---|---|---|---|
| | Валута | Сума | сделката |
| DAKON CHRISTOPHER/ДЕЙКЪН КРИСТОФЪР | EUR | 314 500 | Прихващане |
| VICTOR ZOZAYA SERVERA | BGN | 373 672 | Прихващане |
| АЛБЕНА БОРИСОВА БЛИЗНАШКА | USD | 50 000 | Прихващане |
| БОНКА ДРАГОМИРОВА КРЪСТЕВА | BGN | 968 | Прихващане |
| БОРИСЛАВ ДОНЧЕВ БЕЕВ | EUR | 272 365 | Прихващане |
| БОРЯНА РОЗИНОВА МИЛЕВА | BGN | 950 | Прихващане |
| БОРЯНА РОЗИНОВА МИЛЕВА | BGN | 950 | Прихващане |
| ВАЛЕНТИНА СТЕФАНОВА ГЕНЧЕВА | BGN | 725 | Прихващане |
| ВАЛЕРИ ГЕОРГИЕВ ГАДЖЕВ | BGN | 52 000 | Прихващане |
| ВАЛЯ ИВАНОВА КУШЕВА | BGN | 1 410 | Прихващане |
| ВАЛЯ ИВАНОВА КУШЕВА | BGN | 1 410 | Прихващане |
| ВАНУХИ БЕДРОС АРАКЕЛЯН | EUR | 1 780 | Прихващане |
| | BGN | 1 565 | Прихващане |
| ВАНЯ ВАСИЛЕВА СИНГЕЛУДИ | BGN | 729 | Прихващане |
| | EUR | 401 | Прихващане |
| ВАСИЛ ГЕОРГИЕВ ЦОКОНОВ | BGN | 1 892 | Прихващане |
| | EUR | 2 003 | Прихващане |
| ВАСИЛ НИКОЛОВ ИГНАТОВ | BGN | 1 265 | Прихващане |
| ВЕРА РАЧЕВА ИЛИЕВА | EUR | 50 000 | Прихващане |
| ВИЛИМИРА ДАНАИЛОВА БЕЕВА | EUR | 292 241 | Прихващане |
| ГАЛИНА НИКОЛАЕВА ПЕЙЧЕВА | BGN | 4 784 | Прихващане |
| ГЕОРГИ НИКОЛОВ МЪРКОВ | EUR | 45 160 | Прихващане |
| ГЕОРГИ НИКОЛОВ МЪРКОВ | USD | 236 421 | Прихващане |
| ГРИГОР МИНЧЕВ АНДРЕЕВ | BGN | 120 000 | Прихващане |
| ДЕСИСЛАВА ЕМИЛЕВА ПЕТРОВСКА | BGN | 4 623 | Прихващане |
| ДЕСИСЛАВА ЛАЗАРОВА БОРИСОВА | BGN | 4 919 | Прихващане |
| ДИАН ИЛИЕВ БРАТАНОВ | BGN | 3 892 | Прихващане |
| ДИАНА ИЛИЕВА АТАНАСОВА | BGN | 35 000 | Прихващане |
| ДИМИТЪР ИВАНОВ ДИМИТРОВ | EUR | 39 000 | Прихващане |
| ДИМИТЪР СТЕФАНОВ ВЪРТИГОВ | BGN | 87 034 | Прихващане |
| ЕМИЛ ЦВЕТКОВ ВАСИЛЕВ | USD | 49 000 | Прихващане |
| ЖАЙР ЕТВАРТ АГОПЯН | USD | 36 000 | Прихващане |
| | USD | 59 000 | Прихващане |
| ЖАЙР ЕТВАРТ АГОПЯН | EUR | 64 865 | Прихващане |
| ЖАЙР ЕТВАРТ АГОПЯН | BGN | 438 000 | Прихващане |
| ЖАЙР ЕТВАРТ АГОПЯН | EUR | 302 885 | Прихващане |
| ЖАСМИНА ВАСИЛЕВА ВЕЛЕВА | BGN | 14 500 | Прихващане |
| ЖАСМИНА ВАСИЛЕВА ВЕЛЕВА | BGN | 11 400 | Прихващане |
| ЗДРАВКО ЖИВКОВ БОСАКОВ | EUR | 52 594 | Прихващане |
| ИВАЙЛО АТАНАСОВ МИНЧЕВ | USD | 26 000 | Прихващане |
| ИВАЙЛО КОЛЕВ КОЛЕВ | BGN | 88 013 | Прихващане |
| ИВАЙЛО НИКОЛОВ ИВАНОВ | BGN | 2 676 | Прихващане |
| ИВАН ГЕОРГИЕВ ПУКНЕВ | BGN | 1 691 | Прихващане |
| ИВАН ДРАГНЕВ СТОЙКОВ | EUR | 39 500 | Прихващане |
| ИВАН МИНЕВ НОЙКОВ | BGN | 3 568 | Прихващане |
| ИВАН ЯНЕВ БУНКОВ | BGN | 10 512 | Прихващане |
| ЙОРДАН ДИМИТРОВ КАЦАРСКИ | BGN | 570 | Прихващане |
| КАМЕН АНАСТАСОВ ХАРИЗАНОВ | BGN | 15 507 | Прихващане |
| КАМЕН АНАСТАСОВ ХАРИЗАНОВ | BGN | 113 195 | Прихващане |
| КРАСИМИР ВЕЛИЧКОВ МИТЕВ | BGN | 122 232 | Прихващане |
| ЛИЛКО ЛИЛКОВ ХАДЖИЕВ | BGN | 5 168 | Прихващане |
| ЛИЛЯНА ТОДОРОВА МАСЛЕНКОВА | BGN | 14 000 | Прихващане |
| МАРИАНКА ГЕОРГИЕВА АНТОВА | BGN | 650 | Прихващане |
| МАРИЯНА СТОЙЛОВА МИЛАНОВА | BGN | 450 | Прихващане |
| МАЯ КИРИЛОВА ДОЙЧИНОВА | BGN | 1 957 | Прихващане |
| МИЛОСЛАВ ЙОРДАНОВ ГЕОРГИЕВ | EUR | 37 500 | Прихващане |
| МИРОСЛАВ НИКОЛАЕВ БОЯДЖИЕВ | BGN | 5 229 | Прихващане |
| НЕДЬО ЛАЗАРОВ ГЕОРГИЕВ | BGN | 1 937 | Прихващане |
| НИКОЛА ХРИСТОВ НИКОЛОВ | BGN | 27 001 | Прихващане |

| | | | |
|---|---|---|---|
| НИКОЛИНА БОРИСОВА КОСТАДИНОВА | EUR | 400 | Прихващане |
| НИКОЛИНА БОРИСОВА КОСТАДИНОВА | EUR | 1 150 | Прихващане |
| ПЕТЪР РУМЕНОВ ТОПАЛДЖИЕВ | BGN | 551 | Прихващане |
| ПЕТЬО ХРИСТОВ БЛЪСКОВ | USD | 500 882 | Прихващане |
| РАНГЕЛ РУМЯНОВ СТОЙЧЕВ | BGN | 1 593 | Прихващане |
| РУМЕН ИВАНОВ ИВАНОВ | USD | 15 000 | Прихващане |
| РУМЯНА СЛАВЕВА ТОДОРОВА | EUR | 840 | Прихващане |
| РУМЯНА СЛАВЕВА ТОДОРОВА | BGN | 3 | Прихващане |
| САВИНА ВАСИЛЕВА БОРИСОВА | BGN | 1 296 | Прихващане |
| САШКА ГЕОРГИЕВА КИРИЛОВА | EUR | 27 900 | Прихващане |
| СВЕТОСЛАВ  ИВАНОВ МЕТАНОВ | BGN | 83 514 | Прихващане |
| СТОЯН ПАНЧЕВ ПЕТРОВ | EUR | 16 000 | Прихващане |
| ТЕОДОРА ВАЛЕРИЕВА КАРАДАЧКА | EUR | 5 000 | Прихващане |
| ТЕОДОРА ПЕТРОВА ТАНЕВА | BGN | 50 000 | Прихващане |
| ХРИСТО ПЕТКОВ ПЕТКОВ | EUR | 82 431 | Прихващане |
| ХРИСТО ПЪРВАНОВ РУСИНОВ | BGN | 36 000 | Прихващане |
| ЦВЕТЕЛИНА БОРИСОВА ЧЕЛЕБИЕВА-ИГНАТОВА | EUR | 4 122 | Прихващане |
| ЦВЕТОЗАР ЙОРДАНОВ ДИМИТРОВ | EUR | 46 398 | Прихващане |
| ЮЛИЯН НИКОЛОВ ПЕТКОВ | BGN | 68 500 | Прихващане |
| ЮЛИЯН НИКОЛОВ ПЕТКОВ | BGN | 40 800 | Прихващане |
| ЮЛИЯН НИКОЛОВ ПЕТКОВ | BGN | 50 480 | Прихващане |

Забележки:

- посочените в таблицата суми са закръглени до най-близкото цяло число

- в таблицата по-горе са включени *постъпилите* в банката в периода след поставянето й под специален надзор волеизявления за прихващане.

- в случаите, в които едно лице е отправило към банката повече от едно волеизявление за прихващане и/или ако в отправено към банката волеизявление за прихващане са налични няколко сделки, същите са отразени в таблицата на отделен ред.

**Информация по чл.62, ал.12, т.3 от Закона за кредитните институции**
Информация за юридически лица, еднолични търговци и неперсонифицирани правни субекти, които са направили волеизявление за прихващане след поставяне на банката под специален надзор (20.06.2014 г.):

| НАИМЕНОВАНИЕ | Стойност на сделката | | Вид на сделката |
|---|---|---|---|
| | Валута | Сума | |
| DOMO RETAIL S.A. | BGN | 19 497 | Прихващане |
| DOMO RETAIL S.A. | BGN | 121 122 | Прихващане |
| DOMTECH HOLDING AG/ ДОМТЕХ ХОЛДИНГ АГ | BGN | 35 212 191 | Прихващане |
| DOMTECH HOLDING AG/ ДОМТЕХ ХОЛДИНГ АГ | BGN | 12 812 249 | Прихващане |
| | EUR | 2 530 670 | Прихващане |
| АВИОНАМС - АД | BGN | 762 315 | Прихващане |
| АВИОНАМС - АД | EUR | 47 000 | Прихващане |
| АВИОНАМС - АД | BGN | 642 509 | Прихващане |
| АВИОНАМС - АД | BGN | 45 000 | Прихващане |
| АВИОНАМС - АД | BGN | 8 642 784 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | EUR | 50 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | EUR | 300 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | EUR | 300 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | EUR | 15 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | EUR | 25 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | USD | 10 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | USD | 42 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | USD | 26 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | EUR | 16 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | EUR | 150 000 | Прихващане |
| АГП ДИВЕЛОПМЪНТ АД | BGN | 263 000 | Прихващане |
| АГРО - Ж.А ООД | BGN | 4 938 151 | Прихващане |
| | EUR | 688 417 | Прихващане |
| | USD | 257 397 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 165 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 80 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 48 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 50 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 66 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 48 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | EUR | 67 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | EUR | 21 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | EUR | 26 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | EUR | 21 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 420 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 418 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 170 000 | Прихващане |
| АГРОКОМПЛЕКТ ЕАД | BGN | 130 000 | Прихващане |
| АРВЕН АД | EUR | 2 000 000 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 155 000 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 49 000 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 50 500 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 189 127 | Прихващане |
| АРКАДИЯ СЪРВИС АД | EUR | 61 242 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 22 000 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 151 600 | Прихващане |
| АРКАДИЯ СЪРВИС АД | EUR | 19 650 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 101 430 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 54 744 | Прихващане |
| АРКАДИЯ СЪРВИС АД | BGN | 219 230 | Прихващане |
| АРКУС АД | EUR | 137 000 | Прихващане |
| | USD | 2 967 000 | Прихващане |
| АРКУС АД | EUR | 38 000 | Прихващане |
| | USD | 107 000 | Прихващане |
| АРКУС АД | BGN | 3 508 411 | Прихващане |
| АРКУС АД | EUR | 31 320 | Прихващане |
| АРКУС АД | USD | 26 448 | Прихващане |
| АРКУС АД | BGN | 8 822 | Прихващане |
| АРКУС АД | EUR | 34 694 | Прихващане |
| АРКУС АД | BGN | 17 305 649 | Прихващане |

| | | | |
|---|---|---|---|
| АРКУС АД | EUR | 4 399 321 | Прихващане |
| АРКУС АД | USD | 2 724 434 | Прихващане |
| АРКУС АД | BGN | 1 136 389 | Прихващане |
| АРКУС АД | BGN | 842 867 | Прихващане |
| АСМ КОНСУЛТ ЕООД | BGN | 335 000 | Прихващане |
| АФЛИК БЪЛГАРИЯ ЕАД | BGN | 309 480 | Прихващане |
| Б.Л. ЛИЗИНГ АД | EUR | 224 000 | Прихващане |
| Б.Л. ЛИЗИНГ АД | EUR | 1 089 261 | Прихващане |
| БГ ТОМИ ЕООД | BGN | 215 000 | Прихващане |
| БКС-ЗАПАД АД | USD | 269 273 | Прихващане |
| БКС-ЗАПАД АД | BGN | 81 103 | Прихващане |
| БКС-ЗАПАД АД | EUR | 220 000 | Прихващане |
| БКС-ЗАПАД АД | USD | 19 020 | Прихващане |
| | EUR | 141 324 | Прихващане |
| | BGN | 598 | Прихващане |
| БМТ- ИНВЕСТ АД | BGN | 200 000 | Прихващане |
| БУЛПАЛ ООД | EUR | 593 247 | Прихващане |
| БЪЛГАРСКА БАНКА ЗА РАЗВИТИЕ АД | BGN | 500 000 | Прихващане |
| БЪЛГЕРИАН ЕЪРУЕЙЗ ГРУП ЕАД | EUR | 8 422 910 | Прихващане |
| БЪЛГЕРИАН ЕЪРУЕЙЗ ГРУП ЕАД | EUR | 16 507 525 | Прихващане |
| БЪЛГЕРИАН МИНЕРАЛ ТРЕЙДИНГ АД | BGN | 137 000 | Прихващане |
| | BGN | 185 000 | Прихващане |
| БЪЛГЕРИАН МИНЕРАЛ ТРЕЙДИНГ АД | BGN | 47 822 | Прихващане |
| | EUR | 185 815 | Прихващане |
| | USD | 336 450 | Прихващане |
| БЪЛГЕРИАН МИНЕРАЛ ТРЕЙДИНГ АД | BGN | 44 000 | Прихващане |
| | BGN | 671 117 | Прихващане |
| | BGN | 90 000 | Прихващане |
| В 9 ООД | EUR | 125 000 | Прихващане |
| В 9 ООД | EUR | 137 360 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 90 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 22 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 17 188 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 3 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 135 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 62 500 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 39 700 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 152 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 172 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 55 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 288 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 48 700 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 56 900 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 111 168 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 73 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 37 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 212 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 69 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 31 232 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | USD | 20 500 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 1 020 478 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 123 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | EUR | 57 647 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | USD | 103 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 276 332 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 244 000 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 149 490 | Прихващане |
| В И ВГД ОРАНЖЕРИИ ПЕТРИЧ ООД | BGN | 665 830 | Прихващане |
| ВИАСТРОЙ АД | BGN | 187 372 | Прихващане |
| ВИЛИ ВИСТ ЕАД | BGN | 10 407 000 | Прихващане |
| ВИНИ БЪЛГАРИЯ АД | EUR | 410 000 | Прихващане |
| ВИНИ БЪЛГАРИЯ АД | BGN | 368 097 | Прихващане |
| ГЕНТО МИЛЛ ООД | EUR | 287 000 | Прихващане |
| ГЕНТО МИЛЛ ООД | EUR | 96 625 | Прихващане |
| | USD | 111 977 | Прихващане |
| ГЕНТО МИЛЛ ООД | BGN | 189 620 | Прихващане |

| | | | |
|---|---|---|---|
| ГЕНТО МИЛЛ ООД | EUR | 894 380 | Прихващане |
| | BGN | 1 621 362 | Прихващане |
| ГЕНТО МИЛЛ ООД | EUR | 88 180 | Прихващане |
| | BGN | 82 656 | Прихващане |
| ГЕНТО МИЛЛ ООД | BGN | 96 000 | Прихващане |
| ГЕНТО МИЛЛ ООД | BGN | 1 281 630 | Прихващане |
| ГЕНТО МИЛЛ ООД | EUR | 118 400 | Прихващане |
| ГЕОПРИБОР ЕАД | BGN | 1 433 428 | Прихващане |
| ГИПС АД | EUR | 860 869 | Прихващане |
| ГИПС АД | BGN | 185 000 | Прихващане |
| ГИПС АД | EUR | 15 000 | Прихващане |
| ГИПС АД | BGN | 364 523 | Прихващане |
| ГИПС АД | EUR | 160 091 | Прихващане |
| ГИПС АД | EUR | 93 720 | Прихващане |
| ГИПС АД | EUR | 411 151 | Прихващане |
| | BGN | 983 306 | Прихващане |
| ГИПС АД | BGN | 241 000 | Прихващане |
| ГИПС АД | EUR | 210 000 | Прихващане |
| ГИПС АД | EUR | 32 000 | Прихващане |
| ГИПС АД | EUR | 64 863 | Прихващане |
| ГИПС АД | EUR | 132 400 | Прихващане |
| ГИПС АД | EUR | 494 000 | Прихващане |
| ГИПС АД | BGN | 90 000 | Прихващане |
| ГИПС АД | EUR | 35 000 | Прихващане |
| ГИПС АД | USD | 166 000 | Прихващане |
| ГИПС АД | BGN | 25 000 | Прихващане |
| ГИПС АД | EUR | 2 369 000 | Прихващане |
| ГИПС АД | EUR | 55 000 | Прихващане |
| ГИПС АД | BGN | 4 500 000 | Прихващане |
| ДЗЗД БАЛКАН ГОЛД - КОНТРАКС | BGN | 117 000 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ИНВЕСТ ЕАД (ГЕНИМЕКС ИНВЕСТ ЕАД) | BGN | 360 000 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ИНВЕСТ ЕАД (ГЕНИМЕКС ИНВЕСТ ЕАД) | BGN | 523 290 | Прихващане |
| | EUR | 653 837 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ИНВЕСТ ЕАД (ГЕНИМЕКС ИНВЕСТ ЕАД) | EUR | 180 524 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ИНВЕСТ ЕАД (ГЕНИМЕКС ИНВЕСТ ЕАД) | BGN | 226 936 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ИНВЕСТ ЕАД (ГЕНИМЕКС ИНВЕСТ ЕАД) | USD | 134 800 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ИНВЕСТ ЕАД (ГЕНИМЕКС ИНВЕСТ ЕАД) | USD | 69 535 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ПЕТРОЛ ПРОДУКТС ЕАД (ГЕНИМЕКС ОЙЛ ЕАД) | BGN | 567 506 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ПЕТРОЛ ПРОДУКТС ЕАД (ГЕНИМЕКС ОЙЛ ЕАД) | BGN | 331 666 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ПЕТРОЛ ПРОДУКТС ЕАД (ГЕНИМЕКС ОЙЛ ЕАД) | EUR | 36 660 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ПЕТРОЛ ПРОДУКТС ЕАД (ГЕНИМЕКС ОЙЛ ЕАД) | EUR | 7 630 | Прихващане |
| ДИ ЕНД ДИ ДЖИ ПЕТРОЛ ПРОДУКТС ЕАД (ГЕНИМЕКС ОЙЛ ЕАД) | BGN | 57 000 | Прихващане |
| ДОМ СТАРА ПЛАНИНА АД | BGN | 348 000 | Прихващане |
| | BGN | 20 200 | Прихващане |
| ДРАГАНОВСКИ М ЕООД | EUR | 29 000 | Прихващане |
| | BGN | 2 219 | Прихващане |
| ДРАГАНОВСКИ М ЕООД | USD | 4 000 | Прихващане |
| ДРОСЛИАН БЪЛГАРИЯ ЕООД | BGN | 16 811 896 | Прихващане |
| ДУНАРИТ АД | BGN | 50 000 | Прихващане |
| ДУНАРИТ АД | EUR | 30 000 | Прихващане |
| ДУНАРИТ АД | BGN | 27 293 | Прихващане |
| ДУНАРИТ АД | EUR | 1 596 500 | Прихващане |
| ДУНАРИТ АД | EUR | 90 977 | Прихващане |
| ДУНАРИТ АД | EUR | 82 672 | Прихващане |
| ДУНАРИТ АД | BGN | 864 644 | Прихващане |
| | USD | 377 836 | Прихващане |
| ДУНАРИТ АД | BGN | 181 804 | Прихващане |
| | BGN | 719 818 | Прихващане |
| ДУНАРИТ АД | EUR | 1 033 214 | Прихващане |
| | BGN | 535 629 | Прихващане |
| ДУНАРИТ АД | BGN | 47 894 | Прихващане |
| | USD | 231 795 | Прихващане |
| | EUR | 1 128 498 | Прихващане |
| | BGN | 1 944 143 | Прихващане |
| ДУНАРИТ АД | BGN | 50 000 | Прихващане |
| ДУНАРИТ АД | BGN | 165 419 | Прихващане |

| | | | |
|---|---|---:|---|
| ДУНАРИТ АД | EUR | 30 000 | Прихващане |
| ДУНАРИТ АД | BGN | 226 745 | Прихващане |
| ДУНАРИТ АД | EUR | 23 000 000 | Прихващане |
| ДУНАРИТ АД | USD | 335 000 | Прихващане |
| ДУНАРИТ АД | BGN | 1 325 000 | Прихващане |
| ДУНАРИТ АД | EUR | 148 000 | Прихващане |
| ДУНАРИТ АД | EUR | 55 120 | Прихващане |
| ДУНАРИТ АД | BGN | 173 273 | Прихващане |
| ДУНАРИТ АД | EUR | 36 054 | Прихващане |
| ДУНАРИТ АД | EUR | 174 711 | Прихващане |
| ДУНАРИТ АД | EUR | 71 750 | Прихващане |
| ДУНАРИТ АД | EUR | 10 558 | Прихващане |
| ДУНАРИТ АД | BGN | 210 000 | Прихващане |
| ДУНАРИТ АД | BGN | 47 000 | Прихващане |
| ДУНАРИТ АД | BGN | 48 600 | Прихващане |
| ДУНАРИТ АД | BGN | 320 000 | Прихващане |
| ДУНАРИТ АД | BGN | 1 650 000 | Прихващане |
| ДУНАРИТ АД | BGN | 231 000 | Прихващане |
| ДУНАРИТ АД | BGN | 162 000 | Прихващане |
| ДУНАРИТ АД | EUR | 1 300 000 | Прихващане |
| ДУНАРИТ АД | USD | 530 511 | Прихващане |
| ДУНАРИТ АД | BGN | 284 717 | Прихващане |
| ДУНАРИТ АД | BGN | 2 454 000 | Прихващане |
| | USD | 1 540 000 | Прихващане |
| ДУНАРИТ АД | EUR | 130 900 | Прихващане |
| ДУНАРИТ АД | EUR | 920 000 | Прихващане |
| ДУНАРИТ АД | USD | 2 218 405 | Прихващане |
| ДУНАРИТ АД | BGN | 246 000 | Прихващане |
| ДУНАРИТ АД | USD | 503 638 | Прихващане |
| | EUR | 5 772 | Прихващане |
| | BGN | 189 340 | Прихващане |
| ДУНАРИТ АД | BGN | 139 000 | Прихващане |
| ДУНАРИТ АД | BGN | 500 000 | Прихващане |
| ДУНАРИТ АД | EUR | 2 520 000 | Прихващане |
| ДУНАРИТ АД | BGN | 95 070 | Прихващане |
| ДУНАРИТ АД | BGN | 25 007 | Прихващане |
| ДУНАРИТ АД | USD | 2 050 000 | Прихващане |
| ДУНАРИТ АД | EUR | 24 000 | Прихващане |
| ДУНАРИТ АД | BGN | 129 767 | Прихващане |
| ДУНАРИТ АД | BGN | 107 000 | Прихващане |
| ЕВРОБИЛД  2003 ЕООД | EUR | 1 165 376 | Прихващане |
| ЕДК АД | USD | 56 500 | Прихващане |
| ЕДК АД | USD | 69 520 | Прихващане |
| ЕДК АД | USD | 56 500 | Прихващане |
| ЕКЗОТИК  2000 ООД | EUR | 74 000 | Прихващане |
| ЕКЗОТИК  2000 ООД | BGN | 94 000 | Прихващане |
| ЕКЗОТИК  2000 ООД | EUR | 946 974 | Прихващане |
| ЕКЗОТИК  2000 ООД | BGN | 962 000 | Прихващане |
| ЕКЗОТИК  2000 ООД | BGN | 298 000 | Прихващане |
| ЕКЗОТИК  2000 ООД | BGN | 40 000 | Прихващане |
| | EUR | 125 300 | Прихващане |
| | BGN | 128 707 | Прихващане |
| | USD | 360 000 | Прихващане |
| | USD | 8 000 | Прихващане |
| ЕКЗОТИК  2000 ООД | BGN | 559 124 | Прихващане |
| ЕКЗОТИК  2000 ООД | BGN | 248 404 | Прихващане |
| ЕКО ПАЗАРИ ЕООД | BGN | 196 000 | Прихващане |
| ЕКО РИЗОРТ ЕАД | BGN | 3 509 198 | Прихващане |
| | EUR | 152 399 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 6 760 344 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 5 806 647 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 71 654 | Прихващане |
| | EUR | 127 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 40 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 369 465 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 16 000 | Прихващане |

| | | | |
|---|---|---|---|
| ЕЛИТ ПЕТРОЛ АД | EUR | 677 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 70 000 | Прихващане |
| | EUR | 139 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 311 139 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 676 609 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 636 678 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 147 533 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 2 379 846 | Прихващане |
| | USD | 34 700 | Прихващане |
| | EUR | 6 190 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 158 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 201 548 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 331 637 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | EUR | 7 600 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 4 816 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 24 961 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 2 166 122 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 371 017 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 8 798 505 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 162 191 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | EUR | 194 304 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | EUR | 757 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 3 244 205 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 164 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | EUR | 223 435 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | EUR | 179 300 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 509 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | EUR | 23 500 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 310 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 4 060 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 13 861 | Прихващане |
| | EUR | 38 378 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 34 615 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 2 664 619 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 116 337 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 138 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 108 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 191 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 16 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 938 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 67 861 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | EUR | 260 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 700 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 1 832 429 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 103 912 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | EUR | 90 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 1 147 000 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | BGN | 1 949 890 | Прихващане |
| ЕЛИТ ПЕТРОЛ АД | USD | 197 940 | Прихващане |
| ЕМ ПРОДЖЕКТ 1 ЕООД | BGN | 5 575 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 92 395 | Прихващане |
| | USD | 130 642 | Прихващане |
| | EUR | 51 376 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 7 703 | Прихващане |
| | BGN | 115 134 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 115 963 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 508 995 | Прихващане |
| | EUR | 36 376 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 155 412 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 100 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 130 268 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 155 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 17 320 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 40 319 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 16 819 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 16 819 | Прихващане |

| | | | |
|---|---|---|---|
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 24 725 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 36 351 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 1 111 891 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 665 269 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 8 500 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 38 473 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 266 883 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 45 153 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 216 666 | Прихващане |
| | USD | 435 743 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 65 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 306 272 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 114 421 | Прихващане |
| | BGN | 495 008 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 159 666 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 110 727 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 568 947 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 118 314 | Прихващане |
| | USD | 18 727 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 353 167 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 240 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 100 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 419 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 216 688 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 6 829 | Прихващане |
| | EUR | 8 106 | Прихващане |
| | BGN | 128 812 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 16 500 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 52 197 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 48 171 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 1 033 064 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 264 000 | Прихващане |
| | USD | 322 500 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 1 553 119 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 363 712 | Прихващане |
| | EUR | 267 593 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 1 226 780 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 912 837 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | USD | 40 000 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 334 636 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 3 857 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 1 845 253 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | EUR | 7 877 | Прихващане |
| ЕНЕРГИЙНА ФИНАНСОВА ГРУПА АД | BGN | 48 400 | Прихващане |
| ЕНЕРГОРЕМОНТ- ХОЛДИНГ АД | BGN | 1 500 000 | Прихващане |
| ЕТ ИВЕНА КОМЕРС - Валентин Шотев | EUR | 30 902 | Прихващане |
| ЕТ СЕРГЕЙ ТЕОФИЛОВ ДЕЛИЕВ | BGN | 28 840 | Прихващане |
| ЗКПУ "НОВ ЖИВОТ" | BGN | 43 293 | Прихващане |
| ИМИДЖ КОНСУЛТИНГ ЕООД | USD | 12 000 | Прихващане |
| ИН ГРУП АД | BGN | 297 255 | Прихващане |
| ИН ГРУП АД | EUR | 2 405 000 | Прихващане |
| ИН ГРУП АД | BGN | 758 850 | Прихващане |
| ИНВЕСТ МЕНИДЖМЪНТ ООД | USD | 784 110 | Прихващане |
| ИНТЕРАКТИВ МЕДИА СЪРВИСИЗ ЕООД | BGN | 1 174 137 | Прихващане |
| | EUR | 100 000 | Прихващане |
| | BGN | 138 481 | Прихващане |
| | EUR | 223 846 | Прихващане |
| | EUR | 100 000 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 998 000 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | EUR | 219 768 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 118 000 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 562 121 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 61 083 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | EUR | 12 006 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | EUR | 296 294 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 108 260 | Прихващане |

| | | | |
|---|---|---|---|
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 286 802 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 172 140 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 1 403 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 6 792 069 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 1 183 296 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 605 000 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | BGN | 185 000 | Прихващане |
| ИНФРАСТРУКТУРНА КОМПАНИЯ АД | EUR | 65 000 | Прихващане |
| КИМПЕКС ЕНЕРДЖИ АД | BGN | 340 088 | Прихващане |
| КИМПЕКС ЕНЕРДЖИ АД | EUR | 10 798 736 | Прихващане |
| КИМПЕКС ЕНЕРДЖИ АД | BGN | 1 894 011 | Прихващане |
| КИМПЕКС ЕНЕРДЖИ АД | BGN | 304 467 | Прихващане |
| | EUR | 56 767 | Прихващане |
| | USD | 17 559 | Прихващане |
| КИМПЕКС ЕНЕРДЖИ АД | BGN | 154 241 | Прихващане |
| КИМПЕКС ЕНЕРДЖИ АД | EUR | 950 000 | Прихващане |
| КИМПЕКС ЕНЕРДЖИ АД | BGN | 66 543 | Прихващане |
| КОРСИ МАУНТИН РИСОРТ АД | BGN | 225 000 | Прихващане |
| КОРСИ МАУНТИН РИСОРТ АД | EUR | 204 000 | Прихващане |
| КОРСИ МАУНТИН РИСОРТ АД | BGN | 225 000 | Прихващане |
| КОСМОС ЕНЕРДЖИ ЕООД | USD | 1 520 000 | Прихващане |
| КОСМОС ЕНЕРДЖИ ЕООД | USD | 1 640 423 | Прихващане |
| КОСТЕНЕЦ - ХХИ АД | EUR | 13 268 732 | Прихващане |
| КРИДО К ЕООД | BGN | 4 735 | Прихващане |
| КРИДО К ЕООД | BGN | 4 735 | Прихващане |
| ЛАЙВ ДИЗАЙН ООД | BGN | 981 340 | Прихващане |
| ЛЕКС ПРОПЪРТИС АД | BGN | 60 000 | Прихващане |
| ЛИТЕКС КОМЕРС АД | EUR | 17 609 | Прихващане |
| ЛИТЕКС КОМЕРС АД | BGN | 156 965 | Прихващане |
| ЛИТЕКС КОМЕРС АД | BGN | 204 507 | Прихващане |
| ЛИТЕКС МОТОРС АД | BGN | 11 807 045 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 1 031 700 | Прихващане |
| | EUR | 894 973 | Прихващане |
| ЛИТЕКС МОТОРС АД | BGN | 307 065 | Прихващане |
| | EUR | 162 000 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 458 000 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 205 546 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 121 737 | Прихващане |
| ЛИТЕКС МОТОРС АД | BGN | 11 087 671 | Прихващане |
| ЛИТЕКС МОТОРС АД | USD | 79 289 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 217 190 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 1 430 194 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 4 253 550 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 2 026 398 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 890 345 | Прихващане |
| ЛИТЕКС МОТОРС АД | BGN | 1 401 525 | Прихващане |
| ЛИТЕКС МОТОРС АД | BGN | 1 969 664 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 1 389 861 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 2 283 423 | Прихващане |
| ЛИТЕКС МОТОРС АД | BGN | 20 478 172 | Прихващане |
| ЛИТЕКС МОТОРС АД | EUR | 117 618 | Прихващане |
| ЛОМСКО ПИВО АД | BGN | 291 566 | Прихващане |
| ЛОМСКО ПИВО АД | EUR | 100 000 | Прихващане |
| ЛОМСКО ПИВО АД | USD | 21 159 | Прихващане |
| ЛОМСКО ПИВО АД | BGN | 84 171 | Прихващане |
| | BGN | 1 118 985 | Прихващане |
| ЛОМСКО ПИВО АД | BGN | 400 610 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 85 320 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 595 822 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 142 797 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 3 383 691 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 226 043 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 176 387 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | EUR | 158 658 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 850 000 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 171 408 | Прихващане |

| | | | |
|---|---|---|---|
| МАКС СЕЛЕКТ ЕООД | BGN | 173 800 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | EUR | 328 680 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 140 950 | Прихващане |
| МАКС СЕЛЕКТ ЕООД | BGN | 193 657 | Прихващане |
| МЕК БАЛКАН ЕООД | EUR | 3 246 254 | Прихващане |
| МЕС КО ММ 5 ЕООД | EUR | 622 260 | Прихващане |
| МИНИ МАРИЦА ИЗТОК ЕАД | EUR | 4 256 245 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 144 076 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 243 571 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 200 021 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | EUR | 63 000 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | EUR | 66 800 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 380 000 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 370 000 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | EUR | 344 554 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | BGN | 472 630 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | EUR | 308 370 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | BGN | 1 094 000 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | BGN | 237 157 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 5 199 597 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 61 364 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | EUR | 543 946 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 108 933 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | USD | 3 159 372 | Прихващане |
| НАФТЕКС ПЕТРОЛ ЕООД | EUR | 22 000 | Прихващане |
| НИККОМЕРС 01 ЕООД | BGN | 5 618 000 | Прихващане |
| НИККОМЕРС 01 ЕООД | BGN | 77 619 | Прихващане |
| НОВИ ЕНЕРГИЙНИ И ИНДУСТРИАЛНИ ТЕХНОЛОГИИ АД | BGN | 685 170 | Прихващане |
| НУРТС БЪЛГАРИЯ АД | BGN | 51 852 757 | Прихващане |
| НЮ ТРЕЙД ГРУП АД | EUR | 625 000 | Прихващане |
| НЮ ТРЕЙД ГРУП АД | BGN | 633 000 | Прихващане |
| НЮ ТРЕЙД ГРУП АД | BGN | 8 299 871 | Прихващане |
| НЮ ТРЕЙД ГРУП АД | EUR | 225 000 | Прихващане |
| НЮ ТРЕЙД ГРУП АД | EUR | 2 000 000 | Прихващане |
| ОРФЕАС ООД | EUR | 256 000 | Прихващане |
| ОРХИДЕЯ-СЕМЕЙСТВО ГЕОРГИЕВИ ВЕЛИН ГЕОРГИЕВ ЕТ | BGN | 516 000 | Прихващане |
| ПАРТНЕР ЛИЗИНГ АД | EUR | 310 000 | Прихващане |
| ПАРТНЕР ЛИЗИНГ АД | EUR | 201 094 | Прихващане |
| ПАРТНЕР ЛИЗИНГ АД | EUR | 2 300 773 | Прихващане |
| ПАРТНЕР ЛИЗИНГ АД | EUR | 118 000 | Прихващане |
| ПАРТНЕР ЛИЗИНГ АД | EUR | 284 935 | Прихващане |
| ПЕРФЕКТ  ООД | EUR | 553 159 | Прихващане |
| | USD | 47 659 | Прихващане |
| | BGN | 23 752 | Прихващане |
| ПЕРФЕКТ  ООД | BGN | 51 937 | Прихващане |
| ПЕРФЕКТ  ООД | BGN | 545 474 | Прихващане |
| ПЕРФЕКТ  ООД | USD | 37 750 | Прихващане |
| ПИРГОСПЛОД АД | BGN | 4 101 352 | Прихващане |
| ПИРГОСПЛОД АД | BGN | 3 607 408 | Прихващане |
| ПИРГОСПЛОД АД | EUR | 163 324 | Прихващане |
| ПЛАНАСАТ АД | BGN | 5 245 575 | Прихващане |
| ПЛАНАСАТ АД | BGN | 8 711 085 | Прихващане |
| ПРИСТАНИЩЕН ТЕРМИНАЛ РУСЕ-ЗАПАД АД | BGN | 26 320 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 2 704 000 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 198 238 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 557 210 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | USD | 141 493 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | EUR | 34 367 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | EUR | 3 600 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 478 052 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | EUR | 36 000 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | EUR | 31 848 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 6 907 977 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 414 113 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 130 434 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 2 550 | Прихващане |

| | | | |
|---|---|---|---|
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 4 680 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 24 280 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | EUR | 7 000 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | EUR | 513 069 | Прихващане |
| | BGN | 308 832 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 7 040 489 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 118 470 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 60 070 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 2 880 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 4 590 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 43 520 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 5 710 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 3 400 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 72 170 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 161 400 | Прихващане |
| ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД | BGN | 82 770 | Прихващане |
| ПСГ АД | BGN | 499 000 | Прихващане |
| ПСГ АД | BGN | 8 400 | Прихващане |
| ПСГ АД | BGN | 34 500 | Прихващане |
| ПСГ АД | BGN | 1 200 | Прихващане |
| ПСГ АД | BGN | 9 600 | Прихващане |
| ПСГ АД | BGN | 1 592 000 | Прихващане |
| ПСГ АД | BGN | 1 800 | Прихващане |
| ПЪТСТРОЙ ООД | BGN | 130 480 | Прихващане |
| РИЗЪРВ КЕПИТАЛ АДСИЦ | BGN | 305 072 | Прихващане |
| РИЗЪРВ КЕПИТАЛ АДСИЦ | EUR | 375 000 | Прихващане |
| РИЗЪРВ КЕПИТАЛ АДСИЦ | EUR | 97 680 | Прихващане |
| РИЗЪРВ КЕПИТАЛ АДСИЦ | EUR | 97 680 | Прихващане |
| РИСК ИНЖЕНЕРИНГ АД | BGN | 11 412 749 | Прихващане |
| | EUR | 3 795 471 | Прихващане |
| | USD | 684 007 | Прихващане |
| РИСК ИНЖЕНЕРИНГ АД | EUR | 291 655 | Прихващане |
| | USD | 14 263 | Прихващане |
| РИСК ИНЖЕНЕРИНГ АД | EUR | 120 441 | Прихващане |
| РИСК ИНЖЕНЕРИНГ АД | EUR | 134 612 | Прихващане |
| РИСК ИНЖЕНЕРИНГ АД | BGN | 725 000 | Прихващане |
| РИСК ИНЖЕНЕРИНГ ЕООД | EUR | 1 544 | Прихващане |
| | BGN | 51 402 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | BGN | 661 123 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | USD | 141 000 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | BGN | 2 497 | Прихващане |
| | EUR | 6 250 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | EUR | 6 250 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | EUR | 82 000 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | BGN | 2 001 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | BGN | 586 644 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | BGN | 248 000 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | EUR | 51 000 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | EUR | 229 000 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | EUR | 220 000 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | EUR | 2 544 000 | Прихващане |
| РИСК ИНЖЕНЕРИНГ-Д ЕООД | BGN | 24 000 | Прихващане |
| РИЦ 3 ЕООД | EUR | 32 000 | Прихващане |
| РОСТЕР ООД | BGN | 30 822 | Прихващане |
| | EUR | 30 720 | Прихващане |
| РУБЕЛЛА БЮТИ АД | BGN | 750 000 | Прихващане |
| РУБИН ИНВЕСТ АД | BGN | 20 071 000 | Прихващане |
| РУБИН ИНВЕСТ АД | BGN | 373 473 | Прихващане |
| РУБИН ИНВЕСТ АД | BGN | 351 948 | Прихващане |
| РУБИН ИНВЕСТ АД | BGN | 100 000 | Прихващане |
| РУБИН ИНВЕСТ АД | BGN | 232 999 | Прихващане |
| РУБИН ИНВЕСТ АД | BGN | 3 591 853 | Прихващане |
| РУБИН ИНВЕСТ АД | EUR | 3 270 336 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | EUR | 44 000 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | EUR | 66 000 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | BGN | 100 609 | Прихващане |

| | | | |
|---|---|---:|---|
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | USD | 215 000 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | BGN | 8 725 558 | Прихващане |
| | EUR | 805 000 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | BGN | 938 388 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | EUR | 36 000 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | BGN | 289 844 | Прихващане |
| | EUR | 48 190 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | BGN | 414 096 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД АД | EUR | 1 440 000 | Прихващане |
| РУСЕНСКА КОРАБОСТРОИТЕЛНИЦА ЗАПАД | EUR | 65 000 | Прихващане |
| | USD | 4 000 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | EUR | 20 000 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | EUR | 227 064 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | EUR | 580 760 | Прихващане |
| | EUR | 132 810 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | EUR | 234 868 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | BGN | 274 536 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | BGN | 60 400 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | BGN | 179 000 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | BGN | 1 032 282 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | BGN | 450 658 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | BGN | 300 000 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | EUR | 57 704 | Прихващане |
| | BGN | 89 250 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | USD | 518 020 | Прихващане |
| САНА СПЕЙС ХОТЕЛ ХИСАРЯ АД | EUR | 186 000 | Прихващане |
| | USD | 286 000 | Прихващане |
| СЕМБОДИА БЪЛГАРИЯ ЕООД | BGN | 10 900 | Прихващане |
| СЕМБОДИА БЪЛГАРИЯ ЕООД | BGN | 289 447 | Прихващане |
| СЕМБОДИА БЪЛГАРИЯ ЕООД | EUR | 86 437 | Прихващане |
| СЕМБОДИА БЪЛГАРИЯ ЕООД | EUR | 76 232 | Прихващане |
| СЕМБОДИА БЪЛГАРИЯ ЕООД | EUR | 330 000 | Прихващане |
| СЕМБОДИА БЪЛГАРИЯ ЕООД | EUR | 54 728 | Прихващане |
| СИ ЕН ДЖИ МАРИЦА ООД | BGN | 12 385 438 | Прихващане |
| СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД БЪЛГАРИЯ ЕООД | BGN | 8 770 864 | Прихващане |
| СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД БЪЛГАРИЯ ЕООД | BGN | 17 000 000 | Прихващане |
| СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД БЪЛГАРИЯ ЕООД | EUR | 1 636 068 | Прихващане |
| СЪНИ-ТЕРА 2007 АД | EUR | 1 373 048 | Прихващане |
| ТАБАК МАРКЕТ АД | BGN | 34 400 000 | Прихващане |
| ТАРГЕТ МЕДИА ЕООД | BGN | 965 560 | Прихващане |
| ТАРГЕТ МЕДИА ЕООД | BGN | 303 190 | Прихващане |
| | USD | 563 942 | Прихващане |
| ТЕЛИШ АД | EUR | 815 229 | Прихващане |
| | USD | 58 424 | Прихващане |
| | EUR | 5 900 | Прихващане |
| | EUR | 50 000 | Прихващане |
| | BGN | 207 000 | Прихващане |
| ТЕЛИШ АД | BGN | 80 800 | Прихващане |
| ТЕЛИШ АД | BGN | 3 125 224 | Прихващане |
| ТЕЛИШ АД | EUR | 149 950 | Прихващане |
| ТЕЛИШ АД | EUR | 107 112 | Прихващане |
| | BGN | 62 986 | Прихващане |
| | EUR | 110 000 | Прихващане |
| | USD | 177 864 | Прихващане |
| ТЕЛИШ АД | BGN | 234 000 | Прихващане |
| | EUR | 33 600 | Прихващане |
| | BGN | 540 000 | Прихващане |
| | EUR | 46 000 | Прихващане |
| ТЕЛИШ АД | BGN | 892 695 | Прихващане |
| | BGN | 714 137 | Прихващане |
| | USD | 14 215 | Прихващане |
| ТЕХНО РЕЗИДЕНШЪЛ ПАРК 2 ЕАД | BGN | 16 258 640 | Прихващане |
| ТЕХНОМАРКЕТ БЪЛГАРИЯ АД | EUR | 40 080 | Прихващане |
| ТЕХНОМАРКЕТ БЪЛГАРИЯ АД | EUR | 5 000 000 | Прихващане |
| ТЕХНОМАРКЕТ БЪЛГАРИЯ АД | EUR | 3 700 000 | Прихващане |
| ТЕХНОМАРКЕТ БЪЛГАРИЯ АД | EUR | 351 033 | Прихващане |

| | | | |
|---|---|---|---|
| ТЕЦ МАРИЦА ИЗТОК 2 ЕАД | BGN | 21 069 935 | Прихващане |
| ТЕЦ МАРИЦА ИЗТОК 2 ЕАД | BGN | 445 000 | Прихващане |
| ФИНАНС ИНЖЕНЕРИНГ АД | BGN | 89 717 | Прихващане |
| ФИНАНС ИНЖЕНЕРИНГ АД | BGN | 30 145 | Прихващане |
| | EUR | 3 548 | Прихващане |
| ФИНИНВЕСТ ЕООД | USD | 581 592 | Прихващане |
| | BGN | 190 000 | Прихващане |
| | USD | 57 385 | Прихващане |
| | EUR | 11 000 | Прихващане |
| | BGN | 50 000 | Прихващане |
| | BGN | 100 000 | Прихващане |
| | BGN | 740 000 | Прихващане |
| ФРУКТО СЛИВЕН АД | EUR | 50 000 | Прихващане |
| ФРУКТО СЛИВЕН АД | EUR | 48 000 | Прихващане |
| ФРУКТО СЛИВЕН АД | EUR | 80 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | BGN | 3 107 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | BGN | 878 719 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | BGN | 124 830 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | BGN | 200 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | EUR | 35 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | BGN | 48 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | BGN | 140 720 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | USD | 985 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | USD | 985 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | BGN | 495 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | EUR | 67 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | BGN | 123 100 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | EUR | 100 000 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | EUR | 183 063 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | USD | 1 965 632 | Прихващане |
| ХЕЛТ ЕНД УЕЛНЕС АДСИЦ | USD | 267 939 | Прихващане |
| | EUR | 47 000 | Прихващане |
| ХИМИМПОРТ АД | EUR | 9 806 114 | Прихващане |
| ХИМИМПОРТ АД | EUR | 110 950 | Прихващане |
| ХЛЯБ И ХЛЕБНИ ИЗДЕЛИЯ ЕООД | BGN | 286 691 | Прихващане |
| | EUR | 38 942 | Прихващане |
| | USD | 29 902 | Прихващане |
| ХОЛДИНГ БЪЛГАРСКИ ДЪРЖАВНИ ЖЕЛЕЗНИЦИ ЕАД | EUR | 664 743 | Прихващане |
| ХОЛДИНГ БЪЛГАРСКИ ДЪРЖАВНИ ЖЕЛЕЗНИЦИ ЕАД | BGN | 2 590 694 | Прихващане |
| ХОЛДИНГ КООП ЮГ АД | BGN | 573 100 | Прихващане |
| ХОЛДИНГ КООП ЮГ АД | BGN | 611 292 | Прихващане |
| ЦЕНТРАЛНА КООПЕРАТИВНА БАНКА АД Скопје | EUR | 500 778 | Прихващане |
| ЧАЙКА АД | EUR | 140 000 | Прихващане |
| ЧЕРНО МОРЕ-2001 АД | BGN | 360 000 | Прихващане |
| ЮЖЕН БРЯГ - ПРИМОРСКО - КИТЕН ООД | EUR | 69 000 | Прихващане |
| ЮНИТ КЕПИТЪЛС АД | EUR | 442 000 | Прихващане |

Забележки:

- посочените в таблицата суми са закръглени до най-близкото цяло число
- в таблицата по-горе са включени *постъпилите* в банката в периода след поставянето й под специален надзор волеизявления за прихващане.

- в случаите, в които едно лице е отправило към банката повече от едно волеизявление за прихващане и/или ако в отправено към банката волеизявление за прихващане са налични няколко сделки, същите са отразени в таблицата на отделен ред.

# EXHIBIT 16



## Фрея Translations
## Транслейшънс Freya

### Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

01.12.2014, 10.45 a.m. ([accounting entry] of 6th November 2014)
Corporate Commercial Bank AD, Sofia                                page.1

Exposure of Ayr Property Development AD (declared bankrupt) having Bulstat No:
200958720

| Entry of record | Bank account | Currency | Balance | Opened on | Movement registered |
|---|---|---|---|---|---|
| 1613 290120 01 8 | BG 21 KORP 9220 20 29012001 | BGN | 0.00 Cr. | 14 January 2013 | 14 October 2014 |
| 1613 290120 02 5 | BG 91 KORP 9220 20 29012002 | BGN | 313.18 Cr. | 17 January 2014 | 20 October 2014 |
| 1613 290120 03 2 | BG 64 KORP 9220 20 29012003 | BGN | 514.81 Cr. | 10 April 2014 | 20 October 2014 |
| 1731 290120 01 7 | BG 74 KORP 9220 10 29012051 | BGN | 108,617.38 Cr. | 12 February 2013 | 27 October 2014 |
| 4594 100 290120 19 01 7 | BG 39 KORP 9220 10 29012099 | BGN | 0.00 Cr. | 14 January 2013 | |
| 4963 1613 290120 01 2013 9 | | BGN | 0.00 Cr. | 15 January 2013 | 14 January 2014 |
| 4963 1613 290120 01 2014 2 | | BGN | 0.00 Cr. | 2 January 2014 | 5 November 2014 |
| 4963 1613 290120 02 2014 9 | | BGN | 0.00 Cr. | 20 January 2014 | 20 October 2014 |
| 4963 1613 290120 03 2014 5 | | BGN | 0.00 Cr. | 11 April 2014 | 20 October 2014 |
| 4963 1713 290120 01 2013 4 | | BGN | 0.00 Cr. | 4 June 2013 | 27 January 2014 |
| 4963 1713 290120 01 2014 8 | | BGN | 0.00 Cr. | 2 January 2014 | 5 November 2014 |

*The undersigned, Baryana Ilieva Stefanovo, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document: Bank Accounts Exposure of Ayr Property Development AD, issued by Corporate Commercial Bank AD. This translation has 1 (one) page.*

Translator: _____
         *Boryana Ilieva Stefanova*

.12.2014,10:15:10(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

сповмция на ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ, ЕГН/БУЛСТАТ 200958720

| Партида | Банкова сметка | Вал | Салдо | Открита на | Движежа на |
|---|---|---|---|---|---|
| 1613 290120 01 8 | BG 21 KORP 9220 20 29012001 | BGN | 0.00 Kt | 14.01.2013 | 14.10.2014 |
| 1613 290120 02 5 | BG 91 KORP 9220 20 29012002 | BGN | 313.18 Kt | 17.01.2014 | 20.10.2014 |
| 1613 290120 03 2 | BG 64 KORP 9220 20 29012003 | BGN | 514.81 Kt | 10.04.2014 | 20.10.2014 |
| 3731 290120 01 7 | BG 74 KORP 9220 10 29012051 | BGN | 108 617.38 Kt | 12.02.2013 | 27.10.2014 |
| 4594 100 290120 19 01 7 | BG 39 KORP 9220 10 29012099 | BGN | 0.00 Kt | 14.01.2013 | |
| 4963 1613 290120 01 2013 9 | | BGN | 0.00 Kt | 15.01.2013 | 14.01.2014 |
| 4963 1613 290120 01 2014 2 | | BGN | 0.00 Kt | 02.01.2014 | 05.11.2014 |
| 4963 1613 290120 02 2014 9 | | BGN | 0.00 Kt | 20.01.2014 | 20.10.2014 |
| 4963 1613 290120 03 2014 5 | | BGN | 0.00 Kt | 11.04.2014 | 20.10.2014 |
| 4963 1731 290120 01 2013 4 | | BGN | 0.00 Kt | 04.06.2013 | 27.01.2014 |
| 4963 1731 290120 01 2014 8 | | BGN | 0.00 Kt | 02.01.2014 | 05.11.2014 |

# EXHIBIT 17



*Фрея* **F** *Freya*
*Транслейшънс* *Translations*

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

### FIXED-TERM DEPOSIT AGREEMENT NO.29428

This Agreement was made this 14th January 2013 at Sofia by and between:

1. **CORPORATE COMMERCIAL BANK AD** having seat and registered office address at Sofia, 10 Graf Ignatiev St. and duly recorded in the Commercial Registry kept at the Registry Agency with the Ministry of Justice under EIK (Company number): 831184677, and represented jointly and severally by any two of the Executive Directors of such Bank simultaneously and these are: Orlin Nikolov Russe having EGN (Personal number)6706236664, Ilian Atanassov Zafirov having EGN: 6402046768, Georgi Pankov Hristov having EGN: 6909216648 and Alexander Miroslavov Pantaleev having EGN: 7004116265, herein after referred to as "**the BANK**", of the first part, and

2. **AYR PROPERTY DEVELOPMENT AD** (*declared bankrupt*) having seat and registered office address at the town of Targovishte, Postal code 7700, Liliya St., bl.4, Section B, 1st floor, apt.2 and duly recorded in the Commercial Registry kept at the Registry Agency with the Ministry of Justice under EIK: 200958720, and represented by such Company's Trustee in Bankruptcy, Ganka Yaneva Kolyovska, having EGN: 5502146270 in commercial case 14/2011 at the Targovishte District Court and having address at Sofia, Musagenitza, 1a Kliment Ohridski St., office 2, hereinafter referred to as "**the DEPOSITOR**".

### The parties have agreed as follows:

**Article 1.** The Depositor wishes to deposit for safekeeping and the Bank agrees to act as depository for the amount of BGN 97,500,000.00 (**ninety-seven million and five hundred thousand levs**) deposited in bank account No.BG 21 KORP 9220 20 29012001 for a fixed term of one (1) month commencing on 14th January 2013 and expiring at midnight of 14th February 2013.

**Article 2** (1) The Bank shall pay a 5.85% (**five point eighty-five per cent**) annual interest rate on the amount on a 30/360-day basis.

(2) Each month the interest accrued shall be transferred to a special account of IBAN: BG59 UNCR 7000 1520 1153 99 with UniCredit Bulbank AD, the Joliot Curie Branch Office, BIC: UNCR BGSF.

**Article 3.** This Agreement shall enter in full force and effect on the date it is signed.

**Article 4.** (1) Upon expiration of the duration of this Agreement it shall be automatically extended for the term and under the conditions set out herein, unless the Depositor instructs the Bank otherwise at least one day before the date when this Agreement expires.

(2) In the event of premature termination of this Agreement the amount deposited shall accrue interest for the actual number of days it has been kept at the Bank till the date of such termination and the interest accrued shall be the interest the Bank pays for current account balances in the relevant currency as at the date of such termination.

**Article 5.** (1) The amount deposited shall be used as instructed by the Depositor through his or her legal representatives only.

(2) All legal representatives shall submit a specimen signature form and shall affix their signature in the presence of both the Depositor and the banking officer as authorized by the Bank in that regard; the signature form shall be accompanied by copies of the instruments by virtue of which the authorized signatories shall instruct the use of the funds in the deposit account.

**Article 6.** The Depositor undertakes to notify the Bank for all and any changes that have occurred pursuant to the acts of court in commercial case 14/2011 at the Targovishte District Court.

**Artice 7.** (1) The amounts in the deposit account enjoy the protection of the Bank Deposits Guarantee Fund that guarantees that such amounts shall be repaid per entity through any commercial bank and pursuant to the *Law on Guarantees for Deposits in Banks* regardless of the number of such amounts and in the amount not exceeding BGN 196,000 (one hundred and ninety-six thousand Bulgarian Levs) plus interest accrued on the latter till the date when the order issued by the Bulgarian National Bank pursuant to Article 23 Para 1 of the above Law. Notwithstanding the foregoing no such refunds shall be made to any of the following entities:

    a) Any entity holding rights in the deposit account when such rights have been acquired as a result from disposal acts with regards to said deposit account performed after the date of the order issued by the BNB pursuant to Art.23 Para 1 of the abovementioned Law.

    b) Any entity enjoying privileged interests rates that fail to comply with the terms and conditions offered by the Bank and which the Bank must apply to all its depositors;

3

c)   Any entity holding shares entitling such entity to more than 5 % of the voting rights in the General Meeting of Shareholders of the Bank;

d)   Any entity that is a member of the Managing Board or the Supervisory Board of the Bank, or of the Board of Directors or of the board of the procurators or a member of such Bank's internal control system;

e)   Any individual who is an auditor or an auditing company duly appointed for the purpose of certifying such Bank's annual financial report;

f)   Spouses or relatives in the direct or collateral lines of descend in the first and second degrees, including entities listed in (c), (d) and (e) above;

g)   Any bank when the deposit is made on such bank's behalf and at such bank's expense;

h)   Any financial institution listed in Art.3 of the Law on Credit Institutions;

i)   Any insurer;

j)   Retirement and social security funds, except for the additional obligatory pension insurance funds;

k)   Any investment broker when the deposit is made on such broker's behalf and at such broker's expense;

l)   Any investment company of closed type, any collective investment scheme and any special purposes investment vehicle;

m)   The State and any State Agency;

n)   Any municipality

o)   Bank Deposits Guarantee Fund, the Investors in Securities Compensatory Fund and the Fund created under Art.287 of the Insurance Code;

p)   Any deposit or a deposit account arising from or related to transactions that can be deemed to be "money laundering" within the meaning of Art.2 of the Anti-Money Laundering Law, especially when the perpetrator has been convicted and the sentence has entered into effect.

(2) The total amount of the Bank's liability to each depositor shall be determined pursuant to Art.6 of the *Law on Guarantees for Deposits in Banks.*

(3) Pursuant to Art.23 Para 5 of the *Law on Guarantees for Deposits in Banks* payment of sums out of the Bank Deposits Guarantee Fund shall commence no later than 20 (twenty) days after the date when BNB has issued



4

the order to revoke a banking license of a commercial bank. In exceptional circumstances the Fund may extend such time limit by no more than 10 business days.

**Article 8.** Any matter that has not been dealt with in this Agreement shall be governed by the provisions set forth in the Commercial Act, Regulation No.3 of the BNB, the active laws of the Republic of Bulgaria and the internal rules and regulations of the Bank.

**Article 9.** Order No.1 dated 8th January 2013 and issued by the Targovshte District Court in case 14/2011 shall be an integral part hereof.

This Agreement has been executed into identical counterparts and each party hereto shall be entitled to one.

**For Corporate Commercial Bank AD:**          **For the Depositor:**

*Signed;*                                         *Signed*
*Signed;*                                         Round Seal of APD AD
Round seal of CCB AD

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Fixed-term Deposit Agreement No. 29428 dated 14th January 2013. This translation has 4 (four) pages.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*



## ДОГОВОР ЗА ИНДИВИДУАЛЕН СРОЧЕН ДЕПОЗИТ  No. 29428

Днес, 14.01.2013 година, в гр. София, между :

1. **"КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД** със седалище и адрес на управление гр. София, ул."Граф Игнатиев" № 10, вписано в търговския регистър при Агенцията по вписванията към Министерството на правосъдието с ЕИК 831184677, представлявано заедно от всеки двама от Изпълнителните директори Орлин Николов Русев с ЕГН: 6706236664, Илиан Атанасов Зафиров с ЕГН: 6402046768, Георги Панков Христов с ЕГН 6909216648 и Александър Мирославов Панталеев с ЕГН 7004116265, наричана за краткост **„БАНКАТА"** - от една страна и

2. **"ЕЪР ПРОПЪРТИ ДИВЕЛОПМЪНТ" АД (в несъстоятелност)**, със седалище и адрес на управление гр. Търговище Пощенски код: 7700 Лилия, бл. 4, тяло Б, ет. 1, ап. 2, вписано в търговския регистър при Агенцията по вписванията към Министерството на правосъдието с ЕИК 200958720, представлявано от Ганка Янева Кольовска с ЕГН:  5502146270 - Синдик, по т.д. 14/2011 г. на Търговищкия окръжен съд, с адрес: гр. София, кв. Мусагеница, бул. „Кл. Охридски" 1а, оф. 2, наричано за краткост **"ДЕПОЗАНТ"**, се сключи настоящият договор, като страните се договориха за следното:

**Чл.1.** ДЕПОЗАНТЪТ депозира на съхранение, а БАНКАТА приема сумата  97,500,000.00 BGN (деветдесет и седем милиона и петстотин хиляди лева) по сметка № BG 21 KORP 9220 20 29012001 за срок от 1(един) месец, който срок започва да тече от 14.01.2013 г и изтича в 00 часа на 14.02.2013 г.

**Чл.2.** (1) БАНКАТА начислява лихва върху сумата с текущ годишен лихвен процент в размер на 5.85% (пет цяло и осемдесет и пет стотни), при база 30/360.

(2) Начислената лихва се прехвърля ежемесечно по особената сметка с IBAN: BG59 UNCR 7000 1520 1153 99 при УНИКРЕДИТ БУЛБАНК АД, клон Жолио Кюри, BIC: UNCR BGSF.

**Чл.3.** Този договор влиза в сила от датата на подписването му.

**Чл.4.** (1)  При изтичане на договорения срок, ако  ДЕПОЗАНТЪТ  не даде други  писмени инструкции на БАНКАТА, но не по-късно от 1 един ( ден ) преди изтичането на срока на договора за депозит, автоматично се продължава действието на договора за същия срок и при същите условия.

4.(2) При предсрочно прекратяване на договора за депозит, сумата на депозита се олихвява за времето на действителния й престой, с лихвения процент, определен от Банката за олихвяване на салдата по разплащателни сметки в съответната валута към датата на прекратяване.

**Чл.5.** (1)Разпореждане с депозираната сума може да се извършва от ДЕПОЗАНТА само чрез законните му представители.

5. (2) Подписите на законните представители се полагат в "Спесимен на подписите" по образец, в присъствието, както на ДЕПОЗАНТА на сметката, така и на упълномощен за тази служител на БАНКАТА, н се представя копие от акта, с който са оправомощени лицата да се разпореждат със средствата по сметката;

**Чл.6.** ДЕПОЗАНТЪТ се задължава да уведомява БАНКАТА за промените, настъпили по силата на съдебни актове по т.д. 14/2011 г. на Търговищкия окръжен съд.

**Чл.7.** (1) Сумите по банковата сметка са защитени от Фонда за гарантиране на влоговете в банките, който гарантира пълното им изплащане, чрез търговска банка, съгласно Закона за гарантиране на влоговете в банките, на едно лице независимо от броя и размера им до 196'000 /сто деветдесет и шест хиляди/ лв., като към посочената сума се включват и начислените лихви към датата на решението на БНБ по чл.23 ал.1. от същия закон, с изключение на:

а/ лица, които са придобили права по депозитна сметка в резултат на извършени разпоредителни действия със сметката след вземане на решението на Българската народна банка по чл. 23, ал. 1. от ЗГВБ;

б/ лицата, на които са били предоставени привилегировани лихвени условия в отклонение от обявените от БАНКАТА условия, които та е длъжна да прилага към своите вложители;

в/ лицата, притежаващи акции, които им осигуряват повече от 5 на сто от гласовете в общото събрание на акционерите на БАНКАТА;

г/ членовете на управителния и надзорния съвет, съответно на съвета на директорите на БАНКАТА, на прокуристите и на членовете на органите й за вътрешен контрол;

д/ физическите лица, които са специализираните одиторски предприятия, избрани или назначени по установения в закона ред да заверят годишния финансов отчет на **БАНКАТА**;

е/ съпрузите и роднините по права и по съребрена линия до втора степен включително на лицата по буква „в", „г" и „д" от по-горе;

ж/ банките, когато са направени от тяхно име и за тяхна сметка;

з/ финансовите институции по чл. 3. от Закона за кредитните институции;

и/ застрахователите;

й/ пенсионните и осигурителните фондове, с изключение на фондовете за допълнително задължително пенсионно осигуряване;

к/ инвестиционните посредници, когато са направени от тяхно име и за тяхна сметка;

л/ инвестиционните дружества от затворен тип, колективните инвестиционни схеми и дружествата със специална инвестиционна цел;

м/ държавата и на държавните институции;

н/ общините;

о/ Фонда за гарантиране на влоговете в банките, Фонда за компенсиране на инвеститорите в ценни книжа и Гаранционния фонд по чл. 287. от Кодекса за застраховането;

п/ депозитни сметки /влогове/, възникнали или свързани със сделки и действия, представляващи „изпиране на пари" по смисъла на чл. 2. от Закона за мерките срещу изпирането на пари, ако деецът е осъден с влязла в сила присъда.

(2).Установяването на общия размер на задължението на **БАНКАТА** към един вложител се определя съгласно чл.6. от Закона за гарантиране на влоговете в банките.

(3).Изплащането на суми от Фонда за гарантиране на влоговете в банките започва не по-късно от 20 работни дни от датата на решението на БНБ за отнемане на лицензия за банкова дейност на търговска банка, съгласно  чл. 23, ал 5. от Закона за гарантиране на влоговете в банките. При наличие на изключителни обстоятелства, Фондът може да удължи срока с не повече от 10 работни дни.

Чл.8. За неуредените в настоящия договор условия се прилагат разпоредбите на Търговския закон, Наредба № 3 на БНБ, действащото законодателство на Република България, както и вътрешните нормативни актове на **БАНКАТА**.

Чл. 9. Неразделна част от настоящия договор е Разпореждане № 1/08.01.2013 г. На Търговищкия окръжен съд по т.д. 14/2011 г.

Настоящият договор се състави в два еднакви екземпляра, по един за всяка от страните.


ЗА "КОРПОРАТИВНА ТБ" АД:                              ЗА ДЕПОЗАНТА:



# EXHIBIT 18



*Фрея* **F** *Freya*
*Транслейшънс* *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

# BULGARIAN NATIONAL BANK
# GOVERNING COUNCIL

## EXCERPT FROM MINUTES No.19
## of a Meeting held on 15th August 2014

……………………………………..

## RESOLUTION No.104

On item 1 of the Agenda the Governing Council

## RESOLVED THAT:

Pursuant to Art.116, Para 2 (3) and with reference to Art.103, Para 2 (24) of the Credit Institutions Act and Art.16 (16) of the Bulgarian National Bank Act and given that it is in the interest of the bank institutions placed under special supervision (conservatorship) with Decision No.73 of 20th June 2014 and Decision No.76 of 22nd June 2014 of the BNB Governing Council, and in the interest of their borrowers to allow these banks to carry out some banking activities for loan repayment purposes, the BNB Governing Council has permitted Corporate Commercial Bank AD and Victoria Commercial Bank EAD to carry out:

1. payment operations for repayment of loans to a bank under special supervision, from accounts with the same bank of the borrower, of his/her co-debtor or surety when the co-debt or suretyship was created before 1 June 2014;

2. cashless foreign currency exchange transactions when these are needed for repayment of loans to the bank placed under conservatorship.

This Resolution is subject to immediate performance pursuant to Art.151, Para 2 of the Credit Institutions Act.

This Resolution is subject to objection before the Supreme Administrative Court within 14 days as of its communication.

This Resolution shall be signed by the Governor of the BNB pursuant to Art.59, Para 2 (8) of the Administrative Procedure Code.

This Resolution was adopted unanimously.

Ivan Iskrov, Governor, signed /illegible/

Rositsa Arssova, Secretary of the Governing Council, signed /illegible/

Dimitar Kostov, Deputy Governor, signed /illegible/

Kalin Hristov, Deputy Governor, signed /illegible/



2

Stati Statev, Member of the Managing Board,

Boryana Pencheva, Member of the Managing Board, signed /illegible/

Lena Russenova, Member of the Managing Board, signed /illegible/


*Text in handwriting reading:* True to the original,

　　　　　　　Name (illegible), Secretary of the Managing Board

*Round seal reading:* The Bulgarian National Bank

---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Excerpt from Minutes No.19 of the Meeting of the Governing Council of BNB held on 15th August 2014. This translation has 2 (two) pages.*

*Translator:* _____ *Boryana Ilieva Stefanova*



# БЪЛГАРСКА НАРОДНА БАНКА
## УПРАВИТЕЛЕН СЪВЕТ

### ПРЕПИС – ИЗВЛЕЧЕНИЕ ОТ

# П Р О Т О К О Л
## № 19
### от заседанието на 15 август 2014 година

### РЕШЕНИЕ № 104

По т. 1 от дневния ред Управителният съвет

### РЕШИ:

На основание чл. 116, ал. 2, т. 3 във връзка с чл. 103, ал. 2, т. 24 от Закона за кредитните институции и чл. 16, т. 16 от Закона за Българската народна банка, като взе предвид, че е в интерес на банките, поставени под специален надзор с Решение № 73 от 20.06.2014 г. и Решение № 76 от 22.06.2014 г. на УС на БНБ, и на техните длъжници по кредити, да бъде разрешено на банките, поставени под специален надзор, да извършват някои банкови дейности за целите на погасяването на кредити към тях,

Разрешава на „Корпоративна търговска банка" АД и на търговска банка „Виктория" ЕАД да извършват:

1. Платежни операции за целите на погасяване на кредити към банка, поставена под специален надзор, от сметки при същата банка на кредитополучателя, на негови съдлъжници или на негови поръчители, когато създлъжеността или поръчителството са възникнали преди 1.06.2014 г.;

2. Безкасови операции по обмен на валута, когато такива са необходими за целите на погасяване на кредити към банката, поставена под специален надзор.

2

Решението подлежи на незабавно изпълнение на основание чл. 151, ал. 2 от ЗКИ.

Решението подлежи на оспорване пред Върховния административен съд в 14 - дневен срок от съобщаването му.

Настоящото решение да бъде подписано от Управителя на БНБ, съгласно чл. 59, ал. 2, т. 8 от Административнопроцесуалния кодекс.

Решението е прието с единодушие.

Иван Искров

УПРАВИТЕЛ

Росица Арсова

СЕКРЕТАР НА УС

Димитър Костов, подуправител -

Калин Христов, подуправител -

Стати Статев, член на УС -

Боряна Пенчева, член на УС -

Лена Русенова, член на УС -

# EXHIBIT 19



*Фрея* **F** *Freya*
*Транслейшънс* **F** *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Св.Св.Кирил и Методий № 1
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## CORPORATE COMMERCIAL BANK AD

**10 Graf Ignatiev St., Sredets District, Sofia**

### ORDER No.3-2732
### Sofia, 27th October 2014

With regard to Order No.3-2489 of October 9, 2014 and Order No.3-2677 of October 21, 2014 providing the method to be employed of accounting for (i) notices of agreed transfer of receivables (NOTR) from the Bank within the meaning of Art.99 (3) of the Obligations and Contracts Act (OCA), and (ii) unilateral declarations of intent to make set-offs (DOIS) pursuant to Art.104 OCA,

### IT IS HEREBY ORDERED that:

1. Accounting for all (i) NOTR within the meaning of Art.99 (3) OCA and (ii) well-founded DOIS pursuant to Art.104 OCA shall be made according to the prescribed accounting scheme shown in Attachment 1 hereto and in observance of the value date shown on the Inquiry Form for each such NOTR or DOIS as filled up by the task force under Order No.3-2489 of October 9, 2014 and approved by the Conservators.

2. Elimination of debt as a result of a set-off shall be done in the following order: pursuant to Art.76 OCA costs and interest (incl. penalties) are the first to be discharged, only then is principle amount repaid.

3. If there exist more than one transfer concerning the same receivable from the Bank or more than one reasonable DOIS referring to the same debt, the order to account for these shall be the order in which the notices thereof were given to the Bank Registry Department.

4. The IT Department and the Credit Department shall be notified of each entry of a set-off in the accounts so that provisioning of the relevant exposure value may be put in place.

This Order shall be communicated to the Credit Department and the Customer Service Department employees and acted upon accordingly.

The Head of Customer Service Department and the Head of the Credit Department shall be responsible for overseeing activities that need to be carried out in furtherance of this Order.

CONSERVATORS:

/s/ (ill.)             /s/ (ill.)

Elena Zdravkova Kostadinchev     Stanislav Georgiev Lyutov

*Round stamped seal of CCB*

---

*The undersigned, Ilka Simeonovo Dyulgerova, hereby certify that this is o true and correct translation from Bulgarian into English of the attached document – CCB Conservators' Order No.3-2732 dated 27th October 2014. This translation has 1 (one) page.*

*Translator:* _____ *Ilka Simeonovo Dyulgerova*

**КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД**

============================================================

гр. София 1000, район Средец, ул. „Граф Игнатиев" № 10

**ЗАПОВЕД**

No. 3-2732

София, 24.10. 2014 г.

Във връзка  със Заповед №3-2489 от 09.10.2014г. и Заповед №3-2677/21.10.2014г. и с цел отразяване в счетоводните книги на банката на постъпили уведомления за цесия на вземания към банката по смисъла на чл.99, ал.3 от ЗЗД, както и на едностранни волеизявления за прихващане съгласно чл.104 от ЗЗД,

**НАРЕЖДАМЕ:**

1. Осчетоводяването на уведомленията за цесия на вземания по чл.99, ал.3 от ЗЗД и основателните волеизявления за прихващане по чл.104 от ЗЗД да се извършва съобразно схема на осчетоводяване   – Приложение №1 към настоящата заповед при спазване на вальора, посочен в попълнената от работната група по Заповед №3-2489 от 09.10.2014г. и утвърдена от квесторите анкета карта за конкретното уведомление/волеизявление.

2. При погасяване на дълг вследствие на прихващане, да се спазва следната последователност: съгласно чл.76 от ЗЗД се погасяват първо разноските, лихвите (и неустойките в това число) и накрая главницата.

3. При наличие на повече от една цесия на едно вземане към банката, респ. повече от едно основателно волеизявление за прихващане с предмет едно и също задължение – при вземане на операциите задължително се следва хронологичният ред на постъпване на уведомленията в деловодството на банката.

4. След осчетоводяване на прихващане да се уведомява Управление „Информационни технологии" и Управление „Кредитиране" с цел провизиране на експозицията.

Настоящата заповед да се сведе до знанието на служителите на Управление „Кредитиране" и Управление „Обслужване на клиенти" за сведение и изпълнение.

Контролът по изпълнението на заповедта се възлага на Началник Управление „Обслужване на клиенти" и Началник Управление „Кредитиране".

**КВЕСТОРИ:**

......................................                    ......................................

Елена Здравкова Костадинчев                    Станислав Георгиев Лютов

СОФИЯ

# EXHIBIT 19-1




*Фрея* **Freya**
*Транслейшънс* **Translations**

Преводи от и на чужди езици
гр. Варна, ул. Св.Св.Кирил и Методий № 1
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

Appendix No.1 to ORDER No. ___

## CORPORATE COMMERCIAL BANK AD

**Accounting scheme for notices of agreed transfer of receivables (NOTR) under deposit/current/checking/other bank accounts and of well-founded declarations of intent to make set-offs (DOIS)**

### I. Basic principles of cession accounting

Notices of agreed transfer of receivables (NOTR) have been submitted to Corporate Commercial Bank AD ("CCB") regarding deposit/current/checking/other bank accounts. As of present the only procedure set up in that regard is the one for blocking the funds in the bank accounts of the Cedent (Transferor) to such agreements as follows:

1. A copy of each filed NOTR with respect to deposit/current/checking/other bank accounts is being forwarded by the Bank Registry Department to the Customer Service Department.

2. A Customer Service Department officer immediately blocks (freezes) the amounts shown in the NOTR and available in the relevant bank accounts using the "Cession" code as details of the operation and specifying the NOTR Reference number along with the names of the Cedent and the Cessionary (Transferee).

   Apart from blocking the amounts a change in the creditor – i.e. the fact that the bank already owes money to another person/entity – should also be entered in the books. Moreover, the ban for making payment transactions should be strictly observed at all times. This could only be made by opening bookkeeping accounts instead of payment (bank) accounts within the meaning of Ordinance No.3 of the Bulgarian National Bank.

*Examples of accounting for received NOTRs:*

1. **Checking account** No.1713 XXXXXX XX K the account holder has transferred a portion or the entire amount of his/her receivable to a third party – the Cessionary – the receivable is payable at sight and accrues interest at 0.1% per annum. In this case the account also includes a payment (bank) account BG XX KORP 9220 XX XXXXXX XK from which the client may order payments (under the-bank-in-operation scenario). For cession accounting purposes one must do as follows:

   o Open a checking account No.1713 XXXXXX XX K in the name of the Cedent, without however opening an accompanying payment (bank) account;

   o Make an entry (a manual operation) in the bank accounting books, rather than a payment operation (i.e. an in-bank money-transfer), to show that the Cedent's (Transferor's) receivable and the bank-owed debt to such Cedent, respectively, has been transferred over to a third party;

   ❖ Debit 1713 Cedent/Credit 1713 Cessionary of the amount transferred



- o Maturity, interest rate provisions and encumbrances, if any (such as assets freezes by enforcement agents, pledges, financial collateral arrangements, etc.) stand with regard to the cessionary, too.

- o Since CCB is under receivership/conservatorship no checking account contract shall be executed with the cessionary, meaning that the latter shall not be able to order any payments at all. The cessionary might become able to do so only after CCB has become fully operational again and the cessionary has produced to the Bank all necessary documents in that regard.

2. **Savings (deposit) Account 1732** XXXXXX XX K the account holder has transferred a portion of or their entire receivable to a third party - the Cessionary; the receivable is accessible "at sight" and bear interest at 2.59% annual interest rate. In this case the account also includes a payment (bank) account BG XX KORP 9220 XX XXXXXX X K from which the client may order payments (under the bank-in-operation scenario). For cession accounting purposes one must do as follows:

- o Open a savings account for Fixed-Term Deposit Account 1732 XXXXXX XX K in the holder's name without however opening an accompanying (payment) bank account;

- o Make an entry (a manual operation) in the bank accounting books, rather than a payment operation (i.e. an in-bank money-transfer), to show that the Cedent's (Transferor's) receivable and the bank-owed debt to such Cedent, respectively, has been transferred over to a third party.

- ❖ Debit 1732 Cedent/Credit 1732 Cessionary of the amount transferred

- o Maturity, interest rate provisions and encumbrances, if any (such as assets freezes by enforcement agents, pledges, financial collateral arrangements, etc.) stand with regard to the cessionary, too.

- o Since CCB is under receivership/conservatorship no payment account contract shall be executed with the cessionary, meaning that the latter shall not be able to order any payments at all. The cessionary might become able to do so only after CCB has become fully operational again and the cessionary has produced to the Bank all necessary documents in that regard.

3. **Fixed-Term Deposit** Account 1612 XXXXXX XX K the account holder has transferred a portion of or their entire receivable to a third party - the Cessionary; the receivable is of original maturity of 1 year and accrues interest at 6.0% per annum. In this case the account also includes a payment (bank) account BG XX KORP 9220 XX XXXXXX X K from which the client may order payments (under the bank-in-operation scenario). For cession accounting purposes one must do as follows:

- o Open a bookkeeping account for Fixed-Term Deposit Account 1612 XXXXXX XX K in the holder's name without however opening an accompanying bank account;

- o Make an entry (a manual operation) in the bank accounting books, rather than a payment operation (i.e. an in-bank money-transfer), to show that the Cedent's (Transferor's) receivable and the bank-owed debt to such Cedent, respectively, has been transferred over to a third party.

- ❖ Debit 1612 Cedent/Credit 1612 Cessionary of the amount transferred

- o  Maturity, interest rate provisions and encumbrances, if any (such as assets freezes by enforcement agents, pledges, financial collateral arrangements, etc.) stand with regard to the cessionary, too.

- o  Since CCB is under receivership/conservatorship no fixed-term deposit account and checking account contract shall be executed with the cessionary, meaning that the latter shall not be able to order any payments at all. The cessionary might become able to do so only after CCB has become fully operational again and the cessionary has produced to the Bank all necessary documents in that regard.

4.  Upon entry of the cession into the accounting books all funds in the cessionary-held account are blocked until such time when the cessionary will produce identification documents and sign a contract or until other subsequent actions such as set-offs, credit repayment, enforcement of the collaterals put up to secure the receivable, etc., have been taken.

## II.  DOIS Accounting

Accounting of DOIS filed with the Bank where such DOIs are deemed valid and well founded within the meaning of Art.103 et seq. OCA and which produce a repayment effect shall follow the example shown below:

Inasmuch the set-off is always retroactive, the accounting operation intended to offset the two counter receivables to the amount of the lesser of the two should be carried out as if made at an earlier value date. Insofar as different DOISs give rise to consequences at different times the value date of each set-off shall be determined on a case-by-case basis.

Justified and well-founded DOIS shall be accounted for in the same manner applied to accounting for credit repayments: by debiting the bookkeeping account where debtor's funds are reported, while crediting the relevant bookkeeping account where such debtor's liabilities are reported.

---

*The undersigned, Ilka Simeonova Dyulgerova, hereby certify that this is a true and correct translation from Bulgarian into English of the attached document – Attachment to CCB Order No.——. This translation has 3 (three) pages.*

*Translator: _____ Ilka Simeonova Dyulgerova*

ПРИЛОЖЕНИЕ №1 към ЗАПОВЕД №........

## КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД

**Схема за осчетоводяване на уведомления за сключени договори за прехвърляне на вземания по депозитни, разплащателни, спестовни и др. сметки /цесии/, както и на основателни изявления за прихващане**

I.      **Основни положения при осчетоводяване на цесия.**

В КТБ АД постъпват уведомления за сключени договори за прехвърляне на вземания по депозитни, разплащателни, спестовни и др. сметки.   До момента е създадена организация единствено за блокиране на сумите по сметките на цедента, както следва:

1. Копия на депозираните в КТБ АД уведомления за сключени договори за прехвърляне на вземания по депозитни, разплащателни, спестовни и др. сметки  се предоставят от дирекция „Деловодство" в управление „Обслужване на клиенти".

2. Незабавно служител от управление „Обслужване на клиенти" блокира посочените в уведомлението  суми по съответните партиди, като за основание използва код „цесия", а в описанието описва входящия номер на уведомлението, цедента и цесионера.

Освен блокиране на сумите, е необходимо и счетоводно да се отрази смяната на кредитора, т.е. факта, че банката вече дължи средства на друго лице. При това, следва строго да се съблюдава и да не се нарушава забраната за извършване на платежни операции. Това може да се постигне, единствено, ако за целите на осчетоводяването се разкриват  и използват счетоводни сметки, а не платежни /банкови/ сметки по смисъла на Наредба 3 на БНБ

**Примери за счетоводно отразяване на получените уведомления:**

1. По **Разплащателна сметка** 1713 XXXXXX XX K титулярът е прехвърлил част или цялото си вземане си на трето лице – цесионер, вземането е „на виждане", олихвява се с 0.1% год. лихва. В този случай към счетоводната сметка има платежна /банкова/ сметка   BG XX KORP 9220 XX XXXXXX X K, от която клиента може да нарежда платежни услуги /при сценарии

действаща банка/. За целите на осчетоводяване на цесията се извършва следното:

- Разкрива се разплащателна сметка 1713 ХХХХХХ ХХ К на името на цесионера, но без да се разкрива платежна/банкова/ сметка към нея.
- С „ръчна" (счетоводна) операция, а не с платежна операция /вътрешно банков превод/ в счетоводството на банката се отразява, че вземането на цедента, респ. задължението на банката към него е прехвърлено към трето лице:

• **Дт 1713 цедент / Кт 1713 цесионер с прехвърлената сума.**

- Матуритета, лихвените условия и тежестите (запори от съдебни изпълнители, залози, договори за финансови обезпечения и др.) се запазват и спрямо цесионера.
- Тъй като КТБ АД е под особен надзор, с цесионера няма да се подписва договор за откриване на платежна сметка и съответно той няма да може да извършва платежни операции. Това ще стане възможно едва след подновяване на дейността на КТБ и след представяне на необходимите документи от цесионера на банката.

2. По **Спестовна /Влогова/ сметка** 1732 ХХХХХХ ХХ Х К титулярът е прехвърлил част или цялото си вземане си на трето лице – цесионер, вземането е „на виждане", олихвява се с 2.59% год. лихва. В този случай към счетоводната сметка има платежна /банкова/ сметка   BG XX KORP 9220 XX ХХХХХХ Х К, от която клиента може да нарежда платежни услуги /при сценарий действаща банка/. За целите на осчетоводяване на цесията се извършва следното:

- Разкрива се влогова сметка 1732 ХХХХХХ ХХ Х К на името на цесионера, но без да се разкрива платежна/банкова/ сметка към нея.
- С „ръчна" (счетоводна) операция, а не с платежна операция /вътрешно банков превод/ в счетоводството на банката се отразява, че вземането на цедента, респ. задължението на банката към него е прехвърлено към трето лице:

• **Дт 1732 цедент / Кт 1732 цесионер с прехвърлената сума.**

- Матуритета, лихвените условия и тежестите (запори от съдебни изпълнители, залози, договори за финансови обезпечения и др.)  се запазват и спрямо цесионера.
- Тъй като КТБ АД е под особен надзор, с цесионера няма да се подписва договор за откриване на платежна сметка и съответно той няма да може да извършва платежни операции. Това ще стане възможно едва след подновяване на дейността на КТБ и след представяне на необходимите документи от цесионера на банката.

3. По сметка за **Срочен депозит** 1612 XXXXXX XX К титулярът е прехвърлил част или цялото си вземане на трето лице – цесионер, вземането е с оригинален матуритет 1 година и се олихвява с 6,0% год. лихва. В този случай към счетоводната сметка има платежна /банкова/ сметка   BG XX KORP 9220 XX XXXXXX X К, от която клиента може да нарежда платежни услуги /при сценарии действаща банка/. За целите на осчетоводяване на цесията се извършва следното:

   - Разкрива се счетоводна сметка за Срочен депозит 1612 XXXXXX XX К на името на цесионера, но без да се разкрива платежна/банкова/ сметка към нея.
   - С „ръчна" (счетоводна) операция, а не с платежна операция /вътрешно банков превод/ в счетоводството на банката се отразява, че вземането на цедента, респ. задължението на банката към него е прехвърлено към трето лице:

- **Дт 1612 цедент / Кт 1612 цесионер  с прехвърлената сума.**

   - Матуритета, лихвените условия и тежестите (запори от съдебни изпълнители, залози, договори за финансови обезпечения и др.)   се запазват и спрямо цесионера.
   - Тъй като КТБ АД е под особен надзор, с цесионера няма да се подписва договор за откриване на депозит и  платежна сметка и съответно той няма да може да извършва платежни операции. Това ще стане възможно едва след подновяване на дейността на КТБ и след  представяне на необходимите документи от цесионера на банката.

4. След осчетоводяване на цесията, средствата се блокират по сметката на цесионера до представяне на необходимите документи за неговото идентифициране и подписване на договор или до други последващи действия /напр. прихващане, погасяване на кредит, пристъпване към изпълнение съгласно наложените върху прехвърленото в земане обезпечения и т.н./

## II.    Осчетоводяване на волеизявления за прихващане.

По отношение на отправените до банката едностранни волеизявления за прихващане, които са действителни и основателни по смисъла на чл.103 и сл. от ЗЗД и са породили погасителен ефект примерната техника на осчетоводяване е следната:

Доколкото прихващането винаги има обратно действие, то счетоводната операция по погасяване на двете насрещни вземания до размера на по – малкото от тях също следва да се вземе със заден вальор. Доколкото при различните волеизявления за

прекратяване последиците са настъпили в различен момент, то за всяко отделно прекратяване наборът на осчетоводяване ще бъде индивидуално определен.

По отношение начинът на осчетоводяване на волеизявленията за прекратяване, които са основателни, ще приложим стандартната схема на осчетоводяване на погасения по кредити, чрез дебитиране на счетоводната сметка, в която се отчитат средствата на длъжника, срещу кредитиране на съответната счетоводна сметка, в която се отчита неговия дълг.

# EXHIBIT 20



# Фрея ƒ Freya
## Транслейшънс ƒ Translations

**Преводи от и на чужди езици**

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

---

www.bnt.bg/bg/a/ivan-iskrov-ktb-mozheshe-da-ba-de-spasena#recap

*Aired on June 23, 2015[1]*

### BNB Governor Ivan Iskrov: "Corpbank could have been rescued"

The BNB Governor pointed out that on 17th June last year the Central Bank publicly stated that Corpbank (or CCB) was liquid and was operating as usual like the entire banking sector was. "As if incidentally the Bulgarian National Radio – a media funded entirely by the Bulgarian tax-payers – at about 11 a.m. read out letter of warning by an anonymous party alleging that charges had been brought against one of my deputies and that "Iskrov was nowhere to be found", that "Access to public information was denied", which announcement eventually brought about a steep rise in cash withdrawals and as a result the Bank lost as much as One Billion levs over a span of just several days. Needless to say, on 20 June 2014 at around 11:45 a.m. the said bank's management requested from the BNB to place it under conservatorship", he explained.

Iskrov stressed that last year a draft plan for CCB's rescue was drawn, which had to be supported by the political forces on July 14. However, no such support was given. The date was scheduled after meetings and deliberations with MPs of the political parties represented in the 42nd National Assembly. "Our colleagues in Portugal used and applied our draft plan and resolved the issues with their Banco Espirito Santo, while we are still touring TV studios and searching who is to blame for CCB", added he. One day, if the President decides to make the transcript from this plenary session available to the public, it will become clear which politician and what position he/she has defended. We made everything possible to put CCB back to business again and give all depositors access to their money, said Iskrov.

---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – BNB's Governor Interview for the Bulgarian National TV of 23 June 2015. This translation has 1 (one) page.*

*Translator:* _____

*Boryana Ilievo Stefanova*

---

[1] Excerpts from Ivan Iskrov's interview given to the Bulgarian National TV on June 23, 2015.

# Иван Искров: КТБ можеше да бъде спасена

23.06.2015
www.bnt.bg/bg/a/ivan-iskrov-ktb-mozheshe-da-ba-de-spasena#recap -

Управителят на БНБ припомни, че на 17 юни м.г. Централната банка заявява пред обществеността, че КТБ е ликвидна и функционира нормално, както целият банков сектор. "Някак си случайно в Българското национално радио - медия, финансирана от данъкоплатците, изчетоха към 11.00 часа един анонимен сигнал по отношение на повдигнатото обвинение на моя заместник - как Искров бил скрил, как му бил отнет достъпът до обществена информация, което драстично увеличи тегленията и в резултат в продължение на няколко дни банката загуби около 1 млрд. лева. При което на 20 юни около 11.45 на обяд ръководството на тази банка поиска да бъде поставено под особен надзор", обясни той.

Искров подчерта, че миналата година е изготвен проект за спасяването на КТБ, който на 14 юли политическите сили е трябвало да подкрепят. Такава подкрепа не бе получена. Датата беше одобрена след срещи с представители на парламентарно представените сили в 42 НС. "Колегите в Португалия приложиха нашия модел и решиха проблема с тяхната Banco Espirito Santo, а ние обикаляме студията и търсим вината за КТБ", добави той. Ако един ден президентът прецени, че трябва да се отвори тази стенограма ще се види кой от политиците какви позиции е защитавал. Ние направихме всичко възможно КТБ да заработи и абсолютно всички вложители да имат достъп до парите си, очерта Искров.

# EXHIBIT 21

*Фрея*
*Translations*

*ТПранслейшънс*

**Преводи от и на чужди езици**
гр. Варна, ул. Кирил и Методий № 1
Email: freyatranslations@gmail.com

*Translation from Bulgarian*

http://www.banker.bg/finansov-dnevnik/read/kriiat-orujieto-na-ubiistvoto-na-ktb

Banker Newspaper (Bulgaria) Interview, April 17, 2015

### Banking Supervision has collapsed

## The smoking gun that killed CCB is safely tucked away

Interview with Tsvetan Gunev, former Deputy Governor of the BNB (June 16, 2013 – January 21, 2015), the (Bulgarian) Banker newspaper

*(Excerpt)*

[...]

**Q:** **What advice would you give?**

**A:** Well, one thing to do, for example, is to read the reports the three auditing firms submitted upon their examinations. The reports are crucial, I mean the initial reports, the ones submitted after the ten-day-long audits performed on CCB and the reports on the subsequent audits performed over three months. It turns out that no one has even seen any of those, let alone read them, well…no one except the BNB and the Prosecutor's Office, of course. There are very specific reservations there.

**Q:** **What do you mean? What "specific reservations"?**

**A:** One such provision is that the so called "audit" is practically a form of a consultancy service rendered, which essentially does not qualify as an audit. Another is that the auditors' reports may not be deemed expert opinions or conclusive findings with regard to accounting matters, financial reports or any other financial information. Still another is that the suggested impairment estimates are tentative accounting estimates only and nothing else. Next, the reports explicitly say that they are not intended and may not be used as evidence or any other type of expert opinion in any legal or other proceedings, along with a lode of other quite interesting reservations.

Those reports are the smoking gun, but they are well hidden. Let me give you an example, let's say that someone got shot while walking a bridge and fell into the river below. Now, because we don't see any gun, we conclude that that person is a victim of drowning. This is the case here.

[--end of excerpt--]

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct English translation from the Bulgarian original of the attached document – Excerpt from Tsvetan Gunev's interview with The Banker newspaper on 17 April 2015 (The Smoking Gun). This translation has 1 (one) page.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*



http://www.banker.bg/finansov-dnevnik/read/kriiat-orujieto-na-ubiistvoto-na-ktb

**Интервю в-к Банкер 17.04.2015г**

## Банковият надзор е в пълна разруха

# Крият оръжието на убийството на КТБ

### Цветан Гунев пред в. "БАНКЕРЪ"

### (Цветан Гунев – Подуправтел на БНБ (16.06.2013г – 21.01.1015г.)

[...]

**Какви съвети?**

- Например, че непременно трябва да се запознаят с докладите на трите одиторски фирми от техните проверки. Те са много важни. Говоря за първоначалния доклад от десетдневните одити на КТБ и за доклада от последващите одити, продължили три месеца. Оказа се, че никой не ги е виждал, камо ли да ги е чел. Освен БНБ и прокуратурата, разбира се. А в тях има много специфични условия.

**Какво нмате предвид под специфични условия в одиторските доклади?**

- Едно от тях е, че така нареченият одит фактически е консултантска услуга, която по своята същност не представлява одит. Друго специфично условие е, че в докладите си одиторите не изразяват мнение или каквато и да е сигурност по счетоводни въпроси, финансови отчети и друга финансова информация. Третото е, че предложените приблизителни обезценки представляват приблизителни счетоводни оценки. Четвърто, в докладите изрично се казва, че те не са предназначени за използване като доказателство или друго експертно мнение в съдебни или други производства и други доста интересни специфики.

Тези доклади са оръжие. Това е все едно да бъде застрелян човек на мост и да падне в реката. И понеже нямаме оръжието, обявяваме, че се е удавил.

*[край на извадката]*

# EXHIBIT 22

# Фрея          𝒻reya
## Транслейшънс          Translations

**Преводи от и на чужди езици**
гр. Варна, ул. Св.Св.Кирил и Методий № 1
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

---

| **BULGARIAN NATIONAL BANK**<br>BNB Ref.: БНБ-77699 of 20th June 2014<br>Sofia, 1 Knyaz Alexander I | **CORPORATE COMMERCIAL BANK AD**<br>Head Office<br>CCB Ref.:4098 of 20th June 2014 |
|---|---|

(handwritten):
*Attn:   Mrs Karbovska*
*As this is within your sphere of competence*

**TO:   BULGARIAN NATIONAL BANK**
          **1 Knayz Alexander I Square**
          **Sofia, 1000**
**Attn:   The Governor of BNB Ivan Iskrov**

## NOTICE

By **Corporate Commercial Bank AD** having EIK (company number as assigned in the Commercial Register):831184677 and seat and registered office address at Sofia 1000, Sredets District, 10 Graf Ignatiev St., as jointly represented by the Executive Directors Orlin Nikolov Russev, Iliyan Atanassov Zafirov, Georgi Pankov Hristov and Alexander Miroslavov Pantaleev

Dear Governor of the Bulgarian National Bank,

This is to notify you that Corporate Commercial Bank AD has had certain liquidity issues lately that has made it difficult for the Bank to meet its obligations and make payments as owed to its depositors. The current liquidity crisis is caused by the loss of public trust in the Bank and the resulting massive depositor panic. As of present all branch offices of the Bank all over the country are under attack from a host of depositors that want to withdraw their deposits in cash or order money transfers from their deposit accounts. Given the large number of payment orders over the last few days, the number of payment transactions ordered but not yet carried out, on the one hand, and the available funds in accounts and in cash, on the other, we can make a reasonable assumption that the amount of readily available funds at the bank would be insufficient, hence the Bank would not be able to meet its liabilities in the immediate future.

In order for the Bank to be able to recover it is kindly requested from the BNB to take all necessary measures within its power and ensure the stability of the financial and credit systems in Bulgaria, including by taking the Bank into conservatorship under the procedure prescribed in Art.115 (2)(2) of the Law on Credit Institutions.

Respectfully,

| /s/ (ill.) | /s/ (ill.) |
|---|---|
| *Iliyan Atanassov Zafirov,* | *Orlin Nikolov Russev,* |
| Executive Director | Executive Director |
| /s/ (ill.) | /s/ (ill.) |
| Georgi Pankov Hristov, | Alexander Miroslavov Pantaleev, |
| Executive Director | Executive Director |

*(handwritten):* "This letter was received at BNB filing department at 10:51 hours"; *(signed ill.); round seal of BNB*

---

*The undersigned, Ilka Simeonova Dyulgerava, hereby certify that this is a true and correct translation from Bulgarian into English of the attached document – CCB Notice to BNB of CCB ref.4098 dated 20th June 2014 and of BNB re.БНБ-77699 dated 20th June 2014. This translation has 2 (two) pages.*

*Translator:* _____ *Ilka Simeanova Dyulgerova*

НАРОДНА БАНКА
No. БНБ-XX699 / 20. 06. 2014
София, пл. „Княз Александър I" No 1

КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД
Централно управление
Изх. No. 4098 / 20.06.2014 г.

ДО
**БЪЛГАРСКА НАРОДНА БАНКА**
пл. „Княз Александър I" № 1
гр. София 1000

На вниманието на:
г-н Иван Искров - управител на
БЪЛГАРСКА НАРОДНА БАНКА

# УВЕДОМЛЕНИЕ

от **„КОРПОРАТИВНА ТЪРГОВСКА БАНКА"** АД, ЕИК в Търговския регистър: 831184677, със седалище и адрес на управление: гр. София 1000, район Средец, ул. „Граф Игнатиев" № 10, представлявано заедно от изпълнителните директори Орлин Николов Русев, Илиан Атанасов Зафиров, Георги Панков Христов и Александър Мирославов Панталеев

Уважаеми Господин Управител на БЪЛГАРСКА НАРОДНА БАНКА,

С настоящото Ви уведомяваме, че „Корпоративна търговска банка" АД изпитва известни проблеми с ликвидността, които водят до затруднения в посрещането и изпълнението на паричните й задължения към вложителите. Кризата е предизвикана от загуба в доверието в банката и предизвика масова паника сред вложителите. Към настоящия момент във всички клонове на Банката в страната има много клиенти, които желаят да получат в брой или чрез превод паричните средства по техните сметки. Като имаме предвид обема на нареденитe плащания в предходните дни, нареденитe, но неизпълнени още плащания към настоящия момент и наличните средства по сметки и в брой, можем да направим обосновано предположение, че те ще се окажат недостатъчни за изпълнение на задълженията на Банката в най-близко бъдеще.

С цел оздравяване на Банката, молим, в изпълнение на Вашите правомощия да предприемете необходимите мерки, за да се осигури запазването на стабилността на паричната и кредитната система на Република България, включително и поставянето й под специален надзор по реда чл. 115, ал.2, т.2 от ЗКИ.

С почит:

_____
Изпълнителен директор

_____
Изпълнителен директор

_____
Изпълнителен директор

_____
Изпълнителен директор

Писмото е получено в деловодството на БНБ в 10.51ч.

# EXHIBIT 23



## Фрея  Freya
## Транслейшънс *Translations*

### Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## BULGARIAN NATIONAL BANK
## GOVERNING COUNCIL

## EXCERPT FROM MINUTES No.11
## of a Meeting held on 20th June 2014 at 12:30

**The Meeting was attended by**: Ivan Iskrov, Dimitar Kostov, Kalin Hristov, Stati Statev, Boryana Pencheva and Lena Russenova

**Absent member**: Tsvetan Gunev (pursuant to Order BNB No.105-030022 of 18th June 2014)

**Attendees having no voting right**: Neli Kordovska, Tihomir Timnev, Alexander Urumov, Pavlina Anachkova and Slaviana Danailova

........................................

## RESOLUTION No.73
## On item 1 of the Agenda the Governing Council
## RESOLVED THAT:

........................................

1. Corporate Commercial Bank AD, having EIK (Company number) 831184667 is placed under conservatorship for a period of three months;

2. The following conservators are appointed:

   Hristina Ivanova Stamova, having EGN (Personal ID number) 5507239099 and

   Slaviana Stoilova Danailova-Veleva, having EGN: 6911023790;

3. Corporate Commercial Bank AD shall stop the fulfilment of all its obligations for a term of three months;

4. The operations of the Bank are restricted and the bank shall be prohibited to do any and all acts as granted by the banking license, updated in furtherance of Order No.РД 22-2265 of 16th November 2009;

5. The following members of the Managing Board of Corporate Commercial Bank AD are removed from office:

   Orlin Nikolov Russev

   Ilian Atanassov Zafirov

   Georgi Pankov Hristov, and

   Alexander Miroslavov Pantaleev;

6. The following Members of the Supervisory Board of Corporate Commercial Bank AD are removed from office:

   Tsvetan Radoev Vassileve

   Zlatozar Krastev Surlekov

   Lyubomir Kolev Denev, and

   Andul Salam Mohamed Abdulah Al Murshidi.

7. The shareholders of the bank holding more than 10% of its shares, such as: Bromak EOOD, having EIK: 030090459, holder of 50.66% of the capital of the bank and Bulgarian Acquisition Company, Luxemburg, holder of 30.35% of the capital are divested of their voting rights for a period of three months.

This Resolution is subject to immediate performance pursuant to Art.151, Para 2 of the Credit Institutions Act.

This Resolution is subject to objection before the Supreme Administrative Court within 14 days as of its communication.

This Resolution shall be signed by the Governor of the BNB pursuant to Art.59, Para 2 (8) of the Administrative Procedure Code.

This Resolution was adopted unanimously.

Ivan Iskrov, Governor, signed /illegible/

Rositsa Arssova, Secretary of the Governing Council, signed /illegible/

Dimitar Kostov, Deputy Governor, signed /illegible/

Stati Statev, Member of the Managing Board, signed /illegible/

Boryana Pencheva, Member of the Managing Board, signed /illegible/

Lena Russenova, Member of the Managing Board, signed /illegible/

*Text in handwriting reading:* True to the original,

                Rositsa Arsova, Secretary of the Managing Board, signed /illegible/

*Round seal reading:* The Bulgarian National Bank

---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Excerpt from Minutes No.11 of the Meeting of the Governing Council of BNB held on 20th June 2014 at 12:30. This translation has 2 (two) pages.*

Translator: _____ Boryana Ilieva Stefanova



## БЪЛГАРСКА НАРОДНА БАНКА
## УПРАВИТЕЛЕН СЪВЕТ

### ИЗВЛЕЧЕНИЕ ОТ

### П Р О Т О К О Л

### № 11

#### от заседанието на 20 юни 2014 година от 12.30 часа

**Заседават:** Иван Искров, Димитър Костов, Калин Христов, Стати Статев, Боряна Пенчева и Лена Русенова.

**Отсъства:** Цветан Гунев (на осн. Зап. БНБ № 105-030011/18.06.2014).

**Присъстват без право на глас:** Нели Кордовска, Тихомир Тимнев, Александър Урумов, Павлина Аначкова и Славяна Данаилова.

.........................................................................
*
*   *

БЪЛГАРСКА НАРОДНА БАНКА – УПРАВИТЕЛЕН СЪВЕТ
ПРОТОКОЛ от заседанието на 20 юни 2014 година от 12.30 часа

### РЕШЕНИЕ № 73

По т. 1 от дневния ред Управителният съвет

### РЕШИ:

..................................

1. Поставя „Корпоративна търговска банка" АД, ЕИК 831184667 под специален надзор за срок от три месеца;

2. Назначава за квестори:

Християна Иванова Стамова, ЕГН 5507239099 и

Славяна Стоянова Данаилова – Велева, ЕГН 6911023790;

3. Спира за срок от три месеца изпълнението на всички задължения на „Корпоративна търговска банка" АД;

4. Ограничава дейността на банката, като й забранява да извършва всички дейности, съгласно лиценз за извършване на банкова дейност, актуализиран със Заповед № РД 22-2265 от 16.11.2009 г.;

5. Отстранява от длъжност членовете на Управителния съвет на „Корпоративна търговска банка" АД:

Орлин Николов Русев

Илиан Атанасов Зафиров

Георги Панков Христов и

Александър Мирославов Панталеев;

6. Отстранява от длъжност членовете на Надзорния съвет на „Корпоративна търговска банка" АД:

Цветан Радоев Василев

Златозар Кръстев Сурлеков

Любомир Колев Денев и

Абдул Салам Мохамед Абдулах Ал Муршиди.

**БЪЛГАРСКА НАРОДНА БАНКА – УПРАВИТЕЛЕН СЪВЕТ**
**ПРОТОКОЛ** от заседанието на 20 юни 2014 година от 12.30 часа

7. Лишава за срок от три месеца от право на глас акционерите на банката, притежаващи повече от 10 % от акциите й: „Бромак" ЕООД, ЕИК 030090459, притежаващ 50.66 % от капитала на банката и Bulgarian Acquisition Company, Люксембург, притежаващ 30.35 % от капитала.

Решението подлежи на незабавно изпълнение на основание чл. 151, ал. 2 от ЗКИ.

Решението подлежи на оспорване пред Върховния административен съд в 14- дневен срок от съобщаването му.

Настоящото решение да бъде подписано от Управителя на БНБ, съгласно чл. 59, ал. 2, т. 8 от Административнопроцесуалния кодекс.

Решението е прието с единодушие.

\*

\*   \*

Иван Искров

**УПРАВИТЕЛ**

Росица Арсова

**СЕКРЕТАР НА УС**

Димитър Костов, подуправител -

Калин Христов, подуправител -

Стати Статев, член на УС -

Боряна Пенчева, член на УС -

Лена Русенова, член на УС -

Вярно с ... Секретар на УС
Росица Арсова

# EXHIBIT 24



*Фрея* **СF** *Freya*
*Транслейшънс* *Translations*

#### Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## CORPORATE COMMERCIAL BANK
### 10 Graf Ignatiev St., Sredets District, 1000 Sofia

## ORDER
### No. 3-1960
### Sofia, 28th August 2014, 14:50 hrs

**To:**   **the Central Headquarters**
         **10 Graf Ignatiev St., Sofia**

The undersigned Elena Zdravkova Kostadinchev and Stanislav Georgiev Lyutov, acting as conservators of Corporate Commercial Bank AD, having EIK (Company No.) 831184677, having seat and principal place of business at: 10 Graf Ignatiev St., Sredets District, 1000 Sofia and in furtherance of Resolution No.77 of 25th June 2015 adopted by the Governing Council of the Bulgarian National Bank of Ref. No. BNB-77941/20th June 2014, hereby

## ORDER THAT:

1. A new version of the CSoft software revision of 23rd May 2005 should be introduced, which contains the following changes:

   - the mistake made in Ordinance No.22 has been adjusted;

   - new inquiries by parameters have been added to the Government Securities Module at the request of Mr. Lichev.

Conservators:

Elena Zdravkova Kostadinchev, signed /illegible/

Stanislav Georgiev Lyutov, signed /illegible/

*Round seal reading:* Corporate Commercial Bank AD, Sofia

---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Order No. 3-1960 dated 28th August 2014 of the conservators of Corporate Commercial Bank AD. This translation has 1 (one) page.*

*Translator:* _____ *Boryana Ilieva Stefanova*

2.09.2015 г.

36 (1241x1754)

**К О Р П О Р А Т И В Н А   Т Ъ Р Г О В С К А   Б А Н К А   АД**

Гр. София 1000, район Средец, ул. „Граф Игнатиев" № 10

**ЗАПОВЕД**

№ 2-1960

София, 18.08.2014 г. час: 14:50

До:Централно управление

Гр. София, ул." Граф Игнатиев" № 10

Елена Здравкова Костадинчев и Станислав Георгиев Лютов, в качеството ни на квестори на „КОРПОРАТИВНА ТЪРГОВСКА БАНКА"АД, ЕИК в Търговския регистър: 831184877, със седалище и адрес на управление: гр.София1000, район Средец, ул."Граф Игнатиев" № 10 по силата на Решение №77 от 25.06.2014 г. на Управителния съвет на БНБ, изх.№ БНБ – 77941/20.06.2014 Г., с настоящата заповед

НАРЕЖДАМЕ:

1. Да бъде въведена в експлоатация нова версия на програмен продукт СиСофт – 23.05.05, която съдържа следните промени:

   - Коригирана грешка при изготвяне на наредба 22;

   - Добавени нови параметрични справки в модул ДЦК, по искане на г-н Личев.

КВЕСТОРИ:

................................

Елена Здравкова Костадинчев

................................

Станислав Георгиев Лютов

1/1

# EXHIBIT 25



**BULGARIAN NATIONAL BANK**

Address: 1, Knyaz Alexander I Sq., 1000 Sofia, Bulgaria
Telephone: (+3592) 91459 (switch-board)
Fax: (+3592) 980-24-25
E-mail: press_office@bnbank.org
www.bnb.bg

Home ❯ Press Office ❯ Press Releases ❯ by date

PRESS RELEASE

30 June 2014

In line with the plan of all necessary measures to be pursued to guarantee bank stability in the country, submitted by the BNB and the Government at the consultations with the Head of State yesterday, the Governing Council of the Bulgarian National Bank adopted amendments to BNB Ordinance No. 6 on Extending Collateralized Lev Loans to Banks under the conditions of Art. 33 of the Law on the BNB.

According to the decision, the required percentage of the collateral under Art. 6 of Ordinance No. 6 is set at 110 percent of the original amount of the resources provided in case of need.

\* \* \*

The Governing Council of the Bulgarian National Bank made a decision to reduce, as from 01.07.2014, the interest rates on the deposits held with Corporate Commercial Bank AD down to the average market rate for the banking system by type, maturity and currency, calculated according to the BNB interest rate statistics for the interest rates on deposits as of May 2014.

The decision was made pursuant to Art. 115, para. 1, and para. 2, items 2 and 3, and Art. 116, para. 2, item 1, in relation to Art. 103, para. 2, item 24 of the Law on Credit Institutions, and Art. 16, item 16 of the Law on the BNB.

The implementation of this decision is assigned to the conservators of Corporate Commercial Bank AD appointed under Resolution No. 77 of 25.06.2014 of the BNB Governing Council.

The same measure is also enforced against its subsidiary Credit Agricole Bulgaria EAD.

The decision is subject to immediate implementation pursuant to Art. 151, para. 2 of the Law on Credit Institutions.

2009 Bulgarian National Bank.

# EXHIBIT 26



*Фрея* *Freya*
*Транслейшънс* *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Кирил и Методий № 1
Email: freyatranslations@gmail.com

*Translation from Bulgarian*

*(BNB Logo)*

### BULGARIAN NATIONAL BANK

**Dear Conservators,**

Pursuant to Art.107 (3) of the Law on Credit Institutions (LCI) and in view of our duty to supervise how the conservators handle the property of the bank placed under conservatorship on an on-going-basis and their strict adherence to the restrictions imposed on such bank with respect to its fulfilment of its obligations, this is to hereby instruct you that in your conservator capacity you shall do as follows:

1. Submit a weekly report on the first day of the week following the reported week on all payments made under Art.119 (3)(4) LCI over the preceding week, which report shall contain details of each and every debt with respect to which a payment has been made. It is our understanding that as of present it is not possible to make any payment under Art.119 (3)(1) through Art.119(3)(3) LCI on account of the fact that a bank taken into conservatorship (or the supervised bank) has no access to any payment system, hence no final settlement can be achieved.

2. Notify the Bulgarian National Bank of each and any forthcoming payment exceeding BGN 200,000 (*two hundred thousand Bulgarian levs or its respective foreign currency equivalent*) seven days prior to actual payment and supply the BNB with all relevant information about the debt being so paid. Such payment can only be made if the BNB has not objected to the term set for such payment. No restrictions to that effect shall apply to money transfers between accounts with the supervised bank or between accounts with different banks when such money transfers need to be made for the supervised bank handling expenses purposes.

**Respectfully yours,**

**Neli Kordovska,**
**BNB Deputy Governor and  Head of Banking Supervision Division**

**Dimitar Kostov,**
**BNB Deputy Governor and Head of Banking Division**

1 Knyaz Alexander Square, Sofia 1000, tel.:02 9145 9; fax: 02 980 24 25




2

Addendum Form 1

Letter/memo/opinion No._____ Date:_____

From: _____

To:    Mr Lichev

For the purpose of:

☐ Information

☐ Opinion

☐ Reply

☐ Proposition

☐ Taking action in furtherance of the above

☐ Other _____*For your information!*_____

_____

_____

To be done by: _____

Date: 22nd August 2014     /s/ (ill.)

                                    Conservators:

_____           _____
Elena Zdravkova Kostadinchev           Stanislav Georgiev Lyutov

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct English translation of the Bulgarian original of the attached document – BNB Letter of Instructions to the Conservators for the bank taken into conservatorship, dated 22nd August 2014. This translation has 2 (two) pages.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*



# Българска народна банка

ДО

**КВЕСТОРИТЕ НА**

**„КОРПОРАТИВНА**

**ТЪРГОВСКА БАНКА" АД**

**И НА „ТЪРГОВСКА БАНКА**

**ВИКТОРИЯ" АД**

**УВАЖАЕМИ КВЕСТОРИ,**

Във връзка с упражняването на постоянен контрол върху действията на квесторите по разпореждане с имуществото на поставената под специален надзор банка, в това число и за стриктното спазване ограниченията, наложени на банката по отношение изпълнението на нейните задължения, на основание чл. 107, ал.3 от ЗКИ, Ви указваме следното:

1. Квесторите са задължени да представят на седмична база, в първия работен ден на следващата седмица, отчет за извършените през изминалата седмица плащания с основание чл.119, ал.3, т. 4 ЗКИ, като за всяко плащане се посочват конкретни данни за задължението, по което е извършено плащането. Приемаме, че към настоящия момент извършване на плащания по чл. 119, ал.3, т. 1-3 не е възможно да се извършва, поради това че банките поставени под специален надзор не разполагат с директен достъп до платежните системи с окончателност на сетълмента.

2. За всяко предстоящо плащане надхвърлящо 200 хил.лв. (или съответната валутна равностойност) квесторите уведомяват БНБ в седмодневен срок преди извършването му, като предоставят съответната информация за задължението, по което ще се извърши плащането. Плащането може да се извърши ако БНБ не е възразила в срока по изр. първо. Това не се отнася за преводи от една сметка на банката в друга, в една и съща или в различни банки, когато това се налага за нуждите на плащания, свързани с издръжка на банката.

**С УВАЖЕНИЕ,**

| | |
|---|---|
| **НЕЛИ КОРДОВСКА** | **ДИМИТЪР КОСТОВ** |
| **ЗА ПОДУПРАВИТЕЛ НА БНБ** | **ПОДУПРАВИТЕЛ НА БНБ** |
| **РЪКОВОДЕЩ УПРАВЛЕНИЕ** | **РЪКОВОДЕЩ УПРАВЛЕНИЕ** |
| **„БАНКОВ НАДЗОР"** | **„БАНКОВО"** |

пл. „Княз Александър i" № 1, 1000 София, тел. 02 9145 9,
факс 02 980 24 25

**Приложение 1**

Писмо, докладна записка, становище No................/ дата............

От: ...........................................................................................

...........................................................................................

До:

Г-н / Г-жа ........ *Личев* .................................................

☐  За сведение

☐  За становище

☐  За отговор

☐  За предложение

☐  За изпълнение

☐  Други *За информация!* ..............................................

...........................................................................................

...........................................................................................

...........................................................................................

Срок за изпълнение ..................................................

Дата: *22.08.2013*

Квестори:

.................................................          .................................................

лена Здравкова Костадинчев              Станислав Георгиев Лютов

# EXHIBIT 27



*Фрея*
*Транслейшънс*

*Freya*
*Translations*

Преводи от и на чужди езици
гр. Варна, ул. Кирил и Методий № 1
Email: freyatranslations@gmail.com

<u>*Translation from Bulgarian*</u>

*(BNB Logo)*

## Bulgarian National Bank

### Our ref. BNB-79276  Date: 25ᵗʰ June 2014

*To be entered in the books!*

*(the rest is illegible)*

| CORPORATE COMMERCIAL BANK, AD |
| :---: |
| Head Office |
| Our ref.7112  Date: 3ʳᵈ July 2014 |

**To:**   **The Conservators of Corporate Commercial Bank, AD**

<u>*Re:*</u>   <u>*Letter of your ref.K-02 of 23ʳᵈ June 2014 and*</u>
   <u>*of our ref.BNB-78390 of 23ʳᵈ June 2014*</u>

**Dear Mr Lyutov,**

**Dear Mrs Kostadinchev,**

Regarding your letter cited above please be advised that pursuant to BNB Managing Board's decision of 25ᵗʰ June 2014 and pursuant to Art.116 (2) (2), in conjunction with Art.115 and Art.16 (17) of the Law on the Bulgarian National Bank, BNB has, as an exception, authorized the CCB Conservators to remit the amount of BGN 30,109,201.10, which amount was credited by the Ministry of Finance to CCB's account with the BNB. The funds originate from a payment on government bonds held by the Bulgarian Deposit Insurance Fund (<u>BDIF</u>) as made to the BDIF's account with BNB.

You may order a money transfer, accordingly.

**Respectfully yours,**

/s/ (ill.)

**Dimitar Kostov,**
**BNB Deputy Governor and**
**Head of Banking Division**
*Round seal of the Bulgarian National Bank*

**1 Knyaz Alexander Square, Sofia 1000, tel.:02 9145 9; fax: 02 980 24 25**

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct English translation of the Bulgarian original of the attached document – BNB Letter of ref.BNB-79276 dated 25ᵗʰ June 2014 to the Conservators for CCB. This translation has 1 (one) page.*

*Translator:* _____   *Ilka Simeonova Dyulgerova*



# EXHIBIT 28

*Фрея*
*Транслейшънс*

*Freya*
*Translations*

Преводи от и на чужди езици
Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com, freyatranslations@abv.bg

*Translation from Bulgarian*

## AYR PROPERTY DEVELOPMENT AD
Declared bankrupt, Case No.730 in the docket of the Shoumen District Court

TRUSTEE IN BANKRUPTY (LIQUIDATOR)
Ganka Kolyovska (Mrs)
Sofia, Musagenitsa residential area
1a Kl. Ohridski Boulevard, Office 2
Tel: 02 870 05 02, 0888391174
E-mail: syndic@abv.bg

To:   **THE DISTRICT COURT OF SHOUMEN**
      **In case 730/2013 in the docket of the court**

### LIQUIDATOR'S REPORT
By Ganka Kolyovska, Trustee in Bankruptcy

Re:   **Actions taken in furtherance of Ruling 241 of 6th June 2014**

DEAR CHAIR OF THE COURT,

This Report is kindly submitted to report on the actions taken in furtherance of Ruling 241 of 6th June 2014 and for the purpose of the Creditors' Meeting called and scheduled for 30th June 2014 at 2.00 p.m.

## ONE: PRESERVATION AND SAFEGUARDING OF THE BANKRUPTCY ESTATE OF AYR PROPERTY DEVELOPMENT AD

On 15th June 2012 the bankruptcy court delivered Judgment No.122 in the bankruptcy proceeding against Ayr Property Development AD ("APD") in case 14/2011, originally instituted before the Targovishte District Court and later transferred to the District Court of Shoumen as case 730/2013, by which judgment the court ruled on the matters raised under Art.711 of the Commercial Act ("CA") and gave directions to the trustee to proceed with liquidation of the assets included in the bankruptcy estate of APD.

The assets included in APD's bankruptcy estate are as follows:





- 1043 decars of land property located in the area of the town of Balchik – the property has been sold under the procedures of Art.717 CA, the asset has been written off the company balance sheet and replaced by an entry of cash in the amount of BGN 97,500,000 (ninety seven million five hundred thousand Bulgarian levs);

- Company stock of 71 shares constituting 99% of the capital of New Co – Property Investment AD;

- Account receivable acquired under a cession agreement with Investbank of 1st july 2010 under art.25 of the Contracts and Obligations Act and owed to APD by CFG Shareholding Community AD and arising from a bank loan agreement No.159 of 29th October 2009;

By Ruling 248 of 19th November 2012 made in case 14/2011 the bankruptcy court authorized a sale of assets under the procedures of Art.717 *et seq* CA in conformity with the valuations of each asset accordingly and in conformity to the resolution of the Creditors' Meeting as passed under Art.677 Para 1 (8) CA.

Acting in furtherance of the above and using the power vested in the trustee by operation of law such trustee proceeded with the sale of the assets included in the bankruptcy estate of APD (declared bankrupt). A property of 1043 decars of land located in the vicinity of the town of Balchik has been sold for BGN 97,500,000. The Buyer, First Investment Bank AD (FIB or the Bank) has paid the price and as of present the proceeds of the sale are deposited in a special bank account with Corporate Commercial Bank AD and the bank account holder is the trustee.

So far, there have been no bids for buying any of the other assets – the above-mentioned shares of stock or accounts receivable. Since a sufficiently long lapse of time has passed after the sale the Trustee has suggested that the Creditors' Meeting should pass a resolution for a new valuation of the assets or an update of the existing one in order to proceed with such assets liquidation.

The main issues the attempts to preserve the bankruptcy estate have faced in the proceeding of case No.730/2013 can be summed up as follows:

A. The stay of the enforcement action brought by Private Enforcement Agent (**PEA**) Zahari Dimitrov (commissioned under No.808 by the Chamber of Private Enforcement Agents for practice within the jurisdiction of the Varna District Court) in enforcement case No.20118080400251 as instituted by an application in that regard filed by Investbank AD.

B. The need the resolve the dispute over the conflict of claims between the claim asserted under Art.717n by **First Investment Bank AD (FIB)** and the claim lodged by SEEK Foundation, LLC (a limited liability company organized under the laws of the State of Missouri, recorded in the Office of the Secretary of State





of the State of Missouri, USA, under location number LCO875133, with seat and head office address at 404 Timberidge Drive, Saint Peters, Missouri 63376, USA).

This Report is intended to provide detailed information on APD's liquidator activities and steps taken under Art.658 CA to simultaneously preserve the bankruptcy estate and suggest solutions to all pending issues that need to be solved properly in order to ensure that the bankruptcy proceedings are conducted in a lawful and legitimate fashion, while all interests involved in case 730/2013 are effectively protected in harmony with the objectives set by the lawmakers in the provisions of Art.607 CA.

### Report on the issues emerging from taking further enforcement actions in enforcement case No.20118080400251 as instituted by an application in that regard filed by Investbank AD

1. According to the latest valuation of the cash account receivable owed to the bankruptcy estate by **CGF Shareholding Community AD (CGF)**, the amount of value at which the procedure may move ahead so that such account receivable can be offered for sale is BGN 5,706,160.00, while the initial value was BGN 7,132,700.00.

2. APD's Creditors have advised the Bankruptcy trustee in an express letter of the need to take all necessary steps so that the PEA stays the enforcement action No.20118080400251 intended to liquidate the account receivable owed by CGF and arising from a bank loan agreement No/159 of 29th October 2009 for the benefit of Investbank AD.

3. As directed by the bankruptcy court on 3rd June 2014 the trustee in bankruptcy filed a motion under Art.432 Para 7 of the Civil Procedure Code (**CPC**) with reference to Art.638 and Art.637, and with reference to Art.711 and Art.715 CA, in the office of PEA Zahari Dimitrov seeking a stay of enforcement action No.20118080400251 against an asset included in APD bankruptcy estate.

4. No decision on the trustee's motion has been issued so far.

5. For the sake of precision the Bankruptcy trustee feels the need to note that according to Ruling No.255 of 27th April 2012 of the Varna Court of Appeals (**the VCA**), the party that may file for a declaratory action to ascertain to whom the account receivable ("**AR**") at issue (i.e. the one owed by CGF to the bankruptcy estate) belongs, is no one else by Investbank AD. The VCA has expressly pointed out that it is Investbank AD that should challenge the claim that the AR at issue belongs to the bankruptcy estate, if they desire to move ahead with the enforcement action, which has been brought under the CPC and which has been stayed under Art.638 CA as soon as the bankruptcy proceedings were instituted.





6. The above court's decision has been announced to APD creditors and to the Bankruptcy court, in which decision the court inferred that the Creditors' meeting needed to pass a resolution for a new valuation of the AR owed by CGF to made and further advised if the motion to stay the enforcement action No.20118080400251 is denied, a motion on appeal from any such denial should be filed. In the event that the PEA's actions need to be appealed against, another issue might come to the fore – the dispute raised by APD's creditors by a motion of filing No.10053 of 2nd June 2014 in enforcement case No.20118080400251 on the competency, the procedures and the conditions under which any actions may be taken to liquidate the AR in question and the collaterals provided as security for said AR.

## TWO: REPORT ON THE ISSUES EMERGING FROM THE APPLICATION OF ART.717n CA

### I. Rights claimed under Article 717n CA by SEEK Foundation, LLC

1. One of the Art.717n CA creditors is the US-based company SEEK Foundation, LLC (**SEEK**). In furtherance of Order No.152 of 18th July 2013 of the Targovishte District Court SEEK has filed payment claims for the following follows:

   a) An AR in the amount of EUR 3,500,000 (*three million and five hundred thousand Euros*) equal to BGN 7,182,278.94 (*seven million one hundred eighty two thousand two hundred and seventy-eight point ninety-four Bulgarian levs*) as awarded to SEEK by virtue of a Writ of Execution issued on 28th February 2013 issued in interlocutory action No.163/2013 in the docket of the Targovishte Regional Court.

   b) An AR in the amount of BGN 136,908.10 (*one hundred and thirty six thousand nine hundred and eight point ten Bulgarian levs*) as awarded court costs, i.e. filing fee for issuance of a writ of execution in interlocutory action No.163/2013 in the docket of the Targovishte District Court.

   The payment claim is based on:

2. A **Contractual Mortgage No.174** of 8th July 2008 recorded in volume VI, reg.No.4189 in case No.798 in the records kept at the office of Notary Public Obreten Obretenov (*commissioned under No.109 by the Chamber of Notaries Public to practice in the area of jurisdiction of the Balchik Regional Court*); said contractual mortgage has been duly recorded in the Registry Office at the Balchik Regional Court under ref.No.2554 on 8th July 2008, Deed No.184, volume I, case No.1407/2008;





3. An **Account Receivable Transfer Agreement (Cession)** signed by and between **Corporate Commercial Bank AD** and **Finance Engineering AD** as entered in the record file of the Contractual Mortgage of 8th July 2008 pursuant to Art.171 of the *Obligations and Contracts Act* (**OCA**) and having ref. 2861 of 21st September 2012, Deed No.106, volume I, property record 9684 as shown on the books of records kept at the Registry Office of the Balchik Regional Court; an **Account Receivable Transfer Agreement (Cession)** signed by and between **Finance Engineering AD** and **SEEK Foundation LLC** as entered in the record file of the Contractual Mortgage of 8th July 2008 pursuant to Art.171 OCA and having ref. 2862 of 21st September 2012, Deed No.107, volume I, property record 9694 as shown on the books of records kept at the Registry Office of the Balchik Regional Court;

4. A certified copy of a writ of execution issued on 28th February 2013 in interlocutory action No.163/2013 and having ref.No.1386 of 1st March 2013 in enforcement action No.20137690400122/2013 in the records kept by PEA Anelia Zagorova (*commissioned under No.719 by the Chamber of Private Enforcement Agents for practice within the jurisdiction of the Targovishte District Court*) as notarized under No.9766 of 10th July 2013 by Notary Public Petya Angelova (*commissioned under No.496 by the Chamber of Notaries Public to practice in the area of jurisdiction of the Targovishte Regional Court);*

5. A Certificate of ref.No.719 of 26th March 2013 in interlocutory action No.163/2013; Request for Voluntary Payment of ref. No.1764 of 1st March 2013 in enforcement action No.20137690400122/2013 in the records kept by PEA Anelia Zagorova (*commissioned under No.719 by the Chamber of Private Enforcement Agents);*

6. A Certificate of ref.No. 4142 of 10th May 2013 as issued in in enforcement action No.20137690400122/2013 in the records kept by PEA Anelia Zagorova (*commissioned under No.719 by the Chamber of Private Enforcement Agents);*

7. The AR claimed by SEEK Foundation LLC is an undisputed claim and SEEK has been recognized as a party to Case C-488/2013 before the European Court of Justice (**ECJ**) as instituted by a reference for preliminary ruling made by the Targovishte District Court in the latter court's Ruling No.179 of 2nd September 2013.

The motion SEEK filed under Art.717n CA contains a request under Art.195 of the *Corporate Income Tax Act* for taxing at the source of income by the payer in the amount of BGN 718,227.89 (*seven hundred*




*and eighteen two hundred and twenty seven point eighty nine Bulgarian levs)* and for obtaining a certified copy of the tax payment receipt to be used by SEEK to declare the profit made within Bulgaria as per the USA-Bulgaria Treaty on Avoidance of Double Taxation. The documents shown below were attached to the above motion:

- A Declaration Form SPB-1 under Art.6 Para 1 (1) of Bulgarian National Bank Regulation No.27, and having ref. No.:4703-1378 of 22 February 2013 in the records book kept at the BNB;

- SEEK's Form of Consent under Art.155 with reference to Art.99 OCA with reference to Art.717n CA granting consent to the bankruptcy estate to assume the rights of SEEK arising from enforcement action No.20137960400122/2013 in the record kept by PEA Anelia Zagorova (commissioned under No.719 by the Chamber of PEAs).

## II. Rights claimed under Art.717n CA by First Investment Bank AD:

a) For a payment **in the amount of 3,965,612.50 Euros** claimed under a **Writ of Execution No.4868** of 25th June 2012 issued pursuant to Art.418 with reference to Art.417 Para 2 CPC in interlocutory action No.8968/2012 in the docket of the Varna Regional Court, IX Panel; the payment claim is against the Debtor, **Port Investment Development – Bulgaria 2 EAD**, is based on bank loan agreement No.014LD-L-000002 of 2nd October 2008 **(BLA 014LD-L-000002)** and is made of: (i) a principal amount of **2,5 Million Euros**, (ii) a penalty interest overdue as charged for the period from 25th October 2010 – till 21st June 2012 in the amount of **EUR 1,465,612.50** and (iii) enforcement action expenses in the amount of **BGN 155,121.28**.   The above BLA was secured by a **Contractual Mortgage** of No.155, volume II, reg.No.1341, case No.219 in the records for 2009 kept by Notary Public Obreten Obretenov in the town of Balchik (commission No.109 of the Chamber of Notaries Public) and recorded in the Registry Office at the Balchik Regional Court under No.1226 of 31st March 2009, Deed No.40, vol.I, case No.366/2009, as collateral in the amount of **2,500,000 Euros**.

b) For a payment **in the amount of 10,570,936.45 Euros** claimed under a **Writ of Execution No.4886** of 26th June 2012 issued pursuant to Art.418 with reference to Art.417 Para 2 CPC in interlocutory action No.8974/2012 in the docket of the Varna Regional Court, XXXIII Panel; the payment claim is against the debtor, **Asset Management EAD**, is based on bank loan agreement No.014LD-L-000006 of 29th December



2009 (**BLA 014LD-L-000006**) and is made of: (i) **6,950,118.02 Euros** of principal due and payable and (ii) a penalty interest overdue as charged for the period from 25th October 2010 – till 21st June 2012 in the amount of **EUR 3,620,818.43**. The above BLA was secured by a **Contractual Mortgage** of No.85, vol.I, reg.No.446, case No.71 in the records for 2010 kept by Notary Public Obreten Obretenov in the town of Balchik (commission No.109 of the Chamber of Notaries Public) and recorded in the Registry Office at the Balchik Regional Court under No.247 of 19th February 2010 as Deed No.5, vol.I, case No.111/2010, as collateral in the amount of **8,000,000 Euros**.

c) For a payment **in the amount of 31,724,900 Euros** claimed under a **Writ of Execution No.4932** of 28th June 2012 issued pursuant to Art.418 with reference to Art.417 Para 2 CPC in interlocutory action No.8985/2012 in the docket of the Varna Regional Court, XVI Panel; the payment claim is against <u>the debtor, **Port Investment Development – Bulgaria 2 EAD**,</u> is based on bank loan agreement No.39 KP-AA-2510 of 22nd November 2007 (**BLA 39 KP-AA-2510**) and is made of: (i) **20,000,000 Euros** of principal due and payable, (ii) a penalty interest overdue as charged for the period from 25th October 2010 – till 21st June 2012 in the amount of **EUR 11,724,900** and (iii) enforcement action expenses in the amount of **BGN 1,240,970.22**. The above BLA was secured by a **Contractual Mortgage** of No.156, vol.II, reg.No.1342, case No.220 in the records for 2009 kept by Notary Public Obreten Obretenov in the town of Balchik (commission No.109 of the Chamber of Notaries Public) and recorded in the Registry Office at the Balchik Regional Court under No.1227 of 1st April 2009 as Deed No.41, vol.I, case No.367/2009, as collateral in the amount of **20,000,000 Euros**.

1. The issues that have emerged during the proceeding of the claims filed under Art.717n can be summed up as follows:

(a) The liabilities for which Writs of execution were issued under Art.417(2) and Art.418 CPC (as evident from the evidence submitted in the proceeding of case No.730/2013) have arisen from a deficit of funds under the loans at issue caused by payments made with such funds under transactions concluded with third parties, as shown below:

- An amount of **EUR 22,970,000** from the money borrowed under **BLA 39 KP-AA-2510** and another amount of **EUR 2,500,000** as borrowed under **BLA 014LD-L-000002** were transferred under an *Intercompany Loan Contract* signed by and between **All Seas Management**, the Marshal Islands, and **ASP2** on 23rd November 2007;





- A payment in the amount of **EUR 7,618,000** from the funds borrowed under **BLA 014LD-L-000006** was transferred in furtherance of a *Coal Sale And Purchase Contract* as signed by and between **Asset Management EAD** and **Blue Finance Limited**, the Marshal Islands, on 22nd December 2009.

(b) Never has consent for using the mortgage collateral to cover said money deficit, which led to the booked debt recognized by the Court under Art.417 (2) and Art.418 CPC, ever been given, nor such consent might be assumed to have been given on any contractual or legal grounds, so therefore the bankruptcy estate may not be obligated to repay the debt so accrued.

(c) The transactions used as basis for payments made in favour of **All Seas Management**, the Marshal Islands, and **Blue Finance Limited**, the Marshal Island, have been contested as being fictitious and incidental to both the lender-borrower and mortgage relationships under which the Art.717n CA payment claim has been lodged;

(d) The amounts claimed for payment under Art.717n CA exceed the amounts specified in the duly recorded contractual mortgages, where such amounts HAVE BEEN LIMITED TO:

- **EUR 20,000,000** as per Contractual Mortgage entered under No.156, volume II, Reg.No.1342, File No.220 in the records for 2009 kept by Notary Public Obreten Obretenov (commission No.109 of the Chamber of Notaries Public) and then duly recorded in the Registry Office at the Regional Court of Balchik under No.1227 of 1st April 2009, Deed No.41, volume I, case No.367/2009;

- **EUR 2,500,000** as per Contractual Mortgage entered under No.155, volume II, Reg.No.1341, case No.219 in the records for 2009 kept by Notary Public Obreten Obretenov (commission No.109 of the Chamber of Notaries Public) and then duly recorded in the Registry Office at the Regional Court of Balchik under No.1226 of 31st March 2009, Deed No.40, volume I, case No.366/2009;

- **EUR 8,000,000** as per Contractual Mortgage entered under No.85, volume I, Reg.No.446, case No.71 in the records for 2009 kept by Notary Public Obreten Obretenov (commission No.109 of the Chamber of Notaries Public) and then duly recorded in the Registry Office at the Regional Court of Balchik under filing No.247 of 19th February 2010, Deed No.5, volume I, case No.111/2010;

(e) If the Court should deliver a judgment with prejudice holing that the mortgages at issue and the payment guarantees made thereunder were valid




and payment made accordingly, then the bankruptcy estate would be deprived of the possibility to assume the rights arising from the Registered Pledges Act pledge of the funds available in PIDB2's bank accounts, which pledges were intended to secure the repayment of the loans borrowed under **BLA 39 KP-AA-2510** and **BLA 014LD-L-000002**, because the funds se lent were cross-border transferred to the bank accounts of **All Seas Management**, the Marshal Islands and **Blue Finance Limited**, the Marshal Islands.

(f) The Writs of Execution under BLA 39 KP-AA-2510 and BLA 014LD-L-000002 were issued with respect to liabilities, which were calculated on the basis of entries in the accounting books and then claimed under Art. 417(2) and Art.418 on the basis of *Annex No.4* of 15th December 2009 and *Annex No.2* of 15th December 2009, which annexes however contain no consent to assume any mortgage secured liability.

2. A defensive claim in protection of the bankruptcy estate in accordance with Art.658, Para 1(7) and Art.660, Para 2 CA, has been filed seeking to:

   (a) Challenge the payment claimed under Art.717n CA against the bankruptcy estate as arising from the debt under **BLA No.39 KP-AA-2510** as invalid. Defensive claim was initially admitted to hearing in case **No.135/2013** in the docket of the Targovishte District Court, but later as a result of the recusals of the panel of judges hearing the case in the Targovishte District Court, the case was transferred to the Shoumen District Court under case **No.54/2013** in the docket of said court. As of present the case is still pending and is at the stage of exchange of briefs.

   (b) Challenge the payment claimed under Art.717n CA against the bankruptcy estate as arising from the debt under **BLA 014LD-L-000002** as invalid. The defensive claim was initially admitted to hearing in **case No.134/2013**. The trial court denied the Art.620 Para 5 CA motion for exemption from prepayment of the filing fee and the case was dismissed. The Varna Court of Appeals upheld the trial court's ruling denying the exemption from prepayment of filing fee and its ruling has entered in full force and effect as result of the Supreme Court of Cassation's denial to admit the case to cassation review. A new Statement of Claim of filing No.2997 of 2nd June 2014 has been filed in defence of the bankruptcy estate this time before the Shumen District Court, and the issue of prepayment of the filing fee is still pending resolution as is the case itself.

   (c) Challenge the payment claimed under Art.717n CA against the bankruptcy estate as arising from the debt under **BLA 014LD-L-000006** as invalid. The defensive claim was initially admitted to hearing in **case No.133/2013**. The trial court denied the Art.620 Para 5 CA motion for exemption from




prepayment of the filing fee and the case was dismissed. The Varna Court of Appeals upheld the trial court's ruling denying the exemption fro prepayment The Varna Court of Appeals upheld the trial court's ruling denying the motion for exemption from prepayment of the filing fee. As of present the dispute over the prepayment of filing fees is referred to the Supreme Court of Cassation (**SCC**) by a Complaint in that regard and the case is still pending – the SCC is yet to decide whether or not the case should be admitted to cassation review.

(d) For the sake of precision it should be noted that along with the motions under Art.620, Para 5, motions under Art.620, Para 3 CA have been filed in the alternative in the Bankruptcy court in case 14/2011, which are still pending resolution. Said motions together with the new claim filed under No.2997 on 2nd June 2014 in the Shoumen District Court might prove to be of crucial importance for the progress of the claim proceedings in case 54/2013 in the docket of latter court (former case No.135/2013 in the docket of the Targovishte District Court) and for the progress of the appeal before the SCC in case No.133/2013 in the docket of Targovishte District Court.

3. The procedural issues the defensive claim seeking to protect the bankruptcy estate in the proceedings instituted under Art. 717n CA is facing are as follows:

(a) In line with the objections brought against the validity of FIB's claim against the bankruptcy estate for payment of the debts accrued under BLAs with Nos. **39 KP-AA-2510, 014LD-L-000002** and **014LD-L-000006**, respectively, the Bankruptcy Court issued Ruling No.179 of 2nd September 2013 and pursuant to Art.267 TFEU with reference to Art.628 CPC made a reference for preliminary ruling to the ECJ and the latter instituted preliminary ruling proceedings as case C-488/2013, currently at the stage of exchange of documents between the parties involved.

(b) Pursuant to Art.631 CPC the Bankruptcy Court stayed the main proceedings instituted by FIB's Art.717n CA claim until the preliminary ruling proceeding in case No. C-488/2013 is essentially concluded.

(c) The Varna Court of Appeals (**VCA**) issued Ruling No.735 on 14th November 2013 in case No.754/2013 reversing Ruling No.179 of 2nd September 2013 in pertinent part, where pursuant to Art.631 CPC the Bankruptcy court ordered the stay of the main proceedings under Art.717n CA. The VCA's ruling was appealed before the SCC but the cassation complaint was not admitted to hearing. On 9th June 2014 the APD's creditors of 8th rank as per Art.722 CA filed an Art.270-Para-2-CPC claim under No.5705 seeking from the Court to declare Ruling No.735 of 14th November 2013 (as issued in interlocutory action No.754/2013 before the VCA) null and void.



(d) The creditors under Art.722 and the insolvent trader filed a Motion in Opposition to the application of Art.717n CA in case No.730/2013 on 10th January 2014, where they contested the validity of the payment obligation claims asserted against the bankruptcy estate by FIB and by **Torier Partners Limited**, the British Virgin islands, the latter alleging to have standing to sue by virtue of a partial cession signed with FIB. The arguments in support of the invalidity of the claim for liability of the bankruptcy estate for payment of the debts under **BLA 39 KP-AA-2510, BLA 014LD-L-000002** and **BLA 014LD-L-000006** stemmed from the provisions of the *United Nations Convention against Corruption*, *Directive 2005/60/EC* of the European Parliament and of the Council of 26 October 2005 on the prevention of the use of the financial system for the purpose of money laundering and terrorist financing, and *Council Framework Decision 2003/568/JHA of 22 July 2003* on combating corruption in the private sector.

(e) **Asset** filed a motion of filing No.1349 of 10th March 2014 in case 730/2013 to notify the court hearing the bankruptcy proceedings of such appellate complaints and nullity claims as have been filed heretofore against:

- **Judgment No. 1221 of 30th December 2013** delivered by the Varna District Court (VDC) in **case 360/2013** on an Art.422 CPC claim for the AR arising from **BLA 014LD-L-000002;**

- **Judgment No.1224 of 30th December 2013** delivered by the Varna District Court (VDC) in **case 490/2013** on an Art.422 CPC claim for the AR arising from **BLA 014LD-L-000006;**

- **Judgment No.2 of 11th February 2014** delivered by the Varna District Court (VDC) in case 69/2013 on an Art.422 CPC claim for the AR arising from **BLA 39 KP-AA-2510**

The documents produced in case 70/2013 contain solid arguments challenging the validity of the above court judgments and the loan liabilities at issue as being inconsistent with and contrary to the Community public order as established by the provisions and standards set in the *Civil Law Convention on Corruption* of the European Council, the *United Nations Convention against Corruption*, *Directive 2005/60/EC* of the European Parliament and of the Council of 26 October 2005 on the prevention of the use of the financial system for the purpose of money laundering and terrorist financing, and *Council Framework Decision 2003/568/JHA of 22 July 2003* on combating corruption in the private sector.

(f) On 2nd June 2014 the creditors of APD filed a motion based on the provisions of the European Council's *Civil Law Convention on Corruption* and raised questions concerning the application of Art.717n CA under the conditions of a



dispute over the validity of the mortgage and loan liabilities as claimed by FIB. The motion poses further questions about the powers of the trustee in bankruptcy where the application of Art.717n CA is concerned under the conditions of a pending dispute over the creditor's legitimacy of FIB under the existing mortgages and another pending case – the one before the ECJ. The preliminary ruling proceedings in case C-488/2013 before the ECJ being still pending is quite indicative of the fact that all these questions are regarded as significant legal questions which need to be answered in order for the bankruptcy proceedings to move ahead and eventually closed in a lawful fashion.

4. **Issues on the merits of the disputable matters:**

a) According to the provisions of Art.658 Para 1 and Para 1 with reference to Art.660 and Art. 663 CA the trustee in bankruptcy must act in good faith and good care in order to protect and safeguard the interests of both the creditors and the one of the insolvent trader as prescribed in Art.722 and Art.733 CA and in full harmony with the purpose of the bankruptcy action as set forth in Art.607 CA.

b) The trustee in bankruptcy, exercising the powers vested in such trustee by operation of law, has duly referred to the court the dispute over the validity of the claim asserted by FIB under art.717n CA for payment of disputable liabilities, which FIB has charged and claimed as payable under Art.417 Para 2 and Art.418 CPC.

c) Under the conditions of pending nullity actions brought against FIB's rights and seeking to deny the legitimacy of the Bank's rights of a mortgage creditor of the bankruptcy estate with respect to the Bank's payment claims under **BLA 39 KP-AA-2510, BLA 014LD-L-000002 and BLA 014LD-L-000006 as being invalid** as per the above mentioned Community law provisions, the court hearing the claims must take account of and provide resolutions to all disputable matters raised before it by delivering a judgment with prejudice on all such matters before it proceeds with applying Art.717n CA. According to the provisions of Art.658, Art.660 and Art.663 with reference to Art.691 CA and Art.298 CPC **it is beyond the trustee's power** to proceed and immediately apply Art.717n CA **unless** the court has delivered *a judgment with prejudice* on all disputable matters concerning the mortgage relationship at issue or the lender borrower relationship and the legitimacy of the rights FIB claimed to have thereunder.

### THREE:

##### ORDER OF PREFERENCE OF THE MORTGAGE RIGHTS CLAIMED UNDER ART.717n



A. **Contractual Mortgage** of 8th July 2008 entered under No.174, volume VI, Reg.No.4189, case No.798 in the records for 2008 kept by Obreten Obretenov, Notary Public, commissioned under No.109 by the Notary Chamber, which mortgage was recorded in the Registry Office at the Regional Court of Balchik under No. 2554 of 8th July 2008, Deed No. 184, volume I, case No.1407/2008 in favour of **Corporate Commercial Bank AD** under Bank Loan Agreement of 8th July 2008 signed with *Project Company Development AD*, having EIK (Company No.148117377), where the according to the latest entry the rights thereunder have been acquired by **Seek Foundation LLC** by virtue of a Cession Agreement.

B. **Contractual Mortgage** of 31st March 2009 entered under No.156, volume II, Reg.No.1342, case No.220 in the records for 2009 kept by Obreten Obretenov, Notary Public, commissioned under No.109 by the Notary Chamber, which mortgage was duly recorded in the Registry Office at the Regional Court of Balchik under No.1227 on Ist April 2009 as Deed No.71 [an obvious typographical error, it should read "41" – *translator's note*] volume I, in favour of **FIB** under **BLA No.39 KP-AA-2510** signed with **PIDB2**;

C. **Contractual Mortgage** of 31st March 2009 entered under No.155, volume II, Reg.No.1341, case No.219 in the records for 2009 kept by Obreten Obretenov, Notary Public, commissioned under No.109 by the Notary Chamber, which mortgage was recorded in the Registry Office at the Regional Court of Balchik under No.1226 of 31st March 2009 as Deed No.40, volume I, in favour of **FIB** under **BLA 014LD-L-000002** signed with **PIDB2**;

D. **Contractual Mortgage** of 19th February entered under No.85, volume I, Reg.No.446, case No.71 in the records for 2010 kept by Obreten Obretenov, Notary Public, commissioned under No.109 by the Notary Chamber, which mortgage was recorded in the Registry Office at the Regional Court of Balchik under No.247 of 19th February 2010 as Deed No.5, volume I, case file No.111/2010 in favour of **FIB** under **BLA 014LD-L-000006** signed with **Asset Management EAD**;

E. For the sake of precision, a special note must be made here about the mortgage rights held by **UniCredit Bulbank AD**, acting as a creditor under Art.722 Para 1 CA and arising from a **contractual mortgage of 16th July 2010** executed in a notary deed form No.62, volume I, reg.No.891 in case 51/2010 in the records kept by Georgi Cholakov, Notary Public (commissioned under No.623 by the Notary Chamber to practice within the area of jurisdiction of the Balchik Regional Court)




and duly recorded in the Registry Office at the Regional Court of Balchik under No.1339 of 16th July 2010 as Deed No.61, vol. I, case No. 659/2010, in favour of **UniCredit Bulbank AD** under *a bank loan agreement No.002 of 25th September 2006* and *a working capital loan agreement No.274/05205/011288 of 2nd September 2008* as signed with **All Seas Bulgaria EOOD**.

It should further be noted for the sake of completeness that **none** of the rulings or judgments made so far, including the court determination on the challenged VCA's Ruling No.735 of 14th November 2013 in interlocutory action No.754/2013, **contain any court order directing the trustee to immediately proceed with applying Art.717n CA to the claims asserted by FIB before the legal dispute over the validity of FIB rights and claims allegedly arising from BLAs with Nos. 39 KP-AA-2510, 014LD-L-000002 and 014LD-L-000006**, respectively.

Under the conditions of a pending dispute over matters raised under and relying on the provisions of - the *Civil Law Convention on Corruption* of the Council of Europe, the *UN Convention against Corruption*, *Directive 2005/60/EC* of the European Parliament and of the Council of 26 October 2005 on the prevention of the use of the financial system for the purpose of money laundering and terrorist financing and the Council *Framework Decision 2003/568/JHA* on combating corruption in the private sector – the Trustee is obligated to apply Art.717n CA and act accordingly **only** in furtherance of a court *judgment with prejudice* resolving the dispute over the validity of the Bank's payment claims and cause of action. Trustee has no power to do so.

Date: 20th June 2014　　　　　　　　TRUSTEE IN BANKRUPTCY:

　　　　　　　　　　　　　　　　　　*Signed*
　　　　　　　　　　　　　　　　　　Ganka Kolyovska

　　　　　　　　　　　　　　　　　　*Rectangular stamped seal of the Trustee reading:* "Ganka Kolyovska, bankruptcy trustee in case 730/2013 in the Shoumen District Court"

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Report by Ganka Kolyovska, trustee in bankruptcy, dated 20 June 2014. This translation has 14 pages.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*



## "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД

в несъстоятелност, т.д. № 730 по описа за 2013 година на ШОС

**СИНДИК**
Ганка КОЛЬОВСКА
София, кв."Мусагеница"
Бул. „Кл. Охридски" 1а, оф.2
Тел. 02 870 05 02, 0888391174;
e-mail: syndic@abv.bg

До:
ШУМЕНСКИ ОКРЪЖЕН СЪД

по т.д. 730/2013 на ШОС

# Д О К Л А Д

от Ганка Янева Кольовска – постоянен синдик

**ОТНОСНО: Изпълнение на Определение №241 от 06.06.2014 г.**

**УВАЖАЕМИ ГОСПОДИН ПРЕДСЕДАТЕЛ,**

Представям настоящия доклад в изпълнение на Определение №241 от 06.06.2014 година за целите на свиканото събрание на кредиторите за 30.06.2014 година от 14.00 часа.

## ПЪРВО: ЗАПАЗВАНЕ И ОХРАНА НА МАСАТА НА НЕСЪСТОЯТЕЛНОСТТА НА „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД

В производството по несъстоятелност водено срещу „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД , т.д.№ 14/2011 година , първоначално образувано пред ТОС, преобразувано като т.д.№730/2013 година по описа на ШОС, са произнесени въпросите по чл.711 ТЗ, с постановеното за целта Решение №122/15.06.2012 година, в това число и пристъпване към осребряване на имуществото включено в масата на несъстоятелността.

Масата на несъстоятелността включва следните активи:

- 1043 дка , недвижим имот , находящ се в гр. Балчик - осребрени към настоящия момент по реда на чл. 717 от ТЗ, отписани от активите на дружеството и заведени на тяхно място активи-парични средства в размер на 97 500 000,00 лв /деветдесет и седем милиона и петстотин хиляди лева/.
- акции - 71 броя, съставляващи 99 % от капитала на „Ню Ко-Пропърти Инвестмънт" АД;
- парично вземане, придобито по силата на договор за цесия сключен с Инвестбанк АД на дата 01.07.2010 год , при условията на чл.25 ЗЗД, с длъжник "Си Джи Еф – акционерна общност" АД , произтичащо от договор за банков кредит № 159/ 29.10.2009 год.

1

С определение № 248/19.11.2012 година , произнесено по т.д.№14/2011 година, съдът по несъстоятелността е разреши извършването на продажба на активите по реда на 717 и следващите от ТЗ, съобразено с оценките за всеки един от тези активи и решението на събранието на кредиторите , прието по чл.677, ал.1, т.8 ТЗ.

В съответствие с горното и изпълнявайки правомощията си по закон, Синдика е пристъпил към продажба на активите от масата на несъстоятелността на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност, като към настоящият момент се регистрира осъществена продажба на 1043 дека земя, находяща се в гр.Балчик. Продажбата е реализирана при цена 97 500 000 лева, които средства са платени от купувача "Първа Инвестиционна Банка" АД и понастоящем се намират в съхрание по особената сметка на Синдика, открита в "Корпоративна Търговска Банка" АД.

По отношение на други два активи – посочено акционерно участие и паричното вземане, не е регистриран интерес от покупко-продажба. С оглед на преминал достатъчен период от време, Синдикът докладва необходимостта от вземане на решение от събранието на кредиторите за извършване на нова оценка на активите или актуализация на съществуващата и съответно на това продължаване на процедурата за тяхното осребряване.

Основните въпроси и проблеми, пред които се изправя запазването на масата на несъстоятелността в производството по т.д.№730/2013 година, се свеждат до :

А. Спирането на изпълнителното производство водено от ЧСИ Захари Димитров, рег.№808, КЧСИ, съдебен район – ВОС, предмет на изпълнително дело № 20118080400251, образувано по искане на "Инвесбанк" АД

В. Преодоляване на положението на спорност по предявените с правна основание чл.717н претенции от "Първа Инвестиционна Банка" АД и "Сийк Фаундейшън"ЛЛС, дружество с ограничена отговорност регистрирано съобразно законите на щат Мисури, САЩ, под номер LCO875133 съгласно регистъра воден от Канцеларията на Секретаря на щата Мисури, със седалище и адрес на управление: 404 Тимбъридж драйв, Сейнт Питърс, Мисури 63376, САЩ.

Настоящият доклад има за цел да представи подробна информация за предприетите от него постъпки и действия по чл.658 ТЗ, ангажирани със запазване на масата на несъстоятелността, както и да очертае в перспектива внасящите проблеми и въпроси, чието решаване е от изключително значение за законносъобразното протичане на производството по несъстоятелност и за защитата на законните интереси представени в т.д.№730/2013 година, съответно на формулираните в чл.607 ТЗ цели.

2

<u>Доклад по проблемите възникнали в резултат на предприетите изпълнителни</u>
<u>действия на инвивидуално принудително изпълнение по изп.дело №</u>
<u>20118080400251, образувано по искане на "Инвесбанк" АД</u>

1. Съгласно последната оценка на паричното вземане, което масата на
несъстоятелността притежава спрямо "Си Джи Еф – акционерна общност" АД,
определената стойност при която да продължи процедурата по неговата
продажба възлиза на 5 706 160 лева , при първоначална оценка 7 132 700,00
лева.

2. Синдикът е сезиран с нарочно уведомление от кредиторите на "ЕЪР
ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност за необходимостта от
предприемането на постъпки пред ЧСИ Захари Димитров , рег.?808, КЧСИ,
съдебен район – ВОС, за спиране на предприетите по изпълнително дело
№20118080400251 действия за принудително осребряване в полза на
"Инвесбанк" АД на вземането от "Си Джи Еф –акционерна общност" АД
,произтичащо от договор за банков кредит?№159/ 29.10.2009 год.

3. Съответно на разпореждане на съда по несъстоятелността  от дата 03.06.2014
год, Синдика е внесъл по чл.432, т.7 ГПК във връзка с чл.638 и чл.637, вр.711 и
чл.715 ТЗ, искане в канцеларията на ЧСИ Захари Димитров , за спиране на
изпълнително дело №20118080400251, водено спрямо актив от масата на
несъстоятелността   на   "ЕЪР   ПРОПЪРТИ   ДЕВЕЛОПМЪНТ"   АД   в
несъстоятелност.

4. До момента липсва каквото и да е произнасяне от страна на ЧСИ Захари
Димитров.

5. По съображения за прецизност на изложението, Синдикът отбелязва, че
предявяването на установителен иск с цел установяване принадлежността на
вземането, което масата на несъстоятелността има спрямо "Си Джи Еф –
акционерна общност" АД, съгласно Определение №255/27.04.2012 год на
Варненски апелативен съд , произнесено по ч.т.д.?№250/2012 год.,  тежестта,
интереса и легитимацията да стори това е възложена на "Инвестбанк" АД .
Апелативният съд, изрично посочва необходимостта от това "Инвестбанка" АД
да предяви иск за оспорване принадлежността на това вземане към масата на
несъстоятелността,   като   предпоставка   и   условие   за   продължаване   на
индивидуалното принудително изпълнение по ГПК, което съгласно чл.638 ТЗ се
спира с откриване на производството по несъстоятелност за "Еър Пропърти
Девелопмънт" АД.

6. В заключение, съдът докладва пред събранието на кредиторите на "ЕЪР
ПРОПЪРТИ   ДЕВЕЛОПМЪНТ"   АД   в   несъстоятелност   и   съда   по
несъстоятелността, необходимостта от вземане на решение за извършване на
нова оценка на вземането от " Си Джи Еф-акционерна общност" АД , както и
перспективата в случай на отказ на ЧСИ Захари Димитров да спре
производството по изпълнително дело №20118080400251, да бъде обжалвано
същото. В случай на необходимост от обжалване действията на ЧСИ, като

проблем се очертава и повдигнатия спорен въпрос с молбата на кредиторите на "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност, вх.№10053/02.06.2014 год по изп.дело №20118080400251, относно компетенциите , реда , условията и предпоставките , при които следва да се извършват действия за осребряване на това вземане , и дадените по него обезпечения.

## ВТОРО: ДОКЛАД ПО ПРОБЛЕМИТЕ НА ПРИЛОЖЕНИЕТО НА ЧЛ. 717Н ОТ ТЗ.

### I.:Предявени права по чл.717н ТЗ – от Сийк Фаундейшън ЛЛС.

1. Кредитор по чл.717н е и американското дружество "Сийк Фаундейшън" ЛЛС, направило постъпки съответно на Разпореждане № 152 от 18.07.2013год. на ТОС по т.д.№14/2011 година, за изплащане на следните вземания :

а. Вземане за 3 500 000 / три милиона и петстотин хиляди/ евро с левова равностойност 7 182 278, 94 / седем лилиона сто осемдесет и две хиля двеста седемдесет и осем лева и деветдесет и четири стотинки/ лева, присъдено с издаден на 28.02.2013г. изпълнителен лист по ч.търг.д. №163/2013г. по описа на ТРС.

б. Вземане за 136 908, 10 / сто тредесет и шест хиляди деветстотин и осем лева и десет стотинки/ лев, присъдено за направени съдебни разноски под формата на платена държавна такса за издаване на изпълнителен лист по ч.търг.д.№163/2013г. по описа на ТРС.

Предявеното искане за плащане се основава на:

2. Договорна ипотека от дата 08.07.2008г., №174, том VI, рег.№ 4189, дело №798 по описа за 2008г. на Нотариус Обретен Обретенов, рег.№109 на Нотариалната камара, съдебен район- Бачишки районен съд, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег.№2554 от 08.07.2008г., Акт №184, том I, дело №1407/2008г.;

3. Вписан договор за цесия, сключен между "Корпоративна Търговско Банка" АД и "Финанс Инженеринг" АД, по партидата на договорната ипотека от 08.07.2008г., с правно основание на вписването – чл.171 от ЗЗД, регистрационен номер на вписването 2861 от 21.09.2012г., Акт № 106, том I, имотна партида 9684, съгласно актовите книги водени от Служба"Вписвания" при Районен съд – гр.Балчик; Вписан договор за цесия сключен между "Финанс Инженеринг" АД и "сийк Фаундейшън" ЛЛС, по партидата на договорната ипотека от 08.07.2008г., с правно основание на вписването – чл.171 от ЗЗД, регистрационен номер на вписването 2862 от 21.09.2012г., Акт № 107, том I, имотна партида № 9694, съгласно актовите книги водени от "Служба "Вписвания" при Районен съд – гр.Балчик;

4. Заверен препис от изпълнителен лист издаден на 28.02.2013г. по ч.търг.д.№163/2013г., входящ регистрационен номер 1386 от 01.03.2013г. по изпълнително дело №20137690400122/2013г. по описа на ЧСИ Анелия Загорова,

4

рег.№ 719 на КЧСИ, район на действие – Окръжен съд,гр.Търговище, нотариално удостоверен от нотариус Петя Ангелова, регистрационан № 496 на НК, съдебен район – Търговищки районен съд, с номер на заверката 9766 от 10.07.2013г.;

5. Удостоверение изходящ номер 719 издадено на 26.03.2013г. по ч.търг.д.№163/2013г.; Покана за доброволно изпълнение изходящ номер 1764 от 01.03.2013г. по изпълнително дело №20137690400122/2013г. по описа на ЧСИ Анелия Загорова, рег.№ 719 на КЧСИ;

6. Удостоверение изходящ номер 4142 от 10.05.2013г., издадено по по изпълнително дело №20137690400122/2013г. по описа на ЧСИ Анелия Загорова, рег.№ 719 на КЧСИ;

**7. Вземането на "Сийк Фаундейшън " ЛЛС не е спорно** и дружеството е конституирано като заинтересовано лице по дело № С -488/2013 образувано пред Съда на ЕС по искане на ТОС за даване иа преюдициално заключение , предмет на Определение № 179/ 02.09.2013 година .

В молбата на "Сийк Фаундейшън" ЛЛС по чл.717н от ТЗ, е представено и искане по чл.195 от ЗКПО, за удържане на данък при източника на плащането от платеца, изчислен в размер на 718 227, 89 / седемстотин и осемнадесет хиляди двеста двадесет и седем лева и осемдесет и девет стотинки/лева, както и предаване на заверен препис от платежното за удържания данък, за нуждите на "Сийк Фаундейшън"ЛЛС във връзка с деклариране на реализирания приход на територията на Република България по приложението на Спогодбата за избягване на двойното данъчно облагане подписана със САЩ. Представени са:

Декларация - "Форма СПБ-1", образец по чл.6, ал.1, т.1 от Наредба №27 на БНБ, регистрационен номер 4703-1378/22.02.2013г. на БНБ; Съгласие на "Сийк Фаундейшън" ЛЛС по чл.155 във връзка с чл.99 от ЗЗД, във връзка с чл.717н от ТЗ, за встъпване на масата на несъстоятелността в правата на "Сийк Фаундейшън "ЛЛС по изпълнително дело № 20137690400122/2013г. по описа на ЧСИ Анелия Загорова, рег.№ 719 на КЧСИ.

**II.:Предявени права по чл.717н ТЗ – от "Първа Инвестиционна Банка" АД:**

а. **За сумата 3 965 612.50 евро** , въз основа на изпълнителен лист, издаден по чл.418, вр.417, т.2 ГПК , № 4868 от 25.06.2012 , постановен по ч.гр.д. № 8968/2012 г. по описа на ВРС – IX състав, с длъжник "Порт Инвестмънт Девелопмънт – България 2" ЕАД, което парично вземане се претендира въз основа на сключен договор за банков кредит № 014LD-L-000002/02.10.2008 г., и включва : главница – 2 500 000 евро, просрочена наказателна лихва за периода 25.10.2010г.-21.06.2012г. в размер на 1 465 612,50 евро, разноски по заповедното производство – 155 121, 28 лева. По кредита е учредена договорна ипотека № 155, том II, рег.? 1341, дело № 219 по описа за 2009 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег. № 1226 от 31.03.2009 г., Акт № 40, том I, дело № 366/2009 г., вписана за 2 500 000 евро.

5

б. **За сумата от 10 570 936,45 евро**, въз основа на изпълнителен лист, издаден по чл.418, вр.417, т.2 ГПК, № 4886/26.06.2012 г., постановен по ч.гр.д. № 8974/2012 г. по описа на ВРС- XXXIII състав, с длъжник "Асет Мениджмънт" ЕАД, което парично вземане се претендира въз основа на сключен договор за банков кредит № 014LD-L-000006/29.12.2009 г., и включва : 6 950 118, 02 евро – изискуема главница и 3 620 818,43 евро – просрочена наказателна лихва за периода 25.10.2010г. – 21.06.2012г. По кредита е учредена договорна ипотека № 85, том I, рег.№ 446, дело № 71 по описа за 2010 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег. № 247 от 19.02.2010 г., Акт № 5, том I, дело № 111/2010 г., вписана за 8 000 000 евро.

в. **За сумата от 31 724 900 евро**, въз основа на изпълнителен лист, издаден по чл.418, вр.417, т.2 ГПК, № 4932 от 28.06.2012 г., постановен по ч.гр.д. № 8985/2012 г. по описа на ВРС – XVI състав, с длъжник "Порт Инвестмънт Девелопмънт – България 2" ЕАД, което парично вземане се претендира въз основа на сключен договор за банков кредит № 39 КР–АА–2510/22.11.2007 г., и включва : главница 20 000 000 евро; просрочена наказателна лихва за периода 25.10.2010г.-21.06.2012г. в размер на 11 724 900 евро; разноски по заповедното производство – 1 240 970, 22 лева. По кредита е учредена договорна ипотека под № 156, том II, рег.№ 1342, дело № 220, по описа за 2009 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана под вх.рег.№ 1227 от 01.04.2009 г., Акт № 41, том I, дело № 367/2009 г. в Служба по вписванията при Районен съд –гр.Балчик, вписана за 20 000 000 евро.

1. Проблемите, пред които е изправено производството по тези претенциите , въведени с правно основание чл.717н ТЗ, основно се свеждат до следното :

а. Паричните задължения , по които има издадени изпълнителни листи с правно основание чл.417, т.2 и чл.418 ГПК, както се установява от събраните доказателства в производството по т.д.№730/2013 година , пронзтичат от формиран паричен дефицит по посочените кредити в резултат на изплатените по сделки с трети лица средства :

- Изплатени по договор за вътрешнофирмено финансиране сключен между " Ол Сийз Мениджмънт", Република Маршалови острови и "Ол Сийз Пропърти 2" ООД , от дата 23.11.2007 година, 22 970 000 евро, отпуснати по кредит № 39 КР–АА–2510/22.11.2007 год. и 2 500 000 евро, отпуснати по кредит № 014LD-L-000002/02.10.2008 г.

- Изплатени по договор за покупко-продажба на въглища сключен между "Асет Мениджмънт" ЕАД и "Блу Финанс Лимитед", Република Маршалови острови, от дата 22.12.2009 год., 7 618 000 евро , отпуснати по кредит № 014LD-L-000006/29.12.2009 г .

б. Липсва каквото и да е съгласие – договорно или на законово основание за ипотечно задължаване с покриването на този паричен дефицит, довел и до

6

натрупване на счетоводния дълг, произнесен по чл.417, т.2 и чл.418 ГПК, и съответно липсва основание за задължаване на масата на несъстоятелността с неговото изплащане.

в. Сделките, посочени в платежно основание на взетите платежни операции в полза на " Ол Сийз Мениджмънт", Република Маршалови острови и на "Блу Финанс Лимитед", Република Маршалови острови, са оспорват като фиктивни и напълно случайни спрямо кредитните и ипотечните правоотношения, въведени за изплащани по чл.717 н ТЗ.

г. Претендираните за изплащане стойности по чл.717н от ТЗ са извън формалните стойности, посочени в учредените и вписани договорни ипотеки, лимитирани съответно ДО :
- 20 000 000 евро, по договор за учредяване на ипотека № 156, том II, рег.№ 1342, дело № 220, по описа за 2009 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана под вх.рег.№ 1227 от 01.04.2009 г., Акт № 41, том I, дело ? 367/2009 г. в Служба по вписванията при Районен съд – гр.Балчик, вписана за 20 000 000 евро
- 2 500 000 евро, по договор за учредяване на ипотека № 155, том II, рег.№ 1341, дело № 219 по описа за 2009 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег. № 1226 от 31.03.2009 г., Акт № 40, том I, дело № 366/2009 г.
- 8 000 000 евро, по договор за учредяване на ипотека № 85, том I, рег.№ 446, дело № 71 по описа за 2010 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег. № 247 от 19.02.2010 г., Акт № 5, том I, дело № 111/2010 г.

д. Лишаването от възможност на масата на несъстоятелността, в случай на плащане по въпросните ипотеки, ако бъде потвърдено по съдебен ред със силата на присъдено нещо валидността на тези ипотеки и поетите с тях гаранционни задължения, да встъпи в правата по учредените залози по реда на ЗОЗ върху средствата по сметките на "Порт Инвестмънт Девелопмънт – България 2" ЕАД , за обезпечаване изпълнението на задълженията на кредитополучателя по кредити № 39 КР–АА-2510/22.11.2007 г и № 014LD-L-000002/02.10.2008 г., по причина прехвърлянето на тези средства по сметките на " Ол Сийз Мениджмънт", Република Маршалови острови и на "Блу Финанс Лимитед", Република Маршалови острови.

е. Изпълнителните листи по кредити № 39 КР–АА-2510/22.11.2007 г и № 014LD-L-000002/02.10.2008 г., са издадени по задължения , които са счетоводно изчислени и въведени в основание по чл.417, т.2 и чл.418, съгласно анекси № 4 /15.12.2009 год. и анекс №2/15.12.2009 год., за които липсва вписване на съгласие за поемане на ипотечно задължение.

2. За защита масата на несъстоятелността, в съответствие с чл.658, тал.1, т.7 и чл.660, ал.2 ТЗ, е упражнена следната искова защита:

а. Оспорване невалидността на претендираното парично задължение на масата на несъстоятелността за плащане на паричното задължение предявено по реда

на чл.717н ТЗ, с произход на дълга кредит № 39 КР–АА-2510/22.11.2007 г. Първоначално искът е приет за разглеждане по т.д.№135/2013 год. по описа на ТОС, като на основание проведени отводи на съдебния състав на ТОС, делото е прехвърлено под номер 54/2013 год. по описа на ШОС. Понастоящем процедурата е висяща на етап размяна на книжата.

б. Оспорване невалидността на претендираното парично задължение на масата на несъстоятелността за плащане на паричното задължение предявено по реда на чл.717н ТЗ, с произход на дълга кредит № 014LD-L-000002/02.10.2008 г. Първоначално искът е приет за разглеждане по т.д.№134/2013 год. По причина отказ да бъде освободено исковото производство от задължение за предварително плащане на държавна такса, каквото искане е представено с правно основание чл.620, ал.5 ТЗ, производството по иска е прекратено, съответно потвърдено от Варненски апелативен съд , чието определение е влязло в законна сила с отказа от допускане на касационната жалба до разглеждане от страна на ВКС. С искова молба , входящ № 2997/02.06.2014 год., защитата на масата на несъстоятелността е отново отнесена пред съд, този път пред Шуменски окръжен съд, с висящност на поставените въпроси във връзка с режима на държавната такса.

в. Оспорване невалидността на претендираното парично задължение на масата на несъстоятелността за плащане на паричното задължение предявено по реда на чл.717н ТЗ, с произход на дълга кредит № 014LD-L-000006/29.12.2009 г. Първоначално искът е приет за разглеждане по т.д.№133/2013 год. По причина отказ да бъде освободено исковото производство от задължение за предварително плащане на държавна такса, каквото искане е представено с правно основание чл.620, ал.5 ТЗ, производството по иска е прекратено, съответно потвърдено от Варненски апелативен съд. Понастоящем спорът по държавните такси е отнесен с касационна жалба пред ВКС и е във висящност на фаза преценка по допустимост.

г. С цел прецизност на изложението е необходимо да се отбележи, че наред с исканията по чл.620, ал.5 , пред съда по несъстоятелността в производството по т.д.№14/2011 год, са отнесени при условията на евентуалност и искания по чл.620, ал.3 ТЗ, които и понастоящем остават непроизнесени. Това с оглед развитието на исковия процес по дело 54/2013 по описа на ШОС/ първоначален номер 135/2013 на ТОС/, както и на нововъведения иск вх. № 2997/02.06.2014 год. пред ШОС, би било от значение с оглед развитието на касационното обжалване по т.д.№ 133/2013 год. по описа на ТОС.

3. Проблеми от процесуално естество по упражнената искова защита на масата на несъстоятелността в производството по чл.717н ТЗ:

а. В духа на развитите оспорвания по валидността на претендираната от "Първа Инвестиционна Банка" АД задълженост на масата на несъстоятелността с изплащане на предявените парични задължения по кредити - № 39 КР–АА-2510/22.11.2007 г, № 014LD-L-000002/02.10.2008 г и № 014LD-L-000006/29.12.2009 г, съдът по несъстоятелността с Определението ? 179 /02.09.2013 година, на основание чл.267 Договора за функциониране на ЕС,

8

вр.чл.628 ГПК е повдигнал преюдициално питане пред Съда на ЕС , по повод на което е образувано преюдициално производство под № С-488/2013, понастоящем в етап даден становища от заинтересованите лица.

б. На основание чл.631 ГПК, съдът по несъстоятелността е постановил спиране на главното производството с предмет искането на "Първа Инвестиционна Банка" АД предявено по чл.717н ТЗ, до приключване на преюдициалното производство ,дело № С -488/2013 год.

в. Апелативен съд – гр.Варна ,с Определение № 735/14.11.2013 год , постановено по ч.т.д.№ 754/2013 год, постановява обезсилване на определение № 179/02.09.2013 год., в частта произнасяща спиране по чл.631 ГПК на главното производство по чл.717н ТЗ. Определението на Апелативен съд –Варна е обжалвано пред ВКС, като касационната жалба не е допусната до касационно разглеждане. С искова молба вх. № 5705/09.06.2014 год. по описа на Търговски районен съд, е повдигнат от кредиторите в ред 8 , чл.722 ТЗ, на "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност, исков спор за нищожност на Определение № 735/14.11.2013 год , постановено по ч.т.д.№ 754/2013 год, по реда на чл.270, ал.2 ГПК.

г. Възражение по приложението на чл.717н ТЗ е депозирано от кредиторите по чл.722 и от несъстоятелния търговец , по т.д.№ 730/2013 год. , на дата 10.01.2014 година, с правно основание – невалидност на претендираната спрямо масата на несъстоятелността парична задълженост, от страна на "Първа Инвестиционна Банка" АД и "Торийр Пътнърс Лимитед", Британски Виржински острови, последното дружество легитимиращо права по частична цесия от "Първа Инвестиционна Банка" АД. Възраженията за невалидност на задължеността на масата на несъстоятелността с плащането на задълженията по кредити - № 39 КР–АА-2510/22.11.2007 г, № 014LD-L-000002/02.10.2008 г и № 014LD-L-000006/29.12.2009 г., е въведена съгласно разпоредбите на Конвенцията на ООН за борба срещу корупцията, на Директива 2005/60/ЕО на Европейския парламент и Съвета на Европа от 26.10.2005 година относно мерките за предотвратяване използването на финансовата система за целите на изпиране на пари и финансирането на тероризъм и на Рамково Решение 2003/568 ПВР на Съвета на ЕС от 22.07.2003 година отиосно корупцията в частния сектор.

д. Въз основа на молба на "Асет Мениджмънт" ЕАД , регистрирана под №1349/10.03.2014 год. по т.д.№730/2013 год., е въведено и уведомление на производството по несъстоятелност за предявените въззивни жалби и искове за нищожност на :
- Решение № 1221/ 30.12.2013 год. , произнесено от ВОС по т.д.№ 360/2013 г., с предмет - искова молба по чл.422 ГПК, по вземането произтичащо от договор за кредит № 014LD-L-000002/02.10.2008 г.
- Решение № 1224/ 30.12.2013 год. , произнесено от ВОС по т.д.№ 490/2013 г., с предмет – искова молба по чл.422 ГПК, по вземането произтичащо от договор за кредит № 014LD-L-000006/29.12.2009 г.
- Решение № 2/ 11.02.2014 год. , произнесено от ТОС по т.д.? 69/2013 г., с предмет – искова молба по чл.422 ГПК, по вземането произтичащо от договор за кредит № 39 КР–АА-2510/22.11.2007 г.

9

Основанията, с които са оспорени тези съдебни актове и самите кредитни задължения, според документите представени по дело №730/2013 год., заявяват несъвместимост и противоречие с обществения ред на ЕС, определен с нормите на Гражданската конвенция на Съвета на Европа за корупцията, Конвенцията на ООН срещу корупцията , Директива 2005/60/ЕО на Европейския парламент и Съвета на Европа от 26.10.2005 година относно мерките за предотвратяване използването на финансовата система за целите на изпиране на пари и финансирането на тероризъм и на Рамково Решение 2003/568 ПВР на Съвета иа ЕС от 22.07.2003 година относно корупцията в частния сектор.

е. С молба вх.№ 3003 / 02.06.2014 год., кредиторите на "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност , са поставн въпроси свързани с приложенето на чл.717н ТЗ, в хипотезата на спор за валидност на ипотечните и кредитни задълження претендиранн от "Първа Инвестиционна Банка" АД, с правно основание разпоредбите на Гражданската конвенция на Съвета на Европа за корупцията. В молбата се поставят и въпроси относно правомощията на Синдика по приложението на чл.717н ТЗ, в условията на висящ спор относно легитимацията на "Първа Инвестиционна Банка" АД като ипотекарен кредитор и в условията на висящо преюдициално производство пред Съда на ЕС. Правната значимост на тези правни въпроси, определена с оглед законосъобразното протичане и приключване на производството по несъстоятелността, е преценена положително с оглед и на висящото производство по преюдициално дело ?С -488/2013 пред Съда на ЕС.

4. Проблемн по същество на спорните въпроси:

а. Синдикът е задължен с разпоредбите на чл.658 , ал.1 и ал.2, във връзка с чл.660 и чл.663 ТЗ, са положи дължимата грижа за да охрани интересите на кредиторите и на несъстоятелния търговец, по начин съответстващ най- пълно на техните права посочени в чл.722 и чл.732 ТЗ, съобразено с целите на производството по несъстоятелност, формулирани в нормата на чл.607 ТЗ.

б. Съответно на тези си правомощия, Синдикът е поискал по установения за целта от закона ред , съдът да произнесе правния спор относно валидността на претендираната от "Първа Инвестиционна Банка" АД задълженост по чл.717н ТЗ с изплащането на спорните задължения, иачислени и претендирани от банката по чл.417, т.2 и чл.418 от ГПК.

в. Висящността на исковите производства, имащи за предмет  отричането на легитимацията на претендираните от "Първа Инвестиционна Банка" АД права на ипотекарен кредитор спрямо масата на несъстоятелността, по паричните задължения водени от банката по кредити  № 39 КР–АА-2510/22.11.2007 г, № 014LD-L-000002/02.10.2008 г и № 014LD-L-000006/29.12.2009 г., въз основа на претендираната невалидност съгласно посочените разпоредбн на ЕС, задължават приложението иа чл.717н ТЗ с произнасянето на тези спорни въпроси от съда със силата на пресъдено нещо. По аргумент от разпоредбите на чл.658 , чл.660 и чл.663, вр.691 от ТЗ и чл.298 ГПК, предварителното и незабавно приложение на чл.717н ТЗ, преди произнасянето с влязло в законна сила съдебно решение по спорните въпросите относно валидността на

ипотечните правоотношения , на кредитните задължения и съответната по тях легитимация на "Първа Инвестиционна Банка" АД, е извън правомощията на синдика.

## ТРЕТО: ПОРЕДНОСТ НА ИПОТЕЧНИТЕ ПРАВА, ПРЕДЯВЕНИ ПО ЧЛ.717Н:

А. Договорна ипотека учредена на 08.07.2008г., №174, том VI, рег.№ 4189, дело №798 по описа за 2008г. на Нотариус Обретен Обретенов, рег.№109 на Нотариалната камара, съдебен район- Бачишки районен съд, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег.№2554 от 08.07.2008г., Акт №184, том I, дело №1407/2008г., под вх.рег.№2554 от 08.07.2008г., Акт №184, том I, дело №1407/2008г., в полза на Корпоративна Търговска Банка АД по договор за кредит от 08.07.2008г. сключен с "Проджект Кампани Девелопмънт" АД, ЕИК 148117377, с последно вписване на правата придобити от Сийк Фанудейшън ЛЛС по силата на договор за цесия.

Б. Договорна ипотека учредена на 31.03.2009г., нотариален акт № 156, том II, рег.№1342, дело №220/2009 г. на нотариус Обретен Обретенов, рег.№109, вписаня в Службата по вписванията в Балчик като акт №71, том I, рег.№1227/01.04.2009г. , в полза на Първа Инвестиционна Банка АД по договор за кредит № 39КР–АА-2510/22.11.2007 г. , сключен с "Порт Инвестмънт Девелопмънт – България 2" ЕАД

В. Договорна ипотека учредена на 31.03.2009г., нотариален акт № 155, том II, рег.№1341, дело №219/2009 г. на нотариус Обретен Обретенов, рег.№109, вписана в Службата по вписванията в Балчик като акт №40, том I, рег.№1226/31.03.2009 г., в полза на Първа Инвестиционна Банка АД по договор за кредит № 014LD-L-000002/02.10.2008г., сключен с "Порт Инвестмънт Девелопмънт – България 2" ЕАД;

Г. Договорна ипотека учредена на 19.02.2009г., нотариален акт № 85, том I, рег.№ 446, дело № 71 по описа за 2010 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег. № 247 от 19.02.2010 г., Акт № 5, том I, дело № 111/2010 г., в полза на Първа Инвестиционна Банка АД по договор за кредит № 014LD-L-000006/29.12.2009, сключен с «Асет Мениджмънт» ЕАД

Д. С цел прецизност на изложениието , следва да се отбележат и ипотечните права на «УниКредит Булбанк» АД, кредитор по чл.722, т.1 ТЗ, основани на договорна ипотека от 16.07.2010г, нотариален акт № 62 , том I, рег. 891, дело № 51/2010г., на нотариус Георги Чолаков, вписан в Регистъра на нотариалната камара под № 623, с район на действие Районен съд – гр. Балчик, вписана вписан в Службата по Вписвания гр. Балчик – Акт № 61, том I, дело № 659/2010г., вх. регистър № 1339 от 16.07.2010г., учредена в полза на «УниКредит Булбанк» АД по *договор за кредит № 002/25 септември 2006 г. и договор за стандартен кредит за оборотни средства № 274/05205/011288 от 02 септември 2008 г. , сключени с "Ол Сийз България" ЕООД*

С цел прецизност на изложениието , следва да се отбележи и обстоятелството, че нито един съдебен акт до настоящия момент, включително и оспореното Определение № 735/14.11.2013 год, постановено от Варненски апелативен

съд по ч.т.д.№ 754/2013 год, не съдържа произнасяне, което да задължава синдика с предварително и незабавно приложение на чл.717н ТЗ, по искането на "Първа Инвестиционна Банка" АД , преди приключване на съдебните спорове относно валидността на претендираната от масата на несъстоятелността задълженост с изплащането на задълженията по № 39 КР–АА-2510/22.11.2007 г, № 014LD-L-000002/02.10.2008 г н № 014LD-L-000006/29.12.2009 г.

Наличието на висящ правен спор, ангажиран с произнасяне на въпросите, поставени с въдените основания по Гражданската конвенция на Съвета на Европа за корупцията, Конвенцията на ООН срещу корупцията , Директива 2005/60/ЕО на Европейския парламент и Съвета на Европа от 26.10.2005 година относно мерките за предотвратяване използването на финансовата система за целите на изпиране на пари и финансирането на тероризъм и на Рамково Решение 2003/568 ПВР на Съвета на ЕС от 22.07.2003 година относно корупцията в частния сектор, задължава синдика с изпълнение по чл.717н ТЗ, единствено и само в хипотезата на съдебен акт, произнасящ със силата на присъдено нещо – спорните въпроси по валидността на заявените от "Първа Инвестиционна Банка" АД платежни основания. Синдикът не притежава компетенции в тази насока.

20.06.2014 г.                          Синдик:
Гр. София                                        Ганка КОЛЬОВСКА

Ганка Кольовска
синдик
по гр. ...

# EXHIBIT 29

Synopsys of Case-pertinent Preliminary Rulings of
The Court of Justice of the European Union

# International Jurisdiction in trans-border insolvency matters involving the so-called 'connected claims' according to the European Court of Justice Case-law under Council Regulation (EC) No 1346/2000 of 29 May 2000 on insolvency proceedings.

## A Review

### By Zahari Tomov, Attorney at Law

Admitted to the Varna Bar and having law office at

Varna, 30 Beli Lilii St., 3rd floor, apr.13, and email: zahari.tomov@gmail.com,

Acting as the Special Bulgarian Counsel for the Trustee for Ayr Logistics Limited, Inc.

*In re:* **Case No.14-34940-bjh-7, Bankruptcy of Ayr Logistics Limited, Inc.** as represented by Trustee Jeffrey H. Mims at the U.S. Bankruptcy Court for the Northern District of Texas, U.S.A.

*In re:* **Case No. 187/2018, Bankruptcy of Ayr Property Development**, AD as represented by Trustee Ganka Kolyovska, in the docket of the Varna Appeal Court, Republic of Bulgaria, a court hearing scheduled for May 2, 2018 at 2.30 p.m. in appellate case No.187/2018.

---

## Case C-328/12:

### OPINION OF ADVOCATE GENERAL SHARPSTON
### DELIVERED ON 10 SEPTEMBER 2013

§ 27 - «To interpret the Regulation as applying only in circumstances where there is a cross-border element involving at least two EU Member States would lead to significant uncertainty and would frustrate the effectiveness and efficiency of proceedings» or of any proceeding conducted within the EU, for that matter."

§ 24 – "As set out in the Recitals the objectives of the Regulation that can be derived therefrom may not be construed in a fashion restricting the cross-border element to relations between two EU Member States only."

§§ 29,31,46 – "Once an insolvency proceeding is opened within the Community the court entertaining it may not refuse to apply one or another of the rules set in the EU law on account of the fact that the second insolvency proceeding with which the first one is connected has been opened in a non-EU member State."

1

JUDGMENT OF THE COURT (FIRST CHAMBER)
16 JANUARY 2014

§ 20 – «With regard to the question which arises, when making this determination, of whether, in order for the Regulation to apply, there must in any event be cross-border elements in the sense that only situations involving connecting factors with two or several Member States fall within the Regulation's scope, it is to be observed that a general and absolute condition of this kind does not result from the wording of the Regulation's provisions».

§ 25 – «... insolvency proceedings falling within the Regulation's field of application 'have universal scope and aim at encompassing all the debtor's assets'. The latter objectives may encompass not solely relations between Member States but, by their nature and in accordance with their wording, any cross-border situation.»

§ 28 – "...in order to determine which court has jurisdiction to open insolvency proceedings, the centre of the debtor's main interests must be determined at the time when the request to open insolvency proceedings has been lodged.»

§ 33 – "... promotion of foresee ability as regards bankruptcy and liquidation jurisdiction and, therefore, of legal certainty..." are among the main objectives of the Regulation that the court that opened an insolvency proceeding in a EU Member State must pursue."

§ 35 – "In fact, the presumption is that "The criterion, established by the Regulation, for determining the court which has jurisdiction to decide that action, namely the criterion of the centre of the debtor's main interests, is normally foreseeable for the defendant, who may take it into account at the time when he participates, with the debtor, in an act liable to be set aside in insolvency proceedings"[1].

*****

Case C-396/09

OPINION OF ADVOCATE GENERAL KOKOTT
DELIVERED ON 10 MARCH 2011

---

[1] All decisions as to what steps need to be taken and what transactions concluded with respect to the Silver Beach Project, including arrangements for the payment claims asserted as investment in the Project, were made by Ayr in the USA. From both factual and legal perspectives could have reasonably foreseen the consequences that might ensue from its unauthorized acts of disposal of the money to the detriment of Ayr, i.e. that the Bank should have expected, with a higher degree of probability, to be haled into a U.S. court, which - according to the EU Regulation on cross-border bankruptcy – is the court having jurisdiction over Ayr Trustee's individual compensation claims.

§ 40 – "…'the concept of the centre of main interests is peculiar to the Regulation. Therefore, it has an autonomous meaning and must therefore be interpreted in a uniform way, independently of national legislation."

§ 53 – "…by using the concept of the centre of main interests, the regulation aims to base jurisdiction on the place which is identifiable by its creditors as being the place with which the company objectively demonstrates the closest links. If the registered office of the active company constituted a mere letterbox and the centre of its main interests therefore lay in another place, it is not appropriate to nevertheless then base jurisdiction on the registered office after the removal of the company from the register.» [2]

§ 54 – "…even in the case of a company which has been closed down, the presumption in Article 3(1) can still be rebutted if it is proven that prior to closing down, the company did not have the centre of its main interests in the State of the registered office. Then the place of the last centre of its main interests prior to closing down is decisive." [3]

§ 58 – «… the presumption laid down in Article 3 in favour of the registered office can be rebutted only if factors which are both objective and ascertainable by third parties enable it to be established that an actual situation exists which is different from that which locating it at that registered office is deemed to reflect. As a possible example of a rebuttal of the presumption, the Court of Justice cited the case of a letterbox company not carrying out any business in the territory of the Member State in which its registered office is situated.»

§ 62 – «… 'the centre of main interests is taken as meaning a place with which a debtor regularly has very close contacts, in which his manifold commercial interests are concentrated and in which the bulk of his assets is for the most part situated. The creditor is also very familiar with that place'». [4]

---

[2] APD is a "letterbox" – created, fully controlled and managed by Ayr for the Silver Beach Project purposes – a fact acknowledged by the Bulgarian court and by APD Trustee, and by third parties with whom Harris and Ayr negotiate.

[3] Closing of APD's bankruptcy proceeding and APD's removal from the register is not any obstruction at all if Ayr needs to establish: that APD is just a «letterbox company», that it does not meet the criteria for an «establishment» and that its centre of main interests is situated at the place where Ayr's seat is, namely, in the USA, and based on such findings obtain a court determination as to whether or not the Bulgarian court has international jurisdiction and the scope of its authority concerning APD's bankruptcy proceeding on Ayr's bankruptcy claims.

[4] All persons that have filed payment claims against APD's Estate are conducting negotiations with Ayr (by email or by post) on how to settle the debts, thus recognizing Ayr as the centre of main interests of APD. Likewise, the ones that negotiated the design and development of the SB Project, as well as financing thereof, did so with Ayr. Ayr is the dominant factor that even the Balchik Mayor's Office identified and acknowledged as such when they gave their support to Ayr for the SB Project. The persons or entities Ayr conducted such negotiations with come from different countries – USA, Bulgaria, Russia, Canada, Denmark. This alone is indicative of the fact that USA was and is easily identifiable as the centre of main interests

§ 65 – «... in order to establish the centre of commercial interests, a comprehensive overall assessment must be made from the creditors' perspective.»

§ 66 – «...[any] isolated assessment of individual factors is ruled out from the outset. Neither the location of immovable property of the insolvency debtor, nor the location of rented property in relation to which it has concluded lease agreements with another company, nor the existence of a contract between the insolvent company and a banking institution situated in a certain Member State constitute in themselves factors which make it possible to conclusively determine the centre of main interests.»[5]

§ 67 – «...[the Regulation] also refrained from taking assets as a focal point for the purposes of defining the centre of main interests. Therefore merely taking as a basis the location of the substantial assets of the company is ruled out.»

§ 78 - «... '"place of operations" describes a place at which economic activities, whether commercial or industrial or of a professional nature are carried on in the market. [...] economic activity requires human means implies that a minimum level of organisation must exist. A place of operations at which an activity is only occasionally carried on may not be described as an establishment. ... How the activity appears to the outside world is decisive, not the purposes which the debtor pursues with this activity'.»[6]

§ 79 – «...As with the rebuttal of the presumption pursuant to the second sentence of Article 3(1) of the regulation, the existence of assets alone is not in itself sufficient [...]. The referring court must instead examine whether human means and a minimum level of organisation existed there.»[7]

b – «...If a company has, in a Member State other than that in which it has its registered office, immovable property, a lease agreement concluded by the debtor company with another company in respect of [...], and a contract with a banking institution, this can only be sufficient for the company to be regarded

---

where APD is concerned, despite the existing differences in the respective national laws of the countries those persons or entities come from.

[5] The facts of being the owner of a parcel of land in Bulgaria or the holder of certain bank accounts with the Corporate Commercial Bank are irrelevant, because (i) APD is a letterbox company, (ii) the centre of its main interests is in the USA and (iii) it does not meet the Insolvency Regulation criteria for «establishment».

[6] All decisions on transactions or actions to be taken with respect to the Silver Beach Project are made by Ayr in the USA, for it is from there that Ayr controls the economic activities and runs the businesses of the companies belonging to Ayr Group. Indeed, FIB's email letter to Ayr dated October 9, 2009 expressing FIB's desire to reach an agreement with Ayr on Ayr's repurchase of the payment debts allegedly owed to FIB - as purportedly arising from FIB's "investment" in the SB Project, but in reality those "debts" being nothing more than cooked-book ones - makes it clear that the centre of main interests of APD is easily identifiable (i.e. that it is within the USA) and its role is crucial.

[7] APD has no office, no hired employees, does not carry out any activity, has no economic assets and is fully dependant on Ayr's managerial and financial decisions.

as having an 'establishment' within the meaning of Article 3(2) of Regulation No 1346/2000, if these factors individually or as a whole, on the basis of a permanently established organisational structure, are embedded in a place of operations where the debtor carries out a non-transitory economic activity with human means and goods.»

<div align="center">

**JUDGMENT OF THE COURT (FIRST CHAMBER)**
**20 OCTOBER 2011**

</div>

**§ 51** – «The presumption in the second sentence of Article 3(1) of the Regulation may be rebutted, however, …if factors which are both objective and ascertainable by third parties enable it to be established that an actual situation exists which is different from that which locating it at that registered office is deemed to reflect.»

**§ 53** – «… the presence of company assets and the existence of contracts for the financial exploitation of those assets in a Member State other than that in which the registered office is situated cannot be regarded as sufficient factors to rebut the presumption laid down by the European Union legislature unless a comprehensive assessment of all the relevant factors makes it possible to establish, in a manner that is ascertainable by third parties, that the company's actual centre of management and supervision and of the management of its interests is located in that other Member State.»

**§ 55** – «… It must be inferred from this that, in principle, it is the location of the debtor's main centre of interests at the date on which the request to open insolvency proceedings was lodged that is relevant for the purpose of determining the court having jurisdiction.»[8]

**§ 59** – "The presumption that a company's centre of main interests is the place of its registered office may be rebutted by a comprehensive assessment of all objective and complex factors that makes it possible to establish, in a manner that is ascertainable by third parties, that the company's actual centre of management and supervision and of the management of its interests is located elsewhere in a State different from the State where its registered office is located."

**§ 64** - "The term 'establishment' within the meaning of Article 3(2) of the Regulation must be interpreted as requiring the presence of a structure consisting of a minimum level of organisation and a degree of stability necessary for the purpose of pursuing an economic activity. The presence alone of immovable assets (in this case) in isolation or bank accounts does not, in principle, meet that definition."

---

[8] As early as the time when Judgment No.63 was entered the VCA acknowledged that fact that as of the time of opening the insolvency proceeding against APD its centre of main interests – APD being Ayr's investment vehicle – was located at the place where Ayr acting in USA.

***** 

## Case C-191/10

### JUDGMENT OF THE COURT (FIRST CHAMBER)
### 15 DECEMBER 2011

§ 18 - «... an establishment within the meaning of the case-law of the Court [means] a structure with a minimum level of organisation and a degree of stability for the purpose of pursuing an economic activity»

§ 25 – «... in the system established by the Regulation for determining the competence of the Member States, which is based on the centre of the debtor's main interests, each debtor constituting a distinct legal entity is subject to its own court jurisdiction ...»

§ 29 – «... a court of a Member State that has opened main insolvency proceedings against a company, on the view that the centre of the debtor's main interests is situated in the territory of that Member State, can, under a rule of its national law, join to those proceedings a second company whose registered office is in another Member State only if it is established that the centre of that second company's main interests is situated in the first Member State. ...»[9]

§ 31 – «... 'the "centre of main interests" should correspond to the place where the debtor conducts the administration of his interests on a regular basis and [which] is therefore ascertainable by third parties»[10]

§ 32 – It is «... [the European Union] legislature's intention to attach greater importance to the place in which the company has its central administration as the criterion for jurisdiction...».

§ 34 – It is only «...where the bodies responsible for its management and supervision are in the same place as its registered office and the management decisions of the company are taken, in a manner that is ascertainable by third parties» that «the presumption in the second sentence of Article 3(1) of the Regulation is wholly applicable. »

§ 35 – «... In that event, the simple presumption laid down by the European Union legislature in favour of the registered office of that company can be rebutted if factors which are both objective and ascertainable by third parties enable it to

---

[9] Ayr's bankruptcy enjoys the right and is entitled under the Insolvency Regulation to file individual claims for compensation against those third parties that have inflicted a damages to Ayr's creditors.

[10] APD Trustee, the Bulgarian Court and all persons that had negotiations with Ayr regarding their filed payment claims were well aware and knew that APD was a letterbox, a shell company that Ayr created, managed and supervised from the place of Ayr in the USA.

be established that an actual situation exists which is different from that which locating it at that registered office is deemed to reflect.»

§ 38 – «… intermixing of property [of two insolvency proceedings having cross-border aspects] does not necessarily imply a single centre of interests. Indeed, it cannot be excluded that such intermixing may be organised from two management-and-supervision centres situated in two different Member States.»

§ 39 - «… the mere finding that the property of those companies has been intermixed is not sufficient to establish that the centre of the main interests of the company concerned by the action is also situated …» in the State where its registered office address is. An overall assessment of all the relevant factors that allows it to be established, in a manner ascertainable by third parties, where the actual centre of management and supervision of the company is.

*****

## Case C- 557/13

### JUDGMENT OF THE COURT (FIRST CHAMBER)
### 16 APRIL 2015

§§ 40, 41, 42, 43 – Accordingly, in order to set aside the application of Art.20 of the Regulation, one must first establish – under the conditions for exceptions as set in Art.13 – that a right in rem falling within Art.5 was exercised, and that in view of ensuring legal certainty and upon assessment of all pertinent aspects of the case, it might be reasonably expected for such exercised right in rem, despite being detrimental to the creditors, to stand, and that it will not and may not be avoided under the laws appicable to such right.[11]

*****

## Case C-310/14

### JUDGMENT OF THE COURT (SIXTH CHAMBER)
### 15 OCTOBER 2015

---

[11] First Investment Bank failed to meet the requirements of Art.13 of the Insolvency Regulation, thus failing to establish its right to retain the money it took away to the detriment of Ayr at a time that occurred after October 10, 2014. Moreover said actions were neither based nor made in exercise of the rights, which FIB alleged to have had under the mortgage contracts, because such actions were not supported by any act of the Court delivered in the bankruptcy proceeding for APD. First Investment Bank's actions are in violation of the UN Convention against corruption and applicable US law against money laundering, financial fraud, corruption.

**§§ 20÷41** – Art.13 of the Insolvency Regulation do not apply in situations where the detrimental acts carried out by third parties thus benefiting from the disposal of the assets of the bankruptcy estate occurred after the opening of the insolvency proceeding against the debtor.

<p style="text-align:center">*****</p>

## Case C-54/16

### OPINION OF ADVOCATE GENERAL

#### DELIVERED ON 2 MARCH 2017

**§ 38** – «The purpose of Article 13 of Regulation 1346/2000 is to protect the legitimate expectations of the person who benefited from the act detrimental to all the creditors. That provision appears to be based on the assumption that that person has legitimate expectations concerning the stability of the act assessed in the light of the law to which it is subject and cannot be taken unawares by the operation of the *lex fori concursus* as a result of the opening of insolvency proceedings.»

**§§ 43, 44** – «... the party concerned must not only seek to avoid application of the law of the State of the opening of insolvency proceedings but must also 'claim' it» but also that «... the burden of proof that the conditions laid down in Article 13 of Regulation No.1346/2000 have been met lies with the party 'relying on that article.»

**§ 63** – «... Application of the exception laid down in Article 13 of Regulation No 1346/2000 requires procedural activity on the part of the party which benefited from the act detrimental to all the creditors.»[12]

<p style="text-align:center">*****</p>

## Case C-649/13

### OPINION OF ADVOCATE GENERAL MENGOZZI

#### DELIVERED ON 29 JANUARY 2015

**§ 23** - «...the decisive criterion for identifying the area within which an action falls is not the procedural context of that action, but its legal basis. According to that approach, it must be determined whether the right or obligation which forms

---

[12] Without court authorization, First Invest Bank took the matter in its own hands and then acting together with five certain companies – debtors of CCB – and CCB's conservators they used the money available in APD's accounts to discharge the debts of the said companies and to put a veil on their actions the closed the bank accounts. No order or similar instrument of the Court hearing APD's bankruptcy has ever authorised or supported such actions.

<p style="text-align:center">8</p>

the basis of the action has its source in the ordinary rules of civil and commercial law or in derogating rules specific to insolvency proceedings."[13]

§ 31 - «An additional rule on jurisdiction was introduced into the scheme of the regulation by the judgment in Seagon (C-339/07, EU:C:2009:83), in which the Court held that Article 3(1) of the regulation must be interpreted as also conferring international jurisdiction on the Member State within the territory of which insolvency proceedings have been opened to hear and determine actions which derive directly from those proceedings and which are closely connected to them."

§ 33 - Centralisation of international jurisdiction over the claims in the main bankruptcy proceeding and in the secondary bankruptcy proceeding should be determined by and within the actions, which 'derive directly from those proceedings and which are closely connected to them', apart from this principle the main bankruptcy proceeding has no such jurisdiction in respect of actions, which derive directly from those proceedings and which are closely connected to them, and vice versa.

§ 36 –"...[interpreted] the geographical scope of the regulation, extending it beyond solely 'European' cross-border insolvency proceedings and including both those characterised by foreign elements situated both inside and outside the territory of the European Union and purely 'international' proceedings, in which any foreign element is situated outside the European Union."

§ 39 –" [This led to] the establishment in the regulation of two different criteria for determining jurisdiction, namely that based on the centre of the debtor's main interests, which determines the courts having jurisdiction to open main proceedings, and that based on an establishment, which permits the opening of secondary proceedings."

§ 58 –"...any disputes concerning whether certain of the debtor's assets come under one of those sets of proceedings or the other may be brought before either one of those courts. The jurisdiction of those courts to hear and determine such disputes is therefore concurrent."

§ 61 –"An action designed to determine whether one or more elements of the debtor's estate fall within the scope of the main proceedings or the secondary proceedings may be brought either before the court of the Member State where

---

[13] The source of First Investment Bank liabilities in this case is–unlawful interference in third parties' economic relationships, violating US law and causing damages in USA.

the main proceedings have been opened or before that of the Member State where the secondary proceedings have been opened.[14]

§ 72 –"... debtor's participation in the research and development activities of a group of companies and/or which are concerned with exploitation of the results of those activities [...] they should be determined to be situated within the territory of the Member State where the debtor who has contributed to those research and development activities and who has exploited the results thereof to develop its business has its centre of activities."

§ 73 –"...in order to determine whether assets of a debtor fall within the scope of the effects of the secondary proceedings, the court seised must establish whether those assets were situated within the territory of the Member State in which those proceedings have been opened on the date on which the judgment opening them became effective and that the location of those assets must be determined on the basis of the criteria concerning the centre of debtor's main interest and the contribution to such business operations, which resulted in the acquisition of the assets and the use of the results from such operations for debtor's development.[15]

## JUDGMENT OF THE COURT (FIRST CHAMBER)

### 11 JUNE 2015

§ 28 – «... the decisive criterion for identifying the area within which an action falls not the procedural context of that action, but its legal basis. According to that approach, it must be determined whether the right or the obligation which forms the basis of the action has its source in the ordinary rules of civil and commercial law or in derogating rules specific to insolvency proceedings (judgment in *Nickel & Goeldner Spedition*, C-157/13, EU:C:2014:2145, paragraph 27). [16]

*****

## Case C – 339/2007

## JUDGMENT OF THE COURT

### 12 FEBRUARY 2009

---

[14] The result from Ayr Trustee's request brought before the Varna Court of Appeals in case 187/2018 for determining the scope and international jurisdiction of BF over Ayr's bankruptcy claim showed that BF has no international jurisdiction over them and declined having such.

[15] APD, being Ayr's shell company – established, controlled and managed by Ayr – had no contribution to the acquisition of the Silver Beach Project; the economic benefits from such project have been planned and managed b Ayr and the latter also took the obligations and liabilities arising from and related to this project, subjecting them to US jurisdiction.

[16] First Investment Bank's actions are in violation of the UN Convention against corruption and applicable US law against money laundering, financial fraud, corruption.

**§ 20 –** «... the regulation should be confined to provisions governing jurisdiction for opening insolvency proceedings and judgments which are delivered directly on the basis of the insolvency proceedings and are closely connected with such proceedings.»[17]

---

[17] The result from Ayr Trustee's request brought before the Varna Court of Appeals in case 187/2018 for determining the scope and international jurisdiction of BF over Ayr's bankruptcy claim showed that BF has no international jurisdiction over them and declined having such.

# EXHIBIT 30





Фрея **Freya**
Транслейшънс **Translations**

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. В, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

To:     Ganka Kolyovska (Mrs)
        Trustee in Bankruptcy for
        Ayr Property Development AD

## PETITION

Filed by:     Vladimir Skochev, attorney at law, acting as counsel of record for Asset
              Management EAD and All Seas Property 2 OOD in the proceedings in case
              730/2013 in the docket of the Shumen District Court.

Dear Mrs. Kolyovska,

This is to advise you once again that by virtue of the Agreement of 28th March 2012 my
clients have transferred their rights as creditors of Ayr Property Development AD to and in
favour of Ayr Logistics Limited, Inc.

In view of the foregoing I kindly ask you to make the relevant changes in the List of the
creditors of Ayr Property Development AD and list the rights acquired by Ayr Logistics
Limited, Inc. therein.

Varna, 3rd July 2014              Respectfully submitted:

                                        *Signed (ill.)*
                                        Vladimir Skochev, attorney at law

---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from
Bulgarian into English of the attached document — Petition from Counsel Vladimir Skochev to Trustee
Ganka Kolyovska of 3rd July 2014. This translation has 1 (one) page.*

Translator:

        *Boryana Ilieva Stefanova*

До:
Г-жа Ганка Кольовска
Синдик на Еър Пропърти Девелопмънт АД

**Молба**

от

Адвокат Владимир Скочев, процесуален представител на "Асет Мениджмънт" ЕАД и "Ол Сийз Пропърти 2" ООД, в производството по т.д.№730/2013 г., по описа на ШОС.

**Уважаема госпожо Кольовска,**

Повторно Ви уведомяваме, че съгласно споразумение от 28.03.2012 год., доверителите ми са прехвърлили правата на си на кредитор на "Еър Пропърти Девелопмънт" АД, на "Еър Лоджистикс Лимитед" Инк.

В тази връзка е необходимо да бъде осъществена съответната промяна в списъка на кредиторите на "Еър Пропърти Девелопмънт" АД, като се впишат придобитите от "Еър Лоджистикс Лимитед" Инк права.

Гр.Варна,
03.07.2014 год.

С Уважение:
        Адвокат Владимир Скочев



*Фрея*  *Freya*
*Транслейшънс* *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

| AGREEMENT | СПОРАЗУМЕНИЕ |
|---|---|
| This Agreement was signed this 28th March 2012 at Varna, Bulgaria, by and between the persons holding interest in the approval of the Reorganization Plan as proposed by Ayr Logistics Limited, Inc., Texas, USA, ("Ayr") in the bankruptcy proceedings of Ayr Property Development AD (Ayr's investment vehicle) before the District Court of Targovishte, Bulgaria, ("the Bankruptcy Court") hearing commercial case No.14/2011 ("the bankruptcy case"). The Bankruptcy Court in its ruling of 15th February 2012 has scheduled a meeting of the creditors of Ayr Property Development AD ("APD") for 17th April 2012 to deliberate and vote on the reorganization plan for APD ("the Reorganization Plan"). | Днес, 28.03.2012 год., в гр. Варна, България, се подписа настоящото споразумение между заинтересованите лица от одобрението на оздравителния план предложен от Вър Лоджистикс Лимитед Инк (щат Тексас, САЩ) в производството по несъстоятелност на Вър Пропърти Девелопмънт АД (инвестиционно предприятие на Вър Лоджистикс Лимитед Инк), водено пред Окръжния съд на гр.Търговище, България (търговско дело № 14/2011 година), разглеждането и гласуването на който оздравителен план от събранието на кредиторите на Вър Пропърти Девелопмънт АД, е насрочено за 17.04.2012 год., съгласно определение на съда по несъстоятелността от 15.02.2012год. |
| WHEREAS, | (А) Настоящото споразумение се подписа след предварително обсъждане, проведено по искане на следните кредиторите на Вър Пропърти Девелопмънт: |
| A. This Agreement was signed upon due discussion thereof as requested by the following creditors of APD: | |
| • All Seas Property 2 OOD ("ASP2") having an account receivable ("AR") in the amount of EUR 10,000,000 (ten million Euros) owed to them and negotiated for recovery under the proposed Reorganization Plan by way of transforming said AR into shares of stock in the capital of New Co Property Investment AD ("New Co"), a company Ayr has acquired for the purposes of the Eco Dream Project – as per the Section V of the | • Ол Сийз Пропърти 2 ООД (ОСП 2), чието парично вземане е номинирано в оздравителния план за изплащане в размер на 10 000 000 (десет милиона евро) посредством трансформацията му в акционерно участие в капитала на Ню Ко Пропърти Инвестмънт АД, притежавано от Вър Лоджистикс Лимитед Инк във връзка с проекта "Еко Дрийм" – Раздел V "Формула по ликвидация на вземанията на |

2

**Reorganization Plan:** *"Liquidation Formula for the Receivables of APD's Non-Bank Creditors with Claims Accepted for Satisfaction under Art.722 Para 1 (8) of the Commerce Act"*;

- Asset Management EAD ("**Asset**") having an account receivable ("**AR**") in the amount of <u>EUR 1,300,000</u> (one million and three hundred thousand Euros) owed to them and negotiated for recovery under the proposed Reorganization Plan by way of transforming said AR into shares of stock in the capital of New Co, a company Ayr has acquired for the purposes of the Eco Dream Project – as per the **Section V** of the **Reorganization Plan** *"Liquidation Formula for the Receivables of APD's Non-Bank Creditors with Claims Accepted for Satisfaction under Art.722 Para 1 (8) of the Commerce Act"*

B. ASP2 and Asset requested this Agreement to be concluded as a condition to be met before they agree to support the Reorganization Plan for APD as proposed by Ayr for the following considerations:

- The Reorganization Plan relies on the financial support to be provided by Mr. Anthony Harriott as instructed by Ayr and in furtherance of the Contract of Mandate Ayr and Mr Harriott executed on 19th January 2011 in that regard, and in the fashion agreed in the *Memorandum of Ayr Logistics Limited, Inc.'s Commitment to Provide Financially for the Reorganization Plan Intended to Repay Liabilities and Discharge Obligations of Ayr*

---

небанковите кредитори на Еър Пропърти Девелопмънт АД с прието вземане за удовлетворяване по чл. 722, ал.1 , т.8 на ТЗ" от оздравителния план;

- Асет Мениджмънт ЕАД (АСЕТ), чието парично вземане е номинирано в оздравителния план за изплащане в размер на 1 300 000 (един милион и триста хиляди евро) посредством трансформацията му в акционерно участие в капитала на Ню Ко Пропърти Инвестмънт АД, притежавано от Еър Лоджистикс Лимитед Инк във връзка с проекта "Еко Дрийм" – Раздел V "Формула по ликвидация на вземанията на небанковите кредитори на Еър Пропърти Девелопмънт АД с прието вземане за удовлетворяване по чл. 722, ал.1 , т.8 на ТЗ" на оздравителния план;

(Б) Настоящото споразумение е изискано от страна на ОСП2 и Асет като безусловно условие за подкрепата на оздравителния план на Еър Лоджистикс Лимитед Инк, предложен за Еър Пропърти Девелопмънт АД, и мотивирано със следните съображения:

- Оздравителният план е референтен с подкрепата на финансовите активи на г-н Антъни Хариът, действащ по възлагане на Еър Лоджистикс Лимитед Инк, съгласно подписания за целта договор за мандат от 19.01.2011 г., така както това е посочено в подписания на 02-03 юли 2011 г. "Меморандум за финансово осигуряване на оздравителния план на Еър Лоджистикс Лимитед Инк за изплащане и погасяване на

3

*Property Development AD, Bulgaria, to its Creditors*, signed on 2nd and 3rd July 2011. None of the commitments or promises made thereunder has ever been fulfilled;

- On 2nd December 2011 a meeting of APD creditors took place where Ayr's President and General Manager Mr. Philip Harris confirmed and restated that funds in the amount of 225,000,000 (two hundred and twenty five million Euros) were secured and in place for implementing the Reorganization Plan. He set 15th February 2012 as the deadline before or on which all the necessary bank deposits and guarantees for the implementation of the Reorganization Plan would be in place. Despite those assurances, however, 15th February 2012 – the deadline set and the date of the Creditors' meeting scheduled to discuss and vote on the Reorganization Plan – came to pass inconsequentially.

- On 15th December 2011 another meeting of the Creditors of APD was held and Ayr confirmed before the Meeting that a deposit of USD 22,000,000 (twenty two million US dollars) had been made. Said funds were intended to be the initial amount dedicated to the Reorganization Plan and had to be remitted in portions to the special lawyer's account with UniCredit Bulbank AD within 1st March 2012 – 15th April 2012. Discussion and voting of the Reorganization Plan for APD was once again rescheduled, this time for 17th April 2012.

C. Having being assured on a number of subsequent occasions that Ayr would

задълженията на Еър Пропърти Девелопмънт АД към кредиторите на Еър Пропърти Девелопмънт АД". Понастоящем, нито един от поетите с този Меморандум ангажименти не е изпълнен.

- На проведеното събрание на кредиторите на Еър Пропърти Девелопмънт АД, на 02.12.2011 г., Президентът и Генерален мениджър на Еър Лоджистикс Лимитед Инк, г-н Филип Харис, потвърди финансова осигуреност на оздравителния и на инвестиционния план в обем на 225 000 000 (двеста двадесет и пет милиона евро), посочвайки краен срок за снабдяване на оздравителния план с всички предвидени в него банкови гаранции и депозити в срок до 15.02.2012 г. Въпреки тези уверения, до 15.02.2012 г., за която дата с насрочено следващото събрание на кредиторите, което да разгледа и гласува оздравителния план, Еър Лоджистикс Лимитед Инк не са изпълнили поетите ангажименти за представяне на обещаните депозити и гаранции в срок до 15.02.2012 г.

- На проведено събрание на кредиторите на Еър Пропърти Девелопмънт АД от дата 15.12.2011 г., Еър Лоджистикс Лимитед Инк потвърди наличието на открит начален депозит в обем 22 000 000 (двадесет и два милиона щатски долара), предназначен за встъпителен баланс по оздравителния план, дължим по откритата за целта специална адвокатска сметка в УниКредит Булбанк АД, в периода 01.03.2012-15.04.2012 год. Обсъждането и гласуването на оздравителния план отново е отложено за 17.04.2012 г.

(B) Приемайки, че финансовите ангажименти на Еър Лоджистикс Лимитед

4

fulfil their financial commitments to the Reorganization Plan for APD, the creditors ASP2 and Asset have agreed to support it, provided that the following conditions are met:

- If Ayr unconditionally undertakes to pay the ARs owed to ASP and Asset, respectively, as pre-agreed in Section V Para 9 (a.a) and (a.b) of the Reorganization Plan for APD - *"Liquidation Formula for the Receivables of APD's Non-Bank Creditors with Claims Accepted for Satisfaction under Art.722 Para 1 (8) of the Commerce Act"*;

- If Ayr unconditionally agrees to fulfil its financial commitments to ASP and Asset, regardless of whether or not or how the Reorganization Plan will be implemented, and regardless of whether or not or how the investment plan for the Eco Dream Project, for which New Co has been made responsible, will come to be realized;

- If Ayr unconditionally agrees to fulfil its financial commitments to ASP and Asset under the Reorganization Plan for APD at Ayr's risk and responsibility no later than 36 months after the Bankruptcy court has made its decision on the Reorganization Plan for APD.

NOW THEREFORE, and seeking to ensure ASP2's and Asset's support for the Reorganization Plan at the discussion and vote to be held at the meeting scheduled for 17th April 2012 by virtue of a court order in

Инк са действително осигурени така, както се настоява последователно в исканията за подкрепа на оздравителния план, предложен за Еър Пропърти Девелопмънт АД, кредиторите ОСП 2 и Асет, формулират подкрепата си за плана при изпълнение на следните изисквания:

- Еър Лоджистикс Лимитед Инк да поеме безусловното задължение да изплати предварително съгласуваните с оздравителния план права на ОСП2 и Асет, както са предвидени в б.(а.а.) и б. (а.б.), параграф 9 на Раздел V "Формула по ликвидация на вземанията на небанковите кредитори на Еър Пропърти Девелопмънт АД с прието вземане за удовлетворяване по чл. 722, ал.1 , т.8 на ТЗ";

- Еър Лоджистикс Лимитед Инк да се съгласи да изпълни поетите с оздравителния план финансови ангажименти към ОСП2 и Асет, независимо от реализацията на оздравителния план за Еър Пропърти Девелопмънт АД и независимо от реализацията на инвестиционния план за проекта "Еко Дрийм", възложен за осъществяване чрез "Ню Ко – Пропърти Инвестмънт" АД;

- Еър Лоджистикс Лимитед Инк да се съгласи да изпълни финансовите си ангажименти, поети към ОСП2 и Асет с оздравителния план, на собствен риск и отговорност, в срок до 36 календарни месеца, считано от окончателното произнасяне на съда по несъстоятелността по оздравителния план за Еър Пропърти Девелопмънт АД;

При посочените по-горе обстоятелства и с цел осигуряване подкрепата на ОСП2 и Асет при обсъждането и гласуването на предложения от Еър Лоджистикс Лимитед Инк оздравителен план за Еър Пропър

that regard, the parties hereto:

**Ayr Logistics Limited, Inc.**, a corporation organized in 1995 under the laws of Texas, USA, and having registered office at 459 Chippendale Drive, Rockwall, Texas 75032, USA, and represented by Philip Robert Harris, President and General Manager, acting through his legal representative Counsel Zahari Tomov, attorney at law, (member of the Varna Bar and having law office address at Varna 4 Paraskeva Nikolau St, floor 2, office 3) as duly appointed by a power of attorney of 18th July 2011 (bearing the certification of the Consular Department of the Ministry of Foreign Affairs of the Republic of Bulgaria dated 5th August 2011, hereinafter referred as "Ayr", of the first part,

And

**All Seas Property 2 OOD**, a commercial company registered under the laws of Bulgaria and having EIK (Company number): 148073564, based in Varna and having registered office address at Varna, 3 Nikola Vaptsarov St., entrance G, Office Centre, 8th floor, office 21, as represented by the Manager Lilyana Borisova, and

**Asset Management EAD** having EIK: 103921587 and registered office address at the town of Targovishte, 1 Tsar Assen St., and represented by the Executive Director Nikolay Hubenov, hereinafter refereed to as "the Creditor" or "the Creditors", of the second,

## THE PARTIES HAVE AGREED AS FOLLOWS:

1. The Creditors hereby agree and promise Ayr, that they shall play an active part in the deliberations and vote in support of the Reorganization Plan proposed for

Девелопмънт АД, насрочени за 17.04.2012 г. от съда по несъстоятелността на Еър Пропърти Девелопмънт АД, представените тук страни:

1. **Еър Лоджистикс Лимитед, Инк.**, учредено през 1995 г., съгласно законите на щата Тексас, САЩ, със седалище: 459 Чипъндейл Драйв, Рокуол, Тексас 75032, САЩ, представлявано от Филип Робърт Харис, Президент и Генерален мениджър, чрез адвокат Захари Томов, Адвокатска колегия – гр. Варна, ул. Параскева Николау № 4, ет. 2, офис № 3, назначен с пълномощно от 18.07.2011 г., заверено от Дирекция "Консулски отношения" при МВнР на Република България на дата 05.08.2011 год., от една страна, означавана по-долу за удобство като "Еър",

и

2. **"Ол Сийз Пропърти 2" ООД**, търговско дружество, регистрирано съобразно законодателството на Република България, ЕИК:148073564, със седалище в гр. Варна и адрес на управление ул. "Никола Вапцаров" № 3, вх.Г, офис център, ет. 8-ми, офис 21, представлявано от управителя Лиляна Борисова, и

**"Асет Мениджмънт" ЕАД**, **ЕИК:103921587**, представлявано от Николай Хубенов – Изпълнителен директор, с адрес: гр.Търговище, ул. Цар Иван Асен № 1, означавани за удобство като **"Кредитора или Кредиторите"**,

## Постигнаха съгласие за следното:

1. Кредиторите се съгласяват и задължават към Еър да участват активно в обсъжданията и да гласуват в подкрепа на оздравителния план предложен за Еър

6

APD at the General Meeting of the Creditors scheduled for 17th April 2012 to that effect.

2. Ayr hereby agrees and undertakes to fulfil at their own risk and responsibility certain financial commitments to the Creditors as follows:

(a) pay the creditor ASP2 the agreed value of ASP2's rights in the Reorganization Plan amounting to EUR 10,000,000 (ten million Euros) to the special bank account opened by ASP2 with Deutsche Bank, New York, no later than 36 months after the Bankruptcy court has made its final decision on the Reorganization Plan proposed for APD.

(b) Pay the creditor Asset the agreed value of Asset's rights in the Reorganization Plan amounting to EUR 1,300,000 (one million and three hundred thousand Euros) to the special bank account opened by ASP2 with Deutsche Bank, New York, no later than 36 months after the Bankruptcy court has made its final decision on the Reorganization Plan proposed for APD.

3. Ayr and the Creditors hereby agree that by fulfilling the commitments made in Art.2 of this Agreement, Ayr shall acquire and assume and enter into to the rights of ASP2 and Asset as defined in the Reorganization Plan for APD and that both ASP2 and Asset shall be deemed to be completely satisfied and shall assert no claims against Ayr and its subsidiaries APD and New Co.

4. Ayr and the Creditors hereby agree that this Agreement shall supersede all

---

Пропърти Девелопмънт АД, на насроченото за целта общо събрание на кредиторите за 17.04.2012 г.

2. Еър се съгласява и задължава, на собствен риск и отговорност, да изпълни следните финансови задължения към Кредиторите:

(в) Да изплати на Кредитора ОСП2 сумата от 10 000 000 (десет милиона евро) по открита за целта специална сметка в полза на ОСП2 в Дойче банк, Ню Йорк, представляваща стойността на съгласуваните в оздравителния план права на ОСП2, което плащане се дължи в срок до 36 календарни месеца, считано от датата на окончателното произнасяне по оздравителния план, предложен за Еър Пропърти Девелопмънт АД;

(б) Да изплати на Кредитора Асет сумата от 1 300 000 (един милион и триста хиляди евро) по открита за целта специална сметка в полза на Асет в Дойче банк, Ню Йорк, представляваща стойността на съгласуваните в оздравителния план права на Асет, което плащане се дължи в срок до 36 календарни месеца, считано от датата на окочателното произнасяне по оздравителния план, предложен за Еър Пропърти Девелопмънт АД;

3. Кредиторите и Еър се съгласяват и договарят, че с изпълнението на поетите по чл.2 от настоящото споразумение задължения, Еър придобива и встъпва във всички правата на ОСП2 и Асет така, както са посочени в оздравителния план за Еър Пропърти Девелопмънт АД, както и че ОСП2 и Асет са напълно удовлетворени и нямат никакви претенции към Еър Лоджистикс Лимитед Инк, и към неговите предприятия - Еър Пропърти Девелопмънт АД и Ню Ко – Пропърти Инвестмънт АД.

4. Кредиторите и Еър, се съгласяват

7

preceding agreements on the method and manner of payment of ASP2's and Asset's rights, including all primary agreements made by and between Ayr and ASP2 on the acquisition of the lands and the Silver Beach investment enterprise of 10th December 2009 and by and between Ayr and Asset of 8th August 2009 on the application for a bank loan in support and in favour of Ayr's agreements with FIB for rescheduling and buyout of the mortgage rights over the Silver Beach Project.

5. ASP2 and Ayr hereby agree that ASP2 shall render their agreement with ASB for the transfer of the AR from the sale price of the transaction for the sale of the Silver Beach investment enterprise dated 10th December 2009, null and void by reason of ASB's default on making the payment of such price as agreed.

6. Ayr and the Creditors hereby expressly agree on the following additional provisions:

(a) Enforcement of the Agreement:

This Agreement shall enter in force immediately when ASP2 and Asset render their joint support of the approval of APD's Reorganization Plan, when the matter is put to vote at the General Meeting of APD's Creditors scheduled for 17th April 2012.

(b) Choice of governing law and jurisdiction:

All matters arising from this Agreement including, but not limited to interpreting the will of the parties thereto, the validity of the

настоящото споразумение преурежда всички предходни договорености относно реда и начина на изплащане правата на ОСП2 и Асет, включително и изначалните договорености с ОСП 2 по придобиване на земята и инвестиционното предприятие "Силвър бийч" от дата 10.12.2009 г., както и договореността с Асет от 08.12.2009 г. за ползване на банков кредит в подкрепа и в полза на договарянията на Ъър с Първа инвестиционна банка АД за преструктуриране и изкупуване на ипотечните права в проекта "Силвър бийч".

5. Кредитора ОСП2 и Ъър се съгласяват и договарят ОСП2 да анулира договореността с Ол Сийз България ООД за прехвърляне на вземането за продажната цена по сключената на 10.12.2009 г. сделка за покупко-продажба на инвестиционното предприятие "Силвър бийч", поради неизпълнение на договореното заплащане на тази цена от страна на Ол Сийз България ООД.

6. Кредиторите и Ъър депозират изричното свое съгласие върху следните допълнителни клаузи:

(а) Клауза за влизане в сила на настоящото споразумение:

Настоящото споразумение влиза в сила незабавно с депозиране на едновременната подкрепа на ОСП2 и Асет в полза на одобрението на оздравителния план за Ъър Пропърти Девелопмънт АД при неговото гласуване от събранието на кредиторите на Ъър Пропърти Девелопмънт АД, насрочено за 17.04.2012 г.

(б) Клауза за избор на приложимо право и юрисдикция:

Всички въпроси, произтичащи от настоящото споразумение, като изброените по-долу, но не само тълкуване на волята на съдоговорителите

8

Agreement, fulfilment of the parties' obligations, the consequences from the performance of this Agreement, its violation and the consequences therefrom shall be settled by the parties in an amicable manner in observance of the good commercial and investment practices recognized by the international and the US laws.

If the parties fail to reach such amicable resolution and the dispute still exists, the parties shall refer the dispute for resolution to the competent court having jurisdiction over the principal place of business of Ayr.

(c) **Compensation for damages caused by default on the agreements:**

Each of the parties hereby undertakes to compensate the other party in case of any default on the above agreements by paying a lump sum penalty of 18% (eighteen percent) of the relevant value of ASP2's right (if the default affects their accounts receivable) and the relevant value of Asset's right (if the default affects their accounts receivable) respectively.

(d) **Option for joinder of parties**

In observance with the representations made and advance consent given in Para 12, Section VIII "Formula for covering the interests involved in the implementation of the Reorganization Plan regarding the claims asserted by Rudersdal EOOD" of the Reorganization Plan for APD, ASP2 and Ayr hereby agree that:

(i) Rudersdal EOOD shall

валидност на споразумението, изпълнение на задълженията, последици от изпълнението на споразумението, нарушение на споразумението и последици на нарушението - ще се уреждат по приятелски начин според стандартите на добрата търговска и инвестиционна практика, познати в международното право и законите на САЩ.

В случай на невъзможност за изграждане на съгласие по приятелски начин и наличието на спор между страните по настоящото споразумение, компетентен да реши всеки един такъв спор ще бъде съда по място на управление на Еър.

(в) **Клауза за обезщетение при нарушение на договореностите:**

Всяка от страните по настоящото споразумение се съгласява да обезщети другата страната в случаите на допуснато нарушение на установените по –горе договорености, като заплати еднократна неустойка в обем на 18 % (осемнадесет процента), изчислена върху съответната стойност на правото на ОСП2 (в случай на нарушение свързано с това вземане), съответно върху стойността на правото на Асет (в случай на нарушение свързани с това вземане).

(г) **Опция за присъединяване:**

Съответно на номинацията и предварително депозираното съгласие по параграф 12, раздел VIII "Формула на покритие на интересите по приложение на оздравителния план спрямо предявеното вземане от Рудерсдал ЕООД" от оздравителния план за Еър Пропърти Девелопмънт АД, Кредиторът ОСП2 и Еър се договарят:

(г.а.) Рудерсдал ЕООД има запазено

9

enjoy a reserved right to join as a party to this Agreement by entering into ASP2's rights hereby agreed and exercising such rights together with ASP2, where the intercompany relationships between Rudersdal and ASP2 shall concern and be enforceable against Ayr to the extent and in the manner defined in Section VIII of the Reorganization Plan and as set forth herein below;

(ii) Fulfilment of Ayr's obligation under Para 2(a) of this Agreement shall be deemed to be duly made and Ayr shall be released from any responsibility to Rudersdal EOOD, if Ayr notifies Rudersdal EOOD of the right-extinguishing payment made to ASP2's bank account, when ASP2's bank account with Deutsche Bank, New York, is credited with the EUR 10,000,000 (ten million Euros) due, and instructs the simultaneous performance under Section VIII of the Reorganization Plan. Ayr hereby undertakes to notify Rudersdal as detailed above, irrespective whether or not Rudersdal has joined as a party to this Agreement.

(iii) ASP2 and Ayr hereby agree that the EUR 10,000,000 (ten million Euros) credited to ASP2's bank account with Deutsche Bank, New York shall be blocked in favour of Rudersdal EOOD for a 30 days-term as of the date on which the notice of simultaneous performance under Section VIII of the Reorganization Plan is given. If Rudersdal EOOD fails to join as a party to this Agreement or refuses to accept the notice for simultaneous performance under Section VIII of the Reorganization Plan at the expiration of the above 30 days-term, all commitments made by Ayr in favour of Rudersdal EOOD under the Reorganization Plan shall be deemed to be fulfilled and ASP2 shall

право да се присъедини като страна по настоящото споразумение, встъпвайки в договорните права на ОСП2 и наред с ОСП2, като вътрешните отношения между тях са относими и противопоставими на Еър толкова и така, както това е посочено в раздел VIII на оздравителния план и както е определено в следващите точки:

(г.б.) Изпълнението на задължението на Еър, посочено в параграф 2(а) на настоящото споразумение, се зачита като надлежно изпълнено и освободено от всякаква отговорност спрямо Рудерсдал ЕООД, ако със заверката на откритата специална сметка в Дойче банк-Ню Йорк на името на ОСП2 с дължимата сума от 10 000 000 (десет милиона евро), Еър уведоми Рудерсдал ЕООД за извършеното погасително плащане към ОСП2, с указание за едновременно изпълнение по раздел VIII на оздравителния план. Това уведомление се дължи независимо от това дали Рудерсдал ЕООД се е присъединило към настоящото споразумение.

(г.в.) Кредиторът ОСП2 и Еър се договорят платените по специалната сметка на ОСП2 в Дойче банк-Ню Йорк 10 000 000 (десет милиона евро) да бъдат блокирани в полза на Рудерсдал ЕООД за срок от 30 дни, считано от датата на уведомлението за едновременно изпълнение по раздел VIII на оздравителния план. В случай че Рудерсдал ЕООД не се присъедини към настоящото споразумение или не акцептира уведомлението за едновременно изпълнение по раздел VIII на оздравителния план, с изтичането на 30-дневния срок всички поети ангажименти от Еър с оздравителния план и полза на Рудерсдал ЕООД се погасяват, а единствено ОСП2 остава отговорен към

remain solely responsible to Rudersdal EOOD.

**7. Closing provisions**

(a) This Agreement was drawn and signed in four uniform copies, one for each of the parties thereto and one to be accepted by Rudersdal EOOD.

(b) Rudersdal's joinder to this Agreement is not a requirement and shall stipulate no condition for enforcement of the Agreement as defined by the parties thereto in Para 6(a) above.

(c) This Agreement was drawn and signed in both English and Bulgarian; the English version shall prevail and have priority over the Bulgarian in the interpretation of the will of the parties and in the event of any dispute thereunder.

For Ayr Logistics Limited Inc.:

Zahari Tomov, Attorney at law
(Duly appointed by POA of 18th July 2011)

For All Seas Property 2 OOD:

Lilyana Borisova, Manager

For Asset Management EAD:

Nikolay Hubenov, Executive Director

---

Рудерсдал ЕООД.

**7. Заключителни разпоредби:**

(а) Настоящото споразумение се състави и подписа в четири еднообразни екземпляра - по един за всяка от договорящите се страни и един предназначен за акцептиране от Рудерсдал ЕООД.

(б) Присъединяването на Рудерсдал ЕООД към настоящото споразумение не е изискване и не поставя условие за влизането му в законна сила, както това е определено от договарящите се страни по-горе в параграф 6 (а).

(в) Настоящото споразумение се състави и подписа на английски и български език, като английския език е водещия и има предимство при тълкуване на волята на страните в случай на спор.

За Еър:

Адв. Захари Томов
(по пълномощно от 18.07.2011)

За ОСП 2:

Лиляна Борисова – Управител

За Асет:

Николай Хубенов – Изпълнителен директор

---

*The undersigned, Boriana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Agreement of 28 March 2012. This translation has 10 pages.*

*Translator: _____ Boriana Ilieva Stefanova*

| | |
|---|---|
| **ДОПЪЛВАЩО СПОРАЗУМЕНИЕ** | **SUPPLEMENTAL AGREEMENT** |

<table>
<tr>
<td>

Днес, 27-и ноември 2013 г., в гр.Варна, България, се подписа настоящото допълнително споразумение между страните по споразумението от 28.03.2012 г., базирано на фактите и доказателствата, разкрити в хода на проведеното разследване, отнасящо се до легитимността и валидността на представените в производството по несъстоятелност водено спрямо Еър Пропърти Девелопмънт АД ("ЕПД") платежни искове от Първа инвестиционна банка АД ("ПИБ"), отхвърлени с Решение №2 от 08.02.2013 г. по т.д.№ 82/2011 от Търговищкия окръжен съд.

**Всяка една от страните:**

1. **Ол Сийз Пропърти 2 ООД**, търговско дружество, регистрирано съгласно законодателството на Република България, ЕИК:140873564, със седалище и адрес на управление в гр.Варна, ул."Никола Вапцаров" №3, вх.Г, офис център, ет.8, офис 21, представлявано от управителя Георги Мирчев, лично и чрез адв.Димитър Янакиев, АК Варна,

2. **Асет Мениджмънт ЕАД**, търговско дружество, регистрирано съгласно законодателството на Република България, ЕИК:103921587, със седалище и адрес на управление в гр.Търговище, ул.Цар Иван Асен № 1, представлявано от Изпълнителните директори Николай Хубенов и Светлозар Касабов, лично и чрез адв. Димитър Янакиев;

3. **Еър Лоджистикс Лимитед Инк.**, учредено през 1995 г., съгласно законите на щата Тексас, САЩ, със седалище : 459 Чипъндейл Драйв, Рокоул, Тексас 75032, САЩ, представлявано от Филип Робърт Харис, Президент и Генерален мениджър, чрез адвокат Захари Томов, АК – гр.Варна, назначен с пълномощно от 18.07.2011 г., заверено от Дирекция "Консулски оношения" при МВнР на Република България на дата 05.08.2011 г.,

**Се съгласява със следното:**

</td>
<td>

This Supplemental Agreement was made this 27th day of November 2013 by and between the parties to the Agreement of 28th March 2012 to incorporate the mutual understanding of the parties on the facts and evidence that have come to the fore upon the completion of the investigation as to the legitimacy and validity of the payment claims asserted by First Investment Bank AD (**FIB**) in the bankruptcy case of Ayr Property Development AD (**APD**) and denied by Decision No.82 entered on February 8, 2013 by the Targovishte District Court in Case 82/2011 with such court.

**Each of the parties below:**

1. **All Seas Property 2 OOD**, a company incorporated under the laws of the Republic of Bulgaria and having EIK (Company number):140873564, and seat and registered office address at Varna, 3 Nikola Vaptsarov St., entrance G, Office Centre, 8th floor, office 21, as represented by its Manager Georgi Mirchev acting in person and through Attorney Dimitar Yanakiev (Varna Bar);

2. **Asset Management EAD**, a company incorporated under the laws of the Republic of Bulgaria and having EIK: 103921587, and seat and registered office address at Targovishte, 1 Tzar Assen St., as represented by the Executive Directors Nikolay Hubenov and Svetlozar Kassabov each acting in person and through Attorney Dimitar Yanakiev;

3. **Ayr Logistics Limited, Inc.**, a company incorporated in 1995 under the laws of Texas, USA and having seat at 459 Chippendale Drive, Rockwall, Texas 75032, USA, as represented by the President and General Manager Phillip Robert Harris acting through Attorney Zahari Tomov (Varna Bar) retained and authorized in that regard by a power of attorney made on July 18, 2011 and duly certified by the Consular Department at the Bulgarian Ministry of Interior on August 5, 2011;

**Has consented to and agreed as follows:**

</td>
</tr>
</table>

2

§1. Извършените през 2007 и 2008 год. по сметката на *Ол Сийз Мениджмънт* (Република Маршалови острови), в банка Валета (Малта), финансирани със средствата по банковите заеми предоставени от ПИБ на *Порт Инвестмънт Девелопмънт – България 2 ЕАД* с договори за банков заем № 39КР-АА-2510 от 22.11.2007 г. и № 014LD-L-000002 от 02.10.2008 г., обслужват фиктивни сделки и не осъществяват вложения в проекта "Силвър бийч". Тези сделки и трансфери стоят извън обхвата на споразумението от 09.12.2009 г. и обхвата сделките от 10.12.2009 г., прехвърлящи правата върху проекта "Силвър бийч" и собствеността върху инвестиционните терени в този проект;

§2. Извършените през 2009 и 2010 год. разплащания по сделките на *Блу Финанс Лимитед* (Република Маршалови острови), финансирани със средствата по банковия заем предоставен от ПИБ на Асет Мениджмънт ЕАД, № 014LD-L-000006 от 29.12.2009 г., обслужват фиктивни сделки и не осъществяват вложения в проекта Силвър бийч. Тези сделки и трансфери стоят извън възложенията на Асет Мениджмънт ЕАД мандат от 08.12.2009 г. от *Еър Лоджистикс Лимитед Инк* и *Ол България ЕООД*, действащи в качеството си на учредители на ЕПД, възлагащ срещу възнаграждение ползването на банков заем от 8 милиона евро от ПИБ;

§3. *Еър Лоджистикс Лимитед Инк.*, както и имуществото в масата на несъстоятелността на ЕПД, не са задължени с тези трансфери и сделки, като Еър Лоджистикс Лимитед Инк остава задължен към Ол Сийз Пропърти 2 ООД да изплати в пълния обем цената по придобиване на правата и собствеността върху проекта Силвър бийч и инвестиционните терени в него, както това е договорено в споразумението от 09.12.2009 г, регистрирано под № 7201 в

§1. The money transfers made back in 2007 and 2008 to the bank account of *All Seas Management* (the Marshall Islands) with the Bank of Valetta, Malta, used funds borrowed by Port Investment Development – Bulgaria 2 EAD and lent by FIB under bank loan agreements of Nos.39KP-AA-2510 of 22nd November 2007 and 014LD-L-000002 of 2nd October 2008, respectively. These money transfers were purportedly servicing transactions, which however were fictitious and were anything but investment in the Silver Beach Project. The said transactions and the money transfers related to them were outside and beyond the scope of the Agreement dated December 9, 2009 and had nothing to do with the transactions concluded for the transfer of rights held in the Silver Beach Project or the rights of ownership in the investment lands thereunder.

§2. The money transfers made back in 2007 and 2008 to the bank account of *Blue Finance Limited* (the Marshall Islands) with the Bank of Valetta, Malta, used funds borrowed by Asset Management EAD and lent by FIB under bank loan agreement No. 014LD-L-000006 of 29th December 2009. These money transfers were purportedly servicing transactions, which however were fictitious and were anything but investment in the Silver Beach Project. The said transactions and the money transfers related to them were outside and beyond the scope of the mandate APD incorporators *Ayr Logistics Limited, Inc.* and *All Seas Bulgaria EOOD* gave to Asset Management EAD instructing the latter to borrow an 8-million-euro loan from FIB in return for a good an valuable consideration.

§3. Neither *Ayr Logistics Limited, Inc.* nor the property of APD's bankruptcy estate ("APD's Estate") are bound in any way whatsoever by the said transactions or the money transfers related thereto, while at the same time *Ayr Logistics Limited, Inc.* remains liable to All Seas Property to for the full amount of the price payable for Ayr's acquiring the rights in and ownership of the Silver Beach Project and its lands as agreed under the December 9, 2009 Agreement, which was recorded under reg.No.7201 in the

канцеларията на Варненския нотариус Николай Дюлгеров, с лиценз номер 484 на Нотариалната камара.

**§4.** Страните се съгласяват всеки един спор или иск който може да възникне в резултат на извършените трансфери обслужили фиктивните сделки на Ол Сийз Мениджмънт и Блу Финанс Лимитед, или пък което и да имуществено право породено от платежните искове на ПИБ, предявени спрямо имуществото в масата на несъстоятелността на ЕПД, когато този спор, право и/или иск се отнася до правата и задълженията на страните по настоящото допълващо споразумение и /или до правата и задълженията по споразумението от 28.03.2012, да бъде подчинен на:

- Законите на САЩ имащи отношение към финансовите измами, прането на пари и корупцията, и на разпоредбите на чл.34 и чл.35 от Конвенцията ООН срещу корупцията, приложена към настоящото;

- Страните се съгласяват, че мястото на изпълнение на Договора от 28.03.2012 г. и всички допълнения към него е в щата Ню Йорк и следователно мястото им на изпълнение ще бъде в щата Ню Йорк.

- Федералният окръжен съд в Ню Йорк, щата Ню Йорк, притежава местна и родова компетентност спрямо всички страни по настоящото. Изборът на приложимо право са законите на щата Ню Йорк.

- Страните нарочно се подчиняват на законите, съдилищата и юрисдикцията на щата Ню Йорк, понеже питаят съмнения към ефективността на принципите на правовата държава в България и понеже основното изпълнение на договорите и всички техни допълнения е в щата Ню Йорк.

- Страните се съгласяват, че Федералният Окръжен съд в Ню Йорк, щата Ню Йорк е компетентен да разгледа всеки един такъв спор и/или да се произнесе по всяко едно право

records kept at the offices of the Varna Notary Public Nikolay Dyulgerov (commissioned under No.484 by the Chamber of Notaries Public).

**§4.** The parties agree that each and any dispute or claim arising from any of the money transfers servicing the fictitious transactions made by *All Seas Management* or *Blue Finance Limited*, or any controversy over any property right stemming from the payment claims FIB lodged against the property of APD's Estate where such controversy or right or claim concerns any of the rights or liabilities of the parties hereto, or any of the rights or liabilities of the parties to the March 28th 2012 Agreement shall be governed by:

- The U.S. laws concerning financial fraud, money laundering and corrupt activities, as well as to the provisions set forth in Art.34 and Art.35 of the *United Nations Convention Against Corruption*, attached hereto;

- The Parties agree that the March 28, 2012 Agreement and any supplements thereto shall have its effect in the State of New York and therefore shall be domiciled in the State of New York.

- The U.S. Federal District Court in New York, State of New York shall have subject matter jurisdiction and personal jurisdiction over all the parties hereto. The choice of law shall be New York State Law.

- The Parties purposefully subject themselves to the laws, courts and jurisdictions of the State of New York, because they question the effectiveness of the rule of law in Bulgaria, and because the principle performance of the Agreements and any supplements thereto is in the State of New York.

- The Parties agree that the U.S. Federal District Court in New York, the State of New York shall have jurisdiction over any dispute or controversy and/or shall be the one to make a determination or a decision on any rights and/or a claim concerning

4

и/или иск отнасящ до упражняване на правата и/или изпълнението на задълженията на представените тук страни. По-специално Еър Лоджистикс Лимитид Инк. е избрал и номинирал <u>Дойче банк в Ню Йорк</u>, като място на изпълнение по договорите и всички допълнения към тях. Еър Лоджистикс Лимитед Инк е задължен да открие сметка в полза на Асет Мсниджмънт ЕАД и Ол Сийз Пропърти 2 ООД и да извърши дължимото към тях плащане в Дойче Банк, Ню Йорк;

§5. В случай на възникване на спор или упражняване на правата ,произтичащи от Споразумението от 28.03.2012 и от настоящото допълващо споразумение, и едновременно с това възникне или се установи основание за провеждане на процедури от преюдициално значение, независимо от техния характер и естество, като например – провеждане на разследване от страна на властите на САЩ притежавани правомощия да разследват финансови измами, пране на пари и корупция, постановяване на конфискационни мерки или предприемане на обезпечителни действия, когато това може да засегне имуществените права на всяка една от представените тук страни, действието на посочените тук договорености се удължава с толкова, колкото е необходимо според случая.

§6. Настоящото допълващо споразумение е неразделна част от споразумението подписано на 28.03.2012 и тълкуването и приложението на последното се подчинява изцяло на посочените по-горе договорености, които имат преимущество и ограничават действието на всяка предходна договореност, която може да възпрепятства правата на която и да е представените тук страни. Нито една договореност между страните преди и по време действието на настоящото допълващо споразумение, не може да се тълкува или прилага по начин, който води до нарушаване и конфликт с разпоредбите на чл.34 и чл.35 от Конвенцията на ООН срещу корупцията, и Законите на САЩ

the exercise of any rights or meeting any liability of any of the parties hereto. More particularly, Ayr Logistics Limited, Inc. has chosen and designated <u>Deutsche Bank, New York</u>, the State of New York as the place of performance under the Agreements and any supplements thereto. *Ayr Logistics Limited, Inc.* is obligated to open accounts in favour of *Asset Management EAD* and *All Seas Property 2 OOD* and make the payments it owes to the said two companies in Deutsche Bank, New York.

§5. In the event of any dispute arising from or over the exercise of the rights stemming from the March 28, 2012 Agreement or from this Supplemental Agreement, and if certain basis or grounds for conducting any preliminary procedure of whatever nature or purpose, such as - an investigation by the competent U.S. authorities of financial fraud or money laundering or corruption cases need to be launched, or confiscation orders are issued or any other protective measures need to be imposed - should simultaneously arise and where any of those might affect any of the property rights held by any of the parties hereto, the duration and effect of this Agreement shall be extended as deemed fit in any specific case.

§6. This Supplemental Agreement shall be an integral part of the March 28, 2012 Agreement and shall be construed and applied according to the above provisions, which shall prevail and shall supersede any earlier agreements or arrangements that might obstruct or restrict the exercise of the rights of any of the parties hereto. Nothing in any previous agreements reached earlier or concurrently with this Agreement by and between the parties hereto may be construed or enforced in a fashion that might give rise to a breach of or be in conflict with the provisions of Art.34 and Art. 35 of the *United Nations Convention Against Corruption*, or the U.S. laws combatting financial fraud,

5

отнасящи се до финансовите измами, прането на пари и корупцията.

§7. Настоящото споразумение се подписа присъствено от лицата представляващи договарящите се страни, съставено на английски и български език, като английския език има предимство при тълкуване и определяне съдържанието на волята на страните в случай, че възникне такъв спор

За Ол Сийз Пропърти 2 ООД:

Георги Мирчев –Управител

Адв. Димитър Янакиев

За Асет Мениджмънт ЕАД:

Николай Хубенов –Изп.директор

Светлозар Касабов – Изп.директор

Адв. Димитър Янакиев

За Еър Лоджистикс Лимитед Инк :

Адв. Захари Томов по пълномощно от 18.07.2011

---

money laundering and corruption.

§7. This Agreement was drawn up in English and in Bulgarian and was signed by each party hereto in person. In the event of any dispute should arise over the interpretation or meaning of the will and intention of the Parties hereto the English version shall prevail.

For All Seas Property 2 OOD:

Georgi Mirchev, Manager

Dimitar Yanakiev, Attorney-at-law

For Asset Management EAD:

Nikolay Hubenov, Executive Director

Svetlozar Kassabov, Executive Director

Dimitar Yanakiev, Attorney-at-law

For Ayr Logistics Limited, Inc.:

Zahari Tomov, Attorney-at-law, acting under power of attorney dated July 18, 2011

# EXHIBIT 31

Фреа Транслейшънс / Freya Translations

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

_Translation from Bulgarian_

LIST
of the Creditors of Ayr Property Development AD having EIK: 200968720 under Art.693 of the Commercial Act as at 8th July 2014

ACCOUNTS RECEIVABLE APPROVED

| No. | Date claimed | Creditor | Amount of the Accounts receivable approved in BGN | Grounds for claiming the approved accounts receivable | Order of sequence as per Art.722 CA | Act of the Court |
|---|---|---|---|---|---|---|
| 1 | 17 May 2011 | AYR LOGISTICS LIMITED, Inc., Cession of the Accounts receivable of ASSET MANAGEMENT EAD, Varna, 7 Dunavski Lebed St., 5th floor, apt.115 | 25,664,247.66 | The total amount of the payment claimed under the Agreement dated 8th December 2010, including: | | Ratified by Ruling No.90 dated 10th August 2011 issued by the Tangoviste District Court ("TDC") |
| | | | 15,646,640.00 | Principal as per section 2 (a) of the Agreement | Art.722 Para 1 (6) | |
| | | | 4,870,797.76 | Interest accrued and costs within 28th Dec. 2010 – 3rd May 2011 | Art.722 Para 1 (6) | |
| | | | 249,751.90 | Ex parte actions costs | Art.722 Para 1 (6) | |
| | | | 2,448,529.00 | Remuneration fee under the Agreement dated 8th December 2009 | Art.722 Para 1 (6) | |
| | | | 2,448,529.00 | Remuneration for good performance under the Agreement dated 8th December 2009 | Art.722 Para 1 (6) | |
| 2 | May 2011 | AYR LOGISTICS LIMITED, Inc., Cession of the Accounts receivable of ALL SEAS PROPERTY 2 OOD, Varna, 3 Nikola Vaptsarov St., 8th floor, office 21 | 69,839,167.87 | Total amount of the payment claimed arising from a real estate sale and purchase transaction, a business enterprise sale and purchase transaction and bank loan agreements, including: | | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |
| | | | 1,000,000.00 | Principal under a real estate sale and purchase transaction | Art.722 Para 1 (6) | |
| | | | 122,920.00 | Default interest under a real estate sale and purchase transaction accrued as at 3rd May 2011 | Art.722 Para 1 (6) | |
| | | | 39,116,600.00 | Principal under Bank Loan Agreement No.39KP-AA-2510 dated 22nd Nov. 2007 | Art.722 Para 1 (6) | |
| | | | 12,837,769.20 | Interest accrued under Bank Loan Agreement No 39KP-AA-2510 of 22nd Nov. 2007 within 30th June 2010–3rd May 2011 | Art.722 Para 1 (6) | |
| | | | 168,462.56 | Costs awarded under BLA No. 39KP-AA-2510/22 Nov.2007 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 2 | May 2011 | AYR LOGISTICS LIMITED, Inc., Cession of the Accounts receivable of ALL SEAS PROPERTY 2 OOD, Varna, 3 Nikola Vaptsarov St., 8th floor, office 21 | 56,000.00 | Ex parte action costs under BLA No. 39KP-AA-2510 | Art.722 Para 1 (8) | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |
| 3 | 17 May 2011 | CHAVDAR ANGELOV ANGELOV, Varna, 11 Gen. Skobelev St., 2nd floor, apt.3 | 145,904.17 | Fees as per the Tariff under the Private Enforcement Agents Act with regards to BLA No. 39KP-AA-2510 | Art.722 Para 1 (8) | |
| | | | 4,889,575.00 | Principal under Bank Loan Agreement No.014-LD-L-000002 dated 2nd Oct. 2008 ("BLA No.014-LD-L-000002") | Art.722 Para 1 (8) | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |
| | | | 1,459,303.44 | Interest accrued under BLA No.014-LD-L-000002 within 30th June 2010 – 3rd May 2011 | Art.722 Para 1 (8) | |
| | | | 17,086.92 | Costs awarded under BLA No.014-LD-L-000002 | Art.722 Para 1 (8) | |
| | | | 5,500.00 | Ex parte action costs under BLA No.014-LD-L-000002 | Art.722 Para 1 (8) | |
| | | | 20,026.38 | Fees as per the Tariff under the Private Enforcement Agents Act with regards to BLA No. 014-LD-L-000002 | Art.722 Para 1 (8) | |
| | | | 28,000.00 | Total amount of the claim arising from a Temporary Financial Aid Contract and a stock of shares sale and purchase transaction, including: | | |
| | | | 3,000.00 | Amount of the accounts receivable due under the Temporary Financial Aid Contract of 7th December 2009 | Art.722 Para 1 (8) | |
| | | | 25,000.00 | Amount of the accounts receivable due under the stock of shares sale and purchase transaction | Art.722 Para 1 (8) | |
| 4 | 17 May 2011 | CGF Shareholding Community AD, Varna, 3 Nikola Vaptsarov St., 8th floor, office 21 | 3,550,000.00 | Total amount of the claim arising from sale and purchase of shares: | Art.722 Para 1 (8) | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |
| 5 | 17 May 2011 | SILVER BEACH EAD, Varna, 3 Nikola Vaptsarov St., 8th floor, office 21 | 215,808.43 | Total amount of the claim arising from intercompany Loan Agreement dated 28th September 2010. | Art.722 Para 1 (8) | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |



| № | Date | Creditor | Amount | Description | Legal basis | Notes |
|---|---|---|---|---|---|---|
| 6. | 10 June 2011 | UNICREDIT BULBANK AD, Sofia, 7 Sveta Nedelya Square | 62,094,033.58 | Total amount of the claim arising from 2 Bank Loan Agreements (BLA), including: | Art.722 Para 1(1) | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |
| | | | 18,350,960.25 | Principal under BLA No.002 of 29 May 2006 | Art.722 Para 1(1) | |
| | | | 2,795,186.45 | Interest under BLA No.002 of 29 May 2006 | Art.722 Para 1(1) | |
| | | | 45,866.32 | Management fees for the loan under BLA No.002 of 29 May 2006 | Art.722 Para 1(1) | |
| | | | 88,012.35 | Fees for rescheduling the loan under BLA No. 002 of 29 May 2006 | Art.722 Para 1(1) | |
| | | | 57,860.40 | Court costs under BLA No. 002 of 29 May 2006 | Art.722 Para 1(1) | |
| | | | 23,468,374.37 | Principal under BLA No. 274/05205/01288 of 2 September 2008 | Art.722 Para 1(1) | |
| | | | 3,301,161.63 | Interest accrued under BLA No. 274/05205/01288 of 2 September 2008 | Art.722 Para 1(1) | |
| | | | 58,674.90 | Management fees for the loan under BLA No. 274/05205/011288 of 2 September 2008 | Art.722 Para 1(1) | |
| | | | 88,012.35 | Fees for rescheduling the loan under BLA No. 274/05205/011288 of 2 September 2008 | Art.722 Para 1(1) | |
| | | | 200,273.00 | Court costs under BLA No. 274/05205/011288 of 2 September 2008 | Art.722 Para 1(1) | |
| | | | 13,638,641.66 | Legal interest on the liabilities payable and accrued from the opening date of the bankruptcy proceedings by 8th July 2014 | Art.722 Para 1(1) | |
| | | | | Legal interest on the liabilities payable to accrue from 9th July 2014 till the date of final repayment of such liabilities | Art.722 Para 1(1) | |
| | | | | Court and administrative costs | Art.722 Para 1(1) | |
| 7. | 10 June 2011 | AYR LOGISTICS LIMITED, Inc. Cancelled Cession of the Accounts receivable of ALL SEAS BULGARIA EOOD, Varna, 3 Nikola Vaptsarov St., 8th floor, office 21 | 50,700,012.36 | Total amount of the claim arising under Cession Agreement, Intercompany Loan Agreements and Sale and purchase of shares agreement, including | Art.722 Para 1(8) | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |
| | | | 50,342,367.14 | Amount of the liability claimed under Cession Agreement dated 31st December 2009 | Art.722 Para 1(8) | |
| | | | 5,236.60 | Principal under Loan Agreement of 10 Dec. 2009 | Art.722 Para 1(8) | |
| | | | 1,623.28 | Contractual interest under Loan Agreement of 10 Dec. 2009 | Art.722 Para 1(8) | |
| | | | 350,785.34 | Contractual interest under Intercompany Loan Agreement of 11 December 2009 | Art.722 Para 1(8) | |

3

| | | | | | |
|---|---|---|---|---|---|
| | 15 May 2011 | RUDERSDAL EOOD, Sofia, 47 Knyaz Boris I St., floor 2 | 23,864,280.60 | Total amount of the claim under Agreement for the transfer of business enterprise dated 10th December 2009 and Preliminary Agreement for the sale of real estate dated 16th July 2007 | Art.722 Para 1 (8) | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |
| 9. | 6 June 2011 | THE NATIONAL REVENUE AGENCY, Sofia, 52 Knyaz Dondukov Blvd. | 7,096,527.35 | Total amount of the claim under Annual Tax Return under Art.92 of the Corporate Income Taxation Act, Including: | Art.722 Para 1 (6) | Ratified by Ruling No.90 dated 10th August 2011 issued by the TDC |
| | | | 4,919,403.87 | Principal amounts as at 3rd May 2011 | Art.722 Para 1 (6) | |
| | | | 553,647.42 | Interest accrued as at 3rd May 2011 | Art.722 Para 1 (6) TDC | |
| | | | 18,136.86 | Interest accrued within 4th May 2011 – 16th May 2011 | Art.722 Para 1 (6) | |
| | | | 1,604,339.20 | Legal interest accrued within 4th May 2011 – 8th July 2014 | Art.722 Para 1 (6) | |
| | | | | Legal interest to accrue from 9th July 2014 till the final repayment of the liabilities | Art.722 Para 1 (6) | |
| 10. | 7 Dec. 2012 | KOTA ENERGY AD, Varna, Odesos District, 70 Slivnitsa Blvd., floor 2, Ap. 4 | 2,358,456.00 | Cession Agreement of approved accounts receivables representing: the total amount of the claim under Retainer Agreement of 4th October 2011 for the defense and legal representation under the claim filed by Ayr Property Development AD for the total amount of BGN 78,615,209.00 | Art.722 Para 1 (7) | Ratified by Ruling No.8 dated 12th February 2013 issued by the TDC |

4

Drawn up on: 9th July 2014

Trustee in bankruptcy:
Signed,
Ganka Yaneva Kolyovska
Rectangular seal of the above Trustee reading:
"Ganka Kolyovska, Trustee in Bankruptcy
Case 730/2013 the Shumen District Court

Translator:

Boryana Ilieva Stefanova

The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – list of claimed and approved accounts receivable in case 730/2013 in the Shumen District Court dated 9th July 2014. This translation has 4 (four) pages.

С П И С Ъ К

на кредиторите на "Евр Пропърти Девелопмънт" АД, с ЕИК 200858720 по чл.693 от ТЗ към 08.07.2014 г.

| № по ред | Дата на предявяване | Кредитор | Размер на приетото вземане в лв. | Основание на приетото вземане | ПРИЕТИ ВЗЕМАНИЯ Поредност по чл.722 ТЗ | Съдебен акт |
|---|---|---|---|---|---|---|
| 1 | 17.05.2011 г. | "ЕЪР ЛОДЖИКСТИКС ЛИМИТЕД ИНК" Цесия на вземането на АСЕТ МЕНИДЖМЪНТ ЕАД, гр. Варна, ул. "Дунавски лебед" №7, ет.3, ап.115 | 25 564 247.66 | Общ размер на вземането по Споразумението от 08.12.2010 г., в т.ч: | чл.722, ал.1,т.8 | |
| | | | 15 646 640.00 | Главница по т.1,2, 6 на споразумението | чл.722, ал.1,т.8 | |
| | | | 4 870 797.76 | Лихви и разноски за периода 29.12.2010 г.- 03.05.2011 г. | чл.722, ал.1,т.8 | |
| | | | 249 751.90 | Разходи за изпълнителни дела | чл.722, ал.1,т.8 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| | | | 2 448 529.00 | Възнаграждение на основание споразумение от 08.12.2009 г. | чл.722, ал.1,т.8 | |
| | | | 2 448 529.00 | Възнаграждение по изпълнение на договореностите от 08.12.2009 г. | чл.722, ал.1,т.8 | |
| | | | 59 839 167.67 | Общ размер на вземането произтичащо от Покупко-продажба на недвижима собственост, Покупко-продажба на търговско предприятие и Договори за кредит, в т.ч: | | |
| 2 | 17.05.2011 г. | "ЕЪР ЛОДЖИКСТИКС ЛИМИТЕД ИНК" Цесия на вземането на "Ол Сийз ПРОПЪРТИ 2" ООД, гр.Варна,ул."Никола Вапцаров" №3, ет.3, офис 21 | 1 000 000.00 | Главница по сделка с предмет Покупко-продажба на недвижима собственост | чл.722, ал.1,т.8 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| | | | 122 920.00 | Лихви за забава по сделка с предмет Покупко-продажба на недвижима собственост към 03.05.2011 г. | чл.722, ал.1,т.8 | |
| | | | 39 116 600.00 | Главница по Договор за банков кредит №39КР-АА-2510/22.11.2007 г. | чл.722, ал.1,т.8 | |
| | | | 12 837 789.20 | Лихви по Договор за банков кредит №39КР-АА-2510/22.11.2007 г., за периода 30.06.2010 г.-03.05.2011 г. | чл.722, ал.1,т.8 | |
| | | | 168 462.56 | Присъдени разноски по Договор за банков кредит №39КР-АА-2510/22.11.2007 г. | чл.722, ал.1,т.8 | |

| № | Дата | Кредитор | Размер | Основание | чл.722 | Забележка |
|---|---|---|---|---|---|---|
| 2 | 17.05.2011 г. | "ЕВР ПОДЖИСТИКС ЛИМИТЕД ИНК" Цесия на взимането на "ОЛ СИЙЗ ПРОПЪРТИ 2" ООД, гр.Варна,ул."Никола Ванцаров" №3, ет.8, офис 21 | 56 000.00 | Разноски по изпълнително дело по Договор за банков кредит №39КР-АА-2510/22.11.2007 | чл.722, ал.1,т.8 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| | | | 145 904.17 | Такса по тарифата към ЗЧСИ по Договор за банков кредит №39КР-АА-2510/22.11.2007 г. | чл.722, ал.1,т.8 | |
| | | | 4 889 575.00 | Главница по Договор за банков кредит №014LD-L-000002/02.10.2008 г. | чл.722, ал.1,т.8 | |
| | | | 1 459 303.44 | Лихви по Договор за банков кредит №014LD-L-000002/02.10.2008 г. за периода 30.06.2010 г.-03.05.2011 г. | чл.722, ал.1,т.8 | |
| | | | 17 098.92 | Присъдени разноски по Договор за банков кредит №014LD-L-000002/02.10.2008 г. | чл.722, ал.1,т.8 | |
| | | | 5 500.00 | Разноски по изпълнително дело по Договор за банков кредит №014LD-L-000002/02.10.2008 г. | чл.722, ал.1,т.8 | |
| | | | 20 026.38 | Такса по тарифата към ЗЧСИ по Договор за банков кредит №014LD-L-000002/02.10.2008 | чл.722, ал.1,т.8 | |
| 3 | 17.05.2011 г. | ЧАВДАР АНГЕЛОВ АНГЕЛОВ гр.Варна,ул."Генерал Столетов" №11, ет.2, ап.3 | 28 000.00 | Общ размер на взимането по Договор за продажба на акции | чл.722, ал.1,т.8 | |
| | | | 3 000.00 | Размер на взимането по Договор за финансова помощ от 07.12.2006г. | чл.722, ал.1,т.8 | |
| | | | 25 000.00 | Размер на взимането произтичащо от Покупко-продажба на акции | чл.722, ал.1,т.8 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| 4 | 17.05.2011 г. | "СИ ДЖИ ЕФ-АКЦИОНЕРНА ОБЩНОСТ" АД, гр.Варна, ул."Н.Ванцаров" №3, вх.Г, ет.8, офис 21 | 3 550 000.00 | Общ размер на взимането по Договор за покупко-продажба на акции | чл.722, ал.1,т.8 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| 5 | 17.05.2011 г. | "СИЛВЪР БИЙЧ" ЕАД, гр.Варна, ул."Н.Ванцаров" №3, вх.Г, ет.8, офис 21 | 215 808.43 | Общ размер на взимането по междуфирмен заем от 28.09.2010 г. | чл.722, ал.1,т.8 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| | | | 62 094 033.58 | Общ размер на взимането по 2 бр. Договори за кредити, в т.ч: | | |

| № | Дата | Кредитор | Сума | Основание | Правно основание | Забележка |
|---|---|---|---|---|---|---|
| 6 | 10.06.2011 г. | "УНИКРЕДИТ БУЛБАНК" АД, гр.София, пл. "Света Неделя" №7 | 18 350 950,25 | Главница по Договор за кредит №002/29.05.2006 г. | чл.722, ал.1,т.1 | |
| | | | 2 795 186,45 | лихва по Договор за кредит №002/29.05.2006 | чл.722, ал.1,т.1 | |
| | | | 45 888,32 | Такса за управление на кредита по Договор №002/29.05.2006 г. | чл.722, ал.1,т.1 | |
| | | | 84 012,35 | Такса за преструктуриране на кредита по Договор №002/29.05.2006 г. | чл.722, ал.1,т.1 | |
| | | | 57 860,40 | Съдебни разноски по Договор за кредит №002/29.05.2006 г. | чл.722, ал.1,т.1 | |
| | | | 23 459 374,37 | Главница по Договор за кредит №274/05205/011288 от 02.09.2008 г. | чл.722, ал.1,т.1 | |
| | | | 3 301 161,63 | лихва по Договор за кредит №274/05205/011288 от 02.09.2008 г. | чл.722, ал.1,т.1 | |
| | | | 58 674,80 | Такса за управление на кредита по Договор за кредит №274/05205/011288 от 02.09.2008 | чл.722, ал.1,т.1 | |
| | | | 88 012,35 | Такса за преструктуриране на кредита по Договор за кредит №274/05205/011288 от 02.09.2008 г. | чл.722, ал.1,т.1 | |
| | | | 200 273,00 | Съдебни разноски по Договор за кредит №274/05205/011288 от 02.09.2008 г. | чл.722, ал.1,т.1 | |
| | | | 13 638 641,56 | Законна лихва върху задълженията от датата на решението за откриване на производство по несъстоятелност до 08.07.2014 г. Законна лихва върху задълженията от 09.07.2014 г. до окончателно изплащане на задълженията | чл.722, ал.1,т.1 | |
| | | | | Съдебно - деловодни разноски | чл.722, ал.1,т.1 | |
| 7 | 10.06.2011 г. | "ЕВР ЛОДЖИСТИКС ЛИМИТЕД ИНК" Анулирано прехвърляне и цесия на вземането на "ОЛ СИЙЗ БЪЛГАРИЯ" ЕООД, гр.Варна,ул. "Никола Вапцаров" №3, ет.8, офис 21 | 50 700 012,36 | Общ размер на вземането по Договор за цесия, Договора за междуфирмени заеми и Договор за покупко-продажба на акции, в т.ч: | чл.722, ал.1,т.8 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| | | | 50 342 367,14 | Размер на вземането по Договор за цесия от 31.12.2009 г. | чл.722, ал.1,т.8 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| | | | 5 236,60 | Главница по Договор за заем от 10.12.2009 г. | чл.722, ал.1,т.8 | |
| | | | 1 623,28 | Договорна лихва по Договор за заем от 10.12.2009 г. | чл.722, ал.1,т.8 | |
| | | | 350 785,34 | Договорна лихва по Договор за междуфирмен заем от 11.12.2009 г. | чл.722, ал.1,т.8 | |

| № | | | | | |
|---|---|---|---|---|---|
| 8 | 17.05.2011 г. | "РУДЕРСДАЛ" ЕООД, гр. София, ул. "Княз Борис I" №47, ет.2 | Общ размер на взетото по преизборно на търговско предприятие от 10.12.2008 г. и Предварителен договор за продажба на недвижими имоти от 16.07.2007 г. | чл.722, ал.1,т.6 | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| 9 | 06.08.2011 г. | НАЦИОНАЛНА АГЕНЦИЯ ЗА ПРИХОДИТЕ, гр.София, бул. "Княз Дондуков" №52 | 7 095 527,35 Общ размер на взетото по Годишна данъчна декларация по чл.92 от ЗКПО, в т.ч. | | Одобрен с Определение № 90 от 10.08.2011 г. на ТОС |
| | | | 4 919 403,87 Главница до 03.05.2011 г. | чл.722, ал.1,т.6 | |
| | | | 553 647,42 Лихви до 03.05.2011 г. | чл.722, ал.1,т.6 | |
| | | | 18 136,86 Лихви от 04.05.2011 г. до 16.05.2011 г. | чл.722, ал.1,т.6 | |
| | | | 1 604 339,20 Законни лихви от 04.05.2011 г. до 08.07.2014 г. | чл.722, ал.1,т.6 | |
| | | | Законни лихви от 09.07.2014 г. до окончателно погасяване на задължението | чл.722, ал.1,т.6 | |
| 10 | 07.12.2012 г. | "КОТА ЕНЕРДЖИ" АД гр. Варна, р-н "Одесос" бел. "Сливница" №70, ет.2, ап.4 | 2 358 456,00 Договор за цесия на прието вземане с параметри:Общ размер на вземането по Договор за правна помощ от 07.10.2011 г., включващ осъществяване на защита и процесуално представителство по предявен иск срещу "Евр Прогарти Девелопмънт" АД за сумата от 78 816 209,00 лева; | чл.722, ал.1,т.7 | Одобрен с Определение № 8 от 12.02.2013 г. на ТОС |

09.07.2014 г.
(дата на изготвяне на списъка)

Синдик:

# EXHIBIT 32

*Фрея*
*Транслейшънс*

**F**

*Freya*
*Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

**To: THE DISTRICT COURT OF TARGOVISHTE**
**Company Division**

**STATEMENT OF CLAIM**
**(Motion for Declaratory Judgment)**

**FIRST INVESTMENT BANK AD** having EIK (Company number): 831094393 as per the Commercial Registry kept at the Registry Agency and registered office address at Sofia, 37 Dragan Tzankov Boulevard, Izgrev Area, as represented by the Executive Directors Maya Lyubenova Georgieva and Yordan Velichkov Skorchev acting through their proxy Anna Petkova, Manager of the Targovishte Office of First Investment Bank AD duly authorized under notarized Power of Attorney recorded under Nos.86 and 87 of 10ᵗʰ January 2011 in the records kept at the office of Notary Public Dimo Zhelyazkov commissioned under No.101 by the Chambers of Notaries Public for practice in the area of jurisdiction of the Sofia City Court,

*Claimant*

Vs.

**AYR PROPERTY DEVELOPMENT AD** having registered office address at Targovishte, Liliya St., bl.4, Section B, floor 1, apt.1 and EIK:200958720 as represented by the Executive Director Philip Robert Harris, undergoing bankruptcy proceedings in case 14.2011 in the docket of the Targovishte District Court,

*Respondent*

**Amount claimed: BGN 78,615,209.70**
Claimed partially in the amount of BGN 100,000

Legal grounds: Art.694 Para 1 of the Commerce Act

DEAR DISTRICT JUDGE,

On 3ʳᵈ May 2011 the Targovishte District Court (TDC) delivered a judgment in bankruptcy case No.14/2011 to initiate a bankruptcy proceeding against Ayr Property Development AD (APD) having seat and registered office address at Targovishte, Liliya





St., vl.4, Section B, floor 1, apt.2 and EIK (Company number): 200958720, represented by the Executive Director Philip Robert Harris.

The judgment was recorded in the Commercial Registry kept at the registry Agency on 4th May 2011. Within the statutory term on 25th May 2011 we filed Motion of filing No.1991 of the same date under Art.685 of the Commerce Act (CA) to claim the account receivable owed by APD to First Investment Bank AD (FIB or the Bank) and request an inclusion of the Bank in the List of Creditors of the company respondent.

The request to be included in the List of Registered Creditors of APD having been denied gave rise to our motion in opposition under Art.690 Para 1 CA seeking to have our duly asserted claim to be recognized as a creditor of APD, which the Trustee had denied, accepted and registered in the bankruptcy proceedings against the debtor APD in case 14/2011 in the docket of the TDC.

By Ruling No.30 of 12th July 2011 made in case 14/2011 in the docket of the TDC the court denied FIB's motion in opposition against the inclusion of its BGN 78,615,209.70-claim in the List of Unapproved Creditor Claims. The court ruling was recorded in the Commercial Registry on 1st September 2011 following which and within the statutory term we file this Art.694 Para 1 CA motion for declaratory action to ascertain the existence of an unapproved claim.

**Factual background forming the cause of action**

1. Under Bank Loan Agreement No. 39KP-AA-2510 dated 22nd November 2007 ("**BLA 39KP-AA-2510**") and Annexes No.1 of 26th June 2008, No.2 of 30th September 2008, No. 3 of 31st March 2009 and No.4 of 15th December 2009, respectively, thereto, FIB through its Varna Branch Office initially extended a 30-Million-Euro loan to the Borrower **Port Investment Development – Bulgaria 2 EAD having EIK: 148117384** ("**PIDB2**") as represented by Valentin Krumov acting as Executive Director at the date of the above BLA and currently by the Executive Director Maria Ivanova Dimitrova. The Borrower agreed to pay interest to the Bank at the annual rate equal to the base interest rate plus a margin of 6.894 basis points. As per Annex No.4 of 15th December 2009 the maturity date was rescheduled for 30th June 2010. In accordance with Section IX of the above BLA all payments overdue should accrue interest at the agreed interest rate plus a penalty of 20 basis points.

As security for the timely repayment of the loan the Bank accepted a guarantee by virtue of Annex No.3 of 31st March 2009 provided by Chavdar Angelov Angelov (having EGN (Personal number) 6103201066 and permanent address at 11 Ge. Stoletov St., apt.3) and by All Seas Property 2 OOD (having EIK: 148073564 and seat and registered office address at Varna, Primorski Park, the Horizont Complex, pl.3, floor 2, then represented by the Manager Diana Georgieva Koleva and currently by the Manager Lilyana Venelinova Borissova; said guarantees were given under Guarantee Agreements of 31st March 2009 being part and parcel of the above BLA. The Guarantors under said Guarantee Agreement undertook to be jointly liable with the Borrower for all consequences ensuing from failure to repay the principal debt plus all





interests accrued and costs incurred as provided in Art.121 of the Obligations and Contracts Act (OCA).

II. Under Bank Loan Agreement No. 014LD-L-000002 dated 2nd October 2008 and Annexes No.1 of 31st March 2009 and No.2 of 15th December 2009, respectively, thereto ("**BLA 014LD-L-000002**") FIB through its Varna Branch Office initially extended a 1,000,000-Euro (*one million Euros*) loan later increased to 2,500,000 Euros (*two and a half million Euros*) as per Annex No.1 of 31st March 2009 to the Borrower **PIDB2** as represented by Valentin Krumov acting as Executive Director at the date of the above BLA and currently by the Executive Director Maria Ivanova Dimitrova. The Borrower agreed to pay interest to the Bank at the annual rate equal to the base interest rate for Euros plus a margin of 6.894 basis points. As per Annex No.2 of 15th December 2009 the maturity date was rescheduled for 30th June 2010. In accordance with Section IX of the above BLA all payments overdue should accrue interest at the agreed interest rate plus a penalty of 20 basis points.

As security for the timely repayment of the loan the Bank accepted a guarantee by virtue of Annex No.3 of 31st March 2009 provided by Chavdar Angelov Angelov (having EGN (Personal number) 6103201066 and permanent address at 11 Ge. Stoletov St., apt.3) and by All Seas Property 2 OOD (having EIK: 148073564 and seat and registered office address at Varna, Primorski Park, the Horizont Complex, pl.3, floor 2, then represented by the Manager Diana Georgieva Koleva and currently by the Manager Lilyana Venelinova Borissova; said guarantees were given under Guarantee Agreements of 31st March 2009 being part and parcel of the above BLA. The Guarantors under said Guarantee Agreement undertook to be jointly liable with the Borrower for all consequences ensuing from failure to repay the principal debt plus all interests accrued and costs incurred as provided in Art.121 OCA.

III. Under Bank Loan Agreement No. 014LD-L-000006 dated 29th December 2009 ("**BLA 014LD-L-000006**") FIB through its Varna Branch Office extended a 8,000,000-Euro (*eight million Euros*) loan to the Borrower **ASSET MANAGEMENT EAD** having EIK: 103921587 and represented by Nikolay Georgiev Hubenov (having EGN:7109071188) acting as Executive Director. The Borrower agreed to pay an 11% (*eleven per cent*) annual interest to the Bank. In accordance with Article 15 of the above BLA the loan was agreed to be repaid under a repayment schedule (being part and parcel of the said BLA) and the maturity date was set at 30th June 2010. As per Section IX of the BLA all payments overdue should accrue interest at the agreed interest rate plus a penalty of 20 basis points.

As security for the timely repayment of the loan the Bank accepted a guarantee by virtue of Annex No.3 of 31st March 2009 provided by Chavdar Angelov Angelov (having EGN (Personal number) 6103201066 and permanent address at 11 Ge. Stoletov St., apt.3) and by All Seas Property 2 OOD (having EIK: 148073564 and seat and registered office address at Varna, Primorski Park, the Horizont Complex, pl.3, floor 2, then represented by the Manager Diana Georgieva Koleva and currently by the Manager Lilyana Venelinova Borissova; said guarantees were given under Guarantee Agreements of 29th December 2009 being part and parcel of the above BLA. The





Guarantors under said Guarantee Agreement undertook to be jointly liable with the Borrower for all consequences ensuing from failure to repay the principal debt plus all interests accrued and costs incurred as provided in Art.121 OCA.

On account of the occurrence of maturity dates of the three above BLAs, i.e. 30th June 2010, the account receivable of the Bank became due and payable by all jointly indebted guarantors for the loan.

Apart from Chavdar Aneglov Angelov and All Seas Property 2 OOD that assumed joint liability for repayment of the above loan, the latter was further secured by contractual mortgages as created and recorded in favour of FIB of the following real estates owned by the Respondent APD:

A. Land Property of identification No.02508.88.734 having area of 579,063 m² (*five hundred seventy nine thousand and sixty-three square meters*) and durable land use designation as afforested territory and manner of permanent use: forest for another type of wood production (*of former identification number 88.346 as per the local cadaster map as approved by Order No.300-5-5 of 4th February 2004 of the Executive Director of the Cadastre Agency, and amended by Order No. КД-14-08-Б-897 of 17th May 2007 of the Dobrich Cadastre Office Head*), and adjoining land properties with Nos. 02508.88.373, 02508.88.162, 02508.88.780 and 02508.88.373, respectively;

B. Land Property with identification No.02508.88.735 and having area of 212,239 m² (*two hundred and twelve thousand two hundred and thirty-nine square meters*), and durable land use designation as afforested territory and manner of permanent use: forest for another type of wood production (*of former identification number 88.346 as per the local cadaster map as approved by Order No.300-5-5 of 4th February 2004 of the Executive Director of the Cadastre Agency, and amended by Order No. КД-14-08-Б-897 of 17th May 2007 of the Dobrich Cadastre Office Head*), adjoining land properties with Nos.: 02508.88.373, 02508.88.374 and 02508.88.162, respectively;

C. Land Property of identification No.02508.88.736 having area of 251,424 m² (*two hundred fifty one thousand four hundred and twenty-four square meters*) and durable land use designation as afforested territory and manner of permanent use: forest for another type of wood production (*of former identification number 88.343 as per the local cadaster map as approved by Order No.300-5-5 of 4th February 2004 of the Executive Director of the Cadastre Agency, and amended by Order No. КД-14-08-Б-897 of 17th May 2007 of the Dobrich Cadastre Office Head*), and adjoining land properties of Nos. 02508.88.386, 02508.88.629, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 and 02508.88.162, respectively;

Since the date of signing **BLA 39KP-AA-2510** the ownership of the property and the mortgages thereof have been subject to the following changes:

- On 23rd November 2007 PIDB2 acting as the owner of the properties described above created a mortgage of said properties in favour of FIB by




virtue of Title Deed No.152, vol.II, reg.No.4940 dated 23rd November 2007, case No.3070/2007 in the list kept at the Registry Office of the town of Balchik; the mortgage was created to secure the timely repayment of the Mortgagor's liabilities arising from **BLA 39KP-AA-2510;**

- On 17th December 2007 and by virtue of Title Deed No.179, vol. X, case No.3382 of 17th December 2007 and reg.No.5400/2007 in the list kept at the Registry Office of the town of Balchik PIDB2 transferred the title of said properties over to All Seas Property 2 OOD (ASP2) having EIK: 148073564;

- On 27th June 2008 ASP2 acting as the owner of the properties described above created a mortgage of said properties in favour of FIB by virtue of Title Deed No.177, vol.I, reg.No.2451 dated 26th June 2008, case No.1340/2008 in the list kept at the Registry Office of the town of Balchik; the mortgage was created to secure the timely repayment of the Mortgagor's liabilities arising from **BLA 39KP-AA-2510** and Annex 1 of 26th June 2008;

- On 3rd October 2008 ASP2 acting as the owner of the properties described above created two mortgages of said properties in favour of FIB, Sofia, as follows:

   a) By virtue of Title Deed No.55, vol.II, reg.No.3668 dated 3rd October 2008, case No.2136/2008 in the list kept at the Registry Office of the town of Balchik; the mortgage was created to secure the timely repayment of the Mortgagor's liabilities arising from **BLA 39KP-AA-2510,** Annex 1 of 26th June 2008 and Annex 2 of 30th September 2008;

   b) By virtue of Title Deed No.56, vol.VIII, reg.No.3670 dated 3rd October 2008, case No.2138/2008 in the list kept at the Registry Office of the town of Balchik, a mortgage of land property of identification number 02508.88.736 was created to secure the timely repayment of the Mortgagor's liabilities arising from **BLA 014LD-L-000002;**

- On 31st March 2009 ASP2 acting as the owner of the properties described above created two mortgages of said properties in favour of FIB, Sofia, as follows:

   a) By virtue of Title Deed No.41, vol.I, reg.No.1227 dated 1st April 2009, case No.367/2009 in the list kept at the Registry Office of the town of Balchik a mortgage was created to secure the timely repayment of the Mortgagor's liabilities arising from **BLA 39KP-AA-2510,** Annex 1 of 26th June 2008, Annex 2 of 30th September 2008 and Annex 3 of 31st March 2009;

   b) By virtue of Title Deed No.40, vol.I, reg.No.1226 dated 31st March 2009, case No.366/2009 in the list kept at the Registry Office of the town of Balchik, a mortgage of land property of identification number 02508.88.736 was created to secure the timely repayment of the Mortgagor's liabilities arising from **BLA 014LD-L-000002** and Annex 1 of 31st March 2009 thereto;




According to notarial deed of sale and purchase No.13, vol.XIII, case 1878/09, reg.No.4180 of 10th December 2009 in the list kept at the Registry Office of the town of Balchik, the Respondent company Ayr Property Development AD (undergoing bankruptcy proceeding) that acquired the properties by virtue of the sale and purchase transaction validated by said notarial deed, which properties were a stand alone asset of the business enterprise of ASP2 being subject of the Agreement for Sale of Business Enterprise of 10th December 2009 (the Business Enterprise Agreement or BEA). The subject matter of the latter contract concluded under Art.15 of the Commerce Act (CA) has been described in detail in Article 1; there the parties expressly stated that the  "existing mortgage encumbrances and the contractual obligations giving rise to these, together with all future liabilities that might arise with regard to the Silver Beach investment project (to be developed on the land properties described above)" are an integral part of the business enterprise (i.e. all rights, obligations and factual relationships in their entirety) of the Seller acting also as the Debtor under the above mentioned BLAs. According to Article 4 of the BEA the Respondent company APD acting as the Buyer agreed to assume all liabilities related to the implementation of the project, and in Article 8 thereof it was expressly set forth that said mortgage encumbrances and the other financial costs were among price-formation factors pertaining to the sale and purchase transaction. Hence and as expressly agreed by the parties thereto, APD assumed under Art.15 CA with reference to Art.101, proposition one, prong two of the Contract and Obligations ACT (OCA) the obligations of the Seller Company, including the accounts receivable owed to FIB as secured by both a guarantee and a mortgage of the land properties APD thus acquired. The arrangement for stepping into the debt owed to FIB was approved by FIB and validated by the fact that upon the conclusion of transfer transaction a new contractual mortgage was duly executed by virtue of Title Deed No.5, vol. 1, case 111/2010, recorded under reg. No.247 of 19th February 2010 in the list kept at the Registry Office of the town of Balchik, as security for the repayment of the liabilities arising from **BLA 014LD-L-000002.**

By its petition for bankruptcy of APD in case 14/2011 before the Targovishte District Court and this motion for declaratory judgment the Bank explicitly asserts its rights of a creditor of said company stemming from the act of assuming its debt jointly with the transferor in accordance with the Business Enterprise Agreement. The Respondent Company APD has not contested the existence of its obligations arising from the mortgages.

The facts outlined above are confirmed by the contents of the business books and records of the Respondent Company showing an entry of an off balance transfer of the accounts receivable owed to the transferor ASP2 in the form of a monetary claim arising from a contractual obligation undertaken by APD under the Business Enterprise Agreement of 10th December 2009, and concerning a repayment of contractual liabilities under bank loan agreements signed with FIB and secured by mortgages of the land properties described above.

A. In addition to the legal standard requiring from the transferee to a business enterprise sale and purchase transaction to assume all transferor's rights and





obligations the Respondent Company APD and the Transferor ASP2 entered into an Agreement to Repurchase Liabilities to Banks and Silver Beach Mortgage Debts dated 19th February 2010. According to the latter the parties thereto expressly stated that by virtue of the Agreement for Sale and Purchase of ASP2's Business Enterprise (refereed to as "Silver Beach" by the parties thereto) APD undertook to "repurchase all bank loans granted by First Investment Bank AD and Corporate Commercial Bank AD as secured by mortgages of the Silver Beach investment land *properties, which properties have been acquired by Ayr by virtue of a land property purchase transaction validated by notarial deed No. 51, volume VIII, reg.No.5681, case No.1173 dated 10th December 2009 in the list kept in the office of Obreten Obretenov, Notary Public, licensed to practice within the area of the Balchik Regional Court.*"

Respondent's failure to fulfil its duties as of 3rd May 2011 – the date of the court decision to institute bankruptcy proceedings – has resulted in APD (having agreed to repay ASP2's obligations under the Agreement to Assume Debt) owing to FIB

- Under Bank Loan Agreement No. 39KP-AA-2510 dated 22nd November 2007 and Annexes No.1 of 26th June 2008, No.2 of 30th September 2008, No. 3 of 31st March 2009 and No.4 of 15th December 2009, respectively, thereto;

- Under Bank Loan Agreement No. 014LD-L-000002 dated 2nd October 2008 and Annexes No.1 of 31st March 2009 and No.2 of 15th December 2009, respectively, thereto; and

- Under Bank Loan Agreement No. 014LD-L-000006 dated 29th December 2009, as follows:

| BLA No. | 014LD-L-000002 | 39KP-AA-2510 | 014LD-L-000006 | Total |
|---|---|---|---|---|
| Amount in EUR | 2,500,000.00 | 30,000,000.00 | 8,000,000.00 | |
| Principal awarded | 0.00 | 0.00 | 1,049,000.00 | |
| Principal overdue | 2,500,000.00 | 20,000,000.00 | 6,950,118.02 | |
| Principal Total | 2,500,000.00 | 20,000,000.00 | 7,999,118.02 | |
| Interest awarded | 283,432.50 | 2,862,277.39 | 805,908.01 | |
| Penalty interest 25 Oct. 2010 – 2 May 2011 | 457,852.50 | 3,662,820.00 | 1,131,131.71 | |
| Legal interest 25 Oct. 2010 – 2 May 2011 | 0.00 | 0.00 | 60,214.38 | |
| **Interest total** | **741,285.00** | **6,525,097.39** | **1,997,254.10** | |
| **Debt total in EUR** | **3,241,285.00** | **26,525,097.39** | **9,996,372.12** | **39,762,754.51** |





| Debt total in BGN | 6,339,402.44 | 51,878,581.23 | 19,551,204.48 | 77,769,188.15 |
|---|---|---|---|---|

Court costs:

| BLA No. | 014LD-L-000002 | 39KP-AA-2510 | 014LD-L-000006 | Total |
|---|---|---|---|---|
| Writ of Execution filing fee | 11086.92 | 111,962.56 | 72,557.69 | |
| Declaratory action filing fee pay up | 11086.92 | 111,962.56 | 72,557.69 | |
| Court-awarded Legal adviser's fee | 6,000.00 | 56,500.00 | 37,500.00 | |
| Legal advisor's fee in enforcement action | 5,500.00 | 56,000.00 | 36,350.00 | |
| Other enforcement action costs | 107,116.62 | 106,550.59 | 43,290.00 | |
| Total in BGN | 140,790.46 | 442,975.71 | 262,255.38 | 846021.55 |

| Total EUR | 3313270.02 | 26,751,587.27 | 10,130,461.17 | 40,195,318.46 |
|---|---|---|---|---|
| Total in BGN | 6,480,192.90 | 52,321,556.94 | 19,813,459.86 | 78,615,209.70 |

The amounts have been converted into BGN at the fixed rate of exchange where 1.00 EUR = BGN 1,95583.

In this action the AR owed to the Bank has been claim in a portion equal to 100,000 Bulgarian levs (one hundred thousand Bulgarian levs).

Pursuant to the foregoing and in the statutory time limit set under Art.694 Para 1 CA we hereby submit this motion for declaratory judgment and kindly move the court, as follows:

Summon us before the court and as soon as our claim has been proven well substantiated we request the court to declare that our account receivable, which has not been recognized in the bankruptcy proceeding in case 14/2011, exists and that the Claimant First Investment Bank AD, Sofia, is owed an AR by the Respondent APD (*having seat and registered office address at Targovishte, Liliya St., bl.4, Section B, floor 1, apt.1 and EIK:200958720 as represented by the Executive Director Philip Robert Harris*), and order that the AR in the amount of BGN 78,615,209.70 is accepted and registered as valid in the bankruptcy proceedings of APD, given that said AR is claimed in part only in this case, i.e. BGN 100,000 (one hundred thousand Bulgarian levs) being the principal, interest and costs liabilities as arising from the obligations of ASP2 (*having EIK:148073564, seat and registered office address at Vrana, Primorski Park,pl.3, Horizont Complex, 2nd floor, as represented by the Manager Lilyana Venelinova Borisova having EGN (Personal number):7501031218*) acting as the Transferor under the Business





Enterprise Agreement of 10th December 2009 as assumed by the Transferee thereto (Ayr Property Development AD), which obligations have arisen from the joint liability of the firmer company acting as guarantor for:

- Bank Loan Agreement No. 39KP-AA-2510 dated 22nd November 2007 and Annexes No.1 of 26th June 2008, No.2 of 30th September 2008, No. 3 of 31st March 2009 and No.4 of 15th December 2009, respectively, thereto;
- Bank Loan Agreement No. 014LD-L-000002 dated 2nd October 2008 and Annexes No.1 of 31st March 2009 and No.2 of 15th December 2009, respectively, thereto; and
- Bank Loan Agreement No. 014LD-L-000006 dated 29th December 2009.

We further move the court to award us the costs we have incurred in this action plus the fee of the legal advisor acting as our counsel of record.

We kindly ask the court to admit the notarized copies of the documents shown below and enclosed herein:

- o Bank Loan Agreement No. 39KP-AA-2510 dated 22nd November 2007 and Annexes No.1 of 26th June 2008, No.2 of 30th September 2008, No. 3 of 31st March 2009 and No.4 of 15th December 2009, respectively, thereto;
- o Bank Loan Agreement No. 014LD-L-000002 dated 2nd October 2008 and Annexes No.1 of 31st March 2009 and No.2 of 15th December 2009, respectively, thereto;
- o Bank Loan Agreement No. 014LD-L-000006 dated 29th December 2009;
- o Guaranty Agreements – 2 (two);
- o Deeds of contractual mortgage – 9 (nine);
- o Agreement for Sale of Business Enterprise of 10th December 2009;
- o Agreement to Repurchase Liabilities to Banks and Silver Beach Mortgage Debts dated 19th February 2010;
- o Title deed No.13, vol.XIII, case 1878/09, reg. No.4180 of 10th December 2009 in the Registry Office of Balchik.

We further move that the case file of case 14/2011 be attached to the file of this action.

For the purpose of ascertaining the amount of the liability we ask the court to appoint a forensic accountant to prepare a report as follows:

As directed by the court the forensic accountant should examine the set of documents in the case file, then the accounting books of the Respondent Company, the credit files and accounting records kept at the Varna Barch Office of FIB and showing ASP2 as the guarantor, and provide answers to the following questions:

- What are the amounts of the loans extended to the Borrowers under:





- o Bank Loan Agreement No. 39KP-AA-2510 dated 22nd November 2007 and Annexes No.1 of 26th June 2008, No.2 of 30th September 2008, No. 3 of 31st March 2009 and No.4 of 15th December 2009, respectively, thereto;

- o Bank Loan Agreement No. 014LD-L-000002 dated 2nd October 2008 and Annexes No.1 of 31st March 2009 and No.2 of 15th December 2009, respectively, thereto;

- o Bank Loan Agreement No. 014LD-L-000006 dated 29th December 2009?

- When the money lent under said BLAs were used?

- What are the amounts of the liabilities (principal, interest and costs) owed to FIB as of 3rd May 2011 (the date when the court initiated bankruptcy proceedings against APD), which liabilities have arisen for APD when said company assumed the obligations of ASP2, the latter acting as guarantor and jointly liable person for repayment of the debts under the above three BLAs?

*Encl.*: A power of attorney.

A copy of this Motion and the documentary evidence enclosed hereto to be served on the Respondent.

A receipt showing payment of filing fee.

Respectfully submitted:

*Signed,*
Anna Petkova,
Attorney
*Round seal of First Investment Bank AD,*
*Office Targovishte*

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Statement of Claim (Motion for Declaratory Judgment) filed by First Investment Bank AD in the District Court of Targovishte. This translation has 10 (ten) pages.*

*Translator: _____ Ilka Simeonova Dyulgerova*



До
**ОКРЪЖЕН СЪД**
**ГР.ТЪРГОВИЩЕ**
**ТЪРГОВСКО ОТДЕЛЕНИЕ**

**И С К О В А   М О Л Б А**

от

**"ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД**, със седалище и адрес на управление: гр.София, район Изгрев, бул."Драган Цанков" 37, вписана търговския регистър, воден от Агенцията по вписванията с ЕИК 831094393, представлявана от Изпълнителните директори Мая Любенова Георгиева и Йордан Величков Скорчев, чрез пълномощник Анна Петкова – Управител на "Първа инвестиционна банка" АД клон Търговище, упълномощена с пълномощно Рег. № 86 и 87 от 10.01.2011г. на Нотариус Димо Желязков с Рег. № 101 на НК с район на действие СРС

Срещу:

**"ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД**, със седалище гр.Търговище, адрес на управление ул. „Лилия" бл. 4 тяло Б, ет.1 , ап.2, ЕИК 200958720, представлявано от Изпълнителния директор Филип Робърт Харис – в производство по несъстоятелност по т.д. 14/2011г. по описа на Търговищки окръжен съд

<u>Цена на иска:</u> 78 615 209,70 лв
<u>Предявен частично в размер на 100 000 лв.</u>

<u>Правно основание:</u> чл.694 ал.1 от ТЗ

**УВАЖАЕМА/И Г-ЖО/Г-Н ОКРЪЖЕН СЪДИЯ,**

С решение от 03.05.2011г., постановено по по т.д.н. № 14/2011 г. по описа на Търговищки окръжен съд, е открито производство по несъстоятелност за "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД, със седалище гр.Търговище, адрес на управление ул. „Лилия" бл. 4 тяло Б, ет.1 , ап.2, ЕИК 200958720, представлявано от Изпълнителния директор Филип Робърт Харис.

Решението е вписано в Търговския регистър към Агенция по вписванията на 04.05.2011г. В законно предвидения срок по чл. 685 ТЗ с молба Вх. № 1991/ 25.05.2011г. предявявихме вземането на "Първа инвестиционна банка" АД към " ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД, с искане Банката да бъде вписана в списъка на кредиторите на ответното дружество.

Поради невключването на ПИБ АД в списъка на кредиторите с приети вземания, на основание чл. 690 ал. 1 от ТЗ предявихме възражение за приемане на неприето от Синдика заявено вземане в производството по несъстоятелността по т.д. 14 / 2011 год. по описа на Търговищки окръжен съд с длъжник " ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД, с ЕИК 200958720, гр.Търговище.

С Определение № 30/12.07.2011 г. постановено по т.д.н. № 14/2011 г. по описа на Търговищки окръжен съд съдът остави без уважение като неоснователно възражението на ПИБ АД против включване на вземането в размер на 78 615 209,70 лв. в списъка на неприетите вземания. Определението е вписано в Търговския регистър към Агенция по вписванията на

01.09.2011г., поради което   в законоустановения срок и на основание чл. 694   ал. 1 ТЗ предявяваме настоящата искова молба за установяване съществуването на неприето вземане.

ОБСТОЯТЕЛСТВА, НА КОИТО СЕ ОСНОВАВА ИСКА:

I - На основание Договор за банков кредит № 39KP-AA-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г. към него "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, чрез свои клон в гр.Варна  предостави на кредитополучателя "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД, ЕИК 148117384,      представлявано от  към датата на сключване на  договора  от  Изп.директор Валентин Крумов Гигов, а понастоящем от Мария Иванова Димитрова - Изпълнителен директор,   кредит с първоначален размер  30 000 000 (тридесет  милиона) евро. За ползвания кредит дружеството кредитополучател дължи на Банката  годишна лихва в размер на Базов лихвен процент на банката за евро , увеличен с надбавка от 6, 894 пункта.      Съгласно Анекс № 4 от 15.12.2009г. крайният  срок на изплъжаване на кредита е  30.06.2010 год. Просрочените плащания, съгласно раздел IX  от договора се олихвяват с договорения лихвен процент , плюс наказателна надбавка от 20 /двадесет/ пункта.

За обезпечаване на срочното погасяване на предоставения кредит Банката е приела / с Анекс № 3 от 31.03.2009г./ поръчителство от Чавдар Ангелов Ангелов, ЕГН 6103201066 с постоянен адрес  гр.Варна  ул. "Ген .Столетов"  № 11,  ап.3 и "Ол сийз пропърти 2" ООД, ЕИК 148073564, със седалище и адрес на управление гр.Варна, Приморски парк, К-с "Хоризонт" пл. № 3, ет.2 , представлявано към датата на сключване на договора от управителя Диана Георгиева Колева, а понастоящем от управителя Лиляна Венелинова Борисова, съгласно Договори за поръчителство  от  31.03.2009г. , неразделна част от Договора за предоставяне на банков кредит. Съгласно предмета на договора поръчителите са се  задължили, солидарно с кредитополучателя по цитирания договор за кредит; да отговарят за всички последици от неизпълнението на главното задължение, включително за лихвите и разноските, съгласно разпоредбата на чл. 121 от ЗЗД.

II - На основание Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009г. и Анекс № 2 от  15.12.2009г. към него,   "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, чрез своя клон в гр.Варна  предостави на  кредитополучателя "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД, ЕИК 148117384,    представлявано  към датата на сключване на договора от Изп.директор Валентин Крумов Гигов, а понастоящем от Мария Иванова Димитрова - Изпълнителен директор,   кредит  с първоначален размер   1 000 000 /един милион / евро, увеличен с Анекс 1  от 31.03.2009г.  на 2 500 000 /два милиона и петстотин хиляди ) евро. За ползвания кредит дружеството кредитополучател дължи на Банката  годишна лихва в размер на Базов лихвен процент на банката за евро , увеличен с надбавка от 6, 894 пункта.      Съгласно Анекс № 2 от 15.12.2009г.    крайният    срок на изплъжаване на кредита е  30.06.2010 год. Просрочените плащания, съгласно раздел IX  от договора се олихвяват с договорения лихвен процент , плюс наказателна надбавка от 20 /двадесет/ пункта.

За обезпечаване на срочното погасяване на предоставения кредит  Банката е приела поръчителство от ответника Чавдар Ангелов Ангелов, ЕГН 6103201066 с постоянен адрес гр.Варна ул. "Ген .Столетов" № 11, ап.3 и ответното дружество "Ол сийз пропърти 2" ООД, ЕИК 148073564, със седалище и адрес на управление гр.Варна, Приморски парк, К-с "Хоризонт" пл. № 3, ет.2 , представлявано към датата на сключване на договора от управителя Диана Георгиева Колева, а понастоящем от управителя Лиляна Венелинова Борисова, съгласно Договори за поръчителство  от  31.03.2009г. , неразделна част от Договора за предоставяне на банков кредит. Съгласно предмета иа договора поръчителите са се  задължили, солидарно с

кредитополучателя по цитирания договор за кредит, да отговарят за всички последици от неизпълнението на главното задължение, включително за лихвите и разноските, съгласно разпоредбата на чл. 121 от ЗЗД.

III - На основание Договор за банков кредит № 014LD-L-000006291123009 "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, чрез своя клон в гр.Варна предостави на кредитополучателя "АСЕТ МЕНИДЖМЪНТ" ЕАД , ЕИК 103921587, представлявано от Николай Георгиев Хубенов, ЕГН 7109071188- Изпълнителен директор, кредит в размер на 8 000 000 (осем милиона) евро. За ползвания кредит дружеството-кредитополучател изплаща на Банката годишна лихва в размер на 11 % /единадесет процента/. Съгласно чл.5 от договора ползвания кредит се погасява съгласно Погасителния план- неразделна част от договора, с краен срок на изплащане на кредита 30.06.2010 год. Просрочените плащания, съгласно раздел IX от договора се олихвяват с договорения лихвен процент , плюс наказателна надбавка от 20 /двадесет/ пункта.

За обезпечаване на срочното погасяване на предоставения кредит Банката е приела поръчителство от Чавдар Ангелов Ангелов, ЕГН 6103201066 с постоянен адрес гр.Варна ул. "Ген .Столетов" № 11, ап.3 и "Ол сийз пропърти 2" ООД, ЕИК 148073564, със седалище и адрес на управление гр.Варна, Приморски парк, К-с "Хоризонт" пл. №.3, ет.2 , представлявано към датата на сключване на договора от управителя Диана Георгиева Колева, а понастоящем от управителя Лиляна Венелинова Борисова, съгласно Договори за поръчителство от 29.12.2009г., неразделна част от Договора за предоставяне на банков кредит. Съгласно предмета на договора поръчителите са се задължили, солидарно с кредитополучателя по цитирания договор за кредит, да отговарят за всички последици от неизпълнението на главното задължение, включително за лихвите и разноските, съгласно разпоредбата на чл. 121 от ЗЗД.

Поради настъпилия падеж и на трите цитирани по-горе договори за кредит- 30.06.2010г., вземането на банката е напълно изискуемо и ликвидно спрямо всички солидарно задължени по кредитното правоотношение лица.

Освен поетата солидарна лична и имуществена отговорност от поръчителите Чавдар Ангелов Ангелов и „Ол сийз пропърти 2" ООД като обезпечение по кредитните задължения служат вписани в полза на ПИБ АД договорни ипотеки върху недвижими имоти, понастоящем собственост на ответното дружество"ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД,а именно:

А) Имот с кадастрален идентификатор № 02508.88.734 с площ по скица от 579 063 квадратни метра, находящ се в гр. Балчик, Община Балчик,Област Добрич,местност „Сребрист бряг", трайно предназначение: горска, начин на трайно ползване: друг вид дървопроизводителна гора; стар идентификатор: 88. 346, по кадастрална карта, одобрена със заповед № 300- 5- 5/ 04. 02. 2004 год. на изпълнителния директор на АГКК к изменена със заповед № КД- 14- 08- 727/ 24. 07. 2008 год. на началника на СГКК- гр. Добрич, при съседи имоти кад. №№02508.88. 373, 02508.88. 162, 02508. 88. 780, 02508.88. 735.

Б) Имот с кадастрален № 02508.88.735 с площ по скица от 212 239 квадратни метра,находящ се в гр. Балчик, Община Балчик, Област Добрич, местност „Сребрист бряг", трайно предназначение-горска,начин на трайно ползване:друг вид дървопроизводителна гора, стар идентификатор № 88. 346, по кадастрална карта, одобрена със заповед № 300- 5- 5/ 04. 02. 2004 год. на изпълнителния директор на АГКК, изменена със заповед № КД- 14- 08- 727/ 24. 07. 2008.год., при съседи имоти кад. №№ 02508.88.373, 02508.88.734, 02508.88.162.

В) Имот с кадастрален № 02508.88.736 с площ по скица от 251 424 кв. м., находящ се в гр. Балчик, Община Балчик, Област Добрич, местност „Сребрист бряг", трайно предназначение - горска, начин на трайно ползване: друг вид дървопроизводителна гора; стар идентификатор № 88.343, по кадастрална карта, одобрена със заповед № 300- 5- 5/ 04. 02. 2004 год. на

изпълнителния директор на АГКК, изменена със заповед № КД- 14- 08- 727/ 24. 07. 2008 год., при съседи имоти кад. №№ 02508.88.386, 02508.88.629, 02508.88.737, 02508.88.313, 02508. 88. 343, 02508.88.162,

        като от  датата на  сключване на    Договор за банков кредит № 39КР-АА-2510 - 22.11.2007 г., се проследява следната   трансформация в собствеността и поредност на ипотечните обезпечения

- На 23.11.2007 г. "Порт инвестмънт девелопмънт-България 2" ЕАД, в качеството му на собственик на подробно описаните по-горе имоти е учредил договорна ипотека в полза на "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, гр. София, с нотариален акт № 152, том II, вх.рег. № 4949 от 23.11.2007 г., дело № 3070/07 г. по опис на Служба по вписванията гр.Балчик , за обезпечаване срочното изпълнение на задълженията си по Договор за банков кредит № 39КР-АА-2510 от 22.11.2007 г.

- На 17.12.2007г. с нотариален акт № 179, том X, н.д. 3382/17.12.2007г. Вх. Рег. № 5400/2007г. по описа на Служба по вписванията гр.Балчик, "Порт инвестмънт девелопмънт-България 2" ЕАД е прехвърлило собствеността върху подробно описаните недвижими имоти на "Ол сийз пропърти 2" ООД ЕИК 148073564.

- На 27.06.2008 г. "Ол сийз пропърти 2" ООД, в качеството му на собственик на подробно описаните  по-горе  имоти  е  учредил  договорна  ипотека  в  полза  на  "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, гр. София, с нотариален акт № 177, том I, рег. № 2451 от 27.06.2008 г., дело № 1340/08 г. по опис на Служба по вписванията гр.Балчик , за обезпечаване срочното изпълнение на задълженията по Договора за кредит№ 39КР-АА-2510 от 22.11.2007 г. и анекс №1 от 26.06.2008 г.

- На 03.10.2008 г. "Ол сийз пропърти 2" ООД, в качеството му на собственик на подробно описаните  по-горе  имоти  е  учредил  две  договорни  ипотеки  в  полза  на  "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, гр. София:

а/  с нотариален акт № 55, том II, рег. № 3668 от 03.10.2008 г., дело № 2136/08 г. по описа на Служба по вписванията гр.Балчик , за обезпечаване срочното изпълнение на задълженията  по Договора за кредит№ 39КР-АА-2510 от 22.11.2007 г.  анекс №1 от 26.06.2008 г. и анекс №2 от 30.09.2008 г. И

б/  с нотариален акт № 56, том VIII, рег. № 3670 от 03.10.2008 г., дело № 2138/08 г. по описа на Служба по вписванията гр.Балчик , за обезпечаване срочното изпълнение на задълженията  по Договор за банков кредит  № 014LD-L-000002/02.10.2008г. върху  ПИ с идентификатор № 02508.88.736.

- На  31.03.2009 г. "Ол сийз пропърти 2" ООД, в качеството му на собственик на подробно описаните  по-горе  имоти е  учредил  две  договорни  ипотеки  в  полза  на  "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, гр. София:

а/ с нотариален акт № 41, том I, рег. № 1227 от 01.04.2009 г., дело № 367/09 г. по описа на Служба по вписванията гр.Балчик , за обезпечаване срочното изпълнение на задълженията  по Договора за кредит № 39КР-АА-2510 от 22.11.2007 г., анекс №1 от 26.06.2008 г., анекс №2 от 30.09.2008 г. и анекс №3 от 31.03.2009 г.към него.

б/  с нотариален акт № 40, том I, рег. № 1226 от 31.03.2009 г., дело № 366/09 г по описа на Служба по вписванията гр.Балчик , за обезпечаване срочното изпълнение на задълженията  по Договор за банков кредит № 014LD-L-000002/02.10.2008г. и Анекс № 1 от 31.03.2009г.към него върху ПИ с идентификатор № 02508.88.736.

Съгласно нотариален акт за покупко-продажба № 13, т. XIII, рег. № 4180 / 10.12.2009 г. по описа на Служба по вписванията гр.Балчик, по искане на дружеството "Еър пропърти девелопмънт" АД, в производство по несъстоятелност, представлява сделка на материализираната в акта възмездна сделка, описаните имоти, като обособена част от активите на прехвърленото с Договор за продажба от 10.12.2009г. търговско предприятие "Ол сийз пропърти 2" ООД. Предметът на договора, сключен по реда на чл.15 ТЗ, Търговския закон, е очертан подробно в чл. 1, като в обема на търговското предприятие на продавача и длъжник по цитираните по-горе кредитни сделки "Ол сийз пропърти 2" ООД като съвкупност от права, задължения и фактически отношения, страните изрично са посочили в това число и съществуващите ипотечни тежести и породилите ги облигационни задължения, както и всички последващи във времето финансови ангажименти, свързани с инвестиционния проект "Силвър бийч" /включващ описаните поземлени имоти/. Съгласно чл.4 от Договора за продажба на търговско предприятие, ответното дружество "Еър пропърти девелопмънт" АД – като купувач, заявява, че поема всички задължения свързани с реализирането на проекта "Силвър бийч", като в чл.8 от същия договор изрично се посочва, че ипотечните тежести и другите финансови разходи от "Еър пропърти девелопмънт" АД имоти. Уговорката за встъпване в дълга към "Първа инвестиционна банка" АД е одобрена от банката с факта, че след прехвърлителната сделка надлежно е учредена нова договорна ипотека с нотариален акт № 5, том I, дело 111/2010, вх.рег. № 247 от 19.02.2010г. по описа на Служба по вписванията гр.Балчик, за обезпечаване на задълженията по Договор за банков кредит № 014LD-L-000006/29.12.2009г.

С молбата за откриване на производство по несъстоятелност за "Еър пропърти девелопмънт" АД по т.д. 14/2011г. по описа на ТОС и настоящия установителен иск, Банката изрично претендира правата си на кредитор към дружеството на основание поемането на дълг чрез встъпване солидарно с прехвърлителя, съгласно договора за продажба на търговското предприятие. До настоящия момент ответното дружество "Еър пропърти девелопмънт" АД не е оспорило задълженията си по поетите ипотечни задължения.

Изложеното по-горе се потвърждава от извлечението от търговските книги на ответника, в които вземането на прехвърлителя "Ол сийз пропърти 2" ООД е осчетоводено задбалансово като парично вземане, произтичащо от договореното задължение на "Еър пропърти девелопмънт" АД по договор за покупко-продажба на търговско предприятие от 10.12.2009г. с предмет: изплащане на задълженията по договори за банков кредит, сключени с "Първа инвестиционна банка" АД, гарантирани с ипотеки върху описаните недвижими имоти.

Освен правно регламентирания довод, че при продажба на търговско предприятие правоприемникът поема всички права и задължения на прехвърлителя, между ответното дружество "Еър пропърти девелопмънт" АД и прехвърлителя "Ол сийз пропърти 2" ООД е сключено Споразумение за изкупуване на банкови задължения с ипотечни тежести при Силвър бийч от 19.02.2010г. Съгласно клаузите на споразумението страните изрично са заявили , че с Договора за продажба на търговско предприятие на "Ол сийз пропърти 2" ООД /означавано от страните "Силвър бийч" / , "Еър пропърти девелопмънт" АД е „ поело договорености да изкупи всички предоставени от Първа инвестиционна банка АД и Корпоративна търговска банка АД , банкови кредити гарантирани с ипотеки върху инвестиционните терени на Силвър бийч, понастоящем придобити в собственост от Еър съгласно покупко-продажба на недвижим имот, оформена с НА №51, том VIII, рег. № 5681, дело 1173 от 10.12.2009г. по описа на Нотариус Обретен Обретенов, Рег. № 109 на НК. „

В резултат на неизпълнението на ответника към 03.05.2011год. -датата на решението за откриване на производство по несъстоятелност, задължението на "Еър пропърти девелопмънт" АД към "ПЪРВА ИВЕСТИЦИОННА БАНКА" АД, произтичащо от поетите чрез встъпване в дълг задължения на "Олсийз пропърти 2" ООД по:

Договор за банков кредит № 39КР-АА-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г.;

Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009г. и Анекс № 2 от 15.12.2009 г.

Договор за банков кредит № 014LD-L-000006/29.12.2009г.

Са в размер на:

| кредит № | 014LD-L-000002 | 39КР-АА-2510 | 014LD-L-000006 | Общо |
|---|---|---|---|---|
| размер EUR | 2500000.00 | 30000000.00 | 8000000.00 | |
| присъдена главница | 0.00 | 0,00 | 1049000.00 | |
| проср.главница | 2500000.00 | 20000000.00 | 6950118.02 | |
| общо главница | 2500000.00 | 20000000.00 | 7999118.02 | |
| присъдена лихва | 283432.50 | 2862277.39 | 805908.01 | |
| наказателна лихва 25.10.2010-02.05.2011 | 457852.50 | 3662820.00 | 1131131.71 | |
| законова лихва 25.10.2010 г. - 02.05.2011 г. | 0.00 | 0.00 | 60214.38 | |
| общо лихва | 741285.00 | 6525097.39 | 1997254.10 | |
| общо задължение EUR | 3241285.00 | 26525097.39 | 9996372.12 | 39762754.51 |
| общо задължение BGN | 6339402.44 | 51878581.23 | 19551204.48 | 77769188.15 |

съдебни разноски

| кредит № | 014LD-L-000002 | 39КР-АА-2510 | 014LD-L-000006 | Общо |
|---|---|---|---|---|
| Държавна такса за издаване на изп.лист | 11086.92 | 111962.56 | 72557.69 | |
| Доплащане за установителен иск | 11086.92 | 111962.56 | 72557.69 | |
| Присъдено юр.конс.възнаграждение | 6000.00 | 56500.00 | 37500.00 | |
| Юр.конс.възнаграждение по изп.дело | 5500.00 | 56000.00 | 36350.00 | |
| Други съдебни разноски по изп.дело | 107116.62 | 106550.59 | 43290.00 | |
| общо BGN | 140790.46 | 442975.71 | 262255.38 | 846021.55 |

| | 014LD-L-000002 | 39КР-АА-2510 | 014LD-L-000006 | Общо |
|---|---|---|---|---|
| ОБЩО EUR | 3313270.02 | 26751587.27 | 10130461.17 | 40195318.46 |
| ОБЩО BGN | 6480192.90 | 52321556.94 | 19813459.86 | 78615209.70 |

Превалутирането е извършено по фиксинг 1
EUR = 1.95583 лв.

В настоящото производство вземането на банката е претендирано частично за сумата от 100 000 / сто хиляди / лева

На основание изложеното, в срока определен в чл. 694 ал.1 ТЗ предявяваме настоящия установителен иск и моля:

Да ни призовете на съд и след доказване на основателността на претенцията ни да признаете за установено съществуването на неприето в производството по несъстоятелност по т.д. 14/2011г. на ТОС, вземане на ищеца „ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, гр.София от ответното дружество „ЕЪР ПРОПЪРТИ    ДЕВЕЛОПМЪНТ" АД, в производство по несъстоятелност, със седалище гр.Търговище, адрес на управление ул. „Лилия" бл. 4 тяло Б, ет.1 , ап.2, ЕИК 200958720, представлявано от Изпълнителния директор Филип Робърт Харис, в размер на 78615209.70лева, предявено частично в настоящото производство за сума в размер на 100 000 /сто хиляди/ лева, представляваща главница, лихви и разноски по поетите по силата на Договор за покупко-продажба на търговско предприятие от 10.12.2009г    задължения на прехвърлителя    „ОЛ СИЙЗ ПРОПЪРТИ 2" ООД, ЕИК 148073564, със седалище и адрес на управление гр. Варна, Приморски парк пл. № 3, комплекс „Хоризонт" ет.2, представлявано от управителя Лиляна Венелинова Борисова, с ЕГН: 7501031218, произтичащи от солидарната отговорност на дружеството като поръчител по:
Договор за банков кредит № 39КР-АА-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г.;
Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009 и Анекс № 2 от 15.12.2009г.
Договор за банков кредит № 014LD-L-000006/29.12.2009г.

МОЛЯ да ни присъдите направените разноски в настоящото производство, както и юрисконсултско възнаграждение за процесуално представителство .

Прилагам и моля да приемете като доказателства по делото заверени копия от :
Договор за банков кредит № 39КР-АА-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г.
Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009г. и Анекс № 2 от 15.12.2009г.

Договор за банков кредит № 014LD-L-000006/29.12.2009г
Договори за поръчителство – 6 бр.
Нотариален акт за учредяване на договорна ипотека - 9 бр.
Договор за покупко-продажба на търговско предприятие от 10.12.2009г
Споразумение за изкупуване на банкови задължения с ипотечни тежести при Силвър бийч от 19.02.2010г
Нотариален акт за покупко-продажба № 13, т. XIII, д.1878/09 г., вх.рег.ном. 4180 / 10.12.2009 г. по описа на Служба по вписванията гр.Балчик

МОЛЯ да приложите като доказателство т.д. № 14/2011г. по описа на ТОС

МОЛЯ също така с цел установяване размера на задължението, да допуснете изготвянето на съдебно-счетоводна експертиза със задача:

Вещото лице да се запознае с материалите по делото, счетоводството на ответното дружество, кредитните и счетоводни досиета, по които поръчител е „ОЛ СИЙЗ ПРОПЪРТИ 2" ООД, водени в Клон Варна на ПИБ АД да отговори на следните въпроси:

Какъв е размера на кредитите, предоставени на кредитополучателите по Договор за банков кредит № 39КР-АА-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г.;

Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009г. и Анекс № 2 от 15.12.2009г.

Договор за банков кредит № 014LD-L-000006/29.12.2009г.

Кога са усвоени сумите по кредитните договори?

Какъв е размера на задълженията - главница, лихви и разноски, към 03.05.2011год. - датата на решението за откриване на производство по несъстоятелност на "Еър пропърти девелопмънт" АД към "ПЪРВА ИВЕСТИЦИОННА БАНКА" АД, произтичащо от поетите от приобретателя "Еър пропърти девелопмънт" АД задължения на прехвърлителя „Ол сийз пропърти 2" ООД , в качеството му на поръчител и солидарно задължено лице по цитираните договори за кредит?

ПРИЛОЖЕНИЕ:

Пълномощно;

Препис от исковата молба, ведно с приложените към нея доказателства – за връчване на ответника

Документ за внесена ДТ .

С уважение,

Анна Петкова
Пълномощник

# EXHIBIT 33



# Фрея
## Транслейшънс
# Freya
## Translations

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## RULING No.728

Sofia, 30th July 2012

The SUPREME COURT of CASSATION ("**SCC**") of the Republic of Bulgaria, Commercial College, Second Commercial Division, in a court session held in camera on the twenty fifth of July two thousand and twelve with panel members:

Presiding Judge: KAMELIA EFREMOVA

Members: **BONKA YONKOVA**
**ROSITSA BOZHILOVA**

having considered the matters in interlocutory action No.474/2012 as reported by Judge Bozhilova and in order to make a decision the court looked into the following case pertinent facts:

The proceedings were instituted under Art.274, Para 3 (1) of the Civil Procedure Code ("**CPC**").

The proceedings were instituted by the interlocutory complaint filed by [company] on appeal from Ruling No.178 of 27th March 2012 delivered in case No.93/2012 by the Varna Court of Appeals ("**VCA**"), Commercial Division. By this Ruling the VCA upheld Ruling No.116 of 1st December 2011 delivered by the Targovishte District Court ("**TDC**") in interlocutory action No.82/2011, which terminated the proceedings instituted under the Action for Declaratory Judgment filed by the instant Appellant against [company] under the provisions of Art.694, Para 1 of the Commerce Act ("**CA**"). The Complainant argued that the conclusions of both Courts (the trial and the appellate court) were wrong to hold that the Action for Declaratory Judgment filed under Art.694, Para 1 CA relied on legal grounds, different from the Statement of Claim ("the Creditor's Claim") claiming the same accounts receivables of the creditor filed under the provisions of Art.685 CA. In view of the identical amount of the claim and the facts on which the Respondent was held liable, namely a Contract for the purchase and sale of business enterprise dated 10th December 2009 by and between [company] and [company], the Complainant alleged that the accounts receivable claimed under Art.685 CA and under Art.694, Para 1 CA with the Action for Declaratory Judgment were identical. Therefore the Complainant brought arguments in support of the admissibility to cassation review pursuant to Art.280, Para 1(3) CPC.

The Respondent – [company] – challenged the interlocutory complaint and alleged that the Complainant has failed to raise a clear and accurate point of law pursuant to Art.280, Para 1 CPC, substantiating the interlocutory complaint and make it admissible for cassation review. In the alternative and if

we presume that the Court might find the matter admissible (given that the Court is obligated to determine the issue of admissibility first) with a view to the identity of the subject matter of the Complaint and accounts receivable claimed under Art.685 CA, ascertainable, the Respondent is of the opinion that any additional selective criteria under Art.280, Para 1(3) CPC produced are irrelevant.

The SCC, Commercial College, Second Division Panel, held that the Interlocutory Complaint was filed by a party having standing to file such complaint, within the statutory term under Art.275, Para 1 CPC and that was filed against a valid and admissible act of court.

Regarding the admissibility of the complaint for a cassation review as alleged under the provisions of Art.280, Para 1(3) the instant Court took into consideration as follows:

In the Action for Declaratory Judgment filed under Art.694, Para 1 CA [company] asserted the following facts: Three bank loan agreements ("**BLA**") were entered by and between the Bank and [company], such as: (i) a BLA for EUR 30,000,000 dated 22nd November 2007 and four Annexes thereto; (ii) a BLA for EUR 2,500,000 dated 2nd October 2008 and two Annexes thereto; and (iii) a BLA for EUR 8,000,000 dated 29th December 2009. The borrower's [company] liability under each of the BLA's was secured by the guarantee provided by Ch. A. A. and [company]. Contractual mortgages have been created over three land plots – property of the borrower, and put up as collaterals to secure the loans. Later on the borrower transferred the title of properties to [company], which acted as a guarantor under the BLAs. Later on, the buyer [company] created three contractual mortgages over the same land plots as security for the annexes to the BLAs dated 22nd November 2007 and 2nd October 2008 respectively; these were made in succession over time depending on the needs of the annexes to be signed. On 10th December 2009 [company] entered into a contract with the instant Respondent [company] for the sale and purchase of business enterprise as a combination of rights, obligations and factual relationships, including the then existing mortgage encumbrances and the contractual obligations giving rise to said encumbrances, as well as all subsequent financial commitments related to the S. Beach Investment Project (made for the same purposes as the ones for which the lands were mortgaged). On the same date, the same companies entered into an agreement (made in the form of a title deed) for the sale and purchase of the three land plots owned by [company], being a portion of the business enterprise and the price specified in the contract for the sale of such business enterprise, which lands have been initially encumbered by a mortgage created in favour of the lender [company].

The facts asserted in the Creditor's Claim under Art.685 CA and the ones asserted in the Action for Declaratory Judgment are identical; and in both documents – the Action for Declaratory Judgment and the Creditor's Claim under Art.685 CA – the Claimant alleged to be owed certain accounts receivable the existence of which were to be determined with respect to the

Respondent [company] where the amount of said accounts receivable (identified by the principal and the interest) were absolutely identical to the ones specified in Statement of Claim of filing No.1991 of 25th May 2011, by which the lender [company] claimed its accounts receivables under the provisions of Art.685 CA.

The Appellate Court in order to uphold the termination of the proceedings in the case concurred with the conclusion of the trial court, namely that according to the claim filed under Art.685 CA and claiming the accounts receivable alleged the Respondent was held liable because the latter "was indebted under mortgage obligations" and the Action for Declaratory Judgment filed under Art.694, Para 1 CA alleged that the liability of the Respondent [company] originated because the Respondent acted as a guarantor under the BLAs, where the fact in common giving rise to certain rights was the transfer of the business enterprise of [company] to the instant Respondent [company]. The Court held that difference between the legal grounds on which the Creditor's Claim under Art.685 CA and the Action for Declaratory Judgment under Art.694, Para 1 CA underlay its own decision that the Action for Declaratory Judgment was inadmissible.

A certain question was raised in the statement on the admissibility for cassation review pursuant to Art.284, Para 3 CPC, in support of the admissibility as derived from the contents of the very document and specified by the instant Court in accordance with its powers under point 1 of Interpretative Judgment No.1/2009 of the Assembly of the Commercial and Civil Colleges of the SCC, such as *"Is the identity of the grounds on which the Creditor's Claim under Art.685 CA and the Action for Declaratory Judgment under Art.694, Para 1 CA relied a prerequisite for admissibility of the latter and when (at what stage) should such identity be determined?"* The first part of this question (given that the court monitors at all times whether or not the Statement of Claim is admissible, both before opening a case and at every stage of the proceedings and no contradictive case law exist on this matter) has the nature of a point of law pursuant to Art.280, Para 1 CPC, since it meets the criteria quoted above and referred to in Interpretative Judgment No.1/2009 and in Interpretative Judgment No.1/2010 of the Assembly of the Commercial and Civil Colleges of the SCC. Since no mandatory case law exists on the matter, then it could be determined as admissible within the context of the provision of Art.280, Para 1 (3) CPC.

The SCC having examined the above legal question held as follows: the issue sought to be ascertained with the Action for Declaratory Judgment filed under Art.694, Para 1 CA is the accounts receivable owed to the lender, which was claimed under the procedures and within the terms prescribed by Art.685 CA and Art.688 CA in the bankruptcy proceedings for the debtor, and denied by the trustee resulting in its exclusion from the List of Allowed Claims respectively by a ruling of the Bankruptcy Court delivered under Art.692 CA. For a claim to be admissible, the accounts receivable claimed and the accounts receivable sought to be ascertained (as requested in the Action for Declaratory Judgment under Art.694 CA) should be identical, which also presumes that the elements identifying such congruence should match fully, such elements are:

the legal facts determining the grounds for claiming the accounts receivable, its amount and the period during which it was due and payable respectively – for liabilities of periodical nature. The legal qualification given by the Claimant, including the origin of the accounts receivable, which did not correspond to the true qualification and which could be derived from the statement of the facts, are not binding to the Court, nor the Action for Declaratory Judgment filed under Art.694, Para 1 CA should be found inadmissible, only because the legal qualification of the origin of the accounts receivable differs from the one specified in the Creditor's Claim under Art.685 claiming such accounts receivable, even if the underlying facts are identical. In this line of thought (regarding the Court being bound to the Claimant's legal qualification as given under Art.694 CA seeking from the Court to ascertain the accounts receivable claimed and whether the accounts receivable claimed in the bankruptcy proceedings and the ones claimed by the Action for Declaratory Judgment under Art.694, Para 1 CA are different, even though relying on different legal grounds, but on the same set of facts giving rise to the right to claim, and changes in its period and amount) please see the mandatory case law – the SCC, Commercial College, Second Commercial Division's Ruling delivered in case No.453/2012.

With regards to the answer to the question raised whether or not the Complaint is well grounded, the instant Court finds as follows:

Regarding the grounds to claim the accounts receivable, the Claimant both in the Creditor's Claim under Art.658 CA and in the Action for Declaratory Judgment under Art.694 relied expressly on the fact that the Respondent assumed the debt of [company] to [company] under the bank loan agreements entered by and between the Claimant and [company] in furtherance of the contract for the sale and purchase of business enterprise dated 10th December 2009 by virtue of which the liabilities arising from Respondent's acting as a guarantor of [company] under the BLAs entered by [company] were conveyed to the Respondent, but also the mortgage encumbrances under the mortgages created by the transferor of the business enterprise in favour of [company] were assumed expressly, apart from the legal consequences from the contractual mortgages initially created by the borrower over the same properties and the applicable consequences under Art.173 CPC respectively. The subject matter of the prayer of the Action for Declaratory Judgment is a request seeking to ascertain the liabilities of the Respondent to the Claimant by virtue of the "Respondent's mortgage liabilities undertaken by assuming a debt", which taking into account the identical factual background of the Creditor's Claim under Art.685 and of the Action for Declaratory Judgment under Art.694, Para 1 CA, also indisputably presumes the lodging of an Action for Declaratory Judgment seeking the ascertainment of the accounts receivables due by the Respondent, which stem from the assuming of the liabilities expressly secured by a mortgage; likewise is the privilege under Art.722, Para 1 (1) CA alleged by the creditor. The trial court instead of formally adopting the wording of the prayers of both the Creditor's Claim under Art.685 and the Action for Declaratory Judgment under Art.694, Para 1 CA, should have taken into

account the factual background sections of both documents, which are completely identical in the two documents and thus determine the legal qualification of the Action for Declaratory Judgment on the basis of the facts, which identify in the same manner the origin and the collaterals put up as security of the creditor's accounts receivable.

For the foregoing reasons the Second Division of the Commercial College of the SCC

## RULED as follows

Ruling No.178 of 27th March 2012 as issued by the Commercial Division of the Varna Court of Appeals in case No.93/2012 and Ruling No.116 of 1st December 2011 delivered by the Targovishte District Court in case No.82/2011, which was upheld by the Ruling of the Appellate Court are hereby REVERSED.

The case is remanded to the trial court for further proceedings.

This Ruling is not subject to appeal.

PRESIDING JUDGE:                    PANEL JUDGES:

*The undersigned Boryana Ilieva Stefanova hereby attest that this is a true and correct translation from Bulgarian into English of the attached document –Ruling No.728 of 30th July 2012 issued by the Supreme Court of Cassation of the Republic of Bulgaria. This translation has 5 (five) pages.*

Translator: _____
            *Boryana Ilieva Stefanova*

# О П Р Е Д Е Л Е Н И Е

№ 728
София, 30.07.2012 г.

ВЪРХОВЕН КАСАЦИОНЕН СЪД , ТЪРГОВСКА КОЛЕГИЯ , второ отделение , в закрито заседание на двадесет и пети юли , през две хиляди и дванадесета година, в състав :
ПРЕДСЕДАТЕЛ : КАМЕЛИЯ ЕФРЕМОВА
ЧЛЕНОВЕ: БОНКА ЙОНКОВА
РОСИЦА БОЖИЛОВА
като разгледа докладваното от съдия Божилова ч.т.д. № 474 / 2012 год. и за да се произнесе съобрази следното :
Производството е по чл. 274 ал.3 т.1 ГПК.
Образувано е по частна жалба на [фирма] против определение № 178 / 27.03.2012 год. по в.т.д.№ 93 / 2012 год. на Варненски апелативен съд , ТО , с което е потвърдено определение № 116 / 01.12.2011 год. на Търговищки окръжен съд по т.д.№ 82 / 2011 год., за прекратяване на производството по предявения от жалбоподателя против [фирма] иск с правно основание чл. 694 ал.1 от ТЗ . Жалбоподателят оспорва правилността на извода на съдилищата, че предявеният по реда на чл.694 ал.1 ТЗ иск е с основание , различно от заявеното в молбата за предявяване на същото вземане по реда на чл .685 от ТЗ . С оглед идентичния размер на вземането и обстоятелствата относно основанието на което се твърди възникнала за същото отговорност на ответника - договор за продажба на търговско предприятие от 10.12.2009 год. между [фирма] и [фирма] , страната намира установим идентитет между предявените по чл.685 ТЗ и с иска по чл.694 ал.1 от ТЗ вземания .Обосновава хипотеза за допускане на касационното обжалване по чл.280 ал.1 т.3 от ГПК .
Ответната страна - [фирма] - оспорва частната жалба , като намира , че жалбоподателят не е формулирал ясен и точен правен въпрос по чл.280 ал.1 ГПК ,обуславящ допускане на касационното обжалване . В евентуалност и ако би се приел за такъв въпросът относно момента на дължима от съда преценка за допустимост на иска, с оглед установима идентичност в предмета на същия и предявеното вземане по реда на чл.685 от ТЗ, ответната страна намира, че не са обосновани допълнителни селективни критерии по чл. 280 ал.1 т.1 – 3 ГПК.
Върховен касационен съд, ТК, второ търговско отделение констатира, че частната жалба е подадена в срока по чл.275 ал.1 ГПК, от легитимирана да обжалва страна и е насочена срещу валиден и допустим съдебен акт .
По допускане на касационното обжалване в твърдяната хипотеза на чл.280 ал.1 т.3 ГПК, настоящият състав съобрази следното :
В исковата молба , с правно основание чл.694 ал.1 ТЗ, [фирма] е изложила следните обстоятелства : Между банката и [фирма] са сключени 3 договора за кредит - от 22.11.2007 год. за 30 000 000 евро , вкл. 4 анекса към същия ; от 02.10.2008 год. , ведно с два анекса към същия , за 2 500 000 евро и от 29.12.2009 год. – за 8 000 000

евро . Задължението на кредитополучателя „ [фирма] по всеки от договорите за кредит е обезпечено с поръчителство на Ч. А. А. и [фирма] . Като обезпечение са сключени и договорни ипотеки върху 3 имота - собственост на кредитополучателя . Последващо кредитополучателят е прехвърлил имотите в собственост на [фирма], имащо качеството на поръчител по договорите за банков кредит . Купувачът [фирма] последващо е учредил договорни ипотеки върху същите имоти , съответно в обезпечение на анекси към договорите от 22.11.2007 год. и 02.10.2008 год. – поетапно, с оглед сключването на анексите . На 10.12.2009 год. [фирма] е сключило с настоящия ответник – [фирма] договор за покупко-продажба на търговско предприятие като съвкупност от права, задължения и фактически отношения , в това число и съществуващи ипотечни тежести и породилите ги облигационни задължения , както и всички последващи във времето финансови ангажименти, свързани с инвестиционния проект „ С. бийч „/ с предназначение за нуждите на който са и ипотекираните терени / . На същата дата , като обособена част от търговското предприятие и на основание цена, съгласно сключения договор за продажба на същото , между същите дружества е сключен в нотариална форма договор за покупко - продажба на притежаваните от [фирма] 3 имота , изначално обременени с ипотека в полза на кредитодателя - [фирма] .

Идентични са и изложените в молбата по чл.685 от ТЗ обстоятелства , като и в исковата молба и в молбата по чл.685 ТЗ ищецът е индивидуализирал , като предмет на установяване по отношение ответника [фирма] , вземания в размери - индивидуализирани по главница и лихви, напълно идентични с посочените в искане изх.№ 1991 / 25.05.2011 год. , с което е предявено по реда на чл.685 от ТЗ вземането на кредитора [фирма] .

За да потвърди прекратяването на производството въззивният съд е споделил извода на първоинстанционния, че молбата за предявяване на вземането по чл.685 ТЗ сочи като основание за отговорността на ответника „ встъпване в дълг по ипотечни задължения „ , а исковата молба по чл.694 ал.1 ТЗ - встъпването му в отговорността на [фирма] , възникнала на силата на поръчителството на последния по договорите за кредит , с общ правопораждащ факт - прехвърляне на търговското предприятие на [фирма] на настоящия ответник [фирма] . Различието в основанието предявено с молбата по чл.685 ТЗ и с иска по чл.694 ал.1 ТЗ съдът е приел за обуславящо недопустимост на последния .

В изложението по чл.284 ал.3 ГПК като обуславящ допускане на касационното обжалване е поставен въпроса, изводим от съдържанието и конкретизиран от настоящия състав, в съответствие с правомощието му по т.1 на ТР № 1 / 2010 год. по т.д.№ 1 / 2009 год. на ОСГТК на ВКС , е ли идентичността на основанието на молбата по чл.685 ТЗ и това на иска по чл.694 ал.1 от ТЗ предпоставка за допустимост на последния и към кой момент подлежи на преценка тази идентичност ? .В първата си част / доколкото за допустимостта на иска съда следи служебно изначално и във всеки един момент от развитието на процеса, в който смисъл не е налице противоречива съдебна практика / , въпросът има характеристиката на правен въпрос по чл.280 ал.1 ГПК , тъй като отговаря на преждепосочените и визирани в т.1

на ТР № 1 / 2010 год. по т.д.№ 1 / 2009 год. на ОСГТК на ВКС критерии . Липсата на задължителна съдебна практика обуславя допускането му в хипотезата на чл. 280 ал.1 т.3 от ГПК .

По така поставения правен въпрос настоящият състав намира следното : Предмет на установяване с иска по чл.694 ал. 1 ТЗ е вземането на кредитора , което е предявено по реда и в сроковете по чл.685 ТЗ и чл.688 ТЗ в производството по несъстоятелност на длъжника , неприето от синдика, респ. изключено от списъка на приетите вземания с определение на съда по несъстоятелността по чл.692 ТЗ . Допустимостта на иска предпоставя пълна идентичност между предявеното вземане и вземането, чието установяване цели иска по чл.694 ТЗ , което съвпадение предпоставя пълно съвпадение между индивидуализиращи вземането белези - юридическите факти определящи основанието на същото, размера , респ. периода на вземането - за периодичните по характер задължения . Дадената от страната правна квалификация, вкл. на произхода на вземането, некореспондираща с действителната , изводима от изложението на обстоятелствата , не обвързва съда , както и не е налице недопустимост на иска , в случай на дадена с исковата молба по чл.694 ал.1 ТЗ правна квалификация на произхода на вземането , различна от дадената с молбата за предявяване на вземането по чл.685 ТЗ, при наличие на идентичност в обстоятелствата , въз основа на които се обосновава . В този смисъл / относно обвързаността на съда с дадената от ищеца по чл.694 от ТЗ правна квалификация на установяваното по съдебен ред вземане и налице ли е несъвпадане между вземането , предявено в производството по несъстоятелност и това - предмет на иска по чл.694 ал.1 ТЗ , при квалифицирането му на различно правно основание, но без промяна в неговите правопораждащи факти , период и размер / е налице и задължителна съдебна практика - определение на ВКС, ТК, второ търговско отделение по ч.т.д.№ 453 / 2012 година .

С оглед отговора на поставения въпрос по основателността на жалбата ,настоящият състав намира следното :

Относно основанието на вземането , както в документа по чл.685 от ТЗ , така и в исковата молба по чл.694 от ТЗ , ищецът изрично се е позовал на встъпване на ответното дружество в дълга на [фирма] към [фирма] по сключените договори за кредит между ищеца и [фирма], на основание сключения договор за продажба на търговско предприятие от 10.12.2009 год. , по силата на който са преминали в тежест на ответника задълженията , възникнали в качеството на поръчител за [фирма] по сключените от [фирма] договори за кредит , но и са поети изрично ипотечните тежести , учредени от прехвърлителя на търговското предприятие , в полза на [фирма] , отделно от правните последици на изначално учредените от кредитополучателя върху същите имоти договорни ипотеки , респ. приложимите последици по чл. 173 ГПК. В петитума на искането е претендирано установяване на задължения на ответника към ищеца по силата на „ поети чрез встъпване в дълг ипотечни задължения „ , което и с оглед преждеизложената идентична в молбата по чл.685 ТЗ и иска по чл.694 ал.1 от ТЗ обстоятелствена част безспорно обуславя предявяването на иск за установяване на вземания към ответника, произтичащи от встъпване в

Справки за дела във ВКС

8/7/12 10:56 AM

задължения, отделно обезпечени с ипотека , в който смисъл е заявена и ползващата кредитора , съгласно чл.722 ал.1 т.1 от ТЗ , привилегия . Съдът не е следвало формално да възприеме формулировката на петитума както на молбата по чл.685 ТЗ , така и на иска по чл.694 ал.1 ТЗ , а от изложението на обстоятелствената част - напълно идентична и в двата документа - да определи правната квалификация на иска въз основа на еднакво индивидуализиращите произхода и обезпеченията на вземането на кредитора обстоятелства .

Водим от горното, Върховен касационен съд, ТК, второ търговско отделение

О П Р Е Д Е Л И :

ОТМЕНЯ определение № 178 / 27.03.2012 год. по ч.т.д.№ 93 / 2012 год. на Варненски апелативен съд , ТО и потвърденото със същото определение № 116 / 01.12.2011 год. на Търговищки окръжен съд , постановено по т.д.№ 82 / 2011 год. .

ВРЪЩА делото на първоинстанционния съд за продължаване на съдопроизводствените действия .

Определението е окончателно .

ПРЕДСЕДАТЕЛ :

ЧЛЕНОВЕ :

# EXHIBIT 34

*Фрея* **F** *Freya*
*Транслейшънс* *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*
*Copy!*

# JUDGMENT

No.3 dated 8th February 2013                    The town of Targovishte

## IN THE NAME OF THE PEOPLE

The DISTRICT COURT OF TARGOVISHTE, Panel III (three), with members:

        Chairperson: MARIANA IVANOVA
        Secretary:    Stanka Zheleva

held a public session on 10th (tenth) January 2013.

Having heard case No.82 in the docket of this Court for 2011 as reported by the Presiding Judge Ivanova, the Court made its judgment having analysed the facts set out below:

This case was instituted pursuant to Art.694 Para 1 of the Commercial ACT ("CA") and was based on a Motion for Declaratory Judgment filed by **First Investment Bank AD** ("FIB" or "the Claimant"), by which Motion FIB was seeking to ascertain the existence of its account receivable in the amount of BGN 100,000 where the latter was a partial claim of the originally claimed amount of BGN 78,615,209.

The Claimant alleged that their original claim in the amount of BGN 78,615,209.70 had been denied and failed to be included in the List of Approved Account Receivables in the course of the bankruptcy proceedings in case 14/2011 as instituted pursuant to Art.690 Para 1 CA against the Debtor, **Ayr Property Development AD** ("APD" or "**Respondent**") having EIK (Company identification number): 200958720. The Claimant then filed a Motion in Opposition in the Bankruptcy Court. The trial court denied the Claimant's Motion in Opposition by Ruling No.30 on 12 July 2011. For said reason the Claimant filed the instant Motion for Declaratory Judgement. The Claimant based said Motion on three guarantee contracts, namely: (1) Guarantee Contract of 31st March 2009 signed with **All Seas Property 2 OOD** ("ASP2") as security for the above Bank's account receivable arising from a Bank Loan Agreement No. 39KP-AA-2510 of 22 November 2007 as extended to the Borrower, **Port Investment Development Bulgaria 2 EAD ("PIDB2")**; (2) Guarantee Contract of 31st March 2009 signed with **All Seas Property 2 OOD** as security for the above Bank's account receivable arising from a Bank Loan Agreement No.014LD-L-000002 dated 2nd October 2008 as extended to the Borrower, **Port Investment Development Bulgaria 2 EAD**; and (3) Guarantee Contract of 29th December 2009 signed with **All Seas Property 2 OOD**



as security for the above Bank's account receivable arising from a Bank Loan Agreement No.014LD-L-000006 dated 29th December 2009 as extended to the Borrower, **Asset Management EAD**;

The Claimant further alleged that the instant Debtor's obligation had arisen from the Debtor's assuming said debt jointly with the transferor of such debt, ASP2 (having EIK:148073564) in accordance with the <u>Agreement for Sale and Purchase of Business Enterprise</u> under Art.15 CA executed on 10th December 2009. The subject matter of the instant Motion for declaratory Judgment was based on Art.694 Para 1 CA and sought to ascertain the existence of an account receivable in the amount of BGN 78,615,209.70, the latter being claimed in part in the instant proceeding in the amount of BGN 100,000 and made of a principal amount, interest and costs incurred with regards to the obligations arising from the above <u>Agreement for Sale and Purchase of Business Enterprise</u> and assumed by ASP2 acting as the transferor of said debt, which obligations arose earlier from the joint liability of said company acting as the Guarantor in the above mentioned Bank Loan Agreements ("BLA").

During the course of the proceedings the Claimant specified that the amount, which was the subject matter of the partial claim, was a portion of the principal in each BLA mentioned above as follows: (1) BLA 39KP-AA-2510 of 22 November 2007 and the 4 (four) Annexes thereto – the principal was BGN 35,000; BLA 014LD-L-000002 dated 2nd October 2008 and the 2 (two) Annexes thereto – the principal was BGN 30,000, and (3) 014LD-L-000006 dated 29th December 2009 – the principal was BGN 35,000.

The Respondent challenged both the basis and the amount claimed in the partial claim by contending that a Guarantorship was a personal guarantee, meaning that the transfer of the business enterprise did not automatically make the Guarantor a successor of the Transferor in standing surety for the debt; the Respondent further contended that the surety liability should be extinguished under the conditions of Art.147 Para 1 and 2 OCA for absence of Transferor's consent such surety to be extended and uphold by the Transferee, on the one hand, and FIB's failure to file a claim in that regard within the 6-month preclusive statutory term set forth in Art.147 Para 1 and 2 OCA with reference to and relying on Art.142 OCA.

By Ruling No. 728 dated 30th July 2012 and issued in case 747/2012 the Supreme Cassation Court reversed the Varna Court of Appeals' Ruling No.178 of 27th March 2012 in case 93 of 2012 (in the Varna Court of Appeals), by which the latter affirmed Ruling No.116 issued earlier by the Targovishte District Court on 1st December 2011 to dismiss the proceedings in the instant case 82/2011 because the trail court had found the claim to be inadmissible. It was held that the claim filed under Art.685 Para 1 CA and the claim asserted under Art.694 Para 1 CA were identical, because the factual background of each of said claims was one and the same for the simple reason that the facts and circumstances explaining the origin and the collateral of the Creditor's account receivable were one and the same: the Claimant based their argument on the fact that the Respondent had assumed the debt of ASP2 by virtue of the <u>Agreement for Sale and Purchase of Business Enterprise</u> of 10th December 2009,



thus become liable to FIB under the BLAs signed between the Claimant and PIDB2, and therefore assuming the obligation for the latter liability, which obligation stemmed from the Respondent's acting as Guarantor for ASP2 in the BLAs signed by PIDB2, apart from the expressly assumed liabilities for the payment of the mortgages as executed in favour of FIB by the Transferor of the business enterprise, and apart from the stand-alone legal consequences ensuing from the contractual mortgages of the same properties originally executed by the Borrower, plus the enforceable consequences under Art.173 OCA, on which the Creditor relied seeking to exercise the privilege granted by virtue of 722 Para 1 (1) CA.

**Having analyzed all evidence produced in this case and having heard out the arguments and counter-arguments of the parties in their entirety held that the facts below had been satisfactorily ascertained:**

The check made in the Commercial Registry verified that on 3rd May 2011 the Targovishte District Court instituted bankruptcy proceedings against the Debtor, APD in case No.14/2011 by a court decision in that regard recorded in the Commercial Registry on 4th May 2011. The Claimant filed a motion of filing No.1991 dated 25th May 2011 in the Bankruptcy Court seeking to assert an account receivable claim in the amount of BGN 78,615,209.70, i.e. the motion was filed within the statutory terms set forth in Art.685 Para 1 CA. The Trustee in Bankruptcy denied said claim and the latter was included in the List of Disapproved Accounts Receivable. Said List was announced in the Commercial Registry on 25th June 2011. The Claimant filed a motion in opposition within the statutory term set in Art.690 Para 1 CA under filing No. 2554 dated 1st July 2011 and said motion was entertained in the proceedings under Art.692 CA and denied by the court as evident in Ruling No.30 dated 12th July 2011 and recorded in the Commercial Registry on 1st September 2011. The instant motion for declaratory judgment was filed on 8th September 2011 within the term set in Art.694 Para 1 CA. As of present the bankruptcy case is still pending. The claim filed pursuant to Art.685 Para 1 CA and the one asserted under Art.694 Para 1 CA are found to be identical. For all the foregoing reasons the instant claim is found to be admissible.

To resolve the dispute on the merits the instant Court looked into the following:

By virtue of BLA No. 39KP-AA-2510 dated 22nd November 2007 FIB extended a loan of 30 Million Euros to the Borrower PIDB2. The loan should have been repaid by June 30th 2008. On 26th June 2008 the parties thereto signed Annex No.1 to said BLA and agreed on a new repayment date, i.e 30th September 2008. By Annex No.2 signed on 30th September 2008 the parties agreed to reschedule the repayment date for 31st March 2009. Later on, on 31st March 2009 the parties signed Annex No.3 and the agreed to reschedule the repayment date once more for 15th September 2009. The parties further agreed that the BLA should be secured by signing Guarantee Contracts where the Guarantors were Mr. Chavdar Angelov Angelov and ASP2 (having EIK: 148073564). A Guarantee Contract dated 31st January 2009 was produced in this case and by virtue of said Contract (page 36 in the case file) ASP2 agreed to act as Guarantor and undertook to be liable to FIB for the fulfillment of PIDB's



4

obligations under the abovementioned BLA and Annexes 1, 2 and 3 thereto. Apparently, the date shown on the Guarantee Contract was wrong because said Contract made a reference to the three Annexes and the dates thereof as mentioned above, while the date of the last Annex reads <u>31st March 2009</u> meaning that the Guarantee Contract could not have been executed earlier than said date. By Annex 4 dated 15th December 2009 the Bank and the Borrower (PIDB2) agreed to amend anew the repayment date of the loan rescheduling it for 30th June 2010. The Guarantor, however, did not and has never signed said Annex 4.

The BLA at issue was further secured by contractual mortgages of properties owned by ASP2.

<u>By virtue of BLA No. 014LD-L-000002 dated 2nd October 2008 FIB extended a loan of One Million Euros to the Borrower PIDB2</u> and the repayment date was agreed to be 31st March 2009. By Annex 1 dated 31st Mach 2009 the parties thereto amended the amount of the loan by increasing it from 1 (one) to 2.5 (two and a half) Million Euros and rescheduled the repayment date for 15th December 2009. The Annex further provided for executing Guarantee Contracts as security for the loan and such Contract were signed where the Guarantors were Mr. Chavdar Angelov Angelov and ASP2. A Guarantee Contract was produced in this case and it was dated 31st January 2009 (p.16 in the case file) by virtue of which Contract ASP2 agreed to be a Guarantor and undertook to be liable to FIB for the proper fulfillment of the Debtor under said BLA and Annex 1 thereto. Once again, the date indicated in said Guarantor Contract is apparently wrong because the Contract cited the Annex of 31st 2009, which means that the Guarantor Contract could not have been signed earlier than the date mentioned last above. By Annex 2 of 15th December 2009 the Bank and Borrower agreed on another rescheduling of the repayment date for 30th June 2010. The Guarantor, however, did not sign said Annex.

The BLA at issue was further secured by contractual mortgages of properties owned by ASP2.

<u>By virtue of BLA No. 014LD-L-000006 dated 29th December 2009 FIB extended a loan to the Borrower Asset Management EAD (having EIK: 103921587) in the amount of 8 (Eight) Million Euros</u> and the repayment date was agreed to be 30th June 2010. The BLA provided for creating a security, i.e. mortgages of properties owned By APD and a guarantee issued by Chavdar Angelov Angelov and ASP2. A Guarantee Contract dated 29th December 2009 was produced in the case. By virtue of it ASP2 agreed to act as Guarantor and undertook to be liable to FIB for the fulfillment of the obligations of the Debtor in said BLA, the Annexes thereto and all further agreements related to it. The BLA at issue was further secured by mortgages of properties owned by APD.

The evidence submitted in the case indisputably ascertained that on 10th December 2009 ASP2 and the Respondent to the instant action, APD, executed an agreement for sale and purchase of a Business enterprise pursuant to Art.15 CA. The Agreement was properly executed in the required format and the transfer was duly recorded in




the Commercial registry. In compliance with the above statutory provision and as expressly provided in Art.1 of the above Agreement the Seller transferred to the Buyer the Seller's business enterprise consisting of rights, obligations and factual relationships in their entirety, together with the then existing mortgage encumbrances and the liabilities ensuing from them plus all subsequent financial commitments to the Silber Beach Project.

On 19th February 2010 an Agreement for Repurchase of Mortgage Liabilities to Banks ("**the Repurchase Agreement**") related to the Silver Beach Project by and between Ayr Logistics Limited, Inc., Texas, USA, ("Ayr") and APD, of the first part, and ASP2, Project Company Development EAD, Asset Management EAD and PIDB2, of the second part. By virtue of the *Repurchase Agreement* Ayr and APD undertook to repurchase all liabilities to FIB and to Corporate Commercial Bank AD as secured by mortgages of the investment properties included in the Silver Beach Project which properties Ayr and APD had at that time acquired. In furtherance of said Agreement on 4th June 2010 another agreement for transfer of mortgage accounts receivable was executed by virtue of which Ayr undertook to repurchase the bank's amounts due arising from the three BLAs described above for the price of EUR 31,297,827 while the Bank undertook to transfer and assign to the Buyer all loan collaterals (mortgages). The Agreement was signed under the condition that the price agreed was to be paid to FIB acting as the Assignor no later than 7th July 2010. No evidence supporting or proving any such payment or transfer of collaterals has been presented.

**Having looked closely into the facts and circumstances set out above the Court inferred as follows:**

**First Investment Bank AD** ("**FIB**") filed a Motion for Declaratory Judgment on the grounds of Art.694 Para 1 CA seeking to ascertain the existence of an amount due, which had not been approved in the bankruptcy proceeding against APD.

The Court had earlier in this summary disclosed the reasoning for the admissibility of the claim.

**Now, therefore, on the subject matter of the dispute the Court found:**

By virtue of the three BLAs described above the Claimant extended loans in the amount of 30 Million Euros and 1,5 Million, respectively, to PIDB2 under the first two BLAs, and a loan of 8 Million Euros to Asset Management EAD under the third BLA. Guarantor for all three loans was ASP2. In turn, ASP2 had transferred and assigned its business enterprise to the respondent APD under the procedures prescribed in Art.15 CA. Pursuant to the latter statutory norm the Transferee (Assignee) of the business enterprise had acquired all rights, obligations and factual relationships in their entirety making the Transferor's business enterprise. What it means is that in that case the buyer of the business enterprise assumed all Transferor's rights and obligations arising from the Guarantee Contracts made as security for the three BLAs, as well. In compliance with Art.138 OCA the Guarantor is jointly responsible for





the proper fulfilment of the Debtor's obligations. To make the Guarantor incur liability the debtor's obligation must be an actually existing one. As for the amount of the liabilities to FIB under the three BLAs the Court heard out a forensic accountant's report. To the extent to which the claims asserted are limited to the principal amounts of the loans, as elaborated above, what must be addressed here is the principal amounts payable under the three BLAs. The forensic report on the <u>BLA of 22nd November 2007</u> showed that the principal due was *20 Million Euros*; the principal due in the <u>BLA of 2nd October 2008</u> was *2.5 Million Euros* and the one due under <u>BLA of 29th December 2009</u> was *7,999,118.02 Euros*. According to the conclusion inferred in the supplemented forensic report the amount of the principal amounts payable under the BLAs of 21st November 2007 and of 2nd October 2008, respectively, were 20 Million Euros and 2.5 Million Euros, respectively, both as at 30th June 2010 and as at 3rd May 2011. Furthermore, one of the options examined revealed that when using the funds available in PIDB2's account as of 30th December 2009 for repayment of interest and then deducting the bank renegotiation fees as per such Bank's Tariff the resulting amount of the principal due in the <u>BLA of 21st November 2007</u> would be as much as <u>18,345,399.26 Euros</u>.

The Respondent relying on Art.147 OCA contended that the Claimant failed to assert a claim for its amount due against the Debtor within the 6-month period upon occurrence of the maturity date. The Court held as follows:

The maturity dates of the three BLAs are as shown below:

The maturity date of BLA dated 22nd November 2007 extended by FIB in the amount of 30 Million was agreed to occur on 30th June 2008. By Annex No.1 of 26th June 2008 the parties agreed to reschedule the loan repayment date for 30th September 2008. By Annex No.2 signed on 30th September 2008 the parties agreed to once again reschedule the repayment date for 31st March 2009 and by Annex No.3 of 31st March 2009 the parties agreed to reschedule the repayment date once more for 15th September 2009. In the latest Annex parties further agreed that the BLA should be secured by signing Guarantee Contracts where the Guarantors were Mr. Chavdar Angelov Angelov and ASP2. As this court stated hereinabove the Guarantee Contract by which ASP@ undertook to act as Guarantor for the fulfillment of the Borrower's obligations under the abovementioned BLA and Annexes 1, 2 and 3 thereto was signed on the earliest possible date, i.e. 31st March 2009 and apparently made on a date that occurred earlier than 15th December 2009 (being the date when Annex 4 was signed and which was not mentioned in the Guarantee Contract). By said Annex No.4 the Bank and the Borrower agreed again to reschedule the loan repayment date for 30th June 2010. The Guarantor did not endorse Annex 4 and had not given their consent. In accordance with the rule set forth in Art.147 Para 1 OCA the Guarantors remain liable for the primary obligation even after its maturity date in all cases when the Creditor has asserted a claim against the Debtor within 6 months following such date. When, however, a claim is asserted after said 6-month period a Creditor's right is precluded from pursuing the Guarantors. According to Art.147 Para 2 OCA an extension of the time period granted by the creditor to the debtor shall have no





7

effects with regard to the Guarantor if the latter has not agreed to this. In this case the maturity date of the primary obligation for which the Guarantor gave their consent was 15th December 2009. The subsequent rescheduling of the latter date by the last Annex for 30th June 2010 may not bind the Guarantor; the Guarantor may be held responsible for during the 6-month period following 15th December 2009, i.e. till 15th June 2010. Upon expiration of said time period the Creditor is precluded from pursuing the Guarantor. To the extent that the instant Respondent has assumed the obligations of the Guarantor for the BLA, then by virtue of the Agreement for Transfer of Business Enterprise the Respondent should take the obligations under the same conditions, or in other words, the claim against the Respondent would have been well-grounded if only the Creditor had asserted the claim against the Debtor within the above mentioned statutory term.

The Court had instructed the Claimant to submit evidence to pinpoint the time of filing of the claim against the Respondent. The Claimant produced Order for Immediate Enforcement No.9692 dated 28th October 2010 for a payment under a payment obligation based on an instrument drawn up in accordance with Art. 417 of the Civil Procedure Code ("**CPC**") and a Writ of Execution dated 28th October 2010 (pages 260 and 261 in the case file) where the above documents were issued in favor of FIB and against the Debtor and the Guarantors (in BLA No. 39KP-AA-2510 dated 22nd November 2007) claiming the amount of 2,862,277.39 Euros, where said amount is the interest charged on the overdue principal as accrued over the period within 30 June 2010 – 25 October 2010. The above Order and Writ were issued in case No.16712 of 2010 by the Varna Regional Court as instituted pursuant to Application No.26560 filed by the Bank on 25th October 2010 (p. 337 in the case file). It is beyond any doubt that the above application filed under Art.417 CPC should have qualified as a claim within the meaning of Art.147 OCA if it had sought repayment of the principal amount as well, and not payment of interest overdue only, which is the case here. The second reason is that the application was made after the 6-month's term had already expired. For these reasons the Creditor failed to properly preserve their rights arising from the principal amount. None other evidence was produced. <u>Therefore, this Court inferred that the Creditor's rights against the Guarantor were precluded with regards to the principal amount, thus the claim asserted against the Respondent was groundless.</u>

Conclusions along the same lines could me made on the BLA dated 2nf October 2008. FIB extended to PIDB2 (the Borrower) a loan in the amount of 1 Million Euros. The date for repayment of the loan was agreed to be on 31st March 2009. By Annex No.1 of 31st March 2009 the parties agreed to increase the amount of the loan from 1 (one) to 2.5 (two and a half) Million Euros and to reschedule the repayment date for 15th December 2009. Guarantee Contract was signed later. By virtue of said Guarantee Contract ASP2 agreed to act as Guarantor and undertook before FIB to assume responsibility for the fulfillment of the PIDB2's obligations under the above BLA and Annex No. 1 of 31st March 2009 thereto. By Annex 2 of 15th December 2009 the Bank and Borrower agreed on another rescheduling of the repayment date for 30th June 2010. The Guarantor, however, did not sign said Annex. So, the





changed repayment date when it was rescheduled from 15 December 2009 for 30 June 2010 by virtue of the last signed Annex might not and should not place the Guarantor under any obligation. The Guarantor was under obligation till 15th June 2010, i.e. over a 6-month period after 15th December 2009. The Creditor, FIB, produced to this Court an Order for Immediate Enforcement (of an obligation to pay) pursuant to Art.417 CPC and a Writ of execution dated 29th October 2010 (pages 262 and 263 in the case file) issued in favor of FIB and against the Debtor and the Guarantor (in BLA No.015LD-L-000002 dated 2nd October 2008) for the amount of 283,432.50 Euros – overdue interest on the loan as accrued within the period of 30th June – 25th October 2010; these were issued in case 16698 of 2010 in the Varna Regional Court. Here, again, no evidence had been presented in support of any principal amount claim filed in court. <u>Therefore, the Creditor's rights against the Guarantor became precluded with regards to the principal amount, and hence the claim asserted against the Guarantor and the Respondent, alleged to be the former's successor, was groundless.</u>

On 29th September 2009 FIB extended a loan in the amount of 8 (Eight) Million Euros to Asset Management EAD (Borrower) by virtue of BLA No. 014LD-L-000006. The repayment date was agreed to be 30th June 2010. A Guarantee Contract was executed on 29th December 2009 and by virtue of which ASP2 agreed to act as Guarantor and undertook to be liable to FIB for the fulfillment of the obligations of the Borrower under said BLA. The Creditor, FIB, produced to this Court an Order for Immediate Enforcement (of an obligation to pay) pursuant to Art.417 CPC and a Writ of execution dated 29th October 2010 (pages 264 and 265 in the case file) issued in favor of the Bank and against the Debtor and the Guarantor in said BLA for the amount of 805,908.01 Euro – the overdue interest on the loan as accrued within the period of 30th June – 25th October 2010; these were issued in case 16699 of 2010 in the Varna Regional Court in furtherance of application of filing No.26561 of 25 October 2010 ( p.381). Once again, no evidence had been presented in support of any principal amount claim filed in court. <u>Therefore, the Creditor's rights against the Guarantor became precluded with regards to the principal amount as of 30 December 2010 (six months after the repayment date of 30 June 2010), and hence the claim asserted against the Guarantor and the Respondent, alleged to be the former's successor, was groundless.</u> That said, the Respondent's objection that the BLA and the Guarantee Contract were signed after the Agreement for Transfer of Business Enterprise under Art.15 CA should be left unheard.

Equally unsubstantiated were the Claimant's arguments that by virtue of the Agreement for Transfer of Business Enterprise the Respondent should have assumed liability for the debt to the Bank and that the Respondent should have been under the obligation to repay such debt acting a Co-Debtor under Art.101 OCA. The Respondent, however, did not assume the debt of the Borrowers in the BLAs and had never given consent to do so with either the Bank or the Borrowers as the provisions of the above-mentioned law require. By virtue of the Agreement for Transfer of Business Enterprise under Art.15 CA the Respondent succeeded and assumed the obligations of the Assignor, ASP2, respectively. As was mentioned earlier, however,





9

the Transferor of the business enterprise acted as Guarantor for the BLAs only, or in the alternative, acted as a Mortgage Debtor, i.e. an entity that used its own property as collateral for somebody else's debt. The Respondent did acquire and assume to act as party to the BLAs. Neither the Assignor of such rights and obligations, nor the Respondent themselves acted as Co-Debtors in said BLAs. Nothing changed later on when the two agreements for repurchase of liabilities to banks were executed on 19th February 2010 and 4th June 2010. Both agreements negotiated a transfer of liabilities to banks and of the collaterals used as security thereunder. The first agreement took the form of a preliminary contract and the second one was signed with the Bank in furtherance of the first. The second agreement, however, failed to give rise to the consequences it had been intended give rise to, because the condition it contained had never been met – the payment of the price agreed within the stipulated term. Nevertheless, nothing in either agreement could suggest or lead to the legal conclusion that ASP2 or the Respondent had assumed the debts of the Borrowers in the three BLAs at issue.

For all the foregoing reasons the Court found that the claim asserted under Art.694 Para 1 CA was groundless and should be denied.

Pursuant to Art.694 Para 2 CA the Claimant was ordered to pay a 4,000 Bulgarian Levs filing fee for the denied claim. In the light of the outcome of this dispute the Claimant's motion for award of costs was denied as groundless. The Respondent did not claim any costs.

Therefore, the Court **ORDERED** as follows:

**The Motion for Declaratory Judgment filed by *First Investment Bank AD*** (having  EIK: 831094393, and seat and registered office address at Sofia, Izgrev area, 37 Dragan Tsankov Blvd., and represented by the Executive Directors – Ms. Maya Lyubenova Georgieva and Mr. Yordan Velichkov Skorchev) **against Ayr Property Development AD** (in bankruptcy and having EIK: 200958720 town of Targovishte, Liliya St., block 4, section B, floor 1, apt.2, and represented by its Counsel of Record, Zahari Tomov (Member of the Varna Bar Association) where the Motion is based on Art.694 Para 1 CA and **is seeking to ascertain the existence of an account due as claimed by First Investment Bank AD and which has not been approved in the bankruptcy proceedings** (in case 14/2011 in the Targovishte District Court) **in the amount of 100, 000 Bulgarian Levs** made of a portion of the principal in the amount of 35,000 under BLA 39KP-AA-2510 dated 22nd November 2007 and 4 annexes thereto, plus a portion of the principal in the amount of 30,000 under BLA 014LD-L-000002 dated 2nd October 2008 and 2 annexes thereto, and a portion of the principal in the amount of 35,000 under BLA 014LD-L-000006 dated 29th December 2009, **which payment claim was asserted as a partial claim of the entire amount of 78,615,209.70** constituting principals, interest and costs againts the obligations of the Transferor as undertaken by APD under the Agreement for Sale and Purchase of Business Enterprise of 10th December 2009 with ASP2 (the Transferor) pursuant




to Art.15 CA, which obligations arose from the joint liability of the latter company acting as Guarantor for the above BLAs and the Annexes thereto, **IS DENIED.**

**First Investment Bank AD** (having  EIK: 831094393, and seat and registered office address at Sofia, Izgrev area, 37 Dragan Tsankov Blvd. **IS ORDERED TO PAY A BGN 4,000 FILING FEE** pursuant to Art.694 Para 2 CA by a bank transfer to the bank account of the Targovishte District Court.

This Court Order may be appealed before the Varna Court of Appeals in two-week's term after it has been served on the parties.

CHAIR: *Signed*

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the ottached document – Judgement No.3 doted 8th February 2013 of the Torgovishte District Court. This translation has 10 poges.*

Translator: _____ *Ilko Simeanova Dyu Igerova*

№ 3

Р Е Ш Е Н И Е
08.02.2013г.

гр.Търговище

**В ИМЕТО НА НАРОДА**

**ТЪРГОВИЩКИЯТ ОКРЪЖЕН СЪД**
На десети януари
В публично заседание в състав:

III състав
2013 година

**ПРЕДСЕДАТЕЛ: МАРИАНА ИВАНОВА**

Секретар Станка Желева
разгледа докладваното от Председателя
**т.д. № 82 по описа на съда за 2011 год.**
и за да се произнесе, взе предвид следното:

Образувано е по предявен от „Първа инвестиционна банка"АД София установителен иск с правно осн.чл.694 ал.1 от ТЗ за установяване съществуване на вземане в размер на **100 000лв.**, предявен като частичен от 78 615 209.70лв.

В исковата си молба ищецът твърди, че поради невключване на предявеното от него вземане в размер на 78 615 209.70лв. в Списъка на приетите вземания в откритото производство по несъстоятелност по т.д.№ 14/2011г. срещу длъжника „Еър Пропърти Девелопмънт" АД ЕИК 200958720 на осн.чл.690,ал.1от ТЗ е предявил възражение пред съда по несъстоятелността. Тъй като с Определение № 30/12.07.2011г. съдът по несъстоятелността е оставил без уважение това му възражение, предявява настоящия иск за установяване на вземането си. Като основание за предявеното вземане в обстоятелствената част на исковата молба кредиторът сочи три договора за поръчителство- Договор за поръчителство от 31.03.2009г., сключен с „Ойл сийз пропърти 2" ООД за обезпечаване вземането на банката по Договор за банков кредит № 39КР-АА-2510/22.11.2007г.,предоставен на кредитополучателя „Порт инвестмънт девелопмънт-България 2" ЕАД; Договор за поръчителство от 31.03.2009г., сключен с „Ойл сийз пропърти 2" ООД за обезпечаване вземането на банката по договор за банков кредит № 014LD-L-000002/02.10.2008г., предоставен на кредитополучателя „Порт инвестмънт девелопмънт-България 2" ЕАД и Договор за поръчителство от 29.12.2009г., сключен с „Ойл сийз пропърти 2" ООД за обезпечаване вземането на банката по договор за банков кредит № 014LD-L-000006/29.12.2009г. предоставен на кредитополучателя „Асет мениджмънт" ЕАД, което задължение на длъжника е обосновано с поемането на дълг чрез встъпване солидарно с прехвърлителя „Ойл сийз пропърти  2" ООД, съгласно договора за продажба на търговско предприятие по чл.15 от ТЗ от 10.12.2009г. Петитумът на предявения иск с правно осн.чл.694 ал.1 от ТЗ е за установяване съществуването на вземане в размер на 78 615 209.70лв., предявено частично в настоящото производство за сума в размер на 100 000лв., представляваща главница, лихви и разноски по поетите по силата на договор за покупко-продажба на търговско предприятие от 10.12.2009г. задължения от прехвърлителя „Ойл сийз пропърти 2" ООД ЕИК 148073564, произтичащи от солидарната отговорност на дружеството като поръчител по посочените 3бр.договора за банков кредит.

В хода на производството ищецът е уточнил, че сумата, за която е предявен частичния иск, представлява частично главница по всеки един от

трите договора, както следва: по договор за банков кредит № 39КР-АА-2510/22.11.2007г. и сключените към него 4бр. анекси- главница в размер на 35 000лв., по договор за банков кредит № 014LD-L-000002/02.10.2008г. и сключените към него 2бр. анекси- главница в размер на 30 000лв. и по договор за банков кредит №014LD-L-000006/29.12.2009г.–главница в размер 35 000лв.

Ответникът е оспорил предявения иск по основание и размер, с възражения, че поръчителството е лична гаранция, поради което и прехвърлянето на търговското предприятие не поражда правоприемство в учреденото от прехвърлителя поръчителство; за погасяване на поръчителството при условията на ал.1 и 2 на чл.147 ЗЗД поради недаване на съгласие за продължаването му от страна на прехвърлителя –поръчител, респ. непредявяване на иск от ПИБ в 6мес.преклузивен срок по чл.147 ал.1 и 2 ЗЗД; с позоваване на чл.142 ЗЗД.

С определение № 728/30.07.2012г. по ч.т.д.№ 747/2012г. на ВКС, ТК, II отделение е отменено определение № 178/27.03.2012г. по ч.т.д.№ 93/2012г. на Варненски апелативен съд,ТО и потвърденото със същото определение № 116/01.12.2011г. на ТОС, с което е било прекратено производството по настоящото т.д.№ 82/2011г. поради недопустимост на предявения иск. Прието е, че е налице идентитет на искането по чл.685 ал.1 ТЗ и предявения иск по чл.694 ал.1 от ТЗ, тъй като и в двата документа обстоятелствената част е напълно идентична, въз основа на еднакво индивидуализиращите произхода и обезпеченията на вземането на кредитора обстоятелства: ищецът се е позовал на встъпване на ответното дружество в дълга на „Ол сийз пропърти 2"ООД към „ПИБ"АД по сключените договори за кредит между ищеца и „Порт Инвестмънт Девелопмънт България2" ЕАД на основание сключения договор за продажба на търговско предприятие от 10.12.2009г., по силата на който са преминали в тежест на ответника задълженията, възникнали в качеството на поръчител за „Ол сийз пропърти 2"ООД по сключените от „Порт Инвестмънт Девелопмънт България 2"ЕАД договори за кредит, но и са поети изрично ипотечните тежести, учредени от прехвърлителя на търговското предприятие в полза на „ПИБ" АД, отделно от правните последици на изначално учредените от кредитополучателя върху същите имоти договорни ипотеки, респ. приложимите последици по чл.173 ЗЗД, в който смисъл е заявена и ползващата кредитора съгласно чл.722 ал.1 т.1 от ТЗ привилегия.

Съдът, след като прецени доказателствата по делото, доводите и възраженията на страните по отделно и в тяхната съвкупност, приема за установено следното:

От справката в ТР се установява, че с решение от 03.05.2011г. по т.д.№14/2011г. на ТОС е открито производство по несъстоятелността на длъжника „Еър Пропърти Девелопмънт"АД ЕИК 200958720 /решението е вп.в ТР на 04.05.2011г./. Пред съда по несъстоятелността с молба вх.№ 1991/25.05.2011г. ищецът е предявил вземане в размер на 78 615 209,70лв..-т.е.в срока по чл.685 ал.1 ТЗ. Вземането не е прието от синдика, включено е в Списъка на неприетите вземания, обявен в ТР на 25.06.2011г. В срока по чл.690 ал.1 от ТЗ ищецът е депозирал писмено възражение пред съда по несъстоятелността- вх.№ 2554/01.07.2011г., което възражение в развитото производство по чл.692 от ТЗ е оставено без уважение с определение № 30/12.07.2011г., вп. в ТР на 01.09.2011г. Настоящият установителен иск е предявен на 08.09.2011г.- в срока по чл.694 ал.1 от ТЗ. Към настоящия момент е налице висящност на производството по несъстоятелност. Налице е

идентитет на искането по чл.685 ал.1 ТЗ и предявения иск по чл.694 ал.1 от ТЗ.Предвид изложеното предявеният иск е допустим.

За да се произнесе по същество съдът съобрази следното:

С договор за банков кредит № 39КР-АА-2510 от 22.11.2007г. ПИБ АД е предоставила на кредитополучателя „Порт инвестмънт девелопмънт-България 2" ЕАД ЕИК 148117384 кредит в размер на 30 милиона евро със срок за връщане 30.06.2008г. С анекс № 1 към този договор от 26.06.2008г. страните са договорили нов срок за погасяване на кредита – 30.09.2008г. С анекс № 2 от 30.09.2008г. срокът за погасяване на кредита е изменен на 31.03.2009г. С анекс № 3 от 31.03.2009г. този срок е изменен на 15.09.2009 година, като в същия анекс е предвидено, че като обезпечение на кредита ще бъдат сключени договори за поръчителство с поръчители Чавдар Ангелов Ангелов и Ол Сийз Пропърти 2" ООД ЕИК 148073564. По делото е представен договор за поръчителство, датиран от 31.01.2009г. /лист 36/, по силата на който „Ол Сийз Пропърти 2" ООД е приело да бъде поръчител, като се е задължило пред ПИБ да отговаря за изпълнение на задълженията на „Порт инвестмънт девелопмънт-България 2" ЕАД по горепосочения договор за кредит и анекси № 1, 2 и 3 към него. Очевидно датата, посочена в договора за поръчителство, е сгрешена, защото в него са цитирани трите анекса и техните дати, като последният от тях е от 31.03.2009г., което означава, че договорът за поръчителство е сключен най-рано на тази дата. С анекс № 4 от 15.12.2009г. банката и кредитополучателя „Порт инвестмънт девелопмънт-България 2" ЕАД са договорили ново изменение на срока за погасяване на кредита, а именно 30.06.2010г. Поръчителят не е подписвал този анекс.

Договорът за кредит е обезпечен и с договорни ипотеки върху недвижими имоти, собственост на „Ол Сийз Пропърти 2" ООД .

С договор за банков кредит № 014LD-L-000002 от 02.10.2008г. ПИБ АД е предоставила на кредитополучателя „Порт инвестмънт девелопмънт-България 2" ЕАД кредит в размер на един милион евро, със срок за връщане 31.03.2009г. С анекс № 1 към този договор от 31.03.2009г. страните са изменили размера на кредита на два милиона и петстотин хиляди евро и са договорили нов срок за погасяване на кредита – 15.12.2009г. В същия анекс е предвидено, че като обезпечение на кредита ще бъдат сключени договори за поръчителство с поръчители Чавдар Ангелов Ангелов и „Ол Сийз Пропърти 2" ООД. По делото е представен договор за поръчителство, датиран от 31.01.2009г. /лист 16/, по силата на който „Ол Сийз Пропърти 2" ООД е приело да бъде поръчител, като се е задължило пред „ПИБ" АД да отговаря за изпълнение на задълженията на кредитополучателя по горепосочения договор за кредит и анекс № 1 от 31.03.2009г. към него. Отново датата, посочена в договора за поръчителство, очевидно е сгрешена, защото в него е цитиран анекса от 31.03.2009 година, което означава, че договорът за поръчителство е сключен най-рано на тази дата. С анекс № 2 от 15.12.2009г. банката и кредотополучателят са договорили ново изменение на срока за погасяване на кредита, а именно 30.06.2010г. Поръчителят не е подписвал този анекс.

Договорът за кредит е обезпечен и с договорни ипотеки,върху недвижими имоти, собственост на „Ол Сийз Пропърти 2" ООД.

С договор за банков кредит № 014LD-L-000006 от 29.12.2009г. „ПИБ" АД е предоставила на кредитополучателя „Асет мениджмънт" ЕАД ЕИК 103921587

кредит в размер на осем милиона евро със срок за връщане 30.06.2010г. В договора са предвидени обезпечения- ипотеки върху недвижими имоти на „Еър Пропърти Девелопмънт" АД и поръчителство от Чавдар Ангелов Ангелов и „Ол Сийз Пропърти 2" ООД. По делото е представен договор за поръчителство от 29.12.2009г., по силата на който „Ол Сийз Пропърти 2" ООД е приело да бъде поръчител, като се е задължило пред ПИБ да отговаря за изпълнение на задълженията на кредитополучателя по горепосочения договор за кредит и всички анекси и допълнителни споразумения към него.Договорът за кредит е обезпечен и с договорни ипотеки върху недвижими имоти, собственост на „Еър Пропърти Девелопмънт" АД.

Безспорно се установява от доказателствата по делото, че на 10.12.2009г. между „Ол Сийз Пропърти 2" ООД и ответника по делото „Еър Пропърти Девелопмънт"АД е сключен договор за покупко-продажба на търговското предприятие на „Ол Сийз Пропърти 2" ООД на осн.чл.15 от ТЗ. Спазена е изискуемата форма, прехвърлянето е вписано в търговския регистър. Съгласно соченатa разпоредба и изрично договореното в чл.1 от договора продавачът прехвърля на купувача търговското си предприятие, като съвкупност от права, задължения и фактически отношения, в това число и съществуващите ипотечни тежести и породилите ги облигационни задължения, както и всички последващи във времето финансови ангажименти, свързани с проекта „Силвър Бийч".

На 19.02.2010 между „Еър Лоджистикс Лимитед Инк",Тексас,САЩ и „Еър Пропърти Девелопмънт"АД от една страна и от друга „Ол Сийз Пропърти 2" ООД, „Проджект Къмпани Девелопмънт" ЕАД, „Асет мениджмънт" ЕАД и „Порт Инвестмънт Девелопмънт–България 2" ЕАД е сключено споразумение за изкупуване на банкови задължения с ипотечни тежести при „Силвър бийч". По силата на това споразумение първите две дружества са се задължили да изкупят всички предоставени от ПИБ и „Кооперативна търговска банка" АД банкови кредити, гарантирани с ипотеки върху инвестиционните терени на „Силвър бийч", които са придобити от същите тези дружества. В изпълнение на това споразумение на 04.06.2010г. е сключено споразумение за прехвърляне на ипотечни вземания, по силата на което „Еър Лоджистикс Лимитед Инк" ще изкупи за сумата от 31297827 евро вземанията на банката по посочените по-горе три броя кредити, а ПИБ ще прехвърли на приобретателя на задълженията обезпеченията по кредитите. Договорът е сключен под условието, че посочената цена бъде заплатена на прехвърлителя ПИБ до 07.07.2010г. Доказателства за това плащане и прехвърляне на обезпеченията не са представени.

Така представената фактическа обстановка налага следните изводи:

Предявен е иск с правно осн.чл.694 ал.1 от ТЗ за установяване съществуването на неприето в производството по несъстоятелност вземане, предявено от „Първа инвестиционнна банка" АД.

Относно допустимостта на предявения иск съдът изложи съображения по горе. По съществото на спора:

По гореописаните три договора за банков кредит ищецът е предоставил, съответно кредити в размер на 30 млн.евро и 2.5 млн.евро по първите на два на „Порт Инвестмънт Девелопмънт–България 2" ЕАД и по третия -на „Асет мениджмънт" ЕАД кредит в размер на 8 млн.евро. Поръчител и по трите

договора е „Ол Сийз Пропърти 2" ООД. От своя страна това дружество е прехвърлило предприятието си на ответника „Еър Пропърти Девелопмънт"АД по реда на чл. 15 от ТЗ. Съгласно посочената разпоредба приобретателят на търговското предприятие придобива цялата съвкупност от права, задължения и фактически отношения на предприятието на прехвърлителя. В случая това означава, че купувачът на търговското предприятие поема и правата и задълженията на прехвърлителя по сключените договори за поръчителство по трите цитирани договора за банков кредит. Съгласно чл. 138 ЗЗД поръчителят отговаря за изпълнение на задължението на длъжника солидарно с последния. За да се ангажира неговата отговорност следва да съществува задължението на длъжника. По отношение размерът на задълженията към кредитора ПИБ по трите договора бе изслушав ССЕ. Доколкото предявените искове, съгласно уточнението, касаят само главници по трите договора, следва да се обсъжда само размерът на дължимата по договорите главница. Съгласно експертизата по договора за кредит от 22.11.2007г. дължимата главница е 20 милиона евро, по договора от 02.10.2008г. е 2.5 милиона евро и по договора от 29.12.2009г. е 7999118.02 евро. Съгласно допълнителното заключение на вещото лице размерът на дължимите главници по договорите за кредит от 21.11.2007г. и от 02.10.2008г., както към дата 30.06.2010 година, така и към дата 03.05.2011г. са в размер съответно 20 милиона и 2.5 милиона. Като в един от вариантите, в който наличностите по банковата сметка на „Порт Инвестмънт Девелопмънт–България 2" ЕАД към 30.12.2009г. се използват за погасяване на съществуващи задължения за лихви, след като се приспаднат комисионни за предоговаряне, на стойност по тарифата на банката, задължението за главница по кредита от 21.11.2007 година е в размер на 18345399.26 евро.

Ответникът е направил възражение, на основание чл. 147 от ЗЗД, за това, че кредиторът не е предявил иск за своето вземане против длъжника в шестмесечен срок от падежа.Във връзка с това възражение съдът излага следните доводи:

Падежите на основното задължение по трите договора са съответно:

По договор за банков кредит от 22.11.2007г. ПИБ АД в размер на 30 милиона срокът за връщане е 30.06.2008г. С анекс № 1/26.06.2008г. страните са договорили нов срок за погасяване на кредита–30.09.2008г. С анекс № 2/ 30.09.2008г. –срокът е изменен на 31.03.2009г., а с анекс № 3/31.03.2009г. този срок е изменен на 15.09.2009г.В последния анекс е предвидено., че като обезпечение на кредита ще бъдат сключени договори за поръчителство с поръчители Чавдар Ангелов Ангелов и „Ол Сийз Пропърти 2" ООД. Както бе прието по-горе договорът за поръчителство, по силата на който „Ол Сийз Пропърти 2" ООД е приело да бъде поръчител за изпълнение на задълженията на кредитополучателя по този договорт и анекси № 1,2 и 3 към него е от най-ранна дата 31.03.2009г. и очевидно от дата преди 15.12.2009г./датата на анекс № 4, който не е цитиран в договора за поръчителство/. С този анекс № 4 банката и кредитополучателят са договорили ново изменение на срока за погасяване на кредита, а именно 30.06.2010 година. Поръчителят не е подписвал този анекс и не е изразявал съгласие с него. Съгласно разпоредбата на чл.147 ал.1 от ЗЗД поръчителите остават задължени и след падежа на главното задължение, ако кредиторът е предявил иска против длъжника в течение на шест месеца. Щом искът е

предявен след този срок, правото на кредитора към поръчителите се преклудира. Съгласно 147, ал. 2 от ЗЗД, продължението на срока, дадено от кредитора на длъжника няма действие спрямо поръчителя , ако той не е дал съгласието си за това. В случая падежът на основното задължение, за което поръчителят се е съгласил е 15.12.2009г.. Промяната на този падеж с последния анекс на 30.06.2010 година не може да обвърже поръчителя. Той следва да отговаря в срок до 15.06.2010г.– шест месеца след посочения падеж. След изтичането на този срок правото на кредитора да иска изпълнение от него се преклудира. Доколкото ответникът по иска е поел задълженията на поръчителя по договора, по силата на договора за прехвърляне на предприятие, той следва да отговаря, при същите условия, или искът срещу него би бил основателен, само ако кредиторът е предявил иск против длъжника в посочения срок.

Съдът указа на ищеца да представи доказателства за това кога е предявил иск за вземането си по отношение на длъжника. По делото бяха представени заповед № 9692/28.10.2010г. за изпълнение на парично задължение въз основа на документ по чл. 417ГПК и изпълнителен лист от 28.10.2010г./л.260, 261/, издадени в полза на ПИБ АД против длъжника и поръчителите /по договор банков кредит № 39КР-АА-2510 от 22.11.2007г./ за сумата от 2862277.39евро– представляваща просрочена лихва върху главницата по договора за периода 30.06–25.10.2010г. - по ч.гр.д. № 16712/2010г. на ВРС, по заявление на банката рег. № 26560/25.10.2010 година /л.337/. Безспорно заявлението по чл. 417 от ГПК следва да се квалифицира като иск по смисъла на чл. 147 от ЗЗД, но то е предявено само за лихви, но не и за главницата /основното вземане/, а освен това е и след изтичането на 6м.срок след падежа на главното задължение. При това положение то не е запазило правата на кредитора спрямо поръчителя по отношение главницата. Други доказателства не бяха представени. С оглед изложените съображения се налага правния извод, че правата на кредитора спрямо поръчителя са се преклудирали по отношение на главницата по договора и искът срещу ответникат, като негов правоприемник, е неоснователен.

Същите изводи се налагат и по договора за банков кредит от 02.10.2008г. ПИБ АД е предоставила на кредитополучателя „Порт Инвестмънт Девелопмънт–България 2" ЕАД кредит в размер на 1млн.евро със срок за връщане 31.03.2009г. С анекс № 1/31.03.2009г. страните са изменили размера на кредита на 2,5млн.евро и са договорили нов срок за погасяване– 15.12.2009г. Договорът за поръчителство е сключен след този анекс. По силата на този договор „Ол Сийз Пропърти 2" ООД е приело да бъде поръчител, като се е задължило пред ПИБ да отговаря за изпълнение на задълженията на кредитополучателя по горепосочения договор за кредит и анекс № 1/31.03.2009г. С анекс № 2/15.12.2009г. банката и кредитополучателят са договорили ново изменение на срока за погасяване на кредита, а именно 30.06.2010г. Поръчителят не е подписвал този анекс. Промяната на първоначалния падеж от 15.12.2009г. с последния анекс на 30.06.2010г. не може да обвърже поръчителя. Той следва да отговаря в срок до 15.06.2010г. – шест месеца след 15.12.2009г. Кредиторът ПИБ е представил заповед за изпълнение по реда на чл. 417ГПК и изпълнителен лист от 29.10.2010г. /л.262, 263/ в полза на ПИБ против длъжника и поръчителите /по ДБК №014LD-L-000002 от 02.10.2008г./ за сумата от 283432.50 евро – представляваща просрочена лихва по договора за периода 30.06–25.10.2010г.

- издадени по ч.гр.д. № 16698/2010г. на ВРС, по заявление на банката рег. № 26558/25.10.2010г.  /л.300/.  По същия начин не бяха представени доказателства за претендирана по съдебен ред главница. Правата на кредитора спрямо поръчителя са се преклудирали по отношение на главницата по договора и искът срещу него и ответникът, като негов правоприемник е неоснователен.

По договора за банков кредит от 29.09.2009 година ПИБ АД е предоставила на кредитополучателя „Асет мениджмънт" ЕАД кредит в размер на 8млн.евро със срок за връщане 30.06.2010г. Договорът за поръчителство е от 29.12.2009г., по силата на който „Ол Сийз Пропърти 2" ООД е приело да бъде поръчител, като се е задължило пред ПИБ да отговаря за изпълнение на задълженията на АСЕТ по горепосочения договор за кредит.    Кредиторът ПИБ АД е представил заповед за изпълнение по реда на чл. 417 от ГПК и изпълнителен лист от 29.10.2010г. /л.264, 265/ в полза на банката против длъжника и поръчителите /по цитирания ДБК/ за сумата от 805908.01 евро – представляваща просрочена лихва за периода 30.06–25.10.2010г. по договора за банков кредит – издадени по ч.гр.д. № 16699/2010г. на ВРС, по заявление рег. № 26561/25.10.2010г. /л.381/. Отново не бяха представени доказателства за предявяване на иск за главница. Правата на кредитора спрямо поръчителя са се преклудирали по отношение на главницата по договора към дата 30.12.2010 година /шест месеца след датата на падежа 30.06.2010г./ и искът срещу него и ответникът, като негов правоприемник е неоснователен. С оглед на този извод не следва да се обсъжда възражението на ответника, че договорът за кредит и договорът за поръчителство са сключени след сключването на договора за прехвърляне на предприятието по чл. 15 от Търговския закон.

Неоснователни са и доводите на ищеца, че по силата на договора за прехвърляне на предприятие ответникът е встъпил в дълга спрямо банката и отговаря като съдлъжник на основание чл. 101 от ЗЗД. Ответникът не е встъпил в дълга на длъжниците по договорите за кредит, защото няма такова споразумение с тях или с банката, каквото е изискването по посочения текст. По силата на договора за прехвърляне на предприятие по чл.15 от ТЗ, ответникът е станал правоприемник и съответно е поел задълженията на праводателя си „Ол Сийз Пропърти 2" ООД. Но, както бе отбелязано по-горе прехвърлителят на предприятието е само поръчител по договорите за банков кредит, или само ипотекарен длъжник – лице обезпечило със свой имот чуждо задължение. Ответникът, съответно е придобил и има същото качество като страна по договорите за кредит. Нито праводателят му, нито ответникът са съдлъжници по тези договори. Това им качество не е променено и от двете споразумения за изкупуване на банкови задължения от 19.02.2010г. и 04.06.2010г.. И двете представляват уговаряне на прехвърляне на банкови кредити и обезпеченията към тях. Първият договор между дружествата представлява предварителен договор, в изпълнение на който е сключен втория с банката. Вторият договор не е породил целените в него последици, защото няма данни да е изпълнено посоченото в него условие – плащането на цената в определения срок. Независимо от това и в двете не са включени уговорки, които да сочат на правния извод, че „Ол Сийз Пропърти 2" ООД или ответникът да са встъпили в дълга на длъжниците по процесните три банкови кредита.

Предвид изложените съображения съдът намира, че така предявения иск с правно осн.чл.694 ал.1 от ТЗ е неоснователен и като такъв следва да бъде отхвърлен.

На осн.чл.694 ал.2 от ТЗ ищецът следва да бъде осъден да заплати държавна такса по отхвърлената претенция в размер на 4000.00лв. Предвид изхода на спора неоснователно е искането на ищеца за присъждане на разноски. Ответникът не е претендирал такива.

Водим от горното, съдът

**Р Е Ш И :**

ОТХВЪРЛЯ като НЕОСНОВАТЕЛЕН предявения от „Първа инвестиционна банка"АД ЕИК 831094393, със седалище и адрес на управление гр.София, район „Изгрев", бул."Драган Цанков"№ 37, представлявана от изп.директори Мая Любенова Георгиева и Йордан Величков Скорчев, срещу „Еър Пропърти Девелопмънт" АД ЕИК 200958720 /в несъстоятелност/ със седалище и адрес на управление гр.Търговище, ул."Лилия" бл.4, тяло Б, ет.1, ап.2, действащо чрез пълномощника си адв.З.Томов- ВАК, ИСК с правно основание 694, ал. 1 от Търговския закон, за установяване съществуването в полза на „Първа инвестиционна банка" АД на вземане, неприето в производството по несъстоятелност по т.д.№ 14/2011г. по описа на Търговищки окръжен, в размер на сумата от 100000 лева, представляваща: част от главницата в размер на 35000лева по договор за банков кредит № 39КР-АА-2510/22.11.2007г. и сключените към него 4бр. анекси; част от главницата в размер на 30000лева по договор за банков кредит № 014LD-L-000002/02.10.2008г. и сключените към него 2бр. анекси; и част от главницата в размер на 35000лева по договор за банков кредит №014LD-L-000006/29.12.2009г., предявен като частичен от общата сума от 78615209.70 лева – главница, лихви и разноски, по поетите от „Еър Пропърти Девелопмънт" АД ЕИК 200958720, по силата на договор от 10.12.2009г. за покупко-продажба на търговско предприятие по чл.15 от Търговския закон, задължения на прехвърлителя „Ол Сийз Пропърти 2" ООД ЕИК 148073564, произтичащи от солидарната отговорност на дружеството като поръчител по горепосочените договори за банкови кредити и анекси към тях.

ОСЪЖДА „Първа инвестиционна банка"АД ЕИК 831094393, със седалище и адрес на управление гр.София, район „Изгрев", бул."Драган Цанков"№ 37, ДА ЗАПЛАТИ по сметка на Търговищки окръжен съд държавна такса по предявения иск в размер на 4000.00лв.- на осн.чл.694 ал.2 от ТЗ.

РЕШЕНИЕТО може да бъде обжалвано пред ВАРНЕНСКИЯ АПЕЛАТИВЕН СЪД, в двуседмичен срок от връчването му на страните.

ПРЕДСЕДАТЕЛ:

# EXHIBIT 35

*Filing No.062 dated 21ˢᵗ May 2013*

|  |  |
|---|---|
| **TO:** | **THE TARGOVISHTE DISTRICT COURT**<br>**Commercial case No.14 in the list for 2011** |
| **Cc:** | **Ganka Kolyovska,**<br>**The Trustee in Bankruptcy**<br>**For Ayr Property Development AD**<br>**(declared bankrupt)** |

### REQUEST

| | |
|---|---|
| Filed by: | FIRST INVESTMENT BANK AD, having seat and registered office address at Sofia, the Izgrev Region, 37 Dragan Tsankov Boulevard and duly registered in the Commercial Registry under EIK (Company number):831094393, and represented by the Executive Directors, Messr. Vassil Hristov Hristov and Dimitar Kostov Kostov |
| In case | No. 14/2011 |
| Legal grounds: | Art.724 Para 3 with reference to Art.717n of the commercial Act |
| Re: | Secured Creditor Satisfaction |

DEAR DISTRICT JUDGE,

By virtue of Order of Receivership No. 270 dated 15ᵗʰ December 2012 and issued in case 14/2011 in the docket kept at the Commercial Division at the Targovishte District Court and in favour of First Investment Bank AD ("**FIB**" or "**the Bank**") acting as the Buyer, which Order of Receivership has been in effect since 23ʳᵈ April 2013, the Bank has acquired ownership in the land properties listed below and which properties are a part of the bankruptcy estate of Ayr Property Development AD, declared bankrupt and having EIK:200958720 (hereinafter "**APD**") and are located in the lands of the town of Balchik, Municipality of Balchik, District of Dobrich, the Srebristiya Briag ("Silver Beach") Area, as follows:

- Land Property of identification No.02508.88.734 having area of 579,063 m² (*five hundred seventy nine thousand and sixty-three square meters*) and durable land use designation as afforested territory and manner of permanent use: forest for another type of wood production and borders as follows:  land properties with Nos. 02508.88.375, 02508.88.373, 02508.88.162 and 02508.88.780, respectively;

- Land Property with identification No.02508.88.735 and having area of 212,239 m² (*two hundred and twelve thousand two hundred and thirty-nine square meters*) and durable land use designation as afforested territory and manner of permanent use: forest for another type of wood production, having borders as follows:  land properties with Nos. 02508.88.374, 02508.88.373 and 02508.88.162, respectively;

*Attorney Dimitar Tanaziev*

- Land Property of identification No.02508.88.736 having area of 251,424 m$^2$ (*two hundred fifty one thousand four hundred and twenty-four square meters*) and durable land use designation as afforested territory and manner of permanent use: forest for another type of wood production, and borders as follows:   land properties of Nos. 02508.88.386, 02508.88.629, 02508.88.162, 02508.88.737, 02508.88.313 and 02508.88.343, respectively;

The aggregate value of the above-described properties is BGN 97,500,000 (ninety seven million and five hundred thousand Bulgarian Levs), being the sale price of the above-described cashed property; the money has been remitted to a special account held by the Trustee in Bankruptcy for APD with UniCredit Bulbank AD.

The Order of Receivership was duly recorded in the property registry kept at the Registry Office at Balchik under deed No.156, volume III, ref.No.2269 on 10th May 2013.

The property included in APD's bankruptcy estate and cashed under the procedures prescribed in Chapter 46 of the Commercial Act is the subject matter of several security transactions, i.e. contractual mortgages signed in favour of the Mortgage Creditor being First Investment Bank AD. Said mortgages were created by the bankrupt company for the purpose of providing security for debts owed by third parties and arising from secured bank loan agreements, as shown below:

- Bank Loan Agreement No. 39KP-AA-2510 dated 22nd November 2007 ("**BLA 39KP-AA-2510**") and Annexes No.1 of 26th June 2008, No.2 of 30th September 2008, No. 3 of 31st March 2009 and No.4 of 15th December 2009, respectively, thereto, where the Borrower is **Port Investment Development – Bulgaria 2 EAD having EIK: 148117384** ("**PIDB2**");

- Bank Loan Agreement No. 014LD-L-000002 dated 2nd October 2008 and Annexes No.1 of 31st March 2009 and No.2 of 15th December 2009 thereto ("**BLA 014LD-L-000002**") where the Borrower is PIDB2;

- Bank Loan Agreement No. 014LD-L-000006 dated 29th December 2009 ("**BLA 014LD-L-000006**") where the Borrower is **ASSET MANAGEMENT EAD** having EIK: 103921587 ("**AM**").

It is hereby requested to have the provision of Article 717n CA duly enforced by effecting payment of the amount from the properties sold, which were earlier mortgaged in favour of FIB. Such payment is based on the writs of execution for the amounts due owned by the Bank pursuant to the abovementioned mortgages:

I.   Regarding **BLA 39KP-AA-2510** and the annexes thereto, where the Borrower is PIDB2, the amounts due owned by FIB have arisen from the instruments below:

**Order for payment No.4932** dated 28th June 2012 based on documents provided for in Art.417 of the Code of Civil Procedure ("**CPC**") and a Writ of Execution issued in case 8985 by the XVI Panel of the Varna Regional Court, by virtue of which Order where the Debtor, PIDB2, was ordered to pay to the Bank the amount of EUR 31,724,900 (thirty one million seven hundred twenty four thousand and nine hundred Euros) made up of:

- **EUR 20,000,000** (*twenty million Euros*) being the principal overdue under **BLA 39KP-AA-2510** and the annexes thereto plus the interest accrued

2    Attorney Dimitar Tanaciev

over the period commencing on the date of filing of this request, i.e. 21st June 2012 and until payment in full, which amounts to EUR 1,989,880 as of 15th May 2013;

- **EUR 11,724,900** (*eleven million seven hundred twenty four thousand and nine hundred Euros*) being the penalty interest in said BLA for the period within 25th October 2010 – 21st June 2012;

- Plus all court and filing fees in the amount of BGN 1,240,970.22 and an attorney fee of BGN 620,940;

- Filing fee of BGN 1,240,970.22 for initiating an action for declaratory judgment;

**Order for payment No.9692** dated 28th October 2010 based on documents provided for in Art.417 CPC and a Writ of Execution issued in case 16712/2010 by the IX Panel of the Varna Regional Court, and the Judgement made in case 2222/2010 by the Varna District Court and currently in full force and effect, where the Debtor by virtue of which the Debtor, PIDB2, was ordered to pay to the Bank the amount of EUR 2,267,460 (*two million two hundred hundred sixty seven thousand and four hundred and sixty Euros*) made up of the amount of interest charged on **BLA 39KP-AA-2510** and the Annexes thereto for the period from 30th June 2010 till 25th October 2010, plus costs under Art.78 Para 1 CPC in the amount of BGN 133,453.91 as incurred in the *ex-parte* proceedings, where BGN 88,695.33 of which amount was paid as filing fee and BGN 44,758.58 paid as attorney's fee.

In the declaratory judgment made in case 2222/2010 and currently in full force and effect the Varna District Court declared that the amount due under the writ of execution issued in case 16712/2010 in favour of FIB is BGN 88,853.76 for filing fee and BGN 89,107 attorney's fee.

Enforcement proceedings in case No.20108100400436, as instituted pursuant to the title to be enforced, costs were awarded for fees and charges in the amount of BGN 106,895.59 and for attorney's fee in the amount of BGN 89,107.

The total amount of the debt owed, including the interests due on the principal awarded, which amounts to BGN 73,932,777.91 as of 15th May 2013 after deduction of the repayments made by the Debtor in the enforcement proceedings in the amount of BGN 19,557.25.

**FIB's receivables under this agreement were secured by the following transactions:**

**A) Contractual mortgages securing the amounts due owned by FIB under BLA 39KP-AA-2510 and Annexes thereto where PIDB2 is the Borrower.**

1. Notary Deed No. 152, volume II, ref. No. 4949 dated 23rd November 2007, case № 3070/07 in the list kept at the Registry Office in the town of Balchik, executed for securing the Bank's receivables from PIDB2 under **BLA 39KP-AA-2510** in the amount of **EUR 30,000,000**. This is the first mortgage in favour of FIB created on land properties of Nos. 02508.88.734, 02508.88.735 and 02508.88.736.

Attorney Dimitar Tanakiev

3

2. Notary Deed No. 177, volume I, ref. No. 2451 dated 27th June 2008, case No.1340/08 in the list kept at the Registry Office in the town of Balchik, executed for securing the Bank's receivables from PIDB2 under **BLA 39KP-AA-2510** and **Annex No.1 of 26th June 2008** thereto. Such contractual mortgage was created on land properties of identification Nos.02508.88.**734**, 02508.88.**735** and 02508.88.**736**, respectively.

3. Notary deed No. 55, volume II, ref. No.3668 dated 3rd October 2008, case No.2136/08, in the list kept at the Registry Office in the town of Balchik, executed for securing the Bank's receivables from PIDB2 under **BLA 39KP-AA-2510**, Annex No.1 dated 26th June 2008 and Annex No.2 dated 30th September 2008 thereto. Such contractual mortgage was created on land properties of Nos.02508.88.**734**, 02508.88.**735** and 02508.88.**736**, respectively.

4. Notary deed No. 41, volume I, ref. № 1227 dated 1st April 2009, case No.367/09 in the list kept at the Registry Office in the town of Balchik, executed for securing Bank's receivables from PIDB2 under **BLA 39KP-AA-2510 and** Annex No.1 dated 26th June 2008, Annex No.2 dated 30th September 2008 and Annex No.3 dated 31st March 2009 thereto. Such contractual mortgage was created on land properties of Nos.02508.88.**734**, 02508.88.**735** and 02508.88.**736**, respectively.

**II. Regarding BLA No.014LD-L000002 dated 2nd October 2008, Annex 1, dated 31st March 2009 and Annex 2, dated 15th December 2009 thereto, where PIDB2 is the Borrower, the amounts due owned by FIB have arisen from the instruments below:**

**Order for Payment No.4868** dated June 25, 2012 for payment of liabilities based on documents provided for in Art.417 CPC and a Writ of Execution issued in case No.8968/2012 in the list kept by Varna Regional Court – IX panel, by virtue of which Order where the Debtor, PIDB2, was ordered to pay to the Bank the amount of **EUR 3,965,612.50** (*three million nine hundred sixty five thousand six hundred and twelve euro and 50 eurocents*), made up of:

-   **EUR 2,500,000.00 (*two million and five hundred Euros*)** being the principal overdue under **BLA 014LD-L000002**, Annex 1, dated 31st March 2009 and Annex 2, dated 15th December 2009 thereto, plus the lawful interest accrued over the period commencing on the date of filing of this request, i.e. 21st June 2012 and until payment in full, which amounts to **EUR 248,735 as of 15th May 2013;**

-   **EUR 1,465,612.50 (*one million four hundred sixty five thousand six hundred and twelve Euros and 50 Eurocents*)** being the overdue penalty interest under said BLA for the period within October 25th 2010 till – 21st 2012;

-   Plus all court and filing fees in the amount of BGN 155,121.28 and the attorney fee of the counsel of record for the enforcement proceedings in the amount of BGN 78,010;

-   Filing fee of BGN 155,121.28 for initiating an action for declaratory judgment;

The total amount of the debt including the lawful interest due and awarded as of May 15th, 2014 amounts to BGN 8,630,799.83.

*Attorney Dimitar Tanakiev*

4

FIB's receivables under this agreement were secured by means of the following transactions:

**B) Contractual mortgages securing FIB's receivables under BLA No.014LD-L000002, Annex dated 31st March 2009 and Annex 2, dated 15th December 2009 thereto, where PIDB2 is the Borrower**

1.  A notary deed No.56, volume VIII, ref. No. 3670 dated 3rd October 2008, case No.2138/08 in the list kept at the Registry Office in the town of Balchik where such contractual mortgage shall secure the collection of the Bank's receivables from PIDB2 under a BLA 014LD-L-000002 dated 2nd October 2008 in the amount of EUR 1,000,000 (*one million Euros*). Such contractual mortgage was established on land property of No.02508.88.736;

2.  A notary deed No.40, volume I, ref. No.1226 dated 31st March 2009, case No. 366/09 in the list kept at the Registry Office in the town of Balchik for securing the collection of the Bank's receivables from PIDB2 under BLA 014LD-L-000002 dated 2nd October 2008, where the amount of the above has been increased from EUR 1,000,000 (*one million Euros*) to EUR 2,500,000 (*two million and five hundred thousand Euros*) by virtue of Annex No.1 of 31st March 2009. Such contractual mortgage was established on land property of No.02508.88.736.

**III. Regarding BLA No.014LD-L000006 dated 29th December 2009 where the Borrower is Asset Management EAD, Varna, having EIK: 103921587, the amounts due owned by FIB have arisen from the instruments below:**

**Order for Payment No.4886** dated June 26, 2012 for payment of liabilities based on documents provided for in Art.417 CPC and a Writ of Execution issued in case No.8974/2012 in the list kept by Varna Regional Court – XXXIII panel, by virtue of which Order where the Debtor, Asset Management EAD, was ordered to pay to the Bank the amount of EUR 10,570,936.45 (*ten million five hundred and seventy thousand nine hundred and thirty six euro and 45 eurocents*), made up of:

-   **EUR 6,950,118.02 (*six million nine hundred and fifty thousand one hundred and eighteen Euros and 2 Eurocents*)** being the principal overdue under BLA No.014LD-L000002 plus the lawful interest accrued over the period commencing on the date of filing of this request, i.e. 21st June 2012 and until payment in full, which amounts to EUR 691,495.04 as of 15th May 2013;

-   **EUR 3,620,818.43 (*three million six hundred and twenty thousand eight hundred and eighteen Euros and 43 Eurocents*)** being the overdue penalty interest under said BLA for the period within October 25th 2010 till – 21st 2012;

-   Plus all court and filing fees in the amount of BGN 413,499.09 and the attorney fee of the counsel of record for the enforcement proceedings in the amount of BGN 207,200;

-   Filing fee of BGN 413,499.09 for initiating an action for declaratory judgment;

The total amount of the debt including the lawful interest due and awarded as of May 15th, 2014 amounts to BGN 23,061,599.56.

Attorney Dimitar Tanakiev

5

**FIB's receivables under this agreement were secured by the following transactions:**

**B) Contractual mortgages securing FIB's receivables under BLA No.014LD-L000006 where Asset Management EAD is the Borrower:**

1. Notary deed No.5, volume I, ref. No.247 dated 19th February 2010 in the list kept at the Registry Office in the town of Balchik, executed to secure the collection of the Bank's receivables from Asset Management EAD, under BLA No.014LD-L-000006. Such contractual mortgage was established over land properties of Nos. 02508.88.734 and 02508.88.736, respectively.

The secured transactions described above make FIB a legitimate Mortgage Creditor in these proceedings to which the provisions of Art.717n CA apply. Said legal provisions governs cases where the property of a company declared bankrupt has been used as security for a third party's debt by way of a mortgage. Said legal standard directs the Trustee in Bankruptcy to give a notice to the Mortgage Creditor, PIB in this case, and the latter having obtained a writ of execution is entitled to be satisfied first and against the mortgaged property.

The **Writs of Execution** presented show that the total amount of the secured amount due owned by FIB as of 15th May 2013 is **BGN 105,625,177.30** (*one hundred and five million six hundred twenty five thousand one hundred and seventy-seven Bulgarian Levs and thirty stotinkas*), while the sale price of the mortgaged property fails to cover the amount due.

The provision of Art.717n CA is a special one – it supersedes the procedures for dividing of property prescribed in Art.722 Para 1 CA whenever any Mortgage Creditors are involved and in favor of whom the Debtor has created a mortgage/s of property or properties owned by such Debtor for the purpose of guaranteeing a third party's debt repayment. Therefore, all money received from the sale of the property included in the bankruptcy estate and mortgaged in favor of the Bank must be paid to us immediately (Art.724 Para 2 CA) together with the legal interest as awarded on the principal awarded as due in the Writs of Execution until the date when the debts due will be repaid in full.

*Attached hereto are:*

- *A copy of this Request to be served on the Trustee in Bankruptcy;*
- *4 (four) certified copies of the Writs of Execution while the originals will be supplied to the Trustee and/or the Bankruptcy Court along with a Delivery and Acceptance Statement prior to the payment;*
- *Judgment made in case 2222/2010 by the Varna District Court;*
- *Title deeds for contractual mortgage – 7 (seven); a power of attorney.*

Respectfully submitted,

*Signed ill.*
Dimitar Kostov,

Executive director

*Signed ill.*
Vassil Hristov,

Executive Director

6

*Вх. № 062/21 05. 13г*

До
**ОКРЪЖЕН СЪД**
**ГР.ТЪРГОВИЩЕ**
**ТЪРГОВСКО ОТДЕЛЕНИЕ**
т.д.н 14/2011 г.

копие:  Синдик на „Еър пропърти девелопмънт"
АД , в несъстоятелност, г-жа Ганка Кольовска

# И С К А Н Е

"ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, със седалище и адрес на управление гр. София, Район Изгрев, бул. "Драган Цанков" 37, регистрирана в ТР при АВ с ЕИК 831094393, представлявано от Изпълнителните директори Васил Христов Христов и Димитър Костов Костов

по т.д.н. № 14/2011 г.

основание:  чл. 724 ал.3  вр. Чл. 717н от Търговския закон – удовлетворяване на обезпечен кредитор

Уважаема г-жо окръжен съдия,

С Постановление за възлагане на недвижим имот № 270 от 15.12.2012г., постановено по т.д. 14/2011 г. по описа на Търговищки окръжен съд, Търговско отделение и влязло в законна сила на 23.04.2013г., върху "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, София, в качеството на купувач, са възложени в собственост следните недвижими имоти от масата на несъстоятелността на „Еър пропърти девелопмънт" АД , в несъстоятелност, ЕИК 200958720, находящи сс на територията на гр. БАЛЧИК, Община БАЛЧИК, област ДОБРИЧ, местност „Сребрист бряг", представляващи:

ПОЗЕМЛЕН ИМОТ   с идентификатор 02508.88.734 с площ 579 063 кв.м. (петстотин седемдесет и девет хиляди и шестдесет и три квадратни метра), с трайно предназначение на територията – горска; с начин на трайно ползване – друг вид дървопроизводствена гора; при граници: 02508.88.735; 02508.88.373; 02508.88.162; 02508.88.780;

ПОЗЕМЛЕН ИМОТ   с идентификатор 02508.88.735 с площ 212 239 кв.м. (двеста и дванадесет хиляди двеста тридесет и девет квадратни метра) с трайно предназначение на територията – горска; с начин на трайно ползване – друг вид дървопроизводствена гора; при граници: 02508.88.734; 02508.88.373; 02508.88.162;

ПОЗЕМЛЕН ИМОТ  с идентификатор 02508.88.736 с площ 251 424 кв.м. (двеста петдесет и една хиляди четиристотин двадесет и четири квадратни метра) с трайно предназначение на територията – горска; с начин на трайно ползване – друг вид дървопроизводствена гора; при граници: 02508.88.386; 02508.88.629; 02508.88.162; 02508.88.737; 02508.88.313; 02508.88.343;

На обща стойност  97 500 000 / деветдесет и седем милиона и  петстотин хиляди/ лева – продажна цена на осребреното /описано по-горе/ имущество, постъпила по специална сметка на синдика Ганка Кольовска, открита в „Уникредит Булбанк „ АД.

Постановлението за възлагане е вписано в имотния регистър, воден в Служба по вписванията гр.Балчик  под акт № 156, том III, Вх.Рег. № 2269 на  10.05.2013г.

1

Описаното по-горе имущество от масата на несъстоятелността, осребрено по реда на Глава 46 от ТЗ, е предмет на обезпечителни сделки – договорни ипотеки, учредени в полза на ипотекарния кредитор "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД, София, с които дружеството, обявено в несъстоятелност, е гарантирало дълг на трети лица по обезпечени договори за банков кредит, както следва:

Договор за банков кредит № 39KP-AA-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г. **с кредитополучател "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД, ЕИК 148117384;**

Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009г. и Анекс № 2 от 15.12.2009г. **с кредитополучател "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД, ЕИК 148117384**

Договор за банков кредит № 014LD-L-000006/29.12.2009г. **с кредитополучател "АСЕТ МЕНИДЖМЪНТ" ЕАД** , гр.Варна, **ЕИК 103921587**

С настоящото отправяме искане за прилагане на разпоредбата на чл. 717н от Търговския закон чрез незабавно изплащане на сумата, постъпила от продажбата на ипотекираните в полза на ПИБ АД недвижими имоти, като представляваме следните изпълнителни листи за вземането си по посочените по-горе обезпечени кредитни сделки :

1. По Договор за банков кредит № 39KP-AA-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г. **с кредитополучател "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД**, ЕИК 148117384 в полза на ПИБ АД са издадени следните изпълнителни основания:

**Заповед № 4932/28.06.2012г. за изпълнение на парично задължение въз основа на документ по чл. 417 ГПК и Изпълнителен лист, издаден по ч.гр.д. № 8985/2012г. на XVI-ти състав, ВРС , като длъжникът "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД, ЕИК 148117384 е осъден да заплати на банката сумата от    31 724 900 (тридесет и един милиона седемстотин двадесет и четири хиляди и деветстотин) евро, включваща :**
- сумата от **20 000 000 (двадесет милиона) евро**, представляваща просрочена главница по Договор за банков кредит № 39KP-AA-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г. към него , ведно със законната лихва върху тази сума от датата на входиране на заявлението в съда – 21.06.2012г. до окончателното й плащане, която към 15.05.2013г. е в размер на 1 989 880 евро;
- сумата от **11 724 900 (единадесет милиона седемстотин двадесет и четири хиляди и деветстотин) евро**, представляваща просрочена наказателна лихва по договора за периода 25.10.2010г. до 21.06.2012г.
-     ведно с направените съдебно-деловодни разноски в размер на 1 240 970,22 лева,и възнаграждение за един процесуален представител в размер на 620 940 лева
- платена държавна такса за установителен иск в размер на 1 240 970,22 лева.

**Заповед № 9692/ 28.10.2010г. за изпълнение на парично задължение въз основа на документ по чл. 417 ГПК и Изпълнителен лист, издаден по ч.гр.д. № 16712/2010г. на IX-ти състав, Районен съд Варна и влязло в законна сила Решение по т.д.2222/2010г. на ВОС, като длъжникът "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД, ЕИК 148117384 е осъден да заплати на банката сумата от    2 267 460.00 /два милиона двеста шестдесет и седем хиляди четиристотин и шестдесет/ евро, представляваща начислени** лихви по Договор за банков кредит № 39KP-AA-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г. към него за периода 30.06.2010г. до 25.10.2010г. и на основание чл.78 ал.1 и ал.8 от ГПК - направените

2

разноски в размер на   133 453,91 лева в заповедното производство, от които 88695.33 лева държавна такса и 44758.58 лева юрисконсултско възнаграждение.

С влязло в законна сила решение на ВОС по т.д.2222/2010г. с предмет установяване на вземането по издадения изпълнителен лист по ч.гр.д. № 16712/2010г. в полза на ПИБ АД са присъдени 88853.76 лева държавна такса и 89107 лева юрисконсултско възнаграждение.

В образуваното на основание издадения изпълнителен титул изпълнително производство № 20108100400436 са платени такси и разноски в размер на  106 895.59 и е постановено като дължимо юрисконсултско възнаграждение в размер на 56 000 лева.

Общият размер на дълга, в това число дължимата законна лихва върху присъдената главница, изчислена към 15.05.2013г, е в размер на **73 932 777,91** лева, след приспадане на извършени от длъжника погашения в изпълнителното производство в размер на 19557.25 лева

**Вземанията на ПИБ АД по този договор са обезпечени със следните обезпечителни сделки:**

А/ Договорни ипотеки, обезпечаващи вземания на ПИБ АД по Договор за банков кредит **№ 39КР-АА-2510/ 22.11.2007 г. и Анекс №1 от 26.06.2008 г., Анекс №2 от 30.09.2008 г., Анекс №3 от 31.03.2009 г. и Анекс №4 от 15.12.2009 г. към него с кредитополучател "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД**

**1.** Нотариален акт № 152, том II, вх. рег. № 4949/23.11.2007 г., дело № 3070/2007 г. по описа на служба по вписванията град Балчик,   за обезпечаване на вземанията на банката от „Порт инвестмънт девелопмънт - България 2" ЕАД с ЕИК 148117384 по договор № 39КР-АА-2510/22.11.2007 г. за банков кредит в размер на 30 000 000 евро. **Ипотеката е първа по ред в полза на ПИБ АД с предмет на ипотеката ПИ № № 02508.88.734; 02508.88.735; 02508.88. 736.**

**2.** Нотариален акт № 177, том I, вх. рег. № 2451 от 27.06.2008 г., дело № 1340/08 г. по описа на служба по вписванията град Балчик за обезпечаване на вземанията на банката от „Порт инвестмънт девелопмънт - България 2" ЕАД с ЕИК 148117384 по договор № 39КР-АА-2510/22.11.2007 г. за банков кредит и Анекс №1 от 26.06.2008 г. **Предмет на ипотеката са ПИ № № 02508.88.734; 02508.88.735; 02508.88. 736.**

**3.** **Нотариален** акт № 55, том II, вх. рег. № 3668 от 03.10.2008 г., дело № 2136/08 г. по описа на служба по вписванията град Балчик, за обезпечаване на вземанията на банката от „Порт инвестмънт девелопмънт - България 2" ЕАД с ЕИК 148117384 по договор № 39КР-АА-2510/22.11.2007 г. за банков кредит и Анекс №1 от 26.06.2008 г. и Анекс №2 от 30.09.2008 г. **Предмет на ипотеката са ПИ № № 02508.88.734; 02508.88.735; 02508.88. 736.**

**4.** Нотариален акт № 41, том I, вх. рег. № 1227 от 01.04.2009 г., дело № 367/09 г по описа на служба по вписванията град Балчик, за обезпечаване на вземанията на банката от „Порт инвестмънт девелопмънт - България 2" ЕАД с ЕИК 148117384 по договор № 39КР-АА-2510/22.11.2007 г. за банков кредит и Анекс №1 от 26.06.2008 г. и Анекс №2 от 30.09.2008 г. и анекс №3 от 31.03.2009 г. **Предмет на ипотеката са ПИ № № 02508.88.734; 02508.88.735; 02508.88. 736.**

II По Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009г. и Анекс № 2 от 15.12.2009г. с кредитополучател "**ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД**, ЕИК 148117384 в полза на ПИБ АД са издадени следните изпълнителни основания:

3

Заповед № 4868/25.06.2012г. за изпълнение на парично задължение въз основа на документ по чл. 417 ГПК и изпълнителен лист, издаден по ч.гр.д. № 8968/2012г. на IX-ти състав, ВРС, като длъжникът "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД, ЕИК 148117384 е осъден да заплати на банката сумата от **3 965 612.50 (три милиона деветстотин шестдесет и пет хиляди шестстотин и дванадесет евро и 0.50 евроцента) евро,** включваща :

- сумата от **2 500 000,00 (два милиона и петстотин хиляди) евро**, представляваща главница по Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009г. и Анекс № 2 от 15.12.2009г. към него , ведно със законната лихва върху тази сума от датата на входиране на заявлението в съда – 21.06.2012г. до окончателното й плащане, която към 15.05.2013г. е в размер на 248 735 евро ;
- сумата от **1 465 612.50 ( един милион четиристотин шестдесет и пет хиляди шестстотин и дванадесет евро и 0.50 евроцента) евро,** представляваща просрочена наказателна лихва по договора за периода 25.10.2010г. до 21.06.2012г.
- ведно с направените съдебно-деловодни разноски в размер на 155 121,28 лева, и възнаграждение за един процесуален представител в размер на 78 010 лева – в заповедното производство;
- платена държавна такса за установителен иск в размер на 155 121,28 лева.

Общият размер на дълга, в това число дължимата законна лихва върху присъдената главница, изчислена към 15.05.2013г., е в размер на **8 630 799.83 лева.**

**Вземанията на ПИБ АД по този договор са обезпечени със следните обезпечителни сделки:**

**Б/ Договорни ипотеки, обезпечаващи вземания на ПИБ АД по Договор за банков кредит № 014LD-L-000002/02.10.2008г., Анекс № 1 от 31.03.2009г. и 15.12.2009г. с кредитополучател "ПОРТ ИНВЕСТМЪНТ ДЕВЕЛОПМЪНТ – БЪЛГАРИЯ 2" ЕАД**

1. Нотариален акт № 56, том VIII, вх.рег. № 3670 от 03.10.2008 г., дело № 2138/08 г. по описа на Служба по вписванията гр.Балчик, за обезпечаване на вземанията на банката от „Порт инвестмънт девелопмънт - България 2" ЕАД с ЕИК 148117384 по по Договор за банков кредит № 014LD-L-000002 от 02.10.2008 г. в размер на 1 000 000 /един милион/ евро . Предмет на ипотеката е ПИ № 02508.88. 736.

2. Нотариален акт № 40, том I, рег. № 1226 от 31.03.2009 г., дело № 366/09 г по описа на Служба по вписванията гр.Балчик, за обезпечаване срочното изпълнение на задълженията на "Порт инвестмънт девслопмънт-България 2" ЕАД; ЕИК 148117384 по Договор за банков кредит № 014LD-L-000002 от 02.10.2008 г., чийто размер е увеличен от 1 000 000 /един милион/ евро на 2 500 000 /два милиона и петстотин хиляди/ евро с анекс №1 от 31.03.2009 г. Предмет на ипотеката е ПИ № 02508.88. 736.

III. По Договор за банков кредит № 014LD-L-000006/29.12.2009г. **с кредитополучател "АСЕТ МЕНИДЖМЪНТ" ЕАД** , гр.Варна, ЕИК 103921587 в полза на ПИБ АД са издадени следните изпълнителни основния:

4

Заповед № 4886/26.06.2012г. за изпълнение на парично задължение въз основа на документ по чл. 417 ГПК  и изпълнителен лист,  издаден по ч.гр.д. № 8974/2012г. по описа на XXXIII-ти състав,  Районен съд Варна, длъжникът  "АСЕТ МЕНИДЖМЪНТ" ЕАД е осъден да заплати на банката сумата **от 10 570 936.45 (десет милиона петстотин и седемдесет хиляди деветстотин тридесет и шест евро и 0.45 евроцента) евро**, от които:

- сумата от  6 950 118.02 (шест милиона деветстотин и петдесет хиляди сто и осемнадесет евро и 0.02 евроцента)евро,  представляваща просрочена главница по Договор за банков кредит № 014LD-L-000006/29.12.2009г., ведно със законната лихва върху тази сума от датата на входиране на заявлението в съда – 21.06.2012г. до окончателното й плащане, която към 15.05.2013г. е в размер на 691 495.04 евро.

- сумата от  3 620 818.43 (три милиона шестстотин и двадесет хиляди осемстотин и осемнадесет евро и 0.43 евроцента) евро, представляваща просрочена наказателна   лихва по договора  за периода 25.10.2010г. до  21.06.2012г.

- ведно с направените съдебно-деловодни разноски в размер на 413 499,09 лева,и възнаграждение за един процесуален представител в размер на 207 200 лева.

- платена държавна такса за установителен иск в размер на  413 499,09 лева.

Общият размер на дълга, в това число дължимата законна лихва върху присъдената главница, изчислена  към 15.05.2013г., е в размер на **23 061 599.56 лева**.

**Вземанията  на ПИБ АД по този договор  са обезпечени със следните обезпечителни сделки:**

**В/ Договорни ипотеки, обезпечаващи вземания на ПИБ АД по  Договор за банков кредит № 014LD-L-000006/29.12.2009г. с кредитополучател „АСЕТ МЕНИДЖМЪНТ"  ЕАД**

1.  Нотариален акт № 5, том I, дело 111/2010, вх.рег. № 247 от 19.02.2010г. по описа на Служба по вписванията гр.Балчик, за обезпечаване на вземанията на банката от „АСЕТ МЕНИДЖМЪНТ" ЕАД по Договор за банков кредит № 014LD-L-000006/29.12.2009г. Предмет на ипотеката са ПИ № № 02508.88.734;  02508.88. 736.

С оглед представените обезпечителни сделки, "ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД се легитимира в настоящото производство  като ипотскарен кредитор, по отношение на който намират приложение разпоредбите на чл. 717н от ТЗ. Тази норма урежда случаите на имущество, с което дружество, обявено в несъстоятелност, е гарантирало дълг на трето лице, с ипотека. Тази норма задължава синдика в производството по  несъстоятелност, да уведоми ипотекарния кредитор, какъвто е ПИБ АД  в случая, който, след като се  снабди с изпълнителен лист, следва да  се удовлетвори преимуществено от стойността на предмета на ипотеката.

Видно от представените изпълнителни листи общия размер на обезпеченото вземането на ПИБ АД  към 15.05.2013г. е  **105 625 177.30 / сто и пет милиона шестстотин двадесет и пет хиляди сто седемдесет и седем лева и 0,30 ст./ лева**, като получената продажна цена от осребреното имущество не покрива изцяло вземането ни.

Разпоредбата на чл.717н от ТЗ е специална- тя изключва реда за разпределение по чл.722, ал.1 от ТЗ по отношение на ипотекарните кредитори, в полза на които несъстоятелния длъжник е учредил ипотека върху собствено недвижимо имущество за обезпечаване на задължения на трети лица, поради което паричните постъпления от продажбата на имуществото от масата на несъстоятелността, ипотекирано в полза на ПИБ АД, следва да ни бъдат предадени незабавно/ чл. 724 ал.3 ТЗ/. ведно с дължимата присъдена с изпълнителните листи законна  лихва върху присъдената главница до датата на окончателното  плащане.

5

ПРИЛОЖЕНИЕ: Екземпляр от настоящото искане за синдика;  Изпълнителни листи – 4 бр. заверени копия, като оригиналите   ще бъдат предоставени с Приемо-предавателен протокол на синдика и/или съда по несъстоятелността   преди извършване на плащането ;Решение по т.д.2222/2010 г. ВОС;  Нотариален акт за учредяване на договорна ипотека - 7 бр.;  Пълномощно

С уважение:

Димитър Костов -                                        Васил Христов –
Изп. директор                                           Изп. Директор

6

# EXHIBIT 36

Фрея
Транслейшънс

Freya
Translations

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com, freyatranslations@abv.bg

*Translation from Bulgarian*

## JUDGMENT

No.16

3rd May 2011, Targovishte

In the Name of the People


The Targovishte District Court, Commercial Division held a closed session on April 28th 2011 before Judge Angelinka Nikolova and in the presence of the Secretary Anatolia Atanassova.

The Court heard bankruptcy case No.14 in the 2011 list kept at such Court as briefed by Judge Nikolova.

The Court looked into the following facts:

The petition was filed pursuant to Art.625 of the Commercial Act (CA).

These proceedings was opened by virtue of a petition filed by three creditors of Air Property Development AD. The three Petitioners' make allegations that the Respondent is their Debtor under certain business agreements and therefore request that bankruptcy proceedings are opened against said Debtor.

The Respondent has acknowledged the claim.

Upon assessment of the evidence collected in this case, the Court found the following:

The evidence in writing submitted has revealed that the Respondent is a shareholder company registered in the Commercial Registry and has registered office address at Liliya St., Bl. 4, Building B, floor 1, the town of Targovishte.

The written evidence has further revealed that the Petitioners (or Claimants), All Seas Property OOD and Asset Management EAD have executed commercial agreements with the Respondent and their receivables from the latter arise from such agreements. With regards to such receivables the Respondent recognizes and accepts the claim on the basis and in amount, as well. The first Claimant, All Seas Property 2 OOD has a contract for sale and purchase of commercial enterprise concluded on 12th October 2009 and the obligation of the Respondent thereunder amounts to BGN 50,342,367. The said contract



provided that maturity date of such obligation was to occur 13 months after the date said contract was signed, i.e. January 10th 2010.

Apart from it the same two parties have also concluded a contract for sale and purchase of real estate with notary deed number 51 volume VIII registration 5681 in the Records of Obreten Obretenov, Notary Public commissioned under No.109 and the Respondent owes the Claimant an amount of BGN 1,000,000 and maturity date was to occur in 70 days after the signing of the notary deed or February 20th 2010.

The Respondent and "Asset Management" EAD signed a commercial agreement on December 8th 2009 in connection with which a Promissory Note was issued for the amount of EUR 5,000,000 with payment date specified at July 8th 2010 representing a part of the entire contractual obligation in the amount of EUR 10,390,784.12 for operation expenses made in connection with bank loan agreement (BLA) #:014LD-L-000006/December 29, 2009, which amount is payable under the said December 8th 2009 Agreement.

Both receivables are at a fixed amount and due. The capacity of both Claimants as Creditors and the amounts of their receivables in this case are certain and indisputable. The Respondent has acknowledged these claims in their Statement of Defence in writing. Said receivables represent claims arising from a business transaction.   From the conclusion of the expert opinion it is clear that these receivables have been reflected in accounting records and are due but have not been paid out.

With regards to the account receivable of First Investment Bank AD, Sofia (FIB) the Court has found that they do not act as a creditor and therefore the claim brought forth by them is ill grounded. The evidence in writing has revealed that the bank has granted a loan to a third party where the Respondent acted as a mortgage debtor that has secured said receivable by pledging a real estate of their own as collateral thus making the deal gratuitous with regards to such third party. On April 8th 2011 in an appeal from commercial case 208/2011 the Varna Court of Appeals issued a ruling with reference to the above and concerning that same agreement where the Court expressly noted, inter alia, that such Claimant did not qualify as Respondent's creditor, thus they might not claim any receivables in these proceedings and therefore might not assert a claim in bankruptcy (see p.4, second paragraph). Such Creditor's rights are protected by the procedures prescribed in Art.717 N of the Commercial Act. Accordingly, the Court shall deny FOB's claim for the only reason that said Creditor does not qualify as Respondent's Creditor, so they are not entitled to assert a claim in bankruptcy.

The conclusion of the expert reveals that the Petitioner owes different creditors an amount in total of BGN 65,741,000 as at March 31st 2011 and has suspended payments

on all debts as of December 31st 2009. The property available at the moment amounts to BGN 137,698,000. In their conclusion, the expert explicitly noted that the long-term intangible assets represent goodwill that was created from the sale and purchase of the commercial enterprise of All Seas Property 2 OOD as an aggregate of rights, obligations and factual relationships. The enterprise has opted to amortize this positive goodwill within the next five years following its formation. Consequently the amortized amount will reduce the value of the asset as at March 31, 2011. That said, it is clear that as at the date of sale and purchase of the enterprise the company did not actually acquire any easily identifiable assets and liabilities valued at BGN 58 million, but only factual relationships in connection with the future implementation of the Silver Beach project near the town of Balchik.

Regarding long-term financial assets - long term investment entered in the balance sheets on these three dates under scrutiny amount to BGN 1,031,000 and represent investment property. With regards to assets entered in item "shares and stock held in company within a business group" in the amount of BGN 50,000,000 as at December 31st 2010 the Company holds 100% in the capital of "Port Investment Development Bulgaria 2 EAD. As at March 31, 2011 the Company acquired new financial assets – investments in daughter-companies: 71 ordinary registered voting shares of par value of BGN 50,000 each and BGN 3,550,000 in total (71 x BGN 50 thou) in the capital of New Co - Property Development AD, which is a part of the group and 5,000 shares of ordinary registered voting shares of nominal value of BGN 10,00 each, a total of BGN 50,000 (5000 x 10.00 BGN) in the capital of CGF - Shareholding Community. Upon acquisition of these financial assets the aggregate value of the stock and shares in the companies within the group as held by the respondent amount to BGN 3,650,000. The newly acquired assets have not been effectively paid up and with their value the obligations to suppliers have increased.

The balance sheets as at March 31st 2011 reveal that the Company does not have funds. The expert clearly concludes that the Company's activities over last three years have recorded a loss. According to economic literature, the liquidity ratios are quantitative characteristics showing the ability of the organization to pay its current liabilities out of its available current assets. These indices are: the overall liquidity ratio, the acid-test ratio, the immediate liquidity ratio, and the absolute liquidity ratio. The liquidity indices reflect the company's ability to cover its obligations at a certain given time, usually the end balance date. The acceptable minimal value is 1 meaning that the available current assets must be at least equal to the short-term obligations so that the company is able to meet them. Highly indicative from this point of view is the absolute liquidity ratio, which characterises the company's solvency provided that the payments of

current liabilities fall near the end balance date. So far the overall and quick ratios give an estimate that is too subjective as to the company's solvency, especially with indices of overestimated value. It is desirable that liquidity ratios exceed 1 (one), meaning that the company holds more current assets than liabilities as at the date of the end balance date.

In this case the degree of risk exposure to insolvency the company has is substantially low. As to the liquidity indices - all the indices are bellow one on the dates examined, which means that the Company did not possess current assets sufficient to meet its obligations. From the index analysis it is cleat that for the period 2009- March 31st 2011 the value of the monies and financial assets available at the balance date was not sufficient to cover current liabilities.

The analysis of financial autonomy reveals the financial independence of the business, the independence of the creditors, and the indebtedness of the company. The ratios are calculated by comparing the company owned capital to the one attracted from outside (borrowed). To successfully carry out its activities, a business uses its own capital as well as the capital raised from outside the company. The company members or shareholders own the company's equity. It comprises the registered capital, any additional capital, reserves (legal and additional), and financial results (from current and previous periods). The raised (borrowed) capital is owned by the company's creditors, such as banks, leasing companies, suppliers, personnel, public and legal institutions and others. It represents short and long term liabilities. These are classified at the time they arise, depending on whether full payment is accelerated in less than or more than a year. According to economic literature, the indicators of financial autonomy characterise the company's financial independence from its creditors. The indices are two: the financial autonomy ratio (solvency) and the indebtedness ratio. They are defined as the company's equity-to-liabilities ratio. The indebtedness ratio shows the value of the debts (liabilities) for each 1 monetary unit of the company's equity and further, shows how many times more the liabilities exceed the equity. The financial autonomy ratio shows how big the share of company equity is when in compared to its debt. It is recommended that the share of the raised capital does not exceed 50% of the total amount of capital; consequently the financial autonomy ratio should not fall below 0.33, i.e. the amount of company's equity must not fall below 1/3 of the total liabilities of the company in order for it to ensure that regular payments to its creditors could be made. The analysis of the financial autonomy indicators reveal that the company is dependent upon its creditors since the outside capital raised by far exceeds the company's equity. The negative values are due to the financial losses realized. The estimate made shows that the company does not have any financial reserves and has been undercapitalized ever since December 2009. As for the profitability indicators: they are a comparison of income, assets, liabilities, and

capital to the actual financial results. Due to the losses during the examined period these values are negative suggesting unprofitability of the specific economic indicators and revealing that the activities during the examined period are characterized as ineffective.

The calculations clearly show (for each investigated year) that for every unit of income earned much more than 1 unit of costs have been incurred; in other words each unit of expenses incurred has generated less than 1 unit of income. No income has been realized for 2011. All this reveals the exceptionally weak financial condition of the Petitioner and his inability to meet his liabilities to their creditors.

According to Art.608 of the Commercial Act (CA) "Insolvent shall be deemed a merchant, which is unable to meet a money obligation due under a commercial transaction, or a public law obligation to the state or municipalities related to its commercial activity." "Insolvency shall be presumed where the debtor has failed to perform, i.e. has suspended payments", see Art.608 (2) of the CA. Suspension of payments is caused by the continuous insolvent debtor's failure to meet money obligations due. Insolvency, however, may also be «in evidence in cases where the debtor has paid up or is in a position to pay up, wholly or in part, only the claims of certain creditors». Therefore, this is not a suspension of payments case, so insolvency is subject to proving. Suspension of payments and specifying a date to resume them as a matter of fact is an issue that must be investigated and proved depending on each debtor's property status. It is generally accepted that a merchant is not insolvent when such merchant's estate is sufficient to meet their obligations.

*The financial analysis has revealed that over the entire period investigated the debtor entity has had an unstable financial status; it has depended on the foreign-based entity's intent because said foreign-based entity owns 60% of the Respondent's capital (in other words, the foreign-based entity is the mother-company and APD is its subsidiary). So far the mother company has not provided any financial support to its subsidiary. Over the period investigated the Respondent APD has not conducted any business that might have generated any earnings enabling it to discharge the obligations under transactions made. Existing current liabilities, which have not been secured by short-term assets, may consequently not be timely repaid. This has been concluded from the figures shown on the balance sheet of the Respondent only. It must be noted however, that exclusion of the Goodwill item from the assets would result in liabilities being substantially greater than assets.*

Upon the above findings made the Court found that the Petitioner has become insolvent and is unable to meet money obligations under commercial transactions such as the ones, indisputably commercial in nature, made with the second and the third



Plaintiffs. For such reason the Court found that all prerequisites were existing for declaring the Petitioner bankrupt because of insolvency commencing on December 31st 2009 and First Creditors' Meeting being scheduled for May 25th 2011 at 10.00 a.m. with Agenda, as follows: 1) Hearing out of the interim trustee's report; 2) Election of a Trustee and determining such trustee's remuneration; 3) election of a Creditors' Committee.

Pursuant to Art.628 Para 4 of the CA Ganka Yaneva Kolyovska (EGN (Personal number):5502146270 from Sofia) should be appointed Interim Trustee; she had attached all documents as required in Art.656 of the CA. Mrs. Kolyovska is listed in the Bankruptcy Trustees' list at the Ministry of Justice and qualifies for this position; she has expressly agreed to her appointment of Interim Trustee. Such trustee's remuneration is fixed at BGN 1,500.

Within 14 days after the date when this Order is issued the Trustee should prepare a creditor list containing the amounts of each creditor receivable, produce a notarized excerpt of the commercial books and submit a report on the reasons for the insolvency, the state of the property, the measures taken to protect the estate and the existing possibilities to recover the Company.

As for the injunction placed the Court has imposed preliminary injunction under the procedures prescribed in Art.629(a) of the CA by Ruling 41 of April 26th 2011 and has stayed enforcement action No.20118080400251 brought by Private Enforcement Agent (PEA), Zahari Dimitrov, licensed under No.808 at the Chamber of PEAs. By Ruling 36 in case No.33 of 2011 which case has been joint to the instant one the Court granted injunction on land property **of Identification No.02508.88.734** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 579.063 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.373, 02508.88.735, 02508.88.162 and 02508.88.780, respectively; on **land property of Identification No.02508.88.735** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 229.999 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.373ь, 02508.88.734, 02508.88.162, respectively; on **land property of Identification No.02508.88.736** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 251.424 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.386, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 and 02508.88.162, respectively, owned by Ayr Property Development AD, Targovishte, EIK (Company number):200958720, represented by Philip Robert Harris, where the above measures were imposed pursuant to

Article 629(a) Para 1 item 2 of the CA with reference to Art.630, Para 1, item 4 of the CA.

Furthermore, the Court ordered attachment of **2500 registered shares and 250 bearer shares** held by Ayr Property Development AD, Targovishte, in the capital of CGF Shareholding Community having EIK:125561017 **as well as of 71 shares** held by Ayr Property Development AD, Targovishte, in the capital of New Co Property Investment AD, EIK:200485993; and in accordance with Art.629(a) Para9 of the CA the Court further ordered garnishment of Ayr Property Development AD's account receivable from CGF Shareholding Community AD under a Cession Agreement of 1st July 2010.

All said injunction measures were valid until this Order got issued. Thereupon they should be replaced by the injunction measures under Art.630 Para 1 of the CA.

For the foregoing reasons the Court found that the injunction granted should be extended for the purpose of protecting the bankruptcy estate. The evidence produced in this case revealed that an enforcement action instituted by PEA Nikov, commissioned to practice within the jurisdiction of the Dobrich District Court, under action No.20108100400436 for foreclosure sale of a property included into the bankruptcy estate, namely: land property **of Identification No.02508.88.734** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 579.063 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.373, 02508.88.735, 02508.88.162 and 02508.88.780, respectively; **land property of Identification No.02508.88.735** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 229.999 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.373ь, 02508.88.734, 02508.88.162, respectively; and **land property of Identification No.02508.88.736** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 251.424 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.386, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 and 02508.88.162, respectively, all the above three properties owned by Ayr Property Development AD, Targovishte.

With view to the provision set forth in Art.638 Para 1 of the CA the Court should grant a stay on the proceedings in the above action since it affected the bankruptcy estate. The above statutory provision does not distinguish between different legal grounds for sale of an estate therefore the above enforcement action must be stayed. The mortgage



Creditor's interest need be protected using the procedures prescribed in Art.71 N of the CA. Its provisions lead to the conclusion that the properties that are subject matter of the collateral should be sold within the bankruptcy estate in the bankruptcy action, while the amounts payable to Mortgage Creditor should be put aside and paid within the instant proceedings, despite the fact that the Creditor may not assert a receivable claim in this case having produced a writ of execution to collect the money owed by the debtor.

For all the foregoing reasons the Court

### ORDERED as follows:

**Ayr Property Development AD** as represented by Philip Robert Harris EAK 200958720 with headquarter address Turgovishte city "Lilia"str. Block 4 body 1 floor 1st **IS DECLARED INSOLVENT**.

**The Petition for Bankruptcy** filed by "Air Property Development" AD represented by Philip Robert Harris EAK 200958720 **is GRANTED** and bankruptcy proceedings **OPENED**.

**Ganka Yaneva Kolyovska** from Sofia city EGN 5502146270 **IS APPOINTED** interim trustee with a BGN 1,500.00 remuneration on a monthly basis.

The date for the first meeting of creditors **IS SCHEDULED** for May 25th 2011 at 10:00 and shall be held in Courtroom 4 at the Courthouse with agenda as follows: 1) Hearing the report of the Interim Trustee; 2) Election of a Bankruptcy Trustee and fixing such trustee's remuneration and 3) Election of a creditors committee.

Within 14 days of this ruling **THE INTERIM TRUSTEE IS REQUIRED** to prepare and draw a list of the creditors describing the amounts of their receivables, present a certified excerpt from the business records (commercial books of the Company) as well as submit a report on the reasons for insolvency, the condition of the property, the measures taken for the preservation of the property and all available possibilities for the Company's recovery under Art.668 of the CA.

**Protective measures** under Article 630 Para 1 item 4 of the CA are **GRANTED**.

**Enforcement action No.20118080400251** instituted by PEA Zahari Dimitrov (licensed under No. 808 by the Chamber of Private Enforcement Agents) is **STAYED**.

**Enforcement action No.20108100400436** as instituted by PEA Nikov (licensed under No. 810 by the Chamber of Private Enforcement Agents) is **STAYED**.

**INJUNCTION IS ISSUED** on the grounds of Article 629a Para 1 item 2 of the CA with reference to Art. 630 Para 1 item 4 of the CA for:





**Land property of Identification No.02508.88.734** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 579.063 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.373, 02508.88.735, 02508.88.162 and 02508.88.780, respectively; **land property of Identification No.02508.88.735** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 229.999 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.373ь, 02508.88.734, 02508.88.162, respectively; and **land property of Identification No.02508.88.736** in the Cadastre map of the town of Balchik, the Srebrist Bryag area (Silver Beach area), of 251.424 decars and permanent forest designation with manner of permanent use as other type of wood producing forest and neighbouring to properties of Cadastre Nos. 02508.88.386, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 and 02508.88.162, respectively, all the above three properties owned by Ayr Property Development" AD Turgovishte, EIK 200958720 represented by Philip Robert Harris;

**2500 registered shares and 250 bearer shares** held by Ayr Property Development AD, Targovishte, in the capital of CGF Shareholding Community having EIK:125561017 **as well as of 71 shares** held by Ayr Property Development AD, Targovishte, in the capital of New Co Property Investment AD, EIK:200485993 **ARE ATTACHED;**

**Ayr Property Development AD**'s account receivable from CGF Shareholding Community AD under a Cession Agreement of 1st July 2010 **IS GARNISHED**.

This judgment is effective immediately.

A copy of the judgment shall be sent to the Commercial Registry for recording.

This Judgment is subject to appeal before the Varna Court of Appeals within 7 days upon the date of its recording in the Commercial Registry.

Chair: *Signed ill.*

---

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Judgment No.16 entered by the Targovishte District Court on May 3, 2011. This translation has 9 pages.*

*Translator: _____ Ilka Simeonova Dyulgerova*





# Р Е Ш Е Н И Е

№ 16          Търговище, 3.05.2011 година

### в името на народа

**ТЪРГОВИЩКИЯТ ОКРЪЖЕН СЪД**          **търговско отделение**
на двадесет и осми април          две хиляди и единадесета година
в открито съдебно заседание в състав:

ПРЕДСЕДАТЕЛ:     АНГЕЛИНКА
НИКОЛОВА

Секретар Анатолия Атанасова
като разгледа докладваното          от председателя
д.н.. № 14          по описа за 2011 година
и за да се произнесе, взе предвид следното:

Иск с правно основание чл. 625  ТЗ.

Производството е образувано по молба на трима кредитори на „Еър Пропърти Девелопмънт" АД .Тримата ищци твърдят в исковите си молби ,че ответникът е техен длъжник по търговска сделка и е в състояние на нелатежеспособност и поради това молят за откриване на производство по несъстоятелност на същия.

Ответникът признава иска.

След преценка на събраните по делото доказателства, съдът прие за установено следното:

Видно от приложените по делото писмени доказателства ответникът е акционерно дружество регистрирано в Търговския регистър с адрес на управление Търговище ул. „ Лилия" бл. 4 тяло Б ет. 1.

Видно от представените по делото писмени доказателства ищците „Ол сийз Пропърти2 „ООД и „Асет Менджмънт"ЕАД имат сключени с ответника търговски договори,по които имат вземания от ответника. По отношение на тези вземания ответникът признава иска, както по основание, така и по размер. Първият ищец „Ол Сийз Пропърти2" ООД има сключен договор за покупко-продажба на търговското предприятие от 10.12.2009г. , по който задължението на ответника към него е в размер на 50 342 367лв. Падежът на вземането е определен по договора на 13 месеца от подписването на договора или 10.01.2010г. Отделно от това между същите страни е сключен договор за покупко- продажба на недвижими имоти с нот. Акт № 51 том VIII рег. 5681 на нотариус Обретен Обретенов № 109, по силата на който ответникът дължи на ищеца сумата от 1 000 000 лв. и падежът на сумата е 70 дни  от датата на подписване на нотариални акт или 20.02.2010г.

Между ответника и „Асет мениджмънт" е сключен търговски договор от 8.12.2009г. и във връзка с него е издадена запис на заповед за сумата от  5 000 000 евро с падеж 8.07.2010г.  и представляваща част от общо дължимите по договор,  общо 10 390 784,12 евро, разходи за



издръжка направени във връзка с договор за кредит № 014 1.D-1.-000006/29.12.2009г. и дължими съгласно подписаното споразумение между двете страни от 8.12.2009г. .

И двете вземания са ликвидни и изискуеми. По отношение на качеството на двамата ищци като кредитори, както и по отношение на размера на вземането им по делото няма спор. Тези вземания са признати в писмени отговор от страна на ответника. Представляват вземания по търговска сделка. Видно от заключението на вещото лице тези вземания са отразени счетоводно и са дължими ,но не са платени.

По отношение на вземането на „Първа инвестиционна банка" АД София съдът намира ,че същата няма качество на кредитор и предявения от нея иск е неоснователен. Видно от писмените доказателства банката е отпуснала кредит на трето лице, по който кредит ответникът има качеството на ипотекарен длъжник ,като е обезпечил вземането на банката със свое имущество и по отношение на него сделката е безвъзмездна. В тази връзка, по повод на тази сделка, има постановено определение на Апелативен съд Варна от 8.04.2011г. по в. Ч.т.д. № 208/ 2011г. ,в което изрично е отбелязано ,че този ищец няма качеството на кредитор на ответника ,не може да предявява вземания в това производство и следователно не може да предяви и иск за откриване на производство по несъстоятелност./ Стр. 4 втори абзац/ Неговите интереси са защитени по реда на чл. 717 Н ТЗ .С оглед на това съдът намира ,че следва да отхвърли иска на „Първа инвестиционна банка"АД единствено и само по съображения на това ,че този ищец няма качеството на кредитор на ответника и поради това не е процесуално легитимиран да иска откриване на производство по несъстоятелност.

Видно от заключението на вещото лице, молителят дължи към различни кредитори общо 65 741 000лв. към 31.03.2011г. , като е спрял плащането по всички дългове към 31.12.2009г.. Наличното имущество към момента е на обща стойност 137 698 000лв. В заключението си вещото лице изрично посочва ,че дълготрайните нематериални активи представляват търговска репутация , формирана от покупко- продажбата на търговско предприятие „Ол Сийз пропърти 2" ООД, като съвкупност от права задължения и фактически отношения. Тази положителна търговска репутация предприятието е избрало да амортизира в рамките на следващите 5 години от формирането й. В следствие натрупаната амортизация стойността на този актив намалява към 31.03.2011г , В този смисъл към датата на покупко-продажбата на предприятието, дружеството не придобива разграничими активи и пасиви на стойност 58 млн. лева, а само фактически отношения във връзка с бъдеща реализация на проекта „Силвър Бийч" в околностите на град Балчик. По отношение на актив финансови дълготрайни активи - дългосрочни инвестиции, представени в балансите към трите изследвани дати в размер 1 031 000. лв - същите представляват инвестиционни имоти По отношение на актив акции и дялове от предприятия в група посочени в размер 50 000 000.лв, към 31.12.2010, дружеството притежава 100% от капитала на „Порт инвестмънт дивелъпмънт България 2" ЕАД.Към 31.03.2011 – дружеството е придобило нови финансови активи – инвестиции в дъщерни дружества: 71 броя обикновени поименни акции с право на глас с номинал 50 хил.лв всяка на обща стойност 3 550 000лв (71 х 50

хил.лв) от капитала на „Ню ко – пропърти инвестмънт" АД, което дружество е част от общата икономическа група.и 5000 броя обикновени поименни акции с право на глас с номинал 10 лв всяка, на обща стойност 50 хил.лв (5000х10лв) от капитала на „Си джи ЕФ – акционерна общност" АД, което дружество е част от общата икономическа група.След придобиване на тези финансови активи, общата стойност на притежаваните от ответника акции и дялове от предприятия в група, възлизат на 3 650 000.лв. Новопридобитите активи не са ефективно заплатени, а със стойността им, са увеличени задълженията към доставчици.

Видно от балансите към 31.03.2011 дружеството не притежава парични средства.. Последните три години от дейността на дружеството, видно от заключението на вещото лице, са приключили на загуба. Съобразно икономическата литература, коефициентите за ликвидност са количествени характеристики и показват способността на предприятието да изплаща текущите си задължения с наличните краткотрайни активи.Тези показатели са: коефициент на общата ликвидност, коефициент на бърза ликвидност, коефициент на незабавна ликвидност и коефициент на абсолютна ликвидност. Показателите за ликвидност отразяват възможностите на предприятието да покрие задълженията си в даден момент, обикновено балансова дата. Общоприетата минимална стойност е 1, което означава, че наличните текущи активи трябва да са най-малко равни на краткосрочните задължения, за да може предприятието да се справи с погасяването им.Особено показателен от тази гледна точка е коефициентът за абсолютна ликвидност, който характеризира платежоспособността на предприятието, при положение, че падежите на текущите задължения са близки до балансовата дата. Коефициентите на обща и бърза ликвидност за този момент дават твърде условна оценка за платежоспособността на предприятието, особено при завишена стойност на показателите Желателно е коефициентите за ликвидност да превишават 1 (единица), което би означавало, че предприятието разполага с повече краткотрайни активи от задълженията му към балансовата дата. При това положение  степента на риска предприятието да изпадне  в състояние на невъзможност да посрещне задълженията си е твърде малка. По отношение на показателите за ликвидност – към изследваните дати всички показатели за ликвидност са под единица, което означава, че дружеството не е разполагало с достатъчно краткотрайни активи, които да обезпечат текущите задължения При анализа на показателите е видно, че за в периода 2009-31.03.2011 стойността на наличните парични средства и финансови активи към датата на баланса  не е била достатъчна за покриване на текущите задължения.

Анализът на финансовата автономност установявя финансовата независимост на предприятието, независимостта от кредиторите и задължняялостта на дружеството. Коефициентите се изчисляват чрез съпоставка на собствения капитал и привлечения (задълженията).За да реализира дейността си едно предприятие използва собствен и привлечен капитал. Собствения капитал е притежание на съдружниците или акционерите в него. В състава му  се включват регистрирания капитал, допълнителен капитал, резерви (законови и допълнителни), финансови

резултати (от текущ и предходни периоди).Привлечения капитал е собственост на кредитори на дружеството – банки, лизингови предприятия, доставчици, персонал, публичноправни институции и други. Представлява дългосрочни и краткосрочни задължения. Същите се класифицират в момента на възникването им, в зависимост дали са над или под 1 година изцяло изискуеми.Съобразно икономическата литература, показателите за финансова автономност характеризират финансовата независимост на предприятието от кредитори. Показателите са два – коефициент на финансова автономност (платежоспособност) и коефициент на задлъжнялост.Те се определят като отношение на собствения капитал и пасивите.Коефициентът на задлъжнялост показва сумата на задълженията (пасиви), падащи се на 1 единица собствен капитал, показва колко пъти задълженията надхвърлят собствения капитал. Коефициентът на финансова автономност показва какъв е делът на собствения капитал спрямо задълженията.Препоръчително е, делът на привлечения капитал в общия капиталов ресурс да бъде под 50%, коефициентът на финансова автономност следва да бъде със стойност не по-малка от 0,33 т.е. собствения капитал трябва да бъде най-малко 1/3 от всички задължения на предприятието за да може да се осигурят регулярните разплащания към кредитори. По отношение на показателите за финансова автономност – показателите сочат, че дружеството е зависимо от кредиторите си, тъй като привлечения капитал надхвърля значително собствения. Отрицателните стойности се дължат на реализираните финансови загуби. Видно от изчисленията, дружеството не притежава капиталови резерви и е декапитализирано още към декември 2009г._По отношение на показателите за рентабилност – представлява съпоставка на приходите, активите,пасивите, капитала с реализирания финасов резултат. Поради реализираната загуба през целия изследван период показателите са отрицателни величини и сочат нерентабилност на изследваните икономически показатели__По отношение на показателите за ефективност – за изследвания период дейността се е характеризирала с неефективност. Видно от изчисленията (за всяка от изследваните години) за реализиране на 1 единица приходи са вложени значително над 1 единица разходи или с една единица направени разходи са получени съществено по-малко от една единица приход. За 2011 няма реализирани каквито и да е приходи.Всичко това показва изключително лошото финансово състояние на молителя и невъзможността на същия да издължи задълженията си към кредитори.

Съгласно ТЗ – чл.608 неплатежоспособен е търговец, който не е в състояние да изпълни изискуемо парично задължение по търговска сделка или публичноправно задължение към държавата и общините, свързано с търговската му дейност, или задължение по частно държавно вземане. Неплатежоспособност се предполага и когато длъжникът е спрял плащанията (чл. 608, ал. 2 от ТЗ). Спирането на плащанията се характеризира с невъзможността за изпълнение от страна на неплатежоспособния длъжник на изискуеми задължения като трайно негово състояние. Неплатежоспособност обаче може да е налице и когато длъжникът е платил или е в състояние да плати частично или изцяло само задълженията към отделни кредитори. В такъв случай не е налице спиране на плащанията и неплатежоспособността следва да се докаже.

Наличието на спиране на плащанията и определяне на конкретната за това дата е фактически въпрос, който подлежи на установяване с оглед на конкретното имуществено състояние на длъжника. Приема се, че търговецът не е неплатежоспособен, когато имуществото му е достатъчно за покриване на задълженията му. *Финансовият анализ показва, че като цяло в рамките на изследвания период, предприятието длъжник е в нестабилно финансово състояние, зависи от волята на чуждестранното юридическо лице, което притежава 60% от капитала на ответника (т.е. явява се дружество майка за ЕПД).Дружеството майка към настоящия момент не подпомагало финансово дъщерното си дружество. В рамките на изследвания период ответното дружество ЕПД не е развивало стопанска дейност, която да формира приходи, предоставящи възможност за погасяване на възникналите задължения, в следствие реализираните сделки.. Налице са текущи задължения, които не са обезпечени с краткотрайни активи и съответно не биха могли да бъдат погасени в срок. Това заключение е изведено само на база данните, посочени в балансовите позиции на ответното дружество.Следва да се има предвид, че при изключване от активите на перо „репутация" би се наблюдавало съществено превишение на пасивите над активите* При така установената фактическа обстановка съдът намира ,че молителят е станал неплатежоспособен и не е в състояние да изпълни изискуеми парични задължения по търговски сделки, каквито безспорно са тези с втория и третия ищец . С оглед на това съдът намира , че са на лице предпоставките за обявяване на молителя в несъстоятелност поради неплатежоспособност с начална дата 31.12.2009г и насрочено първо събрание на кредиторите за 25.05.2011г. от 10,00ч. при дневен ред : 1 .Изслушване доклада на временния синдик 2. Избор на синдик и определяне на възнаграждението му и 3. Избор на комитет на кредиторите

На основание чл. 628 ал. 4 ТЗ за временен синдик следва да бъде назначена Ганка Янева Кольовска от гр. София ЕГН 5502146270 ,която е приложила необходимите документи съгласно разпоредбата на чл. 656 ТЗ. Същата е включена в списъка на синдиците към МП. Отговаря на изискванията за заемане на длъжността и е изразила изрично съгласие за назначаването и като временен синдик на дружеството. Следва да бъде определено с възнаграждение в размер на 1500лв.

Следва да бъде задължен синдикът в 14 дневен срок от от датата на постановяване на решението да изготви списък на кредиторите , в който посочва размера на техните вземания, за представи заверено извлечение от търговските книги както и да представи доклад за причините за неплатежоспособността, състоянието на имуществото, взетите мерки за запазването на имуществото и за възможностите за оздравяване на предприятието.

По отношение на наложените обезпечителни мерки, съдът с определение № 41 от 26.04.2011г. е постановил предварителни обезпечителни мерки по реда на чл. 629а ТЗ като е спрял изп.д. № 20118080400251 на ЧСИ Захари Димитров № 808 на Камарата на ЧСИ. С определение № 36 по т.д. № 33 от 2011г. , присъединено към настоящото дело са постановени като обезпечителни мерки възбрана върху ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.734 на кадастралната карта на гр.

Балчик,местност „Сребрист бряг" ,с площ от 579.063 дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.373, 02508.88.735, 02508.88.162 и 02508.88.780,ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.735 на кадастралната карта на гр. Балчик,местност „Сребрист бряг" ,с площ от 229,999ДКА дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.373ь, 02508.88.734, 02508.88.162 ,ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.736 на кадастралната карта на гр. Балчик,местност „Сребрист бряг" ,с площ от 251,424 дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.386ь, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 И 02508.88.162 собственост на „Еър Пропърти Девелопмънт" АД Търговище, ЕИК 200958720 , представлявано от Филип Робърт Харис на основание чл. 629а ал. 1 т. 2 ТЗ във вр.чл. 630 ал.1 т. 4 ТЗ и е наложен запор върху 2500бр. поименни акции и 250 акции на приносител , собственост на „Еър Пропърти Девелопмънт" АД Търговище в капитала на „Си Джи ЕФ- Акционерна общност ЕИК 125561017, както и запор върху 71 бр. акции ,собственост на „Еър Пропърти Девелопмънт" АД Търговище в „Ню Ко –Пропъти инвестмънт"АД ЕИК 200485993 наложен е и запор върху вземането ,което „Еър Пропърти Девелопмънт" АД Търговище има от „Си Джи ЕФ- акционерна общност" АД по договор за цесия от 1.07.2010г. съгласно разпоредбата на чл. 629 А ал. 9 ТЗ действието на тези обезпечителни мерки е до момента на постановяване на настоящото решение. След това това действие се замества от обезпечителните мерки по реда на чл. 630 ал. 1 т. 4 ТЗ. С оглед на това съдът намира ,че следва да продължи действието на наложените обезпечителни мерки във връзка с опазването на имуществото включено в масата на несъстоятелността. От събраните по делото писмени доказателства е видно ,че има образувано изп.д. № 20108100400436 на ЧСИ Ников, с район на действие Добрички окръжен съд ,по което дело предмет на публична продан е имущество включено в масата на несъстоятелността ,а именно ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.734 на кадастралната карта на гр. Балчик,местност „Сребрист бряг" ,с площ от 579,063 дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.373, 02508.88.735, 02508.88.162 и 02508.88.780,ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.735 на кадастралната карта на гр. Балчик,местност „Сребрист бряг" ,с площ от 229,999ДКА дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.373ь, 02508.88.734, 02508.88.162 ,ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.736 на кадастралната карта на гр. Балчик,местност „Сребрист бряг" ,с площ от 251,424 дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.386ь, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 И 02508.88.162 собственост на „Еър Пропърти Девелопмънт" АД Търговище.С оглед разпоредбата на чл. 638 ал.1 ТЗ следва да бъде спряно производството по това дело като обезпечителна мярка, тъй като се засяга масата на

несъстоятелността. Разпоредбата не прави разлика между различните видови правно основание за извършването на продапта на имуществото и с оглед на това следва да бъде постановено спиране на изпълнението по това дело.Интересът на ипотекрания кредитор следва да бъде защитен по реда на чл. 717 ТЗ. От разпоредбата на този текст може да се направил извод ,че имотите , предмет на обезпечението следва да бъдат продавани в масата на несъстоятелността и в производството по несъстоятелност ,а сумите дължими на ипотекарния кредитор следва да се заделят и изплатят в това производство , въпреки ,че той не може да предяви вземане в процеса, след представяне на изпълнителен лист против длъжника за събиране на сумите.

Водим от горното съдът

## Р Е Ш И :

ОБЯВЯВА НЕПЛАТЕЖОСПОСОБНОСТТА на „ Еър Пропърти Девелопмънт " АД представлявано от Филип Робърт Харис ЕИК 200958720 с адрес на управление гр. Търговище ул. „Лилия" бл.4 тяло 1 ет. 1   с начална дата 31.12.2009г.

ОТКРИВА ПРОИЗВОДСТВО ПО НЕСЪСТОЯТЕЛНОСТ на Еър Пропърти Девелопмънт " АД представлявано от Филип Робърт Харис ЕИК 200958720

НАЗНАЧАВА за временен синдик Ганка Янева Кольовска от гр. София ЕГН 5502146270 с възнаграждение в размер на 1500лв

ОПРЕДЕЛЯ дата на първо събрание на кредиторите за 25.05 . 2011г. от 10,00ч. .в съдебна зала № 4 на Съдебната палата при дневен ред : 1 .Изслушване доклада на временния синдик 2. Избор на синдик и определяне на възнаграждението му   и 3. Избор на комитет на кредиторите

ЗАДЪЛЖАВА временния синдик в 14 дневен срок от постановяване на решението да изготви списък на кредиторите в който посочва размера на техните вземания, за представи заверено извлечение от търговските книги  както и да представи доклад за причините за неплатежоспособността, състоянието на имуществото, взетите мерки за запазването на имуществото и за възможностите за оздравяване на предприятието   по чл. 668 ТЗ

НАЛАГА ОБЕЗПЕЧИТЕЛНИ МЕРКИ ПО РЕДА НА ЧЛ. 630 АЛ. 1 Т. 4 ТЗ

КАТО СПИРА изп.д. № 20118080400251 на ЧСИ Захари Димитров № 808 на Камарата на ЧСИ

СПИРА изп.д. № № 20108100400436 на ЧСИ Ников № 810 на Камарата на ЧСИ

КАТО НАЛАГА ВЪЗБРАНА върху

ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.734 на кадастралната карта на гр. Балчик,местност „Сребрист бряг" ,с площ от 579,063 дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.373, 02508.88.735, 02508.88.162 и 02508.88.780

ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.735 на кадастралната карта на гр. Балчик,местност „Сребрист бряг" ,с площ от 229,999ДКА дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.373ь, 02508.88.734, 02508.88.162

ПОЗЕМЛЕН ИМОТ с ид. № 02508.88.736 на кадастралната карта на гр. Балчик,местност „Сребрист бряг" ,с площ от 251,424 дка ,с трайно предназначение горска,начин на трайно ползване- друг вид дървопроизводителна гора ,при съседи имоти с кад. № 02508.88.386ь, 02508.88.629, 02508.88.737, 02508.88.313, 02508.88.343 И 02508.88.162 собственост на „Еър Пропърти Девелопмънт" АД Търговище, ЕИК 200958720 , представлявано от Филип Робърт Харис на основание чл. 629а ал. 1 т. 2 ТЗ във вр.чл. 630 ал.1 т. 4 ТЗ

НАЛАГА ЗАПОР ВЪРХУ  2500бр. поименни акции и 250 акции на приносител , собственост на „Еър Пропърти Девелопмънт" АД Търговище в капитала на „Си Джи ЕФ- Акционерна общност ЕИК 125561017, както и запор върху 71 бр. акции ,собственост на „Еър Пропърти Девелопмънт" АД Търговище в „Ню Ко –Пропълти инвестмънт"АД ЕИК 200485993

КАКТО И ЗАПОР ВЪРХУ вземането ,което „Еър Пропърти Девелопмънт" АД Търговище има от „Си Джи ЕФ- акционерна общност" АД по договор за цесия от 1.07.2010г

Решението подлежи на незабавно изпълнение

Препис от решението да се изпрати на Търговски регистър за вписване

Решението подлежи на обжалване в 7 дневен срок от вписването им в Търговския регистър ,пред Варненски апелативен съд .

ПРЕДСЕДАТЕЛ:

# EXHIBIT 37



Фреа *Freya*

ТТранслейшънс *Translations*

Преводи от и на чужди езици
гр. Варна, бул. Св.Св.Кирил и Методий № 1
Email: freyatranslations@gmail.com

*Translation from Bulgarian*

To:     Mr. Nikolay Hubenov and
        Mr. Svetlozar Kassabov
        Asset Management EAD

### OFFICIAL NOTE
### To our letter of Ref.No. 1 of September 1, 2014

Sent by:      The Creditors Committee of Ayr Property Development AD (declared bankrupt),
              case No.14 as per the docket for 2011 of the Targovishte District Court

Dear Mr. Hubenov and Mr. Kassabov,

Please be advised as follows:

1) Judgment No.16 delivered by the Targovishte District Court on May 3, 2011 in case No.14/2011, by which the said Court opened the bankruptcy proceedings for Ayr Property Development AD, was duly entered in the Commercial Register kept by the Registry Agency under the Company batch and filing No.20110510150602 on May 10, 2011.

2) As of the date of entry of the above Judgment No.16 delivered by the Targovishte District Court on May 3, 2011 in case No.14/2011 till the expiration of the two-months limitation period set forth in Art.688 (1) of the Commerce Act no further claims have been filed by First Investment Bank AD, apart from the claim seeking payment of BGN 100, 000 (one hundred thousand Bulgarian levs) filed in case No.82/2011 in the docket of the Targovishte District Court, which case was dismissed by Judgment No.3 of February 8, 2013.

3) The claim First Investment Bank AD filed on May 21, 2013 was filed after the expiration of the deadlines for submission of claims under Art.685 and Art.688 of the Commerce Act and after Judgment No.16 delivered by the Targovishte District Court on May 3, 2011 in case No.14/2011 has entered in full force and effect.

This is issued to serve before Asset Management EAD.

Date: September 3, 2014

                        Respectfully submitted, /s./ (*illegible*)

                                Krassen Kassabov, Executive Director
                                Kota Energy AD, Member of the Board of
                                Directors of Kota Energy AD

*Round seal reading:* "Kota Energy AD, Varna"

*I, the undersigned Boryana Ilieva Stefanova, herewith certify that this is a true and correct translation from Bulgarian into English language, of the document attached hereto –Official Note to Letter Ref. No.1 of Sept.1, 2014 from the Creditors Committee of Ayr Property Development AD. This translation has 1 (one) page,*

Translator: _____
        *Boryana Ilieva Stefanova*

До:
"АСЕТ МЕНИДЖМЪНТ" ЕАД

На вниманието на:
г-н Николай Хубенов и г-н Светлозар Касабов

## СЛУЖЕБНА БЕЛЕЖКА
### към наше писмо изх. № 1 от 01.09.2014 год.

От:
Комитета на кредиторите на
"Еър Пропърти Девелопмънт" АД (в несъстоятелност)
т.д. № 14 по описа за 2011 год. на ОС – град Търговище

Уважаеми г-да Хубенов и Касабов,

С настоящото Ви уведомяваме за следното:

1) Решение № 16 от 03.05.2011 год., постановено по т.д. № 14 по описа за 2011 год. на Окръжен съд – град Търговище, с което се открива производството по несъстоятелност на "Еър Пропърти Девелопмънт" АД е вписано в Търговския регистър при Агенция по вписванията по партидата на дружеството с номер на вписване 20110510150602 от дата 10.05.2011 год.

2) От датата на вписване на гореописаното Решение № 16 от 03.05.2011 год. на ТОС по т.д. № 14/2011 год. до изтичане на двумесечния срок съгласно чл. 688, ал. 1 от Търговския закон няма постъпили допълнително предявени вземания от страна на "Първа Инвестиционна Банка" АД извън предявеното вземане в размер на 100 000 (сто хиляди) лева по дело 82/2011 год. по описа на Окръжен съд – град Търговище, приключило с Решение № 3 от 08.02.2013 год.

3) Предявеното вземане от страна на "Първа Инвестиционна Банка" АД от 21.05.2013 год. е извършено след изтичане на сроковете по чл. 685 и 688 от ТЗ и след влизане в сила на Решение № 16 от 03.05.2011 год. по т.д. № 14/2011 год. на Окръжен съд – град Търговище.

Настоящото се издава, за да послужи на "АСЕТ МЕНИДЖМЪНТ" ЕАД
Дата: 03.09.2014 год.

За Комитета на кредиторите: _____
/Красен Касабов – изпълнителен директор
"КОТА ЕНЕРДЖИ" АД, член на Съвета на директорите
на "КОТА ЕНЕРДЖИ" АД/

# EXHIBIT 38

| СПОРАЗУМЕНИЕ ЗА ПОКУПКО-ПРОДАЖБА НА ИПОТЕЧНИ ВЗЕМАНИЯ | MORTGAGE RECEIVABLES SALE AND PURCHASE AGREEMENT |
|---|---|
| Днес, 0.У.06.20.10 г., в гр. София, Република България, | This Mortgage Receivables Sale and Purchase Agreement ("the Agreement") is made on this Fourth , June 2010 in Sofia, Republic of Bulgaria, by and between: |
| Между: | |
| ПИБ – „Първа инвестиционна банка" АД, вписана в търговския регистър при Агенция по вписванията с ЕИК 831094393, със седалище и адрес на управление град София, бул. „Драган Цанков" № 37, представлявана от изпълнителните директори Матьо Матеев и Евгени Луканов | First Investment Bank AD, ("FIB" or "the Bank") duly recorded in the Commercial Register kept at the Registry Agency under EIK (Universal Company Code): 831094393, with principal place of business at Sofia, 37 Dragan Tzankov Boulevard, represented by the Executive Directors Matthew Mateev and Evgeni Lukanov, |
| ЕЛЛ - Еър Лоджистис Лимитед Инк., дружество, учредено съгласно законите на щата Тексас, САЩ, със седалище на: 459 Чипъндейл драйв, Рокуол, Тексас 75032 САЩ, представлявано от Филип Робърт Харис, гражданин на САЩ, роден на 28. 01. 1943 г., с паспорт № 217696365 издаден от Министерство на вътрешните работи на САЩ на дата 27.12.2006 г. и | ALL – Ayr Logistics Limited Inc., a Corporation organized under the laws of Texas, USA with seat and principal place of business at 459 Chippendale Drive Rockwall, Texas 75032 USA - Texas, USA, represented by Philip Robert Harris, a US citizen, born on 28th January 1943, holder of Passport No.217696365, issued by the US Department of State on December 27, 2006 and |
| ЕПД – „Еър Пропърти Девелопмънт" АД, вписано в търговския регистър при Агенцията по вписванията с ЕИК 200958720, със седалище и адрес на управление град Варна, район Приморски, ж.к. Приморски парк, комплекс Хоризонт № 3, ет. 2, представлявано от изпълнителния директор Филип Робърт Харис, представляван от пълномощника си Захари Желязков Томов, ЕГН 6804120540, от град Варна, бул. "Сливница" № 70, ет. 2, ап. 4, български гражданин, притежаващ л.к. № 111413277, издадена от МВР-Варна на 28.11.2001 г, съгласно пълномощно с нотариална заверка на нотариус от щат | APD - Ayr Property Development AD - duly recorded in the Commercial Register kept at the Registry Agency under EIK: 200958720, with seat and registered office address at Varna, Primorski Regions, Horizont Complex No.3, floor 2, represented by its Executive Director, Philip R. Harris, represented by his proxy Zahari Zhelyazkov Tomov, EGN: 6804120540 from Varna, with address at 70 Slivnitsa Boulevard, floor 2, apt. 4, a Bulgarian citizen, holder of ID Card No. 111413277, issued by the Varna Department of the Bulgarian Ministry of Interior on 28th November 2001, pursuant to Power of Attorney notarized by Gregory Humphries, Notary Public, State of Texas |

Тексас Грегъри Хъмфрис и апостил № N-747881 от 20.05.2010 г .

Които страни, като съобразиха, че:

a/ ЕПД е собственик на недвижим имот, наричан по- долу за краткост „инвестиционен терен" за изграждане и развитие на инвестиционния проект на ЕЛЛ с наименование "Силвър Бийч", който имот е подробно описан в акт за собственост: Нотариален акт за покупко - продажба на недвижим имот вх. рег. № 4180/10.12.2009 г. акт № 13, т. XIII, дело № 1878/2009, имотни партиди № 9696, 9665, 9654, представляващ:

- Имот с кадастрален № 02508.88.735 (две хиляди петстотин и осем точка осемдесет и осем точка седемстотин тридесет и пет) с площ от 229, 999 (двеста двадесет и девет декара и деветстотин деветдесет и девет квадратни метра) декара по документ за собственост, а по кадастрална карта, изменена със Заповед КД-14-08-727/24.07.2008г. на Началника на СГКК-Добрич с площ от 212,239 /двеста и дванадесет дка и двеста тридесет и девет кв.м./ декара, находящ се в гр. Балчик, Община Балчик, Област Добрич, местност „Сребрист бряг", трайно предназначение- залесена горска територия, при съседи имоти кад. №№ 373, 734, 162;

- Имот с кадастрален № 02508.88.736 (две хиляди петстотин и осем точка осемдесет и осем точка седемстотин тридесет и шест) с площ от 240, 006 (двеста и четиридесет декара и шест квадратни метра) декара, по документ за собственост, а по кадастрална карта, изменена със Заповед КД-14-08-727/ 24.07.2008г. на Началника на СГКК-Добрич с площ от

RECITALS:

a) APD is owner of a real estate hereinafter referred to as 'investment land" where ALL will implement its construction and development project under the name of "Silver Beach"; such property is described in detail in a deed of title – a notary deed of sale and purchase of a real estate duly recorded under No. 4180/10.12.2009, deed No.13, volume XIII, case No.1878/2009, property batches with Nos.9696, 9665, 9654, respectively, which land is of details as shown below:

- A land property of cadastre No.02508.88.735 (two thousand five hundred and eight point eighty-eight point seven hundred thirty-five) with area of 229.999 decars (two hundred twenty-nine decars and nine hundred ninety-nine square meters) as per document showing ownership, while in the cadastre map as amended with order No. КД-14-08-Б-897/17.05.2007 of the head of Geodesy Cartography and Cadaster Office ("SGKK") in Dobrich such property's area is 212.239 decars (two hundred and twelve decars and two hundred and thirty-nine square meters), located in the town of Balchik, Municipality of Balchik, district Dobrich, the Srebristia Braig (Silver Beach area) with a permanent afforested forest area designation, neighboring to properties with cadastre numbers as follows: 373, 734, 162, respectively;

- A land property of cadastre number:02508.88.736 (two thousand five hundred and eight point eighty-eight point seven hundred thirty-six) with area of 240.006 decars (two hundred and forty decars and six square meters), as per document showing ownership, while in the cadastre map as amended with order No. КД-14-08-727/24.07.2008 of the Head of Geodesy Cartography and Cadaster Office

251,424 /двеста петдесет и един дка и четиристотин двадесет и четири кв.м. / декара, находящ се в гр. Балчик, Община Балчик, Област Добрич, местност „Сребрист бряг", трайно предназначение- залесена горска територия, при съседи имоти кад. №№ 343, 313, 386, 737, 629; 162 и

- Имот с кадастрален № 02508.88.734 (две хиляди петстотин и осем точка осемдесет и осем точка седемстотин тридесет и четири) с площ от 578, 716 (петстотин седемдесет и осем декара и седемстотин и шестнадесет квадратни метра) декара по документ за собственост, а по кадастрална карта, изменена със Заповед КД-14-08-727/ 24.07.2008г. на Началника на СГКК-Добрич с площ от 579,063 /петстотин седемдесет и девет дка и шестдесет и три кв.м. / декара, находящ се в гр. Балчик, Община Балчик, Област Добрич, местност „Сребрист бряг", трайно предназначение – залесена горска територия при съседи имоти кад. №№ 02508. 88. 373, 02508. 88. 162, 02508.88. 735; 02508. 88. 780.

б/ ПИБ е ипотекарен кредитор спрямо собствения на ЕПД инвестиционен терен, съгласно договори за учредяване на ипотека:

- Нотариален акт за учредяване на договорна ипотека № 5, том I, вх.рег. № 247 от 19.02.2010г., по описа на Служба по вписванията гр.Балчик за обезпечаване срочното погасяване на вземанията на банката от "Асет мениджмънт" ЕАД, ЕИК 103921587 по Договор за банков кредит № 014LD-L-000006/29.12.2009, върху нмоти ПИ № 02508.88.734 ; ПИ № 02508.88.736;

("SGKK") in Dobrich such property's area is 251.424 (two hundred fifty-one decars and four hundred twenty-four square meters) located in the town of Balchik, Municipality of Balchik, district Dobrich, the Srebristia Braig (Silver Beach area) with a permanent afforested forest area designation, neighboring to properties with cadastre numbers as follows: 343, 313, 386, 737, 629; 162, respectively, and

- A land property of cadastre number 02508.88.734 (two thousand five hundred and eight point eighty-eight point seven hundred thirty-four) with area of 578.716 decars (five hundred seventy-eight decars and seven hundred and sixteen square meters) as per document showing ownership, while in the cadastre map as amended with order No.КД-14-08-727/24.07.2008 Head of Geodesy Cartography and Cadastre Office ("SGKK") in Dobrich such property's area is 579.063 (five hundred seventy-nine decars and sixty-three square meters), located in the town of Balchik, Municipality of Balchik, district Dobrich, the Srebristia Braig (Silver Beach area) with a permanent afforested forest area designation, neighboring to properties with cadastre numbers as follows: 02508.88. 373, 02508.88. 162, 02508.88. 735 and 02508.88.780, respectively;

b) FIB is the lender of funds for the investment land owned by APD under the mortgage contracts shown below:

- a notary deed for establishing of a contractual mortgage under No.5, volume I, ref.No.247 dated 19the February 2009 in the list kept at the Registry Office in the town of Balchik where such contractual mortgage shall secure the collection of the Bank's receivables within a fixed time from Asset Management EAD, EIK (universal company code) 103921587 under a Bank Loan Agreement No.014LD-L-000006/29.12.2009; such contractual

- Нотариален акт № 56, том VIII, вх.рег. № 3670 от 03.10.2008 г., дело № 2138/08 г. по описа на Служба по вписванията гр.Балчик, за обезпечаване вземанията на банката от "Порт инвестмънт девелопмънт-България 2" ЕАД, ЕИК 148117384 по Договор за банков кредит № 014LD-L-000002 от 02.10.2008 г. в размер на 1 000 000 /един милион/ евро върху имот ПИ № 02508.88.736;

- Нотариален акт № 40, том I, рег. № 1226 от 31.03.2009 г., дело № 366/09 г по описа на Служба по вписванията гр.Балчик, за обезпечаване вземанията на банката от "Порт инвестмънт девелопмънт-България 2" ЕАД, ЕИК 148117384 по Договор за банков кредит № 014LD-L-000002 от 02.10.2008 г., чийто размер е увеличен от 1 000 000 /един милион/ евро на 2 500 000 /два милиона и петстотин хиляди/ евро с анекс №1 от 31.03.2009 г. върху следния имот: ПИ № 02508.88.736

- Нотариален акт № 152, том II, вх.рег. № 4949 от 23.11.2007 г., дело № 3070/07 г., за обезпечаване вземанията на банката от „Порт инвестмънт девелопмънт-България 2" ЕАД по Договор за банков кредит № 39КР-АА-2510 от 22.11.2007 г. в размер на 30 000 000 /тридесет милиона/ евро върху следните недвижими имоти: ПИ № 02508.88.734, ПИ № 02508.88.735 и ПИ № 02508.88.736.

- Нотариален акт № 177, том I, рег. № 2451 от 27.06.2008 г., дело № 1340/08 г., за обезпечаване вземанията на банката от „Порт инвестмънт девелопмънт-България 2" ЕАД по

mortgage is established over land properties with Nos. 02508.88.734 and 02508.88.736, respectively;

- a notary deed No.56, volume VIII, ref. No. 3670 dated 3rd October 2008, case No.2138/08 in the list kept at of Registry Office in the town of Balchik where such contractual mortgage shall secure the collection of the Bank's receivables from Port Investment Development – Bulgaria 2 EAD with EIK: 148117384 under a Bank Loan Agreement No.014LD-L-000002 dated 2nd October 2008 in the amount of EUR 1,000,000 (one million Euros) over land property with No.02508.88.736;

- a notary deed No.40, volume I, ref. No.1226 dated 31st March 2009, case No. 366/09 in the list kept at the Registry Office in the town of Balchik for securing the collection of the Bank's receivables from Port Investment Development – Bulgaria 2 EAD with EIK:148117384 under a Bank Loan Agreement No.014LD-L-000002 dated 2nd October 2008, where the amount of the above has been increased from EUR 1,000,000 (one million Euros) to EUR 2,500,000 (two million and five hundred thousand euros) by virtue of Annex No.1 of 31st March 2009 and the land property concerned is of No.02508.88.736

- A notary deed No. 152, volume II, ref. No. № 4949 dated 23rd November 2007, case № 3070/07, for securing the Bank's receivables from Port Investment Development Bulgaria 2 EAD under a Bank Loan Agreement No.39KP-AA-2510 dated 22nd November 2007 in the amount of EUR 30,000,000 (three million Euros) for the land properties with Nos. 02508.88.734, 02508.88.735 and 02508.88.736, respectively;

- A notary deed No. 177, volume I, ref.No.2451 dated 27th June 2008, case No.1340/08, executed for securing the Bank's receivables from Port Investment

Договор за банков кредит № 39КР-АА-2510 от 22.11.2007 г. и анекс №1 от 26.06.2008 г. в размер на 30 000 000 /тридесет милиона/ евро върху следните недвижими имоти: ПИ № 02508.88.734, ПИ № 02508.88.736 и ПИ № 02508.88.735.

- Нотариален акт № 55, том II, рег. № 3668 от 03.10.2008 г., дело № 2136/08 г., за обезпечаване вземанията на банката от „Порт инвестмънт девелопмънт-България 2" ЕАД по Договор за банков кредит № 39КР-АА-2510 от 22.11.2007 г., анекс №1 от 26.06.2008 г. и анекс №2 от 30.09.2008 г. върху следните недвижими имоти: ПИ № 02508.88.734, ПИ № 02508.88.736 и ПИ № 02508.88.735

- Нотариален акт № 41, том I, рег. № 1227 от 01.04.2009 г., дело № 367/09 г., за обезпечаване вземанията на банката от Порт инвестмънт девслопмънт-България 2" ЕАД по Договора за кредит, анекс №1 от 26.06.2008 г., анекс №2 от 30.09.2008 г. и анекс №3 от 31.03.2009 г. върху следните недвижими имоти:
в / Със свое писмо от 05.01.2010 г. за ангажимент ЕЛЛ е гарантирал пред ПИБ да плати пълния размер на ипотечните задължения с цел придобиване правата на кредитор по подробно описаните по – горе вземания, обезпечн с вписаните върху инвестиционния терен ипотечни актове собственост от ЕПД;

се подписа настоящото споразумение за следното:
1. 1. ЕЛЛ и ПИБ, при условията на солидарност от една страна и ПИБ, от друга страна, се договарят в случай, че ЕЛЛ плати по сметка на ПИБ IBAN 27FINV915010EUR43521 сумата от 31,297,827 евро (тридесет и един милиона двеста деветдесет и седем

Development Bulgaria 2 EAD under a Bank Loan Agreement 39KP-AA-2510 dated 22nd November 2007 and Annex No.1 dated 26th June 2008 in the amount of EUR 30,000,000 (thirty million Euros) for the land properties of nos.02508.88.734, 02508.88.736 and 02508.88.735, respectively;

- A notary deed No. 55, volume II, ref. No.3668 dated 3rd October 2008, case No.2136/08, for securing the Bank's receivables from Port Investment Development Bulgaria 2 EAD under a Bank Loan Agreement No.39KP-AA-2510 dated 22nd November 2007, Annex No.1 dated 26th June 2008 and Annex No.2 dated 30th September 2008 for the land properties with nos.02508.88.734, 02508.88.736 and 02508.88.735, respectively;

- A notary deed No. 41, volume I, ref. № 1227 dated 1st April 2009, case No.367/09, for securing Bank's receivables from Port Investment Development Bulgaria 2 EAD under the above Bank Loan Agreement, Annex No.1 dated 26th June 2008, Annex No. 2 dated 30th September 2008 and Annex No. 3 dated 31st March 2009 for the land properties mentioned above;

c) In a Letter of Commitment of 5th January 2010 ALL has given a guarantee to FIB that ALL shall pay in full all mortgage debts for the purpose of acquiring Lender's rights of the receivables detailed above that have been secured by the mortgages as duly recorded over the investment land owned by APD;

The Parties have agreed as follows:

1. ALL and APD jointly, of the first part, and FIB, of the second part, hereby agree that providing that ALL credits the bank account of FIB IBAN 27FINV915010EUR43521 with the amount of EUR 31,297,827 (thirty one

хиляди осемстотин двадесет и седем евро) в срок до 07.07.2010 г., представляваща пълния размер на вземанията на банката, в това число главници, лихви, разноски и комисиони по следните договори за кредит: по договор за кредит № 014LD-L-000006/29.12.2009 г. с кредитополучател "Асет мениджмънт" ЕАД, ЕИК 103921587, по договор за кредит № 014LD-L-000002 от 02.10.2008 г. с кредитополучател "Порт инвестмънт девелопмънт-България 2" ЕАД, ЕИК 148117384, по договор за кредит № 39КР-АА-2510 от 22.11.2007 г. с кредитополучател "Порт инвестмънт девелопмънт-България 2" ЕАД, ЕИК 148117384, които средства служат целево за погасяване на тези задължения към ПИБ, ПИБ се задължава, след получаването на това плащане, да прехвърли на ЕЛЛ правата си по подробно описаните по- горе вземания, ведно с правата си по ипотечните актове, индивидуализирани в т. б) по-горе.

2. Разходите, таксите и разноски в това число и такси по нотариални заверки и вписвания по прехвърлянето на вземанията, ведно с правата по ипотечните актове са за сметка на ЕЛЛ .

3. Странните приемат и се съгласяват, че вътрешните отношения между ЕПД и ЕЛЛ са непротивопоставими на правата и законните интереси на ПИБ, и никоя от страните ЕПД и ЕЛЛ не могат да предявяват оспорвания или възражения спрямо ПИБ, основаващи се тези техни вътрешни отношения.

4. Страните се договарят при изпълнение на договореното в чл. 1, прехвърлянето на вземанията по кредитите и учредените по тях ипотеки да се извърши в срок до 20.07.2010 г.

5. Страните се договарят, че с

million two hundred ninety seven thousand eight hundred twenty seven euro) by 07th July 2010, where such amount constitutes the entire amount of the receivables of the Bank including principal amounts, interest accrued, costs and fees as incurred under Loan Agreement No.014LD-L-000006/29.12.2009 where the Borrower is Asset Management EAD, EIK: 103921587, under Loan Agreement No.014LD-L-000002 dated October 2nd 2008 where the Borrower is Port Investment Development Bulgaria 2 EAD with EIK:148117384 and those under Loan Agreement No.39KP-AA-2510 dated November 22nd 2007 where the Borrower is Port Investment Development Bulgaria 2 EAD, with EIK:148117384, which funds shall be used especially for payment of the above liabilities to FIB, then FIB shall, upon receipt of such payment, assign to ALL their rights of the receivables as described in detail above along with their rights over the mortgage deeds as identified in section B) of the preamble hereinabove.

2. All costs, fees and expenses, including all and any notarization fees, receivables transfer recording fees and the rights over the mortgage deeds shall be borne by ALL.

3. The parties hereto agree and accept that all internal relationship between ALL and APD shall not contradict, affect, nor be in conflict whatsoever with the lawful rights and interests of FIB and none of APD or ALL shall be able to oppose, challenge or assert contentions against FIB where such contentions are relying on the internal relationship between APD and ALL.

4. The parties agree that providing that the parties perform as set forth in Section 1 above the transfer of such loan receivables and related mortgages must be made no later than 20th July 2010.

5. The parties further agree that

| | |
|---|---|
| изпълнението на договореностга по чл.1, предоставените от акционерите на ЕПД писма за ангажимент от дата 05.01.2010 г. да бъдат предадени на Еър Лоджистикс Лимитед Инк. и Ол Сийз България ЕООД /Варна, България/ в оригинал и свободни от всякакви ангажименти.<br><br>Настоящото споразумение се подписа в три еднообразни екземпляра на български и английски, по един за всяка от страните.<br><br>При несъответствие в превода приоритет има текстът на български език. | upon proper performance under Section 1 above all originals of the letters of commitment of 5th January 2010 as produced by APD's shareholders shall be delivered back to Ayr Logistics Limited Inc and All Seas Bulgaria EOOD, Varna, Bulgaria, and shall not have any further commitment.<br><br>This Agreement was drawn and executed in three identical counterparts both in English and Bulgarian and each of the parties hereto shall be entitled to one.<br><br>In case of discrepancies originating from the translation, the Bulgarian text takes priority. |

За ПИБ:

For FIB:

За ЕПД:

For APD:

За ЕЛЛ:

For ALL:

State of Texas, USA
County of Rockwall

Before me on this day personally appeared Philip R. Harris, known to me to be the person whose name is subscribed to the foregoing instruction and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

Given under my hand and seal of office this 4th day of June, 2010

Notary Public, State of Texas

SARA DEANNE FEAZELL
Notary Public
State of Texas
My Comm. Exp. 07-09-2013

1

# EXHIBIT 39



**AYR LOGISTICS LIMITED. INC.**
459 CHIPPENDALE DRIVE
ROCKWALL, TEXAS 75032 USA
Phone (972) 722-8268 • Fax (972) 722-3540
E-mail: ayrlog@yahoo.com

27 January 2011

To:    Fisrt Investment Bank AD
       Sofia, Bulgaria
       Attn: Matthew Mateev
       Chairman of the MB and Executive Director
       "Matthew Mateev" <mmatthew@fibank.bg>,

Subject:    Silver Beach Project

Dear Mr. Mateev,

Based on the arrangements of July 4th, 2010, Ayr has instructed bank account Oriana Capital Parntners, opened at HSBC, NY, to remain obliged in favor of First Investment Bank AD until the final conclusion of the arrangements undertaken on July 4th, 2010. These instruction shall remain valid despite the non-performance of Investbank AD's obligations, requiring SWIFT confirmation of the deposit opened in support of Ayr's Project – Silver Beach, in amount of 20,000,000 Euros.

Oriana Capital Partners shall perform the due payment following a written confirmation by Mr. Anthony Harriott for the transfer of account receivables of First Investment Bank AD under the bank loans signed with Port Investment Development – Bulgaria 2 EAD and Asset Management EAD, performed in favor of Ayr.

Ayr confirms the validity of the obligations undertaken pursuant to the Agreement of July 4th, 2010, and all transactions shall be made in accordance with the acting rules of the bank account Oriana Capital Partners at HSBC, NY. In return of each payment, your quota from the purchase of the Mexican bonds shall be obliged in favor of Ayr and Oriana Capital Partners LLC, as specified in the Mandate Contract signed with Mr. Anthony Harriott on January 19th, 2011.

All fees and taxes for finishing the transaction shall be paid by Ayr.

Mr. Chavdar Angelov and Mr. Anthony Harriott are granted full authorization by Ayr to contact you and arrange all formalities for the transfer of the account receivables under the bank loans: No.39–KR–AA–2510 dated November 27th, 2007; No. 014LD–L–000006 dated October 2nd, 2008; No. 014LD–L–000006 dated December 29th, 2009.

Yours faithfully,

Philip R. Harris
Ayr Logistics Limited, Inc
President & General Manager

# EXHIBIT 40



*Фрея* **f** *Freya*

*Транслейшънс* *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com, freyatranslations@abv.bg

*Translation from Bulgarian*

## RULING No.545
### Town of Shumen, 2nd December 2015

The Shumen District Court, Commercial Divisions sitting in camera on second of December 2015 and panel composed of:

Presiding Judge: Konstantin Mollov

heard commercial case No.730 in the docket of the above court for 2013 as briefed by the reporting judge Konstantin Mollov and in order to deliver a judgment the instant court looked into the following:

By virtue of Decision No. 154 of 2nd December 2015 and pursuant to Art.632, Para 2 of the Commerce Act (CA) the court resumed the bankruptcy proceedings, subject matter of this case, as result of the fact that on 26th November 2015 the creditor UniCredit Bulbank AD deposited the amount of 22,520.00 Bulgarian levs as determined by the court in the instant court's Ruling of 27th October 2014 made under Art.629b CA, which funds were required to cover the bankruptcy proceeding costs.

After UniCredit Bulbank AD lodged their motion, the creditor Silver Beach EAD lodged another motion under Art.632Para 2 CA of filing No.5904 of 30th November 2015, where a property of the debtor was indicated, against which according to the movant actions for collection and liquidation could be taken.

In view of the foregoing Mr. Martin Milchev Apostolov, acting as the Trustee in Bankruptcy for Ayr Property Development AD (declared bankrupt), having EIK 200958720, Targovishte, should be directed to specify and indicate a special bank account to which UniCredit Bulbank AD shall remit the amount of BGN 22,500.00 upon entry into full force and effect of the court decision to resume the proceeding in the case.

Then, the trustee in bankruptcy having examined the data contained in the motion of Silver Beach EAD, shall submit to the Bankruptcy Court a report on the amount of money needed to cover the costs of the bankruptcy proceeding for a year ahead, the latter period commencing on the date when the Decision of the Court to resume the proceedings enters into full force and effect. Beside the costs for trustee's remuneration and accounting services, this report must show the amount of money needed for taking all appropriate actions to ensure collection and liquidation of pertinent property, as well as for all anticipated costs in filing lawsuits to collect the amounts due and replenish the bankruptcy estate. This report should be submitted to the Court within two week's period after the receipt of this Ruling.

In view of the foregoing and pursuant to Art.252 of the Civil Procedure Code (CPC) with reference to Art.621 CA, the Shumen District Court

### RULED as follows:

**Martin Milchev Apostolov, Trustee in Bankruptcy for Ayr Property Development AD** (declared bankrupt) of EIK (Company number): 200958720, the town of Targovishte, **IS DIRECTED** to specify and indicate a special bank account,

2

to which UniCredit Bulbank AD shall remit the amount of BGN 22,500.00 upon entry into full force and effect of the court decision to resume the proceeding in the case.

**Martin Milchev Apostolov, Trustee in Bankruptcy for Ayr Property Development AD** (declared bankrupt) of EIK (Company number): 200958720, the town of Targovishte, **IS DIRECTED** to submit within a two-week's period after the receipt of this ruling a report on the amount of money needed to cover the costs of the bankruptcy proceeding for a year ahead, the latter period commencing on the date when the Decision of the Court to resume the proceedings enters into full force and effect.

The Trustee's report must show the amount of money needed for taking all appropriate actions to ensure collection and liquidation of pertinent property, as well as for all anticipated costs in filing lawsuits to collect the amounts due and replenish the bankruptcy estate.

A copy of the Ruling and a copy of SEEK Foundation, LLC's Motion shall be sent to the permanent Trustee in Bankruptcy.

This Ruling shall be entered in the book kept under Art.634c, Para 1 CA.


**District Judge:** (signed ill.)


---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Ruling No.545 dated 2nd December 2015 issued by the Shumen District Court in case 730. This translation has 2 (two) pages.*

*Translator:*
*Boryana Ilieva Stefanova*

*575*

# О П Р Е Д Е Л Е Н И Е
гр. Шумен 02.12.2015 г.

Шуменски окръжен съд, търговско отделение, в закрито заседание на втори декември две хиляди и петнадесета година в състав:

Окръжен съдия:  Константин Моллов

като разгледа докладваното от съдията Константин Моллов т. дело № 730 по описа за 2013 г. за да се произнесе, взе предвид:

С Решение № 154 от 02.12.2015 г. на основание чл.632, ал.2 от ТЗ е възобновил производството по несъстоятелност, предмет на настоящото дело, предвид обстоятелството, че кредиторът "Уникредит Булбанк" АД е внесъл определената от съда, с определението му от 27.10.2014 г. по чл. 6296 от ТЗ, сума за покриване на текущите разноски в размер на 22 520.00 лв. на 26.11.2015 г.

След молбата на "Уникредит Булбанк" АД е постъпила молба по чл.632, ал.2 от ТЗ и от кредитора „Силвър бийч" ЕАД с вх. № 5904/30.11.2015 г., в която е посочено имущество на длъжника, за което според молителя следва да се предприемат действия за събирането и осребряването му.

С оглед на гореизложеното ще следва да се укаже на синдика на "Еър пропърти девелопмънт" АД (в несъстоятелност), ЕИК 200958720, град Търговище Мартин Милчев Апостолов да уточни и посочи особената банкова сметка, по която след влизане в сила на решението за възобновяване на производството ще бъде преведена внесената от "Уникредит Булбанк" АД сума в размер на 22 520.00 лв.

На следващо място синдика, след анализ на данните съдържащи се в молбата на „Силвър бийч" ЕАД да представи на съда по несъстоятелността доклад за необходимата парична сума, която да покрие разноските на производството по несъстоятелност в рамките на една година, считано от датата, на която влезе в сила решението на съда за възобновяване на производството, като се вземат предвид не само разходите за възнаграждение на синдика и за счетоводно обслужване, но и необходимите суми за предприемане на съответните действия за събиране и осребряване на съответното имущество, включително и разноските по делата, които ще следва да бъдат заведени във връзка със събиране на имуществото и попълване масата на несъстоятелността. Докладът следва да бъде депозиран в съда в двуседмичен срок, считано от датата на получаване на настоящото определение.

Водим от горното, иа основание чл.252 от ГПК във вр. с чл.621 от ТЗ, Шуменският окръжен съд

## О П Р Е Д Е Л И :

**Указва** на синдика на "Еър пропърти девелопмънт" АД (в несъстоятелност), ЕИК 200958720, град Търговище Мартин Милчев Апостолов да уточни и посочи особената банкова сметка, по която след влизане в сила за възобновяване на производството ще бъде преведена внесената от "Уникредит Булбанк" АД сума в размер на 22 520.00 лв.

**Указва** на синдика на "Еър пропърти девелопмънт" АД (в несъстоятелност), ЕИК 200958720, град Търговище Мартин Милчев Апостолов, в двуседмичен срок ,

1

считано от датата на получаване на настоящото определение да представи на съда по несъстоятелността несъстоятелността доклад за необходимата парична сума, която да покрие разноските на производството по несъстоятелност в рамките на една година, считано от датата, на която влезе в сила решението на съда за възобновяване на производството.

В доклада да бъде включени сумите необходими за предприемане на съответните действия за събиране и осребряване на съответното имущество, включително и разноските по делата, които ще следва да бъдат заведени във връзка със събиране на имуществото и попълване масата на несъстоятелността.

Препис от определението и от молбата на „Силвър бийч" ЕАД да се изпрати на постояния синдик.

Определението да се впише в книгата по чл.634в, ал.1 от ТЗ.

Окръжен съдия:

2

# EXHIBIT 41

ORDER OF THE COURT (Fifth Chamber)

9 September 2014 (*)

(Reference for a preliminary ruling — Regulation (EC) No 1896/2006 — Definition of 'uncontested pecuniary claims' — Insolvency proceedings — Extra-judicial enforcement order relating to a contested claim — Claim for payment out of the insolvency estate, on the basis of such an enforcement order — Situation falling outside the scope of Regulation No 1896/2006 – Court clearly lacking jurisdiction)

In Case C-488/13,

REQUEST for preliminary ruling under Article 267 TFEU from the Okrazhen sad — Targovishte (Bulgaria), made by decision of 2 September 2013, received at the Court on 9 September 2013, in the proceedings

**'Parva Investitsionna Banka' AD,**

**'UniKredit Bulbank' AD,**

**'Siyk Faundeyshan' LLS,**

v

**'Ear Proparti Developmant — v nesastoyatelnost' AD,**

**Sindik na 'Ear Proparti Developmant — v nesastoyatelnost' AD,**

intervening parties:

**Natsionalna agentsia za prihodite,**

**'Aset Menidzhmant' EAD,**

**'Ol Siyz Balgaria' OOD,**

**'Si Dzhi Ef — aktsionerna obshtnost' AD,**

**'Silvar Biych' EAD,**

**'Rudersdal' EOOD,**

**'Kota Enerdzhi' EAD,**

**Chavdar Angelov Angelov,**

THE COURT (Fifth Chamber),

composed of T. von Danwitz (Rapporteur), President of the Chamber, E. Juhász, A. Rosas, D. Šváby and C. Vajda, Judges,

Advocate General: P. Mengozzi,

Registrar: A. Calot Escobar,

having regard to the written procedure,

after considering the observations submitted on behalf of:

- 'Parva Investitsionna Banka' AD, by I. Dermendzhiev, advokat,
- 'UniKredit Bulbank' AD, by M. Fezliyska, A. Kazini and L.K. Hampartsumyan,

–    'Siyk Faundeyshan' LLS, by Z. Tomov, advokat,

–    'Ear Proparti Developmant — v nesastoyatelnost' AD, by G. Nakova, advokat,

–    the Sindik na 'Ear Proparti Developmant — v nesastoyatelnost' AD, by G.Y. Kolyovska,

–    'Aset Menidzhmant' EAD, by D. Ianakiev, advokat,

–    'Ol Siyz Balgaria' OOD, by V. Skochev, advokat,

–    'Silvar Biych' EAD, by D. Ianakiev, advokat,

–    'Rudersdal' EOOD, by V. Goshev, advokat,

–    'Kota Enerdzhi' EAD, by M. Nikolova, advokat,

–    the European Commission, by S. Petrova and M. Wilderspin, acting as Agents,

having decided, after hearing the Advocate General, to give a decision by reasoned order, pursuant to Article 53(2) of the Rules of Procedure of the Court of Justice,

makes the following

## Order

1    This request for a preliminary ruling concerns the interpretation of Regulation (EC) No 1896/2006 of the European Parliament and of the Council of 12 December 2006 creating a European order for payment procedure (OJ 2006 L 399, p. 1).

2    The request has been made in proceedings between 'Parva Investitsionna Banka' AD, 'UniKredit Bulbank' AD, and 'Siyk Faundeyshan' LLS, on the one hand, and 'Ear Proparti Developmant — v nesastoyatelnost' AD and the Sindik na 'Ear Proparti Developmant — v nesastoyatelnost' AD, on the other, concerning insolvency proceedings initiated against 'Ear Proparti Developmant — v nesastoyatelnost' AD.

## Legal context

*European Union law*

3    According to Article 1(1)(a), the purpose of Regulation No 1896/2006 is to 'simplify, speed up and reduce the costs of litigation in cross-border cases concerning uncontested pecuniary claims by creating a European order for payment procedure'.

4    Article 2 of that regulation, entitled 'Scope', provides:

'1.    This Regulation shall apply to civil and commercial matters in cross-border cases, whatever the nature of the court or tribunal. It shall not extend, in particular, to revenue, customs or administrative matters or the liability of the State for acts and omissions in the exercise of State authority ("acta iure imperii").

2.    This Regulation shall not apply to:

[...]

(b)    bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings;

[...]

5    Article 3 of that regulation defines cross-border cases as follows:

1.    For the purposes of this Regulation, a cross-border case is one in which at least one of the parties is domiciled or habitually resident in a Member State other than the Member State of the court seised.

2.    Domicile shall be determined in accordance with Articles 59 and 60 of Council Regulation (EC) No 44/2001 of 22 December 2000 on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters [(OJ 2001 L 12, p. 1)].

3.    The relevant moment for determining whether there is a cross-border case shall be the time when the application for a European order for payment is submitted in accordance with this Regulation.'

6     The first subparagraph of Article 21(1) of Regulation No 1896/2006, entitled 'Enforcement', provides:

'Without prejudice to the provisions of this Regulation, enforcement procedures shall be governed by the law of the Member State of enforcement.'

7     Under Article 26 of Regulation No 1896/2006, entitled 'Relationship with national procedural law':

'All procedural issues not specifically dealt with in this Regulation shall be governed by national law.'

*Bulgarian law*

Constitution

8     Article 5(4) of the Constitution provides:

'International treaties ratified in accordance with the constitutional procedure, published and having entered into force in relation to the Republic of Bulgaria shall form part of the national law of the State. They shall have primacy over any conflicting provision of domestic legislation.'

Commercial Law Act

9     Article 717n of the Law on Commerce (Targovski zakon) ('the TZ') provides:

'On the sale of property mortgaged by the debtor in order to provide security for the debt of another, the receiver shall send the mortgagee notice of the sale. The amount owing to the mortgagee shall be retained by the receiver and shall be delivered to the mortgagee upon production of an order for the enforcement of his claim.'

Code of Civil Procedure

10    Article 417 of the Code of Civil Procedure (Grazhdanski protsesualen kodeks) ('the GPK') provides:

'The applicant may also request the grant of an enforcement order if the claim, regardless of its amount, is based upon:

(1)    an act of an administrative body, enforcement of which the civil courts are required to authorise;

(2)    an accounting document or statement of accounts establishing the claim of an organ of the State, a municipality or a bank;

(3)    an authentic instrument, an arrangement or other agreement bearing notarised signatures, concerning obligations set out therein to pay sums of money or other fungible items, and obligations to transfer specific assets;

[...]

11    Article 418 of the Code of Civil Procedure provides:

'1.    If the claim is accompanied by a document referred to in Article 417 on which the claim is based, the creditor may ask the court to issue an enforcement order for immediate payment.

2.    The enforcement order shall be granted after the court has determined the formal validity of the document and established that there is a claim enforceable against the debtor. To issue the enforcement order, the court shall append a note to that effect to the document produced and to the order for payment.

3.    If, according to the document produced, the issue of whether the debt has fallen due depends on consideration being provided or on something else occurring, that provision or occurrence must be established by an official document or by a document from the debtor.

4.    An appeal may be brought against a decision rejecting in whole or in part the application for an enforcement order within the period of one week from the notification of that order, by way of an interlocutory appeal no copy of which need be produced for service.'

[...]

Law on Legislative Acts

12    Article 46 of the Law on Legislative Acts (Zakon za normativnite aktove) ('the ZNA'), concerning the interpretation of legislative acts, provides:

'1.    Provisions of legislative acts shall be applied according to their strict sense; if they are unclear, they shall be given the meaning that best corresponds to the other provisions, to the purpose of the act interpreted and to the general principles of Bulgarian law.

2.    If a legislative act is incomplete, the cases not regulated by it shall be subject to the provisions applicable to similar cases, provided that that is consistent with the purpose of the act. Failing any such provisions, relations shall be governed by the general principles of Bulgarian law ...'

**The dispute in the main proceedings and the questions referred for a preliminary ruling**

13    By judgment of 30 May 2011, the Okrazhen sad - Targovishte (District Court, Targovishte), which has jurisdiction in insolvency cases, opened insolvency proceedings against 'Ear Proparti Development — v nesastoytelnost' AD and, by judgment of 15 June 2012, ordered the attachment and realisation of the property forming part of the assets of the company in liquidation.

14    The Sindik na 'Ear Proparti Developmant — v nesastoyatelnost' AD (the liquidator appointed in the insolvency proceedings opened against 'Ear Proparti Developmant — v nesastoyatelnost' AD) sold several immovable properties forming part of the insolvency estate and encumbered with mortgages in favour of 'Parva Investitsionna Banka' AD ('Parva Investitsionna Banka'). Those mortgages had been created in order to secure loan agreements concluded by Parva Investitsionna Banka and third parties, namely: 'Port Investmant Developmant — Balgaria 2' EAD and 'Aset Menidzhmant' EAD.

15    Parva Investitsionna Banka obtained several extra-judicial enforcement orders for the claims relating to those mortgage loans. It made an application on the basis of Article 717n of the TZ for provisional, immediate enforcement of those orders under Articles 417 and 418 of the GPK. It claimed payment of the sum for which the immovable property forming part of the insolvency estate had been sold. Those claims being contested by, inter alios, the debtors, the receiver of 'Ear Proparti Developmant — v nesastoyatelnost' AD requested the referring court to give a ruling on, inter alia, the conditions for the application of Article 717n of the TZ when a creditor seeks to have a contested claim paid out of the insolvency estate.

16    According to the referring court, that application asks, in essence, whether payment, out of the insolvency estate and in accordance with Article 717n of the TZ, of a contested claim, provisional immediate enforcement of which was authorised on the basis of extra-judicial orders, may be considered to be lawful.

17    In that regard, the referring court cited a judgment of the Konstitutsionen sad (Constitutional Court) of 2 October 2012 (Case 4/2012) confirming that Articles 417 and 418 of the GPK empowering banks, on the basis of a loan account statement, to obtain immediate enforcement were compatible with the Constitution. The Konstitutsionen sad's assessment took account of Regulation No 1896/2006 because the latter forms part of internal national law and, pursuant to Article 5(4) of the Constitution, has primacy over any conflicting provisions of domestic legislation that are contrary to the legal principles and solutions adopted in that regulation.

18    The referring court considers that the assessment of national law has revealed the existence of a legal vacuum, in that Article 717n of the TZ makes no provision for the case in which an application brought pursuant to that article is contested. The referring court maintains that, under Article 46(2) of the ZNA, it is obliged, when such a lacuna is noted, to take account of the general scheme of the law and of the general principles of law in order to rule on the dispute before it. Regulation No 1896/2006, even if it concerns the European order for payment procedure exclusively, is, according to the referring court, the only legislation providing legal solutions sufficiently similar in their subject-matter to that of the dispute pending before it. That regulation lays down rules and principles relevant for the purposes of answering questions on the conflict between the individual enforcement procedure and the insolvency procedure.

19    In accordance with Article 5(4) of the Constitution, Regulation No 1896/2006 forms part of national law. It must therefore be taken into account when general principles of law are interpreted and the general scheme of the law assessed.

20    It was in those circumstances that the Okrazhen sad — Targovishte decided to stay the proceedings and to refer to the following questions to the Court of Justice for a preliminary ruling:

'1.    How is the criterion of the uncontested nature of an enforceable pecuniary claim within the meaning of recital 6 in the preamble to, and Article 1 of, Regulation [No 1896/2006] to be interpreted?

2.    In cases in which the national legislation of a Member State of the European Union, in whose territory the pecuniary claim is being enforced, is silent as to the application of the order enforcing a pecuniary claim in insolvency proceedings brought in respect of the person against whose property enforcement is sought, must the prohibition laid down in Article 2(2)(b) of [Regulation No 1896/2006] be

interpreted strictly as applying only to the contested pecuniary claims of which enforcement is sought, or does it relate also to the uncontested pecuniary claims of which enforcement is sought?

3.    On a proper construction of Article 2(2)(b) of [Regulation No 1896/2006], which provides that the regulation is not to apply to bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings, does that restriction concern only the opening of the proceedings referred to, or does that restriction also cover the whole course of the proceedings in terms of the procedural stages provided for by the national legislation of the Member State of the European Union concerned?

4.    In accordance with the doctrine of the primacy of Community law and given a lacuna in the national legislation of a Member State of the European Union, may the national court of the Member State concerned, before which insolvency proceedings have been brought in respect of a person against whose property enforcement is sought, adopt in an interpretative decision a different solution that is contrary to the basic principles of [Regulation No 1896/2006], on the basis of recital 10 in the preamble to, and Article 26 of, the Regulation?'

### Jurisdiction of the Court

21    Regulation No 1896/2006, according to Article 1 thereof, institutes a European order for payment procedure in cross-border cases concerning uncontested pecuniary claims.

22    It is apparent from the order for reference that the case in the main proceedings concerns neither a European order for payment procedure, provided for under Regulation No 1896/2006, nor the enforcement of a European order for payment, issued on the basis of that regulation, but rather concerns the enforcement of an extra-judicial order, the provisional, immediate enforcement of which has been applied for on the basis of national law in the context of insolvency proceedings.

23    It is therefore clear that the situation at issue in the main proceedings falls outside the scope of Regulation No 1896/2006, interpretation of which is requested by the referring court.

24    It is apparent from the decision to refer that, by its questions, the referring court seeks the interpretation of Regulation No 1896/2006 in order to fill the lacuna it has discovered in the national legislation applicable to a situation, such as that at issue in the main proceedings, not falling within the scope of that regulation.

25    In that regard, it should be borne in mind that, under Article 94(c) of the Rules of Procedure of the Court of Justice, a request for a preliminary ruling must contain a statement of the reasons which prompted the referring court or tribunal to inquire about the interpretation or validity of certain provisions of EU law, and the relationship between those provisions and the national legislation applicable to the main proceedings. That statement of reasons, like the summary of the relevant findings of fact required under Article 94(a) of those rules, must be of such a kind as to enable the Court to ascertain, not only whether the request for a preliminary ruling is admissible, but also whether it has jurisdiction to answer the question referred (judgment in *Siragusa*, C-206/13, EU:C:2014:126, paragraph 19).

26    Moreover, the Court does not, in principle, have jurisdiction to reply to a question referred for a preliminary ruling where it is obvious that the provision of EU

law referred to the Court for interpretation is incapable of applying (see, to that effect, judgment in *Caixa d'Estalvis i Pensions de Barcelona*, C-139/12, EU:C:2014:174, paragraph 41 and the case-law cited).

27    However, in a situation such as that at issue in the main proceedings in which the facts of the case fall outside the scope of the provisions of EU law referred to the Court for interpretation, the Court has jurisdiction to give a preliminary ruling, if the domestic law makes a reference to the content of those provisions of EU law in order to determine the rules applicable to a situation purely internal to the Member State concerned (see, in particular, judgments in *Poseidon Chartering*, C-3/04, EU:C:2006:176, paragraph 15; *ETI and Others*, C-280/06, EU:C:2007:775, paragraphs 22 and 26; *Salahadin Abdulla and Others*, C-175/08, C-176/08, C-178/08 and C-179/08, EU:C:2010:105, paragraph 48; *Cicala*, C-482/10, EU:C:2011:868, paragraph 17; *Nolan*, C-583/10, EU:C:2012:638, paragraph 45; and *Romeo*, C-313/12, EU:C:2013:718, paragraph 21).

28    Indeed, it is clearly in the European Union's interests that, in order to forestall future differences of interpretation, provisions or concepts taken from EU law should be interpreted uniformly, when, in regulating situations outside the scope of the EU measure concerned, national legislation seeks to adopt the same solutions as those adopted in that measure, in order to ensure that internal situations and situations governed by EU law are treated in the same way, irrespective of the circumstances in which the provisions or concepts taken from EU law are to apply (see, in particular, judgments in *Salahadin Abdulla and Others*, EU:C:2010:105, paragraph 48; *SC Volksbank România*, C-602/10, EU:C:2012:443, paragraphs 87 and 88; *Nolan*, EU:C:2012:638, paragraph 46; *Allianz Hungária Biztosító and Others*, C-32/11, EU:C:2013:160, paragraphs 20 and 21; and *Romeo*, EU:C:2013:718, paragraph 22).

29    Such is the case when the provisions of EU law at issue have been made directly and unconditionally applicable by national law to such situations (judgments in *Cicala*, EU:C:2011:868, paragraph 19; *Nolan*, EU:C:2012:638, paragraph 47; and *Romeo*, EU:C:2013:718, paragraph 23). On the other hand, that is not the case when the provisions of national law allow the national court to depart from the rules of EU law, as interpreted by the Court of Justice (see, to that effect, judgments in *Kleinwort Benson*, C-346/93, EU:C:1995:85, paragraphs 16 and 18; and *Romeo*, EU:C:2013:718, paragraph 33 and the case-law cited).

30    In the present case, the referring court refers to Article 46(2) of the ZNA, in conjunction with Article 5(4) of the Constitution, and explains why it considers that an interpretation of the provisions of Regulation No 1896/2006 is, in a situation such as that at issue in the main proceedings, not falling within the scope of that regulation, necessary for the purposes of resolving the case before it. However, those reasons are not such as to allow the Court to conclude that it has jurisdiction to answer the request for a preliminary ruling.

31    Article 5(4) of the Constitution provides: '[i]nternational treaties ratified in accordance with the constitutional procedure, published and having entered into force in relation to the Republic of Bulgaria shall form part of the national law of the State. They shall have primacy over any conflicting provision of domestic legislation.' That provision makes no reference therefore to the provisions of Regulation No 1896/2006, cited in the questions referred, but merely, according to its wording, lays down a rule relating to the hierarchy between international and domestic law.

32    Article 46(2) of the ZNA refers in general terms to 'general principles of Bulgarian law' and not specifically to the provisions of Regulation No 1896/2006, mentioned in the questions referred. Although the referring court maintains that Article 46(2) of the ZNA, in conjunction with Article 5(4) of the Constitution, also refers to EU law, it does not indicate at all whether those provisions of Bulgarian law do indeed refer to the provisions of Regulation No 1896/2006 in order to regulate situations not falling within the scope of that regulation so as to ensure that internal situations and situations governed by EU law are treated in the same way.

33    As regards the judgment of the Konstitutsionen sad, referred to in paragraph 17 above, cited by the referring court in this context, it is by no means apparent from the order for reference that that judgment concerns the question whether Article 5(4) of the Constitution and Article 46(2) of the ZNA make a *renvoi* to EU law to ensure such identical treatment.

34    If Article 46(2) of the ZNA, read in conjunction with Article 5(4) of the Constitution, refers in general terms to general principles of law in order to fill a legal vacuum, it is not apparent from the order for reference that the provisions of Regulation No 1896/2006 have been made applicable, as such, directly and unconditionally by those provisions of Bulgarian law to a situation not falling within the scope of the provisions of that regulation whose interpretation is sought. Rather, it appears that those provisions of Bulgarian law merely authorise the court before which the application has been brought to fall back on general principles, national legislation and EU law to fill the lacuna found, by means of the decision it is to adopt and in accordance with its own evaluation of the guidance offered by those rules and principles.

35    In those circumstances, it cannot be considered that the provisions of Regulation No 1896/2006, cited in the questions referred, have been made applicable, as such, directly and unconditionally by national law to a situation, such as that in the main proceedings, not falling within the scope of the provisions of that regulation.

36    Consequently, it must be held, on the basis of Article 53(2) of the Rules of Procedure, that the Court clearly lacks jurisdiction to answer the questions referred by the Okrazhen sad — Targovishte.

**Costs**

37    Since these proceedings are, for the parties to the main proceedings, a step in the action pending before the national court, the decision on costs is a matter for that court. Costs incurred in submitting observations to the Court, other than the costs of those parties, are not recoverable.

On those grounds, the Court (Fifth Chamber) hereby orders:

**The Court of Justice of the European Union clearly lacks jurisdiction to answer the questions referred by the Okrazhen sad — Targovishte (Bulgaria).**

[Signatures]

# EXHIBIT 42

*Фрея* *Freya*

*Транслейшънс* *Translations*

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com, freyatranslations@abv.bg

*Translation from Bulgarian*

*Round seal reading:* "Targovishte District Court, Filing Department"

## RULING

### No.179 of 2nd September 2013

### Town of Targovishte

### IN THE NAME OF THE PEOPLE

**The Targovishte District Court, Commercial Division,** held a closed session on September 2nd 2013. The court session was presided by Judge Angelinka Nikolova in the presence of the Secretary Mariela Koeva.

The court heard bankruptcy case No.14 in the 2011 list kept at such Court reported by Judge Nikolova.

The Court considered the following:

The proceedings in case No.14 in the 2011 list deal with the matter of the commercial bankruptcy of Ayr Property Development AD ("APD"). Currently the court entertaining the bankruptcy case has issued a decision under Art.711 of the Commercial Act ("CA"). Assets from the bankruptcy estate that have been mortgaged in favour of **First Investment Bank AD** ("FIB" or "the Bank"), **Seek Foundation LLC,** USA, and **UniCredit Bulbank AD** ("Bulbank") were sold in the course of the above proceedings, which sale gave rise to the application of Art.717 CA.

FIB and Seek Foundation LLC filed a motion to the Court under Art.717n CA requesting to obtain payment of their proportionate share of the sale price of the mortgaged properties contained in the bankruptcy estate. Each motion was accompanied by Writs of Execution for preliminary and immediate payment of amounts due, which have been issued under Art.418 and with reference to Art.418 of the Civil Procedure Code ("CPC") i.e. are based on documents.

APD's trustee in bankruptcy, being a body of the bankruptcy estate filed a request with the Court where arguments were brought asserting that FIB's collection of amounts due claimed under Art.717n CA were disputable and challengeable, and moved the Court to order that funds up to the amount specified in the mortgage instruments were to be set aside. The request sought to have funds temporarily set aside until all cases instituted with regards to FIB's right to receive payment out of the bankruptcy estate would have been dismissed. The arguments in support of the request stated that according to the provisions prescribed by Art.717 CA only unchallengeable claims were subject to such payment and the trustee in bankruptcy, being the body empowered by the law to preserve the bankruptcy estate and the interests of the creditors pursuant to Art.693 CA and the entity in bankruptcy, respectively, was the one to be held liable for administrative, financial and penal violations where his or her actions or inactions

were harmful to such interests (Art. 660 and 663 CA). Where amounts due based on documents under Art.418 and with reference to Art.417, Para 2 CPC are claimed and sought for payment out of the bankruptcy estate, and are made subject to immediate and preliminary payment, while such amounts due have been simultaneously challenged before the Court, the Trustee in bankruptcy shall file a motion to the bankruptcy court under Art.658, Para 2 CA asking the Court to decide under the provisions prescribed by Art.5 CPC on the matters related to the powers of the trustee in bankruptcy regarding the application of Art.717n CA.

The Bankruptcy court having considered the existence of a dispute over the prerequisites for payment out of APD's bankruptcy estate claimed by FIB under the provisions of Art.717n CA has found that Art.47, Para 2 of the Law on the Normative Acts (LNA) with reference to Art.5 CPC should be applied in order to decide this dispute. To do so the court should by way of interpretation identify the fundamental principles and the common sense of the law. The existing provisions fail to provide a regulatory solution for the application of Art.717n CA in the hypothesis of the dispute at issue and such a normative gap necessitates a solution to be found by interpreting the fundamental principles and the common sence of the law governing the bankruptcy proceedings as a special type of proceedings and, thus, provide an answer to the question on the applicability of the individual immediate enforcement granted under Art.418 CPC in the proceedings under Art.717n CA where such answer should be generally acceptable and yet fit the narrow hypothesis of the dispute over the amounts due at issue, in particular as well.

For the above reason the Court having looked into the provision of Art.47, Para 2 LNA has found it necessary to address the Court of Justice of the European Union ('**the EU Court**") with a request for preliminary ruling on the interpretation and clarification of the fundamental principles and the common sense underlying Regulation (EC) No.1896/2006 of the European Parliament and of the Council of 12 December 2006 ("**Regulation (EC) No.1896/2006**").

The jurisdiction of the Bankruptcy Court is defined in Art.628 CPC and that is the court before which questions necessitating a request for preliminary ruling on the interpretation of the law are pending and such ruling is of crucial importance for the Court because it will enable it to resolve the legal dispute on the application of Art. 717n CA properly.

The Bankruptcy court has jurisdiction as defined in Art.267 of the *Treaty on the Functioning of the European Union* and the Trustee in bankruptcy referred the matters related to the application of Art.5 CPC to said court by making a request in that regard and with reference to the request for preliminary ruling referred to the EU Court on the interpetation of Regulation (EC) No.1896/2006. The subject matter of the request to have the common sense and the fundamental principles of the law clarified and acsetained was formulated in the question raised on the merits of the dispute at issue: *Is the order for payment under Art.717n CA of the contested claims for payment out of the bankruptcy estate admissible in the bankruptcy proceedings providing that such order for payment has been issued on the basis of documents only and is subject to immediate and preliminary enforcement pursuant to Art.418 and with reference to Art.417, Para 2 CPC?*

With a view to said express request referred to the Bankruptcy court (the jurisdiction of which is defined in Art.5 CPC with reference to the provisions of Art.47, Para 2 LNA) the Targovishte District Court, Commercial Division,

represented by the instant court panel has found it necessary to refer the matter to the EU Court and request interpretation of the fundamental principles and the common sense of the law as contained in Regulation (EC) No.1896/2006. The Court has held so in view of the need to apply Art.47, Para 2 LNA with reference to Art.5 CPC and determine the common sense and the fundamental principles of the law relevant to the subject matter of the dispute at issue on the application of Art.717n CA against the background of the fundamental principles laid down in Regulation (EC) No.1896/2006 as transposed in the national legislative framework by virtue of Art.5 Para 4 of the Constitution of the Republic of Bulgaria.

The Court has decided to make a request for preliminary ruling having assessed that although Regulation (EC) No.1896/2006 contemplates exclusively the creation of an European order for payment procedure, an interpretation of the principles and the fundamental standards providing for the statutory solutions contained therein will make it possible for the Court to apply Art.47, Para 2 LNA and make its judgment on the legal dispute concerning the application of Art.717n CA despite the existing normative gap in the national legislation. Regulation (EC) No.1896/2006 is the only statutory act containing solutions analogous or similar to the subject matter of the dispute at issue in case No.14/2011 now pending.

For the foregoing reasons the Court worded its request for preliminary ruling as follows:

## I. Parties to the case/dispute:

### 1. Creditors under Art.717n CA:

- **FIRST INVESTMENT BANK AD,** having seat and registered office address at Sofia, the Izgrev Region, 37 Dragan Tsankov Boulevard and duly registered in the Commercial Registry under EIK (Company number):831094393, and represented by the Executive Directors Mrs. Maya Ivanova Oyfalosh and Svetoslav Stoyanov Moldovanski.

- **UniCredit Bulbank AD**, having EIK (Company number): ЕИК 831919536 and seat and registered office address at Sofia, the Vazrazhdane Region, 7 Sveta Nedelya Square, and represented by Mr Andrea Casini and Mr. Levon Hampartzoumian.

- **Seek Foundation LLC**, a Limited Liability Company duly incorporated under the laws of the State of Missouri, USA and registered under Company Number LCO875133 with the Register kept by the Office of the Secretary of State of the State of Missouri, with seat and principal place of business at 404 Timberidge Drive, St. Peters, MO 63376, USA, represented by the Chief Executive Manager Jeffrey L. McClanahan, acting through their proxy Mr. Zahari Tomov, Attorney at law, member of the Varna Bar Association, and having law office address at Varna, 4 Paraskeva Nikolau St., 2nd floor, office 3 .

### 2. Insolvent trader under Art. 711 CA.





- **Ayr Property Development AD**, a company undergoing bankruptcy proceedings, having EIK (Company No.): 200958720, with seat and office address at Targovishte 7700, Lilia Str. Block 4, Section B, floor 1, Ap. 2, represented by the Executive Director Phiplip Robert Harris with suspended powers pursuant to Art. 711, Para 1(3) CA, represented by Maria Gavrailova Nakova, Attorney at Law, member of Sofia Bar Association having law office address at Botevgrad 2140, 4 Sevast Ognyan Str., floor 2, Office 6.

3. **Mrs. Ganka Yaneva Kolyovska**, permanently residing at Sofia 1797, Musagenitsa Residential District, 1A Kliment Ohridski St., floor 2, Ap.2, and acting as **Trustee in Bankruptcy** for Ayr Property Development AD (in bankruptcy), appointed by Resolution No.16/30th May 2011, by virtue of Art.630 CA for the proceedings in case No.14 in the list kept for 2011.

## II. Parties involved in the dispute: Creditors under Art.722 of CA:

- **UniCredit Bulbank AD**, having EIK (Company number): ЕИК 831919536, seat and registered office address at Sofia, the Vazrazhdane Region, 7 Sveta Nedelya Square, and represented by Mr Andrea Casini and Mr. Levon Hampartzoumian.

- **The National Revenue Agency**, having Bulstat (Company number): 131063188,  seat and principal place of business at Sofia, 52 Knyaz Dondukov Blvd., represented by Boyko Atanasov.

- **Asset Management EAD**, having EIK (Company number): 103921587, seat and registered office address at Targovishte, 1 Tsar Assen St., ground floor, and represented by the Executive Directors Mr. Nikolay Georgiev Hubenov and Mr. Anton Georgiev Dimitrov.

- **All Seas Bulgaria OOD**, having EIK (Company number): 103318621, seat and registered office address at Varna, Primorski Region, 3 Nikola Vaptsarov St., Entrance G, floor 8, Ap.21, represented by Chavdar Angelov Angelov and Kalina Stoyanova Kasabova.

- **CGF – Shareholding Community AD**, having EIK (Company number): 125561017, seat and registered office address at Varna, Primorski Region, 3 Nikola Vaptsarov St., Entrance G, floor 8, Ap.21, represented by Chavdar Angelov Angelov.

- **Silver Beach EAD**, having EIK (Company number): 200432364, seat and registered office address at Varna, Primorski Region, 3 Nikola Vaptsarov St., Entrance G, floor 8, Ap.21, represented by Kalina Stoyanova Kasabova.

- **Rudersdal EOOD**, having EIK (Company number): 148123309, seat and registered office address at Sofia, Knyaz Boris I Blvd., Block 47, floor 1, Ap.4, represented by Mr. Carsten Michael Berger.

- **Kota Energy EAD**, having EIK (Company number): 201469650, seat and registered office address at Varna, 70 Slivnitsa Blvd., floor 3, Ap. 4, represented by Georgi Dimitrov Georgive.

- **Chavdar Angelov Angelov**, permanently residing at Varna, 11 General Stoletov St., floor 2, Ap.3.

## III. Subject matter of the dispute

The Trustee in bankruptcy has challenged FIB's right claimed under Art.717n CA for order to pay out of the bankruptcy estate of the amounts due owed to the Bank, which payment order has been issued on the basis of documents under Art.418 with reference to Art.417 (2) CPC and is subject to preliminary and immediate individual enforcement. The motion in opposition relies on an action pending resolution as instituted over a dispute on the existence of the above right and FIB's mortgage rights, which dispute renders the above rights challengeable.

FIB claims that the Trustee in bankruptcy is obliged to pay the amounts due claimed under Art.717n CA in furtherance of a Writ of Execution issued in favour of the Bank under Art.418 and with reference to Art. 417 (2) CPC, regardless of the fact that such amounts due are challengeable and have been contested.

APD (in bankruptcy) objects both to the existence of the amounts due ordered for payment and to the existence of the Bank's mortgage rights related to the contested debts, and also denies the Bank's right of payment out of the bankruptcy estate under the provisions prescribed by Art. 717n CA. APD's counselor Maria Nakova in her opinion of August 6th 2013 presented detailed arguments in support of the fact that the funds available in the bankruptcy estate were ownership of the mother company, Ayr Logistics Limited Inc. ("Ayr") and such funds were protected as Ayr's investment property within the meaning of the *Treaty concerning the encouragement and reciprocal protection of investment between the Republic of Bulgaria and USA*, and that according to this Treaty the funds enjoyed full protection under the "most-favored-nation-treatement" under the conditions of absolute prohibition for expropriation.

## IV. Factual background

By virtue of Order No.16 issued under Art.630 CA on 30th May 2011 the bankruptcy proceedings against APD were instituted and a permanent trustee in bankruptcy for APD was appointed.

By virtue of Decision No.122 made under Art.711 CA on 15th June 2012 the Reorganization Plan proposed for APD was denied, the company was declared bankrupt and APD's property included in the bankruptcy estate was foreclosed and attached, the powers of APD's governing bodies were suspended and actions aimed at cashing in APD's property contained in the bankruptcy estate were initiated.

In the course of the proceedings in case No.14/2011 the Trustee in bankruptcy conducted an auction sale pursuant to Art.717 CA and sold a certain portion of the bankruptcy estate comprising of three real estates pooled in one joint estate as per their designated purpose for residential development. At the time of the sale such properties were encumbred with mortgages. The legal dispute at issue is about the contractual mortgages created to secure bank loan agreements

signed by and between FIB and third parties – *Port Investment Development Bulgaria 2 EAD* ("**PIDB2**") and *Asset Management EAD* ("**AM**"). As result from the sale of the lands conducted by the Trustee in bankruptcy, where FIB acted as the Buyer, sale proceeds in the amount of BGN 97,500,000 were added to the bankruptcy estate. The sale was approved by Order of Receivership No.270 dated 15th December 2012 and issued by the Bankruptcy Court in case No.14/2011, which order is currently in full force and effect.

By virtue of a decision issued in case 82 in the list kept in the docket of Targovishte District Court for 2011, currently in full force and effect, the Court denied FIB's motion filed under Art. 694 CA to be approved as creditor of APD (in bankruptcy) in the bankruptcy proceedings in case 14/2011 instituted by the claims for amounts due filed under Art 717n CA pursuant to the Writs of Execution issued.

On 21st May 2013 FIB filed a motion under Art.717n CA in the proceedings of case No 14/2011 and requested payment of amounts due based on documents, such as bank account statements for outstanding loan debts for principal, interest, fees, commissions and costs. The Court granted the motion and the amounts due claimed have become subject to preliminary and immediate execution under the provisions prescribed by Art. 418 with reference to Art. 417 (2) CPC. The following Writs of Execution were presented under Art.717n CA:

> A Writ of Execution dated 28th June 2012 was issued on the above basis pursuant to Order Make Payment No.4932 of 28th June 2012 issued under Art.417(2) CPC in civil case No.8985/2012 in the list kept by XVIth panel of Varna Regional Court, by virtue of which the Court ordered PIDB2 to pay the amount of EUR 31,724,900 arising out of Bank Loan Agreement No. 39 KP–AA-2510/22nd November 2007 and the ones arising out of Annex No.4 of 15th December 2009 thereto, as follows: EUR 20,000,000 for the principal; EUR 11,724,900 for penalty interest charged within 25th October 2010 – 21st June 2012; and BGN 1;240,970.22 for court costs incurred in the proceedings.

> A Writ of Execution dated 25th June 2012 was issued on the above basis pursuant to Order to Make Payment No.4868 of 25th June 2012 issued under Art.417(2) CPC in civil case No.8968/2012 in the list kept by IXth panel of Varna Regional Court, by virtue of which the Court ordered PIDB2 to pay the amount of EUR 3,965,612.50 arising out of Bank Loan Agreement No. 014LD-L-000002/2nd October 2008 and the ones arising out of Annex No.2 of 15th December 2009 thereto, as follows: EUR 2,500,000 for the principal; EUR 1,465,612.50 for penalty interest charged within 25th October 2010 – 21st June 2012; and BGN 155,121.28 for court costs incurred in the proceedings.

> A Writ of Execution dated 26th June 2012 was issued on the above basis pursuant to Order to Make Payment No.4886 of 26th June 2012 issued under Art.417(2) CPC in civil case No.8974/2012 in the list kept by XXXIIIth panel of Varna Regional Court, by virtue of which the Court ordered Asset Management to pay the amount of EUR 10,570,936.45 arising out of Bank Loan Agreement No. 014LD-L-000006/29th December 2009, as

follows: EUR 6,950,118.02 for the due principal; EUR 3,620,818.43 for penalty interest charged within 25th October 2010 – 21st June 2012.

Because the debtors challenged the payments ordered by the above Writs of Execution, issued on the basis of documents and in favour of FIB, the Bank has filed Statements of Claim under Art.415 CPC seeking from the Court to ascertain the amounts due ordered for preliminary and immediate payment. The Statements of Claims are as follows:

- Statement of Claim with Filing No.2935 dated 24th April 2013 seeking to ascertain the receivables ordered for payment by Writ of Execution issued on 28th June 2012 amounting to EUR 31,724,900; where PIDB2 is the Defendant under the Claim and the debtor under the Writ of Execution. Thus case 69 in the list kept by Targovisthe District Court for 2013 has been instituted.

- Statement of Claim with Filing No. 6871 dated 28th February 2013 seeking to ascertain the receivables ordered for payment by Writ of Execution issued on 25th June 2012 amounting to EUR 3,965,612.50; where PIDB2 is the Defendant under the Claim and the debtor under the Writ of Execution. Thus case 360 in the list kept by Varna District Court for 2013 has been instituted.

- Statement of Claim with Filing No. 8805 dated 15th March 2013 seeking to ascertain the receivables ordered for payment by Writ of Execution issued on 26th June 2013 amounting to EUR 10,570,936.45; where Asset Management is the Defendant under the Claim and the debtor under the Writ of Execution. Thus case 490 in the list kept by Varna District Court for 2013 has been instituted.

In the course of the proceedings in case 14/2011 as instituted by FIB's Motion under Art. 717n CA for payment of the amounts due specified in the Writs of Execution, the debtors, PIDB2 and Asset Management EAD, filed objections challenging the existence of such amounts due.

The creditors under Art.693 CA, whose claims were approved to be satisfied in the bankruptcy proceedings for APD, called and held a meeting on the 12th of August 2013, where they adopted resolutions recommending the Trustee in Bankruptcy being the governing body of the bankruptcy estate under the conditions of suspended powers of the managing bodies of the bankrupt trader to do as follows: (i) exercise the powers vested in the Trustee in Bankruptcy by the law in order to preserve and protect the bankruptcy estate, and (ii) file lawsuits to ascertain the non-existence of the amounts due claimed under Art.717n CA and the non-existence of FIB's mortgage rights, on which the Bank based their claim for payment.

The Trustee in Bankruptcy, following the recommendations made in the resolutions adopted by the Creditors' Meeting and by virtue of the powers vested in such Trustee by the law, given the suspended powers of APD's governing bodies, filed three actions for Negative Declaratory Judgments against FIB and the Debtors under the writs of execution, notably PIDB2 and AM, on 13th August 2013. The purpose of the above actions for negative declaratory judgments is to ascertain that FIB is not entitled to receive payment out of the bankruptcy estate under the provisions of Art.717n CA because such debts do not exist (although the Bank claimed these existed under the writs of executions issued on the basis

of bank account statements and that they were subject to preliminary and immediate payment), and because the Bank holds no mortgage rights in the bankruptcy estate. Three court cases were instituted under the above motions, notably bankruptcy cases of Nos. 133/2013, 134/2013 and 135/2013, all of them in the docket of Targovishte District Court.

On 19th August 2013 the Trustee in Bankruptcy filed a Motion under filing No. 3751 and requested from the Court to set aside funds out of the bankruptcy estate equal to the amounts specified in the mortgage instruments presented by FIB in the proceedings under Art.717n CA in order to ensure the follow-through of all case proceedings intended to ascertain the existence of the amounts due and the mortgage rights claimed by the Bank and have all respective court judgments to be made in that regard enforced, which is in fact a prejudicial issue that need to be resolved in view of the judgment to be issued on FIB's motions claiming a right for payment out of the bankruptcy estate.

Considering the above legal background FIB notified the Trustee in Bankruptcy in a Letter of Ref. 092 of 16th August 2013 that the Bank would take all necessary measures to initiate a criminal investigation against the Trustee, if any payments whatsoever, apart from the ones to satisfy the claims asserted by the Bank under Art.717n CA, were made to other creditors out of the sale proceeds that had replenished the bankruptcy estate.

In their letter of Ref.3812 dated 23rd August 2013 the creditors whose receivables had been approved to be satisfied in the proceedings in case 14/2011 insisted on having funds set aside out of the bankruptcy estate in an amount equal to the mortgage values claimed, which funds would serve a dual purpose: (i) cover the Trustee in Bankruptcy's responsibility and (ii) limit FIB's claims under Art. 717n CA to up to the amount set aside. It was further stated that such funds could only be expended after bankruptcy cases of Nos. 133/2013, 134/2013 and 135/2013 in the docket of Targovisthe District Court would have been dismissed and the judgments would have entered in full force and effect accordingly.

The Trustee in Bankruptcy has filed a Request (Ref.3751 of 19th August 2013) in the Bankruptcy Court regarding case 14/2011 and has asked the Court to authorize funds to be set aside out of the bankruptcy estate until the dismissal of the court disputes related to FIB's claims under Art.717n CA. The funds requested by the Trustee in Bankruptcy are in the amounts as follows:

- **The amount of EUR 20,000,000** being the mortgage value of the Mortgage Agreement of March 31st 2009 signed by *All Seas Property 2 OOD (by virtue of Notary Deed No.156, volume II, reg. No. 1342, folio No.220 in the list kept for 2009 by Obreten Obretenov, Notary Public, licensed to practice in the region of Balchik and registered with the Notary Chamber under No.109 and recorded in the Registry Office with the Balchik Regional Court under Reg. No 1227, Deed No 41, volume I, folio No 367/2009 on April 1st 2009)* which mortgage was created and registered to secure the receivables arising out of Annex No.3/31st March 2009 to Bank Loan Agreement No. 39 KP–AA-2510 of 22nd November 2007 to secure FIB's rights arising out of the above BLA signed with PIDB2. By virtue of a sale and purchase agreement for mortgaged properties of 15th December 2009 APD assumed the above mortgage encumbrances.

ФРЕА ТРАНСЛЕЙШЪНС ООД
ВАРНА
BULGARIA
VARNA
FREYA TRANSLATIONS Ltd.

The funds set aside would be kept intact until the legal dispute in case No.135/2013 in the docket of Targovishte District Court would have been resolved and a judgment in that regard would have entered in full force and effect.

- **The amount of EUR 2,500,000** being the mortgage value of the Mortgage Agreement of March 31st 2009 signed by All Seas Property 2 OOD (*and entered under Notary Deed No.155, volume II, reg. No. 1341, folio No.219 in the list kept for 2009 by Obreten Obretenov, Notary Public, licensed to practice in the region of Balchik and registered with the Notary Chamber under No.109 and recorded in the Registry Office with the Balchik Regional Court under Reg. No 1226, Deed No 40, volume I, folio No 366/2009 on March 31st 2009*) which mortgage was created and registered to secure the amounts due of EUR 2,500,000 arising out of Annex No.1 of 31st March 2009 to Bank Loan Agreement No. 014LD-L-000002 of 2nd October 2008 to secure FIB's rights arising out of the above BLA signed with PIDB2. By virtue of a sale and purchase Agreement for mortgage properties of 15th December 2009 APD assumed the above mortgage encumbrances.

The funds set aside would be kept intact until the legal dispute in case No.134/2013 in the docket of Targovishte District Court would have been resolved and a judgment in that regard would have entered in full force and effect.

- **The amount of EUR 8,000,000** being the mortgage value of the Mortgage Agreement of February 19th 2010 (*recorded under Notary Deed No.85, volume I, reg. No. 446, folio No.71 in the list kept for 2010 by Obreten Obretenov, Notary Public, licensed to practice in the region of Balchik and registered with the Notary Chamber under No.109 and recorded in the Registry Office with the Balchik Regional Court under Reg. No 247, Deed No 5, volume I, folio No 111/2010 on February 19th 2010*) which mortgage was created and registered to secure the amounts due arising out of Bank Loan Agreement No. 014LD-L-000006 of 29th December 2009 by APD to secure FIB's rights arising out of the above BLA signed with Asset Management EAD.

The funds set aside would be kept intact until the legal dispute in case No.133/2013 in the docket of Targovishte District Court would have been resolved and a judgment in that regard would have entered in full force and effect.

With a pending dispute over the application of Art.418 CPC in the bankruptcy proceedings under the provisions of Art.717n CA the Trustee in Bankruptcy filed request under Art.47, Para 2 LNA with reference to Art.5 CPC in the Bankruptcy Court on 30th August 2013 aksing the Court to rule on the prerequisites and the application of Art.717n CA in the hypothesis of contested claims for payment out of the bankruptcy estate. The Bankruptcy court needs to answer the following legal question on the merits of the dispute:

> *"Is the order to make payment of the constested claims out of the bankruptcy estate enforceable under Art.717n CA In the bankruptcy proceedings when such order to make payment was made subject to immediate and preliminary enforcement on the basis of documents only under Art.418 and with reference to Art.417, Para 2 CPC?"*

The Bankruptcy court was asked to define the common sense and the fundamental principles of the law as the provision of Art.47, Para 2 LNA prescribed. It was further noted that the only existing similar regulation with regards to the subject matter of the instant legal dispute was Regulation (EC) No.1896/2006 of the European Parliament and of the Council of 12th December 2006. It was alleged that pursuant to the provisions of Art.5, Para 4 of the Constitution and Decision No.12 of the Constitutional Court issued in case No.14/2012 on 2nd October 2012, respectively, said Regulation should be taken into consideration while interpreting and determining the scope of application of the provisions prescribed by Art.418 and Art.418 CPC.

## V. APPLICABLE LEGAL STANDARDS

## A. NATIONAL LAW

Chapter Four of the Commercial Act (CA) is the law applicable to dispute settlement and it sets forth the prerequisites and conditions that must be fulfilled in order to enforce the rule set forth in Art.717n CA and determine the powers of the Trustee in Bankruptcy in enforcing said provision whenever the amount due at dispute and issue as admitted under Art.418 CPC with reference to Art.417 (2) CPC is concerned.

The request addressed to the Bankruptcy Court was based on the powers defined and set forth in Art.5 CPC with reference to Art. 47 Para 2 CPC in circumstances where the existing legal standards, if any, are either ambiguous or contradictory; so the Court could decide the legal dispute and the matter at issue by resorting to the implied common sense of the law and relying on the basic principles of law, i.e. the Court should apply the provisions and standards of the Obligations and Contracts Act (Art.151 and Art.155, Art.166, Art.167, Art.170, Art.173 and Art.174) concurrently with the applicale legal norms of the Code of Civil Procedure (Art.404, Art.429, Art.464).

Defining the fundamental principles of law to which the rule in Art.5 CPC refers renders the Constitutional provisions fully enforceable and these apply directly as provided for in Art.5 Para 2 of the Constitution of the Republic of Bulgaria. Therefore, the provisions applicable here are the ones of Art.5 Para 4 setting forth the enforceability of the Community Law and the ones of Art.56 under which the right of remedy is irrevocable and directly exerciseable.

The understanding that the cash included in the bankruptcy estate of APD is private property and such private property is inviolable within the meaning of Art.17 Para 3 of the Constitution Art.17, unless alienation of such property is made under the procedures prescribed in that regard, is crucial for fully comprehending the common sense and the fundamental principal of law.

Another decisive factor of prejudicial importance for providing answers to the legal inquiries made under Art.5 CPC on which the resolution of the legal dispute on the applicability of Art.717n CA depends is the acertained fact that neither APD nor its Trustee in Bankruptcy are parties either to the claim proceedings initiated by FIB pursuant to Art.415 CPC or to any of the payment enforcement actions under Art.417 and Art.418 CPC, or to any of the claims asserted under Art.658 Para 1 (7) CA against FIB and the debtors under the writs of execution,

and that being the case is the only legal remedy available to protect the bankruptcy estate.

According to the rule in Art.717n CA in the event of sale of a property included in the bankruptcy estate and previously mortgaged as security for a third party's debt, the Trustee must pay to the Mortgage Creditor such proportional amount of the sale price as claimed in the writ of execution produced. Said legal norm contains no further provisions that might have resolved the issue of whether or not the amount due enforced against the bankruptcy estate is indisputable or what procedures should have been followed in case that any such amount due claimed was disputed, or what mortgage rights, if any, the Mortgage Creditor holds in said amount due.

The Trustee being the decision-making body where the distribution of the bankruptcy estate is concerned has certain powers as defined in Art.658 CA and yet the Trustee may not the one to decide any disputable matters or rights. According to the rule in Art.685 Para 2 CA the Trustee in Bankruptcy shall exercise their powers in conformity with the development of the insolvency proceedings and the court rulings. Given the suspended powers of the governing bodies of APD (declared bankrupt) in accordance with Art.717 Para 1 (3) CA the Trustee in Bankruptcy takes over the rights and the responsibilities of the governing bodies of the insolvent debtor. The powers of the trustee are expressly set forth in Art.658 Para 1 (7) and according to the latter the Trustee shall participate in the court proceedings of the debtor's enterprise and bring lawsuits on his behalf; the Trustee shall represent the debtor in all cases where the protection of the property rights included in the bankruptcy estate is at stake, as well as in challenging any rights claimed by third parties against the bankruptcy estate.

In the light of the special treatment of bankruptcy proceedings as being a universal action seeking to satisfy all cash claims against the bankruptcy estate the provisions of Art.691 CA define the notion of indisputability of cash amounts due as follows:
- Amounts due claimed and duly ascertained by virtue of a court judgment that has entered in full force and effect and which was issued after the date of the court order to institute bankruptcy proceedings to which the trustee in bankruptcy was a party, may not be challenged.

The Trustee acting as a governing body of the bankruptcy estate is vested with the powers determined in Art.658 CA, which powers, however, exclude the power to decide or hear disputable matters or rights.

Pursuant to Art.685 Para 2 CA the Trustee in Bankruptcy exercises their powers in conformity with the development of the insolvency proceedings and the court rulings.

The rule set in Art.717n CA uses the wording **"shall deliver"** where the power of the trustee to deliver the proportional part of the sale price over to the mortgage creditor, which has been supplied with a writ of execution in that regard is concerned.

The current CPC distinguishes between two basic types of writs of execution ("WE"):  (1) WsE issued under Art.404 CPC – *this is a WE issued pursuant to a court decision which has entered into full force and effect and ascertaining the*

*existence of the right subject to forced execution; and (2) WsE under Art.418 CPC - this is a WE issued pursuant to a documentary instrument containing a formal documentary allegation for an existence of a right subject to enforcement).*

The wording used that the trustee shall **"shall deliver the amount of money"** claimed and ordered to be paid means that the trustee's powers are circumscribed. Hence, the trustee has no power to hear legal disputes, the trustee may only bind the enforcement to cases where the amount due is unchallengeable/uncontested. Such amount due may be either unchallengeable within the meaning of Art.691 CA or one under Art.404 CPC.

Distinguishing between the two types of unchallengeable amounts due under Art.404 CPC and under 691 CA depends on the time when the court decides the legal dispute and acsertaines the existence of the amount due enforced under Art.717n CA. The criterion employed to make such a distinction is inferred from the provisions in Art.637 CA setting forth that as soon as bankruptcy proceedings are instituted under Art.630 CA all then current court proceedings are stayed and will be resumed and continued with the participation of the trustee.

The instruction contained in Art.717n CA and expressed by the phrase **"shall deliver the amount of money"** practically applies to cases when the trustee acts in furtherance of a WE issued pursuant to a court order that has entered in full force and effect and where the trustee is acting as a body having unchallengeable authority. The wording **"shall deliver"** is quite clear, unambiguous and imperative. In the event of challengeable/contested amounts due the trustee shall proceed with the request filed under At.717n CA using the procedures prescribed in Art,658 Para 2 CA or, in other words, as ordered by the Bankruptcy court.

The existence of a legal dispute where the basis, the amount of the payment claimed or its being due and payable are challenged, including cases of a dispute over a creditors' mortgage rights against the bankruptcy estate, defines the powers of the Bankruptcy court as set out in Art.658 Para 2 CA in resolving the matters at issue here:

- whether or not an order to make immediate and preliminary payment as issued on the basis of a documentary instrument against third parties is enforceable in bankruptcy proceedings?
- When a WE is issed on the basis of a document is this a sufficient condition to authorize a payment out of the bankruptcy estate or the amount claimed and being enforced should also meet the unchallengeability criterion?

The rule of Art.717h CA contains no provisions that might have applied to the situations provided for in Art. 418 CPC. The provisions of Art. 418 COC is a part of the norms governing individual enforcement proceedings.

According to the rule of Art.429 Para 3 CPC a WE for immediate and preliminary payment of amount due, which has been ascertained as enforceable on the basis of nonjudicial docuemnts, may be enforceable against third parties that have pledged or mortgaged a real property they own as security for such amount due. The trustee is a body of the bankruptcy estate and has certain powers vested in them by the law and is different from the mortgage debtor. The provisions of Art.717n CA govern the powers of the trustee.

The rule set forth in Art.464 CPC says that in the event of a dispute between the claimants in the individual enforcement proceedings over the distribution of the money collected by the enforcement agent as a reulst from the sale of the mortgaged property, no such distribution shall be made until the dispute has been resolved by virtue of a court judgment that has entered into full force and effect. FIB opposed to the application of the cited provision of Art.717n CA in the case at issue by invoking and emphasizing on the fact that competing creditor rights under Art.693 CA should be governed by the procedures of Art.722 CA, while those of the mortgage creditors should be determined under the procedures prescribed in Art.717n CA. The provisions of the latter neither contain any rules nor make any reference to the norm of Art.464 CPC. National laws contain no rules that might have provided an answer to the question as to how to proceed in cases where there is a dispute over the enforcement of payment claimed by a mortgage creditor whose rights and claimed amounts due are challengeable.

The Bankruptcy court, to which the questions regarding the application of Art.717n CA was referred, under circumstances where payment claims asserted against the bankruptcy estate were challengeable, has found a deficiency in the national legislation and such normative act may be rectified under the procedure prescribed in Art.5 CPC by enforcing the provisions of Art.47 Para 2 Law on the Normative Acts ("LNA") and by seeking to make the common sense and the fundamental principles of law perfectly clear. On account of the special rules that govern bankruptcy proceedings and making them a universal remedy to have monetary claims satisfied out of the bankruptcy estate the norms of the CPC regulating matters of individual enforcement may apply only in a subsidiary manner because they are limited by the requirements for clear and non-contradictory legal standards, meaning that such norms may be taken into consideration while applying Art.47 Para 2 CPC for the purposes of comparative law analysys only.

## VI. ARGUMENTS AND LEGAL CONCLUSIONS MADE BY THE PARTIES.

The Trustee in bankruptcy for APD argues that in the course of bankruptcy proceedings any enforcement of monetary claim, authorized for immediate and preliminary execution by a WE under Art.418 with reference to Art.417 (2) CPC and based on a non-judicial document, is unacceptable and wrong in the light of the ascertained challengeability of such payment claim. The Trustee's argument relies on Judgment 12 issued by the Constitutional Court of the Republic of Bulgaria in case 4/2012, where the Court held that the matter of constitutional conformity of the provisions of Art.418 and Art.417 (2) CPC entitling the banks to obtain the right of immediate and preliminary enforcement of payment on the basis of statements of account only should be assessed against the compatibility of such provisions with *Regulation (EC) No.1896/2006 of the European Parliament and of the Council of Europe of 12th December 2006* ("**Regulation (EC) No.1896/2006**") creating a *European* order for payment procedure. The arguments for unenforceability of the WE issued under Art.418 CPC in the proceedings pursuant to Art.717n CA within the context of the challengeability of the enforced payment claim are supported by the provisions set out in the above Regulation addressing the unchallengeability of payment claims for which a

European order for payment procedure has been issued and expressly stating that said Regulation shall not apply to bankruptcy proceedings. The Court further held that pursuant to Art.5 Para 4 of the Constitution the above Regulation is an integral part of the Bulgarian laws and its fundamental principles should apply to any decision or judgment made by a national court in providing clarifications on the common sense and the basic principles of law while making a decision under circumstances where national law fails to provide adequate legal standards in that regard.

In support of the theme that the payment enforced under Art.717n CA should comply with the unchallengeability requirement the Trustee referred to the rule set forth in Art.638 that provided for a stay of all payment order proceedings that were already underway at the time when the bankruptcy proceedings were instituted; such stay was mandatory regardless of the basis on which the WE had been issued; the Trustee futher relied on the provisions of Art.685 and Art.694 CA directing that in the event of an WE being Issued under Art.418 with reference to the causes of action under Art.417 CPC the creditor was under the obligation to ascertain the amounts due they claimed against the insolvent debtor if such creditor desired to become a creditor having status entitling him to have their claims satisfied out of the bankruptcy estate.

FIB supported their claim asserted under Art 717n CA by indicating that the provisions of Art.418 CPC direct an immediate enforcement of a payment claim presented by the WE issued in that regard and attached to the request for payment out of the assets of the bankruptcy estate. Further arguments were brought forward regarding the wording and language of Art.717n CA, which according FIB's interpretation, directed the Trustee to deliver the amount due as claimed in the WE.

## VII.   ARGUMENTS IN SUPPORT OF THE REQUEST FOR PRELIMINARY RULING

The dispute over the application of Art. 717n CA is not over the prerequisites specified therein. The existence of a WE issued under Art.417 with reference to Art. 418 (2) CPC and requiring immediate payment of the amounts due owed by FIB is indisputable. Furthermore, it is true that the contractual mortgages on which the Bank based their payment demand have been created as security for the Bank's amounts due arsing from the bank loan agreements signed bweteen and by the Bank and the third parties PIDB2 and Asset Management EAD.

It is also indisputable that the cash amounts due owed to FIB and declared as sucject to immediate and preliminary payment in the ex parte proceedings are the subjects matter of now pending legal disputes in the actions brought by the Bank under Art 415 CA – cases of Nos. 490 and 360 in the docket for 2012 kept at the Varna District Court, as well as case No.69/2013 in the Targovishte District Court.

It is an indisputable fact that the Trustee having powers as specified in the provisions of Art.658 (7) CA and acting as the representative of the insolvent trader, because the powers of APD's Executive Director have been suspended by virtue of Art.711 (3) CA, has filed for actions for negative declaratory judgment against FIB and the Debtors under the WsE seeking to ascertain that all payments

claimed under said WsE were non-existent, that the Bank was not entitled to mortgage rights of payment out of the assets of the bankruptcy estate and that the Bank was not entitled to seek payment by invoking the procedures prescribed in Art.717n CA against the cash proceeds in the bankruptcy estate from the sale of the properties encumbered with mortgages.

The dispute referred to the Bankruptcy court is over the application of Art.717n CA and is a legal one. In order to make its judgment and in the absence of proper legal standards in that regard the Bankruptcy court is obligated under Art.5 CPC and Art.47 Para 2 LNA to rule by resorting to the common sense and the fundamental principles of the law related to the matter of applicability of the WE for immediate payment issued on the basis of a non-judicial document and claimed by a mortgage creditor against the bankruptcy estate under the conditions of a disputable amount due and disputable mortgage rights.

The constitutional conformity of Art.417 and Art.418 CPC was declared by virtue of Judgment No. 12 of the Constitutional Court issued on 2nd October 2012 in case 4/2012. The Constitutional Court analysed whether the ex parte proceedings complied with **Regulation (EC) No.1896/2006** which is a part of the domestic legislation and takes priority over any conflicting standards of domestic laws according to Art.5 Para 4 of the Constitution.

As this Court Panel noted domestic laws did not contain provisions that might have found a resolution of the legal dispute over the applicability of Art.717n CA. The special regime of the bankruptcy proceedings being a universal remedy to have monetary claims satisfied out of the bankruptcy estate does not allow application by analogy of the legal standards governing the individual enforcement of payments because of the existence of interests presented in the bankruptcy proceeding that compete each other where the cashing of the bankruptcy estate assets and satisfying debts to creditors is concerned. This is a multi-faceted competition between creditor interests pursued under Art.693 CA, the ones under Art.717n CA and those of the insolvent trader. The legal norms governing the individual enforcement of payment proceedings may apply only in a subsidiary manner and this is what gives rise to contradictory application of ambiguous secondary legislation acts and for such reasons the existing provisions of Art.418 et seq. CPC must be limited to a comparative legal analysis only where the subject matter of this legal dispute is concerned. Therefore, the instant Court held that making a request for a preliminary ruling to the European Court of Justice seeking to have the abovementioned Regulation (EC) interpreted would be crucial for sheding a light on and clarifying the fundamental principles and the common sense of the law, which in turn, would make it possible for the Court to deliver a judgement on the matter at issue here, i.e. the application of Art. 717n CA when the amount due claimed and its immediate payment had been granted under Art.417 with reference to Art. 418 (2) CPC was disputable, in the first place.

A preliminary ruling is needed because **Regulation (EC) No.1896/2006** being a part of the domestic legislation by virtue of Art. 5 Para 4 of the Constitution contains rules and principles that are relevant to the questions related to the competition between the order for individual payment and the bankruptcy proceedings which is a universal action seeking to satisfy cash claims. Along the same line of reasoning the clauses governing the unchallengeability of the payment order and the limited scope of application of the European order for payment procedure as set out in Art.2 (2)(b) of the above Regulation where

bankruptcy proceedings are concerned, are of primary importance within the meaning of Art.47 Para 2 LNA for the interpretation and enforcement of the law in compliance with Art. 5 CPC. In view of the rule of unchallengeability within the meaning of Art.691 CA said Regulation is equally relevant to the court-approved amounts due under Art.685 et seq. CA and subject to satisfaction in the bankruptcy proceedings.

Pursuant to Art.47 Para 2 LNA enforceable within the meaning of the provisions of Art.5 CPC prior to deciding on the legal dispute before it the Court must address all matters requiring clarifications as to the fundamental principles and the common sense of the law in any of the following cases:

- the legal standard is incomplete and the matters, which such standard fails to govern, are governed by provisions regulating similar situations as long as the purpose of such standard is properly served. In the absence of such specific provisions said matters will be governed by the basic principles inherent to the Bulgarian law.

For the sake of accuracy it must be noted that pursuant to the provisions of Art.5 Para 4 of the Constitution interpreting and clarifying the fundamental principles and the common sense of law should be made against the background of all international legal acts, which are part of the Bulgarian national laws and which Bulgaria is a signatory to.

The following recitals are relevant to the application of Art.47 Para 2 of the LNA:

1. Recital (6) in the preamble and the provisions of Art.1 of the Regulation setting the requirements for unchallengeability of outstanding debts within the European Union.

2. Recital (10) in the preamble and the provisions of Art.26 laying down the independency of the national law of each EU member-state, any of the procedures of which a claimant is free to resort to in order to deal with matters of recovering of uncontested claims within the EU.

3. The provisions of Art.2 (2)(b) of the Regulation indicating to what type of proceedings the Regulation shall not apply, to wit «bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings.»

For the foregoing reasons the instant Court needs to refer to the EU Court and make a request for an interpretation of the issues below:

1. How should the notion of "unconsented/unchallengeable debt" be contrues and interpreted within the meaning of recltal (6) of the preamble and Art.1 of **Regulation (EC) No.1896/2006?**

2. Is it true that Art.2 (2)(b) of the Regulation should be construed narrowly and be enforceable to contestable/challengeable payment claims only or it applies to the uncontested claims, as well, whenever the national law of a EU member state where the debt is outstanding fails to provide for the enforcement of a payment order in the course of bankruptcy proceedings instituted against an entity against whose bankruptcy estate said payment is claimed;

3. Do the limited scope of the provisions of Art.2 (2)(b) of the Regulation indicating to what type of proceedings the Regulation shall not apply, such as: «*bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings*» is only applicable to the institution of such proceedings, or the limitation spreads over the entire process and all its pahses and stages as prscribed by the national law of such EU member state?

4. According to the doctrine of the supremacy of the Community law and in the absence of adequate regulation in the national law of a EU member state is it possible for a national court of the respective EU member state hearing the bankruptcy case, in which a payment claim is asserted against the bankruptcy estate of the insolvent entity, to proceed pursuant to recital (10) of the preamble and the provisions of Art.26 of the Regulation and issue a judgement different from and contrary to the basic principles laid down in the above Regulation?

In view of the foregoing, this Court RULED as follows:

MAKES A REQUEST FOR PRELIMINARY RULING to the European Court of Justice pursuant to Art.267 Paragraph One (b) of the Treary on the Functioning of the European Union on the following matters:

1. What is the interpretation of the notion of "uncontested claim" within the meaning of of Recital (6) of the Preamble and the provisions of Art.1 of **Regulation (EC) No.1896/2006?**

2. In cases when the national law of an EU member state where the payment claim is asserted fails to provide clear and adequate rules for enforcement of the payment order within bankruptcy proceedings instituted against an entity against whose estate such payment order should be enforced, is the limitation set in Art.2 (2)(b) of **Regulation (EC) No.1896/2006** subject to a narrow interpretation, thus applying only to contested/challengeable payment claims or such limitation applies to uncontested claims as well?

3. How should the provisions of Art.2 (2)(b) of the Regulation be construed with regards to the type of proceedings the Regulation shall not apply to, such as: «*bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings*», in other words, is the limitation applicable to the institution of such proceedings only, or such limitation spreads over the entire process and all its pahses and stages as prscribed by the national law of such EU member state?

4. According to the doctrine of the supremacy of the Community law and in the absence of adequate regulation in the national law of a EU member state is it possible for a national court of the respective EU member state hearing the bankruptcy case, in which a payment claim is asserted against the bankruptcy estate of the insolvent entity, to proceed pursuant to recital (10) of the preamble and the provisions of Art.26 of the Regulation and issue a judgement different from and contrary to the basic principles laid down in the above Regulation?

Pursuant to Art.631 Para 1 of the Civil Procedure Code the proceedings instituted by First Investment Bank AD pursuant to Art.717n of the Commercial Act in case 14/2011 ARE SUSPENDED   until the Court of Justice of the European Union makes ist ruling.

The amount of BGN 97,500,000 being the proceeds form the sale of a mortgaged property IS TO BE SET ASIDE and deposited in a special account until the Court of Justice of the European Union has delivered its ruling on the reference.

This Ruling is unappelable.

<div align="center">

PRESIDING JUDGE: *Signed ill.*
*Round seal of the Targovishte District Court*
</div>

*A rectangular seal affixed on each page hereof reading*:
"The District Court of Targovishte; TRUE COPY!"

*An inscription made by hand reading*:
"This is a true copy of the original document attached to case 14/2011 in the docket of the Targovishte District Court".

Secretary of the Court: *Signed ill.*
*Round seal of the Targovishte District Court*

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Ruling No.179 of the Targovishte District Court dated 2nd September 2013. This translation has 18 pages.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*





# О П Р Е Д Е Л Е Н И Е

№..179...2.09.2013 година Търговище

### В ИМЕТО НА НАРОДА

**ТЪРГОВИЩКИЯТ ОКРЪЖЕН СЪД**        търговско отделение

на втори септември       две хиляди и тринадесета година

в закрито съдебно заседание в състав:

### ПРЕДСЕДАТЕЛ: АНГЕЛИНКА НИКОЛОВА

Секретар Мариела Коева

като разгледа докладваното       от Съдия Николова

т.д. № 14       по описа за 2011 година

и за да се произнесе, взе предвид следното:

Производството по д.н.№14 по описа за 2011г. има за предмет търговска несъстоятелност на "Еър Пропърти Девелопмънт" АД, намиращо се във фазата на постановено решение по чл.711 от ТЗ. В хода на производството е осъществена продажба на активи от масата на несъстоятелността, върху които са били вписани ипотечни тежести в полза на "Първа Инвестиционна Банка" АД, "Сийк Фаундейшън" ЛЛС /САЩ/ и "УниКредит Булбанк"АД, обуславящи приложението на чл.717н от ТЗ.

По делото е постъпила молба от "Първа Инвестиционна Банка" АД и от "Сийк Фаундейшън" ЛЛС с правно основание чл.717н от Търговския закон (ТЗ) за изплащане на припадащата се част от цената, на която са продадени ипотекираните имоти, включени в масата на несъстоятелността. Всяка от молбите е придружена с издадени изпълнителни листи за предварително и незабавно изпълнение на парично вземане, които изпълнителни листи са издадени с правно основание чл.418, във връзка с чл.417 от Граждански процесуален кодекс (ГПК),т.е. на несъдебно изпълнително основание.

Синдикът на "Еър Пропърти Девелопмънт – в несъстоятелност" АД, като орган на масата на несъстоятелността, излагайки съображения за спорност на предявеното от "Първа Инвестиционна Банка" АД парично вземане за изплащане по реда на чл.717н от ТЗ, отправя искане пред съда за разрешаване заделянето на средства от масата на несъстоятелността до размера на стойността посочена в ипотечните активе. Искането е за временно заделяне на средствата, за срок до приключване на съдебните спорове, относно правото на "Първа Инвестиционна Банка" АД да изпълнява спрямо масата на несъстоятелността. Мотивира се със съображения, че по реда на 717н от ТЗ подлежат на изпълнение паричните вземания, ползващи се с безспорност и синдикът като орган , на който по закон са възложени правомощия със запазване на масата на несъстоятелността, съответно на представените при нея интереси на кредиторите по чл.693 от ТЗ и на несъстоятелния търговец, носи отговорност – административна, имуществена и наказателна, когато в резултат на неговите действия или бездействия се причинят вреди на тези интереси

ОКРЪЖЕН СЪД
-гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

1

(чл.660 и чл.663 от ТЗ) . Синдика отправя молба до съда по несъстоятелността на основание чл.658, ал.2 ТЗ, формулираща искане да се произнесат по реда на чл.5 от ГПК въпросите, свързани с правомощията на синдика по приложението на чл.717н от ТЗ в случаите, когато паричното вземане, представено за изплащане от масата на несъстоятелността е допуснато за незабавно и предварително изпълнение на несъдебно изпълнително основание по чл.418, във връзка с чл.417, т.2 от ГПК, и едновременно с това е оспорено пред съд.

Съдът по несъстоятелността, като съобрази, че е налице спор, относно предпоставките за изпълнение на предявеното от "Първа Инвестиционна Банка" АД искане за плащане, спрямо масата на несъстоятелността на "Еър Пропърти Девелопмънт" АД, процедирано по реда на чл.717н от ТЗ, преценява, че произнасянето на този спор изисква приложението на чл.47, ал.2 от ЗНА във връзка с чл.5 от ГПК, свеждащо се до установяване по тълкувателен път на основните начала на правото и общия разум на закона. Приложението на чл.717н от ТЗ в разглежданата хипотеза на спорност на изпълняваното парично вземане, не е снабдено със съответното нормативно решение, и това положение на нормативна празнота е определящо за необходимостта по тълкувателен път, на основата на основните принципи на правото и общия разум на нормите уреждащи специализацията на производството по несъстоятелност, да се даде отговор на въпроса, свързан с приложимостта на индивидуалното принудително изпълнение, допуснато по чл.418 от ГПК в производството по чл.717н от ТЗ, принципно и конкретно в тясната хипотеза на спорност на изпълняваното парично вземане.

В този ред и съобразено с разпоредбата на чл.47, ал.2 от Закона за нормативните актове (ЗНА), съдът преценя за необходимо да отправи преюдициално запитване пред Съда на Европейския съюз, във връзка с тълкуване и изясняване на основните принципи и общия разум, на които е изграден Регламент (ЕО) № 1896/2006 НА ЕВРОПЕЙСКИЯ ПАРЛАМЕНТ И НА СЪВЕТА от 12 декември 2006г.

Сезираната компетентност на съда по несъстоятелността е определена от нормата на чл.628 от ГПК, като съд, пред който са висящи преюдициални въпроси по тълкуване на правото, чието решаване е от обуславящо значение за правилното произнасяне на правния спор по приложението на чл.717н от ТЗ.

Правомощията на съда по несъстоятелността, определени с нормата на чл.267 от Договора за функциониране на Европейския съюз, във връзка с преюдициално запитване до Съда на ЕС, относно тълкуване на РЕГЛАМЕНТ (ЕО) № 1896/2006 НА ЕВРОПЕЙСКИЯ ПАРЛАМЕНТ И НА СЪВЕТА от 12 декември 2006г., са изрично сезирани с искането на Синдика, което искане е обвързано с приложението на чл.5 от ГПК. В предметно отношение, установяването на общия разум на закона и основните принципи на правото, е определено от формулирания по същество правен въпрос - Допустимо ли е изпълнение по реда на чл.717н от ТЗ, спрямо масата на несъстоятелността в производството по несъстоятелност, на спорното парично вземане, допуснато до предварително и незабавно изпълнение въз основа на несъдебно изпълнително основание, по чл.418, във връзка с чл.417, т.2 от ГПК.

ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

2

Във връзка с това изрично искане, сезиращо компетенциите на съда по несъстоятелността, определени в чл.5 от ГПК, във връзка с нормата на чл.47, ал.2 от ЗНА, Търговищкия окръжен съд, търговско отделение, в настоящия състав, счита за необходимо да отправи до Съда на Европейския съюз запитване, относно тълкуването по основните принципни положения и общия разум на РЕГЛАМЕНТ (ЕО) № 1896/2006 НА ЕВРОПЕЙСКИЯ ПАРЛАМЕНТ И НА СЪВЕТА от 12 декември 2006г., наричан по –долу "Регламента". Тази необходимост се преценява с оглед нуждата от приложението на чл.47, ал.2 от ЗНА, във връзка с чл.5 от ГПК, да се определи общия разум на закона и основните принципи на правото, относими към предмета на повдигнатия правен спор по приложението на чл.717н от ТЗ, като се съобразят и принципите и основните начала на Регламента, приобщен към националната законова рамка по силата на чл.5, ал.4 от Конституцията на Република България.

Съдът извършва преценката си за необходимост от приложимостта на преюдициалното запитване, съобразявайки, че макар и Регламента да се отнася изключително до европейската заповед за плащане, тълкуването на принципите и основните положения, на които са изградени съдържащите се в него нормативни решения, ще позволи в условията на нормативна празнота във вътрешното законодателство, повдигнатия правен спор, относно приложимостта на чл.717н от ТЗ, да бъде произнесен въз основа на приложението на чл.47, ал.2 от ЗНА. Регламента е единствената правна уредба, чийто нормативни решения по своя предмет стоят най-близко и кореспондират на същността на висящия по д.н.№14/2011г. правен спор.

По тези съображения, съдът формулира съдържанието на преюдициалното запитване, както следва:

**I. Страни по делото/ по спора/:**

1. Кредитори по 717н от ТЗ:

- "Първа Инвестиционна Банка" АД, ЕИК 831094393, със седалище и адрес на управление: гр. София 1797, район Изгрев, бул. "Драган Цанков" № 37, представлявано от изпълнителните директори Мая Иванова Ойфалош и Светослав Стоянов Молдовански.

- "УниКредит Булбанк" АД, ЕИК ЕИК 831919536, със седалище и адрес на управление: гр.София, район Възраждане, пл. «Св.Неделя» № 7, представлявано от Андреа Казини и Левон Карекин Хампарцумян.

- "Сийк Фаундейшън"ЛЛС, дружество с ограничена отговорност регистрирано съобразно законите на щат Мисури, САЩ, под номер LCO875133 съгласно регистъра воден от Канцеларията на Секретаря на щата Мисури, със седалище и адрес на управление: 404 Тимбъридж драйв, Сейнт Питърс, Мисури 63376, САЩ, представлявано от Главния изпълнителен директор Джефри Л.Макланахан чрез пълномощника си адвокат Захари Томов, вписан в адвокатска колегия гр.Варна, със съдебен адрес за кореспонденция в Република България: чрез пълномощника Адвокат Захари Томов, адвокатска колегия –



3

гр.Варна, адрес на кантора: гр.Варна, улица "Параскева Николау" №4, ет.2, офис №3.

2. Несъстоятелен търговец по чл.711 от ТЗ.

-"Еър Пропърти Девелопмънт – в несъстоятелност" АД, ЕИК 200958720, със седалище и адрес гр. Търговище 7700, ул. "Лилия", бл. 4, тяло Б, ет. 1, ап. 2, представлявано от изпълнителния директор Филип Робърт Харис с десезиран правомощия по чл.711, ал.1, т.3 от ТЗ, представляван от Адвокат Мария Гаврилова Накова, Софийска адвокатска колегия, с адрес на кантора: гр.Ботевград 2140, улица "Севаст Огнян" № 4, ет.2, офис 6.

3. Синдик на "Еър Пропърти Девелопмънт – в несъстоятелност", назначен с Решение № 16/ 30.05.2011 г., постановено по чл.630 от ТЗ в производството по д.н. №14 по описа за 2011г., Ганка Янева Кольовска, с адрес: гр. София 1797, кв. "Мусагеница", бул. "Климент Охридски" № 1А, ет. 2, ап. 2.

## II. Заинтересовани страни от спора : Кредитори по чл.722 от ТЗ:

- ТБ "УниКредит Булбанк" АД, ЕИК 831919536, със седалище и адрес на управление: гр.София, район Възраждане, пл. "Св.Неделя" № 7, представлявано от Андреа Казини и Левон Карекин Хампарцумян.

- Национална агенция по приходите, Булстат 131063188, със седалище и адрес на управление: гр.София, бул. "Княз Дондуков" № 52, представлявано от Бойко Атанасов.

- "Асет Мениджмънт" ЕАД, ЕИК 103921587, със седалище и адрес на управление: гр. Търговище, ул. "Цар Иван Асен" № 1, партер, представлявано от Николай Георгиев Хубенов и Антон Георгиев Димитров.

- "Ол Сийз България" ООД, ЕИК 103318621, със седалище и адрес на управление: гр.Варна, район Приморски, ул. "Никола Вапцаров" № 3, вх.Г, ет.8, ап.21, представлявано от Чавдар Ангелов Ангелов и Калина Стоянова Касабова.

- "Си Джи Еф – акционерна общност" АД, ЕИК 125561017, със седалище и адрес на управление: гр. Варна, район Приморски, ул. "Никола Вапцаров" № 3, вх.Г, ет.8, ап.21, представлявано от Чавдар Ангелов Ангелов.

- "Силвър Бийч" ЕАД, ЕИК 200432364, със седалище и адрес на управление: гр. Варна, район Приморски, ул. "Никола Вапцаров" № 3, вх.Г, ет.8, ап.21, представлявано от Калина Стоянова Касабова.

- "Рудерсдал" ЕООД, ЕИК 148123309, със седалище и адрес на управление: гр.София, ул. "Княз Борис I", № бл.47, ет.1, ап.4, представлявано от Карстен Михаел Бергер.

- "Кота Енерджи" ЕАД, ЕИК 201469650, със седалище и адрес на управление: гр. Варна, бул. "Сливница", № 70, ет.2, ап.4, представлявано от Георги Димитров Георгиев.



ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

- Чавдар Ангелов Ангелов, с адрес по местоживеене: гр.Варна, ул. «Ген Столетов» № 11, ет.2, ап.3.

### III. Предмет на правния спор.

Синдика оспорва правото на претендираното от "Първа Инвестиционна Банка" АД по чл.717н от ТЗ право на принудително изпълнение, спрямо масата на несъстоятелността, на паричното вземане, допуснато на несъдебно изпълнително основание по чл.418, във връзка с чл.417, т.2 от ГПК, до предварително и незабавно индивидуално изпълнение. Оспорването е по причина на наличието на висящ съдебен спор, относно съществуването на изпълняваното право и ипотечните права на "Първа Инвестиционна Банка" АД, определящи същите като спорни.

„Първа Инвестиционна Банка" АД твърди, че Синдика е задължен да извърши плащането претендирано по чл.717н от ТЗ парично вземане, въз основа на издадения по чл.418, във връзка с чл.417, т.2 от ГПК в полза на банката изпълнителен лист, независимо от спорността на това парично вземане.

"Еър Пропърти Девелопмънт– в несъстоятелност" АД оспорва съществуването на изпълняваното от "Първа Инвестиционна Банка" АД парично вземане, както и ипотечните права на банката, свързани със спорното парично вземане, и отрича правото на изпълнение, спрямо масата на несъстоятелността по реда на чл.717н от ТЗ. В застъпеното пред съда по несъстоятелността становище от дата 06. 08. 2013 г., процесуалния представител на несъстоятелното дружество Адвокат Мария Накова, излага подробни съображения, свързани с положението, че паричните средства в масата на несъстоятелността съставляват притежания, ползващи се с право на защита и като инвестиционна собственост на дружеството майка – Еър Лоджистикс Лимитед Инк, по смисъла на Договора за насърчаване и взаимна закрила на инвестициите между България и САЩ, същите се ползват с правото на защита и се третират в режим на най-облагодетелствана нация, в условията на абсолютна забрана за експроприация.

### IV. Фактическа обстановка.

С Решение № 16, постановено по чл.630 от ТЗ на дата 30.05.2011 г., е открито производство по несъстоятелност на "Еър Пропърти Девелопмънт" АД и назначен постоянен синдик на дружеството.

С Решение № 122, постановено по чл.711 от ТЗ на дата 15.06.2012 г., е отхвърлен оздравителния план, предложен за "Еър Пропърти Девелопмънт" АД, дружеството е обявено в несъстоятелност, като е наложена обща възбрана и запор върху имуществото включено в масата на несъстоятелността, правомощията на представителните му органи са десезирани и е постановено пристъпване към осребряване на имуществото, включено в масата на несъстоятелността.



ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

5

На основание чл.717 от ТЗ, в хода на производството по т.д.№14/2011г. Синдикът е извършил чрез търг продажба на обособена част от масата на несъстоятелността, съставляваща три недвижими имота, обединени в общо функционално цяло, съобразно отреденото за тях предвиждане за жилищно застрояване. Тези имоти към момента на продажбата са били обременени с ипотечни тежести. В аспект на конкретния правен спор, касае се за договорни ипотеки учредени за обезпечаване на заключени договори за кредит между "Първа Инвестиционна Банка" АД и трети лица – "Порт Инвестмънт Девелопмънт – България 2" ЕАД и "Асет Мениджмънт" ЕАД. В резултат на извършената от Синдика продажба на тези терени, която покупко-продажба е извършена с участието на "Първа Инвестиционна Банка" АД като купувач, в масата на несъстоятелностста са постъпили 97 500 000 лева. Продажбата е одобрена с Постановление за възлагане № 270 от дата 15.12.2012 г., издадено от съда по несъстоятелността в производството по д.н.№14/2011г., понастоящем влязло в законна сила.

Предявеното от "Първа Инвестиционна Банка" АД искане по чл.694 от ТЗ, банката да бъде приета като кредитор на "Еър Пропърти Девелопмънт" АД в производството по несъстоятелност, предмет на д.н. №14/2011г., въз основа на паричните вземания за които са издадени предявените по чл.717н ТЗ изпълнителни листи, е отхърлено с влязло в законна сила решение, постановено по д.н. 82 по описа на Търговицки окръжен съд за 2011г.

"Първа Инвестиционна Банка" АД, на дата 21. 05. 2013 г. е предявила в производството по д.н.№14/2011г. на основание чл.717н от ТЗ, искане за плащане на парични вземания, по които на несъдебно изпълнително основание – извлечение от счетоводна сметка за неиздължени кредитни задължения по главница, лихви, такси и комисионни и разноски, е допуснато по реда на чл.418, във връзка с чл.417, т.2 от ГПК, предварително и незабавно изпълнение. Предявени по чл.717н от ТЗ са следните изпълнителни листи:

Изпълнителен лист от 28.06.2012г., издаден въз основа на произнесените основания със заповед за изпълнение № 4932 от 28.06.2012 г., издадена по чл.417,т.2 ГПК, в производството по ч.гр.д. № 8985/2012 г. по описа на ВРС – XVI състав, за сумата 31 724 900 евро, допускаща принудително изпълнение, спрямо "Порт Инвестмънт Девелопмънт – България 2" ЕАД по договор за банков кредит № 39 КР–АА-2510/22.11.2007 г., на начислените по анекс №4 на 15.12.2009г. парични вземания за: главница 20 000 000 евро; просрочена наказателна лихва за периода 25.10.2010г.-21.06.2012г. в размер на 11 724 900 евро; разноски по заповедното производство – 1 240 970, 22 лева.

Изпълнителен лист издаден на 25.06.2012г. въз основа на произнесените основания със заповед за изпълнение № 4868 от 25.06.2012 г., издадена по чл.417, т.2 ГПК, в производството по ч.гр.д. № 8968/2012 г. по описа на ВРС – IX състав, за сумата 3 965 612.50 евро, допускаща принудително изпълнение, спрямо "Порт Инвестмънт Девелопмънт – България 2" ЕАД на парично вземане, начислено по Анекс №2/15.12.2009г. сключен към договор за банков кредит № 014LD-L-000002/02.10.2008г., вкючващо: главница – 2 500 000 евро,


ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

просрочена наказателна лихва за периода 25.10.2010г.-21.06.2012г. в размер на 1 465 612,50 евро, разноски по заповедното производство – 155 121, 28 лева.

. Изпълнителен лист издаден на 26.06.2012г. въз основа на произнесените основания със заповед за изпълнение - № 4886/26.06.2012 г., издадена по чл.417 ГПК, в производството по ч.гр.д. № 8974/2012 г. по описа на ВРС- XXXIII състав, допускаща принудително изпълнение, спрямо "Асет Мениджмънт" ЕАД на парично вземане в размер на 10 570 936,45 евро, представляващи 6 950 118, 02 евро – изискуема главница и 3 620 818,43 евро – просрочена наказателна лихва за периода 25.10.2010г. – 21.06.2012г., по договор за банков кредит № 014LD-L-000006/29.12.2009 г.

Поради оспорване от страна на длъжниците на вземанията по изпълненителните листи, издадени на несъдебно изпълнително основание в полза на "Първа Инвестиционна Банка" АД, банката е предявила искове с правно основание чл.415 от ГПК за установяване на вземанията, допуснати до предварително и незабавно изпълнение. Исковете са предявени, съответно :

Иск вх. номер 2935 от дата 24.04.2013 г. за установяване вземането по изпълнителния лист издаден на 28.06.2012г. за сумата от 31 724 900 евро, с ответник по иска длъжника по изпълнението "Порт Инвестмънт Девелопмънт – България 2" ЕАД. По този иск е образувано съдебно дело номер 69 по описа на Търговищки окръжен съд за 2013г.

Иск с вх. номер 6871 от дата 28.02.2013 г. за установяване вземането по изпълнителния лист издаден на 25.06.2012г. за сумата от 3 965 612.50 евро, с ответник по иска длъжника по изпълнението "Порт Инвестмънт Девелопмънт – България 2" ЕАД. По този иск е образувано съдебно дело номер 360 по описа на Варненски окръжен съд за 2013г.

Иск с вх. номер 8805 от дата 15.03.2013 г. за установяване вземането по изпълнителния лист издаден на 26.06.2012г. за сумата от 10 570 936,45 евро, с ответник по иска длъжника по изпълнението " Асет Мениджмънт" ЕАД. По този иск е образувано съдебно дело номер 490 по описа на Варненски окръжен съд за 2013г.

В хода на производството по д.н.14/2011 г., във връзка с искането на "Първа Инвестиционна Банка"АД по чл.717н от ТЗ за плащане на паричните вземания по посочените изпълнителни листи, са постъпили възражения от страна на длъжниците по изпълнението "Порт Инвестмънт Девелопмънт – България 2" ЕАД и "Асет Мениджмънт" ЕАД, оспорващи съществуването на изпълняваното вземане.

Кредиторите по чл.693 от ТЗ, с приети вземания за удовлетворяване в производство по несъстоятелност открито за "Еър Пропърти Девелопмънт" АД са свикали и провели събрание на 12.08.2013г., на което са гласували решения, препоръчващи на Синдика като орган на масата на несъстоятелността в условията на десезирани правомощия на органите на несъстоятелния търговец, да упражни възложените по закон правомощия за запазване и защита на масата на несъстоятелността, и да заведе съдебни дела за установяване



несъществуването на предявените по чл.717н от ТЗ парични вземания и несъществуването на ипотечните права на "Първа Инвестиционна Банка" АД,по които се предявява искането за плащане.

Синдикът, въз основа на препоръчителните решения на събранието на кредиторите, с оглед на възложените му от закона правомощия и в условията на десезирани компетенции на представителни органи на "Еър Пропърти Девелопмънт" АД, е предявил на дата 13.08.2013г. три отрицателни установителни иска срещу "Първа Инвестиционна Банка" АД и длъжниците по изпълнителните листа – "Порт Инвестмънт Девелопмънт – България 2" ЕАД и "Асет Мениджмънт" ЕАД. Предмет на исковата защита е да се установи, че "Първа Инвестиционна Банка" АД не притежава право да получи плащане от масата на несъстоятелността по реда на чл.717н от ТЗ, по причина на това, че не съществуват паричните вземания, допуснати до предварително и незабавно изпълнение с издадените по извлечение от сметка изпълнителни листи и по причина, че банката не притежава ипотечни права, спрямо масата на несъстоятелността. По тези искове са образувани съдебни производства – д.н.133 / 2013, д.н. 134 /2013 и д.н. 135 /2013г., всичките по описа на Търговищки окръжен съд.

На дата 19.08.2013 г. с молба вх. № 3751 Синдикът е поискал от съда по несъстоятелността да разреши заделяне на средства от масата на несъстоятелността до размера на стойностите, за които са вписани ипотечните актове представени от "Първа Инвестиционна Банка" АД в производството по чл.717н от ТЗ, с оглед обезпечаване изхода на съдебните спорове и осигуряване изпълнението на съдебните актове, свързани с установяване съществуването на изпълняваните от банката парични вземания и ипотечни права, съставляващо преюдициално положение, с оглед произнасянето по претендираното от "Първа Инвестиционна Банка" АД право да получи погасително плащане от масата на несъстоятелността.

При тези правни положения, със свое писмо вх.№ 092/ 16.08.2013г., "Първа Инвестиционна Банка" АД, уведомява Синдика, че ще преприеме действия за наказателно преследване спрямо него, в случай, че от постъпилите при продажбата иа активите от масата на несъстоятелността на "Еър Пропърти Девелопмънт" АД бъдат извършени плащания към други кредитори, извън предявените от банката права по чл.717н ТЗ.

Съответно с писмо вх.№ 3812 / 23.08.2103г., кредиторите с приети вземания за удовлетворяване в производството по д.н.№14/2011г., са настояли във връзка с отговорността на Синдика, да бъдат заделени средства от масата на несъстоятелността до размера на ипотечните стойности в пределите до които следва да се лимитират претенциите на "Първа Инвестиционна Банка" АД, представени по чл.717н от ТЗ и разпореждаието с тези средства да се определи едва с произнасянето на съдебните спорове, предмет на д.н.133 / 2013г., д.н. 134 / 2013г. и д.н. 135 /2013г. по описа на ТОС, с влезли в законна сила съдебни актове.



Със молба вх.№ 3751/19.08.2013г., Синдикът е отправил искане по д.н.№14/2011г. до съда по несъстоятелността да бъде разрешено да се заделят до приключване на съдебните спорове, спрямо претенциите по чл.717н от ТЗ на "Първа Инвестиционна Банка" АД, следните парични средства от масата на несъстоятелността :

**Сумата от 20 000 000 евро**, представляваща стойността на Договорна ипотека от дата 31.03.2009г., нотариален акт № 156, том II, рег.№ 1342, дело № 220, по описа за 2009 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана под вх.рег.№ 1227 от 01.04.2009 г., Акт 41, том I, дело № 367/2009 г. в Службата по вписванията при Районен съд –гр.Балчик, учредена и вписана за обезпечаване вземанията, произтичащи от Анекс №3/31.03.2009г., сключен към кредит № 39 КР–АА-2510/22.11.2007 г., учредена от "Ол Сийз Пропърти 2" ООД за обезпечаване на правата на "Първа Инвестиционна Банка" АД, произтичащи от посочения договор за кредит, сключен с "Порт Инвестмънт Девелопмънт – България 2" ЕАД. Тези ипотечни тежести са преминали върху "Еър Пропърти Девелопмънт" АД по силата на сключен договор за покупко-продажба на ипотекирани имоти от дата 15.12.2009г.

Заделянето е поискано до приключване с влязъл в законна сила съдебен акт на правния спор, предмет на д.н. 135 / 2013г. по описа на Търговищки окръжен съд.

**Сумата от 2 500 000 евро, представляваща стойността на** Договорна ипотека от 31.03.2009г., нотариален акт № 155, том II, рег.№ 1341, дело № 219 по описа за 2009 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег.№ 1226 от 31.03.2009 г., Акт № 40, том I, дело № 366/2009 г., учредена и вписана за обезпечаване на парично вземане в размер на 2 500 000 евро, произтичащо от Анекс №1/31.03.2009г., сключен по кредит № 014LD-L-000002/02.10.2008г., учредена от "Ол Сийз Пропърти 2" ООД за обзепечаване на правата на "Първа Инвестиционна Банка" АД, произтичащи от посочения договор за кредит, сключен с "Порт Инвестмънт Девелопмънт – България 2" ЕАД. Тези ипотечни тежести са преминали върху "Еър Пропърти Девелопмънт" АД по силата на сключен договор за покупко-продажба на ипотекирани имоти от дата 15.12.2009г.

Заделянето е поискано до приключване с влязъл в законна сила съдебен акт на правния спор, предмет на д.н. 134 / 2013г. по описа на Търговищки окръжен съд.

Сумата от 8 000 000 евро, представляваща стойността на Договорна ипотека от 19.02.2010г., нотариален акт № 85, том I, рег.№ 446, дело № 71 по описа за 2010 г. на Балчишки нотариус Обретен Обретенов, рег.№ 109 на НК, вписана в Службата по вписванията при РС – гр.Балчик, под вх.рег. № 247 от 19.02.2010 г., Акт № 5, том I, дело № 111/2010 г., учредена и вписана за обезпечаване на вземанията, произтичащи от кредит № 014LD-L-000006/29.12.2009 г., учредена от "Еър Пропърти Девелопмънт" АД за обезпечаване на правата на "Първа Инвестиционна Банка" АД , произтичащи от посочения договор за кредит, сключен с "Асет Мениджмънт" ЕАД.

ОКРЪЖЕН СЪД
гр.ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

9

Заделянето е поискано до приключване с влязъл в законна сила съдебен акт на правния спор, предмет на д.н. 133 / 2013г. по описа на Търговищки окръжен съд.

В условията на възникнал спор по приложението на чл.418 от ГПК в производството по несъстоятелност, в хипотезата на чл.717н ТЗ, Синдикът е представил на 30.08.2013 г. искането си по чл.47, ал.2 ЗНА, във връзка с чл.5 ГПК, пред съда по несъстоятелността, да се произнесе по предпоставките и приложимостта на чл.717н от ТЗ в хипотезата на спорност на предявеното за изплащане от масата на несъстоятелността вземане. По същество на спора е поставен за произнасяне следния правен въпрос – **Допустимо ли е изпълнение по реда на чл.717н от ТЗ спрямо масата на несъстоятелността в производството по несъстоятелност, на спорното парично вземане, допуснато до предварително и незабавно изпълнение въз основа на несъдебно изпълнително основание, по чл.418, във връзка с чл.417, т.2 от ГПК.** В искането до съда по несъстоятелността се настоява за определяне на общия разум на закона и основните начала на правото, съгласно разпоредбата на чл.47, ал. 2 от ЗНА. Посочва се, че единствения регламент, съдържащ аналогична уредба, с оглед предмета на правния спор е Регламент (ЕО) № 1896/2006 НА ЕВРОПЕЙСКИЯ ПАРЛАМЕНТ И НА СЪВЕТА от 12 декември 2006г. Излагат се съображения, че Регламента, съгласно нормата на чл.5, ал.4 от Конституцията и съответно на произнесеното от Конституциония съд Решение №12 от 02.10.2012г. по конст.дело № 4/2012г., следва да цени при тълкуване и определяне на приложното поле на нормите на чл.418 и чл.417 от ГПК.

## V. ПРИЛОЖИМИ НОРМАТИВНИ РАЗПОРЕДБИ.

## А/ НАЦИОНАЛНО ПРАВО.

Приложимият закон за разрешаване на спора, относно предпоставките и условията за процедиране на правилото на чл.717н от ТЗ, и определяне правомощията на Синдика по приложението на тази разпоредба, в хипотезата на спорност на изпълняваното, спрямо масата на несъстоятелността вземане, допуснато по чл.418, във връзка с чл.417, т.2 от ГПК, е Част Четвърта на Търговския закон.

Искането адресирано до съда по несъстоятелността, основаващо се на определените в чл.5 от ГПК, във връзка с чл.47, ал.2 от ГПК, правомощия, в условията на липсваща, или на неясна, съответно противоречива нормативна уредба, съдът да реши отнесения пред него правен въпрос и правен спор, въз основа на общия разум на закона и на основата на основните принципи на правото, определя приложимостта и нормите на Закона за задълженията и договорите ( чл.151 и чл.155, чл.166, чл.167, чл.170, чл.173 и чл.174), и на нормите на Гражданско процесуалния закон ( чл.404, чл.429, чл.464).

Определянето на основните принципи на правото, към които препраща нормата на чл.5 от ГПК, обуславя и приложимостта на конституционните разпоредби, ползващи се с пряко и непосредствено приложение съгласно чл.5,

ВЯРНО С ОРИГИНАЛА

ал.2 на Конституцията на Република България. В този ред, приложими в случая са текстовете на чл.5, ал.4, произнасящ приложимостта на общностното право, на чл.56, произнасящ неотменимостта, прякото и непосредствено приложение на правото на защита.

Определящо за изясняване на общия разум на закона и основните принципи на правото, с оглед предмета на отнесения пред съда по несъстоятелност правен спор и преюдициалните по този спор правни въпроси, се явява положението, че паричните средства, включени в масата на несъстоятелността на "Еър Пропърти Девелопмънт" АД съставляват притежания по смисъла на чл.17, ал.3 от Конституцията на Република България, спрямо които е недопустимо отчуждаване по ред различен от нормативно установения за целта.

Не на последно място от съществено преюдициално значение за произнасяне на поставените по чл.5 от ГПК правни въпроси, обуславящи формирането на решение и произнасяне на правния спор по приложението на чл.717н от ТЗ, съставлява установеното правно положение, че "Еър Пропърти Девелопмънт" АД и съответно Синдика на несъстоятелното дружество, не са страни по образуваните искови производства от "Първа Инвестиционна Банка" АД по чл.415 от ГПК, не са страни и по самите заповедни производства по чл.418 и чл.417 от ГПК, и предявените искове по чл.658, ал.1, т.7 от ТЗ срещу "Първа Инвестиционна Банка" АД и длъжниците по изпълнителните листи, е единствения способ за защита на масата на несъстоятелността.

Съгласно разпоредбата на чл.717н от ТЗ, при продажбата на недвижим имот от масата на несъстоятелността, ипотекиран за обезпечаване на чуждо задължение, синдикът предава от получената цена припадаща се част на ипотекарния кредитор, срещу представяне от последния на изпълнителен лист. Нормата не съдържа други разпоредби, които да съдържат решение на въпроса, дали изпълняваното парично вземане, спрямо масата на несъстоятелността следва да е безспорно и как следва да се процедира в случаите на спорност на това парично вземане, съответно на ипотечните права на кредитора по това парично вземане.

Синдикът като орган на масата на несъстоятелността е натоварен с определени компетенции – чл.658 ТЗ, но същият няма правомощия да произнася спорни правоотношения. Съгласно нормата на чл.685, ал.2 от ТЗ Синдикът осъществява своите правомощия съобразно с развитието на производството по несъстоятелност и постановеното от съда. В условията на десезирани правомощия на органите на управление на "Еър Пропърти Девелопмънт – в несъстоятелност" АД, съгласно разпоредбата на чл.717, ал.1, т.3 от ТЗ, Синдикът осъществява правата и задълженията на несъстоятелния търговец. Тези правомощия на синдика изрично са посочени в чл.658, ал.1 ,т.7 на ТЗ, съгласно която норма Синдика завежда дела и представлява несъстоятелния търговец по заведени срещу него дела , имащи за предмет защитата на имуществени права, включени в масата на несъстоятелността, и оспорването на правата, предявени от трети лица срещу масата на несъстоятелността.



ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

Нормата на чл.691 от ТЗ, с оглед специализацията на производството по несъстоятелност като универсално производство за удовлетворяване на всички парични вземания от масата на несъстоятелността, дефинира понятието безспорност на паричните вземания, което отговаря на посочените критерии :

- вземане, което е установено с влязло в сила съдебно решение, постановено след датата на решението за откриване на производството по несъстоятелност, по което е взел участие синдикът.

Синдикът като орган на масата на несъстоятелността е натоварен с определените в чл.658 от ТЗ компетенции, които не включват правомощия да произнася и да процедира спорни правоотношения.

Съгласно нормата на чл.685, ал.2 от ТЗ Синдикът осъществява своите правомощия съобразно с развитието на производството по несъстоятелност и постановеното от съда.

Нормата на чл.717н от ТЗ, адресира правомощията на Синдика с термина **"предава"** принадаща се част от получената цена на ипотекарния кредитор, снабден за целта с изпълнителен лист;

Действащият ГПК разграничава две основни групи изпълнителни листи - по **чл.404 ГПК** (изпълнителен лист, издаден въз основа на влязло в законна сила съдебно решение, установяващо правото, предмет на принудително изпълнение) **и по чл.418 ГПК** (изпълнителен лист, издаден на несъдебно изпълнително основание, съдържащо формално удостоверено извънсъдебно твърдение за съществуване на право, нуждаещо се от принудително изпълнение).

Употребеният израз **"предаване на парична сума"** по вземане, снабдено с право на принудително изпълнение, от синдика указва, че последният действа като орган в условията на обвързана компетентност. Тази компетентност изключва разглеждането на правни спорове и обвързва изпълнението само н единствено със случаи, когато вземането е безспорно. Такова вземане може да бъде или вземането, ползващо се с безспорност по смисъла на чл.691 от ТЗ или вземане по чл.404 от ГПК.

Разграничаването на двете разгледани  хипотези на безспорност по чл.404 ГПК н по чл.691 ТЗ, е според момента на съдебното произнасяне на правния спор, установяващо съществуването на изпълняваното по чл.717н от ТЗ вземане. Разграничителният критерий се извежда от разпоредбата на чл.637 от ТЗ указваща, че всички заварени към момента на откриване на производството по несъстоятелност по чл.630 от ТЗ съдебни производства се спират и продължават със задължителното участие на синдика.

Указанието в чл.717н от ТЗ относно употребения от законодателя израз **"предава паричните суми"**, в предметно отношение визира случаите, при които синдикът, въз основа на изпълнителния лист, издаден в изпълнение на съдебно решение влязло в законна сила, действа като орган на безспорна администрация. Терминът **"предава"** е ясен и има строго указателен

ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

императивен характер. В хипотезата на спорни вземания, синдикът следва да процедира отнесеното по чл.717н от ТЗ искане по реда указан в чл.658, ал.2 от ТЗ, т.е. според постановленията на съда по несъстоятелността.

Наличието на правен спор, отричащ основанието, размера /ликвидността/ и изискуемостта на вземането по чл.418 ГПК, в това число и в случаите на правен спор, относно ипотечните права на кредитора, спрямо масата на несъстоятелността, съставлява положение, определящо правомощията на съда по несъстоятелността, посочени в чл.658, ал.2 от ТЗ, с оглед произнасянето на въпросите:
– Приложима ли е в производството по несъстоятелност издадената срещу трети лица, по несъдебно изпълнително основание, заповед за незабавно и предварително изпълнение на парично вземане?
- Изпълнителният лист издаден на несъдебно изпълнително основание достатъчно основание ли е за разрешаване на платежна операция със средствата от масата на несъстоятелността или изпълняваното парично вземане следва да отговоря на критерия безспорност?

Разпоредбата на чл.717н от ТЗ не съдържа регламент, позволяващ приобщаване към приложеното й поле и на разгледаните в чл.418 от ГПК хипотези. В предметно отношение разпоредбата на чл.418 от ГПК, е част от нормите, уреждащи производството на индивидуалното принудително изпълнение.

Съгласно нормата на чл. 429, ал.3 от ГПК, издадения изпълнителен лист за незабавно и предварително изпълнение на парично вземане, установено като подлежащо на изпълнение на несъдебно изпълнително основание, има действие и спрямо третите лица дали за обезпечаване на това парично вземане в залог или ипотека свой имот. Синдика е орган на масата на несъстоятелността на който са възложени определени от закона правомощия и не се идентифицира с ипотекарния длъжник. Разпоредбата на чл.717н от ТЗ адресира правомощията на синдика .

Разпоредбата на чл.464 от ГПК, разпорежда, че в случаите на спор между взискателите в производството по идиндивидуално принудително изпълнение, във връзка с разпределението на средствата получени от съдебния изпълнител при продажбата на ипотекирания имот, разпределяне на тези средства не се извършва до произнасяне на този спор с влязъл в законна сила съдебен акт. По приложението на този текст в хипотезата на чл.717н от ТЗ, в процесния случай, е възразено от страна на "Първа Инвестиционна Банка" АД, по съображения за специализацията на производството по несъстоятелност като универсален способ за удовлетворяване на паричните вземания спрямо масата на несъстоятелността, и с посочване, че конкуриращите се права на кредиторите по чл.693 от ТЗ, следва да се процедират по реда на чл.722 от ТЗ, а тези на ипотекарните кредитори по реда установен в чл.717н от ТЗ. Разпоредбата на чл.717н от ТЗ не съдържа регламент, нито препратка към нормата на чл.464 от ГПК. Вътрешните закони не съдържат регламент, който да дава решение на въпроса, как следва да се процедира в случаите на спор относно изпълняваното парично вземане от ипотекарен кредитор, чието вземане и ипотечни права са спорни.



Съдът по несъстоятелността, пред който са отнесени въпросите по приложението на чл.717н от ТЗ, в хипотезата на спорност на паричните вземания предявени за изплащане от масата на несъстоятелността, констатира, че е налице празнота в националното законодателство, преодоляването на която следва да се извърши по реда на чл.5 от ГПК, с приложение на нормата на чл.47, ал.2 от ЗНА, чрез изясняване на общия разум на закона и на основните принципи на правото. Поради специализацията на производството по несъстоятелност като универсален способ за удовлетворяване на паричните вземания от масата на несъстоятелността, субсидиарното приложение на нормите на ГПК, уреждащи материята на индивидуалното принудително изпълнение, е ограничено с оглед изискванията за ясната и непротиворечивост на правните норми, и тяхното съобразяване по приложението на чл.47, ал.2 от ГПК е допустимо в рамките на сравнителноправния анализ и съпоставка.

# VI. ДОВОДИ И ПРАВНИ ИЗВОДИ НА СТРАНИТЕ.

Синдикът на "Еър Пропърти Девелопмънт – в несъстоятелност" АД, застъпва тезата, че в производството по несъстоятелноста, изпълнението на парично вземане, допуснато по реда на чл.418, във връзка с чл.417, т.2 от ГПК до незабавно и принудително изпълнение с издаден за целта на несъдебно изпълнително основание изпълнителен лист, съставлява недопустимо положение, в хипотезата на установена спорност на това парично вземане. Това разбиране се аргументира с постановеното от Конституционния съд на Република България Решение № 12, постановено по конст.дело № 4/ 2012 г., с което конституционосъобразността на разпоредбите на чл.418 и на чл.417,т.2 от ГПК, даващи право на банките, на основата на извлечение по кредитните сметки да се снабдят с право на незабавно и предварително изпълнение, е произнесена с преценката за съответност на тези норми с РЕГЛАМЕНТ (ЕО) № 1896/2006 НА ЕВРОПЕЙСКИЯ ПАРЛАМЕНТ И НА СЪВЕТА от 12 декември 2006 година, за създаване на процедура за европейска заповед за плащане. Съображенията относно неприложимостта на издадения изпълнителен лист по чл.418 от ГПК, в производството по чл.717н от ТЗ, в хипотезата на спорност на изпълняваното парично вземане, се мотивират с разгледаните в Регламента положения, свързани с безспорността на паричните вземания за които е издадена европейска заповед за изпълнение и със забраната за приложимостта на тази заповед в производството по несъстоятелност. Излагат се доводи, че съгласно чл.5, ал.4 от Конституцията на РБългария, Регламента е част от българската правна система и разгледаните в нея принципни положения следва да бъдат съобразени от националния съд при изясняване на общия разум на закона и основните принципи на правото, при произнасяне на правния спор в условията на нормативна празнота.

В подкрепа на тезата , че изпълняваните по чл.717н от ТЗ парични вземания трябва да отговорят на изискванията за безспорност, синдика излага аргументи свързани с нормите на чл.638, разпоредба повеляваща спиране на всички започнали към датата на откриване на производството по несъстоятелност изпълнителни производства, независимо от основанието на което е издаден изпълнителния лист, на разпоредбата на чл.685 и чл.694 от ТЗ, задължаваща в случаите на издаден изпълнителен лист по чл.418, във връзка с



14

основанията по чл.417 от ГПК, кредитора да установи своите вземания спрямо несъстоятелния длъжник, в случай, че иска да се сдобие със статут на кредитор, чиито права подлежат на удовлетворяване от масата на несъстоятелността.

"Първа Инвестиционна Банка " АД аргументира искането по чл.717н от ТЗ, че нормата на чл.418 от ГПК разпорежда незабавно и предварително изпълнение на паричното вземане, представено в издадения за целта изпълнителен лист, приложен към искането  за изплащане от масата на несъстоятелността. Излагат се доводи и по редакцията на чл.717н ТЗ, тълкувана като разпоредба вменяваща в задължение на синдика да предаде дължимата сума по изпълнителния лист.

## VII. МОТИВИ ЗА ОТПРАВЯНЕ НА ПРЕЮДИЦИАЛНОТО ЗАПИТВАНЕ.

Спорът по приложението на чл.717н от ТЗ, не е спор по предвидените в нормата предпоставки. Не съществува спор относно наличието на издаден изпълнителен лист по чл.418, вр. чл.417, т.2 от ГПК, разпореждащ незабавно изпълнение на паричните вземания на "Първа Инвестиционна Банка" АД. Не се спори и по това, че договорните ипотеки, на които банката се позовава в искането си за плащане, са учредени за обезпечаване на вземанията на банката по сключените договори за кредит с третите лица  "Порт Инвестмънт Девелопмънт – България 2" ЕАД и "Асет Мениджмънт" ЕАД.

Не е налице и спор, че парични вземания от "Първа Инвестиционна Банка" АД, произнесени в заповедното производство като подлежащи на предварително и незабавно индивидуално принудително изпълнение, са предмет на висящ съдебен спор по образуваните от банката по чл.415 от ТЗ съдебни дело – д.н.490 и д.н.360 по описа за 2013г. на Варненски окръжен съд , и д.н. 69 по описа за 2013г. на Търговищки окръжен съд.

Няма спор и по отношение на факта, че съгласно правомощията, определени с нормата на чл.658, т.7 от ТЗ, синдика като представляващ несъстоятелния търговец в условията на десизирани компетенции по чл.711, т.3 от ТЗ на изпълнителния директор на "Еър Пропърти Девелопмънт – в несъстоятелност" АД, е предявил отрицателни установителни искове срещу "Първа Инвестиционна Банка" АД и длъжниците по изпълнителните листа, за установяване, че паричните вземания по тези изпълнителни листи не съществуват, че банката не притежава ипотечни права по тези вземания спрямо масата на несъстоятелността, и банката няма право на изпълнение по реда на чл.717н от ТЗ, спрямо получените в масата на несъстоятелността парични средства при продажбата на имотите, за които са вписани ипотечни тежести.

Спорът, който е отнесен пред съда по несъстоятелността е по приложението на чл.717н от ТЗ, и е правен. За да се произнесе по него, настоящият съдебен състав в условията на нормативна празнота, съгласно нормата на чл.5 от ГПК и чл.47, ал.2 от ЗНА, е задължен да се произнесе по общия разум на закона и основните принципи на правото, имащи отношение към  приложимостта на издадения на несъдебно изпълнително основание



ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

15

изпълнителен лист за незабавно изпълнение на парично вземане, предявено от ипотекарен кредитор спрямо масата на несъстоятелността, в условията на спорност на паричното вземане и спорност на ипотечните права.

Конституциносъобразността на чл.418 и чл.417 от ГПК, е произнесена с Решение № 12 на Конституционния съд постановено на дата 02.10.2012 г. по конст. дело № 4/ 2012 г. Преценката е извършена с оглед съответността на заповедното производство с РЕГЛАМЕНТ (ЕО) № 1896/2006 НА ЕВРОПЕЙСКИЯ ПАРЛАМЕНТ И НА СЪВЕТА от 12 декември 2006 година, за създаване на процедура за европейска заповед за плащане, като част от вътрешното право на РБългария и ползващо се с приоритет, по силата на чл.5, ал.4 от Конституцията, спрямо нормите от вътрешното законодателство, които противоречат на установените в него правни положения и нормативни решения.

Както отбеляза настоящия съдебен състав, вътрешното законодателство не съдържа разпоредби, които да съдържат решение на поставения спорен въпрос по приложението на чл.717н от ТЗ. Специализацията на производството по несъстоятелност като универсален способ за удовлетворяване на всички парични вземания спрямо масата на несъстоятелността, не допуска приложение по аналогия на нормативните текстове, уреждащи индивидуалното принудително изпълнение на паричните вземания, положение следващо от конкуриращите се интереси, представени в производството по несъстоятелност във фазата на осребряване на масата на несъстоятелността и изплащане вземанията на кредиторите. Тази конкуренция е многостранна и представя интересите на кредиторите по чл.693 от ТЗ, на кредиторите по чл.717н и на несъстоятелния търговец. Субсидиарното приложение на нормите, уреждащи индивидуалното принудително изпълнение, създава предпоставки за противоречиво прилагане на неясни нормативни решения, поради и което, съществуващата уредба в чл.418 и следващите от ГПК, следва да се ограничи по предмета на правния спор до сравнителноправния анализ. В този ред съда счита, че допитването до Съда на Европейската общност, относно исканото тълкуване на Регламента е от обуславящо значение за изясняване на основните принципи на правото и общия разум на закона, въз основа на които да се даде решение и по конкретния спорен въпрос относно приложението на чл.717н от ТЗ в условията на спорност на паричното вземане, допуснато до принудително изпълнение по чл.418,във връзка с чл.417, т.2 от ГПК.

Преюдициалността на запитването се основава на положението, че Регламента като част от националното законодателство по силата на чл.5, ал.4 от Конституцията, съдържа постановления и принципни положения, относими към въпросите свързани с конкуренцията на заповедта за индивидуално изпълнение на парично вземане и производството по несъстоятелност, уредено като универсално производство за изпълнение на парични вземания. В този ред от значение по смисъла на чл.47, ал.2 от ЗНА, във връзка с дължимото тълкуване и приложение на правото по чл.5 от ГПК, се явяват разгледаните в Регламента положения на безспорност на изпълняваното парично вземане и установеното ограничение в чл.2, т.2, буква "б" от Регламента, на приложимостта на европейската заповед за изпълнение на парично вземане спрямо производството по несъстоятелността. Тази относимост е налице и с оглед на правилото за безспорност по смисъла на чл.691 от ТЗ, на вземанията



ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

16

приети по реда на чл.685 и следващите от ТЗ на удовлетворяване в производството по несъстоятелност.

Съгласно чл.47, ал.2 от Закона за нормативните актове, приложим в хипотезата на чл.5 от ГПК, съдът е длъжен при произнасяне на отнесения пред него правен спор, да произнесе въпросите свързани с изясняване на общия разум на закона и основните начала на правото, във всички случаи когато:
- нормативният акт е непълен, за неуредените от него случаи се прилагат разпоредбите, които се отнасят до подобни случаи, ако това отговаря на целта на акта. Ако такива разпоредби липсват, отношенията се уреждат съобразно основните начала на правото на Република България.

С цел прецизност на изложението, следва да се акцентира на положението, че съгласно нормата на чл.5, ал.4 от Конституцията на Република България, при тълкуването и изясняването на основните начала на правото и определяне общия разум на закона, следва да се съобразят международните актове по които българската държава е страна, като част от националната законова рамка.

Относими положения по приложението на чл.47, ал.2 от Закона за нормативните актове, се явяват:
1. Съображение (6) от Преамбюла и разпоредбата на чл.1 на Регламента, определящи изискването за безспорност на парични вземания, изпълнявани на територията на Европейския съюз.

2. Съображение (10) от Преабюла и разпоредбата на чл. 26 на Регламента, указващи автономността на националното законодателство на страна членка на общността да урежда и по друг начин въпросите, свързани с ускореното събиране на безспорни парични вземания на територията на Европейския съюз.

3. Разпоредбата на чл.2, т.2, буква «б» на Регламента, определяща неприложимост на Регламента към производства, свързани с обявяването на дружества или други юридически лица в несъстоятелност, конкордат и други аналогични производства.

В този аспект, съдът е изправен пред необходимостта да поиска и да се снабди с тълкуването на Съда на Европейската общност по въпросите:

1. Как следва да се тълкува критерия "безспорност" на изпълняваното парично вземане по смисъла на съображение (6) от Преамбюла и разпоредбата на чл.1 от Регламента.

2. В случаите, когато във вътрешното законодателство на държава член на Европейския съюз, на територията на която се изпълнява паричното вземане, не е уреден въпроса за приложението на заповедта за изпълнение на паричното вземане в производството по несъстоятелност открито за лице, спрямо чието имущество се насочва изпълнението, следва ли забраната, установена в чл.2,т.2, буква"б" на Регламента да се тълкува стеснително и да се прилага само по отношение на



ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

17

изпълняваните спорни парични вземания,  или същата се отнася и до изпълняваните безспорни парични вземания,.

3. Как следва да се тълкува разпоредбата на чл.2, т.2, буква "б" на Регламента, определяща неприложимост на регламента към производствата, свързани с обявяването на дружества или други юридически лица в несъстоятелност, конкордати и други аналогични производства, в аспект, дали ограничението се отнася единствено до процедурата по откриване на посочените производства или обхваща и тяхното пълно развитие, според означените процесуални фази и етапи във вътрешната нормативна уредба на съответната държава член на Европейския съюз.

4. Съгласно доктрината за примат на общностното право и в условията на празнота във вътрешно нормативната уредба по националното законодателство на държава член на Европейския съюз, допустимо ли е основата на съображение (10) от Преамбюла и на разпоредбата на чл.26 от Регламента, по тълкувателен път националният съд на съответната държава член на Европейския съюз, пред който е открито производство по несъстоятелност на лице, спрямо чието имущество е насочено изпълнението, да наложи решение различно и в противоречие с основните принципи, застъпени в Регламента.

Водим от горното, съдът

О П Р Е Д Е Л И:

ОТПРАВЯ преюдициално запитване до Съда на Европейския съюз съгласно чл. 267, първи параграф, буква «б» от Договора за функциониране на Европейския съюз, със следните въпроси:

1. Как следва да се тълкува критерия безспорност на изпълняваното парично вземане по смисъла на съображение (6) от Преамбюла и разпоредбата на чл.1 от Регламента.

2. В случаите, когато във вътрешното законодателство на държава член на Европейския съюз, на територията на която се изпълнява паричното вземане, не е уреден въпроса за приложението на заповедта за изпълнение на паричното вземане в производството по несъстоятелност открито за лице, спрямо чието имущество се насочва изпълнението, следва ли забраната, установена в чл.2,т.2, буква"б" на Регламента да се тълкува стеснително и да се прилага само по отношение на изпълняваните спорни парични вземания,  или същата се отнася и до изпълняваните безспорни парични вземания.

3. Как следва да се тълкува разпоредбата на чл.2, т.2, буква "б" на Регламента, определяща неприложимост на регламента към производствата, свързани с обявяването на дружества или други юридически лица в несъстоятелност, конкордати и други аналогични производства, в аспект, дали ограничението се отнася единствено до

ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
ВЯРНО С ОРИГИНАЛА

процедурата по откриване на посочените производства или обхваща и тяхното пълно развитие, според означените процесуални фази и етапи във вътрешната нормативна уредба на съответната държава член на Европейския съюз.

4. Съгласно доктрината за примат на общностното право и в условията на празнота във вътрешно нормативната уредба по националното законодателство на държава член на Европейския съюз, допустимо ли е основата на съображение (10) от Преамбюла и на разпоредбата на чл.26 от Регламента, по тълкувателен път националният съд на съответната държава член на Европейския съюз, пред който е открито производство по несъстоятелност на лице, спрямо чието имущество е насочено изпълнението, да наложи решение различно и в противоречие с основните принципи, застъпени в Регламента.

**Спира** на основание чл.631, ал.1 от Гражданско процесуалния кодекс производството образувано по искане на "Първа Инвестиционна Банка" АД с правно основание чл.717н от ТЗ, по дело №14/2011г., до произнасяне на Съда на Европейския съюз.

**РАЗПОРЕЖДА ЗАДЕЛЯНЕ** на сумата от 97 500 000лв., получена от продажбата на имотите, предмет на ипотеки, по особена сметка, до приключване производството по преюдициалното запитване.

Определението не подлежи на обжалване.

ПРЕДСЕДАТЕЛ :

ОКРЪЖЕН СЪД
гр. ТЪРГОВИЩЕ
**ВЯРНО С ОРИГИНАЛА**

# EXHIBIT 43



# AYR LOGISTICS LIMITED. INC.
**459 CHIPPENDALE DRIVE**
**ROCKWALL, TEXAS 75032  USA**
**Phone (972) 722-8268 • Fax (972) 722-3540**
**E-mail: ayrlog@yahoo.com**

3 December 2010

To:    Investbank AD,
        Attn:  Mrs. Petya Slavova, Chairperson of Advisory Board, and
              Mrs. Diana Mladenova, Executive Director
        Sofia, Bulgaria

Subject:  Notice of Damages

Dear Mrs. Slavova / Mrs. Mladenova:

Please treat this protest as a notice and a claim for immediate compensation of damages resulting from your Bank's unlawful interference with the payment operations and arrangements made by Ayr Logistics Limited, Inc. that have been planned to support and implement the Silver Beach investment project at Balchik, Bulgaria.

1. As you are aware Ayr Logistics Limited, Inc. has made a direct and immediate investment commitment to repurchase the mortgage debts under the Silver Beach Project within a specified period, where such mortgage liabilities total up to EUR 67,000,000 and payble to UniCredit Bulbank, First Investment Bank and Corporate Commercial Bank, Sofia, Bulgaria.

2. Furthermore, according to the investment commitment declared by Ayr Logistics Limited, Inc, (ALL) further arrangements have been made with All Seas Property 2 OOD, Varna, Bulgaria, for repayment of EUR 29,000,000 being direct costs for the acquisition and development of the Silver Beach Project, including the repurchase of CGF's credit exposure as you have requested.

3. ALL has made all arrangements for payment planned to be made during Stage One of the investment (totalling up to EUR 404 million) on the basis of Ayr's fair expectations that Investbank AD's promise contained in

the confirmation made by Investbank AD for having sent a SWIFT Message MT799 to be fulfilled; such Swift Message was necessary to HSBC and Oriana Capital Partners so that ALL could expend funds.

4. The Bank instrument issued by Investbank AD is the documentary evidence serving as basis for the payments arrangements and ALL's commitment to make such payments within the terms and in support of the agreements reached with UniCredit Bulbank and First Investment Bank for repurchasing such Banks' mortgage rights in the Silver Beach Project.

5. The Bank instrument issued by Investbank AD is the crucial document that would allow to allocate funds out of the investment recourses available for the purpose of repurchasing the mortage debts of the Silver Beach Project via Oriana Capital Partners – the financing fund that Investbank has been duly advised.

6. So far Investbank AD has failed to successfully deliver the Swift MT799 to such financing fund via HSBC despite the confirmation of its sending.

6.1. As per the bank correspondence submitted to you concerning the delivery of MT799 to HSBC, NY, it is Investbank AD's obligation take all steps as might be necessary to sucessfully deliver the issued Swift Message to HSBC, NY.

6.2. For over two months now, commencing on 27 September 2010 - the date of making the deposit in support of the Silver Beach Project for the sole purpose of issuing such Swift Message to the ALL's financing fund – Investbank AD has failed to do what is necessary according to the standarts and rules of international banking practices in order to deliver such Swift Message which would have allowed ALL to make the payment transaction as planned.

6.3. Investbank AD's failure to fulfill their obligation arising out of the confirmation for  sending of Swift MT799 in support of the payment transaction to be successfully completed in accordance with the planned expenditure in Stage One of the Silver Beach investment Project, has resulted in harming ALL as follows:
     a)  caused forced delay in making payments to UniCredit Bulbank and First Investment Bank AD;

b)  has created and caused serious complications in current relationship with FIB, including the initiation of legal procedures that are harmful to ALL's investment aggrements reputation and has given rise to additional liabilities.

c) has forced ALL to find extra resources apart from the funds that has been allocated and blocked on the basis of the confirmation that such Swift MT799 has been sent, in order to ensure such extra financing under very unfavorable circumstances  for the transaction agreed to with UniCredit, FIB and ASB.

As of present Investbank is still in default of its obligation to successfully deliver the Swift Message that has been confirmed as sent. This notice of protest is against such default. We also demand that the following actions be immediately taken:

- we demand that the Bank immediately deliver the Swift MT799 which was confirmed as sent to the addressee indicated therein and for such purposes you need to immdediately contact HSBC, NY, first.
- We demand that you immediately advise UniCredit and FIB for Investbank AD's failure to fulfill obligations, which failure caused difficulties in and precluded Ayr' perfomance under the payment agreements for repurchase of the above Banks' mortgage rights in the Silver Beach Project; we demand that you take all steps necessary to prevent further harm to be inflicted on Ayr' interests and  ensure that the above Banks withhold from taking actions to monetize such mortgage rights for a period of 14 business day commencing on the daye of delivery fo Swift 799 to the financing funf, Oriana Capital partners via HSBC, NY. Such 14-days period is asserted by the readiness to make payments under the agreements by Ayr for the repurchase the Silver Beach mortgage rights according to the manner of payment as announced and based on the confirmation for sending Swift MT799 as given.
-

Be advised that in the event of failure to act as demanded you will be held responsible to Ayr Logistics Limited Inc and our US partners for such unlawful and hostile interference with Ayr's investment agreements, arrangements and commitments, which interference has a direct effect within the USA as the place where arrangements related both to such payment transaction and to the entire financing process for the investment project are being made, maintained and taken care of.

Please send your reply or comments to the correspondence address mentioned in the beginning of this letter or to the address for communication of the lawyers we have authorized for such purposes as shown below:

> Mr. Julian Bartlett
> 2504 Eastwood
> Rockwall, TX 75032

We remind you that you must compensate Ayr for all Ayr's harmed interests commensurable with the size and scope of all negative consequences ensuing from such delay.

Philip R. Harris,
President and General Manager
Ayr Logistics Limited, Inc

CC:   Mr Zachari Tomov
        FIB, Attn: Mr. Matthew Mateev
        UniCredit Bulbank, Attn: Mr. Alexander Krustev

# EXHIBIT 44

1



**AYR LOGISTICS LIMITED. INC.**
**459 CHIPPENDALE DRIVE**
**ROCKWALL, TEXAS 75032  USA**
**Phone (972) 722-8268 • Fax (972) 722-3540**
**E-mail: ayrlog@yahoo.com**

20 December 2010

**To**:    The Board of Directors

TB Investbank AD

Sofia,  Republic of Bulgaria


**To** :    The Deputy Governor; and

The Head of Banking Supervision (Central Bank Regulatory Division)

Central / National  Bank of the Republic of Bulgaria


**Regarding** :  **TB Investbank AD of Republic of Bulgaria**  – Breach of contractual
obligations, Breach of Society for Worldwide Interbank Financial
Telecommunication (SWIFT) undertakings, by-laws, corporate rules and
contractual terms, Breach of United States of America Federal  Laws,
Wrongful and Unlawful Conduct, Breach of International Banking Laws
and Practices.


Dear Sirs / Mesdames,


1.  I, Julian Richard Napier Bartlett, attorney, notary and conveyancer of thirty years
experience, do hereby confirm that I am the attorney and  legal adviser to the
Ayr  Group of Companies worldwide,  including Ayr Logistics Logistics Limited,
Inc. and all of its associated and subsidiary companies.



2

2. This letter is directed at the Board of Directors of TB Investbank AD of Bulgaria, and the Deputy Governor and Head of Banking Supervision of the Central Bank of the Republic of Bulgaria, to be delivered and / or transmitted by Ayr's trusted Bulgarian Attorney Mr. Zachari Tomov.

3. This letter constitutes a final notification to the Board of Directors of Investbank of Ayr's serious  intention to immediately  take the necessary actions and steps against Investbank, in the event of Investbank continuing to disregard the Laws of Bulgaria, the Laws of the United States of America, the International Banking Laws, the provisions of the written contract namely the Special Purpose Deposit Account Agreement between Ayr and Investbank dated 27 September 2010, and the SWIFT contractual provisions.

4. I have been provided with copies of various correspondence which has passed between attorney Zachari Tomov and Investbank, and I have seen the various opinions on the meaning and effect of SWIFT MT 799. The opinions, with respect, accord with my understanding of what is a SWIFT MT 799.

5. From the evidence made available to me and substantiated by the various documentation, I accept that Investbank is intentionally, wrongfully and unlawfully in breach of Investbank's obligations in terms of the Special Deposit Account Agreement with Ayr dated 27 September 2010,  in that , inter alia,  Investbank has :-

5.1     failed to successfully deliver to Ayr Logistics Limited, Inc.,or  Ayr Development Group Limited and / or to such other entities  as Ayr might instruct Investbank to send an MT 799, more particularly,   to send an MT 799 to the New York Bankers of  Oriana Capital Partners of the USA;

5.2     threatened to suspend the deposit account which was agreed upon and constitutes the underlying funds, the existence of which is to be confirmed by the MT 799, of which confirmation of Investbank's intention to transmit the MT 799 was sent by Investbank to Oriana Capital Partners of the USA;



3

5.3     interfering and obstructing the funding mechanism for which the deposit was established and the Special Deposit Account Agreement was entered into on 27 September 2010;

5.4     causing our client Ayr, Ayr Property Development AD and Silver Beach Projects and other companies involved in the transactions, to suffer damages and serious delays;

5.5     disregarding and intentionally breaching international banking laws and practices;

5.6     interfering and blocking foreign contractual relationships between Bulgarian companies and the Ayr Group of companies both in the United States of America and elsewhere, as well as interfering with contractual relations between Ayr and other American companies;

5.7     obstructing and preventing foreign investment, infrastructural development, job creation and other benefits to the Republic of Bulgaria;

5.8     breaching the SWIFT undertakings, by-laws, corporate rules, contractual terms and general terms and conditions, thereby rendering Investbank liable to expulsion as a member of SWIFT, and thereby bringing into disrepute the certainty and confidence of the operations of the SWIFT system of interbank communications;

5.9     bringing The Republic of Bulgaria into disrepute and thereby jeopardizing and prejudicing the prospects of Bulgaria succeeding to gain entry to the European Union;

5.10    breaching the Laws of the Republic of Bulgaria.



4

6.     The abovementioned list of wrongful and unlawful acts and omissions on the part of Investbank is not an exhaustive or complete list, and Ayr reserves the right to extend the grounds to take action and claim damages against Investbank.

7.     I am instructed to advise you,  Investbank of Bulgaria, that your actions and omissions are completely unacceptable to Ayr, to Ayr's subsidiary companies in Bulgaria, to Silver Beach Projects and its associated companies and to the various American companies with which Ayr deals in the USA  in respect of this transaction and the planned projects  in Bulgaria.  Ayr will not permit this unacceptable and incomprehensible  behaviour  on the part of Investbank to be tolerated or be allowed to happen. Ayr shall insist on  the necessary sanctions being brought against Investbank  in terms of, amongst other things,  the Laws of the USA, the Laws of Bulgaria, International Law (via the International courts of justice at the Hague), and the European Union and United Nations Organisation.

8.     **I am instructed to advise that Investbank has 3 (three) days** from date of receipt of this letter, but in any event on or  before 23 December 2010, to fully comply with its contractual obligations in terms of the Special Deposit Account Agreement with Ayr dated 27 September 2010, to the full satisfaction of Ayr and / or Oriana Capital Partners (or  any other entity Ayr advise you of), failing which Ayr will immediately take the aforementioned actions against Investbank to obtain an Order  of Court against Investbank directing that it  perform in terms of its contractual obligations aforementioned, and for damages suffered by the various Claimants.

9.     Ayr will not take action alone, and reserves the right to have as joint Claimants all of the companies with which Ayr is linked in this particular transaction.

10.    Legal proceedings will be instituted against Investbank in the USA, in Bulgaria and through the international courts.

11.    In addition to the legal actions  to claim performance and damages, Ayr shall also report the full facts of this matter to:-



5

11.1   The Society for Worldwide Interbank Financial Telecommunications (SWIFT) with a request that Interbank be expelled as a member, and noted as a defaulting bank with all of its 9000 (nine thousand) member banks, corporates and security houses in 209 countries around the world;

11.2   The European Union, to advise of the facts of this matter , and of the fact that Bulgaria is not a country with which foreign companies can do business  with their banking system, as they cannot be trusted and have no regard for International Banking Laws and Practices, and stating that this incident should count against Bulgaria in its efforts to gain entry to the EU as a member state;

11.3   The United Nations, to advise that Investbank should be noted as an untrustworthy bank not to be dealt with. ( In this regard it is hoped  that the internal Bulgarian banking regulations can and shall immediately control their own member banks, more especially when there is clear evidence of this type of unacceptable and unlawful behaviour);

11.4   The International Banking Ombudsman;

11.5   All of Investbank's US correspondent banks;

11.6   The Government of the Republic of Bulgaria  (to the extent that my client's dealings with the Bulgarian Central Bank do not have this disgraceful situation brought to the attention of the Minister of Finance and other responsible Ministeries).

12.    I am instructed to make it abundantly clear to Investbank  that this is  regarded by Ayr as a  very serious matter with international consequences.  Reputable companies doing international business rely on the honesty and integrity of the banking system and the individual banks.  From what has transpired, it appears that  Investbank cannot be trusted and clearly has little or no integrity.   My instructions are to make sure, in the interests of other banks and companies around the world , that Investbank must not be used,  and is both unreliable,



6

dishonest,  and behaves in an intentionally unlawful and obstructive manner. This
message can be distributed around the world very rapidly and purely in the
interests of protecting innocent businesses from being entrapped in the same
unlawful manner.


13.    Be pleased to take notice further  that this is **the final notification** which Ayr will
       issue to Investbank before proceeding with the actions as set out herein.


14.    It is my clients desire that this matter can be resolved in an acceptable manner
       immediately and that the funding mechanism and the project relying thereon can
       proceed in the interests of the Republic of Bulgaria.


Your faithfully

**Ayr Logistics Limited, Inc**

Per:  J.R.N. Bartlett

Ayr International Legal Affairs

# EXHIBIT 45

Kristian W. Gluck (SBT 24038921)
Shivani P. Shah (SBT 24102710)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
kristian.gluck@nortonrosefulbright.com
shivani.shah@nortonrosefulbright.com

COUNSEL FOR THE TRUSTEE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **In re:** ) | |
| ) | **Chapter 7** |
| **Ayr Logistics Limited Inc.,** ) | |
| ) | **Case No. 14-34940-bjh-7** |
| **Debtor.** ) | |
| ) | |

## STIPULATION BY AND BETWEEN
## TRUSTEE, ZAHARI TOMOV, ASSET MANAGEMENT EAD, ALL SEAS
## PROPERTY 2 OOD, AND RUDERSDAL EOOD CLARIFYING CAUSES OF
## ACTION SOLD PURSUANT TO PURCHASE AND ASSIGNMENT AGREEMENT
[Related to Dkt. No. 63 and 70]

Jeffrey H. Mims, Chapter 7 Trustee for the estate of Ayr Logistics Limited Inc. (the

"Trustee"), by and through his undersigned attorneys, files this *Stipulation By and Between*

*Trustee, Zahari Tomov, Asset Management EAD, All Seas Property 2 OOD, and Rudersdal*

*EOOD Clarifying Causes of Action Sold Pursuant to Purchase and Assignment Agreement* (the

"Stipulation"), and hereby shows the Court as follows:

## RECITALS

A.      WHEREAS, on October 10, 2014, Ayr Logistics Limited Inc. (the "Debtor") filed

a voluntary petition under chapter 7 of title 11 the U.S. Bankruptcy Code (the "Bankruptcy

Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division

(the "Bankruptcy Court"). Jeffrey H. Mims was thereafter appointed chapter 7 Trustee in the

73375767.4

above-referenced chapter 7 bankruptcy case (the "<u>Chapter 7 Case</u>") of the Debtor's estate (the "<u>Estate</u>");

      B.      WHEREAS, on October 22, 2017, the Trustee filed *Trustee's Motion, Pursuant to 11 U.S.C. §§ 105(a) and 363, For Approval to Sell Causes of Action* (the "<u>Motion to Sell</u>") [Dkt. No. 63] and *Motion for Expedited Hearing* (the "<u>Motion to Expedite</u>") [Dkt. No. 64];

      C.      WHEREAS, on October 24, 2017, the Bankruptcy Court orally granted the Motion to Expedite. *See* Dkt. No. 64;

      D.      WHEREAS, on November 8, 2017, the Bankruptcy Court held an expedited hearing on the Motion to Sell, at which time the Court granted the Motion to Sell;

      E.      WHEREAS, on November 20, 2017, the Bankruptcy Court entered *Order Granting Trustee's Motion, Pursuant to 11 U.S.C. §§ 105(a) and 363, For Approval to Sell Causes of Action* (the "<u>Sale Order</u>") [Dkt. No. 70] and the Trustee, Zahari Tomov, solely in his individual capacity, All Seas Property 2 OOD, Asset Management EAD, and Rudersdal EOOD (the "<u>Creditors</u>" and, collectively with the Trustee, the "<u>Parties</u>") executed the Purchase and Assignment Agreement, dated as of November 20, 2017 (the "<u>Agreement</u>"), attached hereto as **Exhibit A**;

      F.      WHEREAS, paragraph 2 of the Order approves the Agreement and all of the terms and conditions thereof, including paragraph 19 of the Agreement, which provides that the Trustee "shall execute  and deliver to the [Creditors] such conveyances, assignments, or other instruments and documents as the [Creditors] may reasonably request in order to effect the sale, conveyance, and transfer" of the causes of action. *See* Dkt. No. 63-1; and

      G.      WHEREAS, the Parties enter into this Stipulation to clarify which causes of action were sold and assigned to the Creditors.

## **STIPULATION**

1.      The foregoing recitals are incorporated herein by reference as if set forth in full herein and are made an express part of this Stipulation.

2.      The Agreement provides that the Trustee assign all of the Estate's causes of action to the Creditors with the specific exclusion of claims and potential claims under international law, including without limitation, the *Treaty Between the United States of America and The Republic of Bulgaria Concerning the Encouragement and Reciprocal Protection of Investment* signed on September 23, 1992, entered into force on June 2, 1994, at U.S. Senate Treaty Doc. 103-3, as amended, restated, supplemented or otherwise modified from time to time thereafter (the "International Law/Treaty Claims").

3.      To the extent the Agreement is not clear, the Parties desire to clarify that the causes of action assigned to the Creditors include all of the Estate's causes of action regarding: cross-border tort, unjustified enrichment, fraudulent activities, money laundering, and corruption (collectively, the "RICO Claims").

4.      This Stipulation does not alter any of the terms of the Agreement or the Sale Order referenced above.  Each term of the Agreement and Sale Order remain in full force and effect.

5.      This Stipulation will be binding upon, and shall inure to the benefit of, each of the Parties, and their respective agents, employees, representatives, assigns, successors in interest, and attorneys. The Parties consent to the waiving of any stay of effectiveness provided by the Federal Rules of Bankruptcy Procedure.

6.      The provisions of this Stipulation shall be liberally construed to effectuate the treatment of the matters addressed herein. For purposes of determining the meaning of, or resolving any ambiguity with respect to any word, phrase, term or provision of this Stipulation,

the Parties shall be deemed to have had equal bargaining strength in the negotiation of this Stipulation and equal control over the preparation of this document, such that neither the Stipulation nor any uncertainty or ambiguity herein shall be arbitrarily construed or resolved against any party under any rule of construction. This Stipulation shall be construed under the laws of the state of Texas.

7.     This Stipulation may be signed in counterparts and by facsimile, image, or by affixing "/s/". When each party has signed and delivered at least one such counterpart, or otherwise indicated in writing that it has approved the Stipulation and authorized its "/s/", each counterpart shall be deemed an original, and when taken together with the other signed counterpart, shall constitute on Stipulation.

8.     The Parties agree that each of the Parties to the Stipulation shall bear its own attorneys' fees and costs in connection with the matters resolved by this Stipulation.

9.     This Stipulation constitutes the entire agreement between the Parties and may not be amended or modified in any manner except by a writing signed by each of the Parties or their counsel.

          AGREED:

JEFFREY H. MIMS, TRUSTEE                         ZAHARI TOMOV, solely in his individual
                                                 capacity

By: _____             By: _____

Name: Jeffrey H. Mims                            Name: Zahari Tomov, solely in his individual
                                                 capacity
Title: Chapter 7 Trustee, Assignor               Title: Assignee

73375767.4

the Parties shall be deemed to have had equal bargaining strength in the negotiation of this Stipulation and equal control over the preparation of this document, such that neither the Stipulation nor any uncertainty or ambiguity herein shall be arbitrarily construed or resolved against any party under any rule of construction. This Stipulation shall be construed under the laws of the state of Texas.

7.      This Stipulation may be signed in counterparts and by facsimile, image, or by affixing "/s/". When each party has signed and delivered at least one such counterpart, or otherwise indicated in writing that it has approved the Stipulation and authorized its "/s/", each counterpart shall be deemed an original, and when taken together with the other signed counterpart, shall constitute on Stipulation.

8.      The Parties agree that each of the Parties to the Stipulation shall bear its own attorneys' fees and costs in connection with the matters resolved by this Stipulation.

9.      This Stipulation constitutes the entire agreement between the Parties and may not be amended or modified in any manner except by a writing signed by each of the Parties or their counsel.

AGREED:

JEFFREY H. MIMS, TRUSTEE

By: _____

Name: Jeffrey H. Mims

Title: Chapter 7 Trustee, Assignor

ZAHARI TOMOV, solely in his individual capacity

By: _____

Name: Zahari Tomov, solely in his individual capacity

Title: Assignee

73375767.4

ALL SEAS PROPERTY 2 OOD

By: _____

Name: Yordanka Zhekova Georgieva

Title: Assignee

RUDERSDAL EOOD

By: _____

Name: Erik Bresling

Title: Assignee

ASSET MANAGEMENT EAD

By: _____

Name: Svetlozar Krasenov Kasabov

Title: Assignee

RUDERSDAL EOOD

By: _____

Name: Michael Bertelson

Title: Assignee

73375767.4

# EXHIBIT A

Purchase and Assignment Agreement

## PURCHASE AND ASSIGNMENT AGREEMENT

This Purchase and Assignment Agreement (the "**Agreement**"), dated as of 20th day of November 2017, by and between, Jeffrey H. Mims, in his capacity as the Chapter 7 Trustee for Ayr Logistics Limited Inc. (the "**Trustee**" or "**Assignor**"), and Zahari Tomov, solely in his individual capacity, All Seas Property 2 OOD, Asset Management EAD and Rudersdal EOOD (and together with their assignees, successors or designees, the "**Creditors**" or the "**Assignees**"). In consideration for the mutual covenants herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties state and agree as follows:

## WITNESSETH:

**WHEREAS**, on October 10, 2014, Ayr Logistics Limited Inc. (the "**Debtor**") filed a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Texas (the "**Bankruptcy Court**"). The Debtor's chapter 7 bankruptcy case is pending in the Bankruptcy Court as *In re Ayr Logistics Limited Inc.,* Case No.: 14-34940-bjh-7 (the "**Ayr Bankruptcy Case**");

**WHEREAS**, Jeffrey H. Mims was appointed Chapter 7 Trustee of the Debtor's bankruptcy estate (the "**Bankruptcy Estate**");

**WHEREAS**, the Debtor's Bankruptcy Estate holds potential claims, causes of action and rights of recovery against various parties pertaining to the taking of funds from Ayr Property Development's bank account at Corporate Commercial Bank (the "**Causes of Action**");

**WHEREAS**, included in the Bankruptcy Estate's Causes of Action are the Bankruptcy Estate's potential claims, causes of action and rights of recovery under international law, including without limitation the *Treaty Between The United States Of America And The Republic Of Bulgaria Concerning The Encouragement And Reciprocal Protection Of Investment*, which was signed on September 23, 1992, entered into force on June 2, 1994, at U.S. Senate Treaty Doc. 103-3, as amended, restated, supplemented, or otherwise modified from time to time thereafter (the "**International Law/Treaty Claims**");

**WHEREAS**, Assignor wishes to assign to the Assignees all of the Bankruptcy Estate's rights and obligations in the Causes of Action, but excluding the International Law/Treaty Claims, so that the Assignees may pursue such Causes of Action in any forum having jurisdiction over such Causes of Action;

**WHEREAS**, notwithstanding anything to the contrary in this Agreement, in no event shall the Assignor or the Bankruptcy Estate be deemed to sell, transfer, assign or convey, and the Assignor and the Bankruptcy Estate shall retain all right, title and interest to, in and under the International Law/Treaty Claims;

**WHEREAS**, the Creditors wish to have Zahari Tomov, on their behalf, respectively, and collectively, pursue any and all of the Causes of Action outside of the Ayr Bankruptcy Case, but

excluding the International Law/Treaty Claims which shall remain within the Bankruptcy Estate; and

**WHEREAS**, the assignment of the Causes of Action (excluding the International Law/Treaty Claims) shall be subject to the approval and entry of an order by the Bankruptcy Court, and to the terms and conditions set forth herein.

**NOW THEREFORE**, in consideration of the foregoing, the representations, warranties and covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignees do hereby agree as follows:

1. Subject to the approval and entry of an order by the Bankruptcy Court approving this Agreement, Assignor shall unconditionally and irrevocably sell, convey, transfer and assign to the Assignees all of Assignor's and the Bankruptcy Estate's rights, title, interest in and to all of the Causes of Action; *provided, however*, Assignor is not selling, conveying, transferring or assigning the International Law/Treaty Claims to the Assignees, which shall remain with the Bankruptcy Estate and under the auspices of the Trustee to prosecute in his discretion;

2. Subject to the approval and entry of an order by the Bankruptcy Court approving this Agreement, Assignor assigns to Assignees all rights and benefits of the Assignor and the Bankruptcy Estate relating to the Causes of Action (excluding the International Law/Treaty Claims), including without limitation: (i) the Assignor's and the Bankruptcy Estate's right to receive interest, penalties and fees, if any, which may be paid with respect to the Causes of Action, (ii) any actions, claims, rights or lawsuits of any nature whatsoever against any party arising out of or in connection with the Causes of Action, and (iii) all cash, securities, instruments and other property which may be paid or issued in satisfaction of the Causes of Action (collectively, the "**Transferred Rights**");

3. Subject to the approval and entry of an order by the Bankruptcy Court approving this Agreement, the consideration provided by the Assignees for this Agreement is a contingency fee (the "**Fee**") from prosecuting and/or settling the Causes of Action as set forth in Paragraphs 9 & 10 below;

4. Subject to the approval and entry of an order by the Bankruptcy Court approving this Agreement, this assignment shall be deemed an absolute and unconditional assignment of the Causes of Action (excluding the International Law/Treaty Claims) for the purpose of collection and satisfaction, and shall not be deemed to create a security interest. This Agreement, assignment and sale does not create an attorney client relationship with the Ayr Bankruptcy Case or estate in any fashion;

5. Subject to the approval and entry of an order by the Bankruptcy Court approving this Agreement, Assignees hereby accept the assignment of the Causes of Action (excluding the International Law/Treaty Claims) to freely pursue the Causes of Action (excluding the International Law/Treaty Claims) and all of Assignor's and the Bankruptcy Estate's rights, title and interest in said Causes of Action (excluding the International Law/Treaty Claims). However,

Creditor/Assignees and their attorneys have no affirmative obligation or affirmative duty to the Ayr Bankruptcy Case or Bankruptcy Estate and shall have sole discretion to take or not take action in pursuit of the Causes of Action or any cause of action, exclusive of the International Law/Treaty Claims. The Creditor/Assignees and their attorneys shall have sole discretion as to venue, forum, jurisdiction, how and if to settle or how and if to proceed with trial, arbitration or mediation of the Causes of Action or any cause of action or party, exclusive of the International Law/Treaty Claims;

6.    Subject to the approval and entry of an order by the Bankruptcy Court approving this Agreement, the Assignor hereby warrants and represents that the Assignor possesses full right and authority to enter into this Agreement and to transfer Assignor's and the Bankruptcy Estate's rights, title, and interest in the Causes of Action (excluding the International Law/Treaty Claims);

7.    Subject to the approval and entry of an order by the Bankruptcy Court approving this Agreement, Assignees shall in their own name, at their own expense, and for their own benefit prosecute the Causes of Action (excluding the International Law/Treaty Claims) and collect, settle, compromise and grant release on said Causes of Action (excluding the International Law/Treaty Claims) as they in their sole discretion deem advisable;

8.    Subject to the approval and entry of an order by the Bankruptcy Court approving this Agreement, Assignees shall be entitled to all judgments, awards and payments therefrom, subject to payment of the Fee to the Bankruptcy Estate as set forth in this Agreement;

9.    In consideration for the Assignment and this Agreement, Assignor and Assignees agree that if any Causes of Action are settled prior to trial, Assignees shall pay to the Bankruptcy Estate seven percent (7%) of any net proceeds (after payment of fees and expenses of counsel) from any and all judgments, awards and payments resulting from any of the Causes of Action.  Assignees agree that they will pay such amount to the Bankruptcy Estate within twenty (20) business days of receipt of such net proceeds;

10.   In consideration for the Assignment and this Agreement, Assignor and Assignees agree that if any Causes of Action are not settled prior to trial, Assignees shall pay to the Bankruptcy Estate five percent (5%) of any net proceeds (after payment of fees and expenses of counsel) from any and all judgments, awards and payments resulting from any of the Causes of Action.  Assignees agree that they will pay such amount to the Bankruptcy Estate within twenty (20) business days of receipt of such net proceeds;

11.   The Assignees hereby acknowledge and agree that the Assignor makes no representations or warranties whatsoever, express or implied, with respect to any matter relating to the Causes of Action. Without in any way limiting the foregoing, the Assignor hereby disclaims any warranty (express or implied) as to any of the Causes of Action. The Assignees further acknowledge that they are proceeding with their acquisition of the Causes of Action based upon their independent inspection and investigation.  Accordingly, the Assignees will accept the Causes of Action "AS IS" and "WHERE IS".  Assignor disclaims any representation as to the merits or collectability of the Causes of Action and agrees to hold harmless Assignees, their assigns and counsel in whatever capacity for pursuing such claims and release any claims against Assignees, their assigns and counsel including, but not limited to, professional malpractice or negligence.  Assignor hereby

acknowledges that no attorney-client relationship is established between Assignor and the Assignees, their assigns or counsel as a consequence of this Agreement. Assignor shall have no causes of action against Assignees, their assigns, or counsel, including, but not limited to, professional malpractice, negligence, gross negligence or omissions;

12. Assignees acknowledge that the assignment of the Causes of Action to the Assignees could negatively impact the International Law/Treaty Claims, even to the point that the International Law/Treaty Claims can no longer be prosecuted for the benefit of the Bankruptcy Estate and the Creditors, and therefore the Assignees agree to hold harmless Assignor and his counsel and release any claims against Assignor and his counsel, including, but not limited to, professional malpractice or negligence, should the assignment of the Causes of Action negatively impact the International Law/Treaty Claims, including affecting the International Law/Treaty Claims such that they can no longer be prosecuted for the benefit of the Bankruptcy Estate and the Creditors;

13. This Agreement is governed by the laws of the State of Texas, without regards to Texas' conflict or choice of law provisions. The parties hereto agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought exclusively in the Bankruptcy Court, and each party hereto hereby irrevocably consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in the Bankruptcy Court or that any such suit, action or proceeding which is brought in the Bankruptcy Court has been brought in an inconvenient forum. Process in any such suit, action or proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of the Bankruptcy Court;

14. Assignor represents that he has not assigned or transferred the Causes of Action to any other party. From the date hereof until closing, Assignor shall not move, sell, lease, transfer or otherwise dispose of or agree to move, sell, transfer, lease or otherwise dispose of, any of the Causes of Action (excluding the International Law/Treaty Claims);

15. The Assignees have the requisite power and authority to enter into this Agreement and to carry out the transactions contemplated hereby. The execution, delivery and performance of this Agreement by the Assignees has been duly and validly authorized and approved by all necessary action on the part of the Assignees, and subject to the entry of an order by the Bankruptcy Court approving this Agreement, this Agreement constitutes the legal and binding obligation of the Assignees, enforceable against the Assignees in accordance with its terms;

16. Each signatory to this Agreement represents and warrants that such person is duly authorized to bind the Party for whom such person acts. The Parties expressly represent and warrant on behalf of themselves and their heirs, legal representatives, successors, and assigns, that they are legally competent to execute this Agreement and that they do so of their own free will and accord, without reliance on any representation of any kind or character not expressly set forth herein;

17.     Except for the approval and entry of an order by the Bankruptcy Court approving this Agreement, no consent, approval or authorization of, filing or registration with, or notification to any governmental authority, person, partnership, corporation or other entity is required in connection with the execution and delivery of this Agreement or any ancillary documents by the Assignees or the consummation of the transactions contemplated hereby and thereby;

18.     As part of Assignor's agreement to assign the Causes of Action (excluding the International Law/Treaty Claims) to the Assignees, Assignor hereby grants unto Assignees full authority to do all things necessary to enforce the Transferred Rights and Assignor's and the Bankruptcy Estate's rights thereunder.  Assignor agrees that the powers granted in this paragraph are discretionary in nature and exercisable at the sole option of Assignees;

19.     Assignor shall execute and deliver to the Assignees such conveyances, assignments, or other instruments and documents as the Assignees may reasonably request in order to effect the sale, conveyance, and transfer of the Causes of Action.  Each party to this Agreement shall, from time to time, execute and deliver such additional documents, instruments, conveyances or assurances and take such other actions as shall be necessary, or otherwise reasonably requested by any other party to confirm and assure the rights and obligations provided for in this Agreement and render effective the consummation of the transactions contemplated hereby;

20.     Assignees shall provide to the Assignor: (i) upon request, but no more frequent than annually, updates in writing on the public record status of the Causes of Action assigned to the Assignees, exclusive of any attorney work product or attorney client privilege information of Assignees; (ii) notice of any settlement of the Causes of Action assigned to the Assignees, within ten (10) business days of any such settlement; and (iii) notice of any payments received on account of any settlements of any Causes of Action, within five (5) business days of the receipt of such payments;

21.     Assignor agrees to forward to Assignees all notices received from the Bankruptcy Court or any third party with respect to the Causes of Action;

22.     Assignor further agrees that if Assignor receives any distributions on account of the Causes of Action (excluding the International Law/Treaty Claims and the Fee payable under this Agreement), whether in the form of cash, securities, instruments or any other property, the aforementioned shall constitute property of the Assignees to which the Assignees has an absolute right.  Assignor shall hold such property in trust and will at its own expense deliver to Assignees any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignees within ten (10) business days of receipt.  Should all or any portion of the distributions on account of the Causes of Action not be assignable by Assignor to Assignee, then Assignor grants to Assignees a participation interest in the Causes of Action or such distributions, in accordance with applicable law;

23.     This assignment shall be binding upon and inure to the benefit of the parties, their successors, assigns, and personal representatives as may be applicable;

24.     The Parties acknowledge that they have consulted with and received advice from such legal counsel and/or other advisors as deemed necessary relative to this matter, including the terms of this Agreement and the advisability of executing this Agreement.  Each Party represents and warrants that it/he/she understands the legal effect and content of this Agreement, and is executing same as its/his/her own knowing and voluntary act and deed;

25.     All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and any such reassignment, and shall inure to the benefit of Assignor, Assignees and their respective successors and assigns of any party hereto; provided, however, that the obligations of Assignor and Assignees contained herein shall continue and remain in full force and effect until fully paid, performed and satisfied;

26.     This Agreement, together with any exhibits hereto, constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings or representations pertaining to the subject matter hereof, whether oral or written. There are no warranties, representations or other agreements between the parties in connection with the subject matter hereof except as specifically and expressly set forth herein. This Agreement may be signed in counterparts, each of which shall be an original and all of which taken together shall constitute one agreement. No amendment of any provision of this Assignment shall be effective unless it is in writing and signed by the parties and no waiver of any provision of this Assignment, nor consent to any departure by either party from it, shall be effective unless it is in writing and signed by the affected party, and then such waiver or consent shall effective only in the specific instance and for the specific purpose for which given;

27.     Except as otherwise expressly provided herein, each of the parties hereto will pay and discharge its own expenses and fees in connection with the negotiation of, and entry into, this Agreement and the consummation of the transactions contemplated hereby;

28.     All notices, requests, demands, consents and communications necessary or required under this Agreement shall be made in the manner specified, or, if not specified, shall be delivered by hand, delivered by a recognized overnight courier or sent by registered or certified mail, return receipt requested, to:

        if to the Assignees:

        Zahari Tomov
        1 Kiril and Metodi Street
        Region: Asparuhovo
        Varna, Bulgaria 9000

        with a copy (which shall not constitute notice) to:

        Rolinski Law Group, LLC
        14915 River Road
        Potomac, MD 20854
        Attention: Sylvia J. Rolinski, Esq.

if to the Assignor:

Jeffrey H. Mims, Chapter 7 Trustee
900 Jackson Street, Suite 560
Dallas, Texas 75202

with a copy (which shall not constitute notice) to:

Norton Rose Fulbright
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Attention: Kristian Gluck

All such notices, requests, demands, consents and other communications shall be deemed to have been duly given upon receipt of delivery confirmation, or on the date on which delivered by hand (receipt confirmed), as the case may be, and addressed as aforesaid;

29.    In the event that any one or more of the provisions contained herein, or the application thereof in any circumstances, is held invalid, illegal or unenforceable in any respect for any reason in any jurisdiction, the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions hereof shall not be in any way impaired or affected, it being intended that each of the parties' rights and privileges shall be enforceable to the fullest extent permitted by law, and any such invalidity, illegality and unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the fullest extent permitted by law, the parties hereby waive any provision of any law, statute, ordinance, rule or regulation which might render any provision hereof invalid, illegal or unenforceable.  This Agreement is complete, and all promises, representations, understandings, warranties and agreements with reference to the subject matter hereof, and all inducements to the making of this Agreement relied upon by any of the parties hereto, have been expressed herein. This Agreement may not be amended except by an instrument in writing signed on behalf of the Assignor and the Assignees;

30.    THE ASSIGNEES AND THE ASSIGNORS EACH HEREBY EXPRESSLY WAIVES ITS RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OTHER PURCHASE DOCUMENT, THE CAUSES OF ACTION OR ANY DEALINGS BETWEEN THEM RELATING TO THE SUBJECT MATTER OF THIS AGREEMENT.  THE ASSIGNOR AND THE ASSIGNEES ALSO WAIVE ANY BOND OR SURETY OR SECURITY UPON SUCH BOND WHICH MIGHT, BUT FOR THIS WAIVER, BE REQUIRED OF ANY PARTY. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. THE ASSIGNOR AND THE ASSIGNEES FURTHER WARRANT AND REPRESENT THAT EACH HAS REVIEWED THIS WAIVER

WITH ITS OR HIS LEGAL COUNSEL; AND THAT EACH VOLUNTARILY WAIVES ITS OR HIS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE AND MAY ONLY BE MODIFIED IN AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT OR ANY OTHER PURCHASE DOCUMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL (WITHOUT A JURY) BY THE COURT; and

31.    All recitals are incorporated herein by reference.

[*Signature page follows*]

**IN WITNESS WHEREOF**, the undersigned have duly executed this Agreement by their duly authorized representatives as of this the _____ day of October, 2017.

**ASSIGNOR:**

By:    _____

Name: Jeffrey H. Mims, solely in his capacity as Chapter 7 United States Bankruptcy Trustee for Ayr Logistics Limited Inc.
Title: Chapter 7 United States Bankruptcy Trustee for Ayr Logistics Limited Inc.


**ASSIGNEES:**
Zahari Tomov, solely in his individual capacity

By:    _____

Name: Zahari Tomov, solely in his individual capacity
Title: Ayr Logistics Limited Inc. Creditor

AND

All Seas Property 2 OOD

By:    _____

Name: Yordanka Zhekova Georgieva
Title: Manager and Ayr Logistics Limited Inc. Creditor

WITH ITS OR HIS LEGAL COUNSEL; AND THAT EACH VOLUNTARILY WAIVES ITS OR HIS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS IRREVOCABLE AND MAY ONLY BE MODIFIED IN AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT OR ANY OTHER PURCHASE DOCUMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL (WITHOUT A JURY) BY THE COURT; and

31.     All recitals are incorporated herein by reference.

*[Signature page follows]*

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement by their duly authorized representatives as of this the **25** day of October, 2017.

**ASSIGNOR:**

By:

Name: Jeffery H. Mims, solely in his capacity as Chapter 7 United States Bankruptcy Trustee for Ayr Logistics Limited Inc.
Title: Chapter 7 United States Bankruptcy Trustee for Ayr Logistics Limited Inc.

**ASSIGNEES:**
Zahari Tomov, solely in his individual capacity

By:

Name: Zahari Tomov, solely in his individual capacity
Title: Ayr Logistics Limited Inc. Creditor

AND

All Seas Property 2 OOD

By:

Name: Yordanka Zhekova Georgieva
Title: Manager and Ayr Logistics Limited Inc. Creditor

AND

Asset Management EAD

By:

Name: Svetlozar Krasenov Kasabov
Title: Executive Director  and Ayr Logistics Limited Inc. Creditor

AND

Asset Management EAD

By:

Name: Nikolay Georgiev Hubenov
Title: Executive Director  and Ayr Logistics Limited Inc. Creditor

AND

Rudersdal EOOD

By:

Name: Erik Bresling
Title: Shareholder and Ayr Logistics Limited Inc. Creditor

AND

Rudersdal EOOD

By:

Name: Michael Bertelson
Title: Shareholder and Ayr Logistics Limited Inc. Creditor

REMAINDER OF THIS PAGE DELIBERATELY LEFT BLANK!!