UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUDERSDAL, EOOD, et al. | ) Case No. 18-cv-11072 (GHW-)-(RWL) |
| | ) |
| | ) [rel. 19-cv-01762] |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Declaration |
| PHILIP ROBERT HARRIS, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF JEFFREY L. MCCLANAHAN IN SUPPORT OF PLAINTIFFS CLAIMS

I, Jeffrey L. McClanahan, declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury that:

1. I am over twenty-one (21) years of age, of sound mind, and capable of making this Declaration. All of the facts and statements contained herein are within my personal knowledge and are, in all things, true and correct.

2. I am the sole owner and Chief Executive Manager of SEEK Foundation, LLC ("Seek").

3. Seek was formed by me on February 19, 2008, to invest in and develop real estate and other housing projects and to support the poor and underprivileged children. Seek is an acronym for "Save Eastern European Kids." Seek is a Missouri limited liability company, with its address at 404 Timberidge Drive, Saint Peters, Missouri 63376.

4. In early 2009, Seek was asked by Chavdar Angelov to assist with a real estate project in Bulgaria being developed by Ayr Logistics and Mr. Angelov. I knew Mr. Angelov from

prior proposals to build foster homes for children in Europe. At the time Mr. Angelov was a US green card holder.

5. As owner and Chief Executive Manager of Seek I adopted a resolution that Seek would support Ayr Logistics Limited, Inc. ("Ayr") in its Silver Beach Project Reorganization Plan funding. Mr. Phillip Harris and his local Bulgarian partner, Mr. Chavdar Angelov, had already solved the matter regarding land purchase by non-EU citizens by creating the necessary Bulgarian entity Ayr Property Development AD ("APD"). The Constitution of Bulgaria at that time prohibited no European Union person from owning land in Bulgaria, thus forcing Harris and Ayr to incorporate local companies to hold the real property. Once Ayr acquired the land and the Silver Beach project, Ayr was to fund the project. Eventually, Ayr designed a funding structure plan for the project when in August 2011 it submitted the Reorganization Plan for APD in the APD Bankruptcy proceeding.

6. Seek made a requirement for its support by creating a mechanism for transparency in Ayr's investment project. The mechanism should have protected Seek from violations of the US laws as compliance with the standards acting in the USA regarding properties and capitals owned by US persons abroad was expected.

7. In order to comply with this requirement Harris and Angelov proposed that Seek acquire the controlling quota from the capital of Ayr's local partner in the Silver Beach project – All Seas Bulgaria EOOD ("ASB"). Angelov owned ASB and through it, Seek could control ASP2 as well, the company through which Ayr had acquired the ownership over the Silver Beach project in December 2009.

8. At the end of 2010 Seek acquired 99% from Mr. Angelov's Bulgarian company, which Mr. Angelov used to cooperate with Mr. Harris in Ayr's project Silver Beach – ASB. See a

true and correct copy of the Incorporate Certificate of ASB attached hereto as Exhibit [A] and Incorporate Certificate of ASP2 attached hereto as Exhibit [B].

9. The other Members – Silver Trust EAD, Chavdar Angelov and PIDB2, who owned ASP2 together with ASB terminated their participation in ASP2. As a result, at the end of 2012, being owner of ASB, Seek became sole owner of ASP2 as well. See a true and correct copy of the applications for termination of participation by Angelov, Silver Trust EAD and PIDB2 in ASP2 attached hereto as Exhibit [C];

10. At the beginning of January 2011 Seek presented a declaration in support of the Ayr's reorganization plan for APD. See a true and correct copy of Seek's Declaration attached hereto as Exhibit [D].

11. Ayr's reorganization plan was supported by the sale of the Mexican bonds. West Low Group, P. C., State of Virginia, USA was designated escrow services. I have this knowledge based on my personal quota in the transaction with the Mexican bonds. See a true and correct copy of the Wire Disbursement on 12 July 2011 attached hereto as Exhibit [E]

12. Mr. Harris had direct participation in the transaction with the Mexican bonds. Mr. Harris' personal participation in the Mexican bonds transactions was achieved pursuant to his personal agreements with Mr. Matthew Mateev, President of the Bulgarian First Investment Bank AD ("Fibank"). The agreements contracted for Ayr to make payments in favor of Fibank from Harris controlled Oriana Capital Partners bank account, opened for the needs of the Silver Beach project at HSBC, New York. Pursuant to the performance of the Agreement of 4 June 2010, which Mr. Harris and Ayr had signed with Fibank. See a true and correct copy of the Letter of Mr. Harris to Mr. Mateev dated 27 January 2011 attached hereto as Exhibit [F]

13. The agreement between Harris and Fibank dated 4 June 2010 regarded Fibank's monetary claims based on two Fibank bank loans granted to PIDB2 in 2007 and 2008 which were used for the purchase of the Mexican bonds. This agreement also included a third Fibank bank loan in amount of 8,000,000 Euros, arranged by Mr. Harris and Mr. Angelov with Fibank to be granted to the Plaintiff Asset Management EAD ("AM") and designated to cover the interests under PIDB2's bank loans by 30 June 2010 – the date on which Mr. Harris and Fibank were to finalize the agreement of 4 June 2010 through the bank account Oriana Capital Partners at HSBC, New York. See a true and correct copy of the Mortgage receivables sale and purchase agreement on 4 June 2010 attached hereto as Exhibit [G].

14. In February 2013 the Bulgarian Court denied Fibank's request to be allowed as creditor in APD's bankruptcy proceeding. Harris and Fibank were aware that the money from PIDB2's 2007 and 2008 bank loans used for the purchase of the Mexican bonds could never be considered as an investment in Ayr's project Silver Beach. Harris and Fibank were unable to complete their agreement of 4 June 2010, because the resale of the Mexican bonds never happened. Mr. Anthony Harriot pursuant to his contract with Harris for the resale was to be paid IOE. See a true and correct copy of the Contract of Mandate of 19 January 2011 attached hereto as Exhibit [H].

15. Based on APD's reorganization plan, Harris and Ayr focused their actions at the consolidation of the monetary claims allowed at APD's bankruptcy. See a true and correct copy of the Letter of reference of Regions Financial Corporation of 29 December 2010 attached hereto as Exhibit [I] and a true and correct copy of the Reorganization plan of 15 August 2011 attached hereto as Exhibit [J].

16.     Acting through ASP2, Seek supported Ayr's reorganization plan for APD. ASP2 being the major creditor at APD's bankruptcy, signed with Ayr the agreement of 28 March 2012. See a true and correct copy of Agreement of 28 March 2012 attached hereto as Exhibit [K].

17.     Pursuant to the agreement of 28 March 2012 Ayr succeeded to be allowed as main creditor of APD's bankruptcy due to the purchase of the monetary claims of ASP2, Rudersdal EOOD and AM. Ayr resumed its activity to consolidate the remaining monetary claims that had been allowed as valid at APD's bankruptcy. Thus, despite the dismissal of Ayr's reorganization plan for APD by the Bulgarian Court, Ayr managed to perform the consolidation parameters foreseen in the organization plan, legitimizing itself as the full owner and creditor of the money cumulated from the sale of the land from the Silver Beach project. See a true and correct copy of the Order of receivership of The Targovishte District Court, No.270 of 15 December 2012 attached hereto as Exhibit [L]

18.     The Bulgarian National Revenue Agency admitted in its Resolution No. 798 dated 18 February 2013 that the monetary claim for which the Agency had been allowed as a creditor at APD's bankruptcy, was in fact an obligation of ASP2. See a true and correct copy of the Decision No. 798 of NRA of 18 February 2013 attached hereto as Exhibit [M].

19.     UniCredit Bulbank, AD was allowed as a creditor in APD bankruptcy case alleging certain unpaid debts owed by ASB for loans borrowed in 2006 and 2008. Harris acting on behalf of Ayr had agreed to repay those debts only if UniCredit Bulbank, AD would lodge legitimate payment claims. In early March 2016 Ayr Trustee demanded that UniCredit Bulbank, AD produce proof to validate its claims, which however the bank failed to do. See a true and correct copy of the Request of Trustee of Ayr of 3 March 2016 attached hereto as Exhibit [N].

20. Seek had confirmed the validity of the undertaken commitments to transfer the monetary claims previously purchased from Corporate Commercial Bank AD ("CCB"), pursuant to which CCB had been already allowed as a creditor of APD's bankruptcy. Such commitment was also undertaken on behalf of the other creditor in APD's bankruptcy – the Bulgarian company Kota Energy EAD.

21. Therefore, Ayr owned all 100% of the monetary claims in APD's bankruptcy, however, because the opportunity to convey APD's reorganization plan was denied, Ayr was unable to release and use the money deposited in APD's bank accounts at CCB accumulated from the sale of the land from Ayr's project Silver Beach.

22. The CCB funds could not be used by Fibank either. Fibanks attempts to gain access to the funds initially were neutralized by the APD Trustee and APD creditors, pursuant to the provisions of the UN Convention Against Corruption despite the support of Mr. Harris to gain access to funds. See a true and correct copy of the Report of Trustee of APD, Ms Ganka Kolyovska of 20 June 2014 attached hereto as Exhibit [O].

23. In the summer of 2014 Mr. Harris was unable to release the money from the Mexican bonds because a buyer was still being sought. For reasons regarding the UN Convention Against Corruption the money from the bank account of Oriana Capital Partners at HSBC, New York could not be used. Thus, practically the agreement of 4 June 2010 with Fibank could not be performed, not until Fibank and Harris would find a resolution for the swap of their interests in their Mexican bonds, 2010 agreement.

24. On 10 October 2014 Mr. Harris filed No Assets Bankruptcy for Ayr, and by the end of November, or the beginning of December it became clear that Fibank had found a way to acquire Ayr's CCB money from the Silver Beach project and to dispose of the money.

25. As a result of these circumstances Ayr was unable to perform its obligations towards its creditors undertaken on 28 March 2012 and 27 November 2013, to be paid in Deutsche Bank, New York. See a true and correct copy of the Supplemental Agreement on 27 November 2013 attached hereto as Exhibit [P].

26. With the No Assets Bankruptcy filed for Ayr, Mr. Harris and Fibank evaded the provisions of the UN Convention Against Corruption and US laws, which prohibited the use of Ayr's $65 millions US dollars arising from it's foreign Silver Beach.

27. Mr. Harris and Fibank had an agreement to finalize the exchange of their interests from the participation in the Mexican bonds transaction and the restoration of the money from the bank loans, described in the agreement dated 4 June 2010, at the bank account Oriana Capital Partners opened at HSBC, New York, and needed to stick to these arrangements.

28. Mr. Harris and Fibank did not have the right to undertake and perform the actions, which led to the acquisition of the monetary funds from Ayr's project Silver Beach, against the interests of Ayr's creditors, who had entrusted their rights and interests to the application of the laws of the State of New York. Namely, pursuant to the laws of the New York State, Ayr managed to consolidate in full amount the valid monetary claims from APD's bankruptcy, undertaking an obligation to pay the creditors at Deutsche Bank, New York.

29. All my actions as owner and Chief Executive Manager of SEEK, and all Seek's actions as the only owner of ASP2, and all ASP2's actions as the majority creditor (with the largest Ayr debt) of Ayr, in the Silver Beach project were based on the agreement that compliance with the laws of the New York State were mandatory. This agreement provided a guarantee to make the investment and that the transaction would be void of fraud and criminality. This agreement as

to New York State laws was to prevent graft and corruption by Bulgarian authorities and politicians and protect against any illicit stealing.

30. The present Declaration confirms the true nature of the above described facts and the true nature of the facts included in the Declaration of 6 September 2018, issued by me to be used at case No. 14-34940-bjh-7, before the US Bankruptcy Court for the Northern District of Texas, in support of Ayr's Trustee's investigation of the monetary transfers from ASP2's bank account at Fibank into the bank account of All Seas Management at Bank of Valletta, Malta. See a true and correct copy of the Declaration by Jeffrey McClanahan of 6 Sep 2018 attached hereto as Exhibit [Q].

31. The theft of $65 million US dollars from APD's bank account at CCB, which was under the Court's supervision, on one side, and the refusal of the Bulgarian authorities to undertake actions for their restoration and transfer to Ayr's Trustee, on other side, as well as the fact that Bulgaria does not grant corruption and money laundering victims the right to defend themselves before the Court and to achieve compensation, confirms the proper character and the significance of the parties choice of law and venue of the New York State, made by Ayr's creditors with the agreements signed with Ayr on 28 March 2012 and 27 November 2013.

32. Harris' January 27, 2011 letter to Mateev of Fibank regarding their swap agreement particularly cites at the end of the second page the three Fibank bank loans which formed the basis for the June 4, 2010 Harris and Fibank agreement, and pursuant to which Anthony Harriott was authorized by Harris to effectuate the swap on January 9, 2011.

33. The October 28, 2010, SWIFT MT799 from Bulgarian Investbank AD to HSBC, NY, regarding the Oriana Capital Partners HSBC account in NY, also addresses the three bank loans to Fibank. See Exhibit R – Ayr's "Damages Note" to Investbank, Fibank, UniCredit Bulbank

dated December 3, 2010. See Exhibit S – Ayr's "Damages Note" to BNB dated December 20, 2010.

34. These loans make up Fibank's payment claims against Port Investment Development Bulgaria 2 EAD and Asset Management EAD. They are the basis for the loan/Mexican bonds swap agreement with performance at the deliberately created for this purpose Oriana Capital Partners account at HSBC, NY.

35. Viewing the above documents together, it appears that the July 4, 2010 in Harris/Ayr letter to Mateev is a typographical error and should be June 4, 2010.

36. Additionally, I am unaware of any other agreement besides the June 4, 2010 agreement between Harris, Ayr and Fibank, for the purchase of the three Fibank loans.

*[The Remainder of the This Page Is Left Blank Intentionally.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

September 24, 2019          Respectfully submitted,

By: *Jeffrey L. McClanahan*
Jeffrey L. McClanahan

# LIST OF CITED DOCUMENTS

# IN THE DECLARATION OF JEFFREY L.MACCLANAHAN

| EXHIBIT NO. | DOCUMENT |
|---|---|
| Exhibit A | Exhibit A Incorporation and Good Standing Certificate of ASB on 9 October 2012 |
| Exhibit B | Exhibit B Corporate Certificate of ASP2 on 5 June 2009 |
| Exhibit C | Statement of Chavdar Angelov of leaving ASB, 21 March 2011; Statement of Chavdar Angelov of leaving ASP2, 5 November 2010; Statement of PIDB2 EAD of leaving ASP2, 27 December 2012 Statement of Silver Trust EAD of leaving ASP2, 13 February 2013 |
| Exhibit D | Declaration SEEK in support of Ayr's Reorganization plan for APD, January 2011 |
| Exhibit E | Wire Disbursements, 12 July 2011 |
| Exhibit F | Philip Harris Letter to M.Mateev on 27 January 2011 |
| Exhibit G | Mortgage receivables sale and purchase agreement of 4 June 2010 |
| Exhibit H | Harris and Harriott Contract of Mandate of 19 Jan 2011 |
| Exhibit I | Letter of reference by Regions Financial Corporation of 29 December 2010 |
| Exhibit J | Reorganization Plan for APD, 15 August 2011 |
| Exhibit K | Agreement of March 28, 2012 |
| Exhibit L | Order of receivership No.270 of 15 December 2012 as entered by the Targovishte District Court |
| Exhibit M | NRA Decision No. 98 of 18 February 2013 |
| Exhibit N | Ayr Trustee Request of 3 March 2016 |
| Exhibit O | APD Trustee Ms Ganka Kolyovska's Report of 20 June 2014 |
| Exhibit P | Supplemental Agreement dated November 27, 2013 |
| Exhibit Q | Declaration by Jeffrey McClanahan of 6 Sep 2018 |
| Exhibit R | Ayr Notice of damages to Investbank AD, Fibank, UniCredit Bulbank, Attorney Tomov dated December 3, 2010 |
| Exhibit S | Noice of Ayr to BNB dated December 20, 2010 |
| Attachment A | CV Jeffrey McClanahan |