# EXHIBIT 51

Maria Nakova

To

ayrlog@yahoo.com allseas.chavdar@gmail.com

CC

Me

Oct 9 at 5:33 PM

To the attention of

Mr. Phillip Harris – President of Ayr Logistics Limited Inc. and Executive Director of Ayr Property Development AD

E-mail: ayrlog@yahoo.com

Mr. Chavdar Angelov – Chairman of the Board of Directors of Ayr Property Development AD

E-mail: allseas.chavdar@gmail.com

Attorney-at-law Dimitar Yanakiev, Varna Bar Association

E-mail: d_ianakiev@yahoo.com

Report on the problems in connection with the preservation of the investment rights of Ayr Logistics Limited Inc. in the bankruptcy procedure of Ayr Property Development AD

Written by – Attorney-at-law Maria Nakiva, representing the interests of Ayr Property Development AD pursuant to a Power-of-attorney dated 23rd May 2013

City of Botevgrad

Date – 9th October 2014

Sent via email

Dear Mr. Harris,

Dear Mr. Angelov,

As you can see yourselves from the documents attached (Motion by Asset Management AD dated 28th July 2014; Report by the Trustee in bankruptcy of Ayr Property Development AD dated 20th June 2014; Bank deposit contract No. 29428 dated 14th January 2013 signed between Ayr Property Development AD and Corporative Commercial Bank), Ayr is facing the following obvious problems:

1. The monetary funds in the amount of 97 500 000 BGN, deposited at the account in Corporative Commercial Bank AD are at stake after the pretentions of First Investment Bank AD. These pretentions by the present moment are being put in the conditions of actual execution, even though being appealed against pursuant to the international law provisions pointed out in the attached documents. All our attempts to request the hearing of our protests pursuant to the Civil Law Convention on Corruption of the Council of Europe and the United Nation Convention against Corruption, remain traversed by the Court.

2. The receivable acquired under the Cession Agreement with Investbank AD in the amount of 4 700 000 Euros by the present moment is being cashed by a bailiff in favour of the bank even though this receivable and the mortgages for it are a property from the bankruptcy estate of Ayr Property Development AD.

3. The Trustee in bankruptcy Kolyovska, because of her work for the preservation of Ayr Property Development AD's property, was forced to lay down her position after the pressure, exerted on her by First Investment Bank AD and the Court. The new Trustee in bankruptcy is impossible to contact with and is totally idle and inactive for the measures that must be taken for the preservation of the bankruptcy estate.

**4. From the analisys of the problems described, I made the conclusion for the necessity of the following actions to be taken:**

a. Ayr Logistics Limited Inc should take immediate measures in accordance with the mechanism provided in the Treaty between the Governemnts of Bulgaria and USA concerning the encouragement and recipropal protection of investment and to request not-discriminational treatment of their investment rights and property, owned by the investment enterprise Ayr Property Development AD;

b. Ayr Logistics Limited Inc should take immediate measures in accrdance with the US law to avoid the risk of paying debts with questionable origin that requires reporting before the financial investigation organs;

c. Ayr Logistic Limited Inc should take immediate measures before the bankruptcy Court of Ayr Property Development AD and the other legislative bodies in Bulgaria aimed at the preservation of the property of the bankruptcy estate following the measures undertaken by Investbank AD and First Investment Bank AD.

5. Following the above explained circumstances, I had a conversation with the colleague wrom whom I took my engagement as an attorney of Ayr Property Development AD in the bankruptcy procedure – attorney Zahari Tomov. Unfortunately he explained that due to a pending arbitration claim for an unpaid fee there is a conflict situation that does not allow him to undertake the defence of the interests of Ayr Logistics Limited Inc.

6. For that reason I discussed the opportunity with attorney Dimitar Yanakiev who is very well aware with the problems of the bankruptcy procedure at the European Court procedure under case No. C-488/2013. I felt convinced that he agrees with the arguments in favour of the direct representation of Ayr Logistics Limited Inc in the defence of the investment rights and property ina way that all maters, explained in the attached documents, are settled by the international law provisions. That's why I propose to your attention the opportunity to appoint attorney Dimitar Yanakiev to undertake the neccesary measurs on behalf of Ayr Logistics Limited Inc for the defence of these investment rights and property against the attempts of Investbank AD and First Investment Bank AD to cash them in their favour.

I would be glad if the present statement was useful for your interests.

Respectfully submitted,

Attorney Maria Nakova

http://buy.norton.com/specialoffers?VENDORID=YAHOO

- 4 Attachments
- View all
- Download all
- Asset's-to-Trustee-&-Creditors-Committe-case-730-ShDC-en-blanka
  .pdf
  Download View
- Doklad Sindik 20-06-2014-Bg-En
  .pdf
  Download View
- FIXED-TERM DEPOSIT AGREEMENT-14-Jan-2013-APD-CCB-en
  .pdf
  Download View
- Minutes-APD-Creditors-Meeting-30-June-2014-En
  .pdf
  Download View

https://us-mg4.mail.yahoo.com/neo/launch?.rand=867rhjkg8qcs8

# EXHIBIT 52



# Фрея Freya
# Транслейшънс Translations

**Преводи от и на чужди езици**

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

**CORPORATE COMMERCIAL BANK**

01/12/2014 10:16:14  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 01 8 |
| IBAN: | BG21 KORP 9220 2029 0120 01 |
| Currency: | BGN |
| Balance at the beginning of the period: | 97,500,000.00 |

**BANK ACCOUNT STATEMENT**

| | |
|---|---|
| **Parameters:** | |
| Period: from – to: | 6th November 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | Accounted |

| Accounted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 06/11/2014 | 06/11/2014 | 146062 | Termination of deposit<br>Interest accumulated on Deposit transaction No.29428 upon ex-officio termination made on 24th October 2014 pursuant to Notice of Cession No.9764/24th Oct. 2014<br>BGN 2,708.33 interest accrued | Credit | 2,708.33 | 97,502,708.33 | Accounted |
| 06/11/2014 | 24/10/2014 | 146063 | Multi-line Payment Order<br>ACCOUNTED TRANSFER OF RECEIVABLES OF FILING NO.9764/24.OCT.2014 BETWEEN THE CEDENT – AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) AND THE CESSIONARY – FIRST INVESTMENT BANK AD PURSUANT TO APPROVED DECISION NO.461 OF THE CONSERVATORS OF CORPORATE COMMERCIAL BANK IN FURTHERANCE OF ORDER NO.3-273 OF 27TH OCT. 2014 | Debit | 97,502,708,33 | 0.00 | Accounted |
| 06/11/2014 | 24/10/2014 | 288581 | Interest<br>Interest accrued on deposit transaction No. 29428 | Credit | 108,441.67 | 108,441.67 | Accounted |
| 06/11/2014 | 24/10/2014 | 288582 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date. Transaction No.29428 | Debit | 108,441.67 | 0.00 | Accounted |

*The undersigned, Boryona Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bank Account Statement from Corporate Commercial Bonk AD. This translation has 1 (one) page.*

Translator: _____

*Boryana Ilieva Stefanava*



01.12.2014 10:16:14 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 01 8 |
| IBAN | BG21 KORP 9220 2029 0120 01 |
| Валута | BGN |
| Салдо в началото на периода | 97 500 000.00 BGN |

## Извлечение

| | |
|---|---|
| Параметри | |
| Период от - до | 06.11.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Осчетоводена |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 06.11.2014 | 06.11.2014 | 146062 | Прекратяване на депозит | Кт | 2 708.33 | 97 502 708.33 | Осчетоводен |
| | | | Олихвяване на "Депозитни суми" номер 29428, | | | | |
| | | | при служебно прекратяване към 24.10.2014 | | | | |
| | | | съгласно уведомление за изрок 9784/24.10.2014 | | | | |
| | | | Начислена лихва в размер на 2708.33 BGN. | | | | |
| 06.11.2014 | 24.10.2014 | 146063 | Многоредово бордеро | Дт | 97 502 708.33 | 0.00 | Осчетоводен |
| | | | ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ | | | | |
| | | | С ВХ.Н.9784/24.10.2014 | | | | |
| | | | МЕЖДУ ЦЕДЕНТ ЕЪР ПРОПЪРТИ ДЖНЕЛОПМЪНТ АД и | | | | |
| | | | И ЦЕСИОНЕР ПЪРВА ИНВЕСТИЦИОННА БАНКА АД, | | | | |
| | | | СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ №.481 НА КВЕСТОРИТЕ | | | | |
| | | | НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД Н. 3-2732/27.10.2014 | | | | |
| 06.11.2014 | 06.11.2014 | 288581 | Олихвяване | Кт | 108 441.67 | 108 441.67 | Осчетоводен |
| | | | Олихвяване на "Депозитна сума" номер 29428. | | | | |
| 06.11.2014 | 06.11.2014 | 288582 | Падеж по депозит | Дт | 108 441.67 | 0.00 | Осчетоводен |
| | | | Олихвяване на депозит на падеж. Сирома номер 29428 | | | | |



# *Фрея* **Freya**
## *Транслейшънс* *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## CORPORATE COMMERCIAL BANK

01/12/2014 10:16:01  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 02 5 |
| IBAN: | BG91 KORP 9220 2029 0120 02 |
| Currency: | BGN |
| Balance at the beginning of the period: | 2,000,000.00 |

**BANK ACCOUNT STATEMENT**

**Parameters:**

| | |
|---|---|
| Period: from – to: | 6th November 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | Accounted |

| Accounted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 06/11/2014 | 24/10/2014 | 146064 | Multi-line Payment Order ACCOUNTED TRANSFER OF ACCOUNTS RECEIVABLE OF FILING No.9764/24.OCT.2014 BETWEEN THE CEDENT – AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) AND THE CESSIONARY – FIRST INVESTMENT BANK AD PURSUANT TO APPROVED DECISION No.461 OF THE CONSERVATORS OF CORPORATE COMMERCIAL BANK IN FURTHERANCE OF ORDER No.3-273 OF 27TH OCT. 2014 | Debit | 2,000,000,00 | 0.00 | Accounted |
| 06/11/2014 | 06/11/2014 | 295063 | Interest Interest accrued on deposit transaction No. 39033 | Credit | 313.18 | 313.18 | Accounted |

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bank Account Statement from Corporate Commercial Bank AD. This translation has 1 (ane) page.*

Translatar: _____
*Boryano Ilieva Stefanova*

 КОРПОРАТИВНА
ТЪРГОВСКА БАНКА АД

01.12.2014 10:18:01 (Сч. Дата: 06.11.2014)

| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Приети срочни депозити от търговски предприятия в лев | |
| Аналитичен номер | 1613 290120 02 5 | |
| IBAN | BG91 KORP 9220 2029 0120 02 | |
| Валута | BGN | |
| Салдо в началото на периода | 2 000 000.00 BGN | |

**Извлечение**

| | |
|---|---|
| Параметри | |
| Период от - до | 06.11.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Осчетоводена |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 06.11.2014 | 24.10.2014 | 148054 | Многоредово бордеро ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ С ВХ.Н.9784/24.10.2014 МЕЖДУ ЦЕДЕНТ ЕЪР ПРОПЪРТИ ДИВЕЗОПМЪНТ АД/И/ И ЦЕСИОНЕР ПЪРВА ИНВЕСТИЦИОННА БАНКА АД, СЪГЛАСНО ОДОБРЕНО РЕШЕНИЕ N.461 НА КВЕСТОРИТЕ НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД Н. 3-273/27.10.2014 | Дт | 2 000 000.00 | 0.00 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 295063 | Описание Описание на 'депозитна сметка' номер 39033. | Кт | 313.18 | 313.18 | Осчетоводена |



# *Фрея* **Translations**
## *Транслейшънс* *Freya*

### Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## CORPORATE COMMERCIAL BANK

01/12/2014 10:15:46  (Accounting date 06/11/2014)

| | |
|---|---|
| **Holder:** | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| **Account:** | Short-term deposits in BGN of business entities |
| **Analytic No.:** | 1613 290120 03 2 |
| **IBAN:** | BG64 KORP 9220 2029 0120 03 |
| **Currency:** | BGN |
| **Balance at the beginning of the period:** | 1,000,000.00 |

**BANK ACCOUNT STATEMENT**

| | |
|---|---|
| **Parameters:** | |
| Period: from – to: | 6th November 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | Accounted |

| Accounted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 06/11/2014 | 24/10/2014 | 146068 | Multi-line Payment Order<br>ACCOUNTED TRANSFER OF ACCOUNTS RECEIVABLE OF FILING NO.9764/24.OCT.2014 BETWEEN THE CEDENT – AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) AND THE CESSIONARY – FIRST INVESTMENT BANK AD PURSUANT TO APPROVED DECISION NO.461 OF THE CONSERVATORS OF CORPORATE COMMERCIAL BANK IN FURTHERANCE OF ORDER NO.3-273 OF 27TH OCT. 2014 | Debit | 1,000,000,00 | 0.00 | Accounted |
| 06/11/2014 | 06/11/2014 | 295900 | Interest<br>Interest accrued on deposit transaction No. 40116 | Credit | 514.81 | 514.81 | Accounted |

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bank Account Statement from Corporate Commercial Bank AD. This translation has 1 (one) page.*

Translator: _____
Boryana Ilieva Stefonova



| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 03 2 |
| IBAN | BG64 KORP 9220 2029 0120 03 |
| Валута | BGN |
| Салдо в началото на периода | 1 000 000.00 BGN |

**Извлечение**

| Параметри | |
| Период от - до | 06.11.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Осчетоводена |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 06.11.2014 | 24.10.2014 | 145098 | Многоредово бордеро ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ С ВХ.Н 9764/24.10.2014 МЕЖДУ ЦЕДЕНТ ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД/И И ЦЕСИОНЕР ПЪРВА ИНВЕСТИЦИОННА БАНКА АД, СЪГЛАСНО ОДОБРЕНО РЕШЕНИЕ N.461 НА КВЕСТОРИТЕ НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАКОНА/Л Н. 3-2733/27.10.2014 | Дт | 1 000 000.00 | 0.00 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 295900 | Описание Описание на Документа с/сметка номер 40116. | Кт | 514.81 | 514.81 | Осчетоводена |



# Фрея  Freya
## Транслейшънс  Translations

**Преводи от и на чужди езици**
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## CORPORATE COMMERCIAL BANK

01/12/2014 10:15:31  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special bank accounts of business entities in BGN |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 2,464,442.00 |

**BANK ACCOUNT STATEMENT**

**Parameters:**

| | |
|---|---|
| Period: from – to: | 6th November 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | Accounted |

| Accounted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 06/11/2014 | 24/10/2014 | 146069 | Multi-line Payment Order ACCOUNTED TRANSFER OF ACCOUNTS RECEIVABLE OF FILING No.9764/24.OCT.2014 BETWEEN THE CEDENT – AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) AND THE CESSIONARY – FIRST INVESTMENT BANK AD PURSUANT TO APPROVED DECISION No.461 OF THE CONSERVATORS OF CORPORATE COMMERCIAL BANK IN FURTHERANCE OF ORDER No.3-273 OF 27TH OCT. 2014 | Debit | 2,464,238,26 | 203.74 | Accounted |
| 06/11/2014 | 06/11/2014 | 148935 | Interest Interest accrued – | Credit | -20.53 | 183.21 | Accounted |
| 06/11/2014 | 06/11/2014 | 288582 | Deposit Maturity Date Interest accrued on deposit's maturity date. Transaction No.29428 | Credit | 108,441.67 | 108,624.88 | Accounted |
| 06/11/2014 | 06/11/2014 | 306010 | Aggregate fee collection Commission calculated at the Bank's rates | Debit | 7.50 | 108,617.38 | Accounted |

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bank Account Statement from Corporate Commercial Bank AD. This translation has 1 (one) page.*

Translator: _____
*Boryana Ilieva Stefanova*



ЦЕНТРАЛНА ТЪРГОВСКА БАНКА АД

01.12.2014 10:15:31 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 2 464 442.00 BGN |

### Извлечение

| | |
|---|---|
| Параметри | |
| Период от - до | 06.11.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Осчетоводена |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кр | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 06.11.2014 | 24.10.2014 | 146069 | Многоредови бордеро ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗИМАНЕ С ВХ.N.9764/24.10.2014 МЕЖДУ ЦЕДЕНТ ЕЪР ПРОПЪРТИ ДИВЕЛОПМЪНТ АД И ЦЕСИОНЕР ПЪРВА ИНВЕСТИЦИОННА БАНКА АД, СЪГЛАСНО ОДОБРЕНО РЕШЕНИЕ N.461 НА КВЕСТОРИТЕ НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАГ.ПИШ.N. 3-3732/27.10.2014 | Дт | 2 464 238.26 | 203.74 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 146035 | Описание Описание . | Кр | -20.53 | 183.21 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 308582 | Падеж по депозит Описание на депозит на падеж. Сделка номер 29426 | Кр | 108 441.67 | 108 624.88 | Осчетоводена |
| 06.11.2014 | 06.11.2014 | 306010 | Мас/ранго събрана такса комисионна по тарифа на банката | Дт | 7.50 | 108 617.38 | Осчетоводена |

# EXHIBIT 53



# Фрея ⟨F⟩ Freya
## Транслейшънс   Translations

### Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:30:22 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

6th November 2014/ 146120

Reference: 0

30th October 2014 / 1

Details of transfer:

-------------------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10209 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Sibole Services Incorporated Bulgaria EOOD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

-------------------------------------------------------------------------------------

Sibole Services Incorporated Bulgaria EOOD

First Investment Bank


1711 000543 02 5              17,000,000.00 Debit     17,000,000.00  30/10/2014 BGN
1.000000       0
1713 458162 02 0             17,000,000.00 Credit    17,000,000.00  30/10/2014 BGN
1.000000       0

---

*The undersigned Boryana Ilieva Stefonova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10209 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____
    *Boryana Ilieva Stefanova*

17.11.2014,17:30:22(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146120
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:
-------------------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10209/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД
БЪЛГАРИЯ ЕООД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. З-2732/27.10.2014
-------------------------------------------------------
    СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД БЪЛГАРИЯ ЕООД
    ПЪРВА ИНВЕСТИЦИОННА БАНКА

1711 000543 02 5        17 000 000.00  Dt      17 000 000.00  30.10.2014  BGN
1.000000        0
1713 458162 02 0        17 000 000.00  Kt      17 000 000.00  30.10.2014  BGN
1.000000        0



# Фрея Freya
## Транслейшънс Translations

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

/ 146124

Reference: 0

30th October 2014 / 1

Details of transfer:

-------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10208 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Droslian Bulgaria EOOD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

-------------------------------------------------------------------------

Droslian Bulgaria EOOD

First Investment Bank


| 1711 000543 02 5 | | 16,811,896.00 Debit | 16,811 |
| 896.00 | 30th October 2014 | BGN 1,000,000    0 | |
| 1713 467671 02 0 | | 16,811,896.00 Credit | 16,811 |
| 896.00 | 30th October 2014 | BGN 1,000,000    0 | |


*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10208 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____
Boryana Ilieva Stefanova



```
                                                            / 146124
                                                 РЕФЕРЕНЦИЯ: 0
                                                 30.10.2014  / 1

        ОСНОВАНИЕ:
        ---------------------------------------------------------
        ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
        С ВХ.№.10208/30.10.2014
        МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
        И ЦЕСИОНЕР ДРОСИЛМАН БЪЛГАРИЯ ЕООД
        СЪГЛАСНО ОДОБРЕНО РЕШЕНИЕ №.461 НА КВЕСТОРИТЕ
        НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД №.З-2732/27.10.2014
        ---------------------------------------------------------
            ДРОСИЛМАН БЪЛГАРИЯ ЕООД
            ПЪРВА ИНВЕСТИЦИОННА БАНКА




  1711 000543 02 5              16 811 896.00 Dt          16 811
  896.00   30.10.2014  BGN 1.000000           0
  1713 467671 02 0              16 811 896.00 Kt          16 811
  896.00   30.10.2014  BGN 1.000000           0
```





## Фрея Транслейшънс / Freya Translations

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:29:05 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

6th November 2014/ 146126

Reference: 0

30th October 2014 / 1

Details of transfer:

---------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10206 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Tabak Market AD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

---------------------------------------------------------------------------

Tabak Market AD

First Investment Bank

| | | | | |
|---|---|---|---|---|
| 1711 000543 02 5 | 34,400,000.00 Debit | 34,400,000.00 | 30/10/2014 BGN | |
| 1.000000       0 | | | | |
| 1713 333467 02 0 | 34,400,000.00 Credit | 34,400,000.00 | 30/10/2014 BGN | |
| 1.000000       0 | | | | |

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10206 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____

Boryana Ilieva Stefanova

17.11.2014,17:29:05(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146126
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:

-------------------------------------------------

ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10206/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ТАБАК МАРКЕТ АД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014

-------------------------------------------------

ТАБАК МАРКЕТ  АД
ПЪРВА ИНВЕСТИЦИОННА БАНКА

1711 000543 02 5            34 400 000.00  Dt        34 400 000.00  30.10.2014  BGN
1.000000       0
1713 333467 02 0            34 400 000.00  Kt        34 400 000.00  30.10.2014  BGN
1.000000       0





### Фрея Транслейшънс / Freya Translations

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:26:40 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

6th November 2014/ 146146

Reference: 0

30th October 2014 / 1

Details of transfer:

------------------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10210 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Promishleno Stroitelstvo Holding EAD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

------------------------------------------------------------------------------------

Promishleno Stroitelstvo Holding EAD

First Investment Bank

| | | | | |
|---|---|---|---|---|
| 1711 000543 02 5 | 4,578,163.33 Debit | 4,578,163.33 | 30/10/2014 BGN | |
| 1.000000    0 | | | | |
| 1713 000522 07 8 | 4,578,163.33 Credit | 4,578,163.33 | 30/10/2014 BGN | |
| 1.000000    0 | | | | |

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10210 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____

Boryana Ilieva Stefanova

17.11.2014,17:26:40(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146146
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:
-----------------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10210/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ПРОМИШЛЕНО СТРОИТЕЛСТВО ХОЛДИНГ ЕАД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014
-----------------------------------------------------
    ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД
    ПЪРВА ИНВЕСТИЦИОННА БАНКА

| | | | | |
|---|---|---|---|---|
| 1711 000543 02 5 | 4 578 163.33 Dt | 4 578 163.33 | 30.10.2014 | BGN |
| 1.000000      0 | | | | |
| 1713 000522 07 8 | 4 578 163.33 Kt | 4 578 163.33 | 30.10.2014 | BGN |
| 1.000000      0 | | | | |





*Фрея* **Freya**
*Транслейшънс* **Translations**

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:25:57 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

6th November 2014/ 146147

Reference: 0

30th October 2014 / 1

Details of transfer:

-----------------------------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10210 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Promishleno Stroitelstvo Holding EAD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

-----------------------------------------------------------------------------------------------

Promishleno Stroitelstvo Holding EAD

First Investment Bank

| | | | |
|---|---|---|---|
| 1711 000543 01 8 | 2,462,325.67 Debit | 2,462,325.67 | 30/10/2014 BGN |
| 1.000000        0 | | | |
| 1713 000522 08 5 | 2,462,325.67 Credit | 2,462,325.67 | 30/10/2014 BGN |
| 1.000000        0 | | | |

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10210 of 30th October 2014. This translation has 1 (one) page.*

Translator: *Boryana Ilieva Stefanova*

17.11.2014,17:25:57(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146147
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:
----------------------------------------------
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10210/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ПРОМИШЛЕНО СТРОИТЕЛСТВО ХОЛДИНГ ЕАД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. 3-2732/27.10.2014
----------------------------------------------
ПРОМИШЛЕНО СТРОИТЕЛСТВО -ХОЛДИНГ ЕАД
ПЪРВА ИНВЕСТИЦИОННА БАНКА

1711 000543 01 8          2 462 325.67  Dt      2 462 325.67  30.10.2014  BGN
1.000000      0
1713 000522 08 5          2 462 325.67  Kt      2 462 325.67  30.10.2014  BGN
1.000000      0





### Фрея Freya
### Транслейшънс Translations

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

17th November 2014, 17:23:33 (Recorded on 6th November 2014)
Corporate Commercial Bank AD – Sofia          page 1

<div align="center">

6th November 2014/ 146151

Reference: 0

30th October 2014 / 1

</div>

Details of transfer:

-------------------------------------------------------------------------------------

Recorded transfer of accounts receivable in the books under Ref. No. 10204 of 30th October 2014 made by and between First Investment Bank AD acting as the Cedent and Vili Vist EAD, acting as the Cessionary pursuant to approved Decision No.461 issued by the Conservators of Corporate Commercial Bank AD and in furtherance of Order No.3-2732 of 27th October 2014.

-------------------------------------------------------------------------------------

Vili Vist EAD

First Investment Bank

| | | | | |
|---|---|---|---|---|
| 1711 000543 02 5 | 10,407,000.00 Debit | 10,407,000.00 | 30/10/2014 BGN |
| 1.000000      0 | | | |
| 1713 512809 02 8 | 10,407,000.00 Credit | 10,407,000.00 | 30/10/2014 BGN |
| 1.000000      0 | | | |

---

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Recorded Transfer of accounts receivable in the books under Ref. No. 10204 of 30th October 2014. This translation has 1 (one) page.*

Translator: _____
          *Boryana Ilieva Stefanova*

17.11.2014,17:23:33(Сч.06.11.2014) КОРПОРАТИВНА ТБ АД-СОФИЯ стр.1

06.11.2014 / 146151
РЕФЕРЕНЦИЯ: 0
30.10.2014 / 1

Основание:
—————————————————————————————
ОСЧЕТОВОДЕНО ПРЕХВЪРЛЯНЕ НА ВЗЕМАНЕ
С ВХ.Н.10204/30.10.2014
МЕЖДУ ЦЕДЕНТ ПЪРВА ИНВЕСТИЦИОННА БАНКА АД
И ЦЕСИОНЕР ВИЛИ ВИСТ ЕАД,
СЪГЛАСНО ОДОБРЕНО РЕШЕНИЯ N.461 НА КВЕСТОРИТЕ
НА КТБ АД И В ИЗПЪЛНЕНИЕ НА ЗАПОВЕД N. З-2732/27.10.2014
—————————————————————————————
    ВИЛИ ВИСТ ЕАД
    ПЪРВА ИНВЕСТИЦИОННА БАНКА

1711 000543 02 5          10 407 000.00  Dt      10 407 000.00  30.10.2014  BGN
1.000000       0
1713 512809 02 8          10 407 000.00  Kt      10 407 000.00  30.10.2014  BGN
1.000000       0

# EXHIBIT 54

# Фрея ✦ Freya
# Транслейшънс ✦ Translations

**Преводи от и на чужди езици**

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533

E-mail: freyatranslations@gmail.com

*Превод от английски език*

## BULGARIAN NATIONAL BANK (BNB)

## BANKING SUPERVISION DEPARTMENT

### SUPERVISION INSPECTION REPORT

#### (*Excerpts*)

| | |
|---|---|
| **Bank:** | FIB AD (First Investment Bank) |
| **Grounds:** | Order №РД 22-0301/February 16, 2012 |
| **Reporting Period:** | December 31, 2011 |
| **Composition:** | Todor Buzolov, Nina Kirilova, Silvia Slavcheva, Dimitar Petrov |
| **Duration:** | 23 Feb. – 1st March 2012; 5th – 16th March 2012; 26th March – 12th April 2012 and 2nd – 4th May 2012 |
| **Coordinated with:** | Supervision and Monitoring of Credit Institutions Director |
| **Contact person:** | — |

The report was prepared in two identical copies, one for each party and falls with the category of documents covered by "professional secret".

### TABLE OF CONTENTS

1. Purpose, scope and sources of information ............ page 2
2. General conclusions of the inspection ............ page 2
3. Violations of regulations ............ page 4
4. Recommendations of the inspection ............ page 9
5. Violations established by previous inspections ............ page 12
6. Recommendations of previous inspections ............ page 13
7. Credit risk. Concentration risk ............ page 15
8. Liquidity risk ............ page 26
9. Sensitivity to markets ............ [omitted]
10. Operational Risk ............ page 27
11. Ability to generate profit ............ page 28
12. Capital and core capital ............ page 30





13. Internal Audit                [omitted]
14. Signatures of inspectors      [hidden]               page 32

## OBJECTIVES AND SCOPE OF THE INSPECTION

### Objectives and Scope of the Inspection

A supervisory inspection for the purpose of assessing credit, market, operational and liquidity risk, profitability, capital adequacy (core capital) and other issues related to the activities of the Bank.

### Sources of information

- Documents and records prepared and produced by the Bank, according to the letter requiring information;

- Credit files as a sample of the loan portfolio;

- Conversations and meetings with executive directors, directors of departments and employees of the Bank;

- Additional information and documents required by the inspection;

- Financial statements, statements under the regulations of the BNB, as well as periodic reports and reports prepared in the course of the on-going supervision of the Bank;

- Other;

## GENERAL CONCLUSIONS

- The credit risk is underestimated since its actual (as is) reporting and provisioning could worsen the key indicators of risk assessment. The capital position of the bank is under very high pressure from the poor quality of the loan portfolio, high concentrations, large amount of exposures to entities gravitating around the majority owners (shareholders) and certain drawbacks in the risk management systems concerning the risks undertaken. In view of the above and considering the asset increase intended by the bank, an increase of the equity is a must. Capital adequacy internal analysis definitely needs improvement and higher capital needs to be ensured to meet the requirements under the second pillar.

- The systems for identification, analysis and management of the credit risk and the concentration risk want considerable improvement

Exposure concentration into several large groups of corporate clients of various levels of relatedness exerts pressure on the capital. A large portion of the credit portfolio is formed by loans to companies of offshore ownership, which makes detecting relatedness, if any, harder and poses a greater risk for the institution. The Bank continues to violate regulatory requirements for classification of risk exposures – a significant portion of its receivables is not adequately assessed and provisioned. Various techniques to delay the manifestation of credit risk are being applied so as to improve the performance levels of asset quality and reduce the impairment charges and the amount of specific provisions. The level of provisioning is one of the lowest in the banking sector and does not correspond to the quality of the loan portfolio. Risk related to retail exposures is underestimated and credits are actively restructured in order improve the quality of this portfolio.

- The liquidity position and liquidity management are acceptable. Despite the good liquidity indicators, the liquidity position could end being under pressure if there is a slight reduction of deposits due to the established practice for permanent deferral of payments in a great deal of exposures. A perceivable trend to maintain a considerable portion of the liquid assets in the form of receivables from non-resident banks and foreign securities is detected. The opportunities for external financing are very limited.

- The Bank's exposure to market risk is low. The lender's rules and procedures for market risk control and management are adequate to the volume and scope of its activities.

- The Bank has high sensitivity to operational risk. Despite the measures taken to contain it, the quality of this type of risk management needs improvement.

- The ability of the bank to generate profit is overestimated, given the low level of provisioning and the significant share of due but unpaid interest.

- The activity of the internal audit unit needs improvement mainly where implementing the regulatory framework of the bank's assessment of credit / concentration risk and the necessary equity is concerned.

- The Bank is exposed to a relatively high risk for its goodwill.

- The bank management commits significant breaches of the regulatory framework.





## VIOLATIONS OF REGULATIONS

➢ *Article 44 Para 5 of the Law on Credit Institutions Act ("LCI"), Article 2 and Article 7 of Regulation No.7* – the exposure of Burgas Shipyards and related persons exceeds 25% of the equity of the Bank;

The Bank incorrectly reported the exposure of Burgas Shipyards in the report under Regulation No.7. Under Article 8 Para Regulation No.7 of the BNB, Paragraph 2 of the same Article applied only to cases where the guarantor meets the requirements set in Chapter Six of "Credit Risk Mitigation" of Regulation № 8 of BNB. In this case, the Burgas Shipyards cannot be deemed an eligible guarantor as they do not meet the requirements of Article 143 Para 7 applicable to legal entities-guarantors, which need to have a minimum credit rating of A+ in order to be recognized as providers of credit protection. Therefore, the hypothesis of Article 8 Para 2 does not apply to the aggregate of original borrowers covered by the "provisional" loan (including the Burgas Shipyards). The proper reporting should treat all exposures under the "provisional" loan as economically related parties and should be shown in the Regulation No.7 report with their respective balance values;

➢ Article 44 LCI with reference to §1 the Additional Provisions of the LCI and Article 2 and Article 7 of Regulation No. 7 for the following exposures:

1. Eco Farms Ltd is not included in the exposure of Gondol Ltd. (§1, item 4, letter "г" LCI);

2. BH & Via Properties Ltd. is not included in the exposure of V Estate Ltd. (§1, item 4, letter "А" LCI);

3. The exposures of Intercount Investments Limited Ltd., Sigmatura Ltd. and Santa Fe Trading Ltd. are not reported as connected parties § (1, item 4, letter "г" LCI);

4. Litex Nomere is not included in the exposure of Litex Property (§ 1, item 5 of LCI)

5. Litex Nomere is not included in the exposure of the Burgas Sugar Factory (§ 1, item 5 of LCI);

6. Elite Group 2003 Ltd. Is not included in the exposure of Coal Company Ltd (§1, item 5 of LCI);



7. Eco Farms Ltd. should be included in the exposure of Sidegreave Investments Ltd. – Cyprus (§ 1, item 5 of the LCI);

8. The loans of Argus Properties PLC should be reported with all their value in all exposures of connected parties, where they participate (Article 2 Para 1, Article 3 Para 1 and Article 7, Para 1 of the BNB Regulation No. 7);

➢ Article 45 of LCI – the exposure of Balkan Financial Services Ltd. does not include the loans of Svetoslav Stonov Moldovanski and Stanislav Bozhkov Ganev;

➢ Article 3 Para 2 of BNB Regulation No.9:

1. Loans to Bulgarian Maritime Company Ltd. should be reported in the same classification group as Intercount Investment Ltd. ("under watch", according to the inspection);

2. Loans to Litex Commerce AD should be reported in the same classification group with Burgaski Zaharen Zavod EAD (the Burgas Sugar Factory) and Litex Property EAD ("under watch", according to the inspection);

3. Loans to Libero EAD and Vidya B 04 should be reported in the same classification group as Santa Fe Trading Ltd. ("non-performing", according to the inspection);

4. Loans to Elite Group 2003 EOOD should be reported in the same classification group as Vagledobivna Kompania EOOD (meaning Coal Company) ("non-performing", according to the inspection);

5. The exposure of EAZ AD is incorrectly classified numerous times as "regular" (i.e. performing) instead of "non-performing" as consitituting a single risk with Tower Sofia;

6. The loans of Megalink EAD, Zhelezopatna Infrastruktura Holding Company (meaning Railway Infrastructure Holding) should be reclassified as "loss" since they and the National Transport Research Institute constitute a single risk;

7. The exposure of Vasil Bozhkov is incorrectly classified as "regular" rather than "loss" as it should be for being related to Zhelezopatna Infrastruktura Holding Company;



8. The exposure of the <u>Zavod za Stomanobetenovi Konstrucii I Izdelia EOOD</u> (i.e. *Reinforced Concrete Structures and Products Plant*) is incorrectly classified as "regular" instead of "loss" as it should be for being related to <u>Zhelezopatna Infrastruktura Holding Company</u>;

9. The loans of <u>Bilto Overseas Trading OOD</u> are reported by the Bank in two different classifications groups – "regular" and "under watch" simultaneously;

10.     ⟨he loans of <u>Port Investment Development – Bulgaria 2 EAD</u> are reported by the Bank in two different classification groups - "regular" and "loss" 9 simultaneously.

➢ Article 5 with reference to Paragraph 8 of BNB Regulation No.9 – the Bank incorrectly classified as "regular" the loans of <u>Eliks EOOD</u>, <u>VMP EOOD</u>, <u>Mega El EOOD</u>, <u>OTsK AD</u> (Lead and Zinc Combined Plant), <u>Kamila EOOD</u>, <u>Alpha Brands EOOD</u>, <u>SSF Steel Shipping and Forwarding AD</u> and the overdraft of <u>Minna Kompania EOOD</u> (Mine Company), which exposures have occurred as a result from fulfilment of off-balance sheet commitments;

➢ Article 5 with reference to Paragraph 9 of BNB Regulation No.9 – the Bank incorrectly classified the exposures of <u>Sigmatura Ltd.</u> and <u>New Express Finance EOOD</u> in the "regular" group instead of "under watch" one;

➢ Article 5 with reference to Article 9 Para 1 and Article 13 of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposure of <u>Bolsa EOOD</u> and <u>Intercount Investment Ltd.</u> in the "regular" group instead of in the "under watch" one;

➢ Article 5 with reference to Article 9 Paragraphs 1 and 2, and Article 13 of Regulation No.9 of BNB – as of December 31, 2011 the Bank has incorrectly classified the exposure of <u>Litex Property EAD</u> in the "regular" group instead of "under watch" one;

➢ Article 5 with reference to Article 9 Paragraph 2 (1) of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposures of <u>Patengineering-M AD</u> (Road Engineering) and the Burgaski Zaharen Zavod EAD (Burgas Sugar Factory) in the "regular" group instead of "under watch" one;

➢ Article 5 with reference to Article 9 Paragraph 1 (3) of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposure of Maritsa TPP in the "regular" group instead of "under watch" one;

➢ Article 5 with reference to Article 10 Para 1 of BNB Regulation No.9 – as of December 31, 2011, the Bank incorrectly classified the exposures of <u>Santa Fe Trading Ltd.</u>, Vagledobina Kompania EOOD (Coal Company), <u>Minna Kompania EOOD</u> (Mine Company) in the "regular" group instead of in the "non-performing" one;

➢ Article 5 with reference to Article 10 Para 1 and Article 8 Para 3 of BNB Regulation No.9 – as of December 31, 2011, the Bank has incorrectly classified the exposure of <u>Vagledobiv Bobov Dol EOOD</u> (Bobov Dol Coal Mining Company) in the "regular" group instead of in the "non-performing" one;

➢ Article 5 with reference to Article 10 Para 1 and Article 13 of BNB Regulation No.9 – as of December 31, 2011, the Bank has incorrectly classified the exposures of <u>KBS Petroleum (Middle East) Ltd.</u>, <u>Leza Ltd.</u>, <u>Patni Stroezhi  AD</u> (Road Construction) in the "regular" group instead of in the "non-performing" one;

➢ Article 5 with reference to Article 10 Para 1 of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposure of <u>Chesteam EOOD</u> in the "regular" group instead of in the "non-performing" one;

➢ Article 5 with reference to Article 10 Para 1 of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposure of <u>Outdoor Advertising Media AD</u> in the "regular" group instead of in the "non-performing" one;

➢ Article 5 with reference to Article 10 Para 1 and Article 3 Para 2 of BNB Regulation No.9 – as of December 31, 2011, the Bank incorrectly classified the exposures of <u>Sidegreave Investment Ltd</u>. in the group "under watch" instead of in the "non-performing" one;

➢ Article 5, with reference to Article 10 Para 1 and Article 2 (2) of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposures of <u>Burgaski Korabostroitelnitsi AD</u> (Burgas Shipyards), <u>Tower Sofia AD</u>, <u>Holding Patishta AD</u>, <u>Eco Farms EOOD</u>, <u>Rubin AD</u> in the "regular" group instead of in the "non-performing" one;

➢ Article 5 with reference to Article 11 Para 1 and Para 2 (2) of BNB Regulation No.9 – as of December 31, 2011, the Bank incorrectly classified the exposures of <u>Argus Imoti AD</u> and <u>DSP-1 AD</u> in the "regular" group instead of in the "loss" one;



➢ Article 5 with reference to Article 11 Para 1 and Article 2 (2) of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposure of <u>Viesteyt EOOD</u> in the "under watch" group instead of "loss";

➢ Article 5, with reference to Article 11, Para 1 and Para 2 (2), Para 3, and Article 3, Para 2 of BNB Regulation No.9 – as of December 31, 2011, the Bank incorrectly classified the exposure of <u>BH Air & Via Properties OOD</u> in the group "regular" instead of "loss";

➢ Article 5 with reference to Article 11 Para 1 and Para 2 (2) and (5), of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposures of <u>Steel Commodities AD</u>, <u>Intertrust Holding AD</u>, <u>Olovno-tsinkov Kombinat AD</u> (Lead and Zinc Combined Plant), <u>SSF Steel Shipping and Forwarding AD</u> in the group "regular" instead of "loss";

➢ Article 5 with reference to Article 11 Para 1 and Art.13 of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposure of <u>Sirius Corporation AD</u> in the group "regular" instead of "loss";

➢ Article 5 with reference to Art.11 Para 2 (2) and Art.13 of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposure of <u>Gondol EOOD</u> and <u>Regent Balkan EOOD</u> in the group "under watch" instead of as "loss";

➢ Article 5 with reference to Art.11 Para 2 (3) of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposure of <u>ABC-2004 AD</u> in the group "non-performing" instead of "loss";

➢ Article 5 with reference to Art.11 Para 2 (1) of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposures of Nadezhda Zlatanova Pesheva and Dimo Plamenov Dimitrov in the group "regular" instead of "loss";

➢ Article 5 with reference to Art.11 Para 2 (1) of BNB Regulation No.9 – as of December 31, 2011 the Bank incorrectly classified the exposures of the following individuals: Veliko Petrov, Kameliya Kostadinova, Matey Stefanov Markov, Angelina Orlinova Chausheva, Asen Vergilov Velizarov, Nikolay Tsvetanov Motkov and Maria Yordanova Tsoncheva as falling into the "regular" group instead of in the "loss" one;

➢ Article 12 and Paragraph 1 of BNB Regulation No.9 – a collateral is either incorrectly reported as "acceptable" or its size is incorrectly determined in the following exposures: <u>Argus Properties AD</u>, Entra Nomer Edno OOD</u>, Holding Patishta AD (the unfavorable for the Bank

treatment of "acceptable" collateral for "provisional" loans – as explained detail in the credit risk section – is not reflected here);

➢ Article 7 with reference to Article 12 of BNB Regulation No.9 – the Bank has not determined correctly the amount of the specific provisions for credit risk for each exposure; besides, they are incorrectly classified and their respective balance value exceeds the risk value of the relevant exposure; or in other cases the Bank accepted an incorrect value for the "acceptable" collateral securing a specific exposure;

➢ Article 7 with reference to Article 12 Para 1 of BNB Regulation No.9 – the amount of the specific provisions for credit risk ("SPCR") that the Bank classified in the group "loss" is incorrectly determined: Agromah EOOD, Mesokombinat Letnitsa OOD (the Letnitsa Meatprocessing Plant), TVL Group OOD and individual exposures of Kiril Mihalev Kirchev, Radoslav Petrov and others;

THE INSPECTION RECOMMENDS strongly that the Bank should:

1. Remove all violations of the regulatory framework.

2. Pay greater attention to the recommendations by previous inspection that have not been followed through yet.

### Credit Risk

3. The "Risk Management" Directorate should be engaged with the ongoing monitoring of credit risk in the individual exposure department so that all information supplied monthly by the business units to the Credit Committee on poorly performing exposures is timely verified and adjusted, if necessary. This will contribute to the improvement of the classification and provisioning processes, and will make timely identification of risk and its reporting better, as it will reduce erros or omissions.

4. Where loans extended by the Cyprus branch and the ones extended to entities registered abroad are concerned, risk assessment at regular intervals needs to be performed and a report thereof shall be produced to the management, accordingly.

5. To improve the reporting of "acceptable" collateral to the main application and the relevant registries in order to avoid incorrect reporting of collaterals that fail to meet the requirements as "acceptable" (their time limit for sale being expired), etc.

6.  In optimize the credit risk management a registry of "provisional" loans needs to be set up and a set of parameters determined, thus making it easy to identify which balance or off-balance exposures are secured by a "provisional" loan; how (in what proportions) the collateral securing the "provisional" loan secures the exposures, in turned secured by the latter; the unused part of the collateral of the "provisional" loan, etc..

7.  The unused part of the collateral securing the "provisional" loan must be reported off-balance as a credit commitment and a note thereof needs to be accordingly made in the supervisory report in accordance with regulations and the instructions that go with them.

8.  To analyze what caused the existing cases of incorrect classification and provisioning in some retail exposures, given however that the process should be automated. Upon analysis preparation and proper identification of the cause – measures need to be taken to remedy the situation.

9.  Restructured loans (including newly-lent ones for the purpose of repaying liabilities overdue) of individuals should not be reported as "regular" during the course of alleviated-payment period and should be classified at least in the group "under watch".

## Liquidity Risk

10.  The Bank needs to audit and report in full, as a potential cash outflow, its off-balance commitments.

11.  The Bank needs to adopt more conservative assumptions (estimations) for funds withdrawal by depositors in each possible version of a liquidity crisis, especially where individuals' resources are concerned.

## Operational Risk

12.  To optimize the online banking access provision process in order to avoid possible losses.

13.  In running an activities continuity test the Bank needs to define all relevant assumptions and the test results needs to be produced to the Bank's management in the form of an official report.

14.  To see to it and make real time operation with/access to customer data in the Cyprus branch possible and fully operational through the main program application.

11

<u>Ability to Generate Profit</u>

1. Given the significant portion of current interest charged (for in the better part of the loans it is agreed that interest will be paid on the maturity date of respective loans) and the amount of interest overdue in the bank's earnings, the proper course of action for the Bank would be to evaluate the uncertainty of receiving the cash flow from such exposures and to take measures to minimize it, accordingly.

<u>Capital</u>

1. To increase equity, so that the capital indicators [of the bank] substantially exceed the regulatory requirements.

2. Core capital internal analysis process needs improvement (specific guidelines are contained in the section on capital).

<u>Internal Control</u>

1. Analyse to what extend it is appropriate for the unit to process and deal with complaints in the light of the fact that this activity is not among its inherent functions.



### VIOLATIONS IDENTIFIED DURING PREVIOUS INSPECTIONS[2]

- *Article 5 Para 1 of BNB Regulation No.9* – The Credit Committee failed to apply all rating and classification of risk exposure criteria laid down in the Regulation.

**This violation has once again been identified during the current inspection.**

- *Article 5 Para 1 with reference to Articles 9, 10 and 11 of BNB Regulation No.9* – The bank may not classify as «performing» the following loans because they are overdue: the loans of Minna Kompania EOOD (Mining Company); Kalista 2004 OOD; New Express Finance EOOD; Patenginering – M AD (Road Engineering); Remontno Vazstanovitelno Predpriatie Kyone AD; Patni Stroezi AD (Road Constructions); ZP Consult EOOD (Railroad Consult); Transdiscount EOOD; Latis EOOD; Bagra EOOD; Burgaski korabostroitelnitsi AD (Burgas Shipyards); Holding Patishta AD (Road Holding); Correct Property EOOD; Brikel EAD; Balgarska Morska Kompania PF EOOD (Bulgarian Marine Company PF). These loans must be classified in the proper classification group.

**This recommendation was followed through in part. The bank classified the loans of RVP Kyone AD, Transdiscount EOOD and Bagra EOOD in a group of higher risk loans. Correct Property EOOD and Latis EOOD have no exposures.**

- *Article 5, Para 1 with reference to Article 3, Para 2 of BNB Regulation No.9* – The bank must reclassify the following loans on the basis of their relatedness:  Vagledobivna Kompania EOOD (Coal Mining Company); Vagledobiv Bobovdol EOOD (Coal Mining Bobovdol); Port Flot Burgas EOOD; Portovi Flot 99 EOOD; EAZ AD; Draf EOOD; Toplofikacia Pleven EAD; Megalink EAD; Zelezopatna Infrastruktura Holding (Railroad Infrastructure Holding); Argus Imoti AD (Argus Property); DSP-1 AD; TEZ Maritsa 3 AD (Maritsa Power Plant); Natsionalen Izsledovatelski Institut po Transporta OOD (National Transport Scientific Institute); Intercount Investments Ltd.

**This recommendation was not followed through. Some exposures were reclassified later on the basis of their individual assessment.**

- *Article 13, Para 4 of BNB Regulation No.9* – The exposures of Nadin Metal AD; Nadin Commerce EOOD; Nadin Trans EOOD; Tower Sofia EOOD; Regent Balkan EOOD and BH Ayr OOD have been

---

[2] The violations identified with respect to the exposures detailed below have not been remedied after receipt of the previous inspection report and the Banking Supervision Deputy Governor's Order. Some of these exposures have not been examined in the current inspection and therefore their status as at the

restructured but are still rated as "performing". These loans should be reclassified in the proper classification group.

**This recommendation was followed through in part. Only Regent Balkan EOOD's exposure has been reclassified.**

- *Article 12, Para 1 of BNB Regulation No.9* – The bank incorrectly reported the collaterals put up for some of the exposures examined as "acceptable" although they didn't meet the acceptability criteria and incorrectly assessed the risk value of such exposures and the amount of the specific provisions respectively.

**This recommendation was not followed through.**


## RECOMMENDATIONS GIVEN IN PREVIOUS INSPECTIONS

### *Credit risk*

1. Measures must be taken so that the Credit Committee applies all designated criteria for evaluation and classification of risk exposures.

**This recommendation still stands.**

2. Measures should be taken for the automatic reclassification to be made by the bank system based on the number of days of delay and for corporate loans.

**This recommendation still stands.**

3. The practice of executing numerous annexes for the loan transactions with no actual repayment under them should be limited.

**This recommendation still stands.**

4. The proposals made to the competent authorities must contain a written statement of opinion on the risk assessment under the Risk Management transactions.

**This recommendation still stands.**

5. The violations of the regulatory framework should be remedied.

**This recommendation still stands.**

6. The Risk Management Department should participate effectively in the loan process by coordinating in writing the loan transactions and giving their comments on the transactions in writing.

**This recommendation still stands.**

7. Apart from the balance data as a part of the regular financial analysis, further analysis should be made of the borrowers' company operations



and the ones of related persons/entities, as well as of the sectors in which they operate and of their abilities to repay the loans.

**This recommendation still stands.**

8. When making the assessment and classification of risk exposures, Credit Committee must apply all criteria laid down in Regulation No.9 of BNB.

**This recommendation still stands.**

### *Liquidity risk*

9. The rules and procedures for liquidity management and more specifically the Plan for Bank's liquidity management in case of liquidity crisis should be updated to comply with the effective regulatory framework.

**This recommendation was followed through.**

10. The liquidity stress test scenario – the liquidity crisis scenario should be updated by the Risk Management Department. The Inspectors are of the opinion that the assumption for the exodus of funds attracted from citizens is not sufficiently conservative.

**This recommendation has not been followed through.** The assumptions for resources (funds) withdrawal especially those for the deposits of individuals are still not conservative enough.

The levels and diversification of liquid assets, the concentrations in attracted funds and the observance of the bank's internal limits should also be analyzed in the course of liquidity risk management.

**This recommendation was followed through.**

### *Capital*

11. All irregularities and violations in the report drawn pursuant to Regulation No.8 of BNB should be rectified.

   **This recommendation can be deemed more or less followed through.**

12. The process of internal analysis of capital adequacy and capital position management should be improved.

   **This recommendation still stands.**

13. A realistic plan for additional capital support should be drafted for the purpose of ensuring sustainability of the bank's own capital

   **This recommendation still stands.**

### *Internal audit*



14. The Specialized Internal Control Unit shall use risk-based approach in its operation by focusing on the areas of highest risk for the bank. In this connection the priority of the audit of the credit and concentration risk evaluation processes and the observance of the regulatory requirements should be increased.

**This recommendation still stands.**

15. The Specialized Internal Control Unit as part of the bank's internal control function should be made aware of the findings of the supervision inspections and follow-up the remedy of the violations ascertained.

**This recommendation still stands.**

*CREDIT RISK. CONCENTRATION RISK.*

Credit risk is underestimated for if it were to be reported and provisioned for what it was, it would certainly make the following major indices plunge:

- Asset quality assessment;
- Profit generating ability;
- Capital position of the bank

The inspectors examined a sample of 140 credits extended to 49 corporate borrowers totalling to 1,355,822 thousand Bulgarian levs ("**thou BGN**") and representing 38.86% of all corporate loans and 32% of the gross amount of loans.

Upon summarizing the data the inspectors found that certain exposures amounting to 1,002,842 thou BGN of gross amount (i.e. 74% of the sample) fail to meet the criteria set in Regulation No. 9 for the group, in which the bank reported these, and in all cases are assigned a low-risk classification[3]:

> ➤ Loans of gross value of 320,699 thou BGN (23.65% of the sample) that have been classified as "performing" do meet the requirement for a group "subject to monitoring";

> ➤ Exposures in the amount of 682,143 thou BGN that have been classified predominantly as "performing" meet in fact the requirements for either the "poorly-performing" group or the "loss" one (Non-reforming loans "NPL")

Upon registering of the violations found by the inspectors certain major credit risk indices have been modified:

- The amount of the classified assets[4] in total have doubled after the inspectors added the re-classified exposures;

---

[3] 70% of the «performing» loans included in the sample have been classified to a higher-risk group by the inspectors.

[4] Gross classified assets reported by the bank as of 31st December 2011 stood at 650,377 thou BGN (15.22% of gross amount of loans) and when the inspection re-classified 813,120-thousand-lev-worth



- Over 200 Million BGN of specific provision for credit risk ("SPCR") are needed[5];

- The credits in the NPL group amount to 928,096 thou BGN or 21,72% of the gross amount of loans, while the Bank reported only 246,052 thou BGN (or 5.76% of the gross amount of loans)

**Exposure concentration into several large groups of corporate clients of various levels of relatedness exerts pressure on the capital position of the bank**

Examination of the bank's credit portfolio and the sample under scrutiny revealed several groups of corporate customer exposures where the corporate customer were represented as unrelated on the face and yet there are indications that they are related some closely, others remotely. Such groups make the better part of the bank credit portfolio (circa 60%) and are formed according to the following features they have in common:

- Companies that participated in the purchase of Kremikovtsi AD or ones processing scrap metal or doing business in other industry (the amount of these exposures exceed the amount of the capital base ("CB") reported by the bank by 1.5 times);

- Companies doing business mainly in the mining and power engineering industries (over 50% of the CB)

- Companies undertaking mainly infrastructure and road construction projects, shipbuilding, etc. (over 40% of the CB);

- Companies in the real estate industry (project financing), the principal and interests liabilities of which are agreed to be repaid periodically depending on the sale of the properties bought with borrowed funds (almost 40% of the CB);

- Companies holding stakes in hotel-keeping and travel businesses, aircraft operation, etc. (aprox.25% of the CB);

- Companies doing business mainly in the sugar processing, import and trade sector, or trade in real estate, etc. (approx. 20% of the CB);

- Companies engaged mainly in non-ferrous mining

corporate customer exposures, which until such time were classified as "performing" ones, are added together they make a total of 1,463,497 thou BGN or 34.25% of the gross loans and 23.48% of the gross assets (cf. 10.44% reported by the bank).

[5] Assuming that the "acceptable" collaterals for the "provisional" credits are treated as "acceptable" collaterals for exposures secured by the said "provisional" credits (which treatment favours the bank).

and processing (over 12% of the CB).

The finding show that the better part of these borrowers struggle to repay their liabilities. In many of these exposures the customers get concessions in the form of multiple restructuring of their debts, which results in poor actual repayment. If the inspection-made adjustments are to be taken into account the predominance of these groups over the CB will be considerable.

**Ineffective processes of examination and detection of concentrations in the credit portfolio, poor control and reporting**

➢ Gross violations have been identified in the reporting systems for large and internal exposures of related persons by different features (from legal and economic perspective), as well as poor control of these activities. The statement pursuant to Regulation No.7 reported incorrectly the existence of relatedness with respect to large exposures and with respect to internal credits, as well (please see the identified violations of Art.44 and Art.45 of the Law on Credit Institutions ("LCI");

➢ The bank has not yet rectified certain identified gaps in reporting business relatedness (see identified breaches of Para 1 (2) of the Additional Provisions of the LCI);

➢ The untoward practice of reporting credits, extended to persons that constitute a high single risk, in different classifications is still under way (see the violations of Art.3 Para 2 of Regulation No.9)

**The bank keeps failing to consider and analyse concentrations by informal features**

➢ No relatedness of customers on a single collateralisation basis has been reported. Extending of the so called "provisional" loan[6] used as security for exposures of one or more borrowers does not necessarily, according to the bank, make good grounds for reporting these as related. As of 31st December 2011 the bank had approved 369 "provisional" loans amounting to 1,713,167 thou BGN in total, while the associated "acceptable" collaterals amounted to only 441,798 thou BGN. These credits exceed the CB of the bank three times by far;

---

[6] «Provisional» loan (that is how the bank itself termed it) – is a loan that may be assumed upon meeting certain conditions and serves as security for balance and off-balance receivables owed to the bank by one or more customers. All actual collaterals are put up as security for the «provisional» loan, which has the longest possible term and the largest possible amount in order to cover all secured exposures and their respective terms. Loans that are actually assumed no collateral is put up, but as the contract says: "the repayment is secured by the amount of the extended provisional loan". Generally speaking in the event of failure to pay under any of the credits the "provisional" loan is assumed.

> ➢ **No reporting of customer relatedness by mutual indebtedness.**

A large portion of the credit portfolio is formed by loans to companies of offshore ownership, which makes detecting relatedness, if any, harder and poses a greater risk for the institution.

> ➢ The loans taken by borrowers whose owners are offshore companies are in gross amount of 1,026,934 thou BGN (29.45% of the corporate portfolio) and the credit files contain scarce, if any, information about the owners of the offshore companies;

> ➢ The credit portfolio in the bank branch office in Cyprus had growth of almost 40% and soared to 299,211 thou BGN (54% of the CB). These credits however were not reported in the Central Credit Register ("CCR"), the data related to such credits is mainly kept and processed in a separate unit of the bank and it is the latter unit that is in control of the entire credit process;

> ➢ Credits to foreign-based companies (the Cyprus branch customers are not included here) amount to 258 Million, 47% of the CB, and which are extended by the corporate banking unit of the bank's head office; a portion of these is being reported to the CCR;

> ➢ The total amount of the two groups of credits – the ones in the Cyprus branch and the ones to foreign-based companies – exceeds the bank's capital base (556,880 thou BGN) and should be subject to special monitoring by the bank management.

Reported concentrations by credit portfolio sector and product fall within the bank-set limits

> ➢ Trade sector credits take the biggest share of the credit portfolio before depreciation and it is the only sector that is beyond the bank-set limit (25%);

> ➢ The second and the third biggest shares of the portfolio are taken by the processing industry (11.75%) and the professional activities and scientific research sector (7.13%);

> ➢ Credits-to-individuals (18.11%) in the gross portfolio is below the set limit of 50%.

The Bank keeps breaching the regulatory requirements for classification of risky exposures – a considerable part of its receivables has not been properly assessed or provisioned

> ❖ Exposures that are past due and that correspond to the any of the following classification groups: "to watch", "non-performing" and "loss", are reported as falling within a more favourable classification, usually the "performing" one (please see the full list in the "Violations" Section;

- ❖ Exposures that are entirely overdue (principal and interest) and which the bank classified as such more than 180 days earlier, yet it keeps reporting these as "exposures to watch"[7];

- ❖ Failure to re-classify exposures for poor financial state or for lack of any actual receipts or continuous shortage of funds, etc. (over 33% of the sample)[8]

- ❖ Exposures of related persons that constitute a single risk are reported in different classification groups (described in detail in the identified violations of Art.3 Para 2 of Regulation No.9);

- ❖ Credits amounting to 47,547 thou BGN that have arisen from off-balance commitments are reported as "performing"[9]

- ❖ Credits extended to companies that have been declared bankrupt are not reported correctly (i.e. in the relevant classification group)(eg. AVB 2004 AD)

- ❖ Credits extended to the one and the same borrower are reported in different classification groups (Bilto Overseas Trading OOD, Port Investment Development - Bulgaria 2 EAD, etc.)

- ❖ Unauthorized overdrafts, which the bank booked as credits when the borrowers became unable to pay the banking fees and charges due, are reported elsewhere and not in the relevant customer's other credits group[10];

- ❖ Restructured exposures are still being reported as "performing"[11];

- ❖ Collaterals that fail to meet the requirements for "acceptable collaterals" as defined in Regulation No.9 are nonetheless acknowledged as acceptable[12];

---

[7] Precis-Inter Holding AD, Stenstroy Engineering EOOD, Bagra EOOD, Viesteyt EOOD and others.

[8] DSP-1 AD, Argus Imoti AD, AVB-2004 AD, Tower Sofia EOOD; EAZ AD, Regent Balkan EOOD, Gondol EOOD, Vagledobivna Kompania EOOD (Coal Mining Company), Vagledobiv Bobovdol EOOD (Coal Mining Bobovdol), Litex Property EAD, Outdoor Advertising Media AD, Zelezopatna Infrastruktura Holding AD (Railroad Infrastructure Holding Company), Bolsa EOOD, Viesteyt EOOD, Burgaski Korabostroitelnitsi AD (Burgas Shipbuilding Yard), Holding Patishta AD (Roads Holding), etc.

[9] Eliks EOOD, VMP EOOD, Mega L EOOD, OTsK AD, Kamila EOOD, Alfa Brands EOOD, SSF Stil Shipping and Forwarding AD, etc.

[10] Port Investment Development – Bulgaria 2 EAD and others.

[11] Tower Sofia EOOD, EAZ AD, Patinzhinering-M AD (Road Engineering-M AD), DSP-1 AD, Argus Imoti AD, Vagledobivna Kompania EOOD (Coal Mining Company), KBS petroleum (Middle Esat) Ltd., Leza Ltd., Zelezopatna Infrastruktura Holding AD (Railroad Infrastructure Holding Company) and others.

[12] Holding Patishta AD, Argus Imoti AD and others.

❖ As a result from the above violations the amount of the SPCR required is incorrectly provisioned.

The Bank employs various techniques to delay manifestation of the credit risk as much as possible, thus improving the asset quality indices, reducing depreciations costs and cutting down the amount of the specific provisioning

1. **The majority of such techniques involve multiple modifications of a company credit terms and conditions as a result of which manifestation of the otherwise existing real credit risk is delayed.**

   ➢ Negotiating long grace periods for interest and/or principal and subsequent multiple annexing of the credit contracts to make granting of a new grace period possible resulting in deferral of the payment due, while however the loan debt is still being reported as "performing" all along. Such type of credits make a considerable part of the Bank's corporate segment (95% of the sample) and are the largest and the riskiest exposures;

   ➢ A one-time maturity of credit principal and, more often than not, of the interest, as well[13]. 37% of all inspected credits in the sample have the entire debt repayment agreed to be made on the maturity date (whether originally or an a subsequent annex). These are usually large corporate loans extended for the purpose of financing large investment projects involving purchase of real estates and development where the repayment is entirely dependent on the successful implementation and sale of the relevant project. The credits agreed to be repaid in a lump sum amount to 235,319 thou BGN (5.53% of the gross amount of the loans), all of which however are reported as "performing";

   ➢ Maturity date deferral in order for the credit to remain in the same classification group;

   ➢ Repayment of principal and interests by means of a newly-extended credit to the same borrower or to a person related to the borrower;

   ➢ Multiple annexing of loan contracts for the purpose of further deferring of payment overdue and reducing the amount of payment overdue or

---

[13] EAZ AD, Zelezopatna Infrastruktura Holding AD (Railroad Infrastructure Holding Company), Patinzhinering-M AD (Road Engineering-M AD), Tower Sofia EOOD, Regent Balkan EOOD, Gondol EOOD, KBS petroleum (Middle Esat) Ltd., Sigmatura Ltd., Leza Ltd., Eltrade Company EOOD, Valpet Consult EOOD, Nadin Metals Trade EOOD, etc.

eliminating it altogether (43% of the sample). This practice often goes hand in hand with long grace periods, thus giving the Bank perfunctory grounds to report similar exposures[14] as "performing" or "to watch";

➢ Repayment of debt by transfers between internal bank accounts with respect to borrowers whose accounts have been attached by the authorities or other banks, and yet such exposures are still being reported as "performing" (TEC Maritsa 3 AD ("Marista 3 Thermal Power Plant AD"), Holding Patishta AD ("Roads Holding AD", Minna Kompania EOOD ("Mining Company EOOD"), etc.);

➢ Credits where on-going interest accruals are in large amounts (indicative of frequent deferrals of the debt for borrower's inability to repay) and lacking "acceptable" collaterals are reported as "performing"[15]

## 2. Credit portfolio quality is artificially improved by transfers (ceding) of bad exposures to legal entities that are willing to buy those and pay for them with money borrowed from the bank itself (Sirius Corporation AD, Sikinos Trading Ltd., Outdoor Advertising Media AD).

## 3. Restructured credits Incorrectly reported as "performing".

Upon expiration of the term for recognizing certain collaterals used as security for certain credits as "acceptable" the Bank will have to allocate a considerable amount of funds for

➢ Added pressure on the bank equity is put by exposures where the term for recognizing certain collaterals used as security for certain credits as "acceptable" is about to expire in the next few months (notably Port Investment Development – Bulgaria 2 EAD – for over 69 Million Levs) and the Bank will be required to

---

[14] DSP-1 AD, Argus Imoti AD, Tower Sofia EOOD, EAZ AD, Patinzhinering-M AD (Road Engineering-M AD), Vagledobivna Kompania EOOD (Coal Mining Company), Outdoor Advertising Media AD, Regent Balkan EOOD, Gondol EOOD, Zelezopatna Infrastruktura Holding AD (Railroad Infrastructure Holding Company), Gondol EOOD, Leza Ltd., Eltrade Company EOOD, Valpet Consult EOOD, Nadin Metals Trade EOOD, etc.

[15] Sikinos Trading Ltd. (16 Million Levs of principal plus & Million Levs of current interest accrued); Mamonas Services Ltd. (21 mio levs of principal and 2 mio levs of interest); Sigmatura Ltd. (18 mio levs of principal and 1 mio levs of interest); Eco Farms EOOD (12 mio levs of principal and 10 mio levs of interest); Sidegrave Investment Ltd. (13 mio levs of principal and 11 mio levs of interest), etc.

SPCR

allocate additional amount of funds for SPCR (Art.12 Para 4 of Regulation No.9 and § 1 (1))

The inspectors have expressed their reservations regarding the Bank's practice to use the term "acceptable" for collaterals put up as security for "provisional" loans and to recognize such collaterals as "acceptable" with respect to real exposures, secured by the "provisional" loan[16]

A similar practice of "automatic recognition" would be improper from a regulatory perspective, since liquidation of the collaterals in question in satisfaction of the debts owed to the Bank and initiating the relevant liquidation procedure is neither "unconditional" nor expressly provided for in the contracts involving the real exposures. In the event of performance failure under certain real exposures, the latter are replaced by an exposure that has arisen from assuming of money extended under a "provisional" credit. This however does accelerate the credit in question immediately, nor does it necessarily mean that a procedure to liquidate the collateral used as security for the "provisional' credit will be initiated immediately.

> Where the lender-borrower relationship arising from a real loan is concerned there exists no legal remedy for the Bank that might have enabled it to treat and report the collaterals (i.e. real estate mortgaged in favour of the Bank) put up as security for the "provisional" credit as collaterals securing the real credit, inasmuch as no recording of a mortgage securing the latter has been done. The strictly formal nature of the procedure to record a mortgage requires the mortgage to be created over individually identified properties and at a fixed amount of money. The elements of a mortgage recording have been exhaustively described in the relevant law, according to which apart from the strict requirement for providing identification details of the property, of the amount of the secured receivable, of the debtor and of the creditor, in order for a mortgage to be recorded the contract giving rise to the creditor's receivable needs also to be produced. The Bank treated a portion of the value of the real estate mortgaged as security for the so called "provisional" loan as an "acceptable collateral" for securing the so called "real transaction", while at the same time it is unclear which legal act would be the proper one to prove the existence of a "first rank mortgage" that would meet the requirements set in

---

[16] The inspectors also have reservations about the practice to report «acceptable» collaterals that meet the requirements of §1 (1) (a) of Regulation No.9 as credit security in drawing up the report required under Regulation No.8.

Regulation No.9. Given the aforesaid we are of the opinion that there exist no legal grounds that might justify the Bank's policy to treat the collaterals put up as security for the "provisional" credit as collaterals sufficient to secure other credits extended to the same borrower or to third parties.

➢ Along with the above comments on the supervising treatment of collaterals it should be taken into account that the provisional loan agreement provides the possibility for accelerating the loan in case of default by the borrowers in the so called "real transactions", which means that in case of such default there are no contractual provisions, which might prevent the bank to proceed to satisfy its accounts receivable due under such "provisional" loan, by selling the collaterals

**The inspection is of the opinion that the non-used portion of the collateral put as security for the "provisional" loan should be accounted as loan commitment and reported in the supervising reports in accordance with the regulations and instructions on the application of such regulations respectively.**

| | |
|---|---|
| The "acceptable" collaterals put up to secure corporate loans do not provide sufficient security | According to the information[17] provided by the bank 36% of the gross amount of corporate credit portfolio is covered by "acceptable" collaterals within the meaning of Regulation No.9.

For small loan exposures the above share is 48% and 69% for SMEs, which ensures greater protection of the bank from facing problems with non-payment. |
| The bank's level of provisioning is one of the lowest one in the national banking and does not correspond to the quality of the credit portfolio | The bank is known for maintaining low provisioning levels (depreciation and SPCR), way below the average levels of the national banking system, which does not correspond to the quality of the credit portfolio. **The credit risk loss coverage in the credit portfolio is 3.25% (where the average values for the national banking system is 10.25%) and the level of assets provisioning is 2.23% (7.11% nationwide).** |

---

[17] Given that according to the presumption favourable to Bank, an «acceptable» collateral under «provisional» loan could be treated as «acceptable» collateral for the exposures secured by such «provisional» loan.

*[Text omitted]*

Toxic assets management is organized jointly with the Business units and is centralized

The toxic assets management is centralized for corporate loans and SMEs (Small and Middle-sized enterprises). Toxic Assets and Provision Department carries out this operation jointly with the experts who disburse the loans. Although structural and functional changes were made for the purpose of process optimization, we believe that still certain issues with monitoring the problematic loans exist:

- There are cases of loans classified as "loss", which have not been entirely provisioned[18].
- The Department does not prepare any reports on its operation, which might assist the management in decision-making and follow up of the problematic accounts receivable collection process.

The number of the companies against which lawsuits have been brought increased by 42 compared to the previous year (where the net balance value of the corporate loans amounts to BGN 3,672 thousand). Court judgments in favour of the bank were delivered for 643 corporate loans with total debt in the amount of BGN 16,788. The proceeds from liquidation (sale) of collaterals as at the date of this inspection amount to BGN 476 thousand.

Credit risk management and control and identification systems are non-satisfactory and need significant improvement.

The inspection found out significant improvements in the processes and systems for credit risk assessment, where the most significant problems are as follows:

- ➢ The policy of the management (the Supervising[19] and Managing Board) and the practices established for granting substantial debt relief for some of the borrowers, without affecting the risk assessment for such exposures;
- ➢ The work of the Credit Committee in loan risk evaluation in transactions with individuals and for the classification of risk exposures is ineffective. The process of drafting and summarizing the required information, on the basis of which adequate classification and provisioning of exposures is made,

---

[18] Agromah EOOD, Mesokombinat Letnitsa OOD, TVL Group OOD.

[19] According to the limits determined (for exposures exceeding BGN 2 million) for the different levels of authority for disbursing, renegotiating and restructuring of loans, the main responsibility is borne by the Supervising Board.

ФРЕЯ ТРАНСЛЕЙШЪНС ООД ВАРНА BULGARIA "FREYA TRANSLATIONS" Ltd. VARNA

needs to be improved:

- The recommendation given by several supervising inspections for an automatic reclassification in case of overdue payments for all loan exposures, which results in violations, has not been followed through.

- The repayment plans in the information system are not updated on time, which affects the number of days in delay;

- There are serious gaps in the information about the status of the exposures submitted by the business units (such as Corporate Banking, SMEs and Credit Portfolio Management of overseas companies Departments) to the Credit Committee. The inspection also found out a number of cases of overdue loans and/or bad loans that should have been transferred to a higher-risk classification group, which were not reported to the Credit Committee, which in turn results in systematic omissions and violations of the supervising regulations. The connections/relations between borrowers, especially the economic connections, are not properly investigated nor reflected in the relatedness system, which reduces the credibility of the supervising reports drawn thereafter. No investigations are made for the purpose of identifying the offshore owners of borrower entities, which makes the lending and monitoring processes non-transparent and risky;

- Toxic Assets and Provisions Department does not exercise sufficiently effective control over the proper registration of the acceptable collaterals for the most risky exposures, which is one of its obligations. Cases of wrong reporting of "acceptable" collaterals were ascertained, which didn't meet the requirements – mostly about the term for their sale. This on its turn automatically results in wrongful calculation of the amount of specific provisions and credit risk;

- The procedures, the rules and the control over the implementation of the resolutions adopted by the Credit Committee for loan restructuring need improvement for the purpose of reflecting properly the classifications and provisions in the bank's reports.

> The work of the **Risk Management Department** showed no improvement:

- This unit makes a risk assessment before the approval of individual exposure of a corporate client or in the event of subsequent change of contractual conditions (annexing), but is not responsible for monitoring the risk of the exposure. Said monitoring is recommended to be carried out by the Department, so that the information, which is spread to the business units of the Credit Committee on a monthly basis, about deteriorating exposures to be checked and corrected if necessary. This would contribute to improving the classification and provisioning process, the earlier risk identification and reporting as well as limiting the gaps and omissions;

- The processes for credit risk analysis, evaluation and control are not efficient both for the individuals exposures and the bank and are not adequate for the entity's risk profile;

- The analysis, assessment and control of concentration risk in the bank's assets made by the Risk Management Department is incomplete and focused on concentrations, which are not the riskiest one for the bank.

## LIQUIDITY RISK

### Conclusions/Assessments

Despite the good liquidity indexes, the bank's liquidity would suffer even from the tiniest drop of deposits.

### Comments/Supporting data

> Multiple re-negotiating of large credits and repeated deferral of repayments, along with negotiation of credits agreed to be repaid in a lump sum decreases significantly the actual cash inflow over long periods of time. In this situation even a slight drop in deposits may call for restructuring of assets by reducing their easily liquidated portions.

> The Bank's scarce options for support from outside sources of financing [20] in the event of need for liquidity support;

> Lowered institutional rating [21] additionally limits the financing options from monetary markets, if need be;

---

[20] Long-term rating by Fitch (up to December 31, 2011: -BB-, short-term –B, Negative outlook. The bank almost does not participate in the inner banking market.

- Existing imbalance in the maturity structure of the assets and liabilities due to financing long-term credits by means of short-term attracted funds.

There is a perceptible tendency to keep a significant part of the liquid assets in the form of receivables from non-resident banks and foreign securities.

As of December 31, 2011 the liquid assets amount to 1.527.933 thou BGN where:

- 50,30% of them are in cash and cash balances with the Bulgarian National Bank ("**BNB**");
- Over 40% is the amount of receivables from foreign (non-resident) banks and foreign debt securities (mostly French and Belgian government securities);
- Appr. 9% Bulgarian government securities;
- 0,5% gold.

In the report pursuant to Regulation No.11 not all off-balance commitments have been correctly entered, which leads to a better-looking maturity structure.

Non-assumed credit commitments only are reported as off-balance positions, which renders a more favourable picture of the net and aggregate inflows/outflows that what the real situation looks like, especially for the first tow reporting periods. The inspection recommends inclusion of the other off-balance commitments in accordance with the instructions of the Regulation

*[Text omitted]*

## OPERATIONAL RISK

### *Conclusions/assessment*

The quality of operational risk management needs improvement despite the implemented risk-reducing measures.

The quality of operational risk management needs improvement on account of the following:

- Lack of technical option for operating the main program app with the Cyprus branch data base in real time;
- Incongruity between reclassification signs and the classification groups in the main program application in determining the type of collaterals, etc., as a result of which the amount of the specific provisions under Regulation No.9 is incorrectly calculated;
- Operational flaws in tracking down expenditure and in controlling receipts for some of the exposures, respectively.

[21] Since Marc 2012, Finch decreased the so-called Vitability Rating from b+ to b, which equals to «vulnerable opportunity to remain active without support».

"ФРЕЯ ТРАНСЛЕЙШЪНС" ООД ВАРНА BULGARIA VARNA "FREYA TRANSLATIONS" Ltd.

**[omitted text]**

## ABILITY OF THE BANK TO GENERATE PROFIT

The ability of the bank to generate profit is overestimated.

The profit reported by the credit institution as of December 31, 2011 is 36,503 thou BGN, which is 18,37% increase for a one-year period (cf.30,838 thou BGN as of December 31, 2010). The increase in the financial result is a consequence of the increased net interest earnings (by 16,96%) and earnings from fees and charges (by 27,72%), where the increase as an absolute value is higher than the increase in administrative expenses and depreciation.

The profit of the bank for 2011 is shown to stand at a higher level than the actual one be means of:

➢ Low depreciation costs inconsistent with the worsened quality of the credit portfolio:[22]

• The bank fails to observe the normative requirements for classification of exposures[23], thus minimizing the depreciation costs;

• Covering credit risk losses by depreciation is insufficient – more than two times lower than the average level for the banking system;[24]

• If risk exposures were to be adequately provisioned, the institution's financial result would have been negative.

➢ A significant part of the institution's earnings comes from currently accrued interest (a great part of them has been agreed for repayment on the maturity date of the respective credits) and from overdue interests entered in the balance sheet. The bank failed to estimate the uncertainty of receipts from these exposures adequately, and failed to take measures to minimize it, accordingly.

---

[22] This inspection findings have revealed that the bank reported level of classified credits is unrealistically low and that the credit portfolio provisioning level is inconsistent with the high credit risk taken by the institution and does not ensure sufficient buffer to cover the risk of loss. The worsened quality of the credit portfolio and the insufficient amount of provisions set aside may lead to considerable loss, which may exert pressure on the profitability of the institution and endanger its capital position.

[23] Much higher quality than the actual one has been reported as was reported significantly lower level of depreciation of the credit portfolio.

[24] As of the date of this inspection the depreciation is 34.370 thousand leva. This is a 33,91%-increase over one-year period. However, credit risk losses in the credit portfolio covered by way of depreciation is merely 3,05% (one of the lowest levels for the banking system).

| | |
|---|---|
| Interest accrued and interest overdue make a significant share of the bank's earnings. | This is a result from the drop in the credit quality and from the inspection-identified practice to defer interests payment by credit re-negotiating and re-structuring.

As of December 31, 2011 earnings from interest stood at 424,497 thou BGN. As of the same date the amount of the current interest[25] earned from corporate credits was 230,390 thou BGN, while the amount of interest overdue was 75,179 thou BGN. A considerable part of current interest (44,12% equal to 101,653 thou BGN) was earned from 10 credits, and 71,81% of the interest overdue (53 983 thou BGN) was earned from 10 credits, as well. A significant part of these exposures are of poor quality, low level of provisioning and most of them were extended to related persons or entities. |
| Most of the main profitability indicators are lower than the average levels for the banking system | ➢ Return on assets (ROA) did not change significantly over the one year period and as of December 31, 2011 the ROA is 0,66% (cf.0,68% as of December 31, 2010), given that the ROA average value for the banking system is 0,78%.

➢ Return on equity (ROE) is an exception showing an increase over the one-year period and reaching up to 8,30%, a value above the average for the system.

➢ The net interest margin has dropped from 3,35% as of December 31, 2010 to 3,21% as of December 31, 2011 due to the higher level of interest-earning assets when compared to the net interest earnings one. The net interest margin is significantly lower than the average in the system (4,16%), mainly influenced by the extremely high price of the attracted funds (at 5,43% while the average in the system stands at 3,35%).

➢ The Bank's efficiency has not improved and remains at lower than the average levels in the banking system. The overall costs make 92,35% of the overall earnings and the ratio has changed slightly over the one-year period, while the operational expenses (administrative expenses and impairment costs) make 69,25% of the net financial and operative earnings. In comparison to the average levels in the banking system, these proportions are |

[25] The summarized information is from the bank's corporate credit portfolio. The current interest and interest overdue values include interest from previous years, as well.

higher with FIB and this is a lasting tendency.

*[Text omitted]*

## Capital and capital adequacy

| Conclusions/Assessments | Comments/Information in support |
|---|---|
| **The Bank's equity is insufficient to cover the risks.** | As at December 31, 2011 the bank reported general capital adequacy ratio of 12.32 % and tier 1 capital adequacy of 10.28%, which ratios are close to the regulatory minimum and the minimum recommended levels.<br><br>**If the bank's credit risk was properly identified and provisioned adequately, the levels of the capital indexes would have been significantly more unfavorable compared to the once officially reported to the Bulgarian National Bank. The inspectors are of the opinion that the actual state of some of the main indexes is as follows:**<br><br>➢ The amount of the capital base[26] is significantly lesser than the one the bank reported on December 31, 2011;<br><br>➢ The total capital adequacy ratio is below the regulatory minimum established;<br><br>➢ The adequacy of the primary capital is below the 10% minimum recommended by BNB;<br><br>➢ The ratio[27] between the net classified assets and the capital base is deteriorating. |
| **A significant portion of the capital base is formed by the funds of offshore companies and the price of the debt instruments is high.** | Capital base elements produced by offshore companies:<br><br>➢ A total of 27% of the share capital is made of shares held by Legnano Enterprise Limited, Cyprus and Domenico Ventures Limited, British Virgin Islands;<br><br>➢ 100% of the hybrid instruments[28] included in the tier 1 capital; |

---

[26] Apart from the capital adequacy ratio, the amount of the capital base also affects the maximum amount allowed for: large and internal exposures, the bank's investments pursuant to Art.17 of the Credit Institutions Act, the net open currency position, and etc.

[27] According to the information provided by the bank, the net classified assets amount to 93.16% of the capital base.

[28] Privately released emissions of termless, subordinated, unsecured bonds issued by FIB AD, meeting the requirements of Art.3, Para 1 (6) with reference to Art.3a, Para 1 and Art.4, Para 2 (2) of Regulation No 8. By Order РД 22-0740/April 18, 2011 the amount of the first tranche of the emission – EUR 20 mio was included in the tier 1 capital. The bonds were subscribed by Restonia Marketing Limited, British Virgin Islands and the interests accrued under these bonds is 12.75%.

"ФРЕЯ ТРАНСЛЕЙШЪНС" ООД ВАРНА BULGARIA VARNA "FREYA TRANSLATIONS" Ltd.

    ➢ 59% of the subordinated term debt included in the capital base[29] is due to Hillside Apex Fund Ltd. and Growth Management Limited.

**The inspection team is of the opinion that a significantly larger capital under the second pillar is needed.**

    ➢ Wrongful identification of the requirements under the first pillar;

    ➢ The level of reliability established in the bank's credit risk evaluation internal model is very non-conservative and suggests a high-risk profile of the bank. The brief description of the credit risk evaluation model shows that when a probability distribution was generated through a Monte Carlo simulation a standard, normal probability distribution was set, which is something that doesn't usually happen in practice;

    ➢ The concentration risk is high and was not sufficiently reported by the bank institution[30] (especially for credit concentrations based on economical relatedness), which suggests higher capital requirement than the one reported.

    ➢ In the report under Regulation No 8 the unused amounts of approved loans (of any type) were reported with 0% conversion factor[31] (most-favorable treatment for the bank institution). Generally the bank does not refuse the use of funds under approved loans, because of debtors' aggravated creditworthiness. This lead the inspections to conclude that the bank's actual exposure to credit risk is higher than the one reported by the bank to BNB in its report under Regulation No 8.

    ➢ This inspection does not fully agree[32] with the bank's practice of having collaterals that meet the requirements of Art.39 of Regulation No 8 and put as securities under "provisional" loans, to be account as securities under actual exposures secured by a "provisional" loan;

    ➢ The portion of "pravisional" loans not used for security should be accounted off-balance as a loan commitment and be weighed as a credit risk

---

[29] The interest ratio under these debts vary betweem 13.25% – 14%.

[30] See the conclusions and comments regarding the concentration risk in the asset quality section.

[31] Regulation No.8 allows similar treatment (under certain conditions) and in this case no formal violation of the regulatory framework exists.

[32] Similar to the comments for «acceptable» collaterals made in the asset quaility section.

respectively;

- A higher buffer for liquidity risk[33] might be provided, considering the growth of the bank's reputation risk and the relatively large number of clients who are using the remote banking service, which allows a very fast transfer of funds to other institutions.

**The capital adequacy internal analysis process needs to be improved.**

- The overall credit portfolio provisioning is insufficient and inconsistent with the amount of the bank's exposure to credit risk;
- Improvement of the process of identifying the amount of the additional capital under the second pillar;
- There are no forecasts about the amount of the specific provisions;
- There are no forecasts about the necessary capital support for a term of one year or a longer period.

**Considering the underrated quality of the asset and the envisaged growth of the bank, the latter needs an equity increase from external sources with high level of transparency.**

The Bank's profit is insufficient for being the current sole source of capital increase[34] considering:

- The reporting of the supervisory corrections under the first pillar;
- The increase of the capital requirements under the second pillar;
- The contemplated growth of the asset with more than 11% (BGN 688 mio) for 2012.

**[omitted text]**

Inspection team members: (names)

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Bulgarian National Bank's Supervisory Inspection Report on First Investment Bank AD, prepared in 2012. This translation has 32 (thirty-two) pages.*

*Translator:* [signature] *Ilka Simeonova Dyulgerova*

---

[33] The capital contemplated for liquidity risk under ICAAP (Internal Capital Adequacy Assessment) is BGN 17 mio.

[34] A second tranche of EUR 20 mio bonds emission is contemplated, which meet the requirements for inclusion in the tier 1 capital, but no information has been provided whether or not this could happen in 2012.

ФЕЯ ТРАНСЛЕЙШЪНС ООД ВАРНА BULGARIA VARNA FEREYA TRANSLATIONS Ltd.



## БЪЛГАРСКА
## НАРОДНА БАНКА
### УПРАВЛЕНИЕ "БАНКОВ НАДЗОР"

## ДОКЛАД

## ОТ НАДЗОРНА ИНСПЕКЦИЯ

| | |
|---|---|
| *Банка* | **ПИБ АД** |
| *Основание:* | **Заповед №РД 22-0301/16.02.2012г.** |
| *Отчетен период:* | **31.12.2011г.** |
| *Състав:* | **Тодор Бузолов, Нина Кирилова, Силвия Славчева, Димитър Петров** |
| *Времетраене:* | **23.02-01.03.2012г.; 05-16.03.2012г.; 26.03-12.04.2012г. и 02-04.05.2012г.** |
| *Съгласуван с:* | **Директор ННКИ** |
| *Лице за контакт:* | |

**Докладът е изготвен в два еднообразни екземпляра, по един за всяка страна и представлява професионална тайна.**

## СЪДЪРЖАНИЕ

1.  Цел, обхват и източници на информация                              стр. 3

2.  Общи заключения на инспекцията                                    стр. 4

3.  Нарушения на регулации                                           стр. 5

4.  Препоръки на инспекцията                                         стр. 8

5.  Нарушения от предходни инспекции                                 стр. 10

6.  Препоръки от предходни инспекции                                 стр. 11

7.  Кредитен риск. Риск от концентрации                              стр. 13

8.  Ликвиден риск                                                    стр. 22

9.  Чувствителност към пазарен риск                                  стр. 24

10. Операционен риск                                                 стр. 26

11. Способност за генериране на печалба                              стр. 28

12. Капитал и капиталова адекватност                                 стр. 30

13. Вътрешен одит                                                    стр. 32

14. Подписи на извършилите инспекцията                               стр. 33

## ЦЕЛ И ОБХВАТ НА ИНСПЕКЦИЯТА

### Цел и обхват на инспекцията

Надзорна инспекция за оценка на кредитен, пазарен, операционен и ликвиден риск, доходност, капиталова адекватност и други въпроси свързани с дейността на банката.

### Източници на информация

- Изготвените и представени от банката документи и справки, съобразно писмото за изискуема информация;

- Кредитни досиета по извадка от кредитния портфейл;

- Разговори и срещи с изпълнителни директори, директори на дирекции и служители на банката;

- Допълнително представени справки и документи, изискани от инспекцията;

- Финансови отчети, отчети по наредбите на БНБ, както и периодични справки и доклади, изготвяни в процеса на текущото наблюдение на банката;

- Други.

3

## ОБЩИ ЗАКЛЮЧЕНИЯ

- Кредитният риск е подценен, като реалното му отчитане и провизиране би влошило основните показатели за оценката на риска. Капиталовата позиция на банката е под много голям натиск от влошеното качество на кредитния портфейл, високата степен на концентрации, големия размер на експозициите към юридически лица, гравитиращи около мажоритарните собственици и недостатъците в системите за управление на поетите рискове. Предвид горепосоченото и предвиденото от банката нарастване на активите е необходимо увеличаване на собствения капитал. Необходимо е подобрение на вътрешния анализ на адекватността на капитала и подсигуряване по-висок капитал за покриване на изискванията по втори стълб.

- Системите за идентифициране, анализ и управление на кредитния риск и риска от концентрации се нуждаят от чувствително подобрение. Концентрациите на експозиции към няколко големи групи от корпоративни клиенти с различни индикации за обвързаност оказват силен натиск върху капитала. Голяма част от кредитния портфейл е формирана от кредити, предоставени на дружества с офшорна собственост, което затруднява установяването на свързаност, съответно увеличава риска за институцията. Банката продължава да допуска нарушения на регулаторните изисквания за класификация на рисковите експозиции - значителна част от вземанията й не са адекватно оценени и провизирани. Прилагат се различни похвати за отлагане проявлението на кредитния риск, с което се подобряват стойностите на показателите за качество на активите, намаляват се разходите за обезценка и размера на специфичните провизии. Степента на провизираност е една от най-ниските в банковата система и не съответства на качеството на кредитния портфейл. Рискът при експозициите на дребно е подценен, като активно се преструктурират кредити с цел подобряване качеството на този портфейл.

- Състоянието и управлението на ликвидността са на приемливо ниво. Въпреки добрите показатели за ликвидност, ликвидната позиция би се оказала под силен натиск при малко намаление на депозитите, предвид установената практика за постоянно отлагане на плащанията за голяма част от експозициите. Налице е тенденция за поддържане на голяма част от ликвидните активи под формата на вземания от банки нерезиденти и чуждестранни ценни книжа. Възможностите за външно финансиране са силно ограничени.

- Експозицията на банката към пазарен риск е ниска. Прилаганите от институцията правила и процедури за контрол и управление на пазарния риск са адекватни на обема и обхвата на дейността й.

- Банката е с висока чувствителност към операционен риск. Въпреки предприетите мерки за ограничаването му, качеството на управление на този риск се нуждае от подобрение.

- Способността на банката за генериране на печалба е надценена, предвид ниското ниво на провизираност и значимият дял на дължимите, но неплатени лихви.

- Дейността на звеното за вътрешен одит се нуждае от подобрение, предимно при прилагането на нормативната база от банката за оценка на кредитния/концентрационния риск и необходимото капиталово покритие.

- Банката е изложена на сравнително по-висок репутационен риск.

- Ръководството допуска съществени нарушения на нормативната рамка.

4

---

**НАРУШЕНИЯ НА РЕГУЛАЦИИ**

---

➤ *Чл.44, ал.5 от ЗКИ, чл.2 и чл.7 от Наредба №7 – експозицията на Бургаски корабостроителници АД и свързаните лица надхвърля 25% от собствения капитал на банката.*

Банката некоректно отчита експозицията на Бургаски корабостроителници АД в отчета по Наредба №7. Съгласно чл.8, ал.5 от Наредба №7 на БНБ, прилагането на ал.2 от същия член е приложимо единствено в случаите, когато гарантът отговаря на изискванията на Глава шеста „Редуциране на кредитния риск" от Наредба № 8 на БНБ. В случая Бургаски корабостроителници АД не може да бъде признат като приемлив гарант, тъй като не покрива изискването на чл.143, ал.7, приложимо спрямо юридически лица-гаранти, изискващи минимален кредитен рейтинг от А+, за да бъдат признати като доставчици на кредитна защита. Поради тази причина хипотезата на чл.8, ал.2 е неприложима спрямо съвкупността от оригиналните кредитополучатели, покрити с „условния" кредит (в т.ч. и Бургаски корабостроителници АД). **Правилното отчитане е всички експозиции, свързани по линия на „условния" кредит, да бъдат третирани като икономически свързани лица и да бъдат показвани в отчета по Наредба №7 с тяхната балансова стойност;**

➤ *Чл.44 от ЗКИ във връзка с §1 от допълнителните разпоредби на ЗКИ и чл.2, чл.7 от Наредба №7 за следните експозиции:*

1. към експозицията на **Гондол ЕООД** не е включен **Еко Фармс ЕООД** (§1, т.4, буква „г" от ЗКИ);
2. към експозицията на **Виестейт ЕООД** не е включен **Би Ейч Енд Виа Пропъртис ООД** (§1, т.4, буква „д" от ЗКИ);
3. не са отчетени като свързани лица експозициите на **Intercount investments limited Ltd., Sigmatura Ltd. и Santa Fe Trading Ltd.** (§1, т.4, буква „г" от ЗКИ);
4. към експозицията на **Литекс пропърти ЕАД** не е включен **Литекс комерс АД** (§1, т.5 от ЗКИ);
5. към експозицията на **Бургаски захарен завод ЕАД** не е включен **Литекс комерс АД** (§1, т.5 от ЗКИ);
6. към експозицията на **Въгледобивна компания ЕООД** не е включен **Елит груп 2003 ЕООД** (§1, т.5 от ЗКИ);
7. към експозицията на **Sidegreave Investments Ltd.** – Кипър следва да се включи **Еко Фармс ЕООД** (§1, т.5 от ЗКИ);
8. кредитите на **Аргус имоти АД** следва да се отчитат с цялата си стойност във всички експозиции на свързани лица, където участват (чл.2, ал.1; чл.3, ал.1 и чл.7, ал.1 от Наредба №7 на БНБ);

➤ *Чл.45 от ЗКИ* - към експозицията на **Болкан Файнейшъл Сървисиз ООД** не са включени кредитите на Светослав Стоянов Молдовански и Станислав Ганев Божков;

➤ *Чл.3, ал.2 от Наредба №9 на БНБ:*

1. кредитите на **Българска Морска компания ПФ ЕООД** следва да се отчитат в една и съща класификационна група с **Intercount Investment Ltd.** („под наблюдение", според инспекцията);
2. кредитите на **Литекс комерс АД** следва да се отчитат в една и съща класификационна група с **Бургаски захарен завод ЕАД и Литекс пропърти ЕАД** („под наблюдение", според инспекцията);
3. кредитите на **Либеро АД и Видия В 04 АД** следва да се отчитат в една и съща класификационна група със **Santa Fe Trading Ltd.** („необслужвана", според инспекцията);
4. кредитите на **Елит груп 2003 ЕООД** следва да се отчитат в една и съща класификационна група с **Въгледобивна компания ЕООД** („необслужвани", според инспекцията);
5. експозицията на **БАЗ АД** некоректно е класифицирана като „редовна" вместо „необслужвана" като носители на общ риск с **Тауър София ЕООД**;
6. кредитите на **Мегалинк ЕАД, Железопътна инфраструктура-ХД АД** следва да се прекласифицират в група „загуба" като носители на общ риск с **Национален изследователски институт по транспорта ЕООД**;

5

7. експозицията на Васил Божков некоректно е класифицирана като „редовна" вместо „загуба" по свързаност с Железопътна инфраструктура - ХД АД;

8. експозицията на Завод за стоманобетонови конструкции и изделия ЕООД некоректно е класифицирана като „редовна" вместо „загуба" по свързаност с Железопътна инфраструктура - ХД АД;

9. кредитите на Билто оувърсийз трейдинг ООД се отчитат от банката в две различни класификационни групи - „редовен" и „под наблюдение";

10. кредитите на Порт Инвестмънт Девелопмънт – България 2 ЕАД се отчитат от банката в две различни класификационни групи, „редовен" и „загуба".

➢ *Чл.5 във връзка с чл.8, ал.3 от Наредба №9 на БНБ* - банката е класифицирала некоректно в група „редовни" кредитите на Еликс ЕООД, Ви Ем Пи ЕООД, Мега Ел ЕООД, ОЦК АД, Камила ЕООД, Алфа бранде ЕООД, ССФ Стил шипинг енд форуърдинг АД и овърдрафт на Минна Компания ЕООД, които са възникнали балансови експозиции в резултат на изпълнение на задбалансов ангажимент;

➢ *Чл.5 във връзка с чл.9, ал.1 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозициите на Sigmatura Ltd. и Ню Експрес Финанс ЕООД в група „редовни" вместо в група „под наблюдение";

➢ *Чл.5 във връзка с чл.9, ал.1 и чл.13 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Болса ЕООД и Intercount Investment Ltd. в група „редовни" вместо в група „под наблюдение";

➢ *Чл.5 във връзка с чл.9, ал.1 и ал.2, т.1 и чл.13 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Литекс Пропърти ЕАД в група „редовни" вместо в група „под наблюдение";

➢ *Чл.5 във връзка с чл.9, ал.2, т.1 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозициите на Пътинженсринг - М АД и Бургаски Захарен Завод ЕАД в група „редовни" вместо в група „под наблюдение";

➢ *Чл.5 във връзка с чл.9, ал.2, т.3 и чл.13 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на ТЕЦ Марица 3 АД в група „редовни" вместо в група „под наблюдение";

➢ *Чл.5 във връзка с чл.10, ал.1 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозициите на: Santa Fe Trading Ltd., Въгледобивна Компания ЕООД, Минна компания ЕООД в група „редовни" вместо в група „необслужвани";

➢ *Чл.5 във връзка с чл.10, ал.1 и чл.8, ал.3 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Въгледобив Бобов Дол ЕООД в група „редовни" вместо в група „необслужвани";

➢ *Чл.5 във връзка с чл.10, ал.1 и чл.13 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозициите на: KBS Petlolium (Meadle East) Ltd., Leza Ltd., Пътни Строежи АД в група „редовни" вместо в група „необслужвани";

➢ *Чл.5 във връзка с чл.10, ал.1 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Честийм ЕООД в група „редовни" вместо в група „необслужвани";

➢ *Чл.5 във връзка с чл.10, ал.1 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Аутдор Адвъртайзинг Медиа АД в група „под наблюдение" вместо в група „необслужвани";

➢ *Чл.5 във връзка с чл.10, ал.1 и чл.3, ал. 2 (общ риск с Еко фармс ЕООД) от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Sidegreave Investment Ltd. в група „под наблюдение" вместо в група „необслужвани";

➢ *Чл.5 във връзка с чл.10, ал.1 и ал.2, т.2 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозициите на: Бургаски корабостроителници АД, Тауър София ЕООД, Холдинг Пътища АД, Еко Фармс ЕООД, Рубин АД в група „редовни" вместо в група „необслужвани";

➢ *Чл.5 във връзка с чл.11, ал.1 и ал.2, т.2 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозициите на Аргус Имоти АД и ДСП-1 АД в група „редовни" вместо в група „загуба";

➢ *Чл.5 във връзка с чл.11, ал.1 и ал.2, т.2 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Виестейт ЕООД в група „под наблюдение" вместо в група „загуба";

➢ *Чл.5 във връзка с чл. 11, ал.1 и ал.2, т.2 и т.3 и чл.3, ал.2 (общ риск с Виестейт ЕООД) от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Би Ейч Еър Енд Виа Пропъртис ООД в група „редовни" вместо в група „загуба";

➢ *Чл.5 във връзка с чл.11, ал.1 и ал.2, т.2 и т.5 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозициите на: Стил Комодитис АД, Интертръст Холдинг АД, Оловно Цинков Комплекс АД, ССФ-Стил Шипинг Енд Форуърдинг АД в група „редовни" вместо в група „загуба";

➢ *Чл.5 във връзка с чл.11, ал.1 и чл.13 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозицията на Сириус Корпорейшън АД в група „редовни" вместо в група „загуба";

➢ *Чл.5 във връзка с чл.11, ал.2, т.2 и чл.13 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно експозициите на Гондол ЕООД и Риджънт Балкан ЕООД в група „под наблюдение" вместо в група „загуба";

➢ *Чл.5 във връзка с чл.11, ал.2, т.3 от Наредба №9 на БНБ* експозицията на АВБ-2004 АД неправилно е класифициран „необслужвани" вместо „загуба";

➢ *Чл.5 във връзка с чл.11, ал.2, т.1 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно в група „редовни" вместо в група „загуба" експозициите на Надежда Златанова Пешева и Димо Пламенов Димитров;

➢ *Чл.5 във връзка с чл.11, ал.2, т.1 от Наредба №9 на БНБ* - към 31.12.2011г. банката е класифицирала некоректно в група „под наблюдение" вместо в група „загуба" експозициите на следните физически лица: Велико Петров, Камелия Костадинова, Матей Стефанов Марков, Ангелина Орлинова Чаушева, Асен Вергилов Велизаров, Николай Цветанов Мотков и Мария Йорданова Цончева;

➢ *Чл.12 и параграф 1 от Наредба №9 на БНБ* - некоректно е отчетено „приемливо" обезпечение или некоректно е определен размера му по следните експозиции: Аркус Имоти АД, Ентра Номер Едно ЕООД, Холдинг Пътища АД (тук ние е и отразено неблагоприятното за банката третиране на „приемливото" обезпечение по „условните" кредити – обяснено подробно в дела за кредитния риск);

➢ *Чл.7 във връзка с чл.12 от Наредба №9 на БНБ* – Банката не е определила коректно размера на специфичните провизии за кредитен риск за всяка експозиция, с некоректна класификация, чиято балансова стойност нахвърля рисковата стойност на експозицията, и/или е приела некоректна стойност на „приемливото" обезпечение по нея;

➢ *Чл.7 във връзка с чл.12, ал.1, б. „в" от Наредба №9 на БНБ* – некоректно е определен размерът на специфичните провизии за кредитен риск за кредити, класифицирани от банката в група „загуба": Агромах ЕООД, Месокомбинат Летница ООД, ТВЛ Груп ООД, Кирил Михалев Кирчев и Радослав Петров Петров и др.;

7

## *ПРЕПОРЪКИ НА ИНСПЕКЦИЯТА*

1. Да се отстранят констатираните нарушения на регулаторната рамка.

2. Да се обърне по-голямо внимание на неизпълнените препоръки от предходната инспекция.

### *Кредитен риск*

3. Дирекция „Управление на риска" следва да бъде ангажирана с текущото наблюдение на кредитния риск на ниво индивидуална експозиция, за да може информацията, подавана месечно от бизнес-звената към Кредитния комитет за влошаване на експозициите, да е проверена и при необходимост коригирана. Това би допринесло за подобряване на процесите на класифициране и провизиране, по-ранното идентифициране и отчитане на риска, както и ограничаване на пропуските.

4. За кредитите в клон Кипър и кредити на лица, регистрирани в чужбина, е необходимо да се изготвя периодично оценка за риска, която да се предоставя на ръководството.

5. Да се подобри процеса на отчитането на „приемливи" обезпечения в основното приложение и съответните регистри, с цел да се избегне некоректното отчитане на обезпечения като „приемливи", неотговарящи на изискванията за такива (изтекъл срок иа реализация и др.).

6. С цел оптимизиране на управлението на кредитния риск да се изготви регистър на „условните" кредити, с определен набор от параметри, така че да може да се види кои балансови и задбалансови експозиции са обезпечени с „условния" кредит, разпределение на обезпечението на условния кредит по обезпечаваните от него експозиции, неизползваната за обезпечаване част от „условния" кредит и др.).

7. Неизползваната за обезпечаване част от „условния" кредит, трябва да се отчита задбалансово като кредитен ангажимент и съответно да се посочва в надзорната отчетност съгласно наредбите и указанията към тях.

8. Да се анализира каква е причината за допуснатите случаи на некоректни класификации и провизиране при някои експозиции на дребно, като се има предвид, че процесът би трябвало да е автоматизиран. След изготвяне на анализа и установяване на причината да се предприемат мерки за отстраняване на проблема.

9. Преструктурираните кредити (включително отпуснатите нови кредити за погасяване на стари просрочени задължения) на физически лица не трябва да бъдат отчитани като „редовни", докато са в период на облекчеио плащане и следва да бъдат класифицирани поне в група „под иаблюдение".

### *Ликвиден риск*

10. Банката да отчита и аиализира в пълен размер, като потенциален изходящ паричен поток, задбалансовите си ангажименти.

11. Да се приемат по-консервативни допускания за изтегляне на ресурс от вложителите при различните вариаити на ликвидна криза, иай-вече за ресурса от граждани.

### *Операционен риск*

12. Да се оптимизира процесът за предоставяне иа достъп при електронното банкиране с цел да се избегнат евентуални загуби.

13. При изпълняване иа тест за иепрекъсваемост иа дейността да се дефинират съответните допускания, а резултатите от него да се представят в официален протокол на ръководството на банката.

14. Да се осигури възможност за работа с данните за клиеитите от клон Кипър в реално време, чрез осиовното програмно приложение.

8

**_Способност за генериране на печалба_**

15. Предвид значителната част на текущо начислените лихви (за голяма част от тях е договорено да се изплатят на падежа на съответните кредити) и просрочените лихви в приходите на банката, би следвало да се оценява несигурността от получаването на паричните потоци по тези експозиции и да се предприемат мерки за минимизирането й.

**_Капитал_**

16. Да се увеличи собственият капитал, така че капиталовите показатели да са съществено над регулаторните изисквания.

17. Необходимо е да се подобри процесът по вътрешен анализ на адекватността на капитала (конкретните насоки са описани в дела за капитала).

**_Вътрешен контрол_**

18. Да се анализира доколко обработката и отговорите на жалбите е уместно да са включени в дейността на звеното, което е несвойствена за исго функция.

9

## НАРУШЕНИЯ ОТ ПРЕДХОДНИ ИНСПЕКЦИИ[1]

- **Чл.5, ал.1 от Наредба №9 на БНБ** – Кредитният комитет не прилага всички предвидени в наредбата критерии за оценка и класификация на рисковите експозиции.

**Това нарушение е констатирано и при настоящата инспекция.**

- **Чл.5, ал.1, във връзка с чл.9, 10 и 11 от Наредба №9 на БНБ** – банката не може да отчита като „редовни", следните кредити поради просрочие: „Минна компания" ЕООД; „Траял България" ЕООД; „Калиста 2004" ООД; „Ню експрес финанс" ЕООД; „Пътинжинерит - М" АД; „Ремонтно-възстановително предприятие Кьоне" АД; „Пътни строежи" АД; „ЖП консулт" ЕООД; „Трансдисконт" ЕООД; „Латис" ЕООД; „Багра" ЕООД; „Бургаски корабостроителници" АД; „Холдинг Пътища" АД; „Корект Пропърти" ЕООД; „Брикел" ЕАД; „Българска Морска компания ПФ" ЕООД. Кредитите трябва да бъдат прекласифицирани в коректната класификационна група.

**Частично изпълнено. Банката е прекласифицирала в по-високорискова група кредитите на РВП Кьоне АД, Трансдисконт ЕООД и Багра ЕООД. Нямат експозиции Корект пропърти ЕООД и Латис ЕООД.**

- **Чл.5, ал.1 във връзка с чл.3, ал.2 от Наредба №9 на БНБ** – банката трябва да прекласифицира в коректната класификационна група на база свързаност кредитите към: „Въгледобивна компания" ЕООД, „Въгледобив Бобов дол" ЕООД, „Порт флот Бургас" ЕООД, „Портови флот 99" ЕООД, „ЕАЗ" АД, „Драфт" ЕООД, „Топлофикация Плевен" ЕАД, „Мегалинк" ЕАД, „Железопътна инфраструктура" ХД, „Аргус Имоти" АД, „ДСП-1" АД, „ТЕЦ Марица 3" АД, „Национален изследователски институт по транспорта" ООД, „Intercount Investments" Ltd.

**Не е изпълнено, никои от експозициите са прекласифицирани в по-късен етап на база индивидуална оценка.**

- **Чл.13, ал.4 от Наредба №9 на БНБ** - експозициите на „Надин метал" АД; "Надин комерс" ЕООД; „Надин транс" ЕООД; „Тауър София"ЕООД; „Риджънт балкан" ЕООД и „Би Ейч Еър" ООД са преструктурирани, но продължават да се отчитат като „редовни". Кредитите трябва да бъдат прекласифицирани в коректната класификационна група.

**Частично изпълнено. Прекласифицирана е само експозицията на Риджънт Балкан ЕООД.**

- **Чл.12 и параграф 1 от Наредба №9 на БНБ** – По част от прегледаните експозиции банката некоректно отчита „приемливи", обезпечения, които не отговарят на критериите за такива и некоректно изчислява рисковата стойност на експозициите, съответно размера на специфичните провизии.

**Не е изпълнено.**

---

[1] Нарушенията за експозициите по-долу не са били отстранени след получаването от банката на изготвения доклад от предходната инспекция и заповедта на Подуправителя, ръководещ управление Банков надзор. Част от тези експозиции не са били обект на настоящата проверка и затова не може да се прецени какво е състоянието им към датата на инспекцията. За тези експозиции, които са включени в извадката, класификацията им е посочена в дела за нарушенията към настоящата инспекция.

## ПРЕПОРЪКИ ОТ ПРЕДХОДНИ ИНСПЕКЦИИ

### Кредитен риск

1. Да предприеме мерки за прилагане на всички предвидени критерии за оценка и класификация на рисковите експозиции от Кредитния комитет.

**Препоръката остава в сила.**

2. Да се предприемат мерки за автоматична прекласификация от системата на банката, на база дни за забава и при корпоративните кредити.

**Препоръката остава в сила.**

3. Да ограничи практиката за многократно анексиране на кредитните сделки, без реално погасяване по тях.

**Препоръката остава в сила.**

4. В изготвяните предложения до компетентните органи да бъде изразявано писмено становище за оценката на риска по сделките от „Управление на риска".

**Препоръката остава в сила.**

5. Да отстрани констатираните нарушения на регулаторната рамка.

**Препоръката остава в сила.**

6. Дирекция „Управление на риска" да участва ефективно в кредитния процес, чрез писмено съгласуване на кредитните сделки или посредством изготвяне на писмено становище по тях.

**Препоръката остава в сила.**

7. Като част от регулярния финансов анализ, освен на балансовите данни да се извършва и анализ на дейността на фирмите – кредитополучатели и на свързаните с тях лица, на секторите, в които оперират, както и на възможностите им да обслужват редовно кредитните си задължения.

**Препоръката остава в сила.**

8. Кредитният комитет да прилага всички критерии, предвидени в Наредба №9 на БНБ, при оценката и класификацията на рисковите експозиции.

**Препоръката остава в сила.**

### Ликвиден риск

9. Да се актуализират в съответствие с действащата нормативна рамка „Правилата и процедурите за управление на ликвидността" в частта „План за управление на ликвидността на банката в случай на ликвидна криза".

**Препоръката е изпълнена.**

10. Да се актуализира сценарият на изготвяния стрес тест за ликвидността - сценарий „ликвидна криза" от „Управление на риска". Инспекцията смята, че направените допускания за отлив на привлечени средства на граждани не са достатъчно консервативни.

**Препоръката не е изпълнена.** Все още допусканията за изтегляне на ресурс не са достатъчно консервативни, особено тези за депозитите на граждани.

11

При управлението на ликвидния риск, да анализира и нивото и диверсификацията на ликвидните активи, концентрациите в привлечения ресурс и спазването на вътрешнобанковите лимити.

**Препоръката е изпълнена.**

*Капитал*

11. Да се отстранят допусканите неточности и нарушения при изготвяне на отчета по Наредба №8 на БНБ.

**Може да се счита, че е изпълнена в голяма степен.**

12. Да се подобри процесът по вътрешен анализ на адекватността на капитала и управлението на капиталовата позиция.

**Препоръката остава в сила.**

13. Да се изготви реалистичен план за допълнителна капиталова подкрепа с оглед за осигуряване на устойчивост на собствения капитал на банката.

**Препоръката остава в сила.**

*Вътрешен одит*

14. ССВК да използва рисково-базиран подход в дейността си, като акцентира върху областите, носители на най-висок риск за банката. В тази връзка да повиши приоритета на одита на процесите по оценка на кредитния и концентрационния риск и спазването на нормативните изисквания.

**Препоръката остава в сила.**

15. Като част от вътрешно-контролната функция в банката ССВК трябва да се запознава с констатациите от надзорните инспекции и да проследява отстраняването на установените нарушения.

**Препоръката остава в сила.**

12

## *КРЕДИТЕН РИСК. РИСК ОТ КОНЦЕНТРАЦИИ*

**Кредитният риск е подценен, като реалното му отчитане и провизиране би влошило значително основни показатели за:**

- оценка на качеството на активите;

- способността за генериране на печалба;

- капиталовата позиция на институцията.

Инспекцията прегледа извадка от 140 кредита на 49 корпоративни кредитополучатели с брутна стойност 1 355 822 хил.лв., което представлява 38.86% от корпоративните кредити и 32% от брутните кредити.

След обобщаване на информацията инспекцията установи, че експозиции с брутна стойност 1 002 842 хил.лв. (74% от извадката) не отговарят на критериите на Наредба №9 за групата, в която са отчетени от банката, като във всички случаи се показват в по-нискорискова класификационна група[2]:

➢ кредити с брутна стойност 320 699 хил.лв. (23.65% от извадката), класифицирани като „редовни", отговарят на условията за група „под наблюдение";

➢ експозиции на стойност 682 143 хил.лв., класифицирани предимно като „редовни" (50.30% от извадката) отговарят на условията за групи „необслужвани" и „загуба" (NPL).

*След отразяване на установените нарушения от инспекцията се променят основни показатели за кредитен риск:*

- сумата на общо класифицираните активи[3] нараства 2.25 пъти след добавяне на класифицираните от инспекцията експозиции;

- необходими[4] са над 200 млн.лв. допълнителни специфични провизни за кредитен риск (СПКР);

- кредитите в NPL достигат 928 096 хил.лв. или 21.72% от брутните кредити, при отчетени от банката 246 053 хил.лв.(5.76% от брутните кредити).

**Концентрациите на експозиции към няколко големи групи от корпоративни клиенти с различни индикации за обвързаност оказват голям натиск върху капиталовата й позиция.**

При изследване на кредитния портфейл на банката и прегледа на направената извадка се установи наличието на няколко групи от експозиции на корпоративни клиенти (формално несвързани) с различни индикации на обвързаност. Тези групи са голяма част от корпоративния кредитен портфейл (около 60%) и са формирани по следните признаци:

- Фирми, участвали в покупката на активите на Кремиковци АД, занимаващи се с обработка на метални отпадъци и други сектори на икономиката (размера на тези експозиции нахвърля над 1.5 пъти сумата на капиталовата база /КБ/, отчетена от банката);

- Фирми с основна дейност в минната промишленост и енергетика (над 50% от КБ);

- Фирми с дейност, съсредоточена предимно в пътното строителство и инфраструктурата, корабостроенето и др. (над 40% от КБ);

- Фирми с дейност в сектор недвижими имоти (проектно финансиране), чиито задължения по лихви и главница ще бъдат погасявани предимно на падеж от реализация на имотите, закупени с кредитите (близо 40% от КБ);

- Фирми с интереси в туристическия и хотелиерския бизнес, експлоатация на въздухоплавателни средства и др. (около 25% от КБ);

- Фирми с основна дейност преработка, внос и търговия на захар, търговия с имоти и др. (около 20% от КБ);

---

[2] 70% от „редовните" кредити, включени в извадката са класифицирани от инспекцията в по-високорискова група.

[3] Брутните класифицирани активи, отчетени от банката към 31.12.2011г. са 650 377 хил.лв. (15.22% от брутните кредити), заедно с прекласифицираните от инспекцията „редовни" експозиции на корпоративни клиенти за 813 120 хил.лв. общата им стойност става 1 463 497 хил.лв. или 34.25% от брутните кредити и 23.48% от брутните активи (10.44% отчетени от банката).

[4] Като се приеме благоприятното за банката третиране на „приемливите" обезпечения по „условните" кредити, като "приемливи" обезпечения по експозиции, обезпечени с тези „условни" кредити.

13

- Фирми с основна дейност в сектора добив и преработка на цветни метали (над 12% от КБ).

За по-голямата част от кредитополучателите от тези групи се установи, че са със значителни проблеми при обслужването на задълженията си. При голяма част от тези експозиции се правят отстъпки на клиентите чрез многократни преструктурирания на дълга, което намалява значително реалните погашения. Ако се отчете и ефектът от надзорните корекции, размерът на тези групи съпоставен към коригираната капиталова база нараства значително.

<table>
<tr><td><strong>Не са ефективни процесите за изследване и установяване на концентрациите в кредитния портфейл, контрола и отчитането им.</strong></td><td>➢</td><td>В системите за отчитане на големи и вътрешни експозиции, на свързани лица по различни признаци (юридическа и икономическа), както и при контрола на тази дейност се допускат съществени пропуски. В отчета по Наредба №7 към 31.12.2011г. не са отчетени коректно, както свързаностите по отношение на големите експозиции, така и за вътрешни кредити (виж нарушенията по чл.44 и чл.45 от ЗКИ);</td></tr>
<tr><td></td><td>➢</td><td>Банката продължава да има пропуски в отчитане на икономическа свързаност (виж нарушения на §1, т.5 от допълнителните разпоредби на ЗКИ);</td></tr>
<tr><td></td><td>➢</td><td>Продължават случаите на отчитане на кредити на лица, носители на общ риск, в различни класификационни групи (виж нарушенията на чл.3, ал.2 от Наредба №9).</td></tr>
<tr><td><strong>Банката продължава да не разглежда и да не анализира концентрации по неформални признаци.</strong></td><td>➢</td><td><strong>Не се отчита свързаност на клиентите на основа обща обезпеченост.</strong> Предоставянето на т.нар. "условен" кредит[5], чрез които се обезпечават експозиции на един или няколко кредитополучатели, не винаги е основание според институцията за отчитането им като свързани. Към 31.12.2011г. банката е разрешила 369 "условни" кредити на стойност 1 713 167 хил.лв., като "приемливите" обезпечения по тях са за 441 798 хил.лв. Тези кредити превишават повече от 3 пъти капиталовата база на банката;</td></tr>
<tr><td></td><td>➢</td><td><strong>Не се отчита свързаност на клиентите на основа взаимна задлъжнялост.</strong></td></tr>
<tr><td><strong>Голяма част от кредитния портфейл е формирана от кредити, предоставени на дружества с офшорна и чуждестранна регистрация или на местни дружества със собственици с такава регистрация, което затруднява в много голяма степен установяването на свързаности, съответно наличието на концентрации и излага банката на голям риск.</strong></td><td>➢</td><td>Кредитополучателите с офшорни собственици имат кредити с брутна стойност 1 026 934 хил.лв. (29.45% от корпоративния портфейл), като в досиетата почти липсва информация за собствениците на офшорните дружества;</td></tr>
<tr><td></td><td>➢</td><td>Портфейлът от кредити в клон Кипър бележи годишен ръст от близо 40% и достига 299 211 хил.лв. (54% от КБ). Тези кредити не се отчитат в ЦКР, информацията за тях е концентрирана в отделно звено в банката, което изцяло управлява кредитния процес;</td></tr>
<tr><td></td><td>➢</td><td>Кредити на фирми, регистрирани в чужбина (не се включват кредитополучателите в клон Кипър) са 258 млн.лв., 47% от КБ, които се предоставят от корпоративно банкиране в централно управление на банката, частично което се отчитат в ЦКР;</td></tr>
<tr><td></td><td>➢</td><td>Общо двете групи - кредитите в клон Кипър и кредити на фирми, регистрирани в чужбина са на обща стойност, превишаваща капиталовата база на банката (556 880 хил.лв.) и следва да са обект на специално наблюдение от ръководството;</td></tr>
</table>

---

[5] "Условен" кредит (наименованието е на банката) - кредит, който може да се усвои при определени условия и служи за обезпечаване на балансови и задбалансови вземания на банката към един или няколко клиента. Всички реални обезпечения се учредяват по "условния" кредит, като на него се определя максимален срок и максимален размер, т.е. покриващи размерите на всички обезпечени експозиции и срока им. За самия усвоените кредити не се учредява обезпечение, а както е посочено в договора "плащанията по тях се обезпечават със средствата по предоставения условен кредит". По принцип при неплащане по някой от кредитите трябва да се усвои "условния" кредит.

| | |
|---|---|
| Докладваните концентрации по сектори и продукти в кредитния портфейл са в рамките на определените от банката лимити. | ➤ Кредитите в сектор търговия заемат най-висок дял (29.54%) от кредитния портфейл преди обезценка и единствено при него е надвишен определения от банката лимит (25%); |
| | ➤ Следващи по дял от портфейла са преработваща промишленост (11.75%) и професионални дейности и научни изследвания (7.13%); |
| | ➤ Не е достигнат лимита от 50% за кредити на физически лица (18.11%) от брутния портфейл. |
| Банката продължава да допуска нарушения на регулаторните изисквания за класификация на рисковите експозиции - значителна част от вземанията й не са адекватно оценени и провизирани. | ❖ Експозиции с просрочия, съответстващи на групи „под наблюдение", „необслужвани" и „загуба" се отчитат в по-благоприятна класификационна група, най-често като „редовни" (изброени в дял нарушения); |
| | ❖ Експозиции с изцяло просрочен дълг (главница и лихва), класифицирани от банката преди повече от 180 дни продължават да се отчитат в група "под наблюдение"[6]; |
| | ❖ Не се прекласифицират експозиции на база лошо финансово състояние, липса на реални парични постъпления, траен паричен недостиг и др. (над 33% от извадката)[7]; |
| | ❖ Експозиции на свързани лица, носители на общ риск, се отчитат в различни класификационни групи (описани в нарушенията на чл.3, ал.2 от Наредба №9); |
| | ❖ Кредити на стойност 47 547 хил.лв., възникнали от задбалансови ангажименти, се отчитат като „редовни"[8]; |
| | ❖ Не се отчитат в коректната класификационна група кредити на фирми обявени в несъстоятелност (АВБ 2004 АД); |
| | ❖ Кредити на един кредитополучател се отчитат в различни класификационни групи (Билто оувърсиз трейдинг ООД, Порт Инвестмънт девелопмънт – България 2 ЕАД и др.); |
| | ❖ Неразрешените овърдрафти, които банката оформя като кредити при невъзможност кредитополучателя да плати дължимите такси и комисионни, не се класифицират в групата на останалите кредити на клиента[9]; |
| | ❖ Преструктурирани експозиции продължават да се отчитат като „редовни"[10]; |
| | ❖ Признават се за „приемливи" обезпечения, по смисъла на Наредба №9, които не отговарят на условията за такива[11]; |
| | ❖ Като следствие от горните нарушения некоректно се определя размера на специфичните провизии за кредитен риск. |
| Банката прилага различни похвати за отлагане проявлението на кредитния риск, с което се подобряват стойностите на показателите за качество на активите, намаляват се | 1. По-голямата част от тези похвати са свързани с многократни промени на условията по кредитите на предприятия, което отлага във времето проявлението на реално съществуващия кредитен риск: |
| | ➤ Договаряне на големи гратисни периоди по лихва и/или главница, както и последващи многократни анексирания на договорите с цел предоставяне на нови гратисни периоди, което отлага дължимите плащания, като дълга |

---

[6] Прецизинтер холдинг АД, Стенстрой инженеринг ЕООД, Багра ЕООД, Виестейт ЕООД и др.

[7] ДСП-1 АД, Аргус имоти АД, АВБ-2004 АД, Тауър София ЕООД, ЕАЗ АД, Риджънт Балкан ЕООД, Гондол ЕООД, Въгледобивна компания ЕООД, Въгледобив Бобов дол ЕООД, Литекс пропърти ЕАД, Аутдор адвъртайзинг медиа АД, Железопътна инфраструктура-Холдингово дружество АД, Болса ЕООД, Виестейт ЕООД, Бургаски корабостроителници АД, Холдинг Пътища АД и др.

[8] Еликс ЕООД, Ви Ем Пи ЕООД, Мега Ел ЕООД, ОЦК АД, Камила ЕООД, Алфа брандс ЕООД, ССФ Стил шипинг енд форуърдинг АД и др.

[9] Порт Инвестмънт Девелопмънт – България 2 ЕАД и др.

[10] Тауър София ЕООД, ЕАЗ АД, Пътинжинеринг – М АД, ДСП-1 АД, Аргус имоти АД, Въгледобивна компания ЕООД, KBS Petroleum (Middle East) Ltd., Leza Ltd., Железопътна инфраструктура-Холдингово дружество АД и др.

[11] Холдинг Пътища АД, Аргус имоти АД и др.

разходите за обезценка и размера на специфичните провизии.

продължава да се отчита „редовен". Този вид кредити са значителна част от корпоративния сегмент на банката (95% от извадката) и са най-големите и рискови експозиции;

➢ Еднократен падеж на главницата, в много случаи и на лихвата по кредита[12]. От прегледаните кредити в извадката 37% са с договорен първоначално или на следващ етап на плащане на дълга на падеж. Това са предимно големи корпоративни кредити, отпуснати за финансиране на инвестиционни проекти за покупка на недвижими имоти и строителство, като изплащането зависи изцяло от реализирането на съответен проект. Кредити с еднократно погасяване на падеж са 235 319 хил.лв. (5.53% от брутните кредити), всички са класифицирани като „редовни";

➢ Отлагане на датата на падежа с оглед запазване на групата);

➢ Погасяването на главница и лихви с новоотпуснат от банката кредит на същата фирма или на свързано с кредитополучателя лице;

➢ Многократно анексиране на договорите с цел разсрочване на просрочени дължими плащания по кредити и намаляване/нулиране на просрочия (43% от извадката). Тази практика често се комбинира с големи гратисни периоди, което осигурява на банката формални причини за отчитане на такива експозиции[13] като „редовни" или „под наблюдение";

➢ Допуска се погасяване на дълга чрез вътрешнобанкови сметки за кредитополучатели, чиито сметки са запорирани от държавни организации или други банки, като продължават да се отчитат като „редовни" експозиции (ТЕЦ Марица 3 АД, Холдинг Пътища АД, Минна компания ЕООД и др.);

➢ Кредити, с голям размер на текущо начислените лихви (индикация за чести разсрочвания на дълга, поради проблеми с погашенията) и липса на „приемливи" обезпечения се отчитат като „редовни"[14].

**2. Изкуствено подобряване на качеството на кредитния портфейл се получава при прехвърляне (цедиране) на проблемни експозиции на юридически лица, които купуват тези експозиции с кредит, отпуснат от банката** (Сириус корпорейшън АД, Sikinos Trading Ltd, Аутдор адвъртайзинг медиа АД).

**3. Некоректно отчитане, като „редовни" на преструктурирани кредити.**

С изтичане на срока на признаване на обезпеченията по някои експозиции като „приемливи", към средата на 2012г. банката ще трябва да начисли значителен размер СПКР.

Допълнителен натиск върху капитала на банката оказват експозиции, при които срока за признаване на обезпечението като „приемливо" изтича в следващите месеци (основно Порт Инвестмънт Девелопмънт – България 2 ЕАД – над 69 млн.лв.) и следва да се начислят допълнителни специфични провизии за кредитен риск (чл.12, ал.4 на Наредба №9 и Параграф 1, т.1).

Инспекцията изразява резерви по отношение на ползвана от банката

➢ Подобна практика на „автоматично признаване" би била неправилна от регулаторна гледна точка, тъй като удовлетворяването от страна на банката с въпросните обезпечения и предприемането на процедура по

---

[12] ЕАД АД, Железопътна инфраструктура-Холдингово дружество АД, Пътинжинеринг – М АД, Тауър София ЕООД, Риджънт Балкан ЕООД, Гондол ЕООД, KBS Petroleum (Middle East) Ltd., Sigmatura Ltd., Leza Ltd., Елтрейд къмпани ЕООД, Валпет консулт ЕООД, Надин металс трейд ЕООД и др.

[13] ДСП-1 АД, Аргус имоти АД, Тауър София ЕООД, ЕАЗ АД, Пътинжинеринг – М АД, Въгледобивна компания ЕООД, Аутдор адвъртайзинг медиа АД, Риджънт Балкан ЕООД, Гондол ЕООД, Leza Ltd., Елтрейд къмпани ЕООД, Валпет консулт ЕООД, Надин металс трейд ЕООД и др.

[14] Sikinos Trading Ltd. (главница: 16 млн.лв., тек.лихви: 7 млн.лв.), Mamonas Services Ltd. (главница: 21 млн.лв., тек.лихви: 2 млн.лв.), Sigmatura Ltd. (главница: 18 млн.лв., тек.лихви: 1 млн.лв.), Еко Фармс ЕООД (главница: 12 млн.лв., тек.лихви: 10 млн.лв.), Sidegrave Investment Ltd. (главница: 13 млн.лв., тек.лихви: 11 млн.лв.) и др.

16

| | |
|---|---|
| практика „приемливи" обезпечения, учредени като такива по „условен" кредит, да бъдат признати като „приемливи" по реални експозиции, обезпечени с „условния" кредит[15]. | тяхната ликвидация нито е безусловно, нито е ясно упоменато в договорите на реалните експозиции. В случай на неизпълнение при реалните експозиции, те се заместват с експозицията, възникнала във връзка с усвояването на суми по „условния кредит". Това обаче не предполага незабавна изискуемост на въпросния кредит или предприемането на незабавни действия по реализация на предоставените по „условния" кредит обезпечения. |

▸ За кредитното отношение между банката и кредитополучател с реален кредит не е налице правна възможност учредените по договора за „условен" кредит обезпечения /ипотекирани в полза на банката недвижими имоти/ да бъдат третирани и отчитани като обезпечения по реалния кредит, доколкото в действителност по тази експозиция вписване на ипотека не е налице. Строго формалният характер на процедурата по вписване на ипотека изисква тя да се учредява върху индивидуално определени имоти и за определена парична сума. Законът определя изчерпателно елементите на вписването, като освен индивидуализиране на имота и размера на обезпеченото вземане, на длъжника и на кредитора, в процедурата по вписването следва да бъде представен и договорът, от който произтича вземането на кредитора. Банката третира като „приемливо обезпечение" по т.нар. „реална сделка" част от стойността на имота, ипотекиран по т.нар. „условен кредит", като остава неясен въпросът кой би бил правният акт, който в случая доказва наличието на „учредена, първа по ред ипотека", в съответствие с изискванията на Наредба №9. С оглед гореизложеното считаме, че не могат да бъдат намерени правни основания за извършеното от страна на банката третиране на обезпеченията, предоставени по договора за „условен" кредит, като „приемливи" обезпечения по други кредити на същия кредитополучател или на трети лица.

▸ Наред с гореизложеното становище, относно надзорното третиране на обезпеченията, следва обаче да бъде взето предвид, че в договора за „условен" кредит е предвидена възможност за предсрочната му изискуемост, при неизпълнение, от страна на кредитополучателя по т.нар. „реални сделки", което сочи, че при подобно неизпълнение не са налице договорни пречки банката надлежно да пристъпи към удовлетворяване на вземането си по „условния кредит", от учредените обезпечения.

**Инспекцията е на мнение, че неизползваната за обезпечаване част от „условния" кредит, трябва да се отчита задбалансово като кредитен ангажимент и съответно да се посочва в надзорната отчетност съгласно наредбите и указанията към тях.**

| | |
|---|---|
| Обезпечеността на корпоративните кредити с „приемливи" обезпечения не е висока. | 36% от брутната стойност на корпоративния кредитен портфейл е покрита с „приемливи" обезпечения по смисъла на Наредба №9, съгласно представената от банката информация[16]. При експозициите на дребно този дял е 48%, а при МПС 69%, което осигурява в по-голяма степен защита на банката срещу проблеми при изплащането им. |
| Степента на провизираност е една от най-ниските в банковата система и не съответства на качеството на кредитния портфейл. | Характерно за банката е да поддържа ниска провизираност (обезценка и СПКР), съществено под средните нива за банковата система, което не съответства на качеството на кредитния портфейл. **Покритието на загубите от кредитен риск в кредитния портфейл е 3.25% (средна стойност за банковата система 10.25%), а степента на провизираност на активите е 2.23% (7.11% за системата).** |

---

[15] Инспекцията изразява резерви и за отчитане на „приемливи" обезпечения, отговарящи на Параграф 1, т.1, подточка а) на Наредба №9, като кредитна защита и при изготвяне на отчети по Наредба №8.

[16] Като се приеме благоприятното за банката допускане, че „приемливото" обезпечение по "условен" кредит може да се счита като "приемливо" обезпечение за експозициите, обезпечени с този "условен" кредит.

| Управлението на проблемните активи е организирано съвместно с бизнес звената и се осъществява централизирано. | Управлението на проблемни активи е централизирано за корпоративните кредити и МСП. Осъществява се от дирекция „Проблемни активи и провизиране" съвместно с експертите, предоставили кредитите. Въпреки направените структурни и функционални промени с цел оптимизиране на процеса, считаме че съществуват проблеми в мониторинга на проблемните кредити: |
|---|---|

- Има случаи за кредити класифицирани в група „загуба", които не са провизирани изцяло[23];

- Дирекцията не изготвя доклади за своята дейност, което би подпомогнало мениджмънта при вземане на решения и проследяване на процеса по събиране на проблемните вземания.

Броя на фирмите, срещу които е предприета съдебна процедура, е нараснал с 42 спрямо предходната година (при кредити на предприятия с нетна балансова стойност 3 672 хил.лв.). Присъдено съдебно решение в полза на банката има по 643 кредити на предприятия, с размер на дълга 16 788 хил.лв. Постъпленията от реализирани обезпечения към датата на инспекцията са в размер на 476 хил.лв.

| Управлението на кредитния риск и системите за идентифициране и контрол са незадоволителни и се нуждаят от значително подобрение. | Инспекцията не констатира съществени подобрения в процесите и системите за оценка на кредитния риск, като най-съществените проблеми са: |
|---|---|

➢ Политиката на ръководството (Надзорен[24] и Управителен съвет) и установените практики за предоставяне на големи облекчения на част от кредитополучателите, без това да се отразява на оценката на риска при тези експозиции;

➢ Дейността на Кредитния комитет при оценката на кредитния риск на ниво индивидуална сделка и класификацията на рисковите експозиции е неефективна. Необходимо е подобрение на процеса на изготвяне и обобщаване на необходимата информация, на базата на която да се извършва адекватно класифициране и провизиране на експозициите:

- Не е спазена препоръката от няколко надзорни инспекции за автоматична прекласификация при просрочия на всички кредитни експозиции, което води до допускане на нарушения;

- Не се актуализират своевременно погасителните планове в информационната система, което влияе върху броя на дните просрочие;

- В информацията за състоянието на експозициите, подавана от бизнес звената (дирекциите „Корпоративно банкиране", МПС и „Управление на кредитния портфейл на задграничните дружества") към Кредитния комитет, има сериозни пропуски. Инспекцията констатира редица случаи на недокладвани на Кредитния комитет кредити с просрочия и/или с влошено финансово състояние, които би трябвало да се отнесат в по-високорискова група, водещи до системни пропуски и нарушения на надзорните регулации. Не се изследва коректно и не се отразява в системата свързаност, особено икономическата между кредитополучателите, което понижава достоверността на изготвяните надзорни отчети. Не се прави проучване за идентификация на офшорните собственици на фирми-кредитополучатели, което прави процеса на отпускане и мониторинг на кредитните сделки непрозрачен и рисков;

- Дирекция „Проблемни активи и провизиране" не осъществява достатъчно ефективен контрол за правилното отразяване на „приемливите" обезпечения на най-рисковите експозиции, които са в нейния ресор. Констатирани бяха случаи на неправилно отчитане на „приемливи" обезпечения, които не отговарят на изискванията – предимно за срока на реализация. Това автоматично води до погрешно определяне на размера на специфичните провизии за кредитен риск;

18

- Процедурите, правилата и контрола по прилагане на взетите от Кредитния комитет решения за преструктуриране на кредитите се нуждаят от подобрение с цел правилното отразяване на класификациите и провизиите в отчетите на банката.

➢ Дейността на дирекция „Управление на риска" не показва подобрение:

- Звеното изготвя оценка на риска преди разрешаване на индивидуална експозиция на корпоративен клиент или при последваща промяна на договорните условия (анексиране), но не отговаря за текущото наблюдение на риска по експозицията. Препоръчително е дирекцията да бъде ангажирана с такова наблюдение, за да може информацията, подавана месечно от бизнес-звената към Кредитния комитет за влошаване на експозициите, да е проверена и при необходимост коригирана. Това би допринесло за подобряване на процесите на класифициране и провизиране, по-ранното идентифициране и отчитане на риска, както и ограничаване на пропуските;

- Процесът на анализ, оценка и контрол на кредитния риск, както за индивидуална експозиция, така и за банката, не е ефективен и не е адекватен на рисковия профил на институцията;

- Анализът, оценката и контролът на концентрационния риск в активите на банката, извършван от дирекция „Управление на риска" е непълен и е фокусиран върху концентрации, които не са най-рискови за банката.

---

[24] Определените лимити (за експозиции над 2 млн.лв.) по нива на компетентност за отпускане, предоговаряне и преструктуриране на кредитите концентрират основната отговорност в Надзорния съвет.

## ЛИКВИДЕН РИСК

| Изводи/Оценки | Коментар/Поддържаща информация |
|---|---|
| Въпреки добрите показатели за ликвидност[25], ликвидната позиция би била под много силен натиск дори и при малко намаление на депозитите. | ➢ Многократното предоговаряне на кредити с голям размер и отлагане на плащанията по тях, както и договаряне на кредити с еднократен падеж, намалява реалните входящи парични потоци за дълги времеви периоди. Това заедно с малко намаление на депозитите може да наложи преструктуриране на активи, като се редуцира по-ликвидната му част; <br> ➢ Силно ограничените възможности на банката да разчита на външни източници за финансиране[26] при необходимост от ликвидна подкрепа; <br> ➢ Намалението на рейтинга[27] на институцията допълнително стеснява възможностите за финансиране при необходимост от паричните пазари; <br> ➢ Съществуващият дисбаланс в матуритетната структура на активите и пасивите, поради финансирането на дългосрочни кредити с краткосрочно привлечен ресурс. |
| Налице е тенденция за поддържане на голяма част от ликвидните активи под формата на вземания от банки нерезиденти и чуждестранни ценни книжа. | Към 31.12.2011г. ликвидните активи са на стойност 1 527 933 хил.лв. От тях: <br> ➢ 50.30% са парични средства и парични салда при БНБ; <br> ➢ над 40% е сумата от вземания от банки нерезиденти и дългови чуждестранни ценни книжа (предимно френски и белгийски ДЦК); <br> ➢ около 9% български ДЦК; <br> ➢ 0.5% са злато. |
| В отчета по Наредба №11 не са отразени коректно всички задбалансови ангажименти, което води до по-добра матуритетна структура. | Като задбалансови позиции са отчетени единствено неусвоените кредитни ангажименти, което води до показване на по-благоприятна картина за нетните и кумулативни входящи/изходящи потоци особено в първите два периода. Инспекцията препоръчва да се включат и останалите задбалансови ангажименти според указанието за изготвяне на наредбата. |
| Качеството на управление на операционния риск се нуждае от подобрение, въпреки предприетите мерки за ограничаването му. | Качеството на управление иа операционния риск се нуждае от подобрение, поради: <br> ➢ Липсата на техническа възможност за работа на основното програмно приложение с базата данни за клои Кипър в реално време; <br> ➢ Несъответствията между признаците за прекласификация и класификационните групи в основното програмно приложение, при определяне на вида на обезпеченията и др., водещи до некоректно изчисляване на размера на необходимите специфични провизии по Наредба №9; <br> ➢ Операционни слабости при проследяване на изразходването на средствата, съответно контрол на постъпленията за някои експозиции[39]; |

---

**СПОСОБНОСТ ЗА ГЕНЕРИРАНЕ НА ПЕЧАЛБА**

| *Изводи/Оценки* | *Коментар/Поддържаща информация* |
|---|---|
| Способността на банката за генериране на печалба е надценена. | Отчетената печалба от кредитната институция към 31.12.2011г. е 36 503 хил.лв. и нараства с 18.37% в едногодишен период (30 838 хил.лв. към 31.12.2010г.). Нарастването на финансовия резултат се дължи на увеличаване на нетния лихвен приход (с 16.96%) и приходите от такси и комисионни (с 27.72%), при които нарастването в абсолютна стойност е по-голямо от това при административните разходи и обезценката. |

Печалбата на банката през 2011г. се поддържа на по-високо ниво от действителното, чрез:

➢ **ниските разходи за обезценка**, несъответстващи на влошеното качество на кредитния портфейл[42]:

- банката не спазва нормативните изисквания за класифициране на експозиции[43], хоето води до минимизиране на разходите за обезценка;

- покритието на загубите от кредитен риск с обезценка е недостатъчно - над два пъти по-малко от средното ниво за банковата система[44];

- При адекватно провизиране на рисковите експозиции финансовият резултат на институцията би бил загуба;

➢ **значителна част от приходите на институцията са от текущо начислени лихви** (за голяма част от тях е договорено да се изплатят на падежа на съответните кредити) и от просрочени балансово начислени лихви. Банката не оценива адекватно несигурността от получаването на паричните потоци по тези експозиции и не е предприела мерки за минимизирането й.

| Текущите и просрочени лихви формират голям дял от приходите. | Това е следствие, както на влошаване качеството на кредитите, така и на установената по време на инспекцията практика за отлагане на плащането на лихви чрез предоговаряне и преструктуриране на експозиции. |
|---|---|
| | Към 31.12.2011г. приходите от лихви от кредити са 424 497 хил.лв. За същата дата текущите лихви[45] по корпоративните кредити са 230 390 хил.лв., а просрочените дължими лихви са 75 179 хил.лв. Много голяма част от текущите лихви (44.12% или 101 653 хил.лв.) са по 10 кредита, съответно 71.81% от просрочените лихви (53 983 хил.лв.) също са по 10 кредита. Голяма част от тези експозиции са с недобро качество, с ниска провизираност и повечето са на свързани лица. |

| Повечето от основните показатели за доходност са с по-неблагоприятни нива от средните за банковата | ➢ Възвръщаемостта на активите (ROA) не се променя съществено в едногодишен период и към 31.12.2011г. е 0.66% (0.68% към 31.12.2010г.), при средна стойност за банковата система 0.78%. |
|---|---|
| | ➢ Възвръщаемостта на капитала (ROE) прави изключение, нараствайки в |

---

[42] Инспекцията установи, че отчетеното ниво на класифицираните кредити от банката е нереално ниско и степента на провизираност на кредитния портфейл не съответства на високия кредитен риск поет от институцията, както и не осигурява достатъчен буфер за покриване на риска от загуби. Влошеното качество на кредитния портфейл и недостатъчния размер заделени провизии може да доведе до реализиране на значителни по размер загуби, които да окажат натиск върху доходността на институцията и да застрашат капиталовата й позиция.

[43] Отчетено е по-добро качество от действителното и значително по-ниско ниво на обезценка на кредитния портфейл.

[44] Към датата на инспекцията обезценката е 34 370 хил.лв. Тя нараства с 33.91% за едногодишен период, но въпреки това покритието на загубите от кредитен риск в кредитния портфейл с обезценка е едва 3.05% (едно от ниските стойности за банковата система).

[45] Обобщената информация е от корпоративния кредитен портфейл на банката. Текущите и просрочени лихви включват и такива от минали години.

система.

едногодишен период и бележейки стойност 8.30%, която е над средната за системата;

➢ Нетният лихвен марж намалява от 3.35% към 31.12.2010г. до 3.21% към 31.12.2011г., поради по-високия ръст на лихвоносните активи, спрямо този на нетния лихвен доход. Нетният лихвен марж е значително по-нисък от средната стойност за системата /4.16%/, повлиян основно от много високата цена на привлечения ресурс (5.43%, при средна стойност за системата 3.35%);

➢ Ефективността на банката не показва подобрение и запазва нива по-неблагоприятни от средните за банковата система. Общите разходи са 92.35% от общите приходи, като показателят намалява незначително в едногодишен период, а оперативните разходи (административни и амортизация) са 69.25% от нетните финансови и оперативни приходи. Съпоставени със средните стойности в банковата система, тези съотношения на ПИБ АД запазват тенденция да бъдат по-високи.

| КАПИТАЛ И КАПИТАЛОВА АДЕКВАТНОСТ |
|---|

| *Изводи/Оценки* | *Коментар/Поддържаща информация* |
|---|---|
| Собственият капитал на банката е недостатъчен за покриване на рисковете в банката. | Към 31.12.2011г. банката отчита обща капиталова адекватност 12.32% и адекватност на капитала от първи ред 10.28% - близки съответно до регулаторния минимум и препоръчаното минимално ниво.<br><br>В случай на правилно оценяване на кредитния риск в банката и съответно адекватното му провизиране, нивата на капиталовите показатели биха били значително по-неблагоприятни, спрямо официално докладваните пред БНБ. По мнение на инспекцията реалното състояние на част от основните показатели е следното: |

> - Размерът на капиталовата база[46] е значително по-малък от отчетения от банката за 31.12.2011г.;

> - Общата капиталова адекватност е под установения регулаторен минимум;

> - Адекватността на първичния капитал е под препоръчания от БНБ минимум от 10%;

> - Съотношението[47] на нетните класифицирани активи към капиталовата база се влошава.

| Съществена част от капиталовата база е формирана от средства на офшорни дружества, като цената на дълговите инструменти е висока. | Компоненти на капиталовата база, предоставени от офшорни дружества: |
|---|---|

> - Общо 27% от акционерния капитал са акции, принадлежащи на Легнано Ентърпрайз Лимитид, Кипър и Доменико Венчърс Лимитид, Британски Вирджински острови;

> - 100% от хибридни инструменти[48], включени в капитала от първи ред;

> - 59% от включения в капиталовата база подчинен срочен дълг[49] е към Hillside Apex Fund Ltd. и Growth Management Limited.

| Инспекцията смята, че е необходим значително по-висок капитал по втори стълб. | > - Неправилното определяне на изискванията по стълб 1; |
|---|---|

> - Приетото ниво на доверителност в ползвания от банката вътрешен модел за оценка на кредитния риск, е много неконсервативно и предполага високорисков профил на институцията. От предоставеното кратко представяне на модела за оценка на кредитния риск се вижда, че при генерирането на разпределение посредством Монте Карло симулация е зададено стандартно нормално разпределение, което в практиката не се наблюдава;

> - Концентрационният риск е висок и не е отчетен в достатъчна степен от институцията[50] (особено за кредитни концентрации на база икономическа свързаност), което предполага по-високо капиталово изискване от посоченото;

---

[46] Освен върху съотношенията за капиталова адекватност, стойността на капиталовата база влияе и върху максимално разрешения размер за: големи и вътрешни експозиции, вложенията на банката по чл.17 от ЗКИ, откритата нетна валутна позиция и др.

[47] По данни на банката нетните класифицирани активи са 93.16% от капиталовата база.

[48] Частно пласирана емисия безсрочни, подчинени, необезпечени облигации, емитирани от ПИБ АД, отговарящи на изискванията на чл.3, ал.1, т.6 във връзка с чл.3в, ал.1 и чл.4, ал.2, т.2 от Наредба №8. Със заповед РД22-0740/18.04.2011г. стойността на първия транш на емисията – 20 млн.евро е включена в капитала от първи ред. Облигациите са записани от Restonia Marketing Limited, Британски Вирджински острови, а лихвата по тях е 12.75%.

[49] Лихвените нива по тези дългове са в интервала 13.25%-14%.

[50] Виж изводите и коментарите за концентрационния риск в дела за качество на активи.

    ➢  В отчета по Наредба №8 неусвоените суми по одобрени кредити (от всякакъв вид) са отчетени с 0% конверсионен фактор[51] (най-благоприятно третиране за институцията). В масовия случай банката не отказва усвояването на суми по одобрени кредити поради влошаване на кредитоспособността на кредитополучателите. Това дава основание на инспекцията да счита, че реалната експозиция на банката към кредитен риск е по-висока от докладваната пред БНБ в отчета по Наредба №8;

    ➢  Резервираността[52] на инспекцията по отношение на ползвана от банката практика за обезпечения, отговарящи на изискванията на чл.39 на Наредба №8, учредени като такива по „условен" кредит, да бъдат отчитани като такива и по реални експозиции, обезпечени с „условни" кредит;

    ➢  Неизползваната за обезпечаване част от „условния" кредит, трябва да се отчита задбалансово като кредитен ангажимент и съответно да се претегля за кредитен риск;

    ➢  Би могло да се предвиди и по-висок буфер за ликвиден риск[53], предвид нарастване на репутационния риск за банката и сравнително големия брой клиенти, ползващи услуги за отдалечено банкиране, което позволява много бързо прехвърляне на средства към други институции.

| | |
|---|---|
| **Необходимо е да се подобри процесът по вътрешен анализ на адекватността на капитала.** | ➢  Общата провизираност на кредитния портфейл е недостатъчна и не съответства на размера на експозицията на банката към кредитен риск;<br><br>➢  Подобряване на процеса за определяне на размера на допълнителния капитал по стълб 2;<br><br>➢  Липсата на прогнози за размера на специфичните провизии;<br><br>➢  Липса на прогнози за необходимата капиталова подкрепа за едногодишен или по-голям период. |
| **Предвид подцененото качество на активa и предвиденото нарастване на банката е необходимо увеличаване на собствения капитал от външни източници с висока степен на прозрачност.** | Печалбата на банката е недостатъчна като единствен засега източник за увеличение на капитала[54], предвид:<br><br>➢  Отразяване на надзорните корекции по стълб 1;<br><br>➢  Увеличение на капиталовите изисквания по стълб 2;<br><br>➢  Планирания растеж на активa с над 11% (688 млн.лв.) за 2012г. |

31

**ПОДПИСИ НА ИНСПЕКТОРИТЕ**



# EXHIBIT 55

# ESCROW AGREEMENT

This Escrow Agreement is made this \9ᵗᵇ day of November, 2010 by and between The West Law Group, P.C., and Brian D. West, Esq. who is duly licensed to practice law in the State of Virginia, USA, and whose address is 8000 Towers Crescent Drive, Suite 600, Vienna, VA 22182 (herein referred to as "Escrow Agent"), and Anthony Denis Harriott (herein referred to as "Client").

1. **Appointment and Responsibility.** Escrow Agent, shall act hereunder as a disbursing agent only, and shall not be responsible or liable for the sufficiency, correctness, genuineness, or validity of escrowed funds, nor for the identity, authority, title or rights of any person depositing or claiming funds escrowed herein.

2. **Liability.** That the Escrow Agent shall have no liability to the Client provided he faithfully disburses the monies and Mexican Bonds in accordance with the terms and conditions of this Escrow Agreement. Escrow

3. **Mexican Bonds.** Escrow Agent acknowledges receipt of certain documents that are purported to be two true Government of Mexico Banco del Tesoro obligations ($2,093,859,000) Two Billion Ninety Three Million Eight Hundred Fifty Nine Thousand Dollars, with instrument reference numbers of 3595 and 6628 respectively, copies attached as Exhibits A and B, to which the Client represents he has good title and which are the subject of that certain Sale and Purchase Agreement (hereinafter referred to as "Agreement") dated November 17, 2010 between Mr. Anthony Harriott, individually and Americana Investments, LLC. A copy of said Agreement is attached hereto as Exhibit C, and incorporated by this reference as though set forth herein. Under the terms of said Agreement Client agrees to sell said bonds to Americana Investments, LLC for the sum of ($500,000,000) Five Hundred Million United States Dollars each for a total sales

price of ($1,000,000,000) One Billion United States Dollars. The Escrow Agent hereby issues a non-negotiable Safe Keeping Receipt to the Client as attached in Exhibit D. Escrow Agent agrees to hold such bonds for a period of Ten Days during which Americana Investments is to perform due diligence under the terms of said Agreement and to deliver said Bonds as directed by Americana Investments, LLC upon payment as set forth in the Agreement and failing settlement of the sale to hold such bonds for so long as requested by the Client.

4. **Fees and Expenses.** This fee is due and will be payable immediately upon transfer of funds into the account. The Attorney will charge a fee of 1/8 of 1% percent (0.125 %) on the total amount of funds received into the escrow account for each financial transaction. Each financial transaction shall mean the total amount of all funds coming into the account arising from the sale of the Mexican Bonds and disbursement of all funds between the same parties.

5. **Funds Deposited and Distributed by the Escrow Agent.** Upon receipt of any part or all of the funds to be escrowed, and upon paying or reserving the fees and expenses described in paragraph 4. above, the funds shall be placed on deposit in UBS Tysons Corner Branch into a non interest bearing attorney escrow account. The Attorney shall faithfully follow the directions of the Client in making such wires, placing the funds in investments and otherwise following the legal directions of the Client.

6. **No Attorney/ Client Relationship.** That it is understood and hereby confirmed that no attorney/client relationship exists between the Client and the Escrow Agent. Both parties acknowledge and accept that the Escrow Agent is not under any duty to give any client any legal or other advice.

7. **Adverse Claims.** In the event of any disagreement or upon the presentation of adverse claims or demands in connection with or for any funds affected thereby, the Escrow

Agent shall at his option be entitled to refuse to comply with any such claims or demands, during the pendency of such disagreement and may refrain from disbursing any and all funds affected hereby. The Escrow Agent shall not become liable to the undersigned, or any other person due to his failure to comply with any such adverse claim or demand. Upon notice of adverse claims or demands, the Escrow Agent shall comply with one of the following:

(a) If all differences of the adverse claimants can be settled by agreement and the Escrow Agent shall have been notified by writing, executed jointly or in counterpart by the undersigned, then all persons making adverse claims or demands, in which writing the escrow agent shall be released by all liability or acting or failing to act in compliance with said adverse claims or demands. This agreement must be completed and sent to the Escrow Agent within 30 (thirty) days of receipt of adverse claims or demands by the escrow agent.

(b) lf such agreement cannot be completed within the 30 (thirty) days outlined in Paragraph "a" above, the Escrow Agent shall interplead all funds received, less escrow fees and expenses, into a court of competent jurisdiction. Upon interpleading such funds into a court of competent jurisdiction, the escrow agent shall be released from all liability for such funds.

8. **Attorneys' Fees.** In connection with any litigation, including appellate proceedings, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs. In the case of interpleader, as provided herein, reasonable attorneys' fees and costs of the escrow agent shall be paid from the escrowed funds, upon approval of the court.

9. **Indemnification.** Each party further agrees to indemnify and hold the escrow agent harmless from all claims, suits, judgments or demands arising out of this agreement, or any

agreement made by any of them, their officers, directors, agents, or employees or their

successors in interest, heirs, administrators, assigns, or any person not a party to this agreement,

including any competent governmental authority, as long as escrow agent faithfully disburses all

the funds in accordance with the terms and conditions of this escrow agreement.

10. **Disclosure.**  The parties further agree that The West Law Group, PC, is acting as

escrow agent only, and is not attorney of record to American Investments, LLC for any party in

this transaction.

11. **Other agreements.**  These instructions, and any subsequent written instructions or

modifications given mutually by the parties to the Escrow Agent in connection herewith and

accepted by the Escrow Agent, shall constitute the complete escrow instructions,

notwithstanding any other agreement which the parties may have concerning the subject matter

hereof.  The Escrow Agent shall have no duty to construe or determine the performance or

nonperformance of any term or condition of any contract or agreement between the parties hereto

or between the parties hereto and any third parties, and the duties and responsibilities of the

Escrow Agent are limited to those specifically stated herein.

12. **Construction, Jurisdiction and Venue.**  This agreement and the instructions

contained herein shall be construed in accordance with the laws of the State of Virginia.  By

execution of this agreement the parties hereby expressly consent to personal jurisdiction of the

Fairfax County Courts, and to venue in Fairfax County, and all claims or actions arising out of

this agreement shall be brought in Fairfax County, Virginia, and the parties hereto expressly

waive personal jurisdiction and venue in any other court.

13. **Cancellation and Termination.** This agreement may be canceled at any time prior

to funding by the mutual written agreement of the parties hereto. Funds so disbursed upon

cancellation shall be forwarded to the Client in accordance with the last instructions given to the Escrow Agent.  If funds to be disbursed to any individual do not meet or exceed the amount required for wire transfers by the Escrow Agent's depository, then the funds shall be forwarded by certified mail or hand delivery at the Escrow Agent's offices.

14.  **Resignation of Escrow Agent.**  The Escrow Agent may resign as Escrow Agent and terminate all liability therefore at any time prior to the funding of the escrow agreement as contemplated herein.  Upon funding, in part or in whole, resignation shall be permitted only upon approval of all of the parties hereto, which approval shall not be unreasonably withheld.  In the event the Escrow Agent shall determine that a dispute exists among the parties concerning distribution or if any adverse claim arises, the Escrow Agent may interplead the escrowed funds, less fees and expenses, and resign, without the consent of the parties.

15.  **Lawful Business Enterprise.**  It is hereby represented to Escrow Agent that by their signature below, each and every party (except the escrow agent) affirms that the funds which are the subject of this agreement are the proceeds of lawful activities (of non-criminal and non-terrorist origin) due and owing to the parties from the sale of investments and otherwise.  Said parties further represent that to their knowledge and belief, all federal and state laws and regulations pertaining to investments have been met, and all governmental approvals necessary for such investments have been obtained.

16.  **Income Tax.**  The parties acknowledge that escrow agent is disbursing funds which may constitute "income" under the federal Internal Revenue Code.  Each party is solely responsible for the payment of income taxes (city, state and federal) as applicable.  Escrow Agent shall not be liable for the reporting or collection of income taxes, only the issuance of 1099 forms as required memorializing the disbursement of funds according to this Agreement.

17. **Counterparts.** This agreement may be executed in one or more counterparts.

IN WITNESS WHEREOF the parties hereto have affixed their hands and seals the 19th day of November 2010.

CLIENT: Anthony Denis Harriott

Date: 19ᵗʰ NOVEMBER 2010

ESCROW AGENT: The West Law Group, P.C.

By: _____

Brian D. West, Esq.
Name/Title: President:

Date: 19 Nour 2010

# EXHIBIT A

## Government of Mexico Banco del Tesoro #3595



3595    3595

# República Mexicana

## DEUDA CONSOLIDADA
### DE
### Los Estados Unidos Mexicanos

1000    5000

CINCO MIL PESOS FUERTES

EL TESORO FEDERAL MEXICANO





## EXHIBIT B

**Government of Mexico Banco del Tesoro #6628**



**EXHIBIT C**

**Sale and Purchase Agreement**
**Mr. Anthony Harriott (individually) and American Investments, LLC**
**November 17, 2010**

# AMERICANA INVESTMENTS LLC.

2100 W. Littleton Boulevard
Suite 300
Littleton, CO 80120

Telephone : (514) 667-2481
Fax : (514) 312-8580
Email: americanainvestmentsllc.org

## PRIVATE AND CONFIDENTIAL

## SALE AND PURCHASE AGREEMENT

TRANSACTION CODE: **AMER20105001**

TO          : **Mr. Anthony Harriott, Individual**
Date        : Wednesday, November 17, 2010

**BY AND BETWEEN:**

**ANTHONY HARRIOTT** with address at 56 Gloucester Road, Suite 94, Kensington, London, SW7 4UB (hereinafter referred to as the **"SELLER"**)

**and;**

**AMERICANA INVESTMENTS LLC,** with address at: 2100 Littleton Boulevard, Suite 300, Littleton, Colorado, 80120 (hereinafter Referred to as the **"BUYER"**

**WHEREAS;** The **BUYER** has The Resources to fulfill the sale transaction subject to the present offer as presented dated November 17th, 2010 whereby the **BUYER** and **SELLER** agree and commit to place the *Mexico Bono Del Tesoro* (hereinafter also referred to as the **"Instruments"**) as per terms and condition herein.

**WHEREAS,** the SELLER hereby commits that the instruments is to be delivered in TRUST for the **BUYER** to his designated Escrow Account, at The West Law Group P.C.

**WHEREAS,** the **SELLER** firmly confirms their willingness, authorization and capacity, to cause the delivery of the Instruments to the **BUYER** designated Escrow Trust, under the full responsibility related to such undertaking for completion of the sale; and

**WHEREAS,** the SELLER confirms his obligations to sell the instruments at FIVE HUNDRED MILLION UNITED STATES DOLLARS EACH, the proceeds from the sale shall be forward to the **SELLER** in the agreed amount within 10 banking days or sooner, as per ANNEX I.
Such sale will be conducted with clean and clear funds, of non-criminal origin in the lawful currency of the United States of America; and

**WHEREAS,** the parties in the entire duration of the financial transaction hereby, agree to obey by the applicable banking practices and monetary exchange regulations of the Monetary Authorities and/or Commissions of the Countries either whereby this contract is construed and /or its subject transaction takes place, in part or fully; and Whereas, the parties are mutually desirous of entering their common financial obligations, their rights and duties thereof, and

Therefore, the parties agree to obey the provisions, terms and conditions of the following clauses:

# AMERICANA INVESTMENTS LLC.

2100 W. Littleton Boulevard
Suite 300
Littleton. CO 80120

Telephone : (514) 667-2481
Fax : (514) 312-8580
Email: americanainvestmentsllc.org

### Full Understanding.

This full Recourse Commercial Contract, when executed represents the full understanding between the parties, and supersedes all prior understandings, whether verbal or written.  All statements and representations are made with full corporate and legal responsibility of the parties individually and jointly and under the law penalty of perjury. The present commercial Contract signed by the Parties in two original copies, each copy has full force and effect and legally binding The Parties of the present Contract.

### Execution of Agreement.

Each individual signatory of this Contract represents that it is fully empowered, legally qualified and duly authorized by resolution of the Board of Directors of its Company or by authorization of the Government to enter into and execute this Contract and to be bound by its terms and conditions.  Each page of this Contract shall bear the signature of or initials of authorized signatories, as outlined in the first page of this Contract, Transaction Code: AMER20105001
The Parties agreed that the procedure will be started immediately from the date of the execution of the present contract therefore, in witness whereof the parties agree and acknowledge that they have fully read and understood the contents of the present contractual obligation, and as the testimony of their rights and duties thereof the parties have freely executed this Contract on this November 17th 2010

Special Agreement:
It is agreed that the Buyer becomes the new owner of the 'Instruments' when Seller receives the funds. Further, if the transaction fails for any reason, the Bonds will be returned to Seller immediately.

## For and on behalf of

ANTHONY HARRIOTT

Per _G.D. Harriott_          Date November 17th 2010
Mr. Anthony Harriot


AMERICANA INVESTMENTS LLC

Per _Antonio Lanni_          Date November 17th 2010
Mr. Antonio Lanni

# AMERICANA INVESTMENTS LLC.

2100 W. Littleton Boulevard
Suite 300
Littleton. CO 80120

Telephone : (514) 667-2481
Fax : (514) 312-8580
Email: americanainvestmentsllc.org

### ANNEX I

This **ANNEX I** forms an integral part of the Contract by and between and Anthony Harriott,; Seller and Americana Investments LLC; Buyer

### Transaction Code: AMER20105001

Whereas the **SELLER** and the **PROVIDER** agree to fulfill the financial transaction subject to the present contract as follows:

1. The SELLER shall cause to deliver the Instruments to the BUYER's designated Escrow in person to:

   > The West Law Group, P.C.
   > 8000 Towers Crescent Drive
   > Suite 600
   > Vienna, VA 22182
   > (703) 564-4600 Office
   > (703) 564-5040 Fax
   > Attention: Mr. Brian West

2. The BUYER'S Escrow will receive the delivery of the Instruments and issue a safe-keeping receipt valid for 10 banking days.

3. The BUYER shall pay to the SELLER the within 10 banking days, $USD500,000,000.00 (Five Hundred Million United States Dollars Each). Failure to do so will render this contract null and void and will cause the immediate return of the 'Instruments' to the Seller.

SELLER Banking Coordinates:

| | | |
|---|---|---|
| BANK NAME | : | |
| BANK ADDRESS | : | |
| ACCOUNT NUMBER | : | **TO BE PROVIDED** |
| ACCOUNT NAME | : | |
| ACCOUNT ADDRESS | : | |
| SWIFT CODE | : | |

## PROCEDURE

1. BUYER SIGNS & SEALS THIS SALE AND PURCHASE AGREEMENT (SPA).
2. UPON RECEIPT OF THIS SIGNED SPA, SELLER INSERTS FULL BANKING DETAILS AND COUNTERSIGNS THEN  RETURNS TO BUYER, THE SPA BECOMES A BINDING COMMERCIAL CONTRACT.
3. UPON  RECEIPT  OF  COUNTERESIGNED  AGREEMENT,  SELLER  DELIVERS  THE  ORIGINAL INSTRUMENTS, ATTESTATION AND POWER OF ATTORNEY TO THE BUYER'S ESCROW.
4. UPON RECEIPT OF ABOVE DOCUMENTS BY THE BUYER'S ESCROW, BUYER PERFORMS DUE DILIGENCE, VERIFICATION AND AUTHENTICATION OF THE INSTRUMENTS IMMEDIATELY AND NO LATER THAN 10 BANKING DAYS.
5. UPON SUCCESSFUL DUE DILIGENCE, VERIFICATION AND AUTHENTICATION, BUYER'S BANK SENDS THE AGREED PAYMENT SETTLEMENT TO THE SELLER'S BANK.

# AMERICANA INVESTMENTS LLC.

2100 W. Littleton Boulevard
Suite 300
Littleton. CO 80120

Telephone : (514) 667-2481
Fax : (514) 312-8580
Email: americanainvestmentsllc.org

6.  BUYER AND SELLER IRREVOCABLY AGREE AND ACCEPT TO PAY TO COMMISSIONS FROM THE
    PROCEEDS OF SALE IN THE TOTAL AMOUNT OF TWO PERCENT (2%) OF THE TOTAL SALE PRICE.

**FOR AND ON BEHALF OF**

Mr. Anthony Harriott, Individual

Mr. Antonio Lanni, CEO

Americana Investments LLC

Exhibit D

## Non Negotiable Safe Keeping Receipt

Escrow Agent, Brian D. West, Esq. hereby acknowledges receipt of certain documents that are purported to be two true Government of Mexico Banco del Tesoro obligations ($2,093,859,000) Two Billion Ninety Three Million Eight Hundred Fifty Nine Thousand Dollars, with instrument reference numbers of 3595 and 6628 respectively and agrees to hold said bonds safe until the sale and settlement of the bonds and failing settlement to keep said bonds safe and follow all directions of the Client regarding said bonds.

The West Law Group, P.C.

By: Brian D. West, Esq.
8000 Towers Crescent Drive, Suite 600
Vienna, Virginia 22182
(703) 564- 4600

# EXHIBIT 56

*Фрея*  *Freya*

*Транслейшънс*  *Translations*

Преводи от и на чужди езици
гр. Варна, бул. Св.Св. Кирил и Методий № 1
Email: freyatranslations@gmail.com

*Translation from Bulgarian*

## AGREEMENT
### Supplementing the Sale of Receivables Agreement and the Additional Agreement of October 30, 2014
### As executed by and between
### First Investment Bank, AD and Vili Vist, EAD

This Agreement was entered into this 30th day of October in 2014 by and between:

1. **FIRST INVESTMENT BANK, AD** having EIK (Company number): 831094393 and seat and registered office address at Sofia, 37 Dragan Tsankov Boulevard, as represented by the Executive Directors Dimitar Kostov Kostov and Vassil Hristov Hristov, hereinafter referred to as **the Transferor or Cedent**, of the first part,

   **And**

2. **VILI VIST, EAD**, a company duly recorded in the Commercial Register kept at the Registry Agency under EIK: 202806241 and having seat and registered office address at Sofia, Oborishte District, 4 Silistra St., 4th floor, as represented by the Executive Director Nikolay Milev Milev hereinafter referred to as **the Transferee or Cessionary**, of the second,

   And shall be collectively referred to as "**the Parties**".

   WHEREAS, on June 13, 2014 the Parties entered into an agreement for transfer of receivables (The June 13 Agreement) where First Investment Bank, AD was the Transferor and Vili Vist, ED was the Cedent, and whereby the The Transferor transferred and assigned to the Transferee an account receivable of BGN 10,407,000 (*ten million four hundred and seven thousand Bulgarian levs*), being a portion of the Transferor's own account receivable from bank account of IBAN: BG 21 KORP 9220 20 29012001 with Corporate Commercial Bank, AD (having EIK:831184677) (CCB) and which receivable from that certain bank account amounts to BGN 97,500,000 in total;

   NOW, THEREFORE, the Parties agreed as follows:

Art.1. The Transferee agrees and undertakes that by October 31st, 2014 the transferee shall submit a statement to offset to CCB in writing and in a form provided by the law to notify CCB that The Transferee shall offset the amount of its debt owed to such bank as arising from a bank loan agreement signed with CCB on

October 10, 2013 against the amount of the receivables The Transferee acquired under The June 13 Agreement. The Transferee shall supply the Transferor a notarized copy of its statement to offset.

Art.2.1. In the event that the offset based on the Statement to offset under Art.1 above is declared null and void under the procedures prescribed by the law or that a declaratory judgment is entered, and has become effective, that the receivable is non-existent and/or that the Transferee is still owing a debt - being the subject-matter of the Statement to offset - to CCB under the bank loan agreements and in an amount equal to the offset amount, each party hereto shall be entitled to give the other an unilateral notice in writing to have the receivable transferred returned to the Transferor.

Art.2.2. By signing this Agreement the Transferee gives its explicit instructions that the June 13 Agreement receivable shall be automatically transferred back to the Transferor upon The Transferee's receipt of the other party's unilateral notice under 2.1 above. Upon receipt by one party of the other party's unilateral notice under 2.1 above The Transferor shall immediately acquire back all creditor rights in the receivable that was transferred under the June 13 Agreement while the Transferee shall be relieved of all and any liability that might ensue therefrom, except for its duty set forth in 5.1 below.

Art.3.1. In the event that the Statement to offset under Art.1 hereinabove above is declared *null and void in part* or that a declaratory judgment is made, and has become effective, that *a portion* of the transferred receivable is *non-existent* and/or that the Transferee is still owing a debt - being the subject-matter of the offset - to CCB under the bank loan agreements and in an amount equal to the offset amount, each party hereto shall be entitled to give the other an unilateral notice in writing to have that portion of the receivable so transferred returned to the Transferor.

Art.3.2 By signing this Agreement the Transferee gives its explicit instructions that if the so offset portion of the receivable is declared null and void or if the offset of that portion is declared void, or if the receivable itself is declared non-existent, and/or if it is ascertained that The Transferee is liable to CCB for that portion of the receivable under the bank loan agreements, said portion of the receivable shall be automatically transferred back to the Transferor upon receipt by one party of the other party's unilateral notice under 3.1 above. Upon receipt by one party of the other party's unilateral notice under 3.1 above The Transferor shall immediately recover and get back its all creditor rights in that portion of the receivable that was transferred under the June 13 Agreement while the





Transferee shall be relieved of all and any liability that might ensue therefrom, except for its duty set forth in 5.1 below.

Art.3.3. The Parties agree that the Transferor, having concurred with the Transferee, shall at any time be entitled to give notice to the Transferee and demand from the latter to return the entire amount of the receivable or a portion of it back to the Transferor, except in some of the cases provided for in Art.2.1 and 3.1 above, with no further reasons for the notice needed. The Transferor shall recover and get back its creditor's rights in the receivable or that certain portion of it as transferred under the June 13 Agreement and being the subject matter of the statement made under this Article, immediately upon Transferee's receipt of the Transferor's unilateral notice mentioned in the preceding sentence, while the Transferee shall be relieved of all and any liability that might ensue accordingly.

Art.4. The Transferor's unilateral notice under Art.2.1 or 3.1 above shall be deemed to have the force and effect of a Contract to Transfer Receivables as if validly executed between the Parties, by virtue of which the receivables transferred under the June 13 Agreement shall be transferred back to the Transferor and for which the Transferee hereby gives its explicit and irrevocable consent by signing this Agreement.

Art.5. Upon receipt by any of the parties of a notice under Art.2.1 above or Art.3.1 above the receivable shall immediately go back to The Transferor and in the latter's possession with all its accessories and with all privileges and other accessories attached to it, regardless of whether or not those have been mentioned herein.

Art.5.1. Upon occurrence of the conditions of Art.5 the Transferor shall repay to the Transferee the full price the latter paid under the June 13 Agreement to the former plus a compensation in the amount of the interest and commissioning fees the Transferor paid to the Transferee under the bank loan agreement No.000LD-L-000601 dated October 30th 2014 until the date when the receivable was transferred back. The amount due under the previous sentence shall be automatically credited by the Transferor to the Transferee's account designated to service the debt under bank loan agreement No.000LD-L-000597 of October 30, 2014 for the purpose of discharging the debt under said bank loan agreement, while the amount exceeding the said loan debt shall remain at the full disposal of the Transferee.

Art.6.1. The Transferee undertakes to hand over to the Transferor the full set of documents The Transferee was supplied by the Transferor in proof of the basis and the amount of the receivable being transferred, along with all other




4

documents concerning or related thereto within three (3) days after the conditions for a transfer back of the receivable (or a portion of it) have occurred.

Art.6.2. The Transferor undertakes to notify the debtor under the receivable so transferred, namely: Corporate Commercial Bank, AD, of the re-acquisition by the Transferor of the receivable (or a portion of it) within three (3) days upon the said back transfer occurring under the provisions hereof.

Art.7. The Parties agree that in the event of a back transfer of the receivable and its re-possession by the Transferor the latter shall not be liable for any of the costs incurred by the Transferee in the collection of the transferred receivable. The Transferor shall be relieved of any and all liabilities to the Transferee for any payment or otherwise that might have arisen from or are related to this Agreement.

This Agreement was executed in two identical counterparts and each party hereto retained one. This Agreement is an integral part of the June 13 Agreement.

For the Bank (The Transferor):              for the Transferee:

_____/s/_____                            _____/s/_____
Dimitar Kostov                               Nikolay Milev,
Executive Director                           Executive Director

_____/s/_____                            *Round seal of Vili Vist, EAD*
Vassil Hristov                               *Stamp: TRUE COPY; /s/ (ill);*
Executive Director                           *Round seal of Villi Vist EAD*

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct English translation from the Bulgarian original of the attached document – Agreement of October 30, 2014 supplementing the Sale of Receivables Agreement and the Additional Agreement of October 30, 2014 as executed by and between First Investment Bank, AD and Vili Vist, EAD. This translation has 4 (four) pages.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*



Споразумение
към
Договор за продажба на вземане и Допълнително споразумение от 30.10.2014г. сключени
между „ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД и
„ВИЛИ ВИСТ" ЕАД

Днес, 30.10.2014 г. в гр. София, между:

**1. „ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД**, с ЕИК 831094393, със седалище и адрес на управление: гр.София, бул. „Драган Цанков" № 37, представлявано от изпълнителните директори Димитър Костов Костов и Васил Христов Христов, наричано по-долу за краткост *„ЦЕДЕНТ"*, от една страна,
и

**2. „ВИЛИ ВИСТ" ЕАД**, вписано в Търговския регистър при Агенцията по вписванията с ЕИК 202806241, със седалище и адрес на управление: гр. София, район „Оборище", ул. Силистра No 4, ет. 4, представлявано от Изпълнителния директор Николай Милен Милев, наричано за краткост по-долу *„ЦЕСИОНЕР"*, от друга страна,
        (наричани общо по-нататък *„Страните")*

Страните, като взеха предвид, че на 13.06.2014г. между „ПЪРВА ИНВЕСТИЦИОННА БАНКА" АД като ЦЕДЕНТ и „ВИЛИ ВИСТ" ЕАД, като ЦЕСИОНЕР, е сключен Договор за прехвърляне на вземане (наричан по-долу за краткост "Договора"), съгласно който ЦЕДЕНТЪТ е прехвърлил на ЦЕСИОНЕРА вземане в размер на 10 407 000 лв. (десет милиона и четиристотин и седем хиляди лева), представляващо част от вземането на ЦЕДЕНТА от сметка с IBAN BG 21 KORP 9220 20 29012001 при „КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД, с ЕИК 831184677, което вземане от сметка е в общ размер 97 500 000 лв. (деветдесет и седем милиона и петстотин хиляди лева).

        се споразумяха за следното:

Чл. 1. ЦЕСИОНЕРЪТ се задължава, в срок до 31.10.2014г. да отправи писмено изявление в предвидената от закона форма, до „Корпоративна търговска банка" АД, с което прихваща задълженията си към „Корпоративна търговска банка" АД, произтичащи от Договор за банков кредит от 10.10.2013г., сключен с „Корпоративна търговска банка" АД, с придобитите на основание Договора вземания, до размера на по-малкото, както и да представи на ЦЕДЕНТА нотариално заверено копие от депозираното изявление за прихващане.

Чл. 2.1. В случаи, че прихващането, извършено въз основа на изявлението за прихващане по чл.1 от настоящото Споразумение, бъде прогласено за недействително по предвидения в закона ред или при установяване с влязъл в сила съдебен акт, че прехвърленото вземане не съществува и/или че ЦЕСИОНЕРЪТ има задължение към "Корпоративна търговска банка" АД по договорите за кредит, предмет на прихващането(до размера на извършеното прихващане), всяка от страните има право да отправи до другата едностранно писмено изявление за връщане на прехвърленото вземане в патримониума на ЦЕДЕНТА.

Чл. 2.2. С подписването на настоящото споразумение, ЦЕСИОНЕРЪТ дава своето изрично нареждане за автоматично прехвърляне обратно на вземането, предмет на Договора, в патримониума на ЦЕДЕНТА след получаване на изявлението на съответната страна по чл. 2.1 от настоящото Споразумение. Считано от момента на получаване от съответната страна на едностранното изявление по чл. 2.1 по-горе, ЦЕДЕНТЪТ придобива отново всички права по

ВЯРНО С ОРИГИНАЛА

кредитор по вземането, прехвърлено съгласно Договора, без от това да произтичат каквито и да било задължения към ЦЕСИОНЕРА, освен задължението по чл. 5.1 по – долу.

Чл. 3.1. В случай, че изявлението за прихващане по чл.1 от настоящото Споразумение бъде частично обявено за недействително или при установяване с влязъл в сила съдебен акт, или че част от прехвърленото вземане не съществува и/или че ЦЕСИОНЕРЪТ има задължение към "Корпоративна търговска банка" АД по договорите за кредит, предмет на прихващането(до размера на извършеното прихващане), всяка от страните има право да отправи до другата едностранно писмено изявление за връщане на съответната част от прехвърленото вземане в патримониума на ЦЕДЕНТА.

Чл. 3.2. С подписването на настоящото Споразумение, ЦЕСИОНЕРЪТ дава своето изрично нареждане за автоматично прехвърляне обратно в патримониума на ЦЕДЕНТА на частта от вземането, за която прихващането е обявено за недействително или за частта за която е установено че прехвърленото вземане не съществува и/или за частта за която се установи че ЦЕСИОНЕРЪТ има задължение към "Корпоративна търговска банка" АД по договорите за кредит, предмет на прихващането, след получаване на изявлението на от съответната страна по чл. 3.1. по-горе. Считано от момента на получаване от от съответната страна на едностранното изявление по чл. 3.1, ЦЕДЕНТЪТ придобива отново всички права на кредитор по тази част от вземането, прехвърлено съгласно Договора, без от това да произтичат каквито и да било задължения към ЦЕСИОНЕРА, освен задължението по чл. 5.1 по – долу.

Чл. 3.3. Страните се съгласяват, че ЦЕДЕНТЪТ след съгласуване с ЦЕСИОНЕРА по всяко време има право да отправи едностранно изявление за връщане на цялото или част от прехвърленото вземане в патримониума на ЦЕДЕНТА, извън случаите на чл. 2.1. и 3.1. и без да са налице допълнителни основания за това. Считано от момента на получаване от ЦЕСИОНЕРА на едностранното изявление на ЦЕДЕНТА по предходното изречение, ЦЕДЕНТЪТ придобива отново всички права на кредитор по цялото или по съответната част от вземането, прехвърлено съгласно Договора, за което е направено изявлението по този член, без от това да произтичат каквито и да било задължения към ЦЕСИОНЕРА.

Чл. 4. Едностранното изявление на ЦЕДЕНТА по чл. 2.1, съответно по чл. 3.1. от настоящото Споразуменне, се приравнява на договор за цесия между същите страни, по силата на който прехвърлените по Договора вземания се прехвърлят обратно от ЦЕСИОНЕРА на ЦЕДЕНТА, за което прехвърляне с подписването на настоящото Споразумение ЦЕСИОНЕРА дава изричното си и неотменимо съгласие.

Чл. 5. След получаване от която и да е страните на едностранното уведомление по чл. 2.1., съответно по чл. 3.1. от настоящото Споразумение, вземането преминава обратно върху ЦЕДЕНТА заедно с принадлежностите и заедно с всички съпътстващи го привилегии и други принадлежности, независимо дали са изрично посочени в настоящото Споразумение.

Чл. 5.1. При настъпване на условията по чл. 5. ЦЕДЕНТА се задължава да заплати на ЦЕСИОНЕРА изцяло получената цена по договора за прехвърляне на вземане и неустойка в размер на платените от ЦЕДЕНТА на ЦЕСИОНЕРА лихви и комисионни по Договор за кредит №. 000LD-L-000601/ 30.10.2014 г. до датата на обратното прехвърляне на вземането. Дължимата цена по предходното изречение се превежда служебно от ЦЕДЕНТА по сметката на ЦЕСИОНЕРА за обслужване на дълга по Договор 000LD-L-000597/30.10.2014 г. за банков кредит за погасяване на остатъка от задълженията по посочения договор за кредит, като със сумата надхвърляща размера на кредитното задължение, ЦЕСИОНЕРЪТ има право да се разпорежда както намери за добре.

Чл. 6.1. ЦЕСИОНЕРЪТ се задължава да предаде иа ЦЕДЕНТА, в 3 /три/ дневен срок от настъпване на условията за връщане на прехвърленото вземане (изцяло или частично) в патримониума на ЦЕДЕНТА, всички предадени му първоначално от ЦЕДЕНТА документи, установяващи основанието и размера на прехвърляното вземане, както и всички други документи във връзка с прехвърляното вземане.

ВЯРНО С ОРИГИНАЛА

52

Чл. 6.2. ЦЕСИОНЕРЪТ се задължава да уведоми длъжника по прехвърляното вземане - „Корпоративна търговска банка" АД,  за връщането на вземането (изцяло или частично) в патримониума на ЦЕДЕНТА, в срок до 3 (три) дни след връщането, настъпило по реда на настоящото Споразумение.

Чл. 7. Страните се споразумяват, че в случай на връщане на вземането в патримониума на ЦЕДЕНТА, същият не дължи възстановяване на направените от ЦЕСИОНЕРА разноски във връзка със събиране на прехвърляното вземане. ЦЕДЕНТЪТ няма каквито и да било задължения включително, ио не само, парични към ЦЕСИОНЕРА във връзка с настоящото Споразумение.

Настоящото Споразумение се сключи в два еднообразни екземпляра по един за всяка от страните и е неразделна част Договора.

ЗА БАНКАТА /ЦЕДЕНТ/:

Димитър Костов
Изпълнителен директор

Васил Христов
Изпълнителен директор

ЗА ЦЕСИОНЕРА:

Николай Милев
Изпълнителен директор

ВЯРНО С ОРИГИНАЛА

# EXHIBIT 57



# Орел
# Транслейшънс

**Freya**
*Translations*

Преводи от и на чужди езици
гр. Варна, ул.Св.Св. Кирил и Методий № 1
Email: freyatranslations@gmail.com

*Translation from Bulgarian*

| Rectangular stamp: | Doc.145, Volume: I (one),<br>Ref.3913, Date: 30 May 2014 | 362 |
|---|---|---|

C/o:   Tsveta Stoynova Atanassova Notary Public
Commissioned under No.458 by the Chamber of Notaries Public
For the town of Burgas
33 General Gurko St., 1st floor, Burgas

## NOTARY NOTICE

From: **CORPORATE COMMERCIAL BANK** having seat and registered office address at Sofia, 10 Graf Ignatiev St., and registered in the Commercial Register kept at the Registry Agency under EIK (Company number):831184677, as represented jointly by any two Executive Directors Orlin Nikolov Rusev, Ilian Atanassov Zafirov, Georgi Pankov Hristov and Alexander Miroslavov Pantaleev

To:   **TRANSSTROY-BURGAS, AD** having seat and registered office address at Burgas, 8 Uspenska St., and registered in the Commercial Register kept at the Registry Agency with the Ministry of Justice (CR) under EIK (Company number):102003626, as represented by Nikolay Milev Milev

Pursuant to a Bank Loan Agreement entered on 10th October 2013 (The BLA) by and between **CORPORATE COMMERCIAL BANK, AD** (CCB or the Bank) and **VILI VIST, EOOD** (having seat and registered office address at Sofia, j.k. Mladost-3, bl.342, entrance 2, 5th floor, as recorded in the CR under EIK:202444760, later transformed and succeeded by **VILI VIST, EAD** having EIK:202806241)(the Borrower) the above Bank extended a bank loan to the Borrower in the amount of BGN 10,000,000 *(ten million Bulgarian levs)*.

Also on October 10th 2013 CCB and you, **TRANSSTROY-BURGAS, AD** entered into an agreement pursuant to which you undertook to step in as co-debtor and to be jointly liable with the original debtor and bound by the terms of the above-mentioned BLA.

By virtue of terms set forth in The BLA the Borrower agreed and undertook to repay the principle amount of the loan together with the agreed interest accrued on the dates and maturity dates stipulated therein. The Borrower further agreed and undertook to ensure that its current account with the CCB would at all times have sufficient funds for the agreed regular payments of the principle and of the interest accrued accordingly.

As of 29th May 2014 Vili Vist, EAD failed to make available the amount of BGN 152,500.00 *(one hundred fifty two thousand and five hundred Bulgarian levs)* in its current account with CCB for the purpose of paying the interest accrued on the principle of the loan borrowed. Vili Vist, EAD also failed to make available the amount of BGN 185,195.00 *(one hundred eighty five thousand one hundred and ninety-five Bulgarian*



*levs*) in its current account with CCB for the purpose of making the first payment of the principle, which matured on 26th May 2014.

For the above Borrower's failure and pursuant to Section 40 (f) with reference to Section 35 of The BLA, and in the light of the factual circumstances shown below—

1. That pursuant to Section 31 (a) of the BLA the Borrower agreed and undertook to create a pledge under Art.310 of the Commercial Act of the shares of stock the Borrower held in the capital of Transstroy Holding, AD, including any stock the Borrower might acquire in the future. The Interim Stock Certificate showing the shares of stock held by the Borrower was not supplied to CCB within six months' time following the execution of The BLA, so, therefore the Borrower has defaulted on the BLA;

2. That the currently available amount of BGN 103, 206.51 in Borrower's BGN bank accounts with CCB of IBAN: BG86KORP92201051280901 and IBAN: BG68KORP92201451280901, respectively, along with all future remittances thereto, given that all current and future Borrowers' receivables have been pledged in favour of CCB pursuant to Section 31 (a) of the BLA, have now been attached by the National Revenue Agency Territorial Directorate in Sofia;

3. That Vili Vist, EAD has failed to pay the agreed loan management and processing costs fee per the BLA;

Which factual circumstance give grounds as per Section 40, subsections (a), (c) and (d) to CCB to accelerate the loan extended to Vili Vist, EAD under the said BLA in full commencing on the expiry of seven days upon receipt of this Notice. You, in your capacity as a co-debtor, are hereby given this Notice urging you repay in full the debt you owe under the BLA and which debt as of 29th May 2014 amounts to BGN 10,210,947.95 (*ten million two hundred and ten thousand nine hundred and forty-seven pint ninety-five Bulgarian levs*) and is made of:

- A BGN 10,000,000 (*ten million Bulgarian levs*) principal amount;

- An amount of BGN 152,500.00 (*one hundred fifty two thousand and five hundred Bulgarian levs*) of interest in arrears as charged pursuant to Section 10 of the BLA;

- BGN 7,361.10 (*seven thousand three hundred and sixty-one point ten Bulgarian Levs*) – interest charged pursuant to Section 10 of the BLA;

- BGN 293.23 (*two hundred and ninety-three point twenty-three Bulgarian Levs*) – interest on principal payment in arrears pursuant to Section 12 of the BLA;

- BGN 793.62 (*seven hundred and ninety-three point sixty-two Bulgarian Levs*) – penalty for failure to pay interest due pursuant to Section 13 of the BLA

- BGN 50,000.00 (*fifty thousand Bulgarian levs*) of due but unpaid loan management and processing costs fee pursuant to Section 14 of the BLA.

Failure on your part to repay in full the accelerated loan debt under the BLA - to which BLA you are a party and co-debtor jointly with Vili Vist, EAD, and which debt as of 29th May 2014 amounts to BGN 10,210,947.95 (*ten million two hundred and ten*

*thousand nine hundred and forty-seven pint ninety-five Bulgarian levs*), plus all interest to accrue and penalty to be charged from that date onwards – will prompt Corporate Commercial Bank, AD to bring an enforcement action to collect its receivables.

**For Corporate Commercial Bank, AD:**

_____/s/ (ill.)_____                    _____/s/ (ill.)_____
Georgi Hristov,                                 Alexander Pantaleev,
Executive Director                            Executive Director

*(Visible partial stamps and a signature on the left of the page)*

The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct English translation from the Bulgarian original of the attached document – Notary Notice of Ref.3913 dated 30th May 2014 given by CCB to Transstroy-Burgas, AD c/o Notary Public Tsveta Stoyanovo Atanassova. This translation has 3 (three) pages.

Translator: _____        Ilka Simeonova Dyulgerova

362

ЧРЕЗ  ЦВЕТА СТОЯНОВА АТАНАСОВА
НОТАРИУС с рег.№ 458 на Нотариалната камара,
с район на действие - гр. Бургас,
ул. "Ген. Гурко" № 33, ет.1

Н О Т А Р И А Л Н А   П О К А Н А

от    "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД
      със седалище и адрес на управление гр. София, ул. "Граф
      Игнатиев" № 10, вписано в търговския регистър при Агенция по
      вписванията с ЕИК 831184677, представлявано заедно от всеки
      двама от изпълнителните директори Орлин Николов Русев,
      Илиан Атанасов Зафиров, Георги Панков Христов и Александър
      Мирославов Панталеев

до    "ТРАНССТРОЙ - БУРГАС" АД
      със седалище и адрес на управление гр. Бургас, ул. „Успенска"
      № 8, вписано в търговския регистър при Агенцията по
      вписванията към Министерството на правосъдието с ЕИК
      102003626, представлявано от Николай Милев Милев

      На основание Договор за банков кредит, сключен на 10.10.2013 г. между
"КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД и „ВИЛИ ВИСТ" ЕООД, със седалище и адрес на
управление гр. София, ж.к. „Младост 3", бл. 342, вх. 2, ет. 5, вписано в търговския регистър
при Агенцията по вписванията към Министерството на правосъдието с ЕИК 202444760
(впоследствие преобразувано с правоприемник "ВИЛИ ВИСТ" ЕАД с ЕИК 202806241),
банката предостави на кредитополучателя банков кредит в размер на 10 000 000 лева
(десет милиона лева).
      На 10.10.2013 г. между "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД и Вас -
"ТРАНССТРОЙ - БУРГАС" АД бе сключен Договор за встъпване в дълг, на чието основание
встъпихте като солидарен длъжник в дълга по гореописания договор за банков кредит.
      По силата на договора за кредит кредитополучателят се задължи да изплаща
главницата и уговорената за ползвания кредит лихва на уговорените в договора дати и
падежи, както и да осигурява по разплащателната си сметка в "КОРПОРАТИВНА
ТЪРГОВСКА БАНКА" АД средствата, необходими за издължаване на вноските по
главницата и начислените лихви.

      Към 29.05.2014 г. "ВИЛИ ВИСТ" ЕАД не осигури по разплащателната си сметка в
"КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД сумата в размер на 152 500.00 лева (сто
петдесет и две хиляди и петстотин лева), необходима за издължаване на пълния размер на
дължимата лихва за ползвания кредит, както и сумата в размер на 185 195.00 лева (сто

осемдесет и пет хиляди сто деветдесет и пет лева), необходима за издължаване на пълния размер на първа вноска по главницата с падеж 26.05.2014 г. за ползвания кредит.

Поради посоченото неизпълнение и на основание т. 40, буква "ж", във връзка с т. 35 от горепосочения Договор за банков кредит от 10.10.2013 г., както и с оглед следните фактически обстоятелства:

1. Съгласно т. 31, буква „а" от Договор за банков кредит от 10.10.2013 г. кредитополучателят се задължи да учреди реален залог по реда на чл. 310 от Търговския закон върху притежаваните от него акции от капитала на "Трансстрой Холдинг" АД, включително и такива придобити в бъдеще. Временното удостоверение за притежаваните от него акции не е предадено на "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД в продължение на повече от шест месеца след сключване на договора за кредит и представлява нарушение на договора;

2. Върху сметки на кредитополучателя с номера IBAN: BG86KORP92201051280901 – в лева и IBAN: BG68KORP92201451280901 – в лева, открити в "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД, всички настоящи и бъдещи вземания по които са заложени съгласно т. 31, буква "е" от Договора за банков кредит от 10.10.2013 г. в полза на "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД, е наложен запор от ТД на НАП София върху налични и постъпващи суми в размер на 103 206.51 лв.;

3. "ВИЛИ ВИСТ" ЕАД не е платило дължимата по т. 14 от Договора за банков кредит от 10.10.2013 г. комисиона за разходите по управление и обработка на кредита,

представляващи основания по т. 40, букви „а", „в" и „г", "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД едностранно обявява целия банков кредит на "ВИЛИ ВИСТ" ЕАД по Договор за банков кредит от 10.10.2013 г. за предсрочно и изцяло изискуем, считано от изтичане на седем дни от получаване на настоящото писмо, като с настоящото писмо Ви каним, в качеството Ви на солидарен длъжник, в едноседмичен срок да погасите цялото задължение по кредита, което към 29.05.2014 г. е в размер на 10 210 947,95 лева (десет милиона двеста и десет хиляди деветстотин четиридесет и седем лева и деветдесет и пет стотинки) и включва:

- 10 000 000 лева (десет милиона лева) - главница по кредита;
- 152 500 лева (сто петдесет и две хиляди и петстотин лева) – просрочени лихви, начислени на основание т. 10 от договора;
- 7 361,10 лева (седем хиляди триста шестдесет и един лева и десет стотинки) - начислени лихви за редовна главница, на основание т. 10 от договора;
- 293,23 лева (двеста деветдесет и три лева и двадесет и три стотинки) – начислени лихви за просрочена главница, на основание т. 12 от договора;
- 793,62 лева (седемстотин деветдесет и три лева и шестдесет и две стотинки) - неустойки за неплатени лихви, дължими на основание т. 13 от договора;
- 50 000,00 лева (петдесет хиляди лева) – неплатена комисиона за разходите по управление и обработка на кредита, на основание т. 14 от договора.

В случай че в дадения Ви едноседмичен срок не издължите обявеното за предсрочно изискуемо цяло кредитно задължение по Договор за банков кредит от 10.10.2013 г., по което Вие сте солидарен длъжник заедно с кредитополучателя "ВИЛИ ВИСТ", което към 29.05.2014 г. е в размер на 10 210 947,95 лева (десет милиона двеста и десет хиляди деветстотин четиридесет и седем лева и деветдесет и пет стотинки), ведно с начислените след тази дата лихви и неустойки, "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД ще

удовлетвори взаманията си чрез предприемане на действия за принудителното им събиране.

ЗА "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД:

Георги Христов
/изпълнителен директор/

Александър Панталеев
/изпълнителен директор/

# EXHIBIT 58



## Фрея Freya
### Транслейшънс Translations

Преводи от и на чужди езици
гр. Варна, ул.Св.Св. Кирил и Методий № 1
Email: freyatranslations@gmail.com

*Translation from Bulgarian*

| (Logo) | **CORPORATE COMMERCIAL BANK, AD** | **CORPORATE COMMERCIAL BANK, AD**<br>**Headquarters**<br>**Our ref.4029 of 19th June 2014** |
|---|---|---|

## REQUEST FOR VOLUNTARY PERFORMANCE OF CONTRACTUAL OBLIGATIONS

To: **CIBOLE SERVICES INCORPORATED BULGARIA, EOOD** having seat and registered office address at Sofia 1303, Vazrajdane District, 11 Antim I St., duly recorded in the Commercial Register kept at the Registry Agency under EIK (Company number): 202345189 as represented by Manager Gergana Kirolova Angelova (having EGN (Personal ID number): 7602192838)

From: **CORPORATE COMMERCIAL BANK** having seat and registered office address at Sofia, 10 Graf Ignatiev St., and registered in the Commercial Register kept at the Registry Agency under EIK (Company number):831184677, as represented jointly by any two Executive Directors Orlin Nikolov Rusev (having EGN:6706236664), Ilian Atanassov Zafirov (having EGN:6402046768), Georgi Pankov Hristov (having EGN:6909216648) and Alexander Miroslavov Pantaleev (having EGN:7004116265)

Dear Mrs Angelova,

This is to inform you that as of June 18, 2014 **Cibole Services Incorporated Bulgaria, EOOD**'s debt arrears to **Corporate Commercial Bank, AD** under Bank Loan Agreement signed on 20th December 2012, stood at:

- Principal arrears:        BGN 387,198.49
- Penalty interest:        BGN 10,707.16

    **Total:**        **BGN 397,905.65**

*(In words: Three hundred ninety seven thousand nine hundred and five point sixty-five Bulgarian levs)*

This to inform you that pursuant to Section 39 (f) and Section 41 of the above-mentioned Bank Loan Agreement and pursuant to Art.60 of the Law on Credit Institutions **Corporate Commercial Bank, AD** is accelerating a portion of your debt under the above Bank Loan Agreement for your failure to make regular interest and penalty interest payments, which portion as of 18 June 2014 stood at:

| | | |
|---|---|---|
| - | Penalty interest | BNG  10,707.16; |
| - | Interest in arrears | BNG 387,198.49; |
| - | Portion of the principal | BGN 22,358,776.90; |

| **Total amount due:** | **BGN 22,756,682.55** |
|---|---|

This is to hereby give you a 7 (seven) days' notice, commencing on the date you receive this, to repay the following portion of your debt to **Corporate Commercial Bank, AD**, made of: (i) BNG 10,707.16 of penalty interest, plus (ii) BNG 387,198.49 in interest arrears, plus the payable portion of the principal amounting to BGN 22,358,776.90 or **BGN 22,756,682.55 (*twenty two million seven hundred fifty-six thousand six hundred and eighty-two point fifty-five Bulgarian levs*) in total debt due and payable**, plus all additional interest and penalty to accrue till the day of actual payment.

Failure to repay the debt owed by **Cibole Services Incorporated Bulgaria, EOOD** within the set time-limit will prompt **Corporate Commercial Bank, AD** to launch an action for forced collection of its receivables under the procedures prescribed by the law.

**For Corporate Commercial Bank, AD:**

---
Orlin Russev,
Executive Director

---
Ilian Zafirov,
Executive Director

/s/ (ill.)
Georgi Hristov,
Executive Director

*Round seal of Corporate Commercial Bank, AD*

/s/ (ill.)
Alexander Pantaleev,
Executive Director

---

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct English translation from the Bulgarian original of the attached document – Request for Voluntary Performance of Contractual Obligations of ref.4029 of 19th June 2014 as sent by CCB to Cibole Services Incorporated Bulgaria, EOOD. This translation has 3 (three) pages.*

*Translator: _____   Ilka Simeonova Dyulgerova*

 **КОРПОРАТИВНА
ТЪРГОВСКА БАНКА АД**



**П О К А Н А
ЗА ДОБРОВОЛНО ИЗПЪЛНЕНИЕ**

**ДО: „СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД БЪЛГАРИЯ" ЕООД –
длъжник,**
със седалище и адрес на управление гр. София 1303, район „Възраждане",
ул. „Антим 1" № 11, вписано в търговския регистър при Агенция по
вписванията с ЕИК 202345189, представлявано от Гергана Кирилова
Ангелова с ЕГН 7602192838 – управител

**ОТ: "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД** със седалище и адрес
на управление гр.София, ул."Граф Игнатиев" № 10, вписано в търговския
регистър при Агенцията по вписванията към Министерството на
правосъдието с ЕИК 831184677, представлявано заедно от всеки двама от
Изпълнителните директори: Орлин Николов Русев с ЕГН: 6706236664, Илиан
Атанасов Зафиров с ЕГН: 6402046768, Георги Панков Христов с ЕГН
6909216648 и Александър Мирославов Панталеев с ЕГН 7004116265

**УВАЖАЕМА ГОСПОЖО АНГЕЛОВА,**

Уведомяваме Ви, че към 18.06.2014 г. вкл. просрочените и неплатени
задължения на „СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД БЪЛГАРИЯ"
ЕООД към "Корпоративна Търговска Банка" АД по Договор за банков кредит от
20.12.2012 г., са както следва :

- изисдължена лихва върху редовна
  главница                                                387 198,49 лева

- неустойка върху неплатени лихви              10 707.16 лева

   **ОБЩ РАЗМЕР :**                                   **397 905,65 лева**
   (Словом : триста деветдесет и седем хиляди деветстотин и пет лева и
   шестдесет и пет стотинки)

Поради неплащане на вноските по начислените лихви и неплащане на
неустойка върху неплатените лихви по сключения Договор за банков кредит от
20.12.2012 г., на основание т. 39, буква „ж" и т. 41 от договора за кредит и чл.60,
ал.2 от Закона за кредитните институции, Ви уведомяваме, че **КОРПОРАТИВНА
ТЪРГОВСКА БАНКА" АД** едностранно обявява част от кредитното Ви
задължение по Договор за банков кредит от 20.12.2012 г. за предсрочно
изискуемо, което към 18.06.2014 г. вкл. възлиза на :

- неустойка върху неплатени лихви:         10 707.16 лева
- просрочени лихви:                               387 198.49 лева
- главница (частично):                        22 358 776.90 лева
   **ОБЩ РАЗМЕР:**                            **22 756 682.55 лева**

ЦЕНТРАЛНО
УПРАВЛЕНИЕ

София 1000, ул. Граф Игнатиев №10, тел.: 02/ 980 93 62, факс: 02/ 980 89 48
SWIFT: KORP BG SF, www.corpbank.bg

С настоящото ви даваме 7 (седем) дневен срок, считано от датата на получаване на настоящата покана, да погасите следната част от кредитно задължение към "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД: неустойка върху неплатени лихви - 10 707.16 лева, просрочени лихви - 387 198.49 лева, главница (частично) - 22 358 776.90 лева, в общ размер на задължението: 22 756 682.55 лева (двадесет и два милиона седемстотин петдесет и шест хиляди шестстотин осемдесет и два лева и петдесет и пет стотинки), ведно с допълнително начислените лихви и неустойки към датата на погасяването.

В случай на неплащане на задълженията на „СИБОЛЕ СЪРВИСИС ИНКОРПОРЕЙТИД БЪЛГАРИЯ" ЕООД в дадения срок, "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД ще предприеме действия за принудително събиране на вземанията по съответния законов ред.

ЗА КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД:

.......................................................
/Орлин Русев – Изпълнителен Директор/

.......................................................
/Илиан Зафиров – Изпълнителен Директор/

.......................................................
/Георги Христов – Изпълнителен Директор/

.......................................................
/Александър Панталеев – Изпълнителен директор/

# EXHIBIT 59



# Фрея *Freya*
## Транслейшънс *Translations*

**Преводи от и на чужди езици**
гр. Варна, ул.Св.Св. Кирил и Методий № 1
Email: freyatranslations@gmail.com

*Translation from Bulgarian*

*(Logo)* | **CORPORATE COMMERCIAL BANK, AD**

C/o:  Notary Public Gabriela Yordanova Daskalova
Commissioned under No.343 by the Chamber of Notaries Public for the area of jurisdiction of the Sofia Regional Court

<div align="center">

**NOTARY NOTICE
OF DEMAND TO PAY VOLUNTARILY**

</div>

To:  **DROSLIAN BULGARIA EOOD** - Debtor having its seat and registered office at Sofia, Krasno Selo District, 10 Doyran St., duly recorded in the Commercial Register kept at the Registry Agency with the Ministry of Justice under EIK (*Company number*):202432886, as represented by its Manager Borislav Ivanov Borisov of EGN (*Personal number*): 7311201504

From: **CORPORATE COMMERCIAL BANK, AD** having seat and registered office address at Sofia, 10 Graf Ignatiev St., and registered in the Commercial Register kept at the Registry Agency under EIK (Company number):831184677, as represented jointly by Georgi Pankov Hristov (EGN: 6909216648) and Alexander Miroslavov Pantaleev (EGN: 7004116265), Executive Directors

This is to inform you that as at 29th May 2014 the amount of outstanding debt in arrears as owed by DROSLIAN BULGARIA, EOOD to Corporate Commercial Bank, AD under Bank Loan Agreement of 27th February 2013 is as follows:

- An outstanding interest payment, which became due on 26th May 2014 in the amount of **EUR 73,775.83** (*seventy three thousand seven hundred seventy-five point eighty-three euros*);

- An outstanding principle payment which became due on 26th May 2014 in the amount of **EUR 216,071.00** (*two hundred and sixteen thousand and seventy-one euros*);

 **TOTAL AMOUNT DUE: EUR 289,846.83 (*two hundred eighty-nine thousand eight hundred and forty-six euros and eighty-three eurocents*)**

This is to advise you that your failure to make a partial payment of the interest accrued on the bank loan and a partial payment of the loan principal as agreed in the Bank Loan Agreement of 27th February 2013 and pursuant to Section 40 (f) thereof and pursuant to Art.60 (2) of the Law on Credit Institutions has prompted Corporate Commercial Bank, AD to unilaterally **accelerate DROSLIAN BULGARIA, EOOD's debt under the above bank loan agreement in full** and that as of 29th May 2014 your debt stood at:

- Total debt on principal                                                    EUR 9,507,124.00





| | | |
|---|---|---|
| - Interest in arrears | | EUR 73,775.83 |
| - Interest charged | | EUR 7,310.40 |
| - Penalty interest | | EUR 432.60 |
| | **TOTAL:** | **EUR 9,588,642.83** |

Pursuant to Section 41 of said bank loan agreement this is to give you a seven days' notice, commencing on the date of service hereof on you, that you need repay your debt of **EUR 9,588,642.83 (*nine million five hundred eighty-eight thousand six hundred and forty-two euros and eighty-three eurocents*)** to Corporate Commercial Bank, AD in full; said debt is made of: (i) loan principal in the amount of EUR 9,507,124.00 plus interest in arrears amounting to EUR 73,775.83, plus interest charged in the amount of EUR 7,310.40 and plus penalty interest of EUR 432.60, together with all additional interest to accrue and penalty to be charged as of the date of repayment.

DROSLIAN BULGARIA, EOOD's failure to repay its debt within the set time-limit will prompt **Corporate Commercial Bank, AD** to bring an enforcement action to collect its receivables under the applicable law.

Date: 29th May 2014

**For Corporate Commercial Bank, AD:**

| | |
|---|---|
| /s/ (ill.) | /s/ (ill.) |
| Georgi Pankov Hristov, | Alexander Miroslavov Pantaleev, |
| Executive Director | Executive Director |

On this 30th May 2014 I, the undersigned Assistant Notary Public Tsvetelina Koleva to Notary Public Gabriela Yordanova Daskalova commissioned under No.343 by the Chamber of Notaries Public for the area of jurisdiction of the Sofia Regional Court, hereby certify that this Notary Notice was presented to me by Hristo Parvanov (*last name illegible*) from Sofia to verify the date of service.

Reg.No.3652, volume I, No.161 Collected fee of ...[empty]

*Rectangular stamp reading:* "Assistant Notary Public Tsveteliva Koleva"; *round seal of Notary Public Gabriela Yordanova Daskalova commissioned under No.343;*

---

On this 30th May 2014 I, the undersigned Assistant Notary Public Tsvetelina Koleva to Notary Public Gabriela Yordanova Daskalova commissioned under No.343 by the Chamber of Notaries Public for the area of jurisdiction of the Sofia Regional Court, hereby certify that a copy of this Notary Notice was served on Droslian Bulgaria, EOOD as prescribed in Art.50 (1) CPC on 30th May 2014 and acknowledgement of receipt No.161-I hereof was made.

*Rectangular stamp reading*: "Assistant Notary Public Tsveteliva Koleva"; *round seal of Notary Public Gabriela Yordanova Daskalova commissioned under No.343.*

---

FREYA TRANSLATIONS Ltd. VARNA BULGARIA ФРЕЯ ТРАНСЛЕЙШЪНС ООД ВАРНА

## ACKNOWLEDGEMENT OF RECEIPT
## No.161-I

The undersigned _____ at Sofia, Krasno Selo District, 10 Doyran St., hereby acknowledge the receipt of Notary Notice of reg.No.3652, vol.I, No.161 as served c/o Notary Public Gabriela Yordanova Daskalova commissioned under No343 by the Chamber of Notaries Public for the area of jurisdiction of the Sofia Regional Court.

Sofia, _____          Served by: _____

                            Received by: _____

*Handwritten text follows:*

*"The above address, namely: Sofia, Krasno Selo District, 10 Doyran St., being the registered office address of Droslian Bulgaria, EOOD per the Commercial Register was visited on 30th May 201 at 11:20 a.m., but no such addressee was found there. A query was made to the concierge of the building at 10 Doyran St., a Mr Evgeni Dimitrov, who stated that the building at that address accommodated no company going under the name of "Droslian Bulgaria, EOOD", that no such company was known to have an office there and that no one named Borislav Ivanov Borisov (the nominal Manager of Droslian Bulgaria, EOOD) lived there. Mr Dimitrov also said there were only three companies that had offices at said address (Bular[t] Com, EOOD and Lev Project, OOD having offices at suite 1.4 on the first floor, and SunArt, EOOD - at suite 1.3 also on the first floor), while all the other occupants of the building at 10 Doyran St. were individuals. I personally checked the address and the building that stood there, but found no sign on any of the letter boxes nor any other sign of the existence there of a company named "Droslian Bulgaria, EOOD". The only three company nameplates were those of Bulart Com, EOOD; Lev Project, OOD and SunArt, EOOD.*

*Service officer Tsvetozar Petev Petrov: /s/ (ill.)"*

---

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct English translation from the Bulgarian original of the attached documents – (1) Notary Notice af Ref. 3652 dated 30th May 2014 served by CCB on Droslian Bulgaria, EOOD c/o Assistant Notary Paublic Tsveteliva Koleva and (2) Acknowledgement of Service No.161-I. This translation has 3 (three) pages.*

*Translator:* _____ *Ilka Simeonova Dyulgerova*

**КОРПОРАТИВНА
ТЪРГОВСКА БАНКА АД**

427

ЧРЕЗ
НОТАРИУС Габриела Йорданова-Даскалова,
с район на действие РС- София,
Рег. № 343 на Нотариалната камара

Н О Т А Р И А Л Н А   П О К А Н А
З А   Д О Б Р О В О Л Н О   И З П Ъ Л Н Е Н И Е

ДО: „ДРОСЛИАН БЪЛГАРИЯ" ЕООД – длъжник,
със седалище и адрес на управление гр.София, Район „Красно село",
ул.„Дойран" № 10, вписано в търговския регистър при Агенция по
вписванията към Министерството на правосъдието с ЕИК 202432886,
представлявано от управителя Борислав Иванов Борисов с ЕГН 7311201504

ОТ: „КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД, със седалище и адрес
на управление град София, ул. "Граф Игнатиев" № 10, вписана в търговския
регистър при Агенция по вписванията към Министерството на правосъдието с
ЕИК 831184677, представлявана заедно от Изпълнителните директори
Георги Панков Христов, с ЕГН 6909216648 и Александър Мирославов
Панталеев с ЕГН 7004116265

Уведомяваме Ви, че към 29.05.2014г. просрочените и неплатени задължения на
„ДРОСЛИАН БЪЛГАРИЯ" ЕООД към "Корпоративна Търговска Банка" АД по
Договор за банков кредит от 27.02.2013 г., са както следва :

- Неплатена вноска по лихвите, дължима на 26.05.2014 г., в размер на
73 775,83 евро (седемдесет и три хиляди седемстотин седемдесет и пет
евро и осемдесет и три евроцента).

- Неплатена вноска по главницата, дължима на 26.05.2014 г., в размер на
216 071 евро (двеста и шестнадесет хиляди и седемдесет и едно евро).

ОБЩ РАЗМЕР : 289 846,83 евро
(Словом: Двеста осемдесет и девет хиляди осемстотин четиридесет и
шест евро и осемдесет и три евроцента).

Поради неиздължаване на посочените една вноска по лихвите по банковия
кредит и на една вноска по главницата по банковия кредит, съгласно сключения
договор за банков кредит от 27.02.2013г., на основание т. 40 буква „ж" от договора
за банков кредит и чл.60, ал.2 от Закона за кредитните институции, Ви уведомяваме,
че „КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД едностранно обявява
кредитното задължение на „ДРОСЛИАН БЪЛГАРИЯ" ЕООД по договор за банков
кредит от 27.02.2013г. за изцяло предсрочно изискуемо, което към 29.05.2014г.
възлиза на :

- общо главница по кредита:                9 507 124,00 евро;
- просрочени лихви:                          73 775,83 евро;
- начислени лихви:                            7 310,40 евро;
- неустойки за неплатени лихви:            432,60 евро;

ОБЩ РАЗМЕР:                              9 588 642,83 евро

ЦЕНТРАЛНО
УПРАВЛЕНИЕ

София 1000, ул. Граф Игнатиев №10, тел.: 02/ 980 93 62, факс: 02/ 980 89 48
SWIFT: KORP BG SF, www.corpbank.bg

542

На основание чл.41 от договора за банков кредит, Ви даваме седемдневен срок, считано от датата на връчване на настоящата покана, да погасите цялото кредитно задължение към "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД в общ размер на задължението 9 588 642,83 евро (девет милиона петстотин осемдесет и осем хиляди шестстотин четиридесет и две евро и осемдесет и три евроцента), в т.ч. главница по кредита в размер на 9 507 124,00 евро, просрочени лихви в размер на 73 775,83 евро, начислени лихви в размер на 7 310,40 евро и неустойки за неплатени лихви в размер на 432,60 евро, ведно с допълнително начислените лихви и неустойки към датата на погасяването.

В случай на неплащане на задълженията на „ДРОСЛИАН БЪЛГАРИЯ" ЕООД в дадения срок, "КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД ще предприеме действия за принудително събиране на вземанията по съответния законов ред.

29.05.2014г.

ЗА КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД:

/ Георги Панков Христов – Изпълнителен Директор/

/ Александър Мирославов Панталеев – Изпълнителен Директор /



# РАЗПИСКА

## № 161-I

Долуподписаният ..........................................................................

........................................................................................

от гр./село, улица *София, р-н "Красно село", ул. Добрич №10*

Удостоверявам, че получих нотариална покана под рег. № 3652 т. I.,
№ ...161......., на Нотариус ГАБРИЕЛА ЙОРДАНОВА ПАСКАЛОВА, рег.
№ 343 на Нотариалната камара, с район на действие Софийски районен съд,
гр.София.

гр.София

ВРЪЧИТЕЛ:.........................

ПОЛУЧАТЕЛ:........................

Горепосочения адрес (София, р-н "Красно село", ул. Добрич №10),
вписан в Търговския регистър, като адрес на управление на фирма
"Прослиан България" ЕООД беше посетен на 30.05.2014, в 11:20 часа, но
фирма "Прослиан България" ЕООД не беше открита на адреса. След
проведен разговор с портиера в сградата - г-н Свежин Калинчев, той ни
уви, че на адреса в гр. София, ул. Добрич №10 няма фирма
"Прослиан България" ЕООД, няма адрес на тази фирма и на адреса не
живее управителя на "Прослиан България" ЕООД - г-н Борислав Иванов
Борисов. Г-н Димитров каза, че на адреса има само три фирми
("Булар Кон" ЕООД и "Левпродукт" ООД в ап. 1.4 на ет.1 и "Санарт"
ЕООД в ап. 1.3 на ет. 1), всички останали живущи на ул. Добрич
№10 са физически лица. След като проверих на адреса установих,
че няма пощенска кутия и табела на фирма "Прослиан България"
ЕООД, а единствените фирми на адреса са "Булар Кон" ЕООД,
"Левпродукт" ООД и "Санарт" ЕООД.

Връчител: Цветозар Пенев Петров

# EXHIBIT 60



*Фрея*
**f**
*Freya*
*Транслейшънс*
*Translations*

Преводи от и на чужди езици
гр. Варна, ул. Кирил и Методий № 1
Email: freyatranslations@gmail.com

*Translation from Bulgarian*

## BANK LOAN AGREEMENT

This Agreement is entered this 27th February 2013 at Sofia pursuant to the Law on Credit Institutions and Art.430 *et seq.* of the Commercial Act by and between:

1. **"CORPORATE COMMERCIAL BANK" AD,** having seat and registered office address at Sofia, 10 Graf Ignatiev St., as registered in the Commercial Register kept at the Registry Agency under EIK (Company number): 831184677, and represented jointly by any two Executive Directors Orlin Nikolov Rusev, Ilian Atanassov Zafirov, Georgi Pankov Hristov and Alexander Miroslavov Pantaleev, (hereinafter <u>The Bank</u>), of the first party, and

2. **DROSLIAN BULGARIA, EOOD** having seat and registered office address at Sofia 1606, Krasno Selo District, 10 Doyran St., and duly recorded in the Commercial Register kept at the Registry Agency under EIK: 202432886 as represented by its Manager Borislav Ivanov Borissov having EGN (Personal ID number):7311201504 (hereinafter <u>The Borrower</u>), of the second party.

The parties hereto have agreed as follows:

### I.   SUBJECT-MATTER OF THE AGREEMENT

1. The Bank agrees to extend to The Borrower a bank loan in the amount of **EUR 12,100,000** (*twelve million and one hundred thousand euros*), hereinafter <u>The Loan</u>.

2. The Loan is borrowed and lent, respectively, for the purpose of acquisition of shares in the capital of third parties and for acquisition of receivables.

### II.   LOAN DISBURSEMENT.
### LOAN ASSUMPTION CONDITIONS AND LOAN USE TERMS

3. The so lent funds may be assumed in full or in portions for the purpose set in Section 2 above.

4. The so lent funds shall be credited to the Borrower's checking account with the Bank and it shall be the account where records of the use of the lent funds shall be kept and reported to, and where all instalments in voluntary repayment of the Loan shall be made.

5.  The Borrower undertakes to give a 2 (two) business days' notice to the Bank of Borrower's intention to assume a portion of the Loan and of the amount the Borrower requests.

6.  The loan use (assumption) deadline is 31ˢᵗ March 2013. After that date the Bank shall no longer be obligated to disburse further amounts, unless its grants its consent in writing for an extension of the time limit, within which the Borrower may assume the Loan.

7.  In the event of Borrower's failure to meet the conditions for disbursement of amounts from The Loan the Bank shall be entitled to decline such disbursement until all the conditions hereunder have been properly met.

8.  The Borrower shall use the Loan exclusively for the purposes set in Section 2 above.

9.  If the Bank finds that the use of the funds so lent is in conflict with the purposes of this Agreement, it shall be entitled to accelerate the Loan in full and/or unilaterally discontinue further disbursement of funds.

### III.   INTEREST AND COMMISSIONING FEES

10. For its use of the Loan the Borrower shall pay to the Bank a 9% (nine per cent) annual interest on the actually used amounts from the Loan. Interest shall be charged on the debit balance in the Borrower's credit account on a daily basis; interest shall be payable on a monthly basis no later than 25ᵗʰ (twenty fifth) day of the relevant month. If that date falls on a holyday or a weekend day, interest shall then be charged as of and shall become payable on the business day immediately following the non-business one. The Bank shall be entitled to unilaterally change the interest-charging day and the Borrower shall be notified accordingly in the fashion agreed between the parties hereto at least five (5) business days in advance before such change is set to take place. Interest shall be calculated on a 360 (*three hundred and sixty*)-day yearly basis and charged on the unpaid portion of the Loan until the time when the Loan will be repaid in full.

11. The Borrower undertakes to ensure that as of the interest-charging date the funds available in its checking account are sufficient to pay the interest accrued. The interest becomes due on the day it is charged.

12. In the event of delay in any payment of principal or in the event that Bank accelerates the Loan for any of the causes shown further down below The Bank shall charge and collect from the Borrower a penalty surcharge of 10 (ten) percentage points per annum of interest on the principal arrears, in addition to the interest agreed herein.



13. All interest charged but unpaid on time shall be allocated to a separate account and in this case the Borrower shall pay to the Bank a penalty of 10% (ten per cent) per annum on the amount of such but late payment of charged interest until its repayment in full.

14. On or before March 31, 2013 the Borrower shall pay an 1.0% (one per cent) one-time loan management and processing fee to the Bank on the Loan amount agreed.

15. The Borrower shall not owe to the Bank any further fees for conclusion and ensuring the loan transaction under the *Tariff for interest rate, fees and charges* the Bank usually applies to transactions with its customers.

16. The Bank reserves the right to effect changes in its *Tariff for interest rate, fees and charges* (The Tariff) the Bank applies to banking transactions with its customers, as well as all costs in Bulgarian and foreign currencies, if the prevailing market conditions so require. All such changes shall become effective on the day a resolution in that regard is passed by the Managing Board of the Bank and shall be binding to the parties hereto.

## IV.   REPAYMENT

17. The deadline for repayment of all due amounts under this Agreement shall be 25th December 2017 (*Twenty fifth of December Two Thousand and Seventeen*), unless the Loan is accelerated.

18. (1) The parties hereto agree that the Borrower shall repay the Loan principal of **EUR 12,100,000 (*twelve million and one hundred thousand euros*)** in 56 (*fifty-six*) monthly instalments the first of which shall be in the amount of EUR 216,095 (*two hundred and sixteen thousand and ninety-five euros*) and shall become payable on 25th May 2013 (*Twenty fifth of May Two Thousand and Thirteen*), while each of the remaining 55 (*fifty-five*) monthly instalments in the amount of EUR 216,071 (*two hundred and sixteen thousand and seventy-one euros*) shall become payable on 25th (twenty-fifth) day of the month, commencing on 25th June 2013 (*Twenty Fifth of June Two Thousand and Thirteen*) and ending on 25th December 2017 (*Twenty Fifth December Two Thousand and Seventeen*).

(2) The Borrower may opt for an early repayment of all its liabilities, in which case the Borrower shall not be charged any commissioning fees; the Borrower may also opt for a termination of this Agreement by a 3 (*three*)-days' notice in writing without any penalties.

19. The Loan shall be repaid in the currency it has been extended in. It also may however be repaid in any other freely traded currency, which the Bank has agreed to accept in



4

repayment of the Borrower's liabilities, at the current market rate of exchange on the date of such payment.

20. (1)    By signing this Agreement the Borrower gives its consent in writing that the Bank may, if sufficient funds are available in the Borrower's account with the Bank, to block the amount needed to ensure the making of any principal and/or interest payment five (5) days prior to the date such regular payment becomes due, and that on the maturity date of such principal or interest payment, or in the event of any fee or charges becoming due or in the event of acceleration of the Loan [...]

[Missing text, probably entire page of the Agreement- *Translator's note*]

a)  To obtain information from the Bank in the fashion agreed hereunder about the status of and cash movements in or out of its credit and checking accounts with the Bank;

b)  Retrieve the collaterals the Borrower has put up in favour of the Bank in accordance with the terms of this Agreement.

## VI. RIGHTS AND OBLIGATIONS OF THE BANK

26. The Bank agrees to extend the amount of the Loan to the Borrower under the terms and conditions of this Agreement and undertakes to meet its obligations arising from it.

27. All the Bank's obligations and responsibilities hereunder are exclusively determined by the express provisions hereof and by the imperative provisions of the current law. Nothing in this Agreement shall be interpreted as tacit agreement on the part of the Bank for an obligation or responsibility taken hereunder, nor shall the Bank be restricted in any way by any other agreements made by the Borrower and any third parties.

28. The Bank shall not disclose any facts about the authenticity of the documents it has been supplied with by the Borrower under this Agreement, nor shall it disclose the amount of the Loan or any other confidential information related to this Agreement, unless required to do so by the law or unless the Borrower has given its prior consent in that regard.

29. The Bank shall:

a)  Guarantee that the banking and trade secrets concerning the assets and operations with the Borrower's credit and checking accounts shall be kept confidential and shall not disclose information to third parties, unless as required by the law or unless the Borrower has given its written consent in advance to that effect.

5

b) Release the collaterals provided by third parties and put up as security by the Borrower in accordance with the provisions of this Agreement, upon Borrower's payment of the costs of such release.

30. The Bank shall have the right to:

    a. Obtain the collaterals put up as security as agreed in this Agreement;

    b. Be informed immediately by the Borrower about any changes in the latter's registration, legal personality and representation, any newly opened bank accounts, etc. and demand to be supplied with the proper documents in proof thereof;

    c. Be supplied by the Borrower with the latter's accounting documents (balance sheet, profit and loss account, accounting statements), commercial and other documents related to its business and solvency;

    d. Have immediate access to do any and all inquiries into the use of the loan in view of the purpose for which it has been extended;

    e. Not disburse any amounts under the Loan in the event of the Borrower's failure to meet the obligations under this Agreement and any other agreements entered with the Bank.

## VII. COLLATERALS

31. In order to guarantee the timely repayment of the loan, the Borrower undertakes to put up the following collaterals in favour of the Bank:

    a. On or before March 31, 2013 – a pledge of shares representing 49% of the capital of Yurii Gagarin AD, having EIK: 825203984, owned by Baranco EOOD (EIK: 175098283).

    b. On or before March 31, 2013 – a pledge of shares representing 18% of the capital of Yurii Gagarin AD, having EIK: 825203984, owned by Comso Tabacco EOOD (EIK: 160061959).

    c. A special pledge under the Law on Registered Pledges (LRP) of all current and future receivables of the Borrower from the Bank arising from agreements entered with the latter for checking and other bank accounts.

32. In the event that the value of the collaterals put up as security for the loan should drop due to changes in market conditions or in statutory regulations, or in the event of increase of the debt as result of overdue repayment instalments, interest, etc., the Borrower shall put

up additional collaterals that are acceptable to the Bank and within the time limits set by the latter.

[Missing text, probably entire page of the Agreement- *Translator's note*]

    h) Redirects elsewhere the amounts remitted to its bank accounts with the Bank or fails to use such amounts for the repayment of its liabilities under this Agreement;

41. Upon accelerating the loan the Bank shall give the Borrower a 7-days' term to repay the outstanding amount of the loan in full, including principal, interest, fees, costs and commissions; the Borrower's failure to pay within the stipulated term shall enable the Bank to satisfy its claims by a forced collection of its receivables.

42. The Borrower's failure to meet any of its obligations hereunder shall entitle the Bank to do any of the following:

    a. Suspend disbursement of any amounts under the Loan until the Borrower has taken remedial action;

    b. Unilaterally accelerate the outstanding amount of the Loan in full and bring an action in court or out of court to collect its dues;

    c. Reduce the amount of the Loan to the actual amount needed and change the conditions for use of the loan;

    d. Automatically collect all its receivables that have become due from the Borrower's funds available in its accounts with the Bank, irrespective of the currency, without the need to obtain a writ of execution in that regard or without the need of any factual or legal action on the part of the Borrower and by simply exercising the rights granted to the Bank under sections 20.1 and 24 of this Agreement upon its signing;

43. Should the term for payment or the validity of the collaterals expire before the Bank's claims have been unconditionally and irrevocably satisfied in full, the Bank shall reserve the right to proceed with forced collection of its dues under the procedures prescribed by the law without the need to give notice to the Borrower in that regard.

## IX. PERFORMANCE STANDARDS

44. Each of the parties hereto shall fulfil its obligations in good faith, effectively and cost-efficiently and in observance of the customary practices that correspond to the professional standards applicable to the subject matter of this Agreement.

7

## X. COMMUNICTIONS

45. Any and all communications, declarations, statements, consents, agreements, applications, claims or information that might be requested or demanded under this Agreement shall be in writing.

46. The above mentioned documents shall be deemed to be duly supplied if delivered by hand, via a courier or are sent by registered mail to the address of each party hereto, or if delivered via the bank post at the banking hall under the procedures established by the Bank.

47. The documents shall be deemed duly received by the other party on the date of the delivery in person, if delivered by hand; on the date shown on the delivery receipt, when delivered by courier; on the date shown on the delivery receipt, when sent by registered mail or on the date when bank mail is received at the banking hall in accordance with the procedures established by the Bank. In case the documents sent by courier or registered mail are not received by any of the parties at their addresses shown below, then such documents shall be deemed delivered and the party, which has failed to ensure possibility for their receipt shall bear all the consequences arising therefrom.

48. The parties' valid addresses for the purpose of receiving notices under this Agreement shall be as follows:

**For the Bank:**

10 Graf Ignatiev St.
Sofia
Telephone: 93 75 652
Fax: 980 89 48

**For the Borrower:**

10 Doyan St.,
Sofia
Telephone / Fax: ---

## XI. GENERAL PROVISIONS

[The text of the Agreement ends here - *Translator's note*]

---

*I, the undersigned Boryana Ilieva Stefanova, hereby certify that this is a true and accurate translation from Bulgarian into English of the enclosed document - Bank Loan Agreement of February 27, 2013. The translation consists of 7 (seven) pages.*

Translator: _____
Boryana Ilieva Stefanova

458

Д О Г О В О Р
ЗА БАНКОВ КРЕДИТ

Днес, 27.02.2013 г., в гр. София, на основание Закона за кредитните институции и чл. 430 и следващите от Търговския закон, между:

1. „КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД, със седалище и адрес на управление град София, ул. "Граф Игнатиев" № 10, вписана в търговския регистър при Агенция по вписванията към Министерство на правосъдието с ЕИК 831184677, представлявана заедно от всеки двама от Изпълнителните директори Орлин Николов Русев, Илиан Атанасов Зафиров, Георги Панков Христов и Александър Мирославов Панталеев, наричана за краткост БАНКАТА - от една страна и

2. „ДРОСЛИАН БЪЛГАРИЯ" ЕООД, със седалище и адрес на управление гр. София 1606, район "Красно село", ул. „Дойран" № 10, вписано в Търговския регистър при Агенция по вписванията с ЕИК 202432886, представлявано от Управителя Борислав Иванов Борисов с ЕГН 7311201504, наричано за краткост КРЕДИТОПОЛУЧАТЕЛ - от друга страна, се сключи този договор за следното:

I.   ПРЕДМЕТ НА ДОГОВОРА

1. БАНКАТА отпуска на КРЕДИТОПОЛУЧАТЕЛЯ банков кредит, наричан по-долу за краткост "кредит", в размер на EUR 12 100 000 (дванадесет милиона и сто хиляди евро).
2. Средствата по кредита са предназначени за финансиране на придобиване на дялове от капитала на трети лица и за придобиване на вземания.

II. ПРЕДОСТАВЯНЕ НА КРЕДИТА.
УСЛОВИЯ ЗА УСВОЯВАНЕ И СРОКОВЕ ЗА ПОЛЗВАНЕ НА КРЕДИТА

3. Кредитните средства могат да се усвояват изцяло или частично, съгласно целта по т. 2 по-горе.
4. Средствата по кредита се предоставят за ползване по разплащателната сметка на КРЕДИТОПОЛУЧАТЕЛЯ в БАНКАТА, където се осъществява и счетоводното отчитане на усвояваните средства, както и доброволното издължаване на кредита.
5. КРЕДИТОПОЛУЧАТЕЛЯТ се задължава да уведоми БАНКАТА 2 (два) работни дни преди всяко ползване на кредита с писмено известие, в което посочва и размера на заявяваната за усвояване сума.
6. Крайният срок за усвояване на кредита е 31.03.2013 г. След този срок задължението на БАНКАТА за отпускане на суми от кредита отпада, освен ако БАНКАТА не даде писмено съгласие за удължаване на срока за усвояването му.
7. Ако КРЕДИТОПОЛУЧАТЕЛЯТ наруши условията при които се отпускат средствата по кредита БАНКАТА има правото да откаже да предостави сума, до изпълнение на всички условия по този договор.
8. КРЕДИТОПОЛУЧАТЕЛЯТ е длъжен да използва средствата по кредита само за целите, посочени в т. 2 от този договор.
9. В случай, че БАНКАТА прецени, че ползването на средствата противоречи на целта на договора, БАНКАТА има правото да обяви цялото си вземане за предварително изискуемо и/или да прекрати едностранно предоставянето на средства по кредита.

III. ЛИХВИ И КОМИСИОНИ

10. За ползвания кредит КРЕДИТОПОЛУЧАТЕЛЯТ заплаща на БАНКАТА годишна лихва върху фактически ползваните суми по кредита в размер на 9 % (девет процента). Лихвата се начислява ежедневно върху дебитното салдо по заемната сметка на КРЕДИТОПОЛУЧАТЕЛЯ и е платима ежемесечно на 25 (двадесет и пето) число на съответния месец.

В случаите когато 25-то число на съответния месец е неработен ден, лихвата се начислява към и е дължима от **КРЕДИТОПОЛУЧАТЕЛЯ** на първия следващ работен ден. **БАНКАТА** има право едностранно да променя датата на олихвяване, за която промяна **КРЕДИТОПОЛУЧАТЕЛЯТ** следва да бъде уведомен по обичайните приети между страните способи за уведомяване поне 5 (пет) работни дни предварително. При изчисляване на лихвата годината се брои за 360 (триста и шестдесет) дни. Лихвите се начисляват върху непогасената част от кредита до пълното му издължаване.

11. Към датата на олихвяването **КРЕДИТОПОЛУЧАТЕЛЯТ** се задължава да осигурява по разплащателната си сметка средства за издължаване на лихвите. Лихвата е изискуема от датата на начисляването Й.

12. При нарушаване на сроковете за погасяване на вноските по главницата, или при предсрочна изискуемост на кредита на основанията, посочени по-долу в настоящия договор, **БАНКАТА** начислява върху просрочената (дължима) главница и събира от **КРЕДИТОПОЛУЧАТЕЛЯ** освен договорената лихва и наказателна надбавка в размер на 10 (десет) пункта годишно.

13. Начислените, но неплатени в срок лихви, се отнасят за отчитане по отделна сметка, като в този случай **КРЕДИТОПОЛУЧАТЕЛЯТ** дължи на **БАНКАТА** неустойка в размер на 10 % (десет процента) годишно върху начислената, но неплатена лихва, до окончателното Й издължаване.

14. **КРЕДИТОПОЛУЧАТЕЛЯТ** заплаща на **БАНКАТА** в срок до 31.03.2013 г. еднократна комисиона за разходите по управление и обработка на кредита в размер на 1 % (един процент) върху разрешения размер на кредита.

15. **КРЕДИТОПОЛУЧАТЕЛЯТ** не заплаща на **БАНКАТА** други такси и комисиони, дължими по повод сключването и обезпечаването на кредитната сделка, предвидени в Тарифата за лихвите, таксите и комисионите, които **БАНКАТА** прилага при операциите си с клиенти.

16. **БАНКАТА** си запазва правото да променя по всяко време Тарифата си за лихвите, таксите и комисионите, която прилага при операциите си с клиенти, наричана за краткост в текста на договора "Тарифата" и разноските в лева и валута, ако преобладаващите пазарни условия налагат това. Измененията влизат в сила от деня на приемането им от Управителния съвет на **БАНКАТА** и са задължителни за страните по този договор.

## IV. ПОГАСЯВАНЕ

17. Крайният срок в който **КРЕДИТОПОЛУЧАТЕЛЯТ** следва да погаси задълженията си е 25.12.2017 г. (двадесет и пети декември две хиляди и седемнадесета година), освен когато кредитът бъде обявен за предсрочно изискуем.

18.1. Страните се договарят издължаването на главницата по кредита в размер EUR 12 100 000 (дванадесет милиона и сто хиляди евро) да се осъществи на 56 бр. (петдесет и шест броя) ежемесечни погасителни вноски, първата от които в размер на EUR 216 095 (двеста и шестнадесет хиляди деветдесет и пет евро) е платима на 25.05.2013 г. (двадесет и пети май две хиляди и тринадесета година), а останалите 55 бр. (петдесет и пет броя) погасителни вноски в размер по EUR 216 071 (двеста и шестнадесет хиляди седемдесет и едно евро) всяка една от тях са платими на всяко 25-то (двадесет и пето) число на месеца, считано от 25.06.2013 г. (двадесет и пети юни две хиляди и тринадесета година) до 25.12.2017 г. (двадесет и пети декември две хиляди и седемнадесета година).

18.2. Допуска се **КРЕДИТОПОЛУЧАТЕЛЯТ** да погаси предсрочно всичките си задължения, без да дължи комисиони и да прекрати този договор с 3 (три) дневно писмено предизвестие без санкции.

19. Кредитът се изплаща изцяло във валутата, в която е предоставен. Допуска се погасяване и в друга свободно конвертируема валута, приета от **БАНКАТА** за плащане на задължението от **КРЕДИТОПОЛУЧАТЕЛЯ**, по съобразен с пазарните условия курс към датата на извършване на съответното плащане.

20.1. С подписването на настоящия договор **КРЕДИТОПОЛУЧАТЕЛЯТ** дава писменото си съгласие **БАНКАТА**, при наличието на средства по сметките му при нея, да блокира 5 (пет) дни преди падеж на вноска по главницата и/или лихвите съответните суми необходими за предстоящото погашение, а в деня на падежа на вноска по главницата и/или лихвите, както и при дължими такси, неустойки и/или комисиони по кредита или в случаите на предсрочна изискуемост

б/ по начина договорен в настоящия договор да получава от **БАНКАТА** информация за движението по кредитната и разплащателната сметки;

в/ да получи обратно предоставените на **БАНКАТА** обезпечения, съгласно условията на този договор.

## VI. ПРАВА И ЗАДЪЛЖЕНИЯ НА БАНКАТА

**26. БАНКАТА** приема да предостави сумата по кредита на **КРЕДИТОПОЛУЧАТЕЛЯ** при сроковете и условията по договора, като приема да изпълнява задълженията, които е поела с този договор.

**27.** Задълженията и отговорностите на **БАНКАТА** се определят единствено от изричните разпоредби на този договор и императивните разпоредби на действащото законодателство. Никакви мълчаливи съглашения, задължения или отговорности по този договор няма да бъдат тълкувани срещу **БАНКАТА**, нито пък тя ще бъде ограничена от разпоредбите на други споразумения между **КРЕДИТОПОЛУЧАТЕЛЯ** и трети лица, извън тези по договора.

**28. БАНКАТА** не може да разгласява факти относно автентичността на документите, получени от **КРЕДИТОПОЛУЧАТЕЛЯ** по този договор, размера на предоставените средства по кредита, както и всяка друга поверителна информация, свързана с този договор, освен ако закона постановява друго или ако **КРЕДИТОПОЛУЧАТЕЛЯТ** е дал предварително своето писмено съгласие.

**29. БАНКАТА** се задължава:

а/ да гарантира банковата и търговска тайна, засягаща авоарите и операциите по кредитната и разплащателната сметки на **КРЕДИТОПОЛУЧАТЕЛЯ**, като предоставя информация на трети лица само в предвидените в закона случаи или ако **КРЕДИТОПОЛУЧАТЕЛЯТ** е дал предварително своето писмено съгласие;

б/ да освободи предоставените от трети лица и осигурени от **КРЕДИТОПОЛУЧАТЕЛЯ** обезпечения, съгласно условията на този договор и при заплащане на разноските за това от **КРЕДИТОПОЛУЧАТЕЛЯ**.

**30. БАНКАТА** има право:

а/ да получи обезпеченията, договорени с настоящия договор;

б/ да бъде информирана незабавно от **КРЕДИТОПОЛУЧАТЕЛЯ** относно настъпили промени в регистрацията, правосубектността и представителството му, новоразкрити банкови сметки, и др., като изисква надлежните документи;

в/ да получава от **КРЕДИТОПОЛУЧАТЕЛЯ** неговите счетоводни справки (баланс, отчет за приходи и разходи, счетоводни отчети), търговски документи и други, свързани с дейността и платежоспособността му;

г/ на незабавен достъп за извършване на проверки относно целевото ползване на кредита;

д/ да не предоставя суми по кредита, в случай че **КРЕДИТОПОЛУЧАТЕЛЯ** не е изпълнил задълженията си по този договор, както и по други договори, сключени с **БАНКАТА**.

## VII. ОБЕЗПЕЧЕНИЯ

**31.** За гарантиране издължаването на предоставения кредит **КРЕДИТОПОЛУЧАТЕЛЯТ** се задължава да учреди и да осигури учредяването в полза на **БАНКАТА**:

а) в срок до 31.03.2013 г. – залог върху акции, представляващи 49 % от капитала на „ЮРИЙ ГАГАРИН" АД с ЕИК 825203984, собственост на „Баранко" ЕООД с ЕИК 175098283.

б) в срок до 31.03.2013 г. – залог върху акции, представляващи 18 % от капитала на „ЮРИЙ ГАГАРИН" АД с ЕИК 825203984, собственост на „Комсо Табако" ЕООД с ЕИК 160061959.

в) особен залог по реда на ЗОЗ (Закона за особените залози) на всички свои настоящи и бъдещи вземания, произтичащи от договор за разплащателни и други сметки, сключени с **БАНКАТА**.

**32.** При изменение степента на обезпеченост на кредита и стойността на предоставените обезпечения, дължащи се на промени в пазарната конюнктура, нормативната уредба, увеличаване на дълга вследствие на просрочени погасителни вноски, лихви и други, **КРЕДИТОПОЛУЧАТЕЛЯТ** е длъжен да предостави допълнителни приемливи за **БАНКАТА** обезпечения в определен от нея срок.

задълженията си по настоящия договор.

41. При обявяване на вземането за предсрочно изискуемо **БАНКАТА** дава седмодневен срок за погасяване на цялото задължение - главници, лихви, такси, разноски и комисиони и в случай на неплащане в дадения срок може да се удовлетвори по реда на принудителното събиране на вземанията.

42. При неизпълнение от страна на **КРЕДИТОПОЛУЧАТЕЛЯ** на което и да е от задълженията му **БАНКАТА** има и правото:

а/ да преустанови предоставянето на суми по кредита до отстраняване на нарушенията;

б/ да обяви за предсрочно изискуемо цялото кредитно задължение и предприеме съдебни и извънсъдебни действия за възстановяване на дължимите суми;

в/ да приведе размера на кредита в съответствие с действително необходимия размер, както и да промени условията на ползването му;

г/ да събира служебно всички свои вземания с настъпил падеж от средствата на **КРЕДИТОПОЛУЧАТЕЛЯ**, независимо от вида валута, намиращи се в **БАНКАТА**, без да е необходимо да се снабдява с изпълнителен лист и без да е необходимо друго правно или фактическо действие на **КРЕДИТОПОЛУЧАТЕЛЯ**, ползвайки правата, дадени й по т. 20.1 и т. 24 от настоящия договор с подписването му.

43. Ако срокът на изплащане или на валидност на обезпеченията изтекат, без претенциите на **БАНКАТА** да бъдат напълно, безусловно и неотменяемо удовлетворени, **БАНКАТА** си запазва правото, без допълнително предизвестие да пристъпи към принудително събиране на дължимите суми по общия ред.

## IX. СТАНДАРТ НА ИЗПЪЛНЕНИЕ НА ДОГОВОРА

44. Всяка от страните по този договор е длъжна да изпълнява своите задължения с грижата на добър търговец, ефективно и икономично, в съответствие с обичайните техники и практика, съответстващи на професионалните стандарти, приложими по отношение на предмета на този договор.

## X. СЪОБЩЕНИЯ

45. Всички съобщения, декларации, заявления, съгласия, спогодби, молби, претенции или информации, които могат да бъдат изискани по този договор са в писмена форма.

46. Гореспоменатите документи се считат за надлежно дадени, когато са предадени на ръка, чрез куриер, изпратени са с препоръчана поща на адрес на всяка от страните по този договор или с предаването на банковата поща в банковия салон, съгласно установения от **БАНКАТА** ред.

47. Документите се считат за получени от другата страна на датата на личното предаване, ако е предадено на ръка; на датата на разписката за получаване, когато е предадено на куриер; на датата на разписката за получаване, когато е изпратено с препоръчана поща или датата на получаване на банковата поща в банковия салон, съгласно установения от **БАНКАТА** ред. В случай, че документите са изпратени чрез куриер или с препоръчана поща и не са получени от някоя от страните на адресите, посочени по-долу, то документите се считат връчени, с всички последствия от това за страната, която не е осигурила възможност за получаването им.

48. За валидни адреси за приемане на съобщения, свързани с този договор, страните приемат:

За **БАНКАТА**:                        За **КРЕДИТОПОЛУЧАТЕЛЯ**:
гр. София                              гр. София
ул. "Граф Игнатиев" № 10               ул. "Дойран" № 10
тел.: 93 75 652                        тел./факс: .................
факс: 980 89 48

## XI. ОБЩИ РАЗПОРЕДБИ

# EXHIBIT 61

*Фрея* *Freya*
*Транслейшънс* *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*
Page 1

**LIST**
of the attending shareholders or their representatives and the number of the shares held or represented at the General Meeting of the
Shareholders of PLOVDIV-YURII GAGARIN AD held on July 15, 2015 at 11:00 a.m.

| No. | Shareholder | Unified Personal No. (EGN)/ Company No. (BULSAT) | Number of shares held | Represented by: name/ Company name of the Representative | EGN/BULSTAT of the Representative | Date of issue of the Power-of-Attorney | Signature |
|---|---|---|---|---|---|---|---|
| 1. | BARANKO EOOD | 175098283 | 491,913 | Borislav Ivanov Borisov, Manager | 7311201504 | | /s./ illegible |
| 2. | KOMSO TOBACCO EOOD | 160061959 | 180,703 | Petar Simov Nikov, Proxy | 5610164960 | Power-of-Attorney, Reg. No.10554/6 July 2015 certified by Vesela Ivcheva, Notary Public, License No 271, Sofia Regional Court | /s./ illegible |
| 3. | Alianz Bulgaria Voluntary Retirement Scheme | 130401021 | 37,458 | Pension Insurance Company Alianz Bulgaria AD, acting through Strahil Nikolov Videnov, Executive Director | 121050885 6106176244 | Power-of-Attorney, Reg. No.5396/ 2 July 2014 certified by Neli Lukova, Notary Public, License No 536, Sofia Regional Court | /s./ illegible |



| 4. | Alianz Bulgaria Mandatory Universal Retirement Scheme | 130477720 | 70,063 | Pension Insurance Company Alianz Bulgaria AD, acting through Strahil Nikolov Videnov, Executive Director | 121050885 6106176244 | /s./ illegible |
| 5. | Alianz Bulgaria Voluntary Retirement Scheme | 130430119 | 9,595 | Pension Insurance Company Alianz Bulgaria AD, acting through Strahil Nikolov Videnov, Executive Director | 121050885 6106176244 | /s./ illegible |
| 6. | Petko Manev Petkov | 5211174588 | 34 | | | /s./ illegible |

**Total number of shares shown on page 1**   789,766

**Total number of shares held by the attending shareholders**   789,766

**Petar Nikov, Chairman:** /s./ (illegible)

**Maria Yankova, Secretary:** /s./ (illegible)

*Round seal reading:* Yurii Gagarin AD

---

*The undersigned Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – List of the shareholders and/or proxies of PLOVDIV-YURII GAGARIN AD who attended the GM of the Shareholders held on July 15, 2015. This translation has 2 (two) pages.*

Translator:   *Boryana Ilieva Stefanova*

Страница № 1

## СПИСЪК

на присъстващите акционери или на техните представители и на броя на притежаваните или представлявани акции
на Общото събрание на акционерите на "ЮРИЙ ГАГАРИН" АД на 15.07.2015 г. от 11:00 часа

| № на регистр. | Акционер | ЕИК/ЕГН на акционера | Брой акции | Законен представител/ Пълномощник | ЕИК/ЕГН на представля-ващия | Данни за пълномощното | Подпис |
|---|---|---|---|---|---|---|---|
| 1 | "Баранко" ООД | 175098283 | 491913 | Борислав Иванов Борисов - Управител | 7311201504 | | |
| 2 | "Комсо Табако" ЕООД | 160061959 | 180703 | Петър Симов Ников пълномощник | 5610164960 | Нотар. завер. пълномощно Рег.№ 10554/06.07.2015 г. на Нотариус Весела Ивичева, № 271; Р.С. София | |
| 3 | Доброволен пенсионен фонд "Алианц България" | 130401021 | 37458 | ПОД "Алианц България" АД Страхил Николов Видинов – Изпълнителен директор | 121050885 6106176244 | | |
| 4 | Задължителен универсален пенсионен фонд "Алианц България" | 130477720 | 70063 | ПОД "Алианц България" АД Страхил Николов Видинов – Изпълнителен директор | 121050885 6106176244 | | |
| 5 | Задължителен професионален пенсионен фонд "Алианц България" | 130430119 | 9595 | ПОД "Алианц България" АД Страхил Николов Видинов – Изпълнителен директор | 121050885 6106176244 | | |
| 6 | Петко Манев Петков | 5211174588 | 34 | | | | |

Общ брой акции на страница № 1:   789 766

Общ брой представени акции на Общото събрание:   789 766

Председател: .......................... /Петър Ников/

Секретар: .......................... /Мария Янкова/

# EXHIBIT 62

(Excerpts)

Commercial register

COMSO TOBACCO EOOD

General information

| | |
|---|---|
| 1. Unified company identification code (EIK) | 160061959 |
| 2. Company name | КОМСО ТАБАКО |
| 3. Legal format | Sole owned limited liability company |
| 4. Transliteration | COMSO TOBACCO |
| 5. Seat and management address | BULGARIA<br>District Plovdiv, Municipality Plovdiv<br>City of Plovdiv 4000<br>Central District<br>152 6th September Boul., floor 2, ap. 2-7B |
| 6. Scope of activities | Manufacturing and wholesale and retail trading with all kinds of merchandise, import and export, internal and international transport, commercial representation and agency of local and foreign phisical and legal persons, as well as any other activity not prohibited by law. |
| 7. Managers | Alexander Kirilov Georgiev |
| 19. Members | Deleted circumstance |
| 23. Sole owner of the capital | NSN Investment OOD, EIK 203628966, Bulgaria |
| 24. Transfer of company shares | |

**Capital**

| | |
|---|---|
| 31. Amount | 591740 BGN |
| 32. Paid-up capital | 591740 BGN |

Sole owner of the capital

| | |
|---|---|
| 24 Dec 2015 13:40:55 | NSN Investment OOD, EIK 203628966, State: Bulgaria |
| 12 Mar 2013 14:38:22 | Desentia Limited, foreign entity, State: Seychelles |
| 22 Feb 2013 16:18:58 | Romulus Trade Limited foreign entity, State: Virgin Islands (British) |

This translation has been made by Dimitar Blagovestov Yanakiev, Attorney-at-Law, member of the Bar Association in the city of Varna, Republic of Bulgaria:

/Dimitar Yanakiev/



МИНИСТЕРСТВО НА ПРАВОСЪДИЕТО
АГЕНЦИЯ ПО ВПИСВАНИЯТА

Търговски регистър                 Български ☑

Търсене на търговец или клон на чуждестранен търговец

ЕИК:

"КОМСО ТАБАКО" ЕООД

Общ статус    Обявени актове    Актуален учредителен акт    Дела    Указания

Основни обстоятелства

| 1. ЕИК/ПИК | 160061959 | 20101014151926 | История | Документи |
| 2. Фирма | КОМСО ТАБАКО | 20101014151926 | История | Документи |
| 3. Правна форма | Еднолично дружество с ограничена отговорност | 20130222161858 | История | Документи |
| 4. Изписване на чужд език | COMSO TABACCO | 20101014151926 | История | Документи |
| 5. Седалище и адрес на управление | БЪЛГАРИЯ област Пловдив, община Пловдив гр. Пловдив 4000 район р-н Централен бул. Шести септември No 152, ет. 2, ап. 2-76 | 20130312143822 | История | |
| 6. Предмет на дейност | ПРОИЗВОДСТВО И ТЪРГОВИЯ НА ЕДРО И ДРЕБНО С ВСЯКАКЪВ ВИД СТОКИ, ВНОС И ИЗНОС, ВЪТРЕШЕН И МЕЖДУНАРОДЕН ТРАНСПОРТ, ТЪРГОВСКО ПОСРЕДНИЧЕСТВО И ПРЕДСТАВИТЕЛСТВО НА БЪЛГАРСКИ И ЧУЖДЕСТРАННИ ФИЗИЧЕСКИ И ЮРИДИЧЕСКИ ЛИЦА, КАКТО И ВСЯКАКВИ ДРУГИ ДЕЙНОСТИ, НЕЗАБРАНЕНИ ОТ ЗАКОНА. | 20101014151926 | История | Документи |
| 7. Управители | АЛЕКСАНДЪР КИРИЛОВ ГЕОРГИЕВ | 20151224134055 | История | Документи |
| 19. Съдружници | Заличено обстоятелство | 20130222161858 | История | Документи |
| 23. Едноличен собственик на капитала | "НСН ИНВЕСТМЪНТ" ООД, ЕИК/ПИК 203628966, държава: БЪЛГАРИЯ | 20151224134055 | История | Документи |
| 24. Прехвърляне на дружествен дял | | 20151224134055 | История | |

Капитал

| 31. Размер | 591740 лв. | 20101014151926 | История | Документи |
| 32. Внесен капитал | 591740 лв. | 20101014151926 | История | Документи |

© 2007. Агенция по вписванията

Page 1 of 1

Едноличен собственик на капитала

Едноличен собственик на капитала

| 24.12.2015 г. 13:40:55 | "НСН ИНВЕСТМЪНТ" ООД, ЕИК/ПИК 203628966, държава: БЪЛГАРИЯ |
| 12.3.2013 г. 14:38:22 | ДЕСЕНТИА ЛИМИТИД, Чуждестранно юридическо лице, държава: СЕЙШЕЛИ |
| 22.2.2013 г. 16:18:58 | РОМУЛУС ТРЕЙД ЛИМИТИД, Чуждестранно юридическо лице, държава: ВИРДЖИНСКИ О-ВИ (бр.) |

# EXHIBIT 63

*Фрея* **f** *Freya*
**Транслейшънс** *Translations*

**Преводи от и на чужди езици**
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

**Sheet 1**

Commercial Register (Printout)                                     11/1/18   1:42 p.m.

*(Excerpts)*

MINISTRY OF JUSTICE         **COMMERCIAL REGISTER AND**

REGISTRY AGENCY            **REGISTER OF NON-PROFIT LEGAL ENTITIES**
[...]
Search for a trader or branch of non-resident trader; non-profit legal entity (NPLE) or a NPLE branch
Search by: EIK (Company Number)   | 2 | 0 | 3 | 6 | 2 | 8 | 9 | 6 | 6 |

**Status as of date:**          **November 1, 2018**

## NSN INVESTMENT EOOD

**General information**

| | |
|---|---|
| 1. EIK (Company No): | 203628966 |
| 2. Company name: | НСН ИНВЕСТМЪНТ |
| 3. Legal format: | Sole Owner Limited Liability Company |
| 4. Transliteration: | NSN INVESTMENT OOD |
| 5. Seat and registered office address | BULGARIA |
| | Sofia District (capital), Stolichna Municipality |
| | Sofia 1527, Oborishte District |
| | 119 Ekzarh Yosif Str. |
| 6. Scope of activities/ Business purpose: | Commercial representation and agency; consultancy, intelectual property transactions; comissioning, sale, import and export of merchandise, as well as such other business that is not prohibited by the Bulgarian law. |
| 7. Manager(s): | Alexander Kirilov Georgiev |
| 11. Manner of representation: | **Information deleted** |
| 19. Members: | **Information deleted** |
| 23. Sole Owner of the capital*: | **INTRUST EAD**, having EIK: 204589733 |
| | Country: Bulgaria |
| 24. Company Shares Transfer: | --- |

**Capital**

| | |
|---|---|
| 31. Amount | BGN 1,010,000 |
| 32. Paid-up capital | BGN 1,010,000 |

(End of Sheet 1)



**Sheet 2**
**\*Sole owner of the capital**
**(History)**

| Date | Time | Sole owner of the capital |
|------|------|---------------------------|
| 26 October 2018 | 08:30:43 | INTRUST EAD having EIK:: 204589733<br>Country: BULGARIA |
| 7 June 2016 | 17:35:54 | Intrust Limited, a foreign entity, Company ID No.: AFZOS1141, Country: **UAE** |
| 27 May 2016 | 14:32:43 | Delyan Slavchev Peevski |
| 27 Aug 2015 | 10:05:20 | **DELETED** |
| 20 July 2015 | 10:22:59 | Irena Angelova Krasteva |

*The undersigned Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Excerpt from the records in the Commercial Register in re: INTRUST EAD as at November 1, 2018. This translation has 2 (two) pages.*

*Translator: _____ Ilka Simeonova Dyulgerova*



# Търговски регистър и регистър на ЮЛНЦ

Български 

Начало

За агенцията

Справки

Електронни услуги

Нормативна уредба

Документи

Видео уроци

Новини

Връзки

Сигнали и предложения

Тестово подписване

Търсене на търговец или клон на чуждестранен търговец, ЮЛНЦ или клон на чуждестранно ЮЛНЦ

Въведете показания код:

ЕИК: 2 0 3 6 2 8 9 6 6
състояние към дата
0 1   1 1   2 0 1 8

**Търси**          **Изчисти**

## "НСН ИНВЕСТМЪНТ" ЕООД

Общ статус:   Преобразуване   Обявени актове   Актуален учредителен акт   Дело   Правдатели и правоприемници   Указания

**Основни обстоятелства**

| | | | | | |
|---|---|---|---|---|---|
| 1. ЕИК/ПИК | 203628966 | | 20150720102259 | История | Документи |
| 2. Фирма/ Наименование | НСН ИНВЕСТМЪНТ | | 20150720102259 | История | Документи |
| 3. Правна форма | Еднолично дружество с ограничена отговорност | | 20160527143243 | История | Документи |
| 4. Изписване на чужд език | NSN INVESTMENT OOD | | 20150827100520 | История | Документи |
| 5. Седалище и адрес на управление | БЪЛГАРИЯ област София (столица), община Столична гр. София 1527 район р-н Оборище ул.ЕКЗАРХ ЙОСИФ № 119 | | 20150720102259 | История | Документи |
| 6. Предмет на дейност | търговско представителство и посредничество, консултантски услуги, сделки с интелектуални собственост, комисионни сделки, продажби, внос и износ на стоки, както и извършване на всякакви други сделки и/или дейности, които не са забранени от българския закон. | | 20150720102259 | История | Документи |
| 7. Управители | Александър Кирилов Георгиев | | 20160527143243 | История | Документи |
| 11. Начин на представляване | Заличено обстоятелство | | 20160527143243 | История | Документи |
| 19. Съдружници | Заличено обстоятелство | | 20160527143243 | История | Документи |
| 23. Едноличен собственик на капитала | "ИНТРЪСТ" ЕАД, ЕИК/ПИК 204589733, държава: БЪЛГАРИЯ | | 20181026083043 | История | Документи |
| 24. Прехвърляне на дружествен дял | | | 20181026083043 | | Документи |
| **Капитал** | | | | | |
| 31. Размер | 1010000 лв. | | 20151116143733 | История | Документи |
| 32. Внесен капитал | 1010000 лв. | | 20151116143733 | История | Документи |

© 2017, Агенция по вписванията

Едноличен собственик на капитала

**Едноличен собственик на капитала**

| | |
|---|---|
| 26.10.2018 г. 08:30:43 | "ИНТРЪСТ" ЕАД, ЕИК/ПИК 204589733, държава: БЪЛГАРИЯ |
| 07.6.2016 г. 17:35:54 | Интръст Лимитед, Идентификация AFZOS1141, Чуждестранно юридическо лице, държава: ОАЕ |
| 27.5.2016 г. 14:32:43 | Делян Славчев Пеевски |
| 27.8.2015 г. 10:05:20 | **Заличено обстоятелство** |
| 20.7.2015 г. 10:22:59 | Ирена Ангелова Кръстева |

# EXHIBIT 64





**WHO
WE ARE**



# WHO
# WE ARE

**TGI** Middle East is an investment company with over US$700m worth of Assets Under Management. We are headquartered in Dubai and are structured to invest in various sectors globally. Our portfolio spans across Asia and Europe.



**STRATEGY**

# STRATEGY

---

The TGI portfolio is diversified across operating companies as well as hard assets. We balance the portfolio through cash generating investments as well as growth stage companies. Real Estate and mature industries provide us with the stability to re-invest our capital into high growth and opportunistic ventures.



FMCG



Dairy



Retail



Real Estate



Logistics and Distribution



IT



**SECTORS**

## FMCG

Our manufacturing and branding experts deliver the top quality products. We understand supply chain management to the very core. Our FMCG companies employ over 2,500 people and generate an aggregate top-line of over US$350 million.

## DAIRY

Through years of R&D, we have developed some of the best recipes for cheese and yogurts. We are now expanding our reach into the CHINA and ASEAN countries.

## RETAIL

Collectively, TGI carries over 300 years of Retail experience spanning from the big supermarket chains to the nimble convenience stores. Our detail lies in the asset utilization.

**SECTORS**

## REAL ESTATE AND HOSPITALITY

Our team has a track record of investing and exiting over US$1.5 billion worth of real estate and hospitality transactions worldwide.

## LOGISTICS AND DISTRIBUTION

This segment generates an annual top-line of US$400 million for the portfolio. We offer 3PL services for a select range of clients within the FMCG space as well as act as distributors for many European top brands.

## IT SERVICES

Our footprint into the IT services segment boasts of a Platinum Partnership with SAP. We implement SAP systems for our clients as well as offer consulting services.



OUR PHILOSOPHY

# OUR
# PHILOSOPHY

We focus on industries that we understand best.

Capital preservation is our first priority. As such, we track stringent risk management metrics to ensure that our portfolio remains cash positive.

We take majority or significant minority interests in the companies we invest in. We adopt a hands-on approach towards managing our portfolio companies.

We deploy industry experts with the top management of each portfolio company that we invest in.

Simple but powerful KPI's help us measure the performance of our investments. We work closely with the top management of our portfolio companies to set tangible and realistic targets.

We follow high ethical standards and strive for excellence and professionalism in our conduct.

# OUR TRACK RECORD

Turnaround of Bulgartabac Holding AD after privatization, a public listed company in Bulgaria with a top line of US$320m.

Turnaround of Yuri Gagarin, a public listed company in Bulgaria specializing in industrial printing and producing cigarette filters with a top line of US$50m.

Growing dairy business Lacrima from scratch to a top line of US$50m within two years. We are now penetrating the Asian markets with JVs across China, Thailand and Vietnam.

Expanding a logistics and distribution company ELD, from a top line of US$30m to US$500m within three years.

Managing a US$300m Real Estate Fund to diversify across income producing and development risk.



OUR PORTFOLIO

# OUR PORTFOLIO









Bulgartabac is a fast growing tobacco company offering wide range of high quality brands at competitive prices. It is a leader in Bulgarian market and continues to expand its presence in international markets. Its production facility consists of two cigarette factories and one tobacco processing factory. Bulgartabac is a public listed company with a top line of US$320m.

Yuri Gagarin is a leading manufacturer of multi-colour printed packaging and labels of cardboard and paper for cigarettes, food, cosmetic and other industries. The company's total assets are worth US$45m.

BG Business Solutions Ltd. is an innovative IT company offering complete solutions for: business process management; top end consulting services; ERP information systems implementation and support; and IT infrastructure solutions and services. The company is an official SAP Platinum Partner providing SAP education and programs.

Lacrima is a producer of Dairy products and has in-depth experience in the procuring, purchasing, processing and realization of milk and milk products. The company is now growing globally and penetrating the South East Asian markets with JV's across China, Thailand and Vietnam.







Tabak Market is a retail chain with 800 kiosks in Eastern Europe. It has seen a 22 times increase in sales between the period of 2013-2015. Company's net sales for 2016 are budgeted at US$250m.

Express Logistics and Distribution is one of the biggest distribution and logistics companies in Bulgaria with logistics centers in 13 cities.

Doreco is a leading procurer of specialized materials for the printing industry.

# CONTACT

**TGI Middle East**
Floor 18, Concord Tower
Dubai Media City
PO Box 75308, Dubai, UAE
T: +971 (0)4 399 8342
F: +971 (0)4 399 8346
www.tgimiddleeast.com

# EXHIBIT 65

OVERENI PREVOD SA SRPSKOG NA ENGLESKI JEZIK
CERTIFIED TRANSLATION FROM SERBIAN TO ENGLISH                    broj / number: 06/15

TRANSLATION FROM BULGARIAN TO SERBIAN LANGUAGE

(Seal: Milijan Popov, court translator for the Bulgarian language, Belgrade)

## STATEMENT

**Of Daniela Sergeeva Kuceva, Bulgarian personal number 7910106130,**
entered into the list of persons eligible to be appointed as bankruptcy managers, set
forth by the Ministry of Justice of Republic of Bulgaria pursuant to the Order no. LS-04-
462, published in the *Official Gazette of Republic of Bulgaria* no. 52 of June 29, 2007

In course of my acting in the capacity of a bankruptcy manager, I have become a witness of
various figures' from the Bulgarian *political elite* exerting a fundamental pressure on the court
and the bankruptcy manager in terms of undertaking certain procedural actions in particular
bankruptcy cases, with the aim of serving the interests of one particular party in the judicial
procedure.

As of early 2014 I was appointed by the Court of the City of Sofia as a temporary bankruptcy
manager of several entities, which were of a particular *interest* to certain figures from the
*political elite* of Republic of Bulgaria. One of such entities was TEHNOLOŠKI CENTAR -
INSTITUT ZA MIKROELEKTRONIKU A.D, known to the public as one of the entities
controlled by the banker Tzvetan Vassilev.

Upon my assuming of the duty of the bankruptcy manager of TEHNOLOŠKI CENTAR -
INSTITUT ZA MIKROELEKTRONIKU A.D. I was summoned to a meeting by Vladimira
Janeva, the President of the Court of the City of Sofia, where I was explained that the
company TEHNOLOŠKI CENTAR - INSTITUT ZA MIKROELEKTRONIKU A.D. has been
particularly *important* for the Member of the Parliament Delyan Peevski, wherefore all my
actions in course of the bankruptcy proceeding need to be undertaken only upon the explicit
orders and instructions to be given solely by Delyan Peevski. The president of the Court of
the City of Sofia has stated to have been maintaining personal contact with Delyan Peevski,
and to have been discussing with him the developments in the bankruptcy proceeding.
However, I was told that I shall get the exact orders in terms of specific actions to be
undertaken by me from a person to be designated by her, i.e. and *intermediary*, who was
having standing relations with lawyers of Delyan Peevski. It became clear to me in that
meeting that a public war is about to break out between Delyan Peevski and the majority
owner of the *Corporate Commercial Bank* A.D. Tzvetan Vassilev. By launching the

bankruptcy proceeding and appointing a temporary bankruptcy manager, Peevski would be managing to gain control over TC-IME A.D. and to cause significant damage to both Vassilev and the *Corporate Commercial Bank* A.D. I have made a remark immediately that undertaking of procedural actions at cross purposes by me could create serious problems for both myself and the court. However, I was reassured that the *entire state machinery is supporting us in the war against the banker Tzvetan Vassilev.*

### *Daniela Sergeeva Kuceva; signed by her own hand*

***Note of the court interpreter:*** *the back of the 1st page is certified by a round seal: Republic of Bulgaria – Notary Public no. 511, Fani Shutova, appointed for the Rayon Court in Petrič.*

*Bond between the 1st and 2nd page is certified by a round seal: Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*
*2 (two) signatures: Fani Shutova, signed by her own hand.*

In fact, during the bankruptcy proceeding I have not undertaken any action in my capacity of the bankruptcy manager to infringe the interests of TEHNOLOŠKI CENTAR - INSTITUT ZA MIKROELEKTRONIKU A.D. The activities undertaken by me as the bankruptcy manager of that entity were subject to control of the Ministry of Justice, which found no violations on my part. Nevertheless, I have undertaken certain actions in spite of my explicit disagreement, due to pressure and intimidation suggesting that otherwise there shall be certain actions undertaken in order for me to be denied the right to act as a bankruptcy manager. As an example, I was coerced by the *intermediary* to enter into the agreement on securing the documentation, tangible property and software massives owned or kept by TEHNOLOŠKI CENTAR - INSTITUT ZA MIKROELEKTRONIKU A.D in the offices of the entity situated in Sofia, Bul. Tzar Boris III no. 159, 6th floor, with the security company *Delta Gard OOD*, subject to a monthly remuneration that was inacceptable for me. In my opinion, the President of the Court of the City of Sofia herself made selection of the security company with which the agreement was supposed to be concluded. The sheet of paper that was delivered to me by the *intermediary*, which contained the name and telephone numbers of the security company that was to be hired, had been written by the hand of the President of the Court of the City of Sofia. On the other hand, the amount of remuneration for rendered security services was determined by the *intermediary* in my presence, obviously without any address to the pricing market mechanisms applicable to the pertinent service industry and particularities of the object of security.

Again due to the pressure and intimidation employed by the *intermediary*, I gave my consent to entering into the agreement on pledge over temporary certificates owned by the company in favor of the *Corporate Commercial Bank AD*, which served as collaterals of bank loans between the bank and TEHNOLOŠKI CENTAR - INSTITUT ZA MIKROELEKTRONIKU A.D.

My lack of willingness to issue consent to the above displeased in particular the President of the Court of the City of Sofia. What followed was the waiving of fingers at me, aggressive behavior and intimidation by my deprivation of the right to act as a bankruptcy manager. Through her contacts with allied judges in the District Court of Varna and the political influence of her patron materialized in Delyan Peevski, the President of the Court of the City of Sofia has succeeded in influencing the courts in Varna, which eventually deprived me of the right to act as a bankruptcy manager. This was a demonstration of force and aggressiveness of the acting state machinery, and the *severe punishment* of the *deserving disobedient*.

<p align="center">*Daniela Sergeeva Kuceva; signed by her own hand*</p>

*Note of the court interpreter: the back of the 2nd page is certified by a round seal: Republic of Bulgaria – Notary Public no. 511, Fani Shutova, appointed for the Rayon Court in Petrič.*

*Bond between the 2nd and 3rd page is certified by a round seal: Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon. 2 (two) signatures: Fani Shutova, signed by her own hand.*

And last, but not least, I should mention my presence in the meeting organized by the *intermediary* with Teodor Tanev, the Executive Manager of TEHNOLOŠKI CENTAR - INSTITUT ZA MIKROELEKTRONIKU A.D, Biser Lazov, the company accountant and Aleksandar Angelov, known as the lawyer of Delyan Peevski.

The goal of the meeting was to discuss the different options for pumping-out of company assets and takeover of other entities controlled by Tzvetan Vassilev. Discussion between the abovementioned persons has made it clear to me that not only Delyan Peevski, but also other Bulgarian politicians have a serious appetite for BTK (*Vivakom*). In the meeting there were discussed possible actions related to change of composition of BTK's Board of Directors and Supervisory Board, which resembled the ones exerted in Bulgaria over the 1990s. Nevertheless, I would say that this meeting has been unfruitful, because the participants have failed to discover legal mechanisms for realization of their goals.

During my acting as a temporary bankruptcy manager of TEHNOLOŠKI CENTAR - INSTITUT ZA MIKROELEKTRONIKU A.D, I was compelled almost daily by the *intermediary* to meet with either him, or the persons close to him. In my presence there were made comments on several occasions on the ambitions of politically powerful persons to take over the companies controlled by Tzvetan Vassilev, and on the explicit actions to be undertaken in that respect. In those meetings, the participants have discussed on numerous occasions the development of the bankruptcy proceeding over the *Corporate Commercial Bank A.D*, and the manner of distribution of its case, and the destiny of the bank's assets.

Bearing in mind all the aforesaid, which has become known to me in my capacity of a temporary bankruptcy manager of TEHNOLOŠKI CENTAR - INSTITUT ZA MIKROELEKTRONIKU A.D, I am of the opinion that there is in progress an aggressive political attempt of taking over the business from the banker Tzvetan Vassilev, which is being undertaken by the political and economic circle surrounding DPS (*Pokret za prava i slobode – The Movement for Rights and Freedoms*) and politicians from other parties, who are using their serious influence in the key areas, such as the judiciary, Public Prosecutor's Office, the National Bank of Bulgaria, the National Revenue Agency, the National Security etc.

### Daniela Sergeeva Kuceva

On March 11, 2015, I **FANI SHUTOVA**, Notary Public for the area of the **Rayon Court Petrich**, registration number **511** of the Chamber of Public Notaries, hereby certify the identity of this copy with its **original**, being a private document presented to me by:

**LAZAR EVGENIEV KARDALIEV, Bulgarian personal number: 7203050160**
**ADDRESS: SOFIA – the bearer**

The original document did not contain any overstrikes, supplements, corrections, or other particularities.

Registration number: **2149**       Charged fees: (none)
NOTARY PUBLIC: Fani Shutova, signed by her own hand

Certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

Translation number: Reg. br. 135/15



I hereby confirm that the above document that was presented to me in Bulgarian language has been authentically translated into Serbian language.

*(Illegible signature)*

(Seal: Court Translator for the Bulgarian language, Milijan Popov, Belgrade)

Court translation for Bulgarian language – Belgrade, Djevdjelijska Street no. 61/11, telephone number: 011 2407379; 2420826; 063/353573; 064/1649818, appointed by the Ministry of Justice, by the Ruling no. 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/95-18 dated September 25, 1995.

*Remark of the court translator for the English language: each page of the document contains the title "Translation from Bulgarian to Serbian" and the round seal of the court interpreter for Bulgarian language, Mr. Milijan Popov of Belgrade.*

I hereby certify that the above translation is in full conformity with the original in the Serbian language.

Ref. no.: 68/15

Novi Sad, on May 14, 20 15



# EXHIBIT 66

OVEREN! PREVOD SA SRPSKOG NA ENGLESKI JEZIK
CERTIFIED TRANSLATION FROM SERBIAN TO ENGLISH          broj / number  06/15 02

TRANSLATION FROM BULGARIAN TO SERBIAN LANGUAGE

(*Seal: Milijan Popov, court interpreter for Bulgarian language, Belgrade*)

## OPINION

of Rumiana Metodieva Chenalova
Judge of the Court of the City of Sofia

It is my goal to hereby illustrate, through certain facts, the events and codependences, the existing perversities and grave erosions of values in the social life, and particularly the judicial system of Republic of Bulgaria. My motive for doing so is my perception of justice and my belief that tacit acceptance of reality is a mere social instinct and a spiritual death. I am aware of the risks involved, but am also aware that the truth should be told in due time. Everything else is mere hypocrisy and fear.

A part of the problems related to the judicial system is possibly rooted in the manner of appointment of staff in the judiciary – through the High Judicial Council. A part of members of the High Judicial Council come from the parliamentary quota, which brings into serious doubt their objectivity and impartiality. Election of members from the rank of judges, public prosecutors and investigators was preceded by an organized lobbying for particular individuals. It was made known to the public through the media that delegate assembly of public prosecutors from the Plovdiv judicial area was organized informally, by means of telephone conversations. Due to incomprehensible reasons, the public prosecutor Rumen Boev, who became later on an elected member of the High Judicial Council, and a part of the group surrounding the Attorney General failed to suffer any consequences of their lobbying activities, as opposed to some other public prosecutors. I have learnt personally from the former President of the Court of the City of Sofia that members of the High Judicial Council were determined in advance and approved by members of the Government. It would suffice to search the minutes from sessions of the High Judicial Council in order to see that its decisions are basically influenced from the positions of the Attorney General and president of the Supreme Administrative Court Georgi Kolev.

The unprincipled position of members of the High Judicial Council in comparison with other identical cases is a sufficient example of a lack of autonomy and independence of members of the High Judicial Council. Moreover, minutes from its sessions clearly show a tendency to maintain formality in decision-making, which seriously affects the rights of particular magistrates and the magistrate community. What lacks is a debate in the disputed cases, voting is predestined by the existence of two main groups within the High Judicial

OVEREN! PREVOD SA SRPSKOG NA ENGLESKI JEZIK
CERTIFIED TRANSLATION FROM SERBIAN TO ENGLISH          broj / number 06/15 02

Council – the one of the Association of Judges and the other surrounding the Attorney General.

**Remark of the court interpreter[1]**: the back of the 1st page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

Bond between the 1st and 2nd page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

2 (two) signatures: Fani Shutova, signed by her own hand.

As a proof of the aforesaid, I shall take the liberty of stating the obviously different position of members of the High Judicial Council with respect to the so-called *removal from duty*, within the meaning of the *Act on Judicial Authority* of Republic of Bulgaria, article 232, which represents a serious mandatory measure in the sense of the right to employment warranted for by the Constitution.

In cases where there is a proposal for disciplinary removal from office made by the disciplinary council that is elected randomly, the *Act on Judicial Authority* provides for an option of filing a request for removal from office of a magistrate for the period of up to 6 months. Review of such proposal and the decision upon it compels the High Judicial Council to make a serious evaluation in terms of several circumstances – whether a particular disciplinary council has been authorized to make such a request; whether the violation at hand is a disciplinary violation under the *Act on Judicial Authority* of Republic of Bulgaria; whether the nature thereof requires the magistrate to be deprived of the right to exercise judicial authority; and whether the principle of proportionality has been maintained between the social interest and the right of the magistrate. Upon the proposal of the disciplinary council, the High Judicial Council has rendered in the disciplinary case number 33/2014, which was later on adjoined with disciplinary case number 1/2015, the decision on my removal from duty for the period of six months. The fact that the disciplinary council was composed from the ranks of persons having filed the proposal for initiation of the disciplinary proceeding was ignored. This has breached the fundamental principles of the administrative procedure. It was also ignored that two alleged violations do not justify the removal from duty as an adequate disciplinary measure and that ordering of the maximum six-months period has had no grounds or motive. It was after the rendering of such decision that I have realized

---

[1] This is the remark of the court translator who made the translation from the original document made in Bulgarian to Serbian language.

that appointment of members to the High Judicial Council was made informally – upon the verbal instructions of the Attorney General and the president of the Supreme Administrative Court – and that it was motivated by the fact that such actions of the High Judicial Council shall look nice in the then forthcoming report of the European Commission. Irrespective of the fact that such a decision affected my constitutional rights, I was not even informed thereof, nor was the review of the proposal published as a part of the agenda of the High Judicial Council's session. This kind of approach to deciding on the faith of a magistrate is impermissible, not only from the legal standpoint, but also with a view to the principles of ethics and equity, and humanity in general.

The position of the High Judicial Court was completely different in the case of a proposal filed by the Attorney General for removal from duty of the president of the Court of the City of Sofia. First of all, the Attorney General has himself informed judge Janeva on his forthcoming actions, and that she shall be summoned by the High Judicial Council for examination on the day of review of the proposal. Moreover, that proposal was based upon the underlying launching of a criminal proceeding, which treats explanations – or examinations – as a procedural and investigative action that may not be undertaken by an employee of judiciary.

**Remark of the court interpreter**: the back of the 2nd page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

Bond between the 2nd and 3rd page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

2 (two) signatures: Fani Shutova, signed by her own hand.

All actions undertaken by the High Judicial Council were pre-agreed between Janeva, Georgi Kolev and Attorney General.

Removal of the President of the Court of the City of Sofia has made an impression that the High Judicial Council acts without any compromises and equally towards everyone. The real goal was to prevent Janeva from becoming the accused in the *Chervei (Worm)* case, which was surrounded by tension created in the public. A day later, the Attorney General has stated before the students of the University in Veliko Trnovo that perpetrations made by the

President of the Court of the City of Sofia are not all that serious. This was followed by the opinion of the member of the High Judicial Council, Rumen Boev, that removal from duty caused by initiation of a criminal procedure violates materially the rights of the removed magistrate, wherefore the law must prescribe a deadline for it. A similar opinion was not repeated when another magistrate was removed from duty on the same grounds.

The abovementioned circumstances are only a minuscule fragment of numerous examples of unprincipled standpoints assumed by the High Judicial Council in decision-making, which is an ultimate indicator of selective positions on the matters of principle in terms of different issues, cases and individuals. The underlying reason for that is rooted in the obvious dependence of the High Judicial Council upon the political conjuncture of the state and the guidelines of behavior set by persons being the major official duty incumbents – the Attorney General and the President of the Supreme Administrative Court. Their interests are not personal in nature, but are in line with the interests of the economic oligarchy or the representatives thereof. In relation thereto, I shall invoke what I have realized myself during the discussions with the President of the Court of the City of Sofia on the systematically organized meetings with the Member of the Parliament, Delyan Peevski, Attorney General and President of the Supreme Administrative Court. Those meetings were to determine the events to come, including the actions of the High Judicial Council, faiths of magistrates, developments in individual cases and people's faiths – all with the aim of making an economic and political influence.

I have knowledge on the existing permanent weekly contacts that were maintained between the President of the Court of the City of Sofia and the MP Delyan Peevski, as well as on the links of the latter with the Attorney General of Republic of Bulgaria. Such meetings are related to assignments and decision-making in particular cases. In that sense, in cases known as *KTB, TV7, Bolkan News, Petrol, TCM* and others, the president of the court has made certain requests towards D. Peevski, using thereby the dependence of judges to whom those cases were distributed - that involved unresolved disciplinary proceedings, sending out to business trips, warnings of alleged checkups of particular judges by DANS - the State Agency for National Security followed by promised patronage by Peevski and Attorney General. This was conducted through an attorney at law, who served as an intermediary, who has contacted with the attorney of Peevski being introduced as Sasho. It is essential to state that interests of Peevski come down to particular cases and the outcome thereof. In fact, the goal is to suck out the monies from the First Investment Bank through the court files involving it.

**Remark of the court interpreter**: the back of the 3rd page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

Bond between the 3rd and 4th page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

2 (two) signatures: Fani Shutova, signed by her own hand.

In the case known as *KTB* there was a previous preparation made with respect to the motion for launching of the bankruptcy procedure and the date of filing thereof. Distribution of the court case was not made randomly, nor was the selection of the *questor* of KTB and the bankruptcy manager. I have learnt myself from Janeva and her intermediary that it was the interest of Peevski to purchase for peanuts the assets of KTB through the furtherance of the bankruptcy proceeding over the bank, and that the launching of the criminal proceeding was made under the auspices of the Attorney General with the aim of realization of the Peevski's plan. This kind of control was also exercised in case of the appeals filed upon the refusal of the Registration Agency of Republic of Bulgaria to make certain registrations that concerned Peevski. In practical terms, his goal was to acquire, with intermediation and realizations made by the President of the Court of the City of Sofia, the total control over the distribution of court files in line with Peevski's requests and financial favoring. One of his primary goals was to assume control over the firms close to Tzvetan Vassilev and to ruin them. In practice, this was done through the control of outcomes in the proceedings pending on petitions or appeals against the refusals by the Registration Agency and motions for cessation in line with the Bulgarian *Commercial Act*, article 536. The control over judges was exercised by means of suggested checkups of criminal records and checkups by DANS - the State Agency for National Security.

In case of a refusal to act upon the issued instructions, or a danger of disclosure thereof, the individual concerned would be discredited. That way, there was no reaction to a grave interference with the impartiality of the judicial system after the announcement of the *Belvedere* case by the French ambassador. At the same time, after the statements of the Prime Minister in relation to the *Worm* case, the High Judicial Council has urgently declared that to be an impermissible interference with the work of the Public Prosecutor's Office, being the only one entitled to evaluate who is to be summoned as an accused and convicted by the court. Moreover, it turned out, according to the statement of Attorney General, that violations made in the process of dissolution of the Court of the City of Sofia in course of the *Worm*

OVERENI PREVOD SA SRPSKOG NA ENGLESKI JEZIK
CERTIFIED TRANSLATION FROM SERBIAN TO ENGLISH          broj / number

case have been known to him as of November 2014. At the same time, up until the month of January 2015 the High Judicial Council was not convened, nor were the perpetrators prosecuted. However, in the *Belvedere* case, the actions of the High Judicial Council were swift. Launching of the disciplinary proceeding; launching of another disciplinary proceeding for the checkup illegally performed by a member of the High Judicial Council close to Attorney General, Galya Georgieva. Removal from duty on account of filing of the proposal for disciplinary removal from duty for the following violations - applied in the *Octopus* case, two minutes from the court hearings signed only by the president and secretary, and lack of the decision on the request for removal of security measures in the case currently pending before SAS[2].

**Remark of the court interpreter**: the back of the 4th page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

Bond between the 4th and 5th page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

2 (two) signatures: Fani Shutova, signed by her own hand.

The coalescence of the judicial with political authorities is obvious, so as is the employment of various methods of control and repression against a potential source of information, aimed at its discrediting. Alongside with that, the court is being used for dissolution and destruction of companies and banks, financial favoring through distribution of commissions, control of competing firms or individuals and seizure of their properties. In practice, the justice has become leverage for control, extortion, intimidation and annihilation in the interest of certain political figures using the newly established methods of redistribution of wealth and economic interests. In the nineties there were racketeering and blackmail. Today, unfortunately, the court enactments determine new owners of some of the most prominent commercial enterprises and their assets. It is gruesome that this happens in the circumstance of friendly relations and support of the Attorney General.

Even more dreadful is the situation involving criminal cases. In that sense, the President of the Court of the City of Sofia was given an instruction by the Attorney General that a condemning conviction must be rendered in the case against Tzvetan Tzvetanov. For that purpose, the reporting judge in the matter was not assigned randomly, but was briefed

---

[2] This sentence is translated literally from the translation into Serbian, which hardly makes sense.

and instructed by his seniors. In the same manner were assigned the lay judges, who were informed of the outcome of the proceeding. In the appellate proceeding before the Court of Appeals, an influence was made to the appellate judicial panel to uphold the judgment rendered in first instance. The basic principles and rules of the criminal procedure are being trampled, and an environment is created for the criminal prosecution to be employed for pressurizing, control and retribution. A significant role in achievement of such goals is played through the control of the media, which successfully manipulate the public opinion through false or biased presentation of facts. Fixation on a particular issue over a longer period of time and selective comments serve to cover the actual goals, discredit unfavorable persons and structures, and turn the distorters of social values into heroic figures.

All the aforesaid do not exhaust all the events I have been a reluctant or a deliberate witness of, nor has it been an intention of mine. My goal was to mark the existing correlations within the judicial system, as well as their goals, courses of action and the imminent results. If I should fail to comprehend all of the above, I would begin to doubt the veracity of this dreadful reality. It is inane to speak of morality and values of any particular individual when the state is in danger; when freedom of a nation and its right to demand equity dissolve irrecoverably due to the fear of saying the truth, the mistrust that is turning into despair, and the consents granted for the sake of mere survival. The entrance to Bulgaria still bears no sign *Leave All Hope Ye Who Enter*; but someone has started to write it.

**Remark of the court interpreter**: the back of the 4[5h] page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

Bond between the 5th and 6th page is certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

2 (two) signatures: Fani Shutova, signed by her own hand.

I do not know what is to follow in the forthcoming months, or what is going to happen with me, but I do know that this that is happening now is to determine the future of our children, and that we are obliged to pay the price and assume responsibility if we have our conscience and heart.

Signature: Rumiana Chenalova; signed by her own hand
Rumiana Chenalova



OVERENI PREVOD SA SRPSKOG NA ENGLESKI JEZIK
CERTIFIED TRANSLATION FROM SERBIAN TO ENGLISH                    broj / number

On March 11, 2015, I **FANI SHUTOVA**, Notary Public for the area of the Rayon Court Petrich, registration number **511** of the Chamber of Public Notaries, hereby certify the identity of this copy with its **original**, being a private document presented to me by:

**LAZAR EVGENIEV KARDALIEV, Bulgarian personal number: 7203050160**
**ADDRESS: SOFIA – the bearer**

The original document did not contain any overstrikes, supplements, corrections, or other particularities.

Registration number: **2148**        Charged fees: (none)
NOTARY PUBLIC: Fani Shutova, signed by her own hand

Certified by a round seal: *Republic of Bulgaria – Notary Public number 511, Fani Shutova, area of appointment: the Court of the Petrich Rayon.*

**Translation number: Reg. br. 136/15**
I hereby confirm that the above document that was presented to me in Bulgarian language has been authentically translated into Serbian language.

(*Illegible signature*)

(Seal: Court Translator for the Bulgarian language, Milijan Popov, Belgrade Court translation for Bulgarian language – Belgrade, Djevdjelijska Street no. 61/11, telephone number: 011 2407379; 2420826; 063/353573; 064/1649818, appointed by the Ministry of Justice, by the Ruling no. 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/95-18 dated September 25, 1995.

*Remark of the court interpreter for the English language: each page of the document contains the title "Translation from Bulgarian to Serbian" and the round seal of the court interpreter for Bulgarian language, Mr. Milijan Popov of Belgrade.*

Page 8 of 8

I hereby certify that the above translation is in full conformity with the original in the Serbian language.
Ref. no.: 06/15.02
Novi Sad, on ___ 17, 20 15



# EXHIBIT 67




Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

**To:**   **The Creditors' Committee of**
**Ayr Property Development AD**
**(in case 730/2013 before the Shumen District Court)**

### REQUEST

**By:**   Atorney Maria Nakova admitted to the Sofia Bar and having
law office address at Botevgrad 2140, 4 Sevast Ognyan St., 2nd
floor, office 6, acting for and on behalf of Ayr Property
Development AD (declared bankrupt), having EIK: (Company
No.) 200958720 in the proceeding of case No.730/2013 before the
Shumen District Court.

**Re:**   *Letter of Ref.273-A of 21st October 2014 sent by Zahari Tomov,
attorney-at-law, advising that Ayr Logistics Limited Inc. filed
for bankruptcy in the U.S. Federal Court in Dallas, Texas, USA.*

Dear Members of the Creditors' Committee:

 In his letter mentioned above Attorney Zahari Tomov has advised me that
Ayr Logistics Limited Inc. ("Ayr") has filed for bankruptcy in the U.S.
Federal Court in Dallas, Texas, (the "U.S. Bankruptcy court"), case No.14-
34940-bih7.

As indicated in the petition for bankruptcy the matters of Ayr's property
rights are proceeded under and governed by the US Bankruptcy Code.

Having said that and in view of:

(i) The Declaration of Mr. Philip Harris, acting as the Executive
Director of Ayr Property Development AD ("APD") and President
and General Manager of Ayr Logistics Limited Inc., submitted to
the National Revenue Agency with reference to APD's tax
inspection, where APD was referred to as Ayr's investment 
enterprise;




(ii) The proceeds from the sale of the Silver Beach investment lands, being Ayr's investment property and amounting to BGN 97,000,000;

(iii)   The accounts receivable owed by SGF Shareholding Community AD;

(iv)   The shares held in the capital of New Co-Property Investment AD;

And pursuant to the rights Ayr acquired under the Agreement of 28th March 2012 plus the 20 (twenty) shares in the capital of APD as transferred over by All Seas Bulgaria OOD on 18th November 2013, I hereby kingly ask the Creditors' Committee to do as follows:

1. Take all necessary actions and measures required by law to oppose to and curb the efforts of First Investment Bank AD ("FIB") to enforce and collect a payment of BGN 105 million from APD under Art.717n CA;

2. Take all necessary actions and measures required by law to oppose to and curb the attempts of Investbank AD to enforce individual execution against the accounts receivable owed by SGF Shareholding Community AD;

3. Call on and demand that the newly-appointed Trustee in Bankruptcy for APD meet their duties and fulfil the obligations detailed below and concerning the protection and keeping of APD's property intact:

    (A) Accept the delivery the set of documents comprising APD bankruptcy file as requested by APD's former trustee Mrs. Ganka Kolyovska in her letter dated 29th September 2014, and keep it safe;

    (B) Ensure the advancement of measures prescribed in the Creditors' Committee statement related to the resolutions the General Meeting of the Creditors' Committee adopted with respect to First Investment Bank's claims.

    (C) Ensure that the Bankruptcy Court's order of 3rd June 2014 staying enforcement action No.20118080400251 as commenced by Private Enforcement Agent Zahari Dimitrov and conducted in favour of Investbank AD against APD's accounts receivable owed by SGF Shareholding Community AD will be obeyed;

This is to kindly advise you that on 9th October 2014 I notified Mr. Harris, Ayr President and General Manager, of the steps that need to be taken under the laws of the USA to protect Ayr's investment property held in APD.

On the matter of Ayr's filing for bankruptcy please be kindly advised that today, on this 22nd October 2014, I have given a notice to Ayr's Trustee Mr. Jeff Mims of the need to protect Ayr's investment possession held in APD.

3

The above notice is kindly enclosed hereto and should you find that any of the facts and circumstances outlined there have been misrepresented or misstated please advise me accordingly on or before noon on 23rd October 2014 at the latest because I have made arrangements for a shipment of the documents to be made by FeDex courier at that time.

You are kindly requested to do everything possible in your power to protect Ayr's possessions as acquired and held in their investment enterprise APD in exercising the powers vested in you under Art.681 of the Commerce Act.

*Attachments:*

(A) Letter of Ref. No.273-A dated 21st October 2014 together with the documents enclosed thereto;

(B) Notice of 22nd October 2014 to Trustee in Bankruptcy for Ayr Mr. Jeff Mims;

Date: 22nd October 2014            Respectfully submitted,
City of Varna                      *Signed ill.*
                                   Counsel Maria Nakova

*The undersigned Ilka Simeonova Dyulgerova hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Request to the Creditors Committee of Ayr Property Development AD by Attorney Nakova dated 22nd October 2014. This translation has 3 (three) pages.*

Translator: _____   *Ilka Simeonova Dyulgerova*



До:
Комитета на кредиторите на
Еър Пропърти Девелопмънт АД
(т.д. № 730/2013 –Шуменски окръжен съд)


# МОЛБА

### от

**Адвокат Мария Накова**, адвокатска колегия – гр.София, с адрес на кантора: гр.Ботевград 2140, улица "Севаст Огнян" № 4, ет.2, офис 6, процесуален представител на **Еър Пропърти Девелопмънт АД /н/**, ЕИК 200958720, в производството по т.д.№ 730/2013 год. по описа на Шуменски окръжен съд.


Във връзка с уведомление от 21.10.2014 год., реф.№.273-А/ 21.10.2014 год. от адвокат Захари Томов, за регистрирана процедура по банкрут на Еър Лоджистикс Лимитед Инк пред Федералния съд по банкрута в Далас, щат Тексас, САЩ.


УВАЖАЕМИ ЧЛЕНОВЕ НА КОМИТЕТА НА КРЕДИТОРИТЕ,

С посоченото уведомление , адвокат Захари Томов ме информира, за производството по банкрут на Еър Лоджистикс Лимитед Инк, водено по дело №.14-34940-bjh7 пред Федералния съд по банкрута в гр.Далас, щат Тексас, САЩ.

Както е посочено в апликационната форма, имуществените права, притежавани от Еър Лоджистикс Лимитед Инк подлежат на процедиране според закона за несъстоятелността на САЩ.

Като съобразявам декларацията на г-н Филип Харис, Изпълнителен директор на Еър Пропърти Девелопмънт АД и Президент и генерален мениджър на Еър Лоджистикс Лимитед, представена пред Националната приходна агенция, във връзка с проверка на Еър Пропърти Девелопмънт АД, посочваща – Еър Пропърти Девелопмънт АД като инвестиционно предприятие на Еър Лоджистикс Лимитед Инк; Получените с продажбата на инвестиционните терени "Силвър Бийч" 97 500 000 лева като инвестиционно притежание на Еър Лоджистикс Лимитед Инк; Вземането от Си Джи Еф –акционерна общност АД; акциите от капитала на Ню Ко-Пропърти Инвестмънт АД;

И съгласно придобитите права от Еър Лоджистикс Лимитед Инк по споразумението от 28.03.2012 год. и прехвърлените на 18.11.2013 год. от Ол Сийз България ООД 20 броя акции от капитала на Еър Пропърти Девелопмънт АД,

Представям следната конкретна и настоятелна молба :

1. Моля Комитета на Кредиторите да предприеме всички необходими и дължими мерки срещу опитите на Първа Инвестиционна Банка АД да наложи плащане, в размер на 105 милиона лева от Еър Пропърти Девелопмънт АД по чл.717н ТЗ;

2. Моля Комитета на Кредиторите да предприеме всички необходими и дължими мерки, срещу опитите на Инвестбанк АД да наложи индивидуално изпълнение спрямо вземането от Си Джи Еф –акционерна общност АД.

3. Моля Комитета на Кредиторите да задължи новоназначения Синдик на Еър Пропърти Девелопмънт АД , с изпълнението на следните задължения, във връзка с опазване и съхранение на имуществото в Еър Пропърти Девелопмънта АД:

(А) Да приеме и съхрани, воденото и налично досие по несъстоятелността на Еър Пропърти Девелопмънт АД от Синдик Ганка Кольовска, нуждата от което е посочена в писмо на последния от 29.09.2014 год.

(Б) Да осигури изпълнението на Становището на Комитета на Кредиторите, във връзка с решенията на общото събрание на кредиторите от 30.06.2014 год., по отношение претенциите на Първа Инвестиционна Банка АД.

(В) Да осигури изпълнението на Разпореждането на съда по несъстоятелността от 03.06.2014 год., по отношение спиране изпълнението, предприето от ЧСИ Захари Димитров по изпълнително дело 20118080400251, водено в полза на Инвестбанк АД, спрямо вземането на Еър Пропърти Девелопмънт АД от Си Джи Еф – акционерна общност АД.

Уведомявам Ви, че още на 09.10.2014 год. съм информирала г-н Харис, Президент и Генерален мениджър на Еър Лоджистикс Лимитед Инк за необходимостта от предприемане на действия, според законите на САЩ, за защита на притежаваната инвестиционна собственост в предприятието Еър Пропърти Девелопмънт АД.

Във връзка с регистрираната процедура по банкрут на Еър Лоджистикс Лимитед Инк, Ви информирам, че днес -22.10.2014 год. изготвих официално уведомление до Синдика на Еър Лоджистикс Лимитед Инк, г-н Джеф Мимс относно необходимостта от защита на инвестиционната

собственост, притежавана в предприятието Еър Пропърти Девелопмънт АД.

Приложено представям същото с молба, в случай на некоректно изписване на посочените в него обстоятелства да ме уведомите в срок най-късно до 12.00 часа на 23.10.2014 год, с оглед заявеното чрез куриерска служба FeDex изпращане на уведомлението.

Моля, при упражняване на възложените Ви с чл.681 ТЗ правомощия да направите всичко необходимо за опазване на имуществото на Еър Лоджистикс Лимитед Инк, придобито и притежавано в инвестиционното предприятие Еър Пропърти Девелопмънт АД.

**Приложено представям:**

(А) Писмо реф. № 237-А/ 21.10.2014 год., ведно с приложенията към него.

(Б) Мое уведомление от 22.10.2014 год. до синдика на Еър Лоджистикс Лимитед Инк , г-н Джеф Мимис.

Гр.Варна,
Дата: 22.10.2014 год.

С Уважение:

Адвокат Мария Накова

# EXHIBIT 68

**To:  THE SHUMEN DISTRICT COURT**
Saedinenie Sq., 9700 Shumen, Bulgaria
Telephone:  00359 (0)54 850 317
Fax: 00359 (0) 54 850 309 – Administrative Secretary

---

*Filed by:*

Counsel Maria Nakova, member of the Sofia Bar and having law office address at: 4 Sevast Ognyan St., floor 2, office 6, Botevgrad 2140, acting on behalf of:

**Ayr Logistics Limited Inc.,** a US-based corporation incorporated in 1995 under the laws of Texas, USA, and having seat at 459 Chippendale Drive, Rockwall, Texas 75032, USA, as represented by Philip Robert Harris acting as Executive Director, President and General Manager, acting as the holder of the investment enterprise **Ayr Property Development (declared bankrupt)**, having EIK (Company No.) 200958720, seat and registered office address at 4 Lilya St., block 4, section B, floor 1, ap. 2, Targovishte, represented by Philip Robert Harris,

*Cc:*

**1. The Trustee in Bankruptcy for** Ayr Property Development (declared bankrupt)

**2. The Creditors' Committee of** Ayr Property Development (declared bankrupt)

**3. The Creditors of** Ayr Property Development (declared bankrupt)

---

## NOTICE

*Re:*

Special status of the investment capitals held in bank account No. BG 21 KORP 9220 29012001 with Corporate Commercial Bank AD

**Legal provisions invoked:**

**(A)** Art.I, Para 3 of the Treaty between the Government of the United States of America and the Republic of Bulgaria Concerning the Encouragement and Reciprocal Protection of Investment

**(B) US Chapter 7**

**(C) U.S.C.Section 362**

**Request for protection of the investment capitals and possessions held by Ayr Logistics Limited Inc.,** Trustee in bankruptcy Mr. Jeffrey H. Mims, the United States Bankruptcy Court Northern District of Texas, 1100 Commerce Street, Room 1254, Dallas, Texas 75242-1496, CASE Number 14-34940-bjh7

**DEAR DISTRICT JUDGE,**

**DEAR TRUSTEE IN BANKRUPTCY,**

**DEAR MEMBERS OF THE CREDITORS' COMMITTEE,**

**DEAR CREDITORS,**

This is to kindly advise you of the bankruptcy proceedings for Ayr Logistics Limited Inc. instituted before the United States Bankruptcy Court Northern District of Texas under case No: 14-34940-bjh7.

This statement is to serve as an express notice of the following:

I.  As of present all and any assets in possession of Ayr Logistics Limited Inc., including the funds available in bank account No. BG 21 KORP 9220 29012001 with Corporate Commercial Bank AD, amounting to BGN 102,900,000 as accrued from the liquidation sale of immovable investment property are placed under the special supervision and custody of the United States Federal Court Northern District of Texas, Dallas, USA.

II. Jeffrey H. Mims, having address at Founders Square, Suite 560, 900 Jackson Street Dallas, TX 75202 has been appointed a US Chapter 7 Trustee in bankruptcy for Ayr Logistics Limited, Inc., in case # 14-34940-bjh7 before the United States Federal Court in Texas, Dallas.

III. Acting within the powers of US Chapter 7 Trustee, Jeffrey H. Mims, has filed before the United States Federal Court in Texas a petition for protection of the bankruptcy estate of Ayr Logistic Limited, Inc. in Bankruptcy case # 14-34940-bjh7, which petition for protection operates as a stay, applicable to all entities, of—

(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

**(2)** The enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

**(3)** Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

**(4)** Any act to create, perfect, or enforce any lien against property of the estate;

**(5)** Any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

**(6)** Any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

**(7)** The setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

**(8)** The commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

**IV.** In addition, please be expressly advised that:

**(9)** Any entity that violates the provisions of the automatic stay subjects itself to the jurisdiction of the U.S Bankruptcy Court and is liable for sanctions and damages to the Trustee of Ayr's Estate.

**(10)** The trustee may take such acts, including but not limited to, domestic and international (worldwide) actions to recover any transfers of property or assets in violation of this provision.

**V. This will NOT take the place or replace the letters that will be sent by the Trustee but will be cumulative.**



This Notice shall be sent by fax to the District Court of Shumen, fax: +359 (0) 54 850 309, on 19th November 2014 and shall be concurrently sent by courier to the District Court of Shumen in order to be served on the Trustee for Ayr Property Development AD (declared bankrupt), the Creditors Committee of Ayr Property Development AD (declared bankrupt) and on the Creditors of Ayr Property Development AD.

Giving of this Notice shall be reported immediately to the United States Federal Court in Texas in re: case 14-34940-bjh7 and the US Chapter 7 Trustee for Ayr Logistics Limited, Inc., Jeffrey H. Mims.

Date: 19th November 2014

Respectfully submitted:

Attorney Maria Nakova, Signed /illegible/

The above document was translated from Bulgarian into English by me, Maria Nakova, Attorney at law, and the original version in Bulgarian language is incorporated thereto.

Attorney Maria Nakova:

_____
(signature)

До

**Окръжен съд – гр.Шумен**

Адрес:
9700 гр. Шумен, ул. Съединение № 1
тел. 054/850 317
Факс : 054/ 850 309 – Административен секретар

**Вносител:**

Адвокат Мария Накова, адвокатска колегия – гр.София, с адрес на кантора: гр.Ботевград 2140, улица "Севаст Огнян" № 4, ет.2, офис 6

**За:**

**Еър Лоджистикс Лимитед Инк**, учредено през 1995 г., съгласно законите на щата Тексас, САЩ, със седалище: 459 Чипъндейл Драйв, Рокуол Тексас 75032, САЩ, представлявано от Филип Робърт Харис – Президент и Генерален мениджър, в качеството си на притежател на инвестиционното предприятие -
**Еър Пропърти Девелопмънт АД /н/**, ЕИК 200958720, със седалище в гр. Търговище и адрес на управление ул. «Лилия», бл. 4, тяло Б, ет. 1, ап. 2, представлявано от изпълнителния директор Филип Робърт Харис,

С препис за :

**1. Синдик на Еър Пропърти Девелопмънт АД /н/**

**2. Комитет на кредиторите на Еър Пропърти Девелопмънт АД /н/**

**3. Кредиторите на Еър Пропърти Девелопмънт АД /н/**

**НОТИС**

Специален статут на инвестиционните капитали по сметка № BG 21 KORP 9220 29012001 в Корпоративна Търговска Банка АД

**Регулации:**

(А) Чл.I, параграф 3 Договор за насърчаване и взаимна защита на инвестициите, сключен между САЩ и България)

(Б) Глава 7 на Кодекса на САЩ (**US Chapter 7**)

(В) Кодексът на САЩ, член 362 (**U.S.C.Section 362**)

Искане за защита инвестиционни капитали и притежания на Еър

Лоджистикс **Лимитед Инк, Синдик** г-н Jeffrey H. Mims, федерален съд на САЩ, щат Тексас, Далас, **Дело Номер 14-34940-bjh7 (**THE UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT of Texas, 1100 Commerce Street, Room 1254, Dallas, Texas 75242-1496 , CASE Number 14-34940-bjh7)

**ПОЧИТАЕМИ ОКРЪЖЕН СЪДИЯ,**

**ПОЧИТАЕМИ СИНДИК,**

**ПОЧИТАЕМИ ЧЛЕНОВЕ НА КОМИТЕТА НА КРЕДИТОРИТЕ,**

**ПОЧИТАЕМИ КРЕДИТОРИ,**

Представям на   Вашето внимание настоящото уведомление за водената пред федералния съд на САЩ в щат Тексас, Далас, **дело номер 14-34940-bjh7,** процедура по банкрут на Еър Лоджистикс Лимитед Инк ( THE UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT of Texas CASE Number 14-34940-bjh7)

Настоящото изрично изявление,представлява връчване на уведомление за:

I.Понастоящем всяка собственост на Еър Лоджистикс Лимитед Инк, включително и средствата по сметка № BG 21 KORP 9220 29012001 в Корпоративна Търговска Банка АД, възлизащи на 102 900 000 лева , представляващи ликвидационна трансформация на инвестиционна недвижима собственост, са поставени под особения надзор и попечителство на федералния съд на САЩ в щат Тексас, Далас.

II. За Синдик на Еър Лоджистикс Лимитед Инк, федералния съд на САЩ в щат Тексас, Далас , по  дело номер 14-34940-bjh7 е назначен Синдик в лицето на г-н Jeffrey H. Mims, с адрес: Founders Square, Suite 560, 900 Jackson Street Dallas, TX 75202.

III. Съответно с провомощията си на Синдик на Еър Лоджистикс Лимитед Инк, г-н Jeffrey H. Mims, постановява искане по Глава 7 на Кодекса на САЩ (US Chapter 7) , пред федералния съд на САЩ в щат Тексас, Далас, по   дело номер 14-34940-bjh7, за защита в несъстоятелността, приложимо за всички лица , с назабавно действие и последици на:

(1) започването или продължаването, включително издаването или употребата на процедури, на съдебни, административни или други актове или процедури срещу длъжника, които са били или биха могли да са започнали преди започването на делото по тази глава, или за продължаване на иск срещу длъжника, предявен преди започването на делото по тази глава;

(2) изпълнението срещу длъжника или срещу имущество от активите му, на съдебно решение, постановено преди започването на процедура по тази глава;

(3) всяко действие за придобиване на владение върху собственост, принадлежаща на или от масата на несъстоятелността или упражняването на контрол върху вещи от масата на несъстоятелността;

(4) всяко действие на учредяване, завършване на вече започнало учредяване или изпълнение на заложно право върху вещ от имуществото;

(5) всяко действие на учредяване, завършване на вече започнало учредяване или изпълнение срещу вещи на длъжника на всякакъв залог когато този залог обезпечава претенция, възникнала преди започването на процедурата по тази глава;

(6) всяко действие на събиране, определяне на данък или възобновяване на иск срещу длъжника, възникнал преди започването на процедурите по тази глава;

(7) прихващане на всеки дълг към длъжника, възникнал преди започването на процедурите по тази глава срещу всякакви претенции срещу длъжника, и

(8) започването или продължаването на процедури пред Данъчния съд на САЩ касаещи данъчни задължения на длъжника, който е корпорация, за данъчен период, който съдът по несъстоятелността може да определи, или относно данъчни задължения на длъжника, който е физическо лице, за данъчен период, приключил преди датата на заповедта за освобождаване от задължения по тази глава.

IV. В допълнение, с настоящото правя изричното уведомление и относно:

(9) Всяко лице, което нарушава разпоредбите на автоматичното спиране се поставя в юрисдикцията на щатския съд по несъстоятелността и носи отговорност по предвидения от това ред за вреди към синдика на имуществото на Еър Лоджистикс Лимитед Инк;

(10) Синдикът на Еър Лоджистикс Лимитед Инк е снабден с правомощията да предприема такива действия, включително, но не само вътрешно - или международноправни действия за възстановяване на всякакво прехвърляне на вещи или активи, които са в нарушение на щатските разпоредби;

**V. Настоящото уведомление не е вместо или не замества писмата, които ще бъдат изпратени от Синдика.**

Този нотис се излъчи чрез факс до Окръжния съд на гр.Шумен, на факс номер 054/ 850 309 , на дата 19.11.2014 год., и едновременно с това се изпраща с куриер за връчване чрез Окръжния съд на гр.Шумен, на Синдика на Еър Пропърти Девелопмънт АД /н/, на Комитета на кредиторите на Еър Пропърти Девелопмънт АД /н/, на кредиторите на Еър Пропърти Девелопмънт АД /н/.

**Този нотис ще бъде докладван едновременно с неговото излъчване пред федералния съд на САЩ в щат Тексас, Далас, по дело номер 14-34940-bjh7, и пред Синдика на Еър Лоджистикс Лимитед Инк, г-н Jeffrey H. Mims.**

Дата:

19.11.2014 год.

С Почит :

Адвокат Мария Накова

# EXHIBIT 69



**Фрея Freya**
**Транслейшънс Translations**

**Преводи от и на чужди езици**
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

**CORPORATE COMMERCIAL BANK**

13/11/2014 11:52:36  (Accounting date 06/11/2014)

| | | |
|---|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | |
| Account: | Short-term deposits in BGN of business entities | |
| Analytic No.: | 1613 290120 01 8 | |
| IBAN: | BG21 KORP 9220 2029 0120 01 | |
| Currency: | BGN | |
| Balance at the beginning of the period: | 0.00 | **BANK ACCOUNT STATEMENT** |

**Parameters:**

| | |
|---|---|
| Period: from – to: | 14th January 2013 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | All |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 14/01/2013 | 14/01/2013 | 229751 | Received transfer via RINGS BG59 UNCR 7000 1520 1153 99 Ordered by ExR PROPxRTI DEVELOPMxNT AD Pursuant to court order 8th January 2013 of the Targovishte District Court (TDC) payment under Deposit Agreement | Credit | 97,500,000.00 | 97,500,000.00 | Posted |
| 14/02/2013 | 14/02/2013 | 944469 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/02/2013 | 14/02/2013 | 944470 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/03/2013 | 14/03/2013 | 368421 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/03/2013 | 14/03/2013 | 368422 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 15/04/2013 | 14/04/2013 | 512044 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 15/04/2013 | 14/04/2013 | 512045 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/05/2013 | 14/05/2013 | 666844 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/05/2013 | 14/05/2013 | 666845 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/06/2013 | 14/06/2013 | 366994 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/06/2013 | 14/06/2013 | 366995 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 15/07/2013 | 14/07/2013 | 660689 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 15/07/2013 | 14/07/2013 | 660690 | Deposit Maturity Date Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/08/2013 | 14/08/2013 | 444566 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |





| | | | | Debit | 475,312.50 | 97,500,000.00 | Posted |
|---|---|---|---|---|---|---|---|
| 14/08/2013 | 14/08/2013 | 444567 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 16/09/2013 | 14/09/2013 | 218933 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 16/09/2013 | 14/09/2013 | 218934 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/10/2013 | 14/10/2013 | 546256 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/10/2013 | 14/10/2013 | 546257 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/11/2013 | 14/11/2013 | 954039 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/11/2013 | 14/11/2013 | 954040 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/12/2013 | 14/12/2013 | 223747 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/12/2013 | 14/12/2013 | 223748 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/01/2014 | 14/01/2014 | 118201 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/01/2014 | 14/01/2014 | 118202 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/02/2014 | 14/02/2014 | 622586 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |

VCSBank

Page 1 of 2

| | | | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 01 8 |
| IBAN: | BG21 KORP 9220 2029 0120 01 |
| Currency: | BGN |
| Balance at the beginning of the period: | 97,975,312.50 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 14/02/2014 | 14/02/2014 | 622587 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/03/2014 | 14/03/2014 | 23382 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/03/2014 | 14/03/2014 | 23383 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/04/2014 | 14/04/2014 | 215498 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 14/04/2014 | 14/04/2014 | 215499 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |





| 14/05/2014 | 14/05/2014 | 276070 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
|---|---|---|---|---|---|---|---|
| 14/05/2014 | 14/05/2014 | 276071 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 16/06/2014 | 14/06/2014 | 339003 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 97,975,312.50 | Posted |
| 16/06/2014 | 14/06/2014 | 339004 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 475,312.50 | 97,500,000.00 | Posted |
| 14/07/2014 | 14/07/2014 | 381189 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 333,422.92 | 97,833,422.92 | Posted |
| 14/07/2014 | 14/07/2014 | 381190 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 333,422.92 | 97,500,000.00 | Posted |
| 14/08/2014 | 14/08/2014 | 806645 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 147,875.00 | 97,647,875.00 | Posted |
| 14/08/2014 | 14/08/2014 | 806646 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 147,875.00 | 97,500,000.00 | Posted |
| 15/09/2014 | 14/09/2014 | 898139 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 147,875.00 | 97,647,875.00 | Posted |
| 15/09/2014 | 14/09/2014 | 898140 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 147,875.00 | 97,500,000.00 | Posted |
| 14/10/2014 | 14/10/2014 | 466517 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 147,875.00 | 97,647,875.00 | Posted |
| 14/10/2014 | 14/10/2014 | 466518 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date<br>Transaction No.29428 | Debit | 147,875.00 | 97,500,000.00 | Posted |

**VCSBank**                                                                                                    Page 2 of 2





## CORPORATE COMMERCIAL BANK

13/11/2014 11:54:32  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 02 5 |
| IBAN: | BG91 KORP 9220 2029 0120 02 |
| Currency: | BGN |
| Balance at the beginning of the period: | 0.00 |

**BANK ACCOUNT**

**STATEMENT**

**Parameters:**

| | |
|---|---|
| Period: from – to: | 17th January 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | All |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 17/01/2014 | 17/01/2014 | 111825 | Payment Transaction BG74 KORP 9220 1029 0120 51 Ordered by AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) Details: Crediting a Deposit | Credit | 2,000,000.00 | 2,000,000.00 | Posted |
| 17/02/2014 | 17/02/2014 | 947785 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,750.00 | 2,009,750.00 | Posted |
| 17/03/2014 | 17/03/2014 | 367519 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,797.53 | 2,019,547.53 | Posted |
| 17/04/2014 | 17/04/2014 | 335575 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,845.29 | 2,029,392.82 | Posted |
| 19/05/2014 | 17/05/2014 | 335763 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,893.29 | 2,039,286.11 | Posted |
| 17/06/2014 | 17/06/2014 | 724155 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 9,941.52 | 2,049,227.63 | Posted |
| 17/07/2014 | 17/07/2014 | 218080 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 6,319.59 | 2,055,547.22 | Posted |
| 18/08/2014 | 17/08/2014 | 373095 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 3,117.58 | 2,058,664.80 | Posted |
| 17/09/2014 | 17/09/2014 | 464309 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 3,122.31 | 2,061,787.11 | Posted |
| 17/10/2014 | 17/10/2014 | 316437 | Deposit Maturity Date Interest accrued on Deposit Transaction No.39033 | Credit | 3,127.04 | 2,064,914.15 | Posted |
| 20/10/2014 | 20/10/2014 | 599568 | Termination of deposit Interest accrued on Deposit transaction No. 39033. Interest accrued BGN 17.21 Voided Bank Order pursuant to Memo B-5774/18th September 2014 explaining the lack of a signed deposit contract | Credit | 17.21 | 2,064,914.15 | Voided |
| 20/10/2014 | 17/10/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit | Credit | -3,127.04 | 2,061,787.11 | Posted |



| | | | contract | | | | |
|---|---|---|---|---|---|---|---|
| 20/10/2014 | 17/09/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -3,122.31 | 2,058,664.80 | Posted |
| 20/10/2014 | 17/08/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -3,117.58 | 2,055,547.22 | Posted |

VCSBank                                                                                            Page 1 of 2

---

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 02 5 |
| IBAN: | BG91 KORP 9220 2029 0120 02 |
| Currency: | BGN |
| Balance at the beginning of the period: | 2,055,547.22 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 20/10/2014 | 17/07/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -6,319.59 | 2,049,227.63 | Posted |
| 20/10/2014 | 17/06/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -9,941.52 | 2,039,286.11 | Posted |
| 20/10/2014 | 17/05/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -9,893.29 | 2,029,392.82 | Posted |
| 20/10/2014 | 17/04/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; | Credit | -9,845.29 | 2,019,547.53 | Posted |



| | | | | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| | | | 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | | | | |
| 20/10/2014 | 17/03/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -9,797.53 | 2,009,750.00 | Posted |
| 20/10/2014 | 17/02/2014 | 599573 | Multi-line Payment Order Reversal of BB316437/17th Oct.2014; 464309/17th Sept. 2014; 373095/18th August 2014; 218080/17th July 2014; 724155/17th June 2014; 335763/19th May 2014; 335575/17th April 2014; 367519/17th March 2014 and 947785/17th Feb.2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -9,750.00 | 2,000,000.00 | Posted |

VCSBank                                                                                              Page 2 of 2

---

## CORPORATE COMMERCIAL BANK

13/11/2014 11:56:34  (Accounting date 06/11/2014)

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Short-term deposits in BGN of business entities |
| Analytic No.: | 1613 290120 03 2 |
| IBAN: | BG64 KORP 9220 2029 0120 03 |
| Currency: | BGN |
| Balance at the beginning of the period: | 0.00 |

**BANK ACCOUNT**

**STATEMENT**

**Parameters:**

| | |
|---|---|
| Period: from – to: | 10th April 2014 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | All |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 10/04/2014 | 10/04/2014 | 546852 | Payment Transaction BG74 KORP 9220 1029 0120 51 Ordered by AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) Details: Crediting a Deposit | Credit | 1,000,000.00 | 1,000,000.00 | Posted |
| 10/05/2014 | 10/05/2014 | 252244 | Deposit Maturity Date Interest accrued on Deposit Transaction No.40116 | Credit | 4,875.00 | 1,004,875.00 | Posted |
| 10/06/2014 | 10/06/2014 | 976981 | Deposit Maturity Date Interest accrued on Deposit Transaction No.40116 | Credit | 4,898.77 | 1,009,773.77 | Posted |
| 10/07/2014 | 10/07/2014 | 827520 | Deposit Maturity Date Interest accrued on Deposit Transaction No.40116 | Credit | 3,905.30 | 1,013,679.07 | Posted |
| 11/08/2014 | 10/08/2014 | 958769 | Deposit Maturity Date | Credit | 1,537.41 | 1,015,216.48 | Posted |




| | | | Interest accrued on Deposit Transaction No.40116 | | | | |
|---|---|---|---|---|---|---|---|
| 10/09/2014 | 10/09/2014 | 50458 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.40116 | Credit | 1,539.74 | 1,016,756.22 | Posted |
| 10/10/2014 | 10/10/2014 | 901274 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.40116 | Credit | 1,542.08 | 1,018,298.30 | Posted |
| 20/10/2014 | 20/10/2014 | 599481 | Termination of deposit<br>Interest accrued on Deposit transaction No. 40116. Interest accrued BGN 28.29 Voided Bank Order pursuant to Memo B-5774/18th September 2014 explaining the lack of a signed deposit contract | Credit | 28.29 | 1,018,298.30 | Posted |
| 20/10/2014 | 10/10/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -1,542.08 | 1,016,756.22 | Posted |
| 20/10/2014 | 10/09/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -1,539.74 | 1,015,216.48 | Posted |
| 20/10/2014 | 10/08/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -1,537.41 | 1,013,679.07 | Posted |
| 20/10/2014 | 10/07/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -3,905.30 | 1,009,773.77 | Posted |
| 20/10/2014 | 10/06/2014 | 599547 | Multi-line Payment Order<br>Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014<br>pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -4,898.77 | 1,004,875.00 | Posted |

VCSBank





| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | | | | | | |
| Account: | Short-term deposits in BGN of business entities | | | | | | |
| Analytic No.: | 1613 290120 03 2 | | | | | | |
| IBAN: | BG64 KORP 9220 2029 0120 03 | | | | | | |
| Currency: | BGN | | | | | | |
| Balance at the beginning of the period: | 1,004,875.00 | | | | | | |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 20/10/2014 | 10/05/2014 | 599547 | Multi-line Payment Order Reversal of BB901274/10th Oct.2014; 50458/10th Sept. 2014; 958769/11th August 2014; 827520/10th July 2014; 976981/10th June 2014 and 252244/10th May 2014 pursuant to Memo B-5774/18th Sept. 2014, interest not due absent a signed deposit contract | Credit | -4,875.00 | 1,000,000.00 | Posted |

VCSBank                                                                                     Page 2 of 2





CORPORATE COMMERCIAL BANK

13/11/2014 11:53:54  (Accounting date 06/11/2014)

| | | |
|---|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | |
| Account: | Special deposits in BGN of business entities | |
| Analytic No.: | 1731 290120 01 7 | |
| IBAN: | BG74 KORP 9220 1029 0120 51 | |
| Currency: | BGN | |
| Balance at the beginning of the period: | 0.00 | **BANK ACCOUNT STATEMENT** |

| Parameters: | |
|---|---|
| Period: from – to: | 12th February 2013 – 6th November 2014 |
| Amount: from – to: | No limitation |
| Type of operations: | All types |
| Type of Statement: | Detailed Statement |
| Status: | All |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 12/02/2013 | 12/02/2013 | 445382 | Payment Transaction BG66 KORP 9220 1029 0120 01 Ordered by AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY) Details: Closing of account and transfering of remaining balance | Credit | 1.04 | 1.04 | Posted |
| 12/02/2013 | 12/02/2013 | 446038 | Foreign Currency Transaction Details: PURCHASE of foreign currency PURCHASED: USD 1.69 SOLD: BGN 2.43 Rate of Exchange: USD 1/BGN 1.439200 Client: AYR PROPERTY DEVELOPMENT AD HAVING EIK: 200958720 | Credit | 2.43 | 3.47 | Posted |
| 12/02/2013 | 12/02/2013 | 446219 | Foreign Currency Transaction Details: PURCHASE of foreign currency PURCHASED: EUR 1.37 SOLD: BGN 2.67 Rate of Exchange: EUR 1/BGN 1.950000 Client: AYR PROPERTY DEVELOPMENT AD HAVING EIK: 200958720 | Credit | 2.67 | 6.14 | Posted |
| 14/02/2013 | 14/02/2013 | 944470 | Deposit Maturity Date Interest accrued on deposit's maturity date | Credit | 475,312.50 | 475,318.64 | Posted |
| 15/02/2013 | 15/02/2013 | 228935 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of National Revenue Agency (NRA) - Targovishte office Details: Income Tax on Supplementary Remuneration of Trustee Taxable entity AYR PROPERTY DEVELOPMENT AD (in bankruptcy) Type of doc. 09 No. Period- HAVING EIK: 200958720 | Debit | 40,000.00 | 435,318.64 | Posted |
| 15/02/2013 | 15/02/2013 | 228935 | Payment Transaction to State Budget Bank Commission Fee | Debit | 1.30 | 435,317.34 | Posted |
| 15/02/2013 | 15/02/2013 | 219874 | Payment Transaction BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Partial Payment pursuant to order 34/12th Feb.2013 in Case 14/2011 in the docket of TDC | Debit | 360,000.00 | 75,317.34 | Posted |
| 15/02/2013 | 15/02/2013 | 229030 | Foreign Currency Transfer – internal Foreign Currency Transfer Ref.26/01/00003495 Amount EUR 30,957.85 Value Date 15th February 2013 Ordered by AYR PROPERTY DEVELOPMENT AD (in bankruptcy) Rate of Exchange 1.957500 Beneficiary: Zahari Jeliazkov Tomov – attorney at law Details: Reimbursement of expenses | Debit | 60,599.99 | 14,717.35 | Posted |

| 25/02/2013 | 25/02/2013 | 64957 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 14,709.85 | Posted |
| 14/03/2013 | 14/03/2013 | 368422 | Deposit Maturity Date Interest accrued on deposit's maturity date | Credit | 475,312.50 | 490,022.35 | Posted |

VCSBank                                                 Page 1 of 13

|  |  |
|---|---|
| **Holder:** | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 490,022.35 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 18/03/2013 | 18/03/2013 | 5294 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee Varna TD of NRA - Targovishte office Details: Income Tax on Supplementary Remuneration of Trustee Taxable entity AYR PROPERTY DEVELOPMENT AD (in bankruptcy) Type of doc. 09 No. Period- HAVING EIK: 200958720 | Debit | 45,000.00 | 445,022.35 | Posted |
| 18/03/2013 | 18/03/2013 | 5294 | Payment Transaction to State Budget Bank Commission Fee | Debit | 1.30 | 445,021.05 | Posted |
| 18/03/2013 | 18/03/2013 | 5518 | Payment Transaction BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Partial Payment pursuant to order 34/12th Feb.2013 in Case 14/2011 in the docket of TDC | Debit | 405,000.00 | 40,021.05 | Posted |
| 25/03/2013 | 25/03/2013 | 672215 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 40,013.55 | Posted |
| 15/04/2013 | 14/04/2013 | 512045 | Deposit Maturity Date Interest accrued on deposit's maturity date | Credit | 475,312.50 | 515,326.05 | Posted |
| 17/04/2013 | 17/04/2013 | 162317 | Payment Transaction BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Partial Payment pursuant to order 34/12th Feb.2013 in Case 14/2011 in the docket of TDC | Debit | 450,000.00 | 65,326.05 | Posted |
| 17/04/2013 | 17/04/2013 | 162373 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Income Tax on Supplementary Remuneration of Trustee Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 50,000.00 | 15,326.05 | Posted |
| 17/04/2013 | 17/04/2013 | 162373 | Payment Transaction to State Budget Bank Commission Fee | Debit | 1.30 | 15,324.75 | Posted |




| 23/04/2013 | 23/04/2013 | 385542 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for April 2013 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 15,174.75 | Posted |
|---|---|---|---|---|---|---|---|
| 23/04/2013 | 23/04/2013 | 385542 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 15,173.85 | Posted |
| 23/04/2013 | 23/04/2013 | 385607 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for April 2013 | Debit | 1,350.00 | 13,823.85 | Posted |
| 25/04/2013 | 25/04/2013 | 170513 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 13,816.35 | Posted |
| 08/05/2013 | 08/05/2013 | 516294 | Direct Transfer BG82 FINV 9150 10BG NOA3 5J Payee: VIA AND CO EOOD Details: Inv.373/8th May 2013 – accounting and administrative services | Debit | 1,230.00 | 12,586.35 | Posted |
| 08/05/2013 | 08/05/2013 | 516294 | Direct Transfer Bank Commission Fee | Debit | 0.90 | 12,585.45 | Posted |
| 14/05/2013 | 14/05/2013 | 666845 | Deposit Maturity Date Interest accrued on deposit's maturity date | Credit | 475,312.50 | 487,897.95 | Posted |

| | Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|---|
| | Account: | Special deposits in BGN of business entities |
| | Analytic No.: | 1731 290120 01 7 |
| | IBAN: | BG74 KORP 9220 1029 0120 51 |
| | Currency: | BGN |
| Balance at the beginning of the period: | | 487,897.95 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 21/05/2013 | 21/05/2013 | 501377 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for May 2013 Taxable entity AYR PROPERTY DEVELOPMENT AD (in bankruptcy) Type of doc. 09 No. Period- HAVING EIK: 200958720 | Debit | 150.00 | 487,747.95 | Posted |
| 21/05/2013 | 21/05/2013 | 501377 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 487,747.05 | Posted |
| 21/05/2013 | 21/05/2013 | 501548 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for May | Debit | 1,350.00 | 486,397.05 | Posted |

| | | | 2013 | | | | |
|---|---|---|---|---|---|---|---|
| 21/05/2013 | 21/05/2013 | 501572 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for May 2013<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 45,000.00 | 441,397.05 | Posted |
| 21/05/2013 | 21/05/2013 | 501572 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 441,396.15 | Posted |
| 21/05/2013 | 21/05/2013 | 501712 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Partial Payment pursuant to order 34/12th February 2013 of TDC | Debit | 405,000.00 | 36,396.15 | Posted |
| 27/05/2013 | 27/05/2013 | 703165 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 36,388.65 | Posted |
| 03/06/2013 | 03/06/2013 | 866745 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.390/3rd June 2013 – accounting and administrative services | Debit | 1,230.00 | 35,158.65 | Posted |
| 03/06/2013 | 03/06/2013 | 866745 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 35,157.75 | Posted |
| 14/06/2013 | 14/06/2013 | 366995 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 510,470.25 | Posted |
| 19/06/2013 | 19/06/2013 | 303016 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for June 2013<br>Taxable entity Ayr Property Development AD (in bankruptcy) having EIK: 200958720<br>Type of doc. 09 No.<br>Period- | Debit | 50,150.00 | 460,320.25 | Posted |
| 19/06/2013 | 19/06/2013 | 303016 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 460,319.35 | Posted |
| 19/06/2013 | 19/06/2013 | 303037 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for June 2013 | Debit | 451,350.00 | 8,969.35 | Posted |
| 20/06/2013 | 20/06/2013 | 606922 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 111111 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: Annual Financial Statement declared<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 25.00 | 8,944.35 | Posted |
| 20/06/2013 | 20/06/2013 | 606922 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 8,943.45 | Posted |

| | | | Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | | | | |
| | | | Account: | Special deposits in BGN of business entities | | | | |
| | | | Analytic No.: | 1731 290120 01 7 | | | | |
| | | | IBAN: | BG74 KORP 9220 1029 0120 51 | | | | |
| | | | Currency: | BGN | | | | |
| | | Balance at the beginning of the period: | 8,943.45 | | | | | |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 25/06/2013 | 25/06/2013 | 710315 | Interest accrued | Credit | 35.19 | 8,978.64 | Posted |
| 25/06/2013 | 25/06/2013 | 721377 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 8,971.14 | Posted |
| 05/07/2013 | 05/07/2013 | 807534 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.409/4th July 2013 – accounting and administrative services | Debit | 1,230.00 | 7,741.14 | Posted |
| 05/07/2013 | 05/07/2013 | 807534 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 7,740.24 | Posted |
| 15/07/2013 | 15/07/2013 | 660690 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 483,052.74 | Posted |
| 17/07/2013 | 17/07/2013 | 341766 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for July 2013<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 44,500.00 | 438,552.74 | Posted |
| 17/07/2013 | 17/07/2013 | 341766 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 1.30 | 438,551.44 | Posted |
| 17/07/2013 | 17/07/2013 | 343367 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for July 2013 | Debit | 400,500.00 | 38,051.44 | Posted |
| 18/07/2013 | 18/07/2013 | 655720 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for July 2013<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 37,901.44 | Posted |
| 18/07/2013 | 18/07/2013 | 655720 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 37,900.54 | Posted |
| 18/07/2013 | 18/07/2013 | 655724 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for July 2013 | Debit | 1,350.00 | 36,550.54 | Posted |
| 25/07/2013 | 25/07/2013 | 473848 | Interest accrued | Credit | 5.28 | 36,555.82 | Posted |
| 25/07/2013 | 25/07/2013 | 484758 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 36,548.32 | Posted |
| 01/08/2013 | 01/08/2013 | 788858 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.424/1st August 2013 –<br>accounting and administrative services | Debit | 1,230.00 | 35,318.32 | Posted |

| 01/08/2013 | 01/08/2013 | 788858 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 35,317.42 | Posted |
|---|---|---|---|---|---|---|---|
| 09/08/2013 | 09/08/2013 | 536960 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 25.00 | 35,292.42 | Posted |
| 09/08/2013 | 09/08/2013 | 536960 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 35,291.52 | Posted |
| 14/08/2013 | 14/08/2013 | 444567 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 510,604.02 | Posted |
| 26/08/2013 | 26/08/2013 | 245257 | Interest accrued | Credit | 18.90 | 510,622.92 | Posted |

**VCSBank**                                                                                   Page 4 of 13

---

| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 510,622.92 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 26/08/2013 | 26/08/2013 | 255881 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 510,615.42 | Posted |
| 28/08/2013 | 28/08/2013 | 684892 | Direct Transfer<br>BG89 KORP 9220 1050 5063 02<br>Payee: Maria Gavrilova Nakova<br>Details: partial payment of attorney's fee in<br>Case 14/2011 kept in the docket of TDC | Debit | 20,000.00 | 490,615.42 | Posted |
| 03/09/2013 | 03/09/2013 | 803636 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.440/2nd September 2013 –<br>accounting and administrative services | Debit | 1,230.00 | 489,385.42 | Posted |
| 03/09/2013 | 03/09/2013 | 803636 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 489,384.52 | Posted |
| 04/09/2013 | 04/09/2013 | 81250 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for August 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 489,234.52 | Posted |
| 04/09/2013 | 04/09/2013 | 81250 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 489,233.62 | Posted |
| 04/09/2013 | 04/09/2013 | 81260 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for August 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No. | Debit | 45,000.00 | 444,233.62 | Posted |

| | | | Period-<br>having EIK: 200958720 | | | | |
|---|---|---|---|---|---|---|---|
| 04/09/2013 | 04/09/2013 | 81260 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 444,232.72 | Posted |
| 04/09/2013 | 04/09/2013 | 81268 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for August<br>2013 | Debit | 1,350.00 | 442,882.72 | Posted |
| 04/09/2013 | 04/09/2013 | 81518 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for August<br>2013 | Debit | 405,000.00 | 37,882.72 | Posted |
| 16/09/2013 | 14/09/2013 | 218934 | Deposit Maturity Date<br>Interest accrued on deposit's maturity date | Credit | 475,312.50 | 513,195.22 | Posted |
| 25/09/2013 | 25/09/2013 | 725488 | Interest accrued | Credit | 27.74 | 513,222.96 | Posted |
| 25/09/2013 | 25/09/2013 | 737504 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 513,215.46 | Posted |
| 01/10/2013 | 01/10/2013 | 785446 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.453/1st October 2013 –<br>accounting and administrative services | Debit | 1,230.00 | 511,985.46 | Posted |
| 01/10/2013 | 01/10/2013 | 785446 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 511,984.56 | Posted |
| 09/10/2013 | 09/10/2013 | 611568 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for Sept. 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 511,834.56 | Posted |
| 09/10/2013 | 09/10/2013 | 611568 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 511,833.66 | Posted |

| | Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|---|
| | Account: | Special deposits in BGN of business entities |
| | Analytic No.: | 1731 290120 01 7 |
| | IBAN: | BG74 KORP 9220 1029 0120 51 |
| | Currency: | BGN |
| Balance at the beginning of the | | |
| | period: | 511,833.66 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank<br>order No. | Details of payment | Debit/<br>Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 09/10/2013 | 09/10/2013 | 611574 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte<br>office<br>Details: Trustee Income Tax for Sept. 2013<br>Taxable entity Ayr Property Development<br>AD (in bankruptcy)<br>Type of doc. 09 No.          Period-<br>having EIK: 200958720 | Debit | 5,400.00 | 506,433.66 | Posted |
| 09/10/2013 | 09/10/2013 | 611574 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 506,432.76 | Posted |

| 09/10/2013 | 09/10/2013 | 611583 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for Sept. 2013 | Debit | 1,350.00 | 505,082.76 | Posted |
|---|---|---|---|---|---|---|---|
| 09/10/2013 | 09/10/2013 | 611615 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for Sept. 2013 | Debit | 48,600.00 | 456,482.76 | Posted |
| 14/10/2013 | 14/10/2013 | 546257 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction<br>No.29428 | Credit | 475,312.50 | 931,795.26 | Posted |
| 14/10/2013 | 14/10/2013 | 581054 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development AD<br>(in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 25.00 | 931,770.26 | Posted |
| 14/10/2013 | 14/10/2013 | 581054 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 931,769.36 | Posted |
| 22/10/2013 | 22/10/2013 | 618379 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under art.71, para 2 of the<br>Civil Procedure Code<br>in case 133/2013 in the docket of TDC<br>Taxable entity Ayr Property Development AD<br>(in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 1,166.00 | 930,603.36 | Posted |
| 22/10/2013 | 22/10/2013 | 618379 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 930,602.46 | Posted |
| 22/10/2013 | 22/10/2013 | 618395 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under art.124, para 4 of the<br>Civil Procedure Code<br>in case 133/2013 in the docket of TDC<br>Taxable entity Ayr Property Development AD<br>(in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 80.00 | 930,522.46 | Posted |
| 22/10/2013 | 22/10/2013 | 618395 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 930,521.56 | Posted |
| 25/10/2013 | 25/10/2013 | 689410 | Payment Transaction to State Budget<br>BG75 UBBS 8002 3106 0361 02<br>Code payee 000000 Code payer 000000<br>Payee: TARGOVISHTE DISTRICT COURT<br>Details: State Fees under art.124, para 4 of the<br>Civil Procedure Code, art.69, para 1<br>in case 135/2013 in the docket of TDC<br>Taxable entity Ayr Property Development AD<br>(in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 1,165.55 | 929,356.01 | Posted |
| 25/10/2013 | 25/10/2013 | 689410 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 929,355.11 | Posted |



|  | Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|---|
|  | Account: | Special deposits in BGN of business entities |
|  | Analytic No.: | 1731 290120 01 7 |
|  | IBAN: | BG74 KORP 9220 1029 0120 51 |
|  | Currency: | BGN |

| Balance at the beginning of the period: | 929,355.11 | | | **BANK ACCOUNT STATEMENT** | | |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 25/10/2013 | 25/10/2013 | 689425 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under art.124, para 4 of the Civil Procedure Code in case 135/2013 in the docket of TDC Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 80.00 | 929,275.11 | Posted |
| 25/10/2013 | 25/10/2013 | 689425 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 929,274.21 | Posted |
| 25/10/2013 | 25/10/2013 | 689445 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under art.124, para 4 of the Civil Procedure Code, art.69, para 1 in case 134/2013 in the docket of TDC Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 1,165.55 | 928,108.66 | Posted |
| 25/10/2013 | 25/10/2013 | 689445 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 928,107.76 | Posted |
| 25/10/2013 | 25/10/2013 | 689453 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under art.124, para 4 of the Civil Procedure Code in case 134/2013 in the docket of TDC Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 80.00 | 928,027.76 | Posted |
| 25/10/2013 | 25/10/2013 | 689453 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 928,026.86 | Posted |
| 25/10/2013 | 25/10/2013 | 794268 | Interest accrued | Credit | 54.73 | 928,081.59 | Posted |
| 25/10/2013 | 25/10/2013 | 805222 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 928,074.09 | Posted |
| 28/10/2013 | 28/10/2013 | 993404 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for Oct. 2013 | Debit | 1,350.00 | 926,724.09 | Posted |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 28/10/2013 | 28/10/2013 | 993425 | Payment Transaction to State Budget<br>BG55 RZBB 9155 8120 0172 01<br>Code payee 111111 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for Oct. 2013<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 926,574.09 | Posted |
| 28/10/2013 | 28/10/2013 | 993425 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 926,573.19 | Posted |
| 06/11/2013 | 06/11/2013 | 45649 | Direct Transfer<br>BG82 FINV 9150 10BG NOA3 5J<br>Payee: VIA AND CO EOOD<br>Details: Inv.465/6th November 2013 –<br>accounting and administrative services | Debit | 1,230.00 | 925,343.19 | Posted |
| 06/11/2013 | 06/11/2013 | 45649 | Direct Transfer<br>Bank Commission Fee | Debit | 0.90 | 925,342.29 | Posted |
| 14/11/2013 | 14/11/2013 | 954040 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,400,654.79 | Posted |

---

**VCSBank**                                                                 **Page 7 of 13**

|  |  |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 1,400,654.79 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 18/11/2013 | 18/11/2013 | 623165 | Payment Transaction to State Budget<br>BG81 TTBB 9400 3115 0686 65<br>Code payee 000000 Code payer 000000<br>Payee: COURT OF APPEAL - VARNA<br>Details: State Fees due for private complaint filed under case 133/2013 in the docket of TDC<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 15.00 | 1,400,639.79 | Posted |
| 18/11/2013 | 18/11/2013 | 623165 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,400,638.89 | Posted |
| 18/11/2013 | 18/11/2013 | 623169 | Payment Transaction to State Budget<br>BG81 TTBB 9400 3115 0686 65<br>Code payee 000000 Code payer 000000<br>Payee: COURT OF APPEAL - VARNA<br>Details: State Fees due for private complaint filed under case 134/2013 in the docket of TDC<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 15.00 | 1,400,623.89 | Posted |
| 18/11/2013 | 18/11/2013 | 623169 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,400,622.99 | Posted |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 18/11/2013 | 18/11/2013 | 639054 | Payment Transaction to State Budget BG36 CREX 9260 3114 5494 01 Code payee 000000 Code payer 000000 Payee: REGISTRY AGENCY Details: ACTS DECLARED Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 25.00 | 1,400,597.99 | Posted |
| 18/11/2013 | 18/11/2013 | 639054 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,400,597.09 | Posted |
| 25/11/2013 | 25/11/2013 | 567033 | Interest accrued | Credit | 91.68 | 1,400,688.77 | Posted |
| 25/11/2013 | 25/11/2013 | 578315 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 1,400,681.27 | Posted |
| 26/11/2013 | 26/11/2013 | 764934 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for Nov. 2013 | Debit | 1,350.00 | 1,399,331.27 | Posted |
| 26/11/2013 | 26/11/2013 | 764951 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for Nov. 2013 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 1,399,181.27 | Posted |
| 26/11/2013 | 26/11/2013 | 764951 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,399,180.37 | Posted |
| 02/12/2013 | 02/12/2013 | 975592 | Direct Transfer BG55 KORP 9220 1052 6963 01 Payee: VIA AND CO EOOD Details: Inv.479/2nd Dec. 2013 – accounting and administrative services | Debit | 1,230.00 | 1,397,950.37 | Posted |
| 06/12/2013 | 06/12/2013 | 235890 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under case 135/2013 in the docket of TDC ruling 269 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 3,496.65 | 1,394,453.72 | Posted |
| 06/12/2013 | 06/12/2013 | 235890 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,394,452.82 | Posted |

**VCSBank**                                                                                           **Page 8 of 13**

| | |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 1,394,452.82 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 14/12/2013 | 14/12/2013 | 223748 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,869,765.32 | Posted |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 27/12/2013 | 27/12/2013 | 997161 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for Dec. 2013 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 1,869,615.32 | Posted |
| 27/12/2013 | 27/12/2013 | 997161 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,869,614.42 | Posted |
| 27/12/2013 | 27/12/2013 | 997163 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for Dec. 2013 | Debit | 1,350.00 | 1,868,264.42 | Posted |
| 27/12/2013 | 27/12/2013 | 117837 | Interest accrued | Credit | 141.25 | 1,868,405.67 | Posted |
| 27/12/2013 | 27/12/2013 | 128639 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 1,868,398.17 | Posted |
| 02/01/2014 | 02/01/2014 | 746831 | Direct Transfer BG55 KORP 9220 1052 6963 01 Payee: VIA AND CO EOOD Details: Inv.491/2nd Jan. 2014 – accounting and administrative services | Debit | 1,230.00 | 1,867,168.17 | Posted |
| 08/01/2014 | 08/01/2014 | 927560 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under case 135/2013 in the docket of TDC Title Deed 131/08 Order 305/13 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 4,662.20 | 1,862,505.97 | Posted |
| 08/01/2014 | 08/01/2014 | 927560 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,862,505.07 | Posted |
| 08/01/2014 | 08/01/2014 | 927569 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under case 135/2013 in the docket of TDC Title Deed 73/2008 Order 305/13 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 4,662.20 | 1,857,842.87 | Posted |
| 08/01/2014 | 08/01/2014 | 927569 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,857,841.97 | Posted |
| 08/01/2014 | 08/01/2014 | 927575 | Payment Transaction to State Budget BG75 UBBS 8002 3106 0361 02 Code payee 000000 Code payer 000000 Payee: TARGOVISHTE DISTRICT COURT Details: State Fees under case 135/2013 in the docket of TDC Title Deed 156/2009 Order 305/13 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No.        Period- having EIK: 200958720 | Debit | 4,662.20 | 1,853,179.77 | Posted |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 08/01/2014 | 08/01/2014 | 927575 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,853,178.87 | Posted |
| 14/01/2014 | 14/01/2014 | 118202 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 2,328,491.37 | Posted |
| 17/01/2014 | 17/01/2014 | 101372 | Payment Transaction to State Budget BG36 CREX 9260 3114 5494 01 Code payee 000000 Code payer 000000 Payee: REGISTRY AGENCY Details: ACTS DECLARED Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 25.00 | 2,328,466.37 | Posted |

VCSBank                                                                                            Page 9 of 13

| | | | | | | |
|---|---|---|---|---|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** | | | | | |
| Account: | Special deposits in BGN of business entities | | | | | |
| Analytic No.: | 1731 290120 01 7 | | | | | |
| IBAN: | BG74 KORP 9220 1029 0120 51 | | | | | |
| Currency: | BGN | | | | | |
| Balance at the beginning of the period: | 2,328,466.37 | | | | | |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 17/01/2014 | 17/01/2014 | 101372 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 2,328,465.47 | Posted |
| 17/01/2014 | 17/01/2014 | 111825 | Payment Transaction BG91 KORP 9220 2029 0120 02 Payee: Ayr Property Development AD (in bankruptcy) Details: Crediting a Deposit | Debit | 2,000,000.00 | 328,465.47 | Posted |
| 24/01/2014 | 24/01/2014 | 841228 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA  - Targovishte office Details: Trustee Income Tax for Jan. 2014 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 328,315.47 | Posted |
| 24/01/2014 | 24/01/2014 | 841228 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 328,314.57 | Posted |
| 24/01/2014 | 24/01/2014 | 841231 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for Jan. 2014 | Debit | 1,350.00 | 326,964.57 | Posted |
| 27/01/2014 | 27/01/2014 | 361965 | Interest accrued | Credit | 116.47 | 327,081.04 | Posted |
| 27/01/2014 | 27/01/2014 | 373285 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 327,073.54 | Posted |
| 03/02/2014 | 03/02/2014 | 765507 | Direct Transfer BG55 KORP 9220 1052 6963 01 Payee: VIA AND CO EOOD Details: Inv.504/3rd Feb. 2014 – accounting and administrative services | Debit | 1,230.00 | 325,843.54 | Posted |
| 11/02/2014 | 11/02/2014 | 670236 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Reimbursed Travel Expenses to Trustee | Debit | 1,287.37 | 324,556.17 | Posted |
| 14/02/2014 | 14/02/2014 | 622587 | Deposit Maturity Date | Credit | 475,312.50 | 799,868.67 | Posted |

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| | | | Interest accrued on Deposit Transaction No.29428 | | | | |
| 24/02/2014 | 24/02/2014 | 730818 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Details: Trustee Remuneration for Feb. 2014 | Debit | 1,350.00 | 798,518.67 | Posted |
| 24/02/2014 | 24/02/2014 | 731365 | Payment Transaction to State Budget BG55 RZBB 9155 8120 0172 01 Code payee 111111 Code payer 000000 Payee: Varna TD of NRA  - Targovishte office Details: Trustee Income Tax for Feb. 2014 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 798,368.67 | Posted |
| 24/02/2014 | 24/02/2014 | 731365 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 798,367.77 | Posted |
| 25/02/2014 | 25/02/2014 | 88894 | Payment Transaction to State Budget BG78 BNBG 9661 3100 1781 01 Code payee 000000 Code payer 000000 Payee: High Court of Cassation and Justice (HCCJ) Details: State Tax under case 846/2013 Varna Court of Appeal Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 15.00 | 798,352.77 | Posted |
| 25/02/2014 | 25/02/2014 | 88894 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 798,351.87 | Posted |

**VCSBank**                                                                                 Page 10 of 13

|  |  |
|---|---|
| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 798,351.87 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 25/02/2014 | 25/02/2014 | 88897 | Payment Transaction to State Budget BG78 BNBG 9661 3100 1781 01 Code payee 000000 Code payer 000000 Payee: HCCJ Details: State Tax under case 819/2013 HCA Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 15.00 | 798,336.87 | Posted |
| 25/02/2014 | 25/02/2014 | 88897 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 798,335.97 | Posted |
| 25/02/2014 | 25/02/2014 | 209294 | Interest accrued | Credit | 39.83 | 798,375.80 | Posted |
| 25/02/2014 | 25/02/2014 | 222154 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 798,368.30 | Posted |
| 04/03/2014 | 04/03/2014 | 382390 | Direct Transfer BG55 KORP 9220 1052 6963 01 Payee: VIA AND CO EOOD Details: Inv.516/4th March 2014 – accounting and administrative services | Debit | 1,230.00 | 797,138.30 | Posted |



| 10/03/2014 | 10/03/2014 | 687679 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Reimbursed Travel Expenses to Trustee | Debit | 1,014.26 | 796,124.04 | Posted |
|---|---|---|---|---|---|---|---|
| 14/03/2014 | 14/03/2014 | 23383 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,271,436.54 | Posted |
| 24/03/2014 | 24/03/2014 | 220801 | Payment Transaction to State Budget<br>BG70 RZBB 9155 8120 0172 22<br>Code payee 110000 Code payer 000000<br>Payee: Varna TD of NRA - Targovishte office<br>Details: Trustee Income Tax for March 2014<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 150.00 | 1,271,286.54 | Posted |
| 24/03/2014 | 24/03/2014 | 220801 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,271,285.64 | Posted |
| 24/03/2014 | 24/03/2014 | 220877 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Trustee Remuneration for March 2014 | Debit | 1,350.00 | 1,269,935.64 | Posted |
| 25/03/2014 | 25/03/2014 | 710210 | Interest accrued<br>Interest accrued | Credit | 80.94 | 1,270,016.58 | Posted |
| 25/03/2014 | 25/03/2014 | 721964 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 1,270,009.08 | Posted |
| 02/04/2014 | 02/04/2014 | 547346 | Direct Transfer<br>BG55 KORP 9220 1052 6963 01<br>Payee: VIA AND CO EOOD<br>Details: Inv.533/1st April 2014 – accounting and administrative services | Debit | 1,230.00 | 1,268,779.08 | Posted |
| 09/04/2014 | 09/04/2014 | 199648 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 20.00 | 1,268,759.08 | Posted |
| 09/04/2014 | 09/04/2014 | 199648 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,268,758.18 | Posted |

| VCSBank | | | | | | Page 11 of 13 | |

| | Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|---|
| | Account: | Special deposits in BGN of business entities |
| | Analytic No.: | 1731 290120 01 7 |
| | IBAN: | BG74 KORP 9220 1029 0120 51 |
| | Currency: | BGN |
| Balance at the beginning of the | period: | 1,268,758.18 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/<br>Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 09/04/2014 | 09/04/2014 | 214608 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED | Debit | 20.00 | 1,268,738.18 | Posted |

| | | | Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | | | | |
|---|---|---|---|---|---|---|---|
| 09/04/2014 | 09/04/2014 | 214608 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,268,737.28 | Posted |
| 10/04/2014 | 10/04/2014 | 546852 | Payment Transaction BG64 KORP 9220 2029 0120 03 Payee: Ayr Property Development AD (in bankruptcy) Details: Crediting a Deposit | Debit | 1,000,000.00 | 268,737.28 | Posted |
| 14/04/2014 | 14/04/2014 | 215499 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 744,049.78 | Posted |
| 25/04/2014 | 25/04/2014 | 926576 | Direct Transfer BG31 KORP 9220 4000 1139 01 Payee: Ganka Yaneva Kolyovska Det.: Trustee Remuneration for April 2014 | Debit | 1,350.00 | 742,669.78 | Posted |
| 25/04/2014 | 25/04/2014 | 926593 | Payment Transaction to State Budget BG70 RZBB 9155 8120 0172 22 Code payee 110000 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for April 2014 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 150.00 | 742,549.78 | Posted |
| 25/04/2014 | 25/04/2014 | 926593 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 742,548.88 | Posted |
| 25/04/2014 | 25/04/2014 | 29512 | Interest accrued | Credit | 78.61 | 742,627.49 | Posted |
| 25/04/2014 | 25/04/2014 | 41428 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 742,619.99 | Posted |
| 28/04/2014 | 28/04/2014 | 278041 | Payment Transaction to State Budget BG36 CREX 9260 3114 5494 01 Code payee 000000 Code payer 000000 Payee: REGISTRY AGENCY Details: ACTS DECLARED Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 20.00 | 742,599.99 | Posted |
| 28/04/2014 | 28/04/2014 | 278041 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 742,599.09 | Posted |
| 09/05/2014 | 09/05/2014 | 940804 | Direct Transfer BG55 KORP 9220 1052 6963 01 Payee: VIA AND CO EOOD Details: Inv.549/9th May 2014 – accounting and administrative services | Debit | 1,230.00 | 741,369.09 | Posted |
| 14/05/2014 | 14/05/2014 | 276071 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,216,681.59 | Posted |
| 21/05/2014 | 21/05/2014 | 94728 | Payment Transaction to State Budget BG70 RZBB 9155 8120 0172 22 Code payee 110000 Code payer 000000 Payee: Varna TD of NRA - Targovishte office Details: Trustee Income Tax for May 2014 Taxable entity Ayr Property Development AD (in bankruptcy) Type of doc. 09 No. Period- having EIK: 200958720 | Debit | 340.00 | 1,216,341.59 | Posted |
| 21/05/2014 | 21/05/2014 | 94728 | Payment Transaction to State Budget Bank Commission Fee | Debit | 0.90 | 1,216,340.69 | Posted |
| 21/05/2014 | 21/05/2014 | 94739 | Direct Transfer | Debit | 3,060.00 | 1,213,280.69 | Posted |

BG31 KORP 9220 4000 1139 01
Payee: Ganka Yaneva Kolyovska
Details: Trustee Remuneration for May
2014

| VCSBank | | | | | | | Page 12 of 13 |
|---|---|---|---|---|---|---|---|

| Holder: | **AYR PROPERTY DEVELOPMENT AD (IN BANKRUPTCY)** |
|---|---|
| Account: | Special deposits in BGN of business entities |
| Analytic No.: | 1731 290120 01 7 |
| IBAN: | BG74 KORP 9220 1029 0120 51 |
| Currency: | BGN |
| Balance at the beginning of the period: | 1,213,280.69 |

**BANK ACCOUNT STATEMENT**

| Posted on | Value Date | Bank order No. | Details of payment | Debit/ Credit | Amount | Balance | Status |
|---|---|---|---|---|---|---|---|
| 21/05/2014 | 21/05/2014 | 94815 | Direct Transfer<br>BG31 KORP 9220 4000 1139 01<br>Payee: Ganka Yaneva Kolyovska<br>Details: Reimbursed Travel Expenses and Fees to Trustee | Debit | 794.17 | 1,212,486.52 | Posted |
| 26/05/2014 | 26/05/2014 | 313072 | Interest accrued<br>Interest accrued | Credit | 79.67 | 1,212,566.19 | Posted |
| 26/05/2014 | 26/05/2014 | 324850 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 1,212,558.69 | Posted |
| 02/06/2014 | 02/06/2014 | 50959 | Direct Transfer<br>BG55 KORP 9220 1052 6963 01<br>Payee: VIA AND CO EOOD<br>Details: Inv.562/2nd June 2014 – accounting and administrative services | Debit | 1,230.00 | 1,211,328.69 | Posted |
| 04/06/2014 | 04/06/2014 | 693247 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: ACTS DECLARED<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 20.00 | 1,211,308.69 | Posted |
| 04/06/2014 | 04/06/2014 | 693247 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,211,307.79 | Posted |
| 16/06/2014 | 14/06/2014 | 339004 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 475,312.50 | 1,686,620.29 | Posted |
| 19/06/2014 | 19/06/2014 | 451032 | Payment Transaction to State Budget<br>BG36 CREX 9260 3114 5494 01<br>Code payee 000000 Code payer 000000<br>Payee: REGISTRY AGENCY<br>Details: REGISTRATION OF AFS<br>Taxable entity Ayr Property Development AD (in bankruptcy)<br>Type of doc. 09 No.<br>Period-<br>having EIK: 200958720 | Debit | 20.00 | 1,686,600.29 | Posted |
| 19/06/2014 | 19/06/2014 | 451032 | Payment Transaction to State Budget<br>Bank Commission Fee | Debit | 0.90 | 1,686,599.39 | Posted |
| 25/06/2014 | 25/06/2014 | 900160 | Interest accrued<br>Interest accrued | Credit | 112.12 | 1,686,711.51 | Posted |
| 25/06/2014 | 25/06/2014 | 911953 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 1,686,704.01 | Posted |
| 14/07/2014 | 14/07/2014 | 381190 | Deposit Maturity Date<br>Interest accrued on Deposit Transaction No.29428 | Credit | 333,422.92 | 2,020,126.93 | Posted |
| 25/07/2014 | 25/07/2014 | 975876 | Interest accrued<br>Interest accrued | Credit | 150.75 | 2,020,277.68 | Posted |
| 25/07/2014 | 25/07/2014 | 986258 | Generally Applied Fee<br>Bank Commission Fee | Debit | 7.50 | 2,020,270.18 | Posted |



| 14/08/2014 | 14/08/2014 | 806646 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 2,168,145.18 | Posted |
|---|---|---|---|---|---|---|---|
| 25/08/2014 | 25/08/2014 | 846849 | Interest accrued Interest accrued | Credit | 172.87 | 2,168,318.05 | Posted |
| 25/08/2014 | 25/08/2014 | 856790 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 2,168,310.55 | Posted |
| 15/09/2014 | 14/09/2014 | 898140 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 2,316,185.55 | Posted |
| 25/09/2014 | 25/09/2014 | 943831 | Interest accrued Interest accrued | Credit | 185.21 | 2,316,370.76 | Posted |
| 25/09/2014 | 25/09/2014 | 953446 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 2,316,363.26 | Posted |
| 14/10/2014 | 14/10/2014 | 466518 | Deposit Maturity Date Interest accrued on Deposit Transaction No.29428 | Credit | 147,875.00 | 2,464,238.26 | Posted |
| 27/10/2014 | 27/10/2014 | 75480 | Interest accrued Interest accrued | Credit | 211.24 | 2,464,449.50 | Posted |
| 27/10/2014 | 27/10/2014 | 84768 | Generally Applied Fee Bank Commission Fee | Debit | 7.50 | 2,464,442.00 | Posted |

| VCSBank | | | | | | | Page 13 of 13 |

*The undersigned, Ilka Simeonova Dyulgerova, hereby certify that this is a true and accurate translation from Bulgarian into English of the attached document – Bank Account Statements issued 13th November 2014 from Corporate Commercial Bank AD. This translation has 26 (twenty-six) pages.*

Translator: _____ *Ilka Simeonova Dyulgerova*

 КОРПОРАТИВНА
ТЪРГОВСКА БАНКА АД

13.11.2014 11:52:36 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 01 8 |
| IBAN | BG21 KORP 9220 2029 0120 01 |
| Валута | BGN |
| Салдо в началото на периода | 0.00 BGN |

**Извлечение**

| | |
|---|---|
| **Параметри** | |
| Период от - до | 14.01.2013 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Всички |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 14.01.2013 | 14.01.2013 | 229751 | Получен превод по RINGS BG59 UNCR 7000 1520 1153 99 нар-л ЕъР PROPъRTI DEVELOPMxNT AD осн. RAZPORᴗ1 08.01.2013 NA TOS дол-е DOG ZA DEPOZIT | Кт | 97 500 000.00 | 97 500 000.00 | Осчетоводена |
| 14.02.2013 | 14.02.2013 | 944469 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.02.2013 | 14.02.2013 | 944470 | Падеж по депозит Опизвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.03.2013 | 14.03.2013 | 368421 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.03.2013 | 14.03.2013 | 368422 | Падеж по депозит Опизвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 15.04.2013 | 14.04.2013 | 512044 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 15.04.2013 | 14.04.2013 | 512045 | Падеж по депозит Опизвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.05.2013 | 14.05.2013 | 666844 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.05.2013 | 14.05.2013 | 666845 | Падеж по депозит Опизвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.06.2013 | 14.06.2013 | 366994 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.06.2013 | 14.06.2013 | 366995 | Падеж по депозит Опизвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 15.07.2013 | 14.07.2013 | 660689 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 15.07.2013 | 14.07.2013 | 660690 | Падеж по депозит Опизвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.08.2013 | 14.08.2013 | 444566 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.08.2013 | 14.08.2013 | 444567 | Падеж по депозит Опизвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 16.09.2013 | 14.09.2013 | 218933 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 16.09.2013 | 14.09.2013 | 218934 | Падеж по депозит Опизвяване на депозит на падеж | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 546256 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 546257 | Падеж по депозит Опизвяване на депозит на падеж. Сделка номер 29428 | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.11.2013 | 14.11.2013 | 954039 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.11.2013 | 14.11.2013 | 954040 | Падеж по депозит Опизвяване на депозит на падеж. Сделка номер 29428 | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.12.2013 | 14.12.2013 | 223747 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.12.2013 | 14.12.2013 | 223748 | Падеж по депозит Опизвяване на депозит на падеж. Сделка номер 29428 | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.01.2014 | 14.01.2014 | 118201 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| 14.01.2014 | 14.01.2014 | 118202 | Падеж по депозит Опизвяване на депозит на падеж. Сделка номер 29428 | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| 14.02.2014 | 14.02.2014 | 622586 | Падеж по депозит Опизвяване на 'Депозитна сделка' номер 29428. | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |

| | Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|---|
| | Сметка | Приети срочни депозити от търговски предприятия в лев |
| | Аналитичен номер | 1613 290120 01 8 |
| | IBAN | BG21 KORP 9220 2029 0120 01 |
| | Валута | BGN |
| | Салдо в началото на периода | 97 975 312.50 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 14.02.2014 | 14.02.2014 | 622587 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.03.2014 | 14.03.2014 | 23382 | Падеж по депозит | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.03.2014 | 14.03.2014 | 23383 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.04.2014 | 14.04.2014 | 215498 | Падеж по депозит | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.04.2014 | 14.04.2014 | 215499 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.05.2014 | 14.05.2014 | 276070 | Падеж по депозит | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.05.2014 | 14.05.2014 | 276071 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 16.06.2014 | 14.06.2014 | 339003 | Падеж по депозит | Кт | 475 312.50 | 97 975 312.50 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 16.06.2014 | 14.06.2014 | 339004 | Падеж по депозит | Дт | 475 312.50 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.07.2014 | 14.07.2014 | 381189 | Падеж по депозит | Кт | 333 422.92 | 97 833 422.92 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.07.2014 | 14.07.2014 | 381190 | Падеж по депозит | Дт | 333 422.92 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.08.2014 | 14.08.2014 | 806645 | Падеж по депозит | Кт | 147 875.00 | 97 647 875.00 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.08.2014 | 14.08.2014 | 806646 | Падеж по депозит | Дт | 147 875.00 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 15.09.2014 | 14.09.2014 | 898139 | Падеж по депозит | Кт | 147 875.00 | 97 647 875.00 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 15.09.2014 | 14.09.2014 | 898140 | Падеж по депозит | Дт | 147 875.00 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 14.10.2014 | 14.10.2014 | 466517 | Падеж по депозит | Кт | 147 875.00 | 97 647 875.00 | Осчетоводена |
| | | | Олихвяване на 'Депозитна сделка' номер 29428. | | | | |
| 14.10.2014 | 14.10.2014 | 466518 | Падеж по депозит | Дт | 147 875.00 | 97 500 000.00 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |



КОРПОРАТИВНА
ТЪРГОВСКА БАНКА АД

13.11.2014 11:54:32 (Сч. Дата: 05.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 02 5 |
| IBAN | BG91 KORP 9220 2029 0120 02 |
| Валута | BGN |
| Салдо в началото на периода | 0.00 BGN |

## Извлечение

| | |
|---|---|
| Параметри | |
| Период от - до | 17.01.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Всички |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 17.01.2014 | 17.01.2014 | 111825 | Издаден превод - сделка BG74 KORP 9220 1029 0120 51 нар-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС осн. ЗАХРАНВАНЕ НА ДЕПОЗИТ | Кт | 2 000 000.00 | 2 000 000.00 | Осчетоводена |
| 17.02.2014 | 17.02.2014 | 947785 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 750.00 | 2 009 750.00 | Осчетоводена |
| 17.03.2014 | 17.03.2014 | 367519 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 797.53 | 2 019 547.53 | Осчетоводена |
| 17.04.2014 | 17.04.2014 | 335575 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 845.29 | 2 029 392.82 | Осчетоводена |
| 19.05.2014 | 17.05.2014 | 335763 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 893.29 | 2 039 286.11 | Осчетоводена |
| 17.06.2014 | 17.06.2014 | 724155 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 9 941.52 | 2 049 227.63 | Осчетоводена |
| 17.07.2014 | 17.07.2014 | 218080 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 6 319.59 | 2 055 547.22 | Осчетоводена |
| 18.08.2014 | 17.08.2014 | 373095 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 3 117.58 | 2 058 664.80 | Осчетоводена |
| 17.09.2014 | 17.09.2014 | 464309 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 3 122.31 | 2 061 787.11 | Осчетоводена |
| 17.10.2014 | 17.10.2014 | 316437 | Падеж по депозит Олихвяване на 'Депозитна сделка' номер 39033. | Кт | 3 127.04 | 2 064 914.15 | Осчетоводена |
| 20.10.2014 | 20.10.2014 | 599568 | Прекратяване на депозит Олихвяване на 'Депозитна сделка' номер 39033. Начислена лихва в размер на 17.21 BGN. АНУЛИРАНО БОРДЕРО, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , ВЪВ ВРЪЗКА С ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ | Кт | 17.21 | 2 064 914.15 | Анулирана |
| 20.10.2014 | 17.10.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА Б5316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -3 127.04 | 2 061 787.11 | Осчетоводена |
| 20.10.2014 | 17.09.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА Б5316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -3 122.31 | 2 058 664.80 | Осчетоводена |
| 20.10.2014 | 17.08.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА Б5316437/17.10.14; 464309/17.09.14; 373095/18.08.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -3 117.58 | 2 055 547.22 | Осчетоводена |



| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Приети срочни депозити от търговски предприятия в лев | |
| Аналитичен номер | 1613 290120 02 5 | |
| IBAN | BG91 KORP 9220 2029 0120 02 | |
| Валута | BGN | |
| Салдо в началото на периода | 2 055 547.22 BGN | **Извлечение** |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 20.10.2014 | 17.07.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.06.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -6 319.59 | 2 049 227.63 | Осчетоводена |
| 20.10.2014 | 17.06.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.06.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 941.52 | 2 039 286.11 | Осчетоводена |
| 20.10.2014 | 17.05.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.06.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 893.29 | 2 029 392.82 | Осчетоводена |
| 20.10.2014 | 17.04.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.06.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 845.29 | 2 019 547.53 | Осчетоводена |
| 20.10.2014 | 17.03.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.06.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 797.53 | 2 009 750.00 | Осчетоводена |
| 20.10.2014 | 17.02.2014 | 599573 | Многоредово бордеро СТОРНИРАНЕ НА ББ316437/17.10.14; 464309/17.09.14; 373095/18.06.14;218080/17.07.14; 724155/17.06.14; 335763/19.05.14;335575/17.04.14;367519/17.03.14 И 947785/17.02.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -9 750.00 | 2 000 000.00 | Осчетоводена |

 **КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД**

13.11.2014 11:56:34 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Приети срочни депозити от търговски предприятия в лев |
| Аналитичен номер | 1613 290120 03 2 |
| IBAN | BG64 KORP 9220 2029 0120 03 |
| Валута | BGN |
| Салдо в началото на периода | 0.00 BGN |

## Извлечение

| | |
|---|---|
| **Параметри** | |
| Период от - до | 10.04.2014 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Всички |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 10.04.2014 | 10.04.2014 | 546852 | Издаден превод - сделка<br>BG74 KORP 9220 1029 0120 51<br>нар-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС<br>осн. ЗАХРАНВАНЕ НА ДЕПОЗИТ | Кт | 1 000 000.00 | 1 000 000.00 | Осчетоводена |
| 10.05.2014 | 10.05.2014 | 252244 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 4 875.00 | 1 004 875.00 | Осчетоводена |
| 10.06.2014 | 10.06.2014 | 976981 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 4 898.77 | 1 009 773.77 | Осчетоводена |
| 10.07.2014 | 10.07.2014 | 827520 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 3 905.30 | 1 013 679.07 | Осчетоводена |
| 11.08.2014 | 10.08.2014 | 958769 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 1 537.41 | 1 015 216.48 | Осчетоводена |
| 10.09.2014 | 10.09.2014 | 50458 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 1 539.74 | 1 016 756.22 | Осчетоводена |
| 10.10.2014 | 10.10.2014 | 901274 | Падеж по депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. | Кт | 1 542.08 | 1 018 298.30 | Осчетоводена |
| 20.10.2014 | 20.10.2014 | 599481 | Прекратяване на депозит<br>Олихвяване на 'Депозитна сделка' номер 40116. Начислена лихва в<br>размер на 28.29 BGN.<br>АНУЛИРАНО БОРДЕРО, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>ВЪВ ВРЪЗКА С ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ | Кт | 28.29 | 1 018 298.30 | Анулирана |
| 20.10.2014 | 10.10.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -1 542.08 | 1 016 756.22 | Осчетоводена |
| 20.10.2014 | 10.09.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -1 539.74 | 1 015 216.48 | Осчетоводена |
| 20.10.2014 | 10.08.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -1 537.41 | 1 013 679.07 | Осчетоводена |
| 20.10.2014 | 10.07.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -3 905.30 | 1 009 773.77 | Осчетоводена |
| 20.10.2014 | 10.06.2014 | 599547 | Многоредово бордеро<br>СТОРНИРАНЕ НА Б5901274/10.10.14; 50458/10.09.14;<br>958769/11.08.14;827520/10.07.14; 976981/10.06.14 и<br>252244/10.05.14, СЪГЛАСНО<br>ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 ,<br>НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ<br>ЛИПСА НА ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -4 898.77 | 1 004 875.00 | Осчетоводена |

| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Приети срочни депозити от търговски предприятия в лев | |
| Аналитичен номер | 1613 290120 03 2 | |
| IBAN | BG64 KORP 9220 2029 0120 03 | |
| Валута | BGN | |
| Салдо в началото на периода | 1 004 875.00 BGN | **Извлечение** |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 20.10.2014 | 10.05.2014 | 599547 | Многоредово бордеро СТОРНИРАНЕ НА ББ901274/10.10.14; 50458/10.09.14; 958769/11.08.14;827520/10.07.14; 976981/10.06.14 И 252244/10.05.14, СЪГЛАСНО ДОКЛАДНА ЗАПИСКА В-5774/18.09.2014 , НЕДЪЛЖИМИ ЛИХВИ, ПОРАДИ ЛИПСА НА  ПОДПИСАН ДОГОВОР ЗА ДЕПОЗИТ. | Кт | -4 875.00 | 1 000 000.00 | Осчетоводена |

 КОРПОРАТИВНА ТЪРГОВСКА БАНКА АД

13.11.2014 11:53:54 (Сч. Дата: 06.11.2014)

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 0.00 BGN |

## Извлечение

| | |
|---|---|
| Параметри | |
| Период от - до | 12.02.2013 - 06.11.2014 |
| Сума от - до | Няма ограничение |
| Тип операции | Всички |
| Тип извлечение | Детайлно |
| Статус | Всички |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 12.02.2013 | 12.02.2013 | 445382 | Издаден превод - сделка<br>BG66 KORP 9220 1029 0120 01<br>нар-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС<br>осн. ЗАКРИВАНЕ НА СМЕТКА И ПРЕХВЪРЛЯНЕ<br>доп-е НА ОСТАТЪКА | Кт | 1.04 | 1.04 | Осчетоводена |
| 12.02.2013 | 12.02.2013 | 446038 | Валутна сделка<br>Относно: ПОКУПКА на валута.<br>КУПЕНИ: USD 1.69<br>ПРОДАДЕНИ: BGN          2.43<br>Курс: USD 1 / BGN 1.439200<br>Клиент: ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД<br>ЕГН/ЕИК/БУЛСТАТ/БАЕ: 200958720 | Кт | 2.43 | 3.47 | Осчетоводена |
| 12.02.2013 | 12.02.2013 | 446219 | Валутна сделка<br>Относно: ПОКУПКА на валута.<br>КУПЕНИ: EUR 1.37<br>ПРОДАДЕНИ: BGN          2.67<br>Курс: EUR 1 / BGN 1.950000<br>Клиент: ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД<br>ЕГН/ЕИК/БУЛСТАТ/БАЕ: 200958720 | Кт | 2.67 | 6.14 | Осчетоводена |
| 14.02.2013 | 14.02.2013 | 944470 | Падеж по депозит<br>Оликвяване на депозит на падеж | Кт | 475 312.50 | 475 318.64 | Осчетоводена |
| 15.02.2013 | 15.02.2013 | 228835 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП ВАРНА - ОФИС ТЪРГОВИЩЕ<br>осн. ДОД ДОПЪЛ.ВЪЗНАГР, СИНДИК<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 40 000.00 | 435 318.64 | Осчетоводена |
| 15.02.2013 | 15.02.2013 | 228835 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 1.30 | 435 317.34 | Осчетоводена |
| 15.02.2013 | 15.02.2013 | 219874 | Издаден превод - сделка<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. ЧАСТИЧНО ПЛАЩАНЕ ПО ОПР.Н.34/12<br>доп-е 02.2013 ПО Т.Д.14/2011 НА ТОС | Дт | 360 000.00 | 75 317.34 | Осчетоводена |
| 15.02.2013 | 15.02.2013 | 229030 | Валутен превод - вътрешнобанков<br>Валутен превод. Реф.2501/00003495<br>сума 30957.85 EUR<br>вальор 15.02.2013<br>Наредител: ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС курс<br>1.957500<br>Бенефициент: ЗАХАРИ ЖЕЛЯЗКОВ ТОМОВ - АДВОКАТ<br>Основание: ВЪЗСТАНОВЯВАНЕ НА ПРЕДПЛАТЕНИ РАЗНО СКИ | Дт | 60 599.99 | 14 717.35 | Осчетоводена |
| 25.02.2013 | 25.02.2013 | 64957 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 14 709.85 | Осчетоводена |
| 14.03.2013 | 14.03.2013 | 368422 | Падеж по депозит<br>Оликвяване на депозит на падеж | Кт | 475 312.50 | 490 022.35 | Осчетоводена |

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 490 022.35 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 18.03.2013 | 18.03.2013 | 5294 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП ВАРНА - ОФИС ТЪРГОВИЩЕ<br>осн. ДОД ДОПЪЛН.ВЪЗНАГР.СИНДИК<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 45 000.00 | 445 022.35 | Осчетоводена |
| 18.03.2013 | 18.03.2013 | 5294 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 1.30 | 445 021.05 | Осчетоводена |
| 18.03.2013 | 18.03.2013 | 5518 | Издаден превод - сделка<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. ЧАСТИЧНО ПЛАЩАНЕ ПО ОПР.Н.34/12<br>доп-е 02.2013 ПО Т.Д.14/2011 НА ТОС | Дт | 405 000.00 | 40 021.05 | Осчетоводена |
| 25.03.2013 | 25.03.2013 | 672215 | Маскирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 40 013.55 | Осчетоводена |
| 15.04.2013 | 14.04.2013 | 512045 | Падеж по депозит<br>Оликвяване на депозит на падеж | Кт | 475 312.50 | 515 326.05 | Осчетоводена |
| 17.04.2013 | 17.04.2013 | 162317 | Издаден превод - сделка<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. ЧАСТИЧНО ПЛАЩАНЕ ПО ОПР.Н.34/12<br>доп-е 02.2013 ПО Т.Д.14/2011 НА ТОС | Дт | 450 000.00 | 65 326.05 | Осчетоводена |
| 17.04.2013 | 17.04.2013 | 162373 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП ВАРНА-ОФИС ТЪРГОВИЩЕ<br>осн. ДОД ДОПЪЛН.ВЪЗНАГР.СИНДИК<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 50 000.00 | 15 326.05 | Осчетоводена |
| 17.04.2013 | 17.04.2013 | 162373 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 1.30 | 15 324.75 | Осчетоводена |
| 23.04.2013 | 23.04.2013 | 385542 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. дод синдик за м.04.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 15 174.75 | Осчетоводена |
| 23.04.2013 | 23.04.2013 | 385542 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 15 173.85 | Осчетоводена |
| 23.04.2013 | 23.04.2013 | 385807 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.04.2013 | Дт | 1 350.00 | 13 823.85 | Осчетоводена |
| 25.04.2013 | 25.04.2013 | 170513 | Маскирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 13 816.35 | Осчетоводена |
| 08.05.2013 | 08.05.2013 | 516294 | Издаден директен превод<br>BG82 FINV 9150 109G N0A3 5J<br>пол-л ВИА И КО ЕООД<br>осн. ф.373/08.05.2013 - оч. и адм. обслу | Дт | 1 230.00 | 12 586.35 | Осчетоводена |
| 08.05.2013 | 08.05.2013 | 516294 | Издаден директен превод<br>комисионна по тарифа на банката | Дт | 0.90 | 12 585.45 | Осчетоводена |
| 14.05.2013 | 14.05.2013 | 666845 | Падеж по депозит<br>Оликвяване на депозит на падеж | Кт | 475 312.50 | 487 897.95 | Осчетоводена |

| | | | | | | |
|---|---|---|---|---|---|---|
| Титуляр | | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | | | | |
| Сметка | | Особени сметки на търговски предприятия в левове | | | | |
| Аналитичен номер | | 1731 290120 01 7 | | | | |
| IBAN | | BG74 KORP 9220 1029 0120 51 | | | | |
| Валута | | BGN | | | | |
| Салдо в началото на периода | | 487 897.95 BGN | | | | |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 21.05.2013 | 21.05.2013 | 501377 | Издадено бюд.плащане<br>BG55 RZBB 9155 6120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.05.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 487 747.95 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501377 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 487 747.05 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501548 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.05.2013 | Дт | 1 350.00 | 486 397.05 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501572 | Издадено бюд.плащане<br>BG55 RZBB 9155 6120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.05.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 45 000.00 | 441 397.05 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501572 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 441 396.15 | Осчетоводена |
| 21.05.2013 | 21.05.2013 | 501712 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. Частично плащане по опр.34/12.02.13<br>доп-е на ТОС | Дт | 405 000.00 | 36 396.15 | Осчетоводена |
| 27.05.2013 | 27.05.2013 | 703165 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 36 388.65 | Осчетоводена |
| 03.06.2013 | 03.06.2013 | 866745 | Издаден директен превод<br>BG82 FINV 9150 109G N0A3 5J<br>пол-л ВИА И КО ЕООД<br>осн. ф.390/03.06.2013 - сч. и адм. обслу | Дт | 1 230.00 | 35 158.65 | Осчетоводена |
| 03.06.2013 | 03.06.2013 | 866745 | Издаден директен превод<br>комисионна по тарифа на банката | Дт | 0.90 | 35 157.75 | Осчетоводена |
| 14.06.2013 | 14.06.2013 | 366995 | Падеж по депозит<br>Опихзване на депозит на падеж | Кт | 475 312.50 | 510 470.25 | Осчетоводена |
| 19.06.2013 | 19.06.2013 | 303016 | Издадено бюд.плащане<br>BG55 RZBB 9155 6120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.06.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 50 150.00 | 460 320.25 | Осчетоводена |
| 19.06.2013 | 19.06.2013 | 303016 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 460 319.35 | Осчетоводена |
| 19.06.2013 | 19.06.2013 | 303037 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.06.2013 | Дт | 451 350.00 | 8 969.35 | Осчетоводена |
| 20.06.2013 | 20.06.2013 | 606922 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л Агенция по вписванията<br>осн. ОБЯВЯВАНЕ НА ГФО<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид.док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 25.00 | 8 944.35 | Осчетоводена |
| 20.06.2013 | 20.06.2013 | 606922 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 8 943.45 | Осчетоводена |

| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 8 943.45 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 25.06.2013 | 25.06.2013 | 710315 | Олихвяване | Кт | 35.19 | 8 978.64 | Осчетоводена |
| | | | Олихвяване | | | | |
| 25.06.2013 | 25.06.2013 | 721377 | Масирано събирана такса | Дт | 7.50 | 8 971.14 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 05.07.2013 | 05.07.2013 | 807534 | Издаден директен превод | Дт | 1 230.00 | 7 741.14 | Осчетоводена |
| | | | BG82 FINV 9150 10BG N0A3 5J | | | | |
| | | | пол-л ВИА И КО ЕООД | | | | |
| | | | осн. ф.409/04.07.2013 - сч. и адм. обслу | | | | |
| 05.07.2013 | 05.07.2013 | 807534 | Издаден директен превод | Дт | 0.90 | 7 740.24 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 15.07.2013 | 14.07.2013 | 660690 | Падеж по депозит | Кт | 475 312.50 | 483 052.74 | Осчетоводена |
| | | | Олихвяване на депозит на падеж | | | | |
| 17.07.2013 | 17.07.2013 | 341766 | Издадено бюд.плащане | Дт | 44 500.00 | 438 552.74 | Осчетоводена |
| | | | BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 | | | | |
| | | | пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ | | | | |
| | | | осн. ДОД СИНДИК ЗА М.07.2013 | | | | |
| | | | доп-е | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 17.07.2013 | 17.07.2013 | 341766 | Издадено бюд.плащане | Дт | 1.30 | 438 551.44 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 17.07.2013 | 17.07.2013 | 343367 | Издаден превод - сделка | Дт | 400 500.00 | 38 051.44 | Осчетоводена |
| | | | BG31 KORP 9220 4000 1139 01 | | | | |
| | | | пол-л ГАНКА ЯНЕВА КОЛЬОВСКА | | | | |
| | | | осн. ВЪЗНАГРАЖДЕНИЕ НА СИНДИК ЗА М.07 | | | | |
| | | | доп-е 2013 | | | | |
| 18.07.2013 | 18.07.2013 | 655720 | Издадено бюд.плащане | Дт | 150.00 | 37 901.44 | Осчетоводена |
| | | | BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 | | | | |
| | | | пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ | | | | |
| | | | осн. ДОД Синдик за м.07.2013 | | | | |
| | | | доп-е | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 18.07.2013 | 18.07.2013 | 655720 | Издадено бюд.плащане | Дт | 0.90 | 37 900.54 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 18.07.2013 | 18.07.2013 | 655724 | Издаден директен превод | Дт | 1 350.00 | 36 550.54 | Осчетоводена |
| | | | BG31 KORP 9220 4000 1139 01 | | | | |
| | | | пол-л ГАНКА ЯНЕВА КОЛЬОВСКА | | | | |
| | | | осн. възнаг. на синдик за м.07.2013 | | | | |
| 25.07.2013 | 25.07.2013 | 473848 | Олихвяване | Кт | 5.28 | 36 555.82 | Осчетоводена |
| | | | Олихвяване | | | | |
| 25.07.2013 | 25.07.2013 | 484758 | Масирано събирана такса | Дт | 7.50 | 36 548.32 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 01.08.2013 | 01.08.2013 | 788858 | Издаден директен превод | Дт | 1 230.00 | 35 318.32 | Осчетоводена |
| | | | BG82 FINV 9150 10BG N0A3 5J | | | | |
| | | | пол-л ВИА И КО ЕООД | | | | |
| | | | осн. ф.424/01.08.2013 - сч. и адм. обслу | | | | |
| 01.08.2013 | 01.08.2013 | 788858 | Издаден директен превод | Дт | 0.90 | 35 317.42 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 09.08.2013 | 09.08.2013 | 536950 | Издадено бюд.плащане | Дт | 25.00 | 35 292.42 | Осчетоводена |
| | | | BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000 | | | | |
| | | | пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА | | | | |
| | | | осн. ОБЯВЯВАНЕ НА АКТОВЕ | | | | |
| | | | доп-е | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 09.08.2013 | 09.08.2013 | 536950 | Издадено бюд.плащане | Дт | 0.90 | 35 291.52 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 14.08.2013 | 14.08.2013 | 444567 | Падеж по депозит | Кт | 475 312.50 | 510 604.02 | Осчетоводена |
| | | | Олихвяване на депозит на падеж | | | | |
| 26.08.2013 | 26.08.2013 | 245257 | Олихвяване | Кт | 18.90 | 510 622.92 | Осчетоводена |
| | | | Олихвяване | | | | |

|  |  |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 510 622.92 BGN |

# Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 26.08.2013 | 26.08.2013 | 255881 | Масрячно събрана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 510 615.42 | Осчетоводена |
| 28.08.2013 | 28.08.2013 | 684892 | Издаден директен превод<br>BG89 KORP 9220 1050 5063 02<br>пол-л Мария Гаврилова Накова<br>осн. част. плащане по адв.защита по<br>доп-е т.д. 14/2011 на ТОС | Дт | 20 000.00 | 490 615.42 | Осчетоводена |
| 03.09.2013 | 03.09.2013 | 803636 | Издаден директен превод<br>BG82 FINV 9150 108G NOA3 5J<br>пол-л ВИА И КО ЕООД<br>осн. ф.44/02.09.2013 - сч. и адм. обслу | Дт | 1 230.00 | 489 385.42 | Осчетоводена |
| 03.09.2013 | 03.09.2013 | 803636 | Издаден директен превод<br>комисионна по тарифа на банката | Дт | 0.90 | 489 384.52 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81250 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.08.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200956720 | Дт | 150.00 | 489 234.52 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81250 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 489 233.62 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81260 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.08.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200956720 | Дт | 45 000.00 | 444 233.62 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81260 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 444 232.72 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81268 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.08.2013 | Дт | 1 350.00 | 442 882.72 | Осчетоводена |
| 04.09.2013 | 04.09.2013 | 81518 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.08.2013 | Дт | 405 000.00 | 37 882.72 | Осчетоводена |
| 16.09.2013 | 14.09.2013 | 218934 | Падеж по депозит<br>Олихвяване на депозит на падеж | Кт | 475 312.50 | 513 195.22 | Осчетоводена |
| 25.09.2013 | 25.09.2013 | 723488 | Олихвяване<br>Олихвяване | Кт | 27.74 | 513 222.96 | Осчетоводена |
| 25.09.2013 | 25.09.2013 | 737504 | Масрячно събрана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 513 215.46 | Осчетоводена |
| 01.10.2013 | 01.10.2013 | 785446 | Издаден директен превод<br>BG82 FINV 9150 108G NOA3 5J<br>пол-л ВИА И КО ЕООД<br>осн. ф.45/01.10.2013 - сч. и адм. обслу | Дт | 1 230.00 | 511 985.46 | Осчетоводена |
| 01.10.2013 | 01.10.2013 | 785446 | Издаден директен превод<br>комисионна по тарифа на банката | Дт | 0.90 | 511 984.56 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611568 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.09.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200956720 | Дт | 150.00 | 511 834.56 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611568 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 511 833.66 | Осчетоводена |

| | Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|---|
| | Сметка | Особени сметки на търговски предприятия в левове |
| | Аналитичен номер | 1731 290120 01 7 |
| | IBAN | BG74 KORP 9220 1029 0120 51 |
| | Валута | BGN |
| | Салдо в началото на периода | 511 833.66 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 09.10.2013 | 09.10.2013 | 611574 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.09.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 5 400.00 | 506 433.66 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611574 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 506 432.76 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611583 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнагр. на синдик за м.09.2013 | Дт | 1 350.00 | 505 082.76 | Осчетоводена |
| 09.10.2013 | 09.10.2013 | 611615 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнагр. на синдик за м.09.2013 | Дт | 48 600.00 | 456 482.76 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 546257 | Падеж по депозит<br>Описование на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 931 795.26 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 581054 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР Пропърти Девелопмънт АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 25.00 | 931 770.26 | Осчетоводена |
| 14.10.2013 | 14.10.2013 | 581054 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 931 769.36 | Осчетоводена |
| 22.10.2013 | 22.10.2013 | 618379 | Издадено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.нар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ по чл.71,ал.2 от ГПК<br>доп-е по т.д.133/2013 ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 1 166.00 | 930 603.36 | Осчетоводена |
| 22.10.2013 | 22.10.2013 | 618379 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 930 602.46 | Осчетоводена |
| 22.10.2013 | 22.10.2013 | 618395 | Издадено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.нар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ по иск с осн. чл.124,ал.4 от ГПК<br>доп-е по т.д.133/2013 ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 80.00 | 930 522.46 | Осчетоводена |
| 22.10.2013 | 22.10.2013 | 618395 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 930 521.56 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689410 | Издадено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.нар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ по чл.124,ал.1 от ГПК,чл.69,ал.1<br>доп-е по т.д.135/2013 ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 1 165.55 | 929 356.01 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689410 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 929 355.11 | Осчетоводена |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | | | | | | |
| Сметка | Особени сметки на търговски предприятия в левове | | | | | | |
| Аналитичен номер | 1731 290120 01 7 | | | | | | |
| IBAN | BG74 KORP 9220 1029 0120 51 | | | | | | |
| Валута | BGN | | | | | | |
| Салдо в началото на периода | 929 355.11 BGN | | | | | | |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 25.10.2013 | 25.10.2013 | 689425 | Издадено бюд.плащане BG75 UBBS 8002 3106 0351 02 код пл.пол.000000 код пл.нар. 000000 пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ осн. ДТ по чл.124,ал.4 от ГПК доп-е по т.д.135/2013 ТОС зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 80.00 | 929 275.11 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689425 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 929 274.21 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689445 | Издадено бюд.плащане BG75 UBBS 8002 3106 0351 02 код пл.пол.000000 код пл.нар. 000000 пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ осн. ДТ по чл.124,ал.1 от ГПК,чл.69,ал.1 доп-е по т.д.134/2013 ТОС зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 1 165.55 | 928 108.66 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689445 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 928 107.76 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689453 | Издадено бюд.плащане BG75 UBBS 8002 3106 0351 02 код пл.пол.000000 код пл.нар. 000000 пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ осн. ДТ по чл.124,ал.4 от ГПК доп-е по т.д.134/2013 ТОС зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 80.00 | 928 027.76 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 689453 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 928 026.86 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 794268 | Олихвяване Олихвяване | Кт | 54.73 | 928 081.59 | Осчетоводена |
| 25.10.2013 | 25.10.2013 | 805222 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 928 074.09 | Осчетоводена |
| 28.10.2013 | 28.10.2013 | 993404 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възнаг. на синдик за м.10.2013 | Дт | 1 350.00 | 926 724.09 | Осчетоводена |
| 28.10.2013 | 28.10.2013 | 993425 | Издадено бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. ДОД Синдик за м.10.2013 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 150.00 | 926 574.09 | Осчетоводена |
| 28.10.2013 | 28.10.2013 | 993425 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 926 573.19 | Осчетоводена |
| 06.11.2013 | 06.11.2013 | 45649 | Издаден директен превод BG82 FINV 9150 10BG N0A3 5J пол-л ВИА И КО ЕООД осн. ф.465/06.11.2013 - сч. и адм. обслу | Дт | 1 230.00 | 925 343.19 | Осчетоводена |
| 06.11.2013 | 06.11.2013 | 45649 | Издаден директен превод комисионна по тарифа на банката | Дт | 0.90 | 925 342.29 | Осчетоводена |
| 14.11.2013 | 14.11.2013 | 954040 | Падеж по депозит Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 1 400 654.79 | Осчетоводена |

| | | | | | | |
|---|---|---|---|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | | | | | |
| Сметка | Особени сметки на търговски предприятия в левове | | | | | |
| Аналитичен номер | 1731 290120 01 7 | | | | | |
| IBAN | BG74 KORP 9220 1029 0120 51 | | | | | |
| Валута | BGN | | | | | |
| Салдо в началото на периода | 1 400 654,79 BGN | | | | | |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 18.11.2013 | 18.11.2013 | 623165 | Издадено бюд.плащане<br>BG81 TTBB 9400 3115 0685 65 код пл.пол.000000 код пл.нар. 000000<br>пол-л АПЕЛАТИВЕН СЪД - ВАРНА<br>оск. ДТ за частна жалба по т.д.133/2013<br>доп-е на ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 15.00 | 1 400 639.79 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 623165 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 400 638.89 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 623169 | Издадено бюд.плащане<br>BG81 TTBB 9400 3115 0685 65 код пл.пол.000000 код пл.нар. 000000<br>пол-л АПЕЛАТИВЕН СЪД - ВАРНА<br>оск. ДТ за частна жалба по т.д.134/2013<br>доп-е на ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 15.00 | 1 400 623.89 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 623169 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 400 622.99 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 639054 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 25.00 | 1 400 597.99 | Осчетоводена |
| 18.11.2013 | 18.11.2013 | 639054 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 400 597.09 | Осчетоводена |
| 25.11.2013 | 25.11.2013 | 567033 | Олихвяване<br>Олихвяване | Кт | 91.68 | 1 400 688.77 | Осчетоводена |
| 25.11.2013 | 25.11.2013 | 578315 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 1 400 681.27 | Осчетоводена |
| 26.11.2013 | 26.11.2013 | 764934 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.11.2013 | Дт | 1 350.00 | 1 399 331.27 | Осчетоводена |
| 26.11.2013 | 26.11.2013 | 764951 | Издадено бюд.плащане<br>BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.11.2013<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 1 399 181.27 | Осчетоводена |
| 26.11.2013 | 26.11.2013 | 764951 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 399 180.37 | Осчетоводена |
| 02.12.2013 | 02.12.2013 | 975592 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.479/02.12.2013 - сч. и адм. обслу | Дт | 1 230.00 | 1 397 950.37 | Осчетоводена |
| 06.12.2013 | 06.12.2013 | 235890 | Издадено бюд.плащане<br>BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.нар. 000000<br>пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ<br>осн. ДТ по т.д.135/2013 на ТОС по<br>доп-е опр.269 на ТОС<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 3 496.65 | 1 394 453.72 | Осчетоводена |
| 06.12.2013 | 06.12.2013 | 235890 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 394 452.82 | Осчетоводена |

| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Особени сметки на търговски предприятия в левове | |
| Аналитичен номер | 1731 290120 01 7 | |
| IBAN | BG74 KORP 9220 1029 0120 51 | |
| Валута | BGN | |
| Салдо в началото на периода | 1 394 452.82 BGN | |

# Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 14.12.2013 | 14.12.2013 | 223748 | Падеж по депозит | Кт | 475 312.50 | 1 869 765.32 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 27.12.2013 | 27.12.2013 | 997151 | Изадено бюд.плащане | Дт | 150.00 | 1 869 615.32 | Осчетоводена |
| | | | BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.кар. 000000 | | | | |
| | | | пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ | | | | |
| | | | осн. дод сиидик за м.12.2013 | | | | |
| | | | доп-е | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 27.12.2013 | 27.12.2013 | 997161 | Изадено бюд.плащане | Дт | 0.90 | 1 869 614.42 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 27.12.2013 | 27.12.2013 | 997163 | Издаден директен превод | Дт | 1 350.00 | 1 868 264.42 | Осчетоводена |
| | | | BG31 KORP 9220 4000 1139 01 | | | | |
| | | | пол-л ГАНКА ЯНЕВА КОЛЬОВСКА | | | | |
| | | | осн. възнаг. на сиидик за м.12.2013 | | | | |
| 27.12.2013 | 27.12.2013 | 117837 | Олихвяване | Кт | 141.25 | 1 868 405.67 | Осчетоводена |
| 27.12.2013 | 27.12.2013 | 128639 | Месрано събирана такса | Дт | 7.50 | 1 868 398.17 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 02.01.2014 | 02.01.2014 | 746831 | Издаден директен превод | Дт | 1 230.00 | 1 867 168.17 | Осчетоводена |
| | | | BG55 KORP 9220 1052 6963 01 | | | | |
| | | | пол-л ВИА И КО ЕООД | | | | |
| | | | осн. ф.491/02.01.2014 - сч. и адм. обслу | | | | |
| 08.01.2014 | 08.01.2014 | 927560 | Изадено бюд.плащане | Дт | 4 662.20 | 1 862 505.97 | Осчетоводена |
| | | | BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.кар. 000000 | | | | |
| | | | пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ | | | | |
| | | | осн. ДТ по т.д.135/2013 на ТОС-НА 131/08 | | | | |
| | | | доп-е Разпореждане 305/13 | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 08.01.2014 | 08.01.2014 | 927550 | Изадено бюд.плащане | Дт | 0.90 | 1 862 505.07 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 08.01.2014 | 08.01.2014 | 927569 | Изадено бюд.плащане | Дт | 4 662.20 | 1 857 842.87 | Осчетоводена |
| | | | BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.кар. 000000 | | | | |
| | | | пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ | | | | |
| | | | осн. ДТ-т.д.135/2013 на ТОС-НА 73/2008 | | | | |
| | | | доп-е Разпореждане 305/13 | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 08.01.2014 | 08.01.2014 | 927569 | Изадено бюд.плащане | Дт | 0.90 | 1 857 841.97 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 08.01.2014 | 08.01.2014 | 927575 | Изадено бюд.плащане | Дт | 4 662.20 | 1 853 179.77 | Осчетоводена |
| | | | BG75 UBBS 8002 3106 0361 02 код пл.пол.000000 код пл.кар. 000000 | | | | |
| | | | пол-л ОКРЪЖЕН СЪД ТЪРГОВИЩЕ | | | | |
| | | | осн. ДТ-т.д.135/2013 на ТОС-НА 155/2009 | | | | |
| | | | доп-е Разпореждане 305/13 | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |
| 08.01.2014 | 08.01.2014 | 927575 | Изадено бюд.плащане | Дт | 0.90 | 1 853 178.87 | Осчетоводена |
| | | | комисионна по тарифа на банката | | | | |
| 14.01.2014 | 14.01.2014 | 118202 | Падеж по депозит | Кт | 475 312.50 | 2 328 491.37 | Осчетоводена |
| | | | Олихвяване на депозит на падеж. Сделка номер 29428 | | | | |
| 17.01.2014 | 17.01.2014 | 101372 | Изадено бюд.плащане | Дт | 25.00 | 2 328 466.37 | Осчетоводена |
| | | | BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.кар. 000000 | | | | |
| | | | пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА | | | | |
| | | | осн. ОБЯВЯВАНЕ НА АКТОВЕ | | | | |
| | | | доп-е | | | | |
| | | | зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В | | | | |
| | | | вид.док. 09 No. | | | | |
| | | | период - | | | | |
| | | | БУЛСТАТ 200958720 | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | | | | | | |
| Сметка | Особени сметки на търговски предприятия в левове | | | | | | |
| Аналитичен номер | 1731 290120 01 7 | | | | | | |
| IBAN | BG74 KORP 9220 1029 0120 51 | | | | | | |
| Валута | BGN | | | | | | |
| Салдо в началото на периода | 2 328 466.37 BGN | | | | | | |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 17.01.2014 | 17.01.2014 | 101372 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 2 328 465.47 | Осчетоводена |
| 17.01.2014 | 17.01.2014 | 111825 | Издаден превод - сделка BG91 KORP 9220 2029 0120 02 пол-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС осн. ЗАХРАНВАНЕ НА ДЕПОЗИТ | Дт | 2 000 000.00 | 328 465.47 | Осчетоводена |
| 24.01.2014 | 24.01.2014 | 841228 | Издадено бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. ДОД Синдик за м.01.2014 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200958720 | Дт | 150.00 | 328 315.47 | Осчетоводена |
| 24.01.2014 | 24.01.2014 | 841226 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 328 314.57 | Осчетоводена |
| 24.01.2014 | 24.01.2014 | 841231 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възнаг. на синдик за м.01.2014 | Дт | 1 350.00 | 326 964.57 | Осчетоводена |
| 27.01.2014 | 27.01.2014 | 361965 | Оликвавене Оликвавене - | Кт | 116.47 | 327 081.04 | Осчетоводена |
| 27.01.2014 | 27.01.2014 | 373285 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 327 073.54 | Осчетоводена |
| 03.02.2014 | 03.02.2014 | 766507 | Издаден директен превод BG55 KORP 9220 1052 6963 01 пол-л ВИА И КО ЕООД осн. ф.504/03.02.2014 - сч. и адм. обслу | Дт | 1 230.00 | 325 843.54 | Осчетоводена |
| 11.02.2014 | 11.02.2014 | 670236 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възстановени суми на синдик доп-е за командировки | Дт | 1 287.37 | 324 556.17 | Осчетоводена |
| 14.02.2014 | 14.02.2014 | 622587 | Падеж на депозит Оликвавене на депозит на падеж. Сделка номер 29426 | Кт | 475 312.50 | 799 868.67 | Осчетоводена |
| 24.02.2014 | 24.02.2014 | 730818 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. възнаг. на синдик за м.02.2014 | Дт | 1 350.00 | 798 518.57 | Осчетоводена |
| 24.02.2014 | 24.02.2014 | 731365 | Издадено бюд.плащане BG55 RZBB 9155 8120 0172 01 код пл.пол.111111 код пл.нар. 000000 пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ осн. дод синдик за м.02.2014 доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200956720 | Дт | 150.00 | 798 368.57 | Осчетоводена |
| 24.02.2014 | 24.02.2014 | 731365 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 798 367.77 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 88894 | Издадено бюд.плащане BG78 BNBG 9661 3100 1781 01 код пл.пол.000000 код пл.нар. 000000 пол-л ВКС осн. ДТ по т.д.846/2013 ВАпС доп-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид док. 09 No. период - БУЛСТАТ 200958720 | Дт | 15.00 | 798 352.77 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 88894 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 798 351.87 | Осчетоводена |

| | |
|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
| Сметка | Особени сметки на търговски предприятия в левове |
| Аналитичен номер | 1731 290120 01 7 |
| IBAN | BG74 KORP 9220 1029 0120 51 |
| Валута | BGN |
| Салдо в началото на периода | 798 351.87 BGN |

# Извлечение

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 25.02.2014 | 25.02.2014 | 88897 | Издадено бюд.плащане<br>BG78 BNBG 9661 3100 1781 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л ВКС<br>осн. ДТ по т.д.819/2013 ВАпС<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 15.00 | 798 336.87 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 88897 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 798 335.97 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 209294 | Оликвяване<br>Оликвяване - | Кт | 39.83 | 798 375.80 | Осчетоводена |
| 25.02.2014 | 25.02.2014 | 222154 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 798 368.30 | Осчетоводена |
| 04.03.2014 | 04.03.2014 | 382390 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.516/04.03.2014 - сч. и адм. обслу | Дт | 1 230.00 | 797 138.30 | Осчетоводена |
| 10.03.2014 | 10.03.2014 | 687679 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възстановени разходи на синдик<br>доп-е за командировки | Дт | 1 014.26 | 796 124.04 | Осчетоводена |
| 14.03.2014 | 14.03.2014 | 23383 | Падеж на депозит<br>Оликвяване на депозит на падеж. Сделка номер 29426 | Кт | 475 312.50 | 1 271 436.54 | Осчетоводена |
| 24.03.2014 | 24.03.2014 | 220801 | Издадено бюд.плащане<br>BG70 RZBB 9155 8120 0172 22 код пл.пол.110000 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.03.2014<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 1 271 286.54 | Осчетоводена |
| 24.03.2014 | 24.03.2014 | 220801 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 271 285.64 | Осчетоводена |
| 24.03.2014 | 24.03.2014 | 220877 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнагр. на синдик за м.03.2014 | Дт | 1 350.00 | 1 269 935.64 | Осчетоводена |
| 25.03.2014 | 25.03.2014 | 710210 | Оликвяване<br>Оликвяване - | Кт | 80.94 | 1 270 016.58 | Осчетоводена |
| 25.03.2014 | 25.03.2014 | 721954 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 1 270 009.08 | Осчетоводена |
| 02.04.2014 | 02.04.2014 | 547346 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.533/01.04.2014 - сч. и адм. обслу | Дт | 1 230.00 | 1 268 779.08 | Осчетоводена |
| 09.04.2014 | 09.04.2014 | 199648 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 20.00 | 1 268 759.08 | Осчетоводена |
| 09.04.2014 | 09.04.2014 | 199648 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 268 758.18 | Осчетоводена |

| | | |
|---|---|---|
| Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ | |
| Сметка | Особени сметки на търговски предприятия в левове | |
| Аналитичен номер | 1731 290120 01 7 | |
| IBAN | BG74 KORP 9220 1029 0120 51 | |
| Валута | BGN | |
| Салдо в началото на периода | 1 268 758.18 BGN | **Извлечение** |

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 09.04.2014 | 09.04.2014 | 214508 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 20.00 | 1 268 738.18 | Осчетоводена |
| 09.04.2014 | 09.04.2014 | 214808 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 268 737.28 | Осчетоводена |
| 10.04.2014 | 10.04.2014 | 546852 | Издаден превод - сделка<br>BG64 KORP 9220 2029 0120 03<br>пол-л ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪС<br>осн. ЗАХРАНВАНЕ НА ДЕПОЗИТ | Дт | 1 000 000.00 | 268 737.28 | Осчетоводена |
| 14.04.2014 | 14.04.2014 | 215499 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 744 049.78 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 926576 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.04.2014 | Дт | 1 350.00 | 742 699.78 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 926593 | Издадено бюд.плащане<br>BG70 RZBB 9155 8120 0172 22 код пл.пол.110000 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.04.2014<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 150.00 | 742 549.78 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 926593 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 742 548.88 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 29512 | Олихвяване<br>Олихвяване - | Кт | 78.61 | 742 627.49 | Осчетоводена |
| 25.04.2014 | 25.04.2014 | 41428 | Масирано събирана такса<br>комисионна по тарифа на банката | Дт | 7.50 | 742 619.99 | Осчетоводена |
| 28.04.2014 | 28.04.2014 | 278041 | Издадено бюд.плащане<br>BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000<br>пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА<br>осн. ОБЯВЯВАНЕ НА АКТОВЕ<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 20.00 | 742 599.99 | Осчетоводена |
| 28.04.2014 | 28.04.2014 | 278041 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 742 599.09 | Осчетоводена |
| 09.05.2014 | 09.05.2014 | 940804 | Издаден директен превод<br>BG55 KORP 9220 1052 6963 01<br>пол-л ВИА И КО ЕООД<br>осн. ф.549/09.05.2014 – сч. и адм. обслу | Дт | 1 230.00 | 741 369.09 | Осчетоводена |
| 14.05.2014 | 14.05.2014 | 278071 | Падеж по депозит<br>Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 1 216 681.59 | Осчетоводена |
| 21.05.2014 | 21.05.2014 | 94728 | Издадено бюд.плащане<br>BG70 RZBB 9155 8120 0172 22 код пл.пол.110000 код пл.нар. 000000<br>пол-л ТД НА НАП-ВАРНА ОФИС ТЪРГОВИЩЕ<br>осн. ДОД Синдик за м.05.2014<br>доп-е<br>зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В<br>вид док. 09 No.<br>период -<br>БУЛСТАТ 200958720 | Дт | 340.00 | 1 216 341.59 | Осчетоводена |
| 21.05.2014 | 21.05.2014 | 94728 | Издадено бюд.плащане<br>комисионна по тарифа на банката | Дт | 0.90 | 1 216 340.69 | Осчетоводена |
| 21.05.2014 | 21.05.2014 | 94739 | Издаден директен превод<br>BG31 KORP 9220 4000 1139 01<br>пол-л ГАНКА ЯНЕВА КОЛЬОВСКА<br>осн. възнаг. на синдик за м.05.2013 | Дт | 3 060.00 | 1 213 280.69 | Осчетоводена |

| | Титуляр | ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В НЕСЪСТОЯТЕЛНОСТ |
|---|---|---|
| | Сметка | Особени сметки на търговски предприятия в левове |
| | Аналитичен номер | 1731 290120 01 7 |
| | IBAN | BG74 KORP 9220 1029 0120 51 |
| | Валута | BGN |
| | Салдо в началото на периода | 1 213 280.69 BGN |

**Извлечение**

| Дата осч. | Вальор | Бордеро No. | Основание | Дт / Кт | Сума | Салдо | Статус |
|---|---|---|---|---|---|---|---|
| 21.05.2014 | 21.05.2014 | 94815 | Издаден директен превод BG31 KORP 9220 4000 1139 01 пол-л ГАНКА ЯНЕВА КОЛЬОВСКА осн. разходи за команд. и такси платени дол-е от синдика | Дт | 794.17 | 1 212 486.52 | Осчетоводена |
| 26.05.2014 | 26.05.2014 | 313072 | Олихвяване Олихвяване - | Кт | 79.67 | 1 212 566.19 | Осчетоводена |
| 26.05.2014 | 26.05.2014 | 324850 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 1 212 558.69 | Осчетоводена |
| 02.05.2014 | 02.06.2014 | 50959 | Издаден директен превод BG55 KORP 9220 1052 6963 01 пол-л ВИА И КО ЕООД осн. ф.582/02.06.2014 - сч. и адм. обслу | Дт | 1 230.00 | 1 211 328.69 | Осчетоводена |
| 04.06.2014 | 04.06.2014 | 693247 | Издадено бюд.плащане BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000 пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА осн. ОБЯВЯВАНЕ НА АКТОВЕ дол-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 20.00 | 1 211 308.69 | Осчетоводена |
| 04.06.2014 | 04.06.2014 | 693247 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 1 211 307.79 | Осчетоводена |
| 16.06.2014 | 14.06.2014 | 339004 | Падеж по депозит Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 475 312.50 | 1 686 620.29 | Осчетоводена |
| 19.06.2014 | 19.06.2014 | 451032 | Издадено бюд.плащане BG36 CREX 9260 3114 5494 01 код пл.пол.000000 код пл.нар. 000000 пол-л АГЕНЦИЯ ПО ВПИСВАНИЯТА осн. ОБЯВЯВАНЕ НА ГЕО дол-е зад.л. ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ АД В вид.док. 09 No. период - БУЛСТАТ 200958720 | Дт | 20.00 | 1 686 600.29 | Осчетоводена |
| 19.06.2014 | 19.06.2014 | 451032 | Издадено бюд.плащане комисионна по тарифа на банката | Дт | 0.90 | 1 686 599.39 | Осчетоводена |
| 25.06.2014 | 25.06.2014 | 900160 | Олихвяване Олихвяване - | Кт | 112.12 | 1 686 711.51 | Осчетоводена |
| 25.06.2014 | 25.06.2014 | 911953 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 1 686 704.01 | Осчетоводена |
| 14.07.2014 | 14.07.2014 | 381190 | Падеж по депозит Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 333 422.92 | 2 020 126.93 | Осчетоводена |
| 25.07.2014 | 25.07.2014 | 975876 | Олихвяване Олихвяване - | Кт | 150.75 | 2 020 277.68 | Осчетоводена |
| 25.07.2014 | 25.07.2014 | 986258 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 2 020 270.18 | Осчетоводена |
| 14.08.2014 | 14.08.2014 | 806646 | Падеж по депозит Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 147 875.00 | 2 168 145.18 | Осчетоводена |
| 25.08.2014 | 25.08.2014 | 846849 | Олихвяване Олихвяване - | Кт | 172.87 | 2 168 318.05 | Осчетоводена |
| 25.08.2014 | 25.08.2014 | 856790 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 2 168 310.55 | Осчетоводена |
| 15.09.2014 | 14.09.2014 | 898140 | Падеж по депозит Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 147 875.00 | 2 316 185.55 | Осчетоводена |
| 25.09.2014 | 25.09.2014 | 943831 | Олихвяване Олихвяване - | Кт | 185.21 | 2 316 370.76 | Осчетоводена |
| 25.09.2014 | 25.09.2014 | 953445 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 2 316 363.26 | Осчетоводена |
| 14.10.2014 | 14.10.2014 | 466516 | Падеж по депозит Олихвяване на депозит на падеж. Сделка номер 29428 | Кт | 147 875.00 | 2 464 238.26 | Осчетоводена |
| 27.10.2014 | 27.10.2014 | 75480 | Олихвяване Олихвяване - | Кт | 211.24 | 2 464 449.50 | Осчетоводена |
| 27.10.2014 | 27.10.2014 | 84768 | Масирано събирана такса комисионна по тарифа на банката | Дт | 7.50 | 2 464 442.00 | Осчетоводена |

# EXHIBIT 70



## Фрея
## Транслейшънс

# Freya
# Translations

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

*Rectangular seal reading:*
"The District Court of Shumen
   Filing No.6036,
   Filed on 17th November 2014 at 10.05 a.m."

To:     The District Court of Shumen
        In commercial case 730/2013

## REPORT

By      .   Martin Milchev Apostolov,
            Trustee in bankruptcy for
            AYR PROPERTY DEVELOPMENT AD

            Address: Sofia, 60 Deyan Belishki St., fl. 5, apt. 15
            Tel.: 0888/610991

DEAR JUDGE,

1. In connection with Motion of filing No. 5924/7th November 2014 by ASSET
MANAGEMENT EAD as submitted to the District Court of Shumen and
Your Ruling of 7th November 2014, please find the information requested
from the creditor in the form of statements of account with holder AYR
PROPERTY DEVELOPMENT AD with Corporate Commercial Bank AD and
UniCredit Bulbank AD.

As of the date of receiving the creditor's request I have four statements of
account of the bank accounts held with Corporate Commercial Bank AD
showing details over the period starting at the beginning of October and
ending on 6th November 2014. As for the account with Unicredit Bulbank AD
a statement of account as of 10th September 2014 has been made available to
me.

In meeting the requirement to immediately supply the information requested
I kindly attach hereto the statements of account made available to me. I will
later on submit information about account movement for each account
starting from the date of its opening through 7th November 2014.

AYR PROPERTY DEVELOPMENT AD has opened four accounts with Corporate Commercial Bank AD and two accounts with Unicredit Bulbank" AD, one of which was closed on 21st January 2013. As evident from the presented statements of account, the cash in hand kept in the accounts with CCB as of on 6th November 2014 is as follows:

*(continues on the next page)*

1) Account #: BG21 KORP 9220 0120 01 – BGN 97,500,000
2) Account #: BG21 KORP 9220 0120 02 – BGN 2,000,000
3) Account #: BG21 KORP 9220 0120 03 – BGN 1,000,000
4) Account #: BG21 KORP 9220 0120 51 – BGN 2,464,442

As of 10th September the money on deposit in account #: BG59 UNCR 70001520115399 with Unicredit Bulbank AD is BGN 1,005.11.

Within the next few days I shall have more detailed information concerning the accounts movement in the bank accounts of the company held with the above banks since the date of their opening and shall immediately present it to the court and the Creditors Committee.

Please kindly find enclosed the September and October reports to the court under Art. 659, Para 2 of the Commercial Act.

Respectfully submitted:

*Signed ill.*
Martin Apostolov

*The undersigned, Ilka Simeonova Dyulgerova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Report of filing No.6036, dated 17th November 2014, as filed by Martin Apostolov, trustee in bankruptcy for APD, dated 20 June 2014. This translation has 2 (two) pages.*

Translator: _____ Ilka Simeonova Dyulgerova



ДО

ШУМЕНСКИ ОКРЪЖЕН СЪД

т. дело № 730/2013 год.

# О Т Ч Е Т

от Мартин Милчев Апостолов, в качеството на синдик

на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД

адрес: гр. София, ул. „Деян Белишки", № 60, ет. 5, ап.

15, тел. 0888/610 991

УВАЖАЕМИ ГОСПОДИН СЪДИЯ,

1. Във връзка с молба на „АСЕТ МЕНИДЖМЪНТ" ЕАД вх. № 5924/07.11.2014 год. до ШОС и Ваше разпореждане 07.11.2014 год., Ви представям исканата от кредитора информация, като представям извлечение от банковите сметките на „ЕЪР ПРОПЪРТИ ДИВЕЛОПМЪНТ" АД в „КОРПОРАТИВНА ТЪРГОВСКА БАНКА" АД и „УНИКРЕДИТ БУЛБАНК" АД.

Към датата на получаване на молбата на кредитора разполагам с извлечение от банковите сметките (общо четири) в „Корпоративна търговска банка" АД за период месец октомври – 06.11.2014 год., а за сметките в „УНИКРЕДИТ БУЛБАНК" АД (една) разполагам с извлечение към дата 10.09.2014 год.

С оглед на изискването за незабавно предоставяне на исканата информация, прилагам към настоящия отчет извлеченията от сметките с които разполагам, а допълнително ще предоставя информация за

движението по всички сметки от датата на тяхното откриване до 07.11.2014 год.

„ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД е открило четири сметки в „Корпоративна търговска банка" АД и две в „Уникредит Булбанк" АД, от които едната е закрита на 21.01.2013 год. Видно от представените извлечения наличностите по сметките в „Корпоративна търговска банка" АД към счетоводна дата 06.11.2014 год. са както следва:

1) BG21 KORP 9220 2029 0120 01 – 97 500 000 лева.

2) BG21 KORP 9220 2029 0120 02 – 2 000 000 лева.

3) BG21 KORP 9220 2029 0120 03 – 1 000 000 лева.

4) BG21 KORP 9220 2029 0120 51 – 2 464 442 лева.

Наличностите по сметката в „Уникредит Булбанк" АД IBAN - BG59 UNCR 70001520115399, към 10.09.2014 год. е 1 005.11 лева.

До няколко дни ще имам подробна информация за движението по банковите сметки на дружеството в двете банки, от датата на тяхното откриване, като незабавно ще предоставя информацията на съда и комитета на кредиторите.

Прилагам отчетите до съда по чл. 659, ал. 2 ТЗ за месеците септември и октомври.

С уважение:

Мартин Апостолов

# EXHIBIT 71



*Фрея*
*Транслейшънс*

*Freya*
*Translations*

Преводи от и на чужди езици

гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
e-mail: freyatranslations@gmail.com

*Translation from Bulgarian*

## AYR PROPERTY DEVELOPMENT AD
### (Declared bankrupt)

**TRUSTEE IN BANKRUPTCY**
**Ganka Kolyovska, Mrs.**
Sofia, kv.Musagenitsa
1a Climent Ohridski Blvd, office 2
Tel.: 02 870 05 02;
mobile: 0888391174;
E-mail: syndic@abv.bg

To:      THE CREDITORS OF AYR PROPERTY DEVELOPMENT AD
         In case 730/2013 before the Shumen District Court

### REQUEST
From Ganka Kolyovska, permanent trustee in bankruptcy

DEAR CREDITORS,

I was elected by the votes of almost all creditors (holding 99.99% of the claims where the creditor holding a claim in the amount of 0.01% did neither participate nor send his/her representative) at the meetings. The same percent of creditors' votes approved all my actions both at the creditors' meeting held on October 11, 2013 and at the meetings held on April 15, 2014 and June 30, 2014.

**For me, acting as the trustee in bankruptcy, the resolutions adopted at the above mentioned creditors' meetings are the uncontested evaluation of my work, and this evaluation is the highest possible one.**

Meanwhile starting from September 2013 till present numerous actions have been taken against me, which seriously hamper my work, both personally (also affecting my family) and professionally. All these actions are aimed at one and the same purpose of removing me from the post of trustee in bankruptcy for Ayr Property Development AD ("APD") by employing any means outside the court action. It is a publicly known fact that all the attacks against me were undertaken by the representatives of First Investment Bnk AD ("FIB") and by persons engaged by the latter. What this bank wants from me is to do certain things and take certain actions in their favour, which in my opinion run absolutely counter to the laws therefore I refused to do so. Moreover if the actions required by FIB were taken, the trustee would violate not only the Commercial Act ("CA") but the Criminal Code ("CC") too.

FIB cast imputations on me, on my family and on the business companies for which I work as a trustee, and also addressed to the Ministry of Justice, the Supreme Judicial Council and the National Revenue Agency. Since the bank failed with the 18 audits caused to be made of



all the companies for which I work, since nothing was achieved by the inspections caused to be made by the officials of the Inspectorate of the Supreme Judicial Council and the Ministry of Justice (all of which have found that no violations existed) and since it failed to achieve its goals with the attack against me and my family by employing the media and the bodies of the National Revenue Agency, currently an attempt is being made to achieve some result by an abuse of right in case 730/2013 before the Shumen District Court ("ShDC"). What I mean is as follows:

Today, this July 11, 2014 representatives of UniCredit Bulbank AD advised me of the contents of FIB's Motion of Ref. No.3838 filed on July 9, 2014 at 16:45 with the Shumen District Court, which seeks an interim trustee to be appointed in the case, because according to the Art.717n CA creditor I don't meet the requirements of Art.655 CA. This is absolutely not true as of present and the creditor should have known the laws, meaning that it is not entitled to make the requests contained in the motion. But the motion speaks for itself – it was filed within less than 24 hours after the Ruling delivered by the Sofia City Court ("SfCC") in case 756/2010 was sent to be published on the Commercial Register (there is no way for someone who is not a party to the case and has no points of contact with the debtor and the creditors to find out immediately "by chance" of any action in a case, which is none of this someone's concern). **FIB has sent the Motion requesting my removal from office even before I myself became aware of this act of the Court (the SfCC)**. The motion contains a proposal for the trustee, who served as an interim trustee in the case heard by the Sofia City Court, to be appointed as the new interim trustee in this case … until present the trustee appointed by the SfCC in case No.756/2010 has not yet exercised his powers to contact me for the purpose of "defending" the interest of the creditors, for which the replacement in the SfCC was made. Meanwhile however he gave his approval for an appointment to be made in case 730/2013 before the ShDC. All this was made before I could succeed in exercising my right to notify with due care not only the Court but also the creditors, which I did as soon as I received the information available on the Commercial Register kept by the Registry Agency. By a notice dated July 9, 2014 addressed to the Bankruptcy Court and the Creditors I advised them of the changes in the circumstances occurred in that certain case (case No.756/2919 in the SfCC), which in case of any unfavourable development might affect the instant case.

Currently I'm preparing an appeal from Ruling No.7567 of July 2, 2014 delivered by SfCC in case No.756/2010, as published on the Commercial Register kept by the Registry Agency on July 8, 2014.

Despite that the grounds for trustee's replacement as alleged by FIB are non-existent, I'm of the opinion that other grounds exist for my replacement as trustee, which I believe that you as creditors should discuss and weigh. What I mean is as follows:

During the past weeks I was the target of a monstrous to say the least pressure exerted on me as well as threats for my actions as the trustee in this case. Some of them were even made as a show off in public, before all the creditors. Once again not only me, but the members of my family too, were subjected to harassment, threats, phone calls by so called "well-wishers" … For the first time I feel seriously threatened and even endangered. This affects my daily work and in fact makes it impossible for me to continue with exercising my powers. Given the existing situation I have to request to be replaced immediately, otherwise this could lead to serious consequences for me as a professional and also to harming the interests of the creditors and the debtor.



3

I'm aware of your request for a Creditors' Meeting to be called for the purpose of selecting a second trustee in bankruptcy, **but this shall not change the situation affecting my work, which also has an immediate effect on all of you**. But the provision of Art.660, Para 1 about exercising my powers with due care and the timely notification of the creditors as well as the diligent attitude, which I have to observe obligate me to also consider the issues from the perspective of your interests.

Therefore,

I hereby advise you of the circumstances detailed above and with a view to the scenario set forth in Art.657, Para 1(4) CA dealing with the possibility to request trustee's IMMEDIATE discharge and replacement if you find it necessary and pursuant to Art.657, Para 8 CA propose to the Court a person to be appointed as trustee in accordance with your interests presented in the bankruptcy proceedings of Ayr Property Development AD.

Date: July 11, 2014

Respectfully:
*Signed*
Ganka Kolyovska, Trustee in Bankruptcy for APD
*Rectangular stamped seal of Ganka Kolyovska, Trustee in Bankruptcy; commercial case 730/2013 of the Shumen District Court.*

---

*The undersigned, Boryana Ilieva Stefanova, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Trustee's in Bankruptcy Request to the Creditors of Ayr Property development AD. This translation has 3 (three) pages.*

Translator: _____
Boryana Ilieva Stefanova

# "ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД

в несъстоятелност, т.д. № 730 по описа за 2013 година на ШОС

**СИНДИК**
Ганка КОЛЬОВСКА
София, кв."Мусагеница"
Бул. „Кл. Охридски" 1а, оф.2
Тел. 02 870 05 02, 0888391174;
e-mail: syndic@abv.bg

До:
КРЕДИТОРИТЕ НА
„ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД

**по т.д. 730/2013 на ШОС**
по описа на ШУМЕНСКИ ОКРЪЖЕН СЪД

# М О Л Б А

от Ганка Янева Кольовска – постоянен синдик

УВАЖАЕМИ КРЕДИТОРИ,

Избрана съм с гласовете на почти всички кредитори /99,99%/, като кредиторът с вземане в размер на 0,01% не участва в заседанията и не изпраща представител/. Със същия процент от гласовете на кредиторите са одобрени всички мои действия, както на събранието на кредиторите, проведено на 11.10.2013 г., така и на събранията, проведени на 15.04.2014 г. и 30.06.2014 година.

**За мен като синдик, посочените решения на събранията на кредиторите са безспорната оценка за моята работа, а тя е възможно най-високата.**

В същото време от м. септември 2013 година и до момента спрямо мен са реализирани стотици действия, които затормозяват моята работа, създават сериозни пречки в личен, семеен и служебен план. Целта бе една единствена – да бъда отстранена като синдик на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД с ползването на средства извън делото. Обществено известно е, че цялата атака срещу мен е от представителите на „ПИБ" АД и ангажирани от тях лица. Искането на тази банка е да извърша посочени от тях действия в тяхна полза, които по моя преценка категорично противоречат на закона и по тази причина са отказани от мен. Нещо повече, ако исканите от „ПИБ" АД действия се извършат, синдикът ще наруши не само ТЗ, но и НК.

От „ПИБ" АД бяха изпратени сигнали срещу мен, моето семейство и търговските дружества, в които работя като длъжностно лице синдик в МП, ВСС, НАП. След като не успяха 18-те ревизии спрямо всички дружества, с които имам служебни отношения, след като нищо не бе постигнато с предизвиканите проверки на Инспектората на ВСС и на МП /приключили с констатация за липса на нарушения/, след като не постигна целите си атаката срещу мен и моето семейство, реализирана чрез медии и органите на НАП, в момента се прави опит да се постигне резултат със злоупотреба с право по т.д.730 по описа за 2013 на ШОС. Имам предвид следното:

Днес, 11.07.2014 година, бях уведомена от представителите на „УНИКРЕДИТ БУЛБАНК" АД за текста на Молба от „ПИБ" АД, вх.№3838 от 09.07.2014 г., подадена в 16,45 ч. в ШОС, с която се иска назначаване на служебен синдик по делото, тъй като според кредитора по чл. 717н от ТЗ, не отговарям на изискванията на чл. 655 от ТЗ. Това категорично не е вярно в сегашния момент и кредиторът не може да не е наясно със закона, т.е. че няма право на предявените с молбата претенции. Но самата молба говори достатъчно



– подадена е в рамките на по-малко от 24 часа след изпращане на Определението по т.д. 756/2010 на СГС в ТР /няма как някой, който не е страна по делото и няма дори допирна точка с длъжника и кредиторите, незабавно „случайно" да узнае за действие по дело, което не го засяга/. **Молбата на „ПИБ" АД за моята смяна е изпратена преди самата аз да съм узнала за акта на съда /СГС/**, направено е предложение за служебен синдик да бъде същото лице, назначено за служебен синдик по софийското дело..., до настоящия момент назначеният по т.д.756/2010 на СГС синдик не се е осъществил правомощията си на контакти с мен, на „защита" на интересите на кредиторите, за които е направена смяната в СГС. В същото време е дал съгласие за назначаване по т.д.730/2013 на ШОС. И всичко това преди да реализирам правото си на добросъвестно уведомление не само на съда, но и на кредиторите, което направих незабавно след като получих информация чрез ТР на АВ. С уведомление от 09.07.2014 година до съда по несъстоятелност и до кредиторите, посочих настъпилите промени в обстоятелства по конкретно дело /т.д.756/2010 г. на СГС/, които при неблагоприятно развитие биха имали последици и по настоящото дело.

В момента подготвям жалба срещу Определение №7567 от 02.07.2014 г. по т.д.756 по описа за 2010 на СГС, публикувано в ТР на АВ на 08.07.2014 г.

Въпреки липсата на цитираното от „ПИБ" АД основание за смяна на синдика, считам че е на лице друго основание за моята смяна, което в качеството на кредитори считам, че следва да обсъдите и да прецените. А то е следното:

През последните седмици спрямо мен е приложен меко казано чудовищен натиск и заплахи за действията ми като синдик по настоящото дело. Някои от тях дори демонстративно публично отправени пред всички кредитори. Отново не само аз, но и семейството ми бе подложено на тормоз, заплахи, телефонни обаждания на „доброжелатели"... За първи път се чувствам сериозно изплашена и дори застрашена. Това се отразява на ежедневната ми работа и на практика води до невъзможност да осъществявам правомощията си. При това положение съм длъжна да поискам моята незабавна смяна, тъй като другото може да доведе както до сериозни последици спрямо мен като човек и специалист, така и до увреждане на интересите на кредиторите и длъжника.

Известно ми е искането Ви да свикване на събрание на кредиторите за избор на втори синдик, **но това не променя създалата се в моята работа ситуация, която има непосредствен ефект върху всички вас.** Но разпоредбата на чл. 660, ал. 1 за добросъвестно изпълнение на задълженията и своевременно уведомяване на кредиторите, както и добросъвестното отношение, което съм длъжна да осъществявам, ме задължават да разглеждам въпросите и от гл.т. вашия интерес.

По тази причина,

Ви иинформирам за посочените по-горе обстоятелства, включително и с оглед на хипотезата посочена в чл. 657, ал.1, т.4 от ТЗ , разглеждаща възможността , при преценка от необходимост да поискате НЕЗАБАВНА смяна на синдика, като на основание чл. 657, ал. 8 посочите синдикът, който съдът да назначи, съобразено с представените Ваши интереси в производството по несъстоятелност водено спрямо Еър Пропърти Девелопмънт АД.

11.07.2014 г.

С уважение:
Ганка КОЛЬОВСКА – синдик на „ЕЪР ПРОПЪРТИ ДЕВЕЛОПМЪНТ" АД в несъстоятелност

# EXHIBIT 72

(Excerpts)
Commercial register
IZDATELSKO POLIGRAFICHESKI COMPLEX RODINA AD
General information

| | |
|---|---|
| 1. Unified company identification code (EIK) | 831643301 |
| 2. Company name | ИЗДАТЕЛСКО ПОЛИГРАФИЧЕСКИ КОМПЛЕКС РОДИНА |
| 3. Legal format | Shareholders company |
| 4. Transliteration | IZDATELSKO POLIGRAFICHESKI COMPLEX RODINA (Printing and publishing complex Rodina) |
| 5. Seat and management address | BULGARIA District Sofia, Municipality Stolichna City of Sofia 1764 Mladost district 113A Tsarigradsko Shose boulevard |
| 6. Scope of activities | General editing, publishing, printing, informational and commercial activity at home and abroad, renting of areas and machinery, as well as any other activity not forbidden by law |
| 6a. Main activity according to the National classifier of commercial activities | Code from the National classifier: 22 Main economical activity according to the National classifier Printing and publishing |
| 10. Representatives | Teodora Petrova Taneva |
| 11. Type of representation | Deleted circumstance |
| 12. Board of Directors | Teodora Petrova Taneva Martin Milchev Apostolov |
| 13. Managing Board | Deleted circumstance |
| 14. Supervising Board | Deleted circumstance |

**Capital**

| | |
|---|---|
| 31. Amount | 6,600,000 |
| 31a. Shares | Share: Type: common, registered, Number: 6,600,000, Nominal value: 1 BGN |
| 32. Paid-up capital | 6,600,000 |

**Board of directors**

| | Board of directors |
|---|---|
| 8 Apr 2015 12:25:26 h | Teodora Petrova Taneva Martin Milchev Apostolov Lyudmila Georgieva Petrova – deleted circumstance |
| 5 Mar 2014 10:20:59 | Irena Angelova Krasteva – deleted circumstance Martin Milchev Apostolov Lyudmila Georgieva Petrova Teodora Petrova Taneva Erich Span – deleted circumstance Bistra Georgieva Djagarova – deleted circumstance Date of mandate expiry: 19 Dec 2013 – deleted circumstance |

| 22 Jan 2010<br>15:31:33 | Irena Angelova Krasteva<br>Erich Span<br>Teodora Petrova Taneva – deleted circumstance<br>Bistra Georgieva Gadjarova<br>Date of mandate expiry: 19 Dec 2013 |
|---|---|
| 24 Aug 2009<br>12:47:25 | Irena Angelova Krasteva<br>Teodora Petrova Taneva<br>Tsvetan Radoev Vasilev – deleted circumstance<br>Bistra Georgieva Djagarova<br>Date of mandate expiry: 19 Dec 2013 |
| 9 Jan 2009<br>16:49:47 | Irena Angelova Krasteva<br>Bistra Georgieva Djagarova<br>Tsvetan Radoev Vasilev<br>Date of mandate expiry: 19 Dec 2013 |

**Representatives**

| 5 Mar 2014<br>10:20:59 | Irena Angelova Krasteva – deleted circumstance<br>Teodora Petrova Taneva |
|---|---|
| 9 Jan 2009<br>16:49:47 | Vasil Vasilev Zahariev – deleted circumstance<br>Irena Angelova Krasteva<br>Alexandar Kirilov Georgiev – deleted circumstance |
| 19 Nov 2008<br>09:11:49 | Lubomir Milanov Yanchev – deleted circumstance<br>Alexander Kirilov Georgiev<br>Vasil Vasilev Zahariev<br>Alexandar Kirilov Georgiev – deleted circumstance<br>Silvia Tsenkova Ivanova – deleted circumstance |
| 14 Nov 2008<br>14:37:46 | Lyubomir Milanov Yanchev<br>Silvia Tsenkova Ivanova<br>Alexandar Kirilov Georgiev |

This translation has been made by Dimitar Blagovestov Yanakiev, Attorney-at-Law, member of the Bar Association in the city of Varna, Republic of Bulgaria:

/Dimitar Yanakiev/

**МИНИСТЕРСТВО НА ПРАВОСЪДИЕТО**
**АГЕНЦИЯ ПО ВПИСВАНИЯТА**

# Търговски регистър и регистър на ЮЛНЦ


Български

Начало

За агенцията

Справки

Електронни услуги

Нормативна уредба

Документи

Видео уроци

Новини

Връзки

Сигнали и предложения

Тестово подписване

Търсене на търговец или клон на чуждестранен търговец, ЮЛНЦ или клон на чуждестранно ЮЛНЦ

Въведете сбора:

ЕИК: 8 3 1 6 4 3 3 0 1

състояние към дата

[Търси]   [Изчисти]

"ИЗДАТЕЛСКО-ПОЛИГРАФИЧЕСКИ КОМПЛЕКС РОДИНА" АД

Общ статус   Обявени актове   Актуален учредителен акт   Дело

**Основни обстоятелства**

| 1. ЕИК/ПИК | 831643301 | 20081114143746 | История | Документи |
|---|---|---|---|---|
| 2. Фирма/ Наименование | ИЗДАТЕЛСКО-ПОЛИГРАФИЧЕСКИ КОМПЛЕКС РОДИНА | 20081114143746 | История | Документи |
| 3. Правна форма | Акционерно дружество | 20081114143746 | История | Документи |
| 4. Изписване на чужд език | IZDATELSKO-POLIGRAFICHESKI KOMPLEKS RODINA | 20081114143746 | История | Документи |
| 5. Седалище и адрес на управление | БЪЛГАРИЯ област София (столица), община Столична гр. София 1784 район Младост, ж.к. Младост, бул. Цариградско шосе № 113А. тел.: 9 752 406, факс: 9 752 496 Електронна поща: ipk@ipkrodina.com, Интернет страница: www.ipkrodina.com | 20081114143746 | История | Документи |
| 6. Предмет на дейност | КОМПЛЕКСНА РЕДАКЦИОННО-ИЗДАТЕЛСКА, ПОЛИГРАФИЧЕСКА, ИНФОРМАЦИОННА, ИНЖЕНЕРИНГОВА И ТЪРГОВСКА ДЕЙНОСТ В СТРАНАТА И ЧУЖБИНА, ОТДАВАНЕ ПОД НАЕМ НА ПЛОЩИ И ОСНОВНИ СРЕДСТВА, КАКТО И ВСЯКА ДРУГА ДЕЙНОСТ, НЕЗАБРАНЕНА ОТ ЗАКОНА. | 20081114143746 | История | Документи |
| 6а. Основна дейност по НКИД | Код КИД: 22 Основна икономическа дейност от КИД: ИЗДАТЕЛСКА И ПОЛИГРАФИЧЕСКА ДЕЙНОСТ | 20081114143746 | История | Документи |
| 10. Представители | Теодора Петрова Танева | 20140305102059 | История | Документи |
| 11. Начин на представляване | Заличено обстоятелство | 20090109164947 | История | Документи |
| 12. Съвет на директорите | Теодора Петрова Танева Мартин Милчев Апостолов | 20150408122526 | История | Документи |
| 13. Управителен съвет | Заличено обстоятелство | 20090109164947 | История | Документи |
| 14. Надзорен съвет | Заличено обстоятелство | 20090109164947 | История | Документи |

**Капитал**

| 31. Размер | 6600000 лв. | 20140305102059 | История | Документи |
|---|---|---|---|---|
| | Права: | | | |
| 31а. Акции | Акция: Вид: обикновени поименни, Брой: 6 600 000, Номинал: 1 лв. | 20140305102059 | История | Документи |
| 32. Внесен капитал | 6600000 лв. | 20140305102059 | История | Документи |
| 33. Непарична вноска | Описание: АПОРТНА ВНОСКА - ПРАВО НА СОБСТВЕНОСТ ВЪРХУ ЗЕМЯ - УРЕГУЛИРАН ПОЗЕМЛЕН ИМОТ (УПИ) IV, С ПЛОЩ 56640 КВ.М., НАХОДЯЩ СЕ В ГР.СОФИЯ, РАЙОН МЛАДОСТ, КВ. 12, МЕСТНОСТ "ХЪРО", СЪГЛАСНО АКТ ЗА ДЪРЖАВНА СОБСТВЕНОСТ 00104/1997Г. НА ОБЛАСТНИЯ УПРАВИТЕЛ НА ГР.СОФИЯ. СРЕЩУ АПОРТНА ВНОСКА БЪЛГАРСКАТА ДЪРЖАВА Е ПРИДОБИЛА НА 03.05.1999Г. 10695(ДЕСЕТ ХИЛЯДИ ОСЕМСТОТИН ДЕВЕТДЕСЕТ И ПЕТ) БРОЯ НОВИ АКЦИИ, С НОМИНАЛ 1(ЕДИН) ЛЕВ ВСЯКА, КОИТО ПОНАСТОЯЩЕМ СА ОТЧУЖДЕНИ. Стойност: 10695 лв. Номер на акт за назначаване на вещи лица: / | 20081114143746 | История | Документи |

© 2007 Агенция по вписванията

Съвет на директорите

**Съвет на директорите**

08.4.2015 г. 12:25:26

Теодора Петрова Танева
**Мартин Милчев Апостолов**
Людмила Георгиева Петрова - **Заличено обстоятелство**

05.3.2014 г. 10:20:59

ИРЕНА АНГЕЛОВА КРЪСТЕВА - **Заличено обстоятелство**
Мартин Милчев Апостолов
Людмила Георгиева Петрова
Теодора Петрова Танева
ЕРИХ ШПАН - **Заличено обстоятелство**
Дата на изтичане на мандата: 19.12.2013 - **Заличено обстоятелство**
БИСТРА ГЕОРГИЕВА ДЖАГАРОВА - **Заличено обстоятелство**

22.1.2010 г. 15:31:33

ИРЕНА АНГЕЛОВА КРЪСТЕВА
ЕРИХ ШПАН
ТЕОДОРА ПЕТРОВА ТАНЕВА - **Заличено обстоятелство**
Дата на изтичане на мандата: 19.12.2013
БИСТРА ГЕОРГИЕВА ДЖАГАРОВА

24.8.2009 г. 12:47:25

ИРЕНА АНГЕЛОВА КРЪСТЕВА
ТЕОДОРА ПЕТРОВА ТАНЕВА
Дата на изтичане на мандата: 19.12.2013
ЦВЕТАН РАДОЕВ ВАСИЛЕВ - **Заличено обстоятелство**
БИСТРА ГЕОРГИЕВА ДЖАГАРОВА

09.1.2009 г. 16:49:47

ИРЕНА АНГЕЛОВА КРЪСТЕВА
БИСТРА ГЕОРГИЕВА ДЖАГАРОВА
ЦВЕТАН РАДОЕВ ВАСИЛЕВ
Дата на изтичане на мандата: 19.12.2013

18, 11:41 AM

Представители

**Представители**

| | |
|---|---|
| 05.3.2014 г. 10:20:59 | ИРЕНА АНГЕЛОВА КРЪСТЕВА - **Заличено обстоятелство**<br>Теодора Петрова Танева |
| 09.1.2009 г. 16:49:47 | ВАСИЛ ВАСИЛЕВ ЗАХАРИЕВ - **Заличено обстоятелство**<br>ИРЕНА АНГЕЛОВА КРЪСТЕВА<br>АЛЕКСАНДЪР КИРИЛОВ ГЕОРГИЕВ - **Заличено обстоятелство** |
| 19.11.2008 г. 09:11:49 | ЛЮБОМИР МИЛАНОВ ЯНЧЕВ - **Заличено обстоятелство**<br>АЛЕКСАНДЪР КИРИЛОВ ГЕОРГИЕВ<br>ВАСИЛ ВАСИЛЕВ ЗАХАРИЕВ<br>АЛЕКСАНДЪР КИРИЛОВ ГЕОРГИЕВ - **Заличено обстоятелство**<br>СИЛВИЯ ЦЕНКОВА ИВАНОВА - **Заличено обстоятелство** |
| 14.11.2008 г. 14:37:46 | ЛЮБОМИР МИЛАНОВ ЯНЧЕВ<br>СИЛВИЯ ЦЕНКОВА ИВАНОВА<br>АЛЕКСАНДЪР КИРИЛОВ ГЕОРГИЕВ |

# EXHIBIT 73

LIST

of the persons (shareholders) who registered new shares from the increase of the capital of IZDATELSKO-POLIGRAFICHESKI COMPLEX RODINA AD, listed at the commercial register at the Registry Agency with unified identification code 831643301, having its main seat and address at the city of Sofia, Mladost district, 113A Tsarigradsko Shose boul. (hereinafter referred as "the Company"), pursuant to a resolution of the general assembly, held on 12 Feb 2014

| No | name/shareholder | personally/ legal representative/ proxy | Common, registered shares with the right to vote owned before the increase | Newly registered common, registered shares with the right to vote and nominal value of 1 BGN each, overal nominal value of the registered shares from the increase | Overal shares owned after the increase | Signature |
|----|-----------------|-----------------------------------------|---------------------------------------------------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------|----------------------------------------|-----------|
| 1 | "OBEDINENI BALGARSKI VESTNITSI" AD | Legal representative | 791,097 shares | 5,781,252 shares | 6,572,349 shares | signed ill. Irena Krasteva |
| | | OVERAL | 791,097 shares 96.62% from the capital | 5,781,252 shares Overal value: 5,781,252 BGN | 6,572,349 shares 99.58% from the capital | |

Board of directors of IZDATELSKO-POLIGRAFICHESKI COMPLEX RODINA AD

| signed ill. Irena Krasteva | signed ill. Bistra Djagarova | signed ill. Chairman of the General Assembly: Irena Krasteva | signed ill. Secretary of the General Assembly: Zhana Kanelova |
|---|---|---|---|

This translation has been made by Dimitar Blagovestov Yanakiev, Attorney-at-Law, member of the Bar Association in the city of Varna, Republic of Bulgaria:

/Dimitar Yanakiev/

**С П И С Ъ К**

на лицата /акционерите/, записали новите акции от увеличаването на капитала на

„ИЗДАТЕЛСКО-ПОЛИГРАФИЧЕСКИ КОМПЛЕКС РОДИНА" АД, вписано в Търговския регистър при Агенция ло вписванията с ЕИК 831643301,  със седалище и адрес на управление гр. София, район „Младост", бул. „Цариградско шосе" № 113 А (наричано по-долу за краткост „дружеството"), съгласно решение на общото събрание на дружеството, проведено на 12.02.2014 г.

| № | име/акционер | Лично/ законен/ упълномощен представител | Притежавани преди увеличението обикновени поименни акции с право на глас и номинал 1 лв. всяка | Новозаписани от увеличението обикновени поименни акции с право на глас и номинал 1 лв. всяка, обща номинална стойност на записаните акции от увеличението | Общо притежавани акции след увеличението | подпис |
|---|---|---|---|---|---|---|
| 1 | „ОБЕДИНЕНИ БЪЛГАРСКИ ВЕСТНИЦИ" АД, ЕИК 131153187 | Законен представител | 791 097 броя, | 5 781 252 броя | 6 572 349  броя | Ирена Кръстева |
| | | ОБЩО: | 791 097 броя, 96.62 % от капитала | 5 781 252 броя, Обща  стойност 5 781 252 лева | 6 572 349 броя, 99.58 % от  капитала | |

**СЪВЕТ НА ДИРЕКТОРИТЕ**
**НА  „ИЗДАТЕЛСКО-ПОЛИГРАФИЧЕСКИ КОМПЛЕКС РОДИНА" АД:**

Ирена Кръстева                    Бистра Джагарова

Председател на ОС: (Ирена Кръстева)

Секретар – преброител на ОС: (Жана Канелова)

# EXHIBIT 74

23 October 2015

**By Courier, Email and Facsimile**

Crusher Investment Limited
PO Box 287,
4th Floor, West Wing Trafalgar Court,
Admiral Park, St. Peter Port,
Guernsey GY1 3RL

*FAO: Kevin Allan*

(email: kallan@tridenttrust.com; fax: 01481 723162)


Dear Sirs

**Sub: Equity Swap Transaction dated 5 September 2012 between Technology Center-Institute of Microelectronics/TC-IME/AD and Crusher Investment Limited ("TRS")**

We refer to the TRS.

Pursuant to sub-paragraph (v) of the paragraph headed "Early Termination Amount" of the TRS, we write to notify you that we designate Empreno Ventures Limited ("Empreno") as our nominated entity to receive the Shares (as defined in the TRS).

Further to sub-paragraph (v) of the paragraph titled "Early Termination Amount" in the TRS, please deliver all the Shares to Empreno. Empreno is ready to receive immediate delivery of the Shares and this letter constitutes a formal request to you to deliver the Shares to Empreno.

Yours sincerely


Technology Center-Institute of Microelectronics/TC-IME/AD

CC

Empreno Ventures Limited

# EXHIBIT 75



*Фрея*        *Freya*
*Транслейшънс*        *Translations*

Преводи от и на чужди езици
гр. Варна, ул. Н. Вапцаров № 3, вх. Г, ет. 8, офис 21, тел. +359 52 712 522, факс +359 52 712 533
E-mail: freyatranslations@gmail.com, freyatranslations@abv.bg

*Translation from Bulgarian*

## RULING No.545
### Town of Shumen, 2nd December 2015

The Shumen District Court, Commercial Divisions sitting in camera on second of December 2015 and panel composed of:

Presiding Judge: Konstantin Mollov

heard commercial case No.730 in the docket of the above court for 2013 as briefed by the reporting judge Konstantin Mollov and in order to deliver a judgment the instant court looked into the following:

By virtue of Decision No. 154 of 2nd December 2015 and pursuant to Art.632, Para 2 of the Commerce Act (CA) the court resumed the bankruptcy proceedings, subject matter of this case, as result of the fact that on 26th November 2015 the creditor UniCredit Bulbank AD deposited the amount of 22,520.00 Bulgarian levs as determined by the court in the instant court's Ruling of 27th October 2014 made under Art.629b CA, which funds were required to cover the bankruptcy proceeding costs.

After UniCredit Bulbank AD lodged their motion, the creditor Silver Beach EAD lodged another motion under Art.632Para 2 CA of filing No.5904 of 30th November 2015, where a property of the debtor was indicated, against which according to the movant actions for collection and liquidation could be taken.

In view of the foregoing Mr. Martin Milchev Apostolov, acting as the Trustee in Bankruptcy for Ayr Property Development AD (declared bankrupt), having EIK 200958720, Targovishte, should be directed to specify and indicate a special bank account to which UniCredit Bulbank AD shall remit the amount of BGN 22,500.00 upon entry into full force and effect of the court decision to resume the proceeding in the case.

Then, the trustee in bankruptcy having examined the data contained in the motion of Silver Beach EAD, shall submit to the Bankruptcy Court a report on the amount of money needed to cover the costs of the bankruptcy proceeding for a year ahead, the latter period commencing on the date when the Decision of the Court to resume the proceedings enters into full force and effect. Beside the costs for trustee's remuneration and accounting services, this report must show the amount of money needed for taking all appropriate actions to ensure collection and liquidation of pertinent property, as well as for all anticipated costs in filing lawsuits to collect the amounts due and replenish the bankruptcy estate. This report should be submitted to the Court within two week's period after the receipt of this Ruling.

In view of the foregoing and pursuant to Art.252 of the Civil Procedure Code (CPC) with reference to Art.621 CA, the Shumen District Court

### RULED as follows:

**Martin Milchev Apostolov, Trustee in Bankruptcy for Ayr Property Development AD** (declared bankrupt) of EIK (Company number): 200958720, the town of Targovishte, **IS DIRECTED** to specify and indicate a special bank account,

2

to which UniCredit Bulbank AD shall remit the amount of BGN 22,500.00 upon entry into full force and effect of the court decision to resume the proceeding in the case.

**Martin Milchev Apostolov, Trustee in Bankruptcy for Ayr Property Development AD** (declared bankrupt) of EIK (Company number): 200958720, the town of Targovishte, **IS DIRECTED** to submit within a two-week's period after the receipt of this ruling a report on the amount of money needed to cover the costs of the bankruptcy proceeding for a year ahead, the latter period commencing on the date when the Decision of the Court to resume the proceedings enters into full force and effect.

The Trustee's report must show the amount of money needed for taking all appropriate actions to ensure collection and liquidation of pertinent property, as well as for all anticipated costs in filing lawsuits to collect the amounts due and replenish the bankruptcy estate.

A copy of the Ruling and a copy of SEEK Foundation, LLC's Motion shall be sent to the permanent Trustee in Bankruptcy.

This Ruling shall be entered in the book kept under Art.634c, Para 1 CA.

**District Judge:** (signed ill.)

---

*The undersigned, Boryana Ilieva Stefanava, hereby attest that this is a true and correct translation from Bulgarian into English of the attached document – Ruling No.545 dated 2nd December 2015 issued by the Shumen District Court in case 730. This translation has 2 (two) pages.*

*Translator:*
*Boryana Ilieva Stefanova*

О П Р Е Д Е Л Е Н И Е
гр. Шумен 02.12.2015 г.

Шуменски окръжен съд, търговско отделение, в закрито заседание на втори декември две хиляди и петнадесета година в състав:

Окръжен съдия:   Константин Моллов

като разгледа докладваното от съдията Константин Моллов т. дело № 730 по описа за 2013 г. за да се произнесе, взе предвид:

С Решение № 154 от 02.12.2015 г. на основание чл.632, ал.2 от ТЗ е възобновил производството по несъстоятелност, предмет на настоящото дело, предвид обстоятелството, че кредиторът "Уникредит Булбанк" АД е внесъл определената от съда, с определението му от 27.10.2014 г. по чл. 6296 от ТЗ, сума за покриване на текущите разноски в размер на 22 520.00 лв. на 26.11.2015 г.

След молбата на "Уникредит Булбанк" АД е постъпила молба по чл.632, ал.2 от ТЗ и от кредитора „Силвър бийч" ЕАД с вх. № 5904/30.11.2015 г., в която е посочено имущество на длъжника, за което според молителя следва да се предприемат действия за събирането и осребряването му.

С оглед на гореизложеното ще следва да се укаже на синдика на "Еър пропърти девелопмънт" АД (в несъстоятелност), ЕИК 200958720, град Търговище Мартин Милчев Апостолов да уточни и посочи особената банкова сметка, по която след влизане в сила на решението за възобновяване на производството ще бъде преведена внесената от "Уникредит Булбанк" АД сума в размер на 22 520.00 лв.

На следващо място синдика, след анализ на данните съдържащи се в молбата на „Силвър бийч" ЕАД да представи на съда по несъстоятелността доклад за необходимата парична сума, която да покрие разноските на производството по несъстоятелност в рамките на една година, считано от датата, на която влезе в сила решението на съда за възобновяване на производството, като се вземат предвид не само разходите за възнаграждение на синдика и за счетоводно обслужване, но и необходимите суми за предприемане на съответните действия за събиране и осребряване на съответното имущество, включително и разноските по делата, които ще следва да бъдат заведени във връзка със събиране на имуществото и попълване масата на несъстоятелността. Докладът следва да бъде депозиран в съда в двуседмичен срок, считано от датата на получаване на настоящото определение.

Водим от горното, иа основание чл.252 от ГПК във вр. с чл.621 от ТЗ, Шуменският окръжен съд

О П Р Е Д Е Л И :

Указва на синдика на "Еър пропърти девелопмънт" АД (в несъстоятелност), ЕИК 200958720, град Търговище Мартин Милчев Апостолов да уточни и посочи особената банкова сметка, по която след влизане в сила на решението за възобновяване на производството ще бъде преведена внесената от "Уникредит Булбанк" АД сума в размер на 22 520.00 лв.

Указва на синдика на "Еър пропърти девелопмънт" АД (в несъстоятелност), ЕИК 200958720, град Търговище Мартин Милчев Апостолов, в двуседмичен срок ,

1

считано от датата на получаване на настоящото определение да представи на съда по несъстоятелността несъстоятелността доклад за необходимата парична сума, която да покрие разноските на производството по несъстоятелност в рамките на една година, считано от датата, на която влезе в сила решението на съда за възобновяване на производството.

В доклада да бъде включени сумите необходими за предприемане на съответните действия за събиране и осребряване на съответното имущество, включително и разноските по делата, които ще следва да бъдат заведени във връзка със събиране на имуществото и попълване масата на несъстоятелността.

Препис от определението и от молбата на „Силвър бийч" ЕАД да се изпрати на постояния синдик.

Определението да се впише в книгата по чл.634в, ал.1 от ТЗ.

Окръжен съдия:

2