> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED:  09/30/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
RUDERSDAL, EEOD, et al.                          :
                                                 :
                                  Plaintiffs,    :
                                                 :              1:18-cv-11072-GHW
               -against-                         :
                                                 :              MEMORANDUM OPINION
PHILIP ROBERT HARRIS, et al.                     :                  AND ORDER
                                                 :
                                                 :
                                  Defendants.  :
--------------------------------------------------------------X


GREGORY H. WOODS, United States District Judge:

     Plaintiffs allege that the many Defendants[1] in this case, most of whom are Bulgarian,

engaged in a complex conspiracy to fraudulently transfer $65 million (97,500,000 BGN) from a

Bulgarian bank account to five Bulgarian companies, depriving the Bulgarian Plaintiffs of their right

to the funds.  The allegedly stolen funds were generated from the sale of Bulgarian land during a

Bulgarian company's Bulgarian bankruptcy proceedings.  In light of such a facially foreign fact

pattern, most Defendants unsurprisingly moved to dismiss for lack of personal jurisdiction and *forum*

*non conveniens*.  Before the Court is the Report and Recommendation (the "R&R") issued by

Magistrate Judge Robert W. Lehrburger, dated August 18, 2020.  Dkt. No. 324.  Judge Lehrburger

recommended that the claims against the Moving Defendants[2] be dismissed for lack of personal

jurisdiction and that, in the alternative, the case should be dismissed on the basis of *forum non*

*conveniens*.  He also denied a motion by Plaintiffs for jurisdictional discovery.  For the reasons

explained below, the R&R is accepted and adopted in full, with two exceptions:  Bank of New York

---

[1] Unless otherwise defined in this memorandum opinion and order, all defined terms have the meaning ascribed to them
in the R&R.  However, as used in this opinion, "Defendants" refers to all Defendants in this action, while Judge
Lehrburger used "Defendants" to refer only to those who moved to dismiss.
[2] All Defendants other than Bank for Foreign Trade of the Russian Federation (a/k/a VTB Bank), Anthony Dennis
Harriott, Grant Capital Investments, Ltd., Chavdar Angelov Angelov, All Seas Management, Ltd., and Blue Finance
Limited.

Mellon ("BNYM") is not dismissed from the case and the Court will solicit further briefing on whether the theory of conspiracy jurisdiction endorsed by the Second Circuit in *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018), supports a finding of jurisdiction over the FIB Defendants, the Five Bulgarian Companies, the Peevski Defendants, and Bulgartabac under Fed. R. Civ. P. 4(k)(2) ("Rule 4(k)(2)").

## I.  BACKGROUND

Judge Lehrburger's R&R describes in detail the complicated facts and procedural history of this case.  The Court refers the reader to the R&R for a more comprehensive description of the facts at issue here, but a short summary is warranted, with a focus on the New York connections alleged by Plaintiffs.

This case began with the creation of the Ayr Silver Beach construction development project ("SBP"), which "was to be a $542,976,244 (€404,000,000) expansion of the town of Balchik, Bulgaria on the Black Sea into a multi-use and multi-purpose 259-acre residential and business development."  Second Amended Complaint ("SAC"), Dkt. No. 230, ¶¶ 51, 53.  "Plaintiffs' claims center around the fraudulent taking of $65,209,976 (97,500,000 BGN), which was the proceeds of the sale in bankruptcy of the SBP land."  *Id.* ¶ 52.  Defendants Harris and Ayr Logistics Limited, Inc. ("Ayr"), working with other Defendants, sought to develop the SBP.  *Id.* ¶ 53.

Between 2007 and 2008, Defendant First Investment Bank, AD ("FIB") issued two loans to fund the SBP's development.  *Id.* ¶¶ 58–59.  Those funds and the property were the subject of a series of transfers and transactions detailed by Judge Lehrburger.  R&R at 3–6.  Ultimately, in 2009, Ayr purchased the SBP, including its land.  *Id.* ¶ 88.  Ayr Property Development, AD ("APD") is Ayr's Bulgarian subsidiary, which was created to hold property for the SBP.  *Id.* ¶ 54.  Over the course of several years, Defendants Harris, Angelov, and Harriott used SBP funds to purchase Mexican bonds to be sold in the United States for their personal benefit.  *See* SAC ¶¶ 73–78.

In June 2010, Harris offered to buy out FIB's SBP loans, arranging for the buyout funds to originate in New York City through an HSBC account held by Oriana Capital Partners.  *Id.* ¶ 83.  On June 4, 2020, Harris, Ayr, and APD entered into the "Swap Agreement" with FIB, under which Ayr assumed the loans procured for the development of the SBP.  *Id.* ¶ 85; Dkt. No. 1, Ex. B.  The Swap Agreement does not reference New York.  Dkt. No. 1, Ex. B.

Harris communicated his intention to repay the SBP loans, "confirm[ing] that the first stage of financing through Ayr for the SBP had been completed in New York" and stating that "HSBC New York would be responsible for getting Ayr's board of directors to release from New York the first payment."  SAC ¶¶ 90–91, 95.  This never happened; the SBP loans were not repaid.  *Id.* ¶ 95.  On December 20, 2010, Harris sent a letter to Defendant Bulgarian National Bank ("BNB"), notifying BNB that Ayr had agreed to repay the SBP's liabilities and that the funds were designated to come from New York but that "the SBP was in jeopardy due to the failings of the Bulgarian bank system."  *Id.* ¶ 52 at 30.  BNB refused to help solve the banking issues Harris had identified; as a result, the payment did not go through.  *Id.* ¶¶ 53–54 at 30.

Ayr failed to fund the SBP.  As a result, APD filed for bankruptcy in Bulgaria in February 2011.[3]  *Id.* ¶¶ 96–98.  On December 15, 2012, the SBP land was sold to FIB for $65,209,976 (the "Funds"), and the Bulgarian bankruptcy trustee placed the Funds into APD's bank account at Defendant Corporate Commercial Bank AD ("CCB") in Bulgaria.  *Id.* ¶¶ 108–12.

APD's majority stakeholders, who are plaintiffs in this case, approved the reorganization plan, which was formalized by way of a March 28, 2012 written agreement between Ayr and Plaintiffs All Seas 2 and Asset Management.  *Id.* ¶ 103; Dkt. No. 1, Ex. D.  On November 27, 2013, Ayr, All Seas 2, and Asset Management executed the Supplemental Agreement, which contained

---

[3] Ayr filed for bankruptcy in the United States District Court for the Northern District of Texas on October 10, 2014. SAC ¶ 146.

New York forum selection and choice of law provisions.  Dkt. No. 1, Ex. F.  The agreement also required Ayr to make payments through Deutsche Bank in New York.  *Id.* at 4.

On June 20, 2014, BNB "assumed management" of CCB and appointed two conservators in place of CCB's managing bodies.  SAC ¶ 133.  In October 24, 2014, FIB forged the signature of APD's bankruptcy trustee, which allowed FIB to use the Funds in APD's accounts at CCB.  *Id.* ¶¶ 188–89.  "CCB then applied the Funds to satisfy the debts of [Defendants the Five Bulgarian Companies]," *id.* ¶ 190, which were all either owned or controlled by Defendant Peevski or the political party he led.  *Id.* ¶ 181.

Plaintiffs initiated this case on November 27, 2018, hoping to recover the Funds.  Dkt. No. 1.  On July 1, 2019, Judge Lehrburger denied Plaintiffs' requests for jurisdictional discovery.  Dkt. No. 139.  Several weeks later, on July 24, 2019, Plaintiffs filed the First Amended Complaint.  After many Defendants moved to dismiss, making arguments similar to those currently before the Court, Dkt. Nos. 151, 157, 164, 167, 169, 171, 174, 177, Plaintiffs again amended their complaint, adding over 100 paragraphs designed to establish personal jurisdiction.  Dkt. No. 230.

The Moving Defendants filed the motions to dismiss currently before the Court on February 3, 2020.  Dkt. Nos. 238, 244, 251, 253, 256, 260, 263, 265.  Plaintiffs filed their oppositions on February 22, 2020, Dkt. Nos. 270–73, accompanied by 18 declarations and hundreds upon hundreds of exhibits.  Dkt. Nos. 274–92.  Plaintiffs also renewed their request for jurisdictional discovery.  Dkt. No. 293.  The Moving Defendants filed their replies on March 8, 2020, Dkt. Nos. 295, 297, 298, 299, 301, 302, 304, 305, and some opposed the jurisdictional discovery request.  Dkt. Nos. 296, 303, 307.  Plaintiffs also requested leave to submit supplemental evidence in support of their resistance to Defendants' *forum non conveniens* arguments.  Dkt. No. 311.

Judge Lehrburger recommended that the Moving Defendants' motions to dismiss be granted for both lack of personal jurisdiction and *forum non conveniens*, but subjected the *forum non conveniens* dismissal to several conditions.  Because Judge Lehrburger recommended dismissal on those two

grounds, he did not reach the Moving Defendants' arguments regarding standing and comity.  He also issued an order denying Plaintiffs' second motion for jurisdictional discovery.

Plaintiffs filed timely, voluminous objections to the R&R (the "Objections").  Dkt. No. 326.  Plaintiffs' 105-page submission takes aim at almost everything in the 98-page R&R.  They argue that Judge Lehrburger's "fact-finding" was incorrect, that the Court should exercise personal jurisdiction over every Moving Defendant, that the Court should not dismiss the case for *forum non conveniens* and that Judge Lehrburger's proposed conditions were inadequate, and finally that their motions for jurisdictional discovery should have been granted.  The Moving Defendants responded to Plaintiffs' objections on September 15, 2020.  Dkt. Nos. 338–45.  Plaintiffs replied on September 22, 2020.  Dkt. Nos. 348–55.

## II.    STANDARD OF REVIEW

With respect to dispositive motions, the Court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error."  *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citation omitted).  Objections like this "are frivolous . . . and would reduce the magistrate's work to something akin to a meaningless dress rehearsal.  The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge."  *Vega v. Artuz*, No. 97-cv-3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and internal quotation marks omitted).

The Court may set aside a magistrate judge's order on a non-dispositive matter only if it is clearly erroneous or contrary to law.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  A magistrate

judge's order is clearly erroneous where "'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  Under this highly deferential standard of review, "magistrate judges are afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused." *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 283 (S.D.N.Y. 2005) (quoting *Derthick v. Bassett-Walker Inc.*, No. 90-cv-3845 (JMC), 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992)) (internal quotation marks and alterations omitted).

Although styled as objections, in many places Plaintiffs simply repackage arguments already presented to Magistrate Judge Lehrburger.  Nonetheless, the Court has reviewed the R&R *de novo*.  However, the Court reviews the decision on jurisdictional discovery under the more deferential standard applicable to non-dispositive decisions.

## III.   MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

For the reasons explained below, and elaborated upon further in the R&R, the Court adopts the conclusions of the R&R, except with respect to Judge Lehrburger's recommendations regarding Rule 4(k)(2) and BNYM.

### a.   Legal Standard

Judge Lehrburger correctly laid out the governing law regarding personal jurisdiction.  Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes motions to dismiss on the basis of lack of personal jurisdiction over a defendant.  "On a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).  "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 167–68 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)).  The

plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on September 11, 2011*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks omitted)).

Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). If the parties present conflicting affidavits, however, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking*, 989 F.2d at 580 (citation omitted). "In determining whether a plaintiff has met this burden, [a court] will not draw argumentative inferences in the plaintiff's favor, nor must [a court] accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on September 11, 2011*, 714 F.3d at 673 (internal citations and quotation marks omitted).

A district court "resolving issues of personal jurisdiction must . . . engage in a two-part analysis. First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws . . . . Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2011*, 714 F.3d at 673 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "To determine whether a defendant has the necessary

'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *Id.*
Courts "may assert general jurisdiction over a foreign defendant to hear any and all claims against
that defendant only when the defendant's affiliations with the State in which the suit is brought 'are
so constant and pervasive so as to render it essentially at home in the forum State.'" *Waldman v.
Palestinian Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 134 S. Ct.
746, 751 (2014)). "Specific jurisdiction, on the other hand, depends on an affiliation between the
forum and the underlying controversy, principally, activity or an occurrence that takes place in the
forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear Dunlop Tires
Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

The New York state long arm statute provides for general jurisdiction under N.Y.
C.P.L.R. § 301. Of course, the exercise of general jurisdiction must still comport with federal due
process requirements. In addition to general jurisdiction, "[t]he New York long arm statute
authorizes personal jurisdiction over non-domiciliaries under several circumstances[.]" *Whitaker v.
Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) (citing N.Y. C.P.L.R. § 302(a)).

N.Y. C.P.L.R. § 302(a)(1) requires that "(1) [t]he defendant must have transacted business
within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de
C.V. v. Allure Resorts Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 52
N.Y.2d 268, 273 (1981)). "A nondomiciliary transacts business under CPLR § 302(a)(1) when he
purposefully avails himself of the privilege of conducting activities within New York, thus invoking
the benefits and protections of its laws." *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir.
1986) (internal quotations and citations omitted). Transacting business "has been interpreted to
require a certain quality, rather than a specific quantity, of contacts with the forum." *U.S. Theatre
Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 595 (S.D.N.Y. 1993). "Whether or not the
contacts are of the appropriate nature must be determined by an analysis of the totality of the
circumstances." *Id.* (citing *Sterling Nat'l Bank v. Fidelity Mortg.*, 510 F.2d 870, 873 (2d Cir. 1975),

among other cases).  To satisfy the second prong, plaintiffs must also show that "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal quotation marks and citation omitted).  Where "the relationship between the claim and transaction is too attenuated" or "merely coincidental," no jurisdiction lies.  *Johnson v. Ward*, 797 N.Y.S.2d 33, 35 (2005).

N.Y. C.P.L.R. § 302(a)(2) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state[.]"  "[P]hysical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)[,]" and this provision "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act."  *Bank Brussels Lambert*, 171 F.3d at 790 (citations omitted).

N.Y. C.P.L.R. § 302(a)(3) provides:

[A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

This provision "requires commission of a tortious act outside New York State which causes injury within the State."  *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 448 (S.D.N.Y. 2000).  "[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the 'original event which caused the injury.'"  *Whitaker*, 261 F.3d at 209 (quoting *Bank Brussels Lambert*, 171 F.3d at 791).  "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff."  *Id.* (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)).

If jurisdiction is unavailable under the state long arm statute, Rule 4(k)(2) allows courts to exercise personal jurisdiction over a defendant on condition:

> (1) that plaintiff's cause of action arise[s] under the federal law; (2) that the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one State; and (3) that the defendant's total contacts with the United States as a whole are sufficient to confer the court with personal jurisdiction without offending due process.

*Hartford Fire Ins. v. Co.*, No. 03-cv-2196 (SAS), 2003 WL 22990090, at *3 (S.D.N.Y. Dec. 18, 2003) (quoting *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 434 (S.D.N.Y. 1996) (internal quotation marks omitted)).

### b. Harris

Judge Lehrburger rightly rejected both of Plaintiffs' theories of personal jurisdiction over Harris.  He first recommended that the Court decline to exercise personal jurisdiction over Harris by piercing the corporate veil of Ayr, of which Harris is the President and General Manager, because Harris did not treat Ayr as an "alter ego" such that the company's New York contacts could be imputed to Harris.  Having rejected that theory, he also found that Harris' own contacts with New York did not create personal jurisdiction over him.

Judge Lehrburger thoroughly laid out the legal framework for alter ego jurisdiction.  R&R at 22–25.  The crux of the inquiry is that the Court must determine whether "the corporation is a mere shell for its owner."  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2d Cir. 1981).  To determine whether the corporation is a mere shell, the Court considers a non-exhaustive list of ten factors.  *See Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991).  Applying these factors, Judge Lehrburger properly found that

> aside from conclusory allegations peppered throughout the Complaint that defendant Harris "treated Ayr as an alter ego at all times relevant herein" and "completely dominated" Ayr, Plaintiffs fail to assert any facts to show that defendant Ayr did not observe corporate formalities, intermingled corporate funds with defendant Harris' own personal funds, or otherwise functioned as a "mere shell" for defendant Harris.

R&R at 25 (quoting SAC ¶¶ 17, 56, 266–273).  Therefore, the Court does not have personal jurisdiction over Harris based on the conduct of Ayr.

Without piercing Ayr's veil, as Judge Lehrburger found, "the Complaint does little to show that Harris' limited connections to New York justify exercising long-arm jurisdiction here."[4]  *Id.* at 29.  Plaintiffs are correct that the fiduciary shield doctrine cannot insulate a corporate officer from personal jurisdiction where his contacts with the forum state were solely in his corporate capacity.  *MEE Direct, LLC v. Tran Source Logistics, Inc.*, No. 12-cv-6916 (SAS), 2012 WL 6700067, at *4 (S.D.N.Y. Dec. 26, 2012) ("The fiduciary shield doctrine provides that an individual should not be subject to personal jurisdiction if his contacts with a forum State were solely in a corporate capacity.  New York's Court of Appeals has rejected this doctrine.") (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 472 (1988)).  But the myriad documents cited by Plaintiffs simply do not establish the New York contacts that Plaintiffs claim they do.  For example, most of them have nothing to do with New York or actions taken by Harris, many others simply concern a SWIFT communication about a transaction that never actually happened, and still others are duplicates.  *See* Pls.' Reply to Def. Phillip Harris Resp. to Pls.' Obj. to Magistrate Judge Lehrburger's R&R, Dkt. No. 349, at 3–4, 5–6.  Plaintiffs also rely on New York forum selection and choice of law provisions in the Supplemental Agreement to attempt to manufacture jurisdiction over Harris, but as Judge Lehrburger recognized, Harris is not a party to that contract.  R&R at 31.  It was executed by Zahari Tomov on behalf of Ayr—not Harris.  Dkt. No. 1, Ex. F at 3.  Plaintiffs may not pierce Ayr's corporate veil and Harris' own conduct does not create personal jurisdiction under the New York long arm statute.  Accordingly, as Judge Lehrburger recommended, Harris' motion to dismiss is granted.

---

[4] As a Texas resident, Harris is clearly not subject to general jurisdiction in New York.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear*, 564 U.S. at 924.

c.  **The FIB Defendants, the Five Bulgarian Companies, the Peevski Defendants, and Bulgartabac**

Judge Lehrburger correctly found that the Court does not have personal jurisdiction over the

FIB Defendants pursuant to C.P.L.R. § 302(a)(3), but the Court declines to adopt his

recommendation with respect to Rule 4(k)(2) at this time.

He properly analyzed the situs of the injury under § 302(a)(3), finding that the "original event

which caused the injury," *Whitaker*, 261 F.3d at 209, happened in Bulgaria, not New York.  As Judge

Lehrburger found, the event that caused the injury at issue was

> when the FIB Defendants generated a fraudulent payment order calling for CCB – the
> Bulgarian bank holding the monies at issue – to release those funds to the FIB
> Defendants.  That alleged fraud, perpetrated by Bulgarian-based Defendants over
> Bulgarian funds held in Bulgarian banks, is what moved the $65 million at issue from
> Plaintiffs' grasp.

R&R at 36 (citation omitted).  Because the original event occurred in Bulgaria, not New York, there

was no injury in New York, which defeats jurisdiction under § 302(a)(3).[5]  In connection with the

Five Bulgarian Companies, the Peevski Defendants, and Bulgartabac, Judge Lehrburger correctly

explained that he had "already reviewed and rejected" Plaintiffs' arguments in his assessment of

whether § 302(a)(3) conferred jurisdiction over the FIB Defendants and that "Plaintiffs fail to

provide a reason to rule differently here."  R&R at 43.  He thus properly recommended the Court

decline to exercise jurisdiction over these defendants under § 302(a)(3).

Judge Lehrburger was also correct in finding that "Plaintiffs' allegations regarding the FIB

Defendants' contacts with the United States do not justify the exercise of jurisdiction pursuant to

Rule 4(k)(2)," in part because their United States contacts were not connected to Plaintiffs' claims.

*Id.* at 41.  While Plaintiffs cite a litany of allegations and evidence in support of their Rule 4(k)(2)

argument, none of these allegations demonstrate that the FIB Defendants themselves had contacts

---

[5] The lack of an injury in New York renders moot Plaintiffs' arguments regarding co-conspirator jurisdiction under § 302(a)(3).

in the United States that establish specific jurisdiction over them.  *See* Pls.' Reply to FiBank Defs.'

Mem. Law in Opp'n to Pls.' Objs. to Magistrate Judge Lehrburger's R&R, Dkt. No. 355, at 2–3.

Judge Lehrburger was also correct that, with respect to the direct United States contacts of the Five

Bulgarian Companies, the Peevski Defendants, and Bulgartabac, Plaintiffs "fail[ed] to connect the

alleged contacts with their claims," which "preclude[s] [the] Court from exercising specific

jurisdiction over defendants pursuant to Rule 4(k)(2)."  R&R at 45.

　　　　While Judge Lehrburger correctly analyzed the direct contacts of the FIB Defendants, the

Five Bulgarian Companies, the Peevski Defendants, and Bulgartabac with the United States under

Rule 4(k)(2), he did not expressly consider whether conspiracy jurisdiction is available under Rule

4(k)(2).  Judge Lehrburger noted that the "minimum contacts analysis looks to the defendant's

contacts with the forum State itself, not the defendant's contacts with persons who reside there."

R&R at 41 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).  But after the Supreme Court decided

*Walden*, the Second Circuit held that the theory of conspiracy jurisdiction may be used to impute the

in-forum contacts of a co-conspirator to a foreign defendant.  *See Charles Schwab Corp. v. Bank of Am.*

*Corp.*, 883 F.3d 68, 87 (2d Cir. 2018).  In *Schwab*, the Second Circuit considered the first question of

the two-step due process inquiry—whether "minimum contacts necessary to support [specific

jurisdiction] exist."  *Id.* at 82.  The Second Circuit held that one conspirator's contacts with the

forum may allow for personal jurisdiction over a co-conspirator if the following conditions are met:

"the plaintiff must allege that (1) a conspiracy existed; (2) the defendant participated in the

conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient

contacts with a state to subject that co-conspirator to jurisdiction in that state."  *Id.* at 86.  Because

the R&R did not address conspiracy jurisdiction under *Schwab,* the Court declines to adopt this

portion of Judge Lehrburger's recommendation at this time.

　　　　None of the parties addressed *Schwab*, its implications, or its applicability in a case involving

personal jurisdiction under Rule 4(k)(2).[6]  "The Court observes that the *Schwab* standard for conspiracy jurisdiction is extraordinarily broad."  *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 326 (S.D.N.Y. 2020).[7]  To the extent that conspiracy jurisdiction is available, the parties have not briefed whether the conduct of alleged co-conspirators satisfied the third prong of the *Schwab* test, which requires both overt acts in furtherance of a conspiracy and that those acts subject the co-conspirator to jurisdiction in the forum.  As a result, the Court will solicit additional briefing on conspiracy jurisdiction under *Schwab* as it relates to Rule 4(k)(2).[8]

Thus, the Court adopts in part Judge Lehrburger's recommendation that the claims against the FIB Defendants, the Five Bulgarian Companies, the Peevski Defendants, and Bulgartabac be dismissed for lack of personal jurisdiction.  The Court adopts his recommendation that the court decline to exercise personal jurisdiction under C.P.L.R. § 302(a)(3) but declines to adopt his recommendation regarding Rule 4(k)(2) at this time and reserves judgment on that issue.

### d.  Eaton Vance Defendants

Judge Lehrburger correctly determined that the Court does not have personal jurisdiction over the Eaton Vance Defendants under C.P.L.R. § 301 and 18 U.S.C. § 1965.[9]

With respect to general jurisdiction, the Eaton Vance Defendants are not incorporated in New York and they do not maintain their principal place of business in New York.  SAC ¶¶ 38–40.  "[E]xcept in a truly exceptional case, a corporate defendant may be treated as essentially at home only where it is incorporated or maintains its principal place of business[.]"  *Brown v. Lockheed Martin*

---

[6] Counsel for Plaintiffs did raise the issue of conspiracy jurisdiction but relied on a case that substantially predates *Walden* and *Schwab*.  Objections at 50 (citing *Dixon v. Mack*, 507 F. Supp. 345, 352 (S.D.N.Y. 1980)).

[7] In *Platinum*, the Court also noted that "this standard may be in tension with the Supreme Court's holding in *Walden v. Fiore* that 'the relationship [between the defendant and the litigation] must arise out of the contacts that the 'defendant himself' creates with the forum State.'"  *Id.* (quoting *Walden*, 571 U.S. at 285).  The Court invites further briefing regarding the interrelation between *Walden* and *Schwab*, to the extent the parties see fit.

[8] This is not an invitation to relitigate the issue of whether these Defendants' direct contacts with the United States established personal jurisdiction under Rule 4(k)(2).

[9] The Second Amended Complaint had alleged personal jurisdiction under C.P.L.R. § 302(a)(3) and Rule 4(k)(2), SAC ¶¶ 5–6, but Plaintiffs abandoned those arguments in their opposition to the Eaton Vance Defendants' motion to dismiss, Dkt. No. 273 at 3–6, and their Objections.  Objections at 57–63.

*Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (citation and internal quotation marks omitted).  If a

defendant is not "essentially at home" in New York, they will not be subject to general jurisdiction

here.  *See Waldman*, 835 F.3d at 331.  As Judge Lehrburger found, this is not one of those "truly

exceptional cases" so the Court does not have general jurisdiction over the Eaton Vance Defendant.

R&R at 46–51.

Judge Lehrburger's analysis of personal jurisdiction under RICO was also sound.  He held

that, because Plaintiffs do not plead a RICO violation against the Eaton Vance Defendants, who are

nominal defendants, RICO cannot confer personal jurisdiction over those Defendants.  R&R at 52–

53.  Plaintiffs concede in their objections that they do not allege that Eaton Vance violated RICO.

Objections at 62 n.45 ("Plaintiffs seek from Eaton Vance and others equitable relief including

subordination of their interests, the imposition of a constructive trust, and disgorgement, *but do not*

*allege that Eaton Vance violated RICO*.") (emphasis added).  Instead, Plaintiffs assert that RICO, via 18

U.S.C. § 1965(b), confers nationwide personal jurisdiction over nominal defendants.  They cite *PT*

*United Can Co. v. Crown Cork & Seal Co.*, for the proposition that "§ 1965(b) provides for nationwide

service and jurisdiction over 'other parties' not residing in the district, who may be additional

defendants of any kind, including co-defendants, third party defendants, or additional counter-claim

defendants."  138 F.3d 65, 71 (2d Cir. 1998).  Plaintiffs argue that "defendants of any kind" must

include nominal defendants (even though they are not allegedly part of the conspiracy) without

providing any caselaw in which nationwide jurisdiction was exercised over a nominal defendant.  But

"Congress intended the 'ends of justice' provision to enable plaintiffs to bring *all members* of a

nationwide RICO conspiracy before a court in a single trial."  *Butcher's Union Loc. No. 498, United*

*Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) (emphasis added).[10]  Thus,

Judge Lehrburger was correct in determining that "[w]ithout lodging a RICO claim against the

---

[10] *PT United Can* "conclude[d] that the natural reading given to § 1965(b) by the 9th Circuit in [*Butcher's Union*] . . . was
correct," albeit on a different issue.  *PT United Can*, 138 F.3d at 72.

nominal Eaton Vance Defendants, there is no basis for the Court to use the RICO statute to exercise jurisdiction over them." R&R at 53.

### e. **Bulgarian National Bank**

Judge Lehrburger also correctly determined that BNB is immune to jurisdiction under the Foreign Sovereign Immunities Act (the "FSIA"). One exception to the immunity enjoyed by foreign sovereigns is the "commercial activity" exception. 28 U.S.C. § 1605(a)(2). As appropriately framed by Judge Lehrburger, "the first question that the Court must address is whether the 'commercial activity' underlying Plaintiffs' invocation of the 'commercial activity' exception – which was, by Plaintiffs' own admission, performed by CCB – should be attributed to defendant BNB in light of its supervisory role." R&R at 56. To attribute the activities of CCB to BNB, Plaintiffs must demonstrate that BNB exercised "extensive control," which requires an assessment of "'whether the sovereign state exercises significant and repeated control over the instrumentality's day-to-day operations.'" *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 202 (2d Cir. 2016) (quoting *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 91 (2d Cir. 2015)).

First, the Court agrees with Judge Lehrburger that there is no indication that BNB directly participated in the commercial activity at issue here: "Nothing before the Court indicates that defendant BNB participated in the decision to authorize transferring money out of APD's bank account at CCB; to the contrary, defendant BNB's evidence clearly shows that the hired conservators – not defendant BNB itself – managed CCB's 'day-to-day operations.'" R&R at 58. Absent BNB's direct participation in the decision, Plaintiffs would have to show "extensive control" over the conservators or CCB. But again, "nothing before this Court suggests that defendant BNB 'so closely supervised' CCB (or even the conservators hired to supervise it) that such supervision would provide a basis to impute the decision to authorize the transfer at issue to defendant BNB." *Id.* Therefore, the commercial activity exception does not apply here and BNB is immune from jurisdiction under the FSIA.

16

### f.   Bank of New York Mellon

Though nominal defendant BNYM did not move for dismissal on the basis of this Court's

lack of personal jurisdiction over it, Judge Lehrburger recommended that BNYM should be

dismissed from the case:  "Given that all non-nominal Defendants should be dismissed for lack of

personal jurisdiction, there is no basis on which a nominal defendant such as BNYM should remain

in the case."  R&R at 59.  If all other defendants are dismissed from the case, Bank of New York

Mellon should be dismissed as well because, by definition, a nominal defendant is one against whom

no relief can be sought.  *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1048

(S.D.N.Y. 1981) ("A party to an action is nominal or formal if no cause of action or claim for relief

is or could be stated against him or on his behalf, as the case may be.").  But not all Defendants have

been dismissed from the case so BNYM could still facilitate the relief sought.  For example,

Plaintiffs' twenty-ninth cause of action seeks "an order and decree directing the surrender of all

shares held by Defendants in FIB to a court-appointed trustee" and the thirtieth cause of action

seeks a special master to hold proceedings on, among other things, "a valuation of the effect of the

distribution or use of the Funds on the shares of . . . Mellon Bank."  SAC ¶¶ 537, 543.  A nominal

defendant is "joined solely because it is a party which can facilitate the relief sought."  *Glynn v.*

*Gonda*, No. 06-cv-5447 (NRB), 2006 WL 2109457, at *1 (S.D.N.Y. July 26, 2006).  Because BNYM

could still have a role to play as a nominal defendant by facilitating certain relief, dismissal is

premature.  BNYM may renew their motion to dismiss upon dismissal of the other Defendants. [11]

### IV.   *FORUM NON CONVENIENS*

In the alternative to dismissal due to lack of personal jurisdiction, the R&R recommended

---

[11] Bank of New York Mellon was the only Moving Defendant that did not move to dismiss for lack of personal jurisdiction, instead moving on *forum non conveniens*, standing, comity, and collateral estoppel by incorporating the FIB Defendants' arguments.  Dkt. No. 254.  Judge Lehrburger appropriately rejected the estoppel argument, R&R at 31 n.2, and did not reach the standing and comity arguments in light of his decisions on personal jurisdiction and *forum non conveniens*.  Because the Court is dismissing the entire case for *forum non conveniens*, the Court, like Judge Lehrburger, declines to reach standing and comity.  If the case is not ultimately dismissed for *forum non conveniens* because the Court's conditions are not met, *infra* Section IV.e, BNYM may renew their motion to dismiss.

that the case be dismissed based on *forum non conveniens*. The Court agrees, with a slight modification

to the conditions Judge Lehrburger set for dismissal.

### a. Legal Standard

The doctrine of *forum non conveniens* allows the Court to "dismiss an action on the ground that

a court abroad is the more appropriate and convenient forum for adjudicating the controversy."

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). "District courts enjoy

broad discretion in applying this principle[.]" *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146,

153 (2d Cir. 2005). However, to "guide the exercise of that discretion," the Court follows a three-

step process:

> At step one, a court determines the degree of deference properly accorded the
> plaintiff's choice of forum. At step two, it considers whether the alternative forum
> proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at
> step three, a court balances the private and public interests implicated in the choice of
> forum.

*Id.* (internal citations omitted) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73–74 (2d Cir. 2001)

(*en banc*)).

### b. Degree of Deference to Plaintiffs' Choice of Forum

Judge Lehrburger correctly determined that Plaintiffs' choice of forum warrants little

deference. R&R at 64. True, there is a "strong presumption in favor of the plaintiff's choice of

forum." *Norex*, 416 F.3d at 154 (internal quotation marks omitted). But "'the degree of deference

to be given to a plaintiff's choice of forum moves on a sliding scale' depending on the degree of

convenience reflected by the choice in a given case." *Id.* (quoting *Iragorri*, 274 F.3d at 71). As set

forth in more detail by Judge Lehrburger, R&R at 62–64, courts must "consider the totality of

circumstances" in reviewing the chosen forum. *Norex*, 416 F.3d at 154–55. Especially in a case

where all claimants are foreign residents, if "the parties and events bear no bona fide connection to

the United States, or that in relation to the core operative facts in dispute they at best may have only

marginal links to the plaintiff's choice of forum, that choice of forum is not entitled to special

deference[.]"  *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 522 (S.D.N.Y. 2006), *aff'd*, 343 F. App'x

623 (2d Cir. 2009).

> As Judge Lehrburger effectively summarized:
>
> The claims before this Court center on the alleged theft of $65 million in proceeds
> generated from the sale of land owned by defendant APD – a Bulgarian subsidiary of
> defendant Ayr – following its bankruptcy.  When allegedly stolen, those funds were
> owned by a Bulgarian entity (defendant APD), held in a Bulgarian bank (CCB, then
> under the supervision of defendant BNB), and were generated from the sale of
> Bulgarian land to another Bulgarian entity (defendant FIB).  And, based on Plaintiffs'
> allegations, the theft of those funds was the result of a longstanding conspiracy
> involving various Bulgarian persons and entities premised on a fake project that
> purported to improve Bulgarian land.

R&R at 65.  As a result, "the vast majority of witnesses, documents, and other sources of proof

necessary to conduct trial in this matter are located in Bulgaria, making it unnecessarily difficult and

costly to conduct trial here."  *Id.*  Moreover, as Judge Lehrburger noted, it appears that Plaintiffs'

choice of New York "was motivated at least in part by a desire to bring claims under RICO[.]"

R&R at 66.  This kind of forum shopping lessens the degree of the Court's deference to Plaintiffs'

choice of forum.  *See Iragorri*, 274 F.3d at 71–72 ("[T]he more it appears that the plaintiff's choice of

a U.S. forum was motivated by forum-shopping . . . the less deference the plaintiff's choice

commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non*

*conveniens* motion by showing that convenience would be better served by litigating in another

country's courts.").  Therefore, Judge Lehrburger was correct in giving Plaintiffs' choice of New

York as a forum little weight.

### c.  Availability of Bulgaria as an Adequate Alternative Forum

"'An alternative forum is adequate if the defendants are amenable to service of process

there, and if it permits litigation of the subject matter of the dispute.'"  *Norex*, 416 F.3d at 146

(quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003)).  With

appropriate conditions established as safeguards, Bulgaria is an adequate alternative forum.

Many, but not all, of the Moving Defendants are Bulgarian and are therefore subject to compulsory process there. As Judge Lehrburger found, however, that is not the end of the story. By moving for dismissal for *forum non conveniens*, it appears that the Moving Defendants are amenable to suit in Bulgaria. R&R at 68. To guarantee their amenability to suit in the alternative forum, Judge Lehrburger recommended that dismissal be conditioned on their consent to suit in Bulgaria. *Id.* at 68–69. That condition is appropriate because it will ensure Bulgaria has jurisdiction over them.[12] *See R. Maganlal & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir. 1991) (noting that "[o]rdinarily, a foreign forum will be adequate when the defendant is subject to the jurisdiction of that forum" and affirming *forum non conveniens* dismissal where the defendant "agreed to submit to the jurisdiction of the Indian courts as a condition of dismissal"). Plaintiffs do not seriously contest this approach.[13] Instead, they take aim at the scope of the condition, noting that Harris and the Non-Moving Defendants have not consented to Bulgaria as an alternate forum. Objections at 91. On this point, Plaintiffs are right. "[I]n order to grant a motion to dismiss for *forum non conveniens,* a court must satisfy itself that the litigation may be conducted elsewhere against *all* defendants." *PT United Can*, 138 F.3d at 73 (emphasis added). All Defendants, not just the Moving Defendants must be subject to Bulgarian jurisdiction to dismiss for *forum non conveniens*.

Bulgaria also "permit[s] litigation of the subject matter of the dispute." *Norex*, 416 F.3d at 157 (quotation omitted). It is well-established that "'the availability of an adequate alternative forum does not depend on the existence of the identical cause of action in the other forum,' nor on identical remedies." *Id.* at 158 (quoting *PT United Can*, 138 F.3d at 74). Plaintiffs concede that identical claims and remedies need not be available, but argue that "the alternative forum must provide some corollary which provides redress for the wrongs." Objections at 85. Bulgaria does.

---

[12] "[F]orum non conveniens dismissals are often appropriately conditioned to protect the party opposing dismissal." *Blanco v. Banco Industrial de Venezuela, S.A.*, 997 F.2d 974, 984 (2d Cir. 1993).

[13] Plaintiffs' only objection to Judge Lehrburger's determination on this point is copied directly from their motion to dismiss briefing. Objections at 79.

Judge Lehrburger was correct in holding, based on the affidavits presented, that "Bulgaria appears to provide similar alternatives. Indeed, [Defendants] point to a number of causes of action that Plaintiffs could bring in Bulgarian courts to redress their alleged harm, including, but not limited to, tort claims, criminal claims, and breach of contract claims." R&R at 72. As Judge Lehrburger recognized, the materials offered by Plaintiffs "do not state that Bulgarian courts are unable to hear claims sounding in tort, breach of contract, or otherwise."[14] R&R at 73. A RICO equivalent need not exist. *See, e.g., PT United Can*, 138 F.3d at 74 ("Contrary to [plaintiff's] assertion, the nonexistence of a RICO statute there does not, by itself, preclude the use of another forum.") (collecting cases). Thus, Bulgaria appropriately permits litigation of the subject matter of the dispute.

The parties' disagreement regarding whether Bulgarian courts would lack jurisdiction over the dispute does not render Bulgaria an inadequate forum. The issue is moot because the Court adopts Judge Lehrburger's recommendation that the Court "condition *forum non conveniens* dismissal on Bulgaria's willingness to hear the case." R&R at 69–70. This condition is an effective method of protecting Plaintiffs and ensuring the availability of Bulgaria as an alternative forum. *See Spahic v. Int'l Ctr. for Transitional Just. Inc.*, No. 18-cv-00057 (ALC) (RWL), 2019 WL 7605895, at *12 (S.D.N.Y. Apr. 25, 2019), *report and recommendation adopted as modified sub nom. Ziga v. Int'l Ctr. for Transitional Just. Inc.*, No. 1:18-cv-00057 (ALC), 2019 WL 4784675 (S.D.N.Y. Sept. 27, 2019), *aff'd*, No. 19-3582-CV, 2020 WL 5507825 (2d Cir. Sept. 14, 2020) (conditioning *forum non conveniens* dismissal "on condition both that [the defendant] consent to jurisdiction in Belgium, and that the Belgian court exercises jurisdiction over [the defendant]" to address the plaintiffs' concerns that Belgian courts would not

---

[14] Plaintiffs argue that Judge Lehrburger "clearly overlooked[ed] detailed opinion testimony from Plaintiffs' experts." *See* Pls.' Reply to Bulgarian National Bank's Mem. Law in Opp'n to Pls.' Objs. to Magistrate Judge Lehrburger's R&R, Dkt. No. 354, at 12. But he did not, and Plaintiffs do not attempt to dispute Judge Lehrburger's finding that Plaintiffs "do not state that Bulgarian courts are unable to hear claims sounding in tort, breach of contract, or otherwise." R&R at 73. Nor could they.

exercise jurisdiction).

In addition to the conditions that all Defendants consent to suit in Bulgaria and that Bulgarian courts are willing to hear the case, the Court will also require Defendants to waive any statute of limitations defenses that have arisen since the commencement of this action.  This condition is another way of ensuring Bulgaria is available as an alternative forum and is one that courts commonly impose.  *Calavo Growers of California v. Generali Belgium*, 632 F.2d 963, 968 (2d Cir. 1980) ("[W]e think that the dismissal also should have been conditioned upon an agreement by [defendants] . . . to waive any statute of limitations defense that has arisen since the commencement of the action in the Southern District . . . ."); *BMR & Assocs., LLP v. SFW Cap. Partners, LLC*, 92 F. Supp. 3d 128, 143 (S.D.N.Y. 2015) (requiring defendants to "waive any statute of limitations defense that has arisen since the commencement of this action").[15]

Judge Lehrburger was also correct in declining to declare Bulgaria an inadequate forum due to corruption or bias.  As explained in more detail in the R&R, the Second Circuit "ha[s] been reluctant to find courts 'corrupt' or 'biased.'"  *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002).  While Plaintiffs indeed "paint the Bulgarian judicial system as unseemly, corrupt, and lacking independence,"  R&R at 75, federal courts have repeatedly declined declare it an inadequate forum.  R&R at 73–75.

Plaintiffs must do more to prevail:  "To establish that a foreign forum is inadequate, a party must show evidence of corruption 'specifically targeted at a party' rather than make broad claims about the judicial system as a whole."  *Mosha v. Yandex Inc.*, No. 18-cv-5444 (ER), 2019 WL 5595037, at *4 (S.D.N.Y. Oct. 30, 2019) (quoting *Zeevi Holdings Ltd. v. Republic of Bulgaria*, No. 09-cv-8856

---

[15] Plaintiffs request a more extreme version of this condition that requires an "express waiver[] of *any* statute of limitations."  Objections at 90 (emphasis added).  That would be a step too far.  Rather than simply protecting the Plaintiffs from statute of limitations defenses that accrued during the pendency of this action, it would reward them for having brought this action in an inconvenient forum by potentially reviving claims for which the Bulgarian limitations period may have already run when this action was filed.  Such a far-reaching waiver is unnecessary and inappropriate.

(RJS), 2011 WL 1345155, at *8 (S.D.N.Y. Apr. 5, 2011), *aff'd*, 494 F. App'x 110 (2d Cir. 2012)).  In their Objections, Plaintiffs focus on actions taken by the Bulgarian Prosecutor's Office against one of Plaintiffs' declarants, Boyko Atanassov.  Objections at 93–94.  But this evidence does not demonstrate that a party was targeted.  First, Atanassov is not a party but a declarant who provided information on the Bulgarian judiciary.  But more importantly, his discipline by the Bulgarian Prosecutor's Office does not demonstrate bias towards any party in this litigation.  Rather, the documentary evidence makes it clear that Atanassov was disciplined because the statements he made in this litigation, and on an unrelated television show, breached his ethical duties as an investigative magistrate.  August 27, 2020 Decl. of Zahari Tomov, Dkt. No. 327, Ex. 5.  Judge Lehrburger correctly found that Plaintiffs' allegations of targeting amount only to harassment, R&R at 76–77, which is insufficient to make Bulgaria an inadequate forum.  *See Zeevi Holdings*, 2011 WL 1345155, at *7–8 (holding that "allegations of incidents of harassment by Bulgarian authorities" did not warrant a finding that Bulgaria was an inadequate forum where the petitioner alleged that its representatives were "harassed and intimidated by state authorities who initiated a criminal investigation accusing petitioner's representatives of, among other things, having engaged in anti-state activities" and Bulgarian authorities detained a former attorney for the company for nine hours for questioning).  Plaintiffs' allegations of corruption and bias do not rise to the level necessary to declare Bulgaria an inadequate alternate forum.

### d.  Public Interest and Private Interest

Having determined that Bulgaria is an adequate alternate forum, Judge Lehrburger proceeded to weigh the public and private interests involved.  He correctly determined that the private and public interest factors both weigh in favor of litigating in Bulgaria.  The private interest factors include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other

practical problems that make trial of a case easy, expeditious and inexpensive.

*Iragorri*, 274 F.3d at 73–74 (internal quotation marks omitted).  Judge Lehrburger highlighted that all

Plaintiffs and the vast majority of Defendants are Bulgarian, that many of the documents relevant to

the claims are written in Bulgarian, that document discovery would be more easily based in Bulgaria,

and that many witnesses are Bulgarian citizens.  R&R at 80–81.  Thus, Judge Lehrburger properly

found that the "private interest factors strongly indicate that holding trial in Bulgaria would be

significantly less burdensome – financially and practically – than trial in New York."  *Id.* at 81.

> The public interest factors include:

> the administrative difficulties flowing from court congestion; the local interest in
> having controversies decided at home; the interest in having the trial in a forum that
> is familiar with the law governing the action; the avoidance of unnecessary problems
> in conflict of laws or in the application of foreign law; and the unfairness of burdening
> citizens in an unrelated forum with jury duty.

*Murray v. British Broad. Corp.*, 81 F.3d 287, 293 (2d Cir. 1996) (citing *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1981)).  Proceeding factor by factor, Judge Lehrburger rightly determined that

each public interest factor favors dismissal here.  R&R at 82–85.  Because both the private and

public interest factors weigh in favor of Bulgaria as the forum, dismissal for *forum non conveniens* is

appropriate, subject to the conditions discussed above and summarized below.

### e.  Conditions of Dismissal

Judge Lehrburger recommended that dismissal for *forum non conveniens* be subject to the

following conditions:  "(1) Defendants[16] consent to personal jurisdiction in Bulgarian courts, (2) the

Bulgarian courts accept jurisdiction over the matter, and (3) Plaintiffs be ordered to show cause why

the action should not be dismissed against the Non-Moving Defendants for similar reasons."  *Id.* at

95.  As discussed above, the Court finds the first two conditions to be appropriate.  The Court also

adds as a condition that Defendants must waive any statute of limitations defenses that have arisen

---

[16] In the R&R, "Defendants" was defined to include only the Moving Defendants.

since the commencement of this action.  The Court will also issue an order to show cause consistent

with Judge Lehrburger's recommendation.  This process will allow the Court to determine whether

all Defendants are amenable to suit in Bulgaria such that "the litigation may be conducted elsewhere

against *all* defendants."  *PT United Can*, 138 F.3d at 73 (citation omitted).  In the event that not all

Defendants are amenable to suit in Bulgaria, the Court understands that Judge Lehrburger may also

consider whether it is appropriate to sever those defendants that are not amenable to suit in Bulgaria

in order to facilitate a dismissal for *forum non conveniens*.  *See Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*,

No. 13-cv-9239 (CS), 2017 WL 972117, at *9–10 (S.D.N.Y. Mar. 10, 2017) ("courts may exercise

their discretion to sever claims to facilitate dismissal on *forum non conveniens* grounds[.]"), *aff'd,* 712 F.

App'x 88 (2d Cir. 2018).

## V.    MOTION FOR JURISDICTIONAL DISCOVERY

Judge Lehrburger's order on jurisdictional discovery is an order on a non-dispositive matter.

*See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD) (BCM), 2018

WL 4681616, at *18 (S.D.N.Y. Sept. 11, 2018), *report and recommendation adopted sub nom. Channel One

Russia Worldwide v. Infomir LLC (www.infomirusa.com)*, No. 16-cv-1318 (GBD) (BCM), 2018 WL

4666069 (S.D.N.Y. Sept. 28, 2018) (noting that a motion for jurisdictional discovery "is not

dispositive of any claim in this action and hence within [a court's] decisional jurisdiction pursuant to

Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A).").  Therefore, the Court reviews Judge

Lehrburger's decision on jurisdictional discovery to determine whether it is clearly erroneous or

contrary to the law.  *See Sparrow Fund Mgmt. LP v. MiMedx Grp., Inc.*, No. 18-cv-4921 (PGG) (KHP),

2020 WL 1330283, at *3 (S.D.N.Y. Mar. 22, 2020) (reviewing R&R's decision on jurisdictional

discovery, to which plaintiff objected, for clear error); *In re Horizon Cruises Litig.*, No. 94-cv-5270

(LMM), 1997 WL 762129, at *1 (S.D.N.Y. Dec. 10, 1997) (overruling objection to order granting

jurisdictional discovery "because it has not been shown that [the] order is 'clearly erroneous or

contrary to law'") (citing 28 U.S.C. § 636(b)(1)(A)).  The Court finds that Judge Lehrburger's order

on jurisdictional discovery is not clearly erroneous or contrary to law.  Accordingly, Plaintiffs'

motion for jurisdictional discovery is denied.

### VI.   LEAVE TO AMEND

Judge Lehrburger's R&R did not address whether he would grant Plaintiffs leave to amend

their complaint.  In the Objections, Plaintiffs stated that "[a] motion for leave [to] amend the

complaint shall be filed with Magistrate Judge Lehrburger after these Objections are filed."

Objections at 4.  Plaintiffs' proposed amendment concerns only whether Ayr's corporate veil can be

pierced so as to confer personal jurisdiction over Harris.  *See* Objections at 4, 29, 42.  As of the date

of this order, Plaintiffs still have not filed a motion for leave to amend.  Unless otherwise ordered by

Judge Lehrburger, Plaintiffs are directed to file any such motion within two weeks of the date of this

order.

### VII.   CONCLUSION

The motions to dismiss for lack of personal jurisdiction filed by Harris, the Eaton Vance

Defendants, and the Bulgarian National Bank are GRANTED.

The motions to dismiss for lack of personal jurisdiction filed by the FIB Defendants, the

Five Bulgarian Companies, the Peevski Defendants, and Bulgartabac are held in abeyance pending

targeted briefing on conspiracy jurisdiction in light of *Schwab*.  Plaintiffs are directed to file a

supplemental brief of no more than 25 pages in length within two weeks of the date of this order.

Defendants are directed to file a consolidated opposition of no more than 35 pages in length within

two weeks of the date of service of Plaintiffs' brief.  Plaintiffs' consolidated reply of no more than

15 pages in length is due one week following the date of service of Defendants' opposition.

The Moving Defendants' motions to dismiss on the basis of *forum non conveniens* are

GRANTED, subject to the following conditions:  (1) Defendants consent to personal jurisdiction in

Bulgarian courts, (2) Defendants waive any statute of limitations defenses that have arisen since the

commencement of this action; and (3) the Bulgarian courts accept jurisdiction over the matter.

BNYM's motion to dismiss is DENIED without prejudice with respect to its arguments other than *forum non conveniens*.

Plaintiffs are ordered to show cause within three weeks of the date of this order why the Second Amended Complaint should not be dismissed for *forum non conveniens* as against the Non-Moving Defendants.

Plaintiffs are directed to file any motion for leave to amend their complaint with respect to Harris within two weeks of the date of this order, in accordance with Judge Lehrburger's individual rules of practice.

The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 238, 244, 251, 253, 256, 260, 263, 265, and 311.

SO ORDERED.

Dated:  September 30, 2020
New York, New York

_____
GREGORY H. WOODS
United States District Judge