UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RUDERSDAL, EOOD, et al.,

                              Plaintiffs,

        v.                                          Case No. 18-cv-11072 (GHW) (RWL)

PHILLIP ROBERT HARRIS, et al.,

                              Defendants.

---

**THE FIBANK DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO OBJECTIONS TO MAGISTRATE JUDGE LEHRBURGER'S FEBRUARY 27, 2021 REPORT AND RECOMMENDATION**

ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
202.942.5000
202.942.5999 (fax)

ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
212.836.8000
212.836.8689 (fax)

*Attorneys for Defendants First Investment Bank, AD, Tseko Todorov Minev, and Ivailo Dimitrov Mutafchiev*

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

     A.    Statement of Facts ................................................................................. 3

     B.    Procedural History ............................................................................... 3

STANDARD OF REVIEW ............................................................................................... 4

ARGUMENT ................................................................................................................... 5

I.     JUDGE LEHRBURGER CORRECTLY DETERMINED THAT
     PLAINTIFFS HAVE NOT SUBSTANTIATED THE EXISTENCE OF
     CONSPIRACY JURISDICTION UNDER RULE 4(k)(2) .................................... 5

     A.    Judge Lehrburger Correctly Determined That Conspiracy Jurisdiction Is
     Unavailable under Rule 4(k)(2) ............................................................. 5

     B.    Judge Lehrburger Correctly Determined That, Even if Conspiracy
     Jurisdiction *Were* Available under Rule 4(k)(2), Plaintiffs Have Not Carried
     Their Burden of Establishing Conspiracy Jurisdiction Here .................................. 9

II.    JUDGE LEHRBURGER CORRECTLY DETERMINED THAT
     SEVERANCE TO FACILITATE A *FORUM NON CONVENIENS*
     DISMISSAL IS APPROPRIATE IN THIS CASE .......................................... 11

     A.    Judge Lehrburger Correctly Determined That This Court May Sever Certain
     Defendants to Facilitate a *Forum Non Conveniens* Dismissal ............................ 11

     B.    Judge Lehrburger Correctly Determined That the Severance Factors Weigh
     in Favor of Severance in This Case ...................................................... 12

CONCLUSION ............................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AJ Energy LLC v. Woori Bank*,
  No. 18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) ...............................14

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.*,
  480 U.S. 102 (1987).........................................................................................................1, 8

*Bernier v. Koenigsmann*,
  No. 15-CV-209A, 2017 WL 603217 (W.D.N.Y. Feb. 15, 2017) ...............................................4

*CF 135 Flat LLC v. Triadou SPY S.A.*,
  2016 WL 5945933 (S.D.N.Y. 2016).........................................................................................11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
  883 F.3d 68 (2d Cir. 2018)..........................................................................................3, 6, 7, 9

*City of Long Beach v. Total Gas & Power N. Am., Inc.*,
  465 F. Supp. 3d 416 ....................................................................................................................6

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)....................................................................................................................8

*Dennis v. JPMorgan Chase & Co.*,
  343 F. Supp. 3d 122 (S.D.N.Y. 2018)....................................................................................6, 8

*Elsevier, Inc. v. Grossman*,
  77 F. Supp. 3d 331 (S.D.N.Y. 2015)..........................................................................................8

*Erausquin v. Notz, Stucki Management (Bermuda) Ltd.*,
  806 F. Supp. 2d 712 (S.D.N.Y. 2011)..............................................................11, 12, 14, 16

*Fasano v. Guoqing Li*,
  2020 WL 5096001 (S.D.N.Y. Aug. 28, 2020).........................................................................11

*Feehan v. Feehan*,
  No. 09 CIV. 7016 DAB, 2010 WL 3734079 (S.D.N.Y. Sept. 22, 2010) ..................................3

*Freeman v. HSBC Holdings PLC*,
  413 F. Supp. 3d 67 (E.D.N.Y. 2019) .......................................................................................16

*George v. Prof'l Disposables Int'l, Inc.*,
  221 F. Supp. 3d 428 (S.D.N.Y. 2016).........................................................................................5

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014)...........................................................................................6

*Hartford Fire Ins. v. Co.*,
   No. 03 CIV. 2196 (SAS), 2003 WL 22990090 (S.D.N.Y. Dec. 18, 2003).............................6

*In re Aluminum Warehousing Antitrust Litig.*,
   90 F. Supp. 3d 219 (S.D.N.Y. 2015)................................................................................7

*In re European Government Bonds Antitrust Litigation*,
   No. 19-CV-2601, 2020 WL 4273811 (S.D.N.Y. July 23, 2020)..........................................7

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)............................................................................14

*In re Platinum & Palladium Antitrust Litig.*,
   449 F. Supp. 3d 290 (S.D.N.Y. 2020)..........................................................................7, 9

*In re Platinum & Palladium Antitrust Litig.*,
   No. 1:14-CV-9391-GHW, 2017 WL 1169626 (S.D.N.Y. Mar. 28, 2017) ...............................6

*In re SSA Bonds Antitrust Litigation*,
   420 F. Supp. 3d 219 (S.D.N.Y. 2019)..............................................................................7

*Johnson v. Fordham Univ.*,
   No. 1:11-CV-04670 (ALC), 2016 WL 450424 (S.D.N.Y. Feb. 4, 2016)..........................5, 10

*Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)...........................................................................................6

*Morales v. Lee*,
   No. 09 CIV. 9280 RO, 2011 WL 4526371 (S.D.N.Y. Sept. 29, 2011) ...................................5

*Ortiz v. Barkley*,
   558 F. Supp. 2d 444 (S.D.N.Y. 2008)..........................................................................5, 10

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
   609 F.3d 30 (2d Cir. 2010)..............................................................................................9

*Porina v. Marward Shipping Co.*,
   521 F.3d 122 (2d Cir. 2008).............................................................................................6

*Rudersdal, EEOD v. Harris*,
   No. 1:18-CV-11072-GHW, 2020 WL 5836517 (S.D.N.Y. Sept. 30, 2020)................... *passim*

*Tymoshenko v. Firtash*,
   No. 11-CV-2794 KMW, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013)..................................8

*United States v. Maldonado-Rivera,*
 922 F.2d 934 (2d Cir. 1990)..................................................................16

*Unspam Techs., Inc. v. Chernuk,*
 716 F.3d 322 (4th Cir. 2013) ....................................................................6

*Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.,*
 No. 13-cv-9239 (CS), 2017 WL 972117 (S.D.N.Y. Mar. 10, 2017) ...........................4, 11, 13

*Wyndham Assocs. v. Bintliff,*
 398 F.2d 614 (2d Cir. 1968)..................................................................12

## <u>Other Authorities</u>

Fed. R. Civ. P. 4 ................................................................................ *passim*

Fed. R. Civ. P. 12 ...................................................................................9

Fed. R. Civ. P. 72 ...................................................................................4

# INTRODUCTION

The issues currently before the Court are narrow.  With regard to personal jurisdiction, this Court has already held that Plaintiffs have failed to allege that "the [Fibank] Defendants themselves ha[ve] contacts in the United States that establish . . . jurisdiction over them." *Rudersdal, EEOD v. Harris*, No. 1:18-CV-11072-GHW, 2020 WL 5836517, at *7 (S.D.N.Y. Sept. 30, 2020).[1]  And with regard to *forum non conveniens*, this Court has held that this case should be conditionally dismissed because, *inter alia*, "Plaintiffs' choice of forum warrants little deference," "Bulgaria is an adequate alternative forum," and "private and public interest factors both weigh in favor of litigating in Bulgaria."  *Id.* at *10–13.  Thus, the only questions before Magistrate Judge Lehrburger, and now this Court, are:  (1) whether the "conspiracy personal jurisdiction" theory applies to the claims in this case, *id.* at *14; and (2) whether it is appropriate "to sever those defendants that are not amenable to suit in Bulgaria in order to facilitate a dismissal for *forum non conveniens*," *id.* at *13.

Judge Lehrburger correctly answered both questions.

*First*, Judge Lehrburger properly determined that "conspiracy personal jurisdiction" does not apply here, where Plaintiffs are invoking Rule 4(k)(2) of the Federal Rules of Civil Procedure.  He reasoned that ruling to the contrary "would dramatically expand the jurisdiction of the federal courts over foreign defendants," in a manner that would raise due process concerns and be in tension with the Supreme Court's admonition that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." Report & Recommendation ("R&R") at 41 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.,*

---

[1] The "Fibank Defendants" consist of Fibank and two of its shareholders, Defendants Tseko Todorov Minev and Ivailo Dimitrov Mutafchiev.

*Solano Cty.*, 480 U.S. 102, 115 (1987)).  Moreover, Judge Lehrburger also correctly determined

that, even if the principle of conspiracy jurisdiction applied, "Plaintiffs [do not] offer any

explanation of how the requirements of conspiracy jurisdiction under Rule 4(k)(2) would be met

here."  *Id.* at 39.  Indeed, Plaintiffs have not made a *prima facie* factual showing of a conspiracy,

pled jurisdictionally relevant overt acts, or demonstrated that exercising jurisdiction would be

reasonable here—all of which would be necessary elements for establishing conspiracy

jurisdiction, if the doctrine were available here.

 *Second*, Judge Lehrburger correctly recommended severing the claims against the "Group

One Defendants,"[2] so that the claims against the "Group Two Defendants"[3] can be dismissed on

grounds of *forum non conveniens*.  *Id.* at 64.  Judge Lehrburger properly determined that

severance is appropriate to facilitate a *forum non conveniens* dismissal, *id.* at 46–47, and that all

five factors relevant to the severance issue in this Circuit are met in this case, *id.* at 48–63.

 Because Judge Lehrburger correctly answered the two questions posed in this Court's

September 30, 2020 Order, this Court should adopt the R&R in full, grant the Fibank

Defendants' motion to dismiss for lack of personal jurisdiction, and sever the claims against the

---

[2] Namely, Philip Robert Harris ("Harris"), Ayr Logistics Limited, Inc. ("Ayr"), Anthony Dennis
Harriott ("Harriott"), Chavdar Angelov Angelov ("Angelov"), All Seas Management, Ltd. ("All
Seas"), Blue Finance Limited ("Blue Finance"), and the Bank of New York Mellon ("BNYM").

[3] Namely, the Fibank Defendants; Tabak Market, AD, a/k/a Lafka Market AD, Cibole Services
Incorporated, Bulgaria, EOOD, Asteria BG, EOOD a/k/a Droslian Bulgaria, EOOD, Vili Vist,
EAD, Promishleno Stroitelstvo Holding, EA (together, "the Five Companies"); Delyan Peevski
and Intrust PLC f/k/a NSN Investment, EEOD (together, "the Peevski Defendants"); Bulgartabac
Holding AD ("Bulgartabac"); Bulgarian National Bank; Stanislav Georgiev Lyutov and Elena
Zdravkova Kostadinchev (together, "the BNB Conservators"), Eaton Vance Management,
Parametric Portfolio Associates d/b/a/ Parametric Emerging Fund, and Eaton Vance Emerging
Markets Equity Fund, LLC a/k/a Eaton Vance Structured Emerging Markets (together, the
"Eaton Vance Defendants"), and VTB.

Group One Defendants to facilitate a *forum non conveniens* dismissal as to the Group Two Defendants.

## BACKGROUND

### A.    Statement of Facts

The relevant facts are presented in the Fibank Defendants' Memorandum of Law in Opposition to Plaintiffs' Objections to Magistrate Judge Lehrburger's August 18, 2020 Report and Recommendation, ECF 338 at 1-4.[4]

### B.    Procedural History

The procedural history of this case from the filing of Plaintiffs' Complaint until September 1, 2020 can be found at ECF 338 at 4–5.  On September 30, 2020, this Court issued an Order holding that the Fibank Defendants lack sufficient individual contacts in New York or the United States to warrant exercising personal jurisdiction over them, and made similar findings with respect to other Bulgarian defendants.  *Rudersdal*, 2020 WL 5836517, at *7. However, the Court held defendants' motions to dismiss in abeyance "pending targeted briefing on conspiracy jurisdiction in light of" the Second Circuit's decision in *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018).  *Rudersdal*, 2020 WL 5836517, at *14.  The Court further held that dismissal on *forum non conveniens* grounds is appropriate, as long as:  (1)

---

[4] The Fibank Defendants reiterate that, for purposes of their motions to dismiss, they have accepted Plaintiffs' jurisdictional allegations for the sake of argument.  Notably, alongside their Objections, Plaintiffs have now filed a second declaration by Zahari Tomov, this one dated March 10, 2021, ECF 392-6.  Plaintiffs did not submit this declaration to the Magistrate, and, as a result, that declaration should not be considered by this Court.  *See, e.g.*, *Feehan v. Feehan,* No. 09 CIV. 7016 DAB, 2010 WL 3734079, at *2 (S.D.N.Y. Sept. 22, 2010) ("[I]t is inappropriate for the Court to consider new evidence upon review of a Magistrate's Report and Recommendation, when Parties had an opportunity fully to brief their [Motions] before the Magistrate.").

defendants consent to personal jurisdiction in Bulgaria; (2) Bulgarian courts accept jurisdiction over the matter; and (3) defendants waive any statute of limitations defenses that arose since commencement of the action. *Id.* The Court also issued an "order to show cause" for the Plaintiffs to explain "why the Second Amended Complaint should not be dismissed for *forum non conveniens*." *id.* at *13. The Court further noted that "Judge Lehrburger may also consider whether it is appropriate to sever those defendants that are not amenable to suit in Bulgaria in order to facilitate a dismissal for *forum non conveniens*." *Id.* (citing *Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13-cv-9239 (CS), 2017 WL 972117, at *9–10 (S.D.N.Y. Mar. 10, 2017)).

The parties briefed the conspiracy jurisdiction and *forum non conveniens* issues before Judge Lehrburger.[5] On February 27, 2021, Judge Lehrburger issued the R&R, in which he recommended that this Court (i) grant the motions to dismiss for lack of personal jurisdiction, and (ii) sever the claims against certain defendants to facilitate a dismissal for *forum non conveniens*. Plaintiffs—as well as Defendants Angelov, All Seas, Blue Finance, Harriott, and Grant Capital (collectively, the "Non-Moving Defendants")—filed their Objections on March 15, 2021. ECF 390, 391, 392.

## STANDARD OF REVIEW

In general, this Court reviews *de novo* any portion of Judge Lehrburger's R&R to which the parties have "properly objected." Fed. R. Civ. P. 72(b)(3).[6] "[I]n making a *de novo*

---

[5] *See* ECF 361, 367, 369, 380, 381, 384.

[6] Because "[m]otions for severance and transfer are non-dispositive," *Bernier v. Koenigsmann*, No. 15-CV-209A, 2017 WL 603217, at *2 (W.D.N.Y. Feb. 15, 2017), the Court should review Judge Lehrburger's recommendation regarding severance for clear error. *See* Fed. R. Civ. P. 72(a). However, even under a *de novo* standard of review, Judge Lehrburger's recommendation to sever is meritorious and sound.

determination," a district court judge "has discretion in the weight placed on proposed findings and recommendations and may afford a degree of deference to the Report and Recommendation." *Morales v. Lee*, No. 09 CIV. 9280 RO, 2011 WL 4526371, at *1 (S.D.N.Y. Sept. 29, 2011). Furthermore, "[i]t is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) (quoting *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)). "[W]here objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition, the Court should review only for clear error." *Johnson v. Fordham Univ.*, No. 1:11-CV-04670 (ALC), 2016 WL 450424, at *1 (S.D.N.Y. Feb. 4, 2016) (quotation marks omitted) (quoting *Ortiz*, 558 F. Supp. 2d at 451).

## ARGUMENT

### I. JUDGE LEHRBURGER CORRECTLY DETERMINED THAT PLAINTIFFS HAVE NOT SUBSTANTIATED THE EXISTENCE OF CONSPIRACY JURISDICTION UNDER RULE 4(k)(2)

#### A. Judge Lehrburger Correctly Determined That Conspiracy Jurisdiction Is Unavailable under Rule 4(k)(2)

As a general matter, to determine whether exercising personal jurisdiction over a defendant would offend due process, a court engages in a two-step analysis:

> First, [the court] "evaluate[s] the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test. Where the claim arises out of, or relates to, the defendant's contacts with the forum—*i.e.*, specific jurisdiction is asserted—minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." Second, once minimum contacts are established, a court considers those contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice."

*Schwab*, 883 F.3d at 82 (internal citations omitted) (quoting *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).[7]

Rule 4(k)(2) provides an avenue for litigants to assert personal jurisdiction when a foreign defendant "ha[s] contacts with the United States sufficient to justify the application of United States law . . ., but ha[s] insufficient contact with any single state to support jurisdiction under state long-arm legislation." *Porina v. Marward Shipping Co.*, 521 F.3d 122, 127 (2d Cir. 2008) (quoting Fed. R. Civ. P. 4 advisory committee's note, 1993 Amendments). Accordingly,

> Rule 4(k)(2) allows courts to exercise personal jurisdiction over a defendant on condition: "(1) that plaintiff's cause of action arise[s] under the federal law; (2) that the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one State; and (3) that the defendant's total contacts with the United States as a whole are sufficient to confer the court with personal jurisdiction without offending due process.

*In re Platinum & Palladium Antitrust Litig.*, No. 1:14-CV-9391-GHW, 2017 WL 1169626, at *40 (S.D.N.Y. Mar. 28, 2017) (emphasis removed) (quoting *Hartford Fire Ins. v. Co.*, No. 03 CIV. 2196 (SAS), 2003 WL 22990090, at *3 (S.D.N.Y. Dec. 18, 2003)).

In *Schwab*, the Second Circuit outlined a means by which the contacts of one party can in some circumstances be imputed to another party for jurisdiction purposes—namely, the "conspiracy jurisdiction" framework that the Fourth Circuit described in *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322 (4th Cir. 2013). *See Schwab*, 883 F.3d at 87. Under this framework, a

---

[7] Because the purported basis for personal jurisdiction here is Rule 4(k)(2), which authorizes nationwide service of process, district courts in this Circuit have held the relevant "forum" for analyzing a defendant's contacts is the United States as a whole. *See, e.g.*, *City of Long Beach v. Total Gas & Power N. Am., Inc.*, 465 F. Supp. 3d 416, 434–35 (S.D.N.Y. 2020). *But cf. Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 201–02 (S.D.N.Y. 2018) (noting that the Second Circuit "has not yet decided" whether to adopt this "nationwide contacts approach" (quoting *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 142 n.21 (2d Cir. 2014))).

co-conspirator's contacts with a forum can be imputed to a defendant if the plaintiff makes a
*prima facie* showing that: "(1) a conspiracy existed; (2) the defendant participated in the
conspiracy; and (3) [the] co-conspirator's overt acts in furtherance of the conspiracy had
sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state."
*Schwab*, 883 F.3d at 87.

As Judge Lehrburger correctly noted, the asserted statutory basis for personal jurisdiction
in *Schwab* was California's long-arm statute rather than Rule 4(k)(2), and the *Schwab* court "did
not discuss Rule 4(k)(2) at all." R&R 35–36 (citing *Schwab*, 883 F.3d at 82, 86–87).[8] Similarly,
this Court in *Platinum II* did not apply conspiracy jurisdiction under Rule 4(k)(2). *See* R&R at
38 (citing *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 319 & n.23
(S.D.N.Y. 2020) ("*Platinum II*")). Indeed, as Judge Lehrburger observed, Plaintiffs do not cite
any post-*Schwab* case "that has extended the conspiracy theory of jurisdiction to Rule 4(k)(2)."
R&R at 37.[9] Moreover, courts in this District "ha[ve] *specifically declined* to apply" conspiracy
jurisdiction to Rule 4(k)(2), on the grounds that "doing so [could] offend due process and expand
the reach of Rule 4(k)(2) beyond what Congress had intended." *Id.* at 34–35 (emphasis added);
*see*, *e.g.*, *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015)
(noting that applying conspiracy jurisdiction to Rule 4(k)(2) could violate Congressional intent);

---

[8] Plaintiffs erroneously state (at Obj. 47) that the *Schwab* court "applie[d] civil conspiracy
jurisdiction to Sherman Act claims." In fact, *Schwab* does not mention the Sherman Act at all.

[9] Despite Plaintiffs' protestations to the contrary (Obj. at 44-45), Judge Lehrburger correctly read
*In re European Government Bonds Antitrust Litigation,* No. 19-CV-2601, 2020 WL 4273811
(S.D.N.Y. July 23, 2020), and *In re SSA Bonds Antitrust Litigation,* 420 F. Supp. 3d 219
(S.D.N.Y. 2019), as *not* applying conspiracy jurisdiction under Rule 4(k)(2). *See* R&R at 36–37.
In addition, Plaintiffs' citation (at Obj. 45) to *Dennis* is inapposite, as the *Dennis* court does not
mention Rule 4(k)(2).

*Tymoshenko v. Firtash*, No. 11-CV-2794 KMW, 2013 WL 1234943, at *4 (S.D.N.Y. Mar. 27, 2013).

Judge Lehrburger correctly explained that extending conspiracy jurisdiction to Rule 4(k)(2) could present multiple problems, including: (1) potentially rendering certain federal statutes' specified jurisdictional provisions irrelevant, R&R at 39; (2) potentially expanding personal jurisdiction over foreign RICO defendants beyond the bounds currently recognized by case law in this District, *id.* at 40 (citing, e.g., *Elsevier, Inc. v. Grossman,* 77 F. Supp. 3d 331, 343 & n.7 (S.D.N.Y. 2015)); (3) creating the potential for "forum shopping," *id.* at 39;[10] and (4) potentially "dramatically expand[ing] the jurisdiction of the federal courts over foreign defendants," *id.* at 41. All of these legitimate concerns caution against this Court recognizing conspiracy jurisdiction as a viable adjunct to Rule 4(k)(2).

Plaintiffs do not seriously grapple with any of Judge Lehrburger's recommendations. Instead, they simply insist that Judge Lehrburger has applied an erroneous, "expansive" view of due process for foreign defendants. Obj. at 46; *see also id.* ("[C]ivil conspiracy jurisdiction does nothing more than impute [regular] constitutional due process strictures . . . to out-of-forum co-conspirators . . . ."). Plaintiffs ignore the Supreme Court's admonition that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *Asahi*, 480 U.S. at 115—especially because, in the "transnational context,"

---

[10] Indeed, Judge Lehrburger expressly noted that "Plaintiffs' own arguments make it appear that their choice of this district is the result of forum shopping." R&R at 42; *see also Rudersdal*, 2020 WL 5836517, at *10 (agreeing with Magistrate Judge Lehrburger that Plaintiffs have engaged in "forum shopping").

an "expansive view of [personal] jurisdiction" can pose "risks to international comity," *Daimler AG v. Bauman*, 571 U.S. 117, 140–41 (2014).

Refraining from applying conspiracy jurisdiction under Rule 4(k)(2) exemplifies precisely the sort of "[g]reat care and reserve" that the Supreme Court has directed in this context.  Accordingly, this Court should adopt Judge Lehrburger's recommendation that conspiracy jurisdiction does not apply to Rule 4(k)(2).

### B. Judge Lehrburger Correctly Determined That, Even if Conspiracy Jurisdiction *Were* Available under Rule 4(k)(2), Plaintiffs Have Not Carried Their Burden of Establishing Conspiracy Jurisdiction Here

"On a motion to dismiss pursuant to Rule 12(b)(2), the 'plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.'" *Platinum II*, 449 F. Supp. 3d at 317 (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)).  Judge Lehrburger correctly determined that Plaintiffs have not carried this burden, and indeed "[do not] offer any explanation of how the requirements of conspiracy jurisdiction under Rule 4(k)(2) would be met here."  R&R at 39.  Specifically:

> Plaintiffs do not even attempt to identify what federal claim would be the basis for Rule 4(k)(2) jurisdiction, let alone specify how any alleged conspiracy would violate a federal claim, or how any overt act connected with the forum would be in furtherance of the conspiracy to violate a federal claim.  Instead, Plaintiffs point to a number of alleged "conspiracies," without tying them to a particular federal claim, and assert that doing so establishes jurisdiction under Rule 4(k)(2). That is hardly sufficient.

R&R at 39–40.[11]

---

[11] Judge Lehrburger correctly noted that, although "one of Plaintiffs' federal claims is a federal RICO claim," Plaintiffs have not carried their burden of demonstrating how that claim lends itself to an exercise of conspiracy jurisdiction.  R&R at 40; *see also, e.g.*, *Schwab*, 883 F.3d at 81 (explaining that plaintiffs must "mak[e] legally sufficient allegations of jurisdiction" to meet their burden for establishing personal jurisdiction (quoting *Penguin Grp.*, 609 F.3d at 34)).

Furthermore, to establish conspiracy jurisdiction, Plaintiffs must: (1) make a *prima facie*, plausible, and non-conclusory showing of a conspiracy; (2) identify in-forum, jurisdictionally relevant, overt acts; and (3) show that exercising conspiracy jurisdiction "would comport with fair play and substantial justice."  ECF 369, at 4–7.  Plaintiffs have not carried their burden at any of these steps—that is, (1) they have not made a *prima facie* factual showing of a plausible conspiracy, *id.* at 8–11; (2) they have not pled a single jurisdictionally relevant overt act (*i.e.*, an act performed by a co-conspirator "in furtherance of the conspiracy" with a sufficient connection to both the defendants and the forum), *id.* at 11–16; and (3) they have not established that exercising jurisdiction would comport with fair play and substantial justice, *id.* at 16–20.  Plaintiffs' lengthy arguments to the contrary are mere rehashings of their prior briefing to Judge Lehrburger—in many instances almost completely *verbatim*.  *Compare* Obj. at 47–62, *with* ECF 361 at 11–17, *and* ECF 380 at 5–11; *see also, e.g.*, *Johnson*, 2016 WL 450424, at *1 ("[I]t is improper for an objecting party to attempt to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers . . . which are nothing more than a rehashing of the same arguments and positions taken in the original papers . . . ."  (quoting *Ortiz*, 558 F. Supp. 2d at 451).

This Court should accept Judge Lehrburger's conclusion that, even if the doctrine of conspiracy jurisdiction applied here, Plaintiffs have failed to carry their burden with respect to any of the elements.  Accordingly, this Court should grant the Fibank Defendants' motion to dismiss for lack of jurisdiction.

II.   **JUDGE LEHRBURGER CORRECTLY DETERMINED THAT SEVERANCE TO
FACILITATE A *FORUM NON CONVENIENS* DISMISSAL IS APPROPRIATE
IN THIS CASE**

A.   **Judge Lehrburger Correctly Determined That This Court May Sever
Certain Defendants to Facilitate a *Forum Non Conveniens* Dismissal**

This Court in its September 30, 2020 Order expressly acknowledged that "courts may
exercise their discretion to sever claims to facilitate dismissal on *forum non conveniens*
grounds." *Rudersdal*, 2020 WL 5836517, at *13 (quoting *Wave Studio,* 2017 WL 972117, at *9–
10). Judge Lehrburger's analysis therefore correctly began from the premise that a court has the
power to order severance to facilitate a *forum non conveniens* dismissal. *See* R&R at 47.

Plaintiffs' arguments to the contrary are unavailing. First, Plaintiffs' citations (Obj. at
71–72) to *Fasano v. Guoqing Li,* 2020 WL 5096001 (S.D.N.Y. Aug. 28, 2020), and *CF 135 Flat
LLC v. Triadou SPY S.A.,* 2016 WL 5945933 (S.D.N.Y. 2016), are inapposite. *Fasano* "cut[s]
against Plaintiffs' ultimate position here," because, although *Fasano,* in dicta, questioned
whether severance is permitted in the context of *forum non conveniens*, it ultimately dismissed
all claims against all defendants on that basis. R&R at 47 n.64 (citing *Fasano*, 2020 WL
5096001 at *13). In addition, the *CF 135* court declined to sever claims to facilitate a *forum non
conveniens* dismissal not because it believed it lacked the power to do so, but because it "found
that joinder of [all] the claims" in the case was "proper and promote[d] judicial economy." *CF
135*, 2016 WL 5945933, at *5. Here, however, as described below, Judge Lehrburger correctly
determined that joinder of all claims in this case would be improper and would *not* facilitate
judicial economy.

Second, Plaintiffs argue that Judge Lehrburger's reliance on *Erausquin v. Notz, Stucki
Management (Bermuda) Ltd.*, 806 F. Supp. 2d 712 (S.D.N.Y. 2011), "is misplaced," because this

case contains "no similar facts or allegations."  Obj. at 71–72.  But Judge Lehrburger devoted a full five pages of his R&R to persuasively demonstrating the similarities between this case and *Erausquin*—noting, for example, that both the Plaintiffs in this case and the plaintiffs in *Erausquin* sought to defeat severance by making "particularly hollow" allegations about wrongdoing by foreign defendants.  *See* R&R 52–56.

Finally, Plaintiffs argue that the R&R did not demonstrate that, as in *Wyndham Assocs. v. Bintliff,* 398 F.2d 614 (2d Cir. 1968), "the defendants as to whom venue would not be proper in the [foreign] district are alleged to be only indirectly connected to the manipulations which form the main subject matter of the action.  Obj. at 72–73 (quoting *Wyndham*, 398 F.2d at 618).  In reality, however, as explained below, Judge Lehrburger correctly determined that:  "Plaintiffs broadly allege two courses of conduct," R&R at 4; the main subject matter of the action concerns "theft of the proceeds from the sale of the SBP in Bulgarian bankruptcy court," *id.*; and defendants who are not amenable to suit in Bulgaria are "only indirectly connected to th[ose] manipulations," *Wyndham,* 398 F.2d at 618.  Accordingly, Judge Lehrburger correctly held that a court can, and should, order severance to facilitate a *forum non conveniens* dismissal.

**B.   Judge Lehrburger Correctly Determined That the Severance Factors Weigh in Favor of Severance in This Case**

Judge Lehrburger properly outlined the five factors that courts in this Circuit consider to determine whether severance is appropriate, namely:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

R&R at 48 (citing *Wave Studio*, 2017 WL 972117 at *9).  As Judge Lehrburger correctly determined, while "a court need find only one of the[se] . . . factors to justify severance." *Id.* at 49 (citing *Wave Studio*, 2017 WL 972117 at *10), all five factors favor severance here.

1. *Plaintiffs allege two separate and distinct sets of transactions.*  Judge Lehrburger correctly determined that Plaintiffs' claims encompass "two largely distinct sets of transactions and occurrences."  R&R at 49.  The first alleged course of conduct involves "Angelov and his shell corporations allegedly [taking] the proceeds of three [Fibank] loans that were supposed to be used for the SBP and divert[ing] them to purchase Mexican bonds for the personal benefit of Angelov, Harriott, and Harris."  *Id.* at 49.  This course of conduct "allegedly involves all of the non-nominal defendants who do not consent to jurisdiction in Bulgaria," while the vast majority of the remaining defendants "are not alleged to be involved in that course of conduct."  *Id.* at 49–50.  Although Plaintiffs now contend that the Fibank Defendants were involved in this course of conduct, Judge Lehrburger analyzed Plaintiffs' voluminous claims and correctly determined that "[t]he allegations linking the [Fibank] Defendants to [this] course of conduct are largely conclusory, and the comparatively specific allegations do not indicate fraud on their part, but, at worst, lax oversight of loans issued in arms-length transactions."  *Id.* at 52.[12]

The second alleged course of conduct involved the Fibank Defendants' "allegedly stealing the proceeds of the sale of the SBP in the Bulgarian bankruptcy proceedings at the direction of the Peevski Defendants to benefit the Five Bulgarian Companies, Bulgartabac, and

---

[12] Plaintiffs argue (Obj. at 23–28) that Judge Lehrburger erred in this reading of their allegations, but their Objections on this point consist of the same conclusory and "particularly hollow" allegations that Judge Lehrburger correctly determined could not preclude severance here.  *See* R&R at 56 (quoting *Erausquin*, 806 F. Supp. 2d at 721).

VTB." *Id.* at 50.  Judge Lehrburger noted that "the vast majority of the Group One Defendants . . . are not even alleged to be involved in that course of conduct." *Id.*  And although defendant Harris is alleged to have been involved in this conduct as well, Judge Lehrburger correctly determined that Plaintiffs have *also* contradictorily alleged "that Harris's actions did not help [the Fibank Defendants] steal the Funds, and Plaintiffs make no apparent effort to reconcile the contradictions." *Id.* at 56; *see AJ Energy LLC v. Woori Bank*, No. 18-CV-3735 (JMF), 2019 WL 4688629, at *3 (S.D.N.Y. Sept. 26, 2019) ("[A] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself . . . ." (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001))).[13]

2.  *The alleged courses of conduct present separate questions of fact and law.*  Judge Lehrburger correctly found that the two alleged courses of conduct present separate questions of law and fact.  In his words:

> Litigating the first course of conduct will involve legal questions about the propriety of using loans earmarked for one purpose for another purpose. Litigating the second will involve legal questions about whether [the Fibank Defendants] stole funds to which Plaintiffs were entitled.  Both will likely turn on Bulgarian law . . ., but they are distinct.

R&R at 59.  And, as Judge Lehrburger correctly noted, "even if there were some overlap, that would not preclude severance."  R&R at 59–60 (citing *Erausquin*, 806 F. Supp. 2d at 722).

---

[13] Plaintiffs insist (Obj. at 31–34) that Judge Lehrburger misconstrued their allegations regarding Harris, but their Objections consist of the same "contradictory and implausible allegations" that Judge Lehrburger properly determined "should not preclude severance here," R&R at 58. *Compare, e.g.*, Obj. 31 ("Harris ha[d] no interest in the bankruptcy estate assets."), *with* Obj. 32 (explaining that "Harris and Fi[b]ank saw [an] opportunity" to use the bankruptcy estate assets "for payment of the debts of the Five Companies towards CCB").

3. *Severance promotes judicial economy.*  As Judge Lehrburger concluded, judicial economy would be facilitated by ordering severance, given that "all of the Plaintiffs are Bulgarian, most of the defendants are Bulgarian, almost all of the relevant transactions occurred in Bulgaria, most of the witnesses and evidence are in Bulgaria, and the claims will likely turn on Bulgarian law."  R&R at 63.

4. *Severance will avoid prejudice.*  Judge Lehrburger correctly determined that the prospect of prejudice to the many Bulgarian defendants weighs in favor of severance:

> [i]f the claims against the defendants involved in the two courses of conduct were not severed, eighteen defendants, fourteen of them Bulgarian, would be dragged to this forum to litigate claims that will turn on Bulgarian law, largely stemming from transactions that occurred in Bulgaria, where most of the witnesses and evidence are located.

R&R at 62.

5. *The claims require different witnesses and evidence.*  Judge Lehrburger correctly concluded that resolving the claims surrounding the two courses of conduct would require different witnesses and evidence; indeed, "[t]here is no reason to believe that the witnesses and evidence related to diversion of the loans through Malta to purchase Mexican bonds would be the same as the witnesses and evidence to the theft of the bankruptcy funds, and Plaintiffs posit none."  R&R at 60.

Plaintiffs' arguments against Judge Lehrburger's analysis are unavailing.  Plaintiffs contest Judge Lehrburger's conclusion that they have pled two distinct courses of conduct, and argue instead that they have alleged "one conspiracy"—*i.e.*, "one joint effort" among every single defendant "that was properly pled as evolving."  Obj. at 28–31.  But Plaintiffs' characterization of their pleadings is not accurate, and to the extent their pleadings seek to

describe one "evolving" conspiracy, the allegations are conclusory and implausible.  *See Erausquin*, 806 F. Supp. 2d at 721–22 (noting that "bare conclusions concerning" a conspiracy do not suffice to preclude severance).  Indeed, Plaintiffs do not provide a single concrete, non-conclusory allegation demonstrating the existence of an overarching "joint" agreement among the defendants, even though "the essence of any conspiracy, even a conspiracy with multiple objectives, is, of course, agreement." *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 88 n.28 (E.D.N.Y. 2019) (internal quotation marks and brackets omitted) (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990)).  Moreover, Plaintiffs cannot show any error in Judge Lehrburger's conclusion that the two separate conspiracies involve alleged transactions occurring at different times and involving different witnesses and evidence, raising distinct issues of fact and law that favor severance.

Similarly, Plaintiffs' arguments that severance will create, rather than avoid, prejudice have no merit.  Plaintiffs present yet again their contention that the foreign defendants would not be prejudiced by electronic or remote hearings, Obj. at 34–37, 76–77, but this Court has already held that it is "unnecessarily difficult and costly to conduct trial here" because "the vast majority of witnesses, documents, and other sources of proof necessary to conduct trial in this matter are located in Bulgaria." *Rudersdal*, 2020 WL 5836517, at *10; *see also* R&R at 63 ("This Court found, and Judge Woods agreed, that all of the claims in this case would be more appropriately litigated in Bulgaria.").

Plaintiffs further argue that, "[a]s the severance recommendation is currently recommended, plaintiffs will be required to conduct at least two, and perhaps three nearly identical cases."  Obj. at 73.  The Non-Moving Defendants similarly contend in their "line

16

objections" that they all have as-yet unasserted cross-claims that supposedly cannot be brought

in Bulgaria.  *See* ECF 390 at 1; ECF 391 at 1.  These parties, however, do not genuinely grapple

with Judge Lehrburger's thoughtful analysis on this issue, which correctly explained that, on the

whole, judicial economy and the balance of prejudice clearly favor severance:

> The first course of conduct relates almost exclusively to the actions of the Group
> One Defendants.  Angelov, Harriott, and their alleged shell companies are free to
> bring cross-claims against any of their Group One Co-Defendants (and
> counterclaims against Plaintiffs).  Most of the Group Two Defendants, on the
> other hand, are not even alleged to be involved in the first course of conduct.  The
> only exception is the [Fibank] Defendants and, as described above, their alleged
> involvement in the first course of conduct is extremely limited.  To the extent
> Angelov, Harriott, and their . . . alleged [shell] companies believe that they have
> valid claims against the [Fibank] Defendants (or other Group Two Defendants)
> related to the first course of conduct, they can bring those claims in Bulgaria.
> That may create some duplicative litigation, but on balance, the scales of judicial
> economy still tip heavily toward severance . . . .
>
> The same is true with respect to the balance of prejudice overall.  The prejudice of
> requiring Plaintiffs and Angelov to litigate distinct claims in two different fora,
> where the other forum is clearly the appropriate one, pales in comparison to the
> prejudice of requiring all of the Group Two Defendants to litigate the claims
> against them here.  The Group Two Defendants are almost all Bulgarian . . . and
> the claims against them are based entirely on a course of conduct—the theft of the
> bankruptcy funds—that occurred in Bulgaria.

R&R at 61–62.

In short, Judge Lehrburger persuasively explained that the five relevant factors all cut in

favor of severance.  This Court should accept his recommendation to sever the Group One

Defendants.

## CONCLUSION

For the forgoing reasons, the Court should accept Magistrate Judge Lehrburger's

recommendations in full, grant the Fibank Defendants' motion to dismiss for lack of personal

jurisdiction, and sever the claims against the Group One Defendants to facilitate a *forum non conveniens* dismissal.

<div style="margin-left: 40%;">

ARNOLD & PORTER KAYE SCHOLER LLP

By:   /s/ David B. Bergman
E. Whitney Debevoise
David B. Bergman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
202.942.5000
202.942.5999 (fax)

Avishai D. Don
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
212.836.8000
212.836.8689 (fax)

*Attorneys for Defendants First Investment Bank, AD, Tseko Todorov Minev, and Ivailo Dimitrov Mutafchiev*

</div>

Dated:  March 29, 2021