UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUDERSDAL, EOOD, et al., | ) <br> ) <br> ) |
| *Plaintiffs*, | ) <br> ) Case No. 1:18-cv-11072-GHW-RWL |
| v. | ) <br> ) |
| PHILIP ROBERT HARRIS, et al., | ) <br> ) <br> ) |
| *Defendants*. | ) <br> ) |

**DEFENDANT BULGARIAN NATIONAL BANK'S MEMORANDUM
IN RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE SECOND REPORT AND
<u>RECOMMENDATION OF MAGISTRATE JUDGE ROBERT W. LEHRBURGER</u>**

**WHITE & CASE** LLP

Claire A. DeLelle
Owen C. Pell
Susan L. Grace
Steven A. Levy
Jennifer M. Thomas
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200

*Counsel for the Bulgarian National Bank*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ............................................................................................................................... 3

I.   As A Matter Of Law, Conspiracy Jurisdiction Has No Bearing On This Court's Dismissal of BNB .............................................................................................................. 4

II.  Severance Is Warranted To Facilitate This Court's *Forum Non Conveniens* Dismissal ..... 6

CONCLUSION ........................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Argentine Rep.* v. *Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989)..................................................................................................5

*Chettri* v. *Nepal Rastra Bank*,
  834 F.3d 50 (2d Cir. 2016)........................................................................................5

*Erausquin* v. *Notz, Stucki Mgmt. (Brm.)*,
  806 F. Supp. 2d 712 (S.D.N.Y. 2011)....................................................................8, 9

*In re Terrorist Attacks on September 11, 2001*,
  440 F. Supp. 2d 281 (S.D.N.Y. 2006).....................................................................4, 5

**STATUTES AND RULES**

Fed. R. Civ. P. 4(k)(2).........................................................................................................5

Foreign Sovereign Immunities Act...........................................................................1, 3, 4, 5

The Bulgarian National Bank ("BNB") submits this memorandum in response to Plaintiffs' Objections (ECF No. 392) ("Objections to Second R&R") to the Report and Recommendation of Magistrate Judge Robert W. Lehrburger dated February 27, 2021 (ECF No. 389) (the "Second R&R"). For the reasons set forth below, the Second R&R should be adopted in full. BNB's Motion to Dismiss already has been granted, and this action now should be dismissed with prejudice because BNB is not subject to jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), and, in the alternative, on the basis of *forum non conveniens*, which dismissal should be facilitated by severing certain defendants who have not consented to suit in Bulgaria.[1]

## PRELIMINARY STATEMENT

The September 30 Order granted BNB's Motion to Dismiss on the grounds that "BNB is immune to jurisdiction under" the FSIA. (September 30 Order at 16; *see also id.* at 26.) The Court, however, "held in abeyance" the motions to dismiss filed by certain other defendants—

---

[1] Plaintiffs filed the original Complaint in November 2018. (ECF No. 1.) Plaintiffs filed a First Amended Complaint in July 2019 (ECF No. 146), which was after Plaintiffs had the benefit of Defendants' pre-motion letters (e.g., ECF No. 91 (as to BNB)). After Defendants moved to dismiss before Judge Lehrburger (ECF No. 177 (as to BNB)), Plaintiffs filed a Second Amended Complaint (**the "SAC"**) in January 2020. (ECF No. 230.) Defendants moved to dismiss the SAC in February 2020. (ECF No. 256 (as to BNB).) Plaintiffs filed their opposition to BNB's Motion to Dismiss in February 2020 (ECF No. 271), and BNB filed its Reply Brief on the Motion to Dismiss in March 2020. (ECF No. 305.) In addition, in February 2020, Plaintiffs filed a motion for jurisdictional discovery. (ECF No. 293.) BNB opposed that motion in March 2020 (ECF No. 307), and Plaintiffs filed their reply in March 2020. (ECF No. 310 (as to BNB).) On August 18, 2020, Magistrate Judge Lehrburger filed the First Report and Recommendation ("**First R&R**"). (ECF No. 324.) Plaintiffs filed Objections on September 1, 2020. (ECF No. 326.) Defendants filed responses to Plaintiffs' Objections on September 15, 2020. (ECF No. 342 (as to BNB).) Plaintiffs filed replies to Defendants' responses on September 22, 2020. (ECF No. 354 (as to BNB).) On September 30, 2020, this Court issued a Memorandum Opinion and Order (**the "September 30 Order"**) adopting Judge Lehrburger's recommendations with certain modifications and ordering Plaintiffs to show cause before Judge Lehrburger why the action should not be dismissed as to both Moving and Non-Moving Defendants. (ECF No. 356.) Plaintiffs filed a Response to Order to Show Cause (ECF No. 363) and Corrected Response to Order to Show Cause (ECF No. 367) on October 21, 2020. On November 11, 2020, the Moving Defendants other than BNB filed a joint letter response (ECF No. 381) and BNB filed a separate letter response. (ECF No. 382). Plaintiffs filed a reply to BNB's letter response (ECF No. 383) (**"Pls.' Reply I"**) and a reply to the other Moving Defendants' joint letter response (ECF No. 384) (**"Pls.' Reply II"**) on November 20, 2020. On February 27, 2021, Judge Lehrburger filed the Second R&R. (ECF No. 389.) Objections to the Second R&R were filed by Non-Moving Defendants Angelov (ECF No. 390) and Harriott (ECF No. 391) with their respective shell companies and by Plaintiffs (ECF No. 392) on March 15, 2021.

namely, the FIB Defendants, the Five Bulgarian Companies, the Peevski Defendants, and Bulgartabac—pending targeted briefing on conspiracy jurisdiction before Judge Lehrburger. (September 30 Order at 26.)  In addition, this Court directed Judge Lehrburger to consider whether the dismissal for *forum non conveniens* should proceed notwithstanding the presence of certain non-moving defendants who refused to consent to being sued in Bulgaria.[2]  (*Id.* at 27.)

Before issuing the 66-page Second R&R, Judge Lehrburger again combed through extensive additional pleadings filed by Plaintiffs, and once again, Judge Lehrburger has offered an in-depth analysis of Plaintiffs' allegations and arguments.  Indeed, Judge Lehrburger found many instances of documents used by Plaintiffs contradicting the SAC or, in places, the SAC being internally inconsistent.  (*See, e.g.*, Second R&R at 7 n.12, 8 n.16, 56.)

Based on this in-depth analysis of the case, Judge Lehrburger found that nothing argued by the Plaintiffs since the First R&R or the September 30 Order had changed this Court's conclusion that Bulgaria is the appropriate forum for this case.  Thus, Judge Lehrburger stated that nothing in Plaintiffs' additional filings "change the fact that all plaintiffs are Bulgarian, that plaintiffs appear to be forum shopping, that the vast majority of witnesses and relevant documents are located in Bulgaria, that Bulgarian law will apply to numerous claims, and that Bulgaria has a strong interest in adjudicating this matter." (Second R&R at 44.)

As to BNB, the Second R&R notes that BNB was dismissed based on sovereign immunity.  Hence, none of the additional briefing on conspiracy jurisdiction applied to BNB. (Second R&R at 45 n.59.)  Despite the clarity of the September 30 Order, before Judge

---

[2] The "Moving Defendants" are defined in the September 30 Order as Harris, the FIB Defendants, the Peevski Defendants, the Five Bulgarian Companies, Bulgartabac, BNB, BNYM, and the Eaton Vance Defendants. (September 30 Order at 1 n.2.)

Lehrburger, Plaintiffs nonetheless attempted to assert that BNB might be subject to jurisdiction under some type of conspiracy theory. Judge Lehrburger expressly rejected this argument:

> Plaintiffs nevertheless appear to try to drag BNB back into the personal jurisdiction dispute based on the supplementary briefing on conspiracy jurisdiction. Plaintiffs' argument that "conspiracy jurisdiction" over BNB is not precluded by BNB's immunity from suit is mystifying . . . Regardless, Plaintiffs have not established a basis for extending conspiracy jurisdiction to BNB.

(Second R&R at 45 n.59 (internal citations omitted).) In then recommending severance with regard to the *forum non conveniens* dismissal as to certain non-moving and non-consenting defendants, Judge Lehrburger found that Plaintiffs' arguments in opposition again were premised on either conclusory or contradictory allegations. (Second R&R at 53-54, 56-59.) With regard to BNB, Judge Lehrburger stated that "[t]he dismissal for forum non conveniens would be an alternative ground for dismissal for BNB, . . . over whom Judge Woods already has found no personal jurisdiction" under the FSIA. (Second R&R at 64.)

The Second R&R should be adopted because (i) as a matter of law, there is no basis for Plaintiffs belatedly to assert conspiracy jurisdiction against BNB; and (ii) having engaged in what this Court found to be forum-shopping, Plaintiffs may not use nominal parties to manufacture grounds for avoiding a *forum non conveniens* dismissal. Plaintiffs have once again failed to offer any legal or factual basis for disputing Judge Lehrburger's findings in this respect, and this Court, having provided Plaintiffs with multiple opportunities to amend their Complaints and supplement the record, now should dismiss this case with prejudice.

## **ARGUMENT**

The September 30 Order sets forth the standards of review applicable here. (September 30 Order at 4 (quoting 28 U.S.C. § 636(b)(1)).) To the extent that Plaintiffs once again rely on

3

conclusory assertions or only repeat arguments previously made and rejected, the clear error standard applies.  (*Id.* at 5.)

I. **AS A MATTER OF LAW, CONSPIRACY JURISDICTION HAS NO BEARING ON THIS COURT'S DISMISSAL OF BNB**

Even though this Court's Order on additional briefing as to conspiracy jurisdiction did not apply to BNB, Judge Lehrburger correctly rejected Plaintiffs' belated argument that BNB could somehow be subject to conspiracy jurisdiction notwithstanding its sovereign immunity.[3] (Second R&R at 45 n.59.)  Judge Lehrburger described Plaintiffs' argument as "mystifying," particularly given the fact that the only case cited in support involved a party that was not immune from suit.  (*See id.* (citing *In re Terrorist Attacks on September 11, 2001*, 440 F. Supp. 2d 281, 283 (S.D.N.Y. 2006)).)  This finding should be adopted for three reasons.

*First*, Plaintiffs do not make any specific objections to Judge Lehrburger's findings concerning BNB on this point.  Indeed, Plaintiffs' Objections to the Second R&R do not argue that BNB could be subject to conspiracy jurisdiction despite FSIA immunity.  As such, there is no basis for Plaintiffs now to ignore BNB's immunity altogether and summarily claim that "conspiracy jurisdiction is applicable to all Defendants," while pointing to the same alleged conspiracies cited in their response to the Order to Show Cause—which Judge Lehrburger

---

[3] Before Judge Lehrburger, Plaintiffs did not mention BNB in their initial brief on conspiracy jurisdiction.  (*See* ECF No. 361 at 17 ("Under *Schwab*, therefore, this Court has personal jurisdiction over the FIB Defendants, the Five Bulgarian Companies, the Peevski Defendants, and Bulgartabac, along with other participants in the conspiracy.").)  In their reply, however, Plaintiffs suggested for the first time that BNB could be subject to conspiracy jurisdiction.  (Pls.' Reply to Defs.' Consolidated Opp'n (ECF No. 380) at 11.)  Then, in their reply to BNB's letter (ECF No. 382) regarding *forum non conveniens*, Plaintiffs for the first time expressly (albeit confusingly) asserted that "[c]onspiracy jurisdiction . . . is not a stand-alone jurisdictional grant inconsistent with FSIA jurisdiction."  (Pls.' Reply I at 3.)

4

expressly considered and rejected.[4]  (*See* Objections to Second R&R at 37; *see also id.* at, *e.g.*, 50-54 (copying and pasting, verbatim, portions of ECF No. 361 at 9-11, 15-16).)

*Second*, there can be no conspiracy jurisdiction over BNB as a matter of law.  The FSIA provides "the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."  *Argentine Rep.* v. *Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).  Thus, the FSIA is the sole basis for personal and subject matter jurisdiction as to a foreign sovereign entity.  *See, e.g.*, *Chettri* v. *Nepal Rastra Bank*, 834 F.3d 50, 55 (2d Cir. 2016) (explaining that federal courts lack both subject matter and personal jurisdiction over claims against a foreign state unless an exception to the FSIA applies).  It has always been undisputed that BNB is a foreign state under the FSIA.  (*See* Compl. at ¶ 8 (ECF No. 1) (alleging jurisdiction under the FSIA).)  As such, Plaintiffs cannot attempt to apply to BNB other theories of jurisdiction (such as Rule 4(k)) nowhere found in the FSIA.  Indeed, no court has ever even attempted to negate FSIA immunity under a theory of conspiracy jurisdiction.[5]

*Third*, as a matter of pleading, Plaintiffs' conspiracy allegations against BNB are wholly conclusory.  For example, this Court already has rejected Plaintiffs' attempts to conflate BNB with the Conservators appointed to manage CCB.  (*See* September 30 Order at 16 (holding that

---

[4] Judge Lehrburger considered these allegations and found them insufficient to establish conspiracy jurisdiction, even as to the other Defendants.  "Plaintiffs [do not] offer any explanation of how the requirements of conspiracy jurisdiction under Rule 4(k)(2) would be met here . . . Plaintiffs do not even attempt to identify what federal claim would be the basis for Rule 4(k)(2) jurisdiction, let alone specify how any alleged conspiracy would violate a federal claim, or how any overt act connected with the forum would be in furtherance of the conspiracy to violate a federal claim."  (Second R&R at 39-40.)

[5] As Judge Lehrburger correctly noted, the only case Plaintiffs cited did not involve a foreign state that was found to be immune under the FSIA.  (*See* Pls.' Reply I at 3-4 (citing *In re Terrorist Attacks on September 11, 2001*, 440 F. Supp. 2d 281, 283 (S.D.N.Y. 2006)).)  Rather, the defendant's status as a foreign state in *In re Terrorist Attacks* had yet to be determined.  440 F. Supp. 2d at 283.  Before finishing lengthy jurisdictional discovery regarding FSIA immunity, that defendant sought to accelerate its dismissal by petitioning the court for reconsideration of its motion to dismiss under an alternative theory that it lacked sufficient minimum contacts with the U.S. to support personal jurisdiction.  *Id.*  This necessitated limited jurisdictional discovery as to conspiracy jurisdiction which had previously been stayed pending a determination of FSIA immunity.  *Id.*

the alleged acts of CCB and the Conservators cannot be attributed to BNB and that "[n]othing before the Court indicates that BNB participated in the decision to authorize transferring money out of APD's bank account at CCB" (citation omitted)).) Nevertheless, in their Objections to the Second R&R, Plaintiffs continue to string together BNB and the Conservators more than 18 times. (*See* Objections to Second R&R at 18, 18 n.25, n.26, n.27, 19, 19 n.32 & n.33, 29, 58, 58 n.82, n.83 & n.84, 59, 59 n.86 & n.89, 60.) Given the September 30 Order, and as a matter of basic pleading, these types of conclusory allegations should be disregarded. (*See* September 30 Order at 16.) Accordingly, Judge Lehrburger's findings as to BNB with respect to there being no basis for any assertion of conspiracy jurisdiction should be adopted.

## II. SEVERANCE IS WARRANTED TO FACILITATE THIS COURT'S *FORUM NON CONVENIENS* DISMISSAL

As noted by Judge Lehrburger, Plaintiffs claim that, by refusing to consent to suit in Bulgaria, Defendants Angelov, Harriott, and their respective shell companies (the "Non-Consenting Defendants") can prevent severance with respect to this Court's holding as to *forum non conveniens*. Judge Lehrburger found, however, that severance should be permitted because the claims relating to the Non-Consenting Defendants were sufficiently distinct from allegations against the other Defendants (including BNB) which have moved to dismiss **and** consented to suit in Bulgaria. (*See* Second R&R at 44, 49-59.) Specifically, Judge Lehrburger found that the claims relating to the consenting and Non-Consenting Defendants (i) arise from largely distinct sets of transactions and occurrences (*id.* at 49-59); (ii) present separate questions of law and fact (*id.* at 59-60); (iii) will involve different witnesses and documentary proof (*id.* at 60); (iv) that any prejudice to Plaintiffs and the Non-Consenting Defendants that would arise from severance "pales in comparison to the prejudice of requiring all" the other Defendants to litigate the claims

6

against them in this Court (*id.* at 61-62); and (v) that "[s]everance would undoubtedly facilitate judicial economy" (*id.* at 63).

Judge Lehrburger's findings should be adopted in full for the reasons set forth in the memorandum filed by the FIB Defendants in response to Plaintiffs' Objections to the Second R&R, which BNB joins in and adopts with respect to this aspect of the Court's *forum non conveniens* ruling. (*See* ECF No. 395 at 11-17.) In addition, Judge Lehrburger's findings should be adopted because severance also is warranted because Plaintiffs' use of the Non-Consenting Defendants is another aspect of their attempt to manufacture jurisdiction in this case.

Despite being served in this case, the Non-Consenting Defendants have acted like defendants in name only. For example, while choosing not to appear at the motion to dismiss phase (or even formally appear now), these "defendants" submitted declarations supporting Plaintiffs' opposition to severance. (*See* ECF Nos. 364 and 365 (Declarations by Messrs. Angelov and Harriott for themselves and their respective shell companies).) As Judge Lehrburger noted, as to Angelov, the refusal to consent to suit in Bulgaria is particularly odd, given that Angelov is a Bulgarian citizen and is subject to compulsory process there. (Second R&R at 14 n.31.) Indeed, even before the September 30 Order, Angelov submitted multiple declarations supporting Plaintiffs' opposition to Defendants' Motions to Dismiss. (*See* ECF Nos. 234, 277, 278.) Under these circumstances, the Court should give no weight to Plaintiffs' arguments based on the statements of the Non-Consenting Defendants.

*First*, the Court already has held that Plaintiffs have engaged in forum-shopping (adopting Judge Lehrburger's findings in this regard). (*See* September 30 Order at 19; First R&R at 65; Second R&R at 42.) The extensive use of these nominal Non-Consenting

7

Defendants is just another element of Plaintiffs' forum-shopping because it is nothing but an effort, in effect, to manufacture the jurisdiction and venue of this Court.[6]

*Second*, as BNB showed before Judge Lehrburger (*see* BNB Opposition to Plaintiffs' Response to Order to Show Cause (ECF No. 382) at 2), the presence of a nominal party cannot be used to block dismissal for *forum non conveniens*, particularly where plaintiffs appear to be using nominal defendants "to engineer jurisdiction for what is essentially a foreign dispute." (*See* Second R&R at 53 (citing *Erausquin v. Notz, Stucki Mgmt. (Brm.)*, 806 F. Supp. 2d 712, 722-23 (S.D.N.Y. 2011) (severing effectively nominal defendant where "dominant purpose served by [that defendant's] inclusion appear[ed] to be the creation of subject matter jurisdiction.")).)

In *Erausquin*, the plaintiffs sought to manufacture subject matter jurisdiction over foreign defendants based on "hollow" allegations and "bare conclusions" linking the conduct of the foreign defendants to the largely separate conduct of a single U.S. defendant, who the court characterized as a "nominal defendant": the sole U.S. defendant was judgment-proof and unlikely to provide witness testimony relevant to the claims against the foreign defendants. 806 F. Supp. 2d at 721-22. In severing and dismissing the claims against the foreign defendants, the court noted that the use of a nominal defendant to manufacture jurisdiction "suggest[s] the propriety of severing the claims against [the nominal defendant] to facilitate a forum non conveniens dismissal." *Id.* at 723.

---

[6] Plaintiffs also now attempt to recycle assertions previously rejected by the Court relating to generalized allegations of corruption in Bulgaria. (*See* Objections to Second R&R at 18-19 (citing Chenalova Declaration (ECF No. 187)).) As BNB already has shown, "[t]he European Union recognizes judgments of Bulgarian courts and has certified the progress of the Bulgarian legal system. . . . Moreover, in every instance that Plaintiffs claim unfairness, one finds instead that Plaintiffs have systematically mischaracterized Bulgarian court rulings and/or simply ignored Bulgarian law or the express terms of Bulgarian court orders." (BNB Reply in Support of Mot. to Dismiss (ECF No. 305) at 7 (citing Second Decl. of L. Tomov (ECF No. 306) at ¶¶ 4(b), 6-28, 80-89).) In the September 30 Order, this Court held that Judge Lehrburger was correct in declining to declare Bulgaria an inadequate forum due to corruption or bias. (September 30 Order at 22-23.)

The Second R&R contains a detailed comparison between the facts here and *Erausquin*, and finds Plaintiffs' allegations here "similarly conclusory" and "particularly hollow." (Second R&R at 53-56.) Judge Lehrburger then concluded that "Plaintiffs do not attempt to distinguish *Erausquin* in any meaningful way. They merely quote four full paragraphs from the decision and assert that 'Defendants make no allegation even approaching the facts required under *Erausquin*.'" (Second R&R at 56 n.71 (citing Pls.' Reply II at 3).)

Plaintiffs' Objections to the Second R&R still do not join issue with this authority other than in conclusory fashion. Specifically, Plaintiffs again simply block quote the same four full paragraphs from *Erausquin* and conclude—without explanation or support—that "[t]he Second Report points to no similar facts or allegations." (Objections to Second R&R at 72.) This regurgitated argument carries no weight here. Indeed, if anything, Plaintiffs' use of these nominal Defendants to manufacture jurisdiction only has gotten more extreme. Before this Court, Plaintiffs continue to use nominal defendants Angelov, Harriot, and their respective companies as pawns in support of their litigation strategy, with Plaintiffs' counsel now filing "objections" to the Second R&R on behalf of Defendants Angelov, All Seas Management, Blue Finance Limited, Harriottt, and Grant Capital Investments Limited which purport to support Plaintiffs' attempts to avoid severance. (*See* ECF Nos. 390 and 391.)[7] Plaintiffs' actions confirm the applicability of *Erausquin*, and why Judge Lehrburger's findings on severance should be adopted.

---

[7] Plaintiffs also have asserted that "these defendants have been informed by co-defendants of the filing of the [Second R&R]." (ECF Nos. 390 and 391.) This statement is made without any proof, is wholly self-serving, and cannot be credited in any way given all of the evidence presented of Plaintiffs using the Non-Consenting Defendants for Plaintiffs' own purposes.

9

## **CONCLUSION**

For the foregoing reasons, the Court should adopt in full Magistrate Judge Lehrburger's Second Report and Recommendation. BNB's Motion to Dismiss should be granted with prejudice, including through the severing of the claims of the Non-Consenting Defendants.

Dated: New York, New York
March 29, 2021

Respectfully submitted,

**WHITE & CASE** LLP

_s/ Claire A. DeLelle_
Claire A. DeLelle
Owen C. Pell
Susan L. Grace
Steven A. Levy
Jennifer M. Thomas
1221 Avenue of the Americas
New York, New York 10020
(212) 819-8200
claire.delelle@whitecase.com
opell@whitecase.com
susan.grace@whitecase.com

*Counsel for the Bulgarian National Bank*